D. EDWARD HAYS, #162507
ehays@marshackhays.com
ALINA MAMLYUK, #284154
amamlyuk@marshackhays.com
MARSHACK HAYS WOOD LLP
870 Roosevelt
Irvine, California 92620
Telephone: (949) 333-7777
Facsimile: (949) 333-7778

Attorneys for Judgment Creditors,
TOPDEVZ, LLC and TYLER DAVIS

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF CALIFORNIA – SAN DIEGO

| In re | Case No. 24-00617-CL11 |
|---|---|
| ASHKAN MIRFAKHR RAJAEE and NASSIM RAJAEE, | Chapter 11 |
| Debtors. | JUDGMENT CREDITORS' MOTION TO APPOINT A CHAPTER 11 TRUSTEE OR, ALTERNATIVELY, CONVERT CASE TO ONE UNDER CHAPTER 7; MEMORANDUM OF POINTS OF AUTHORITIES; DECLARATION OF D. EDWARD HAYS IN SUPPORT |

Date:     May 6, 2024
Time:     2:00 p.m.
Ctrm:     5
Room:     318
Place:    325 West F. Street,
          San Diego, CA  92101

/ / /

/ / /

# **TABLE OF CONTENTS**

1.  Summary of Argument ...............................................................................................2

2.  Bankruptcy Filing .....................................................................................................3

3.  Legal Actions ............................................................................................................3

    A.  The Arbitration ...............................................................................................5

    1.  The dissolution of TopDevz ...........................................................................6

    2.  Funds fraudulently transferred abroad by Ashkan in violation of an order by the Arbitrator .................................................................................................6

    3.  Ashkan's self-dealing and the millions of dollars he pilfered. .....................7

    4.  Ashkan's breaches of fiduciary duty and fraud ............................................8

    B.  The Debtors' Fraudulent Transfers ...............................................................9

    C.  Ashkan's Collateral Attacks on the Arbitration Award ...............................10

    1.  Efforts to stay the Arbitration .....................................................................10

    2.  Efforts to circumvent the Judgment ...........................................................11

    D.  The Undisclosed Assets ...............................................................................12

4.  Cause Exists to Appoint a Chapter 11 Trustee .......................................................13

A.  A Motion to Appoint a Chapter 11 Trustee is Governed by a Preponderance of the Evidence Standard ................................................................................................13

B.  Cause Exists to Appoint a Chapter 11 Trustee .......................................................14

5.  Alternatively, Cause Exists to Convert the Case to Chapter 7 ...............................17

**6.  Conclusion** ..............................................................................................................**24**

Declaration of D. Edward Hays .......................................................................................25

i

# TABLE OF AUTHORITIES

**Cases**

*In re Syndor,*

431 B.R. 584, 2010 WL 2428655, *5 (Bankr. D. Md. 2010)......................................................... 18

*Chu v. Syntron Bioresearch, Inc. (In re Chu),*

253 B.R. 92 .................................................................................................................................... 19

*Farley v. Coffee Cupboard, Inc. (In re Coffee Cupboard, Inc.),*

119 B.R. 14, 17-18 (E.D.N.Y. 1990)............................................................................................. 19

*Green v. Howard Family Trust* (*In re Green*),

2016 Bankr. LEXIS 3963, at *23 (9th Cir. BAP 2016) .................................................................. 21

*Grego v. U.S. Tr.* (*In re Grego*),

2015 Bankr. LEXIS 1792, at *5 (9th Cir. BAP 2015) .................................................................... 21

*Grogan v. Garner,*

498 U.S. 279 (1991) ...................................................................................................................... 13

*Idaho Dep't of Lands v. Arnold* (*In re Arnold*),

806 F.2d 937, 939 (9th Cir. 1986) ................................................................................................. 21

*In re Can-Alta Properties, Ltd.,*

87 B.R. at 91 .................................................................................................................................. 22

*In re Cardinal Industries, Inc.,*

109 B.R. 755, 766 (Bankr. S.D. Ohio 1990)................................................................................... 15

*In re Celeritas Technologies, LLC,*

446 B.R. 514, 518 (Bankr. D.Kans. 2011). .................................................................................... 15

*In re Chinichian,*

784 F.2d 1440, 1445-46 (9th Cir. 1986)......................................................................................... 21

*In re Green,*

2016 Bankr. LEXIS 3963, at *24 .................................................................................................. 23

*In re Keeley & Grabanski Land P'ship*,

   455 B.R. 153 (8th Cir. BAP 2011) ................................................................. 13

*In re Koerner*,

   800 F.2d 1358 (5th Cir. 1986) ..................................................................... 18

*In re Marvel Entertainment Group, Inc.*,

   140 F.3d 463, 472 (3d Cir. 1998) ................................................................. 15

*In re Oklahoma Refining Co.*,

   838 F.2d 1133, 1136 (10th Cir. 1988) .......................................................... 15

*In re Savino Oil & Heating Co., Inc.*,

   99 B.R. 518, 525 (Bankr. E.D.N.Y. 1989). .................................................. 15

*In re SGL Carbon Corp.*,

   200 F.3d 154 (3d Cir. 1999) ....................................................................... 18

*In re Sharon Steel Corp.*,

   871 F.2d 1217 (3d. Cir. 1989) ..................................................................... 13

*In Re Southern California SoundSystems, Inc.*,

   69 B.R. 893 (Bankr. S.D. Cal. 1987) ........................................................... 22

*In re Sullivan*,

   522 B.R. 604, 614 (9th Cir. BAP 2014) ....................................................... 18

*In re Walter*,

   108 B.R. 244, 250 (Bankr. C.D. Cal. 1989) ................................................. 22

*Kingsway Capital Partners, LLC v. Sosa*,

   549 B.R. 897, 904 (N.D. Cal. 2016) ............................................................ 20

*Laguna Assocs. Ltd. Partnership v. Aetna Casualty & Sur. Co. (In re Laguna Assocs. Ltd.*

   *Partnership)*,

   30 F.3d 734, 738 (6th Cir. 1994) ................................................................. 19

*Little Creek Dev. Co. v. Commonwealth Mortgage Corp. (In re Little Creek Dev. Co.)*,

   779 F.2d 1068, 1072-73 (5th Cir. 1986) [**8] .......................................... 19, 22

MOTION TO APPOINT A TRUSTEE OR CONVERT CASE TO CHAPTER

4863-0048-2735V.1

*Margitan v. Hanna (In re McWilliams-Hanna)*,

  2018 Bankr. LEXIS 3608 at \*22 (B.A.P. 9th Cir. 2018) ............................................ 20

*Marsch v. Marsch (In re Marsch)*,

  36 F.3d 825, 828 (9th Cir. 1994) (per curiam) ........................................................ 19, 21

*Marshall v. Marshall* (*In re Marshall*),

  721 F.3d 1032, 1047 (9th Cir. 2013) .......................................................................... 21

*Phoenix Piccadilly, Ltd. v. Life Ins. Co. (In re Phoenix Piccadilly Ltd.)*,

  849 F.2d 1393, 1394-95 (11th Cir. 1988) ..................................................................... 19

*Pioneer Liquidating Corp. v. United States Trustee (In re Consol. Pioneer Mortgage Entities)*,

  248 B.R. 368, 375 (B.A.P. 9th Cir. 2000) ..................................................................... 19

*Savino*,

  99 B.R. at 525-26 ........................................................................................................... 15

*St. Paul Self Storage Ltd. Partnership v. Port Auth.* (*In re St. Paul Self Storage Ltd. Partnership*),

  185 B.R. 580, 583 (9th Cir. B.A.P. 1995) .................................................................... 22

*Sullivan v. Harnisch (In re Sullivan)*,

  522 B.R. 604, 614 (9th Cir. BAP 2014) ....................................................................... 21

*Udall v. FDIC (In re Nursery Land Dev., Inc.)*,

  91 F.3d 1414, 1416 (10th Cir. 1995) ........................................................................... 19

**Statutes**

11 U.S.C. § 1112(b) ............................................................................................................. 17

11 U.S.C. § 1112(b)(2) ......................................................................................................... 18

11 U.S.C. § 1112(b)(4) ......................................................................................................... 18

11 U.S.C. §1104 ........................................................................................................... 14, 15

11 U.S.C. §1104(a)(1) ............................................................................................... 14, 15, 17

11 U.S.C. §1104(a)(2) ......................................................................................................... 15

11 U.S.C. 1112(b) ................................................................................................................. 18

11 U.S.C. §1112(b)(4)(E) ..................................................................................................... 20

**Other Authorities**

7 *Collier on Bankruptcy* ¶ 1112.01 (16th ed. 2024). ........................................................................ 18

MOTION TO APPOINT A TRUSTEE OR CONVERT CASE TO CHAPTER

4863-0048-2735V.1

1  TO THE HONORABLE CHIEF JUDGE CHRISTOPHER B. LATHAM, UNITED STATES

2  BANKRUPTCY COURT JUDGE, THE DEBTORS, THE OFFICE OF THE UNITED STATES

3  TRUSTEE, AND ALL INTERESTED PARTIES:

4       Judgment Creditors, TOPDEVZ, LLC ("TopDevz" / "LLC") and Tyler Davis ("Davis," and

5  together with TopDevz, "Judgment Creditors") move the Court for an order appointing a Chapter 11

6  Trustee in the case filed by Ashkan Mirfakhr Rajaee ("Ashkan") and Nassim Rajaee ("Nassim," and

7  together with Ashkan, "Debtors") or, alternatively, converting Debtors' Chapter 11 case to a

8  proceeding under Chapter 7 ("Motion"). In support of this Motion, Judgment Creditors represent as

9  follows:

10  ## 1.    Summary of Argument

11       Bankruptcy proceedings are designed to assist the honest but unfortunate debtors. In a

12  Chapter 11 case, debtors-in-possession have fiduciary obligations to act in the best interests of the

13  bankruptcy estate ("Estate"), presupposing that the individuals executing that office are honest.

14  Unfortunately, the Debtors are neither honest nor capable of acting as fiduciaries for the Estate.

15       Where debtors have engaged in gross mismanagement or fraud, bankruptcy courts have

16  authority to appoint a trustee to act as the representative of the bankruptcy estate. In this case, after a

17  multi-day arbitration that resulted in Movants obtaining a $10 million judgment, Debtor Ashkan

18  Rajaee was adjudicated to have committed substantial fraud and repeated breaches of fiduciary duty

19  over a five-year period.

20       In entering the Arbitration Award (as defined below), the Arbitrator (as defined below) made

21  extensive findings regarding Debtor Ashkan Rajaee's complete lack of honesty, including his

22  complete "indifference to the oath he took, promising to answer truthfully . . . . [and instead over the

23  course of many days] testified as if the truth was something that he could change from day to day

24  depending on his then current need, objective, whim, or state of mind."[1] Movants respectfully

25  request that the Court review the arbitrator's extensive findings regarding Debtor's fraud, breaches

26

27  ───────────────

28  [1] *See* Hays Decl., Ex. 3, pg. 135.

MOTION TO APPOINT A TRUSTEE OR CONVERT CASE TO CHAPTER

4863-0048-2735V.1

of fiduciary duties, and perjury. In addition, Debtor has been incessantly suing creditors in this case, making reorganization implausible due to the exposure created by the frivolous lawsuits.

Further, in this case, the Debtors' dishonesty persists as evidenced by their failure to disclose at least one significant asset from their schedules, their interest in Monster Mobile. But, the lawsuit filed by Debtor post-petition references his ownership of this company and its claimed significant value. The evidence is clear that Debtors cannot and will not be good stewards of Estate assets. The Court should either appoint a Chapter 11 trustee or convert this case to a Chapter 7 proceeding.

## 2.    Bankruptcy Filing

On February 26, 2024, Debtors filed a voluntary petition under Chapter 11 of the Bankruptcy Code ("Chapter 11 BK Case"), schedules of the assets and liabilities, and statement of their financial affairs (collectively, "Schedules"). A true and correct copy of this Court's webPACER Docket for Case No. 24-00617-CL11 as of April 8, 2024, is attached to the Declaration of D. Edward Hays ("Hays Declaration") as Exhibit "1." A true and correct copy of the Schedules is attached to the Hays Declaration as Exhibit "2."

Although the Debtors are acting as debtors-in-possession, as described below, the Debtors pre-petition conduct proves their inability to serve as fiduciaries to the Estate and its creditors. Further, positions taken by the Debtors in connection with the filing of the Schedules, as well as actions taken post-petition, including post-petition lawsuits filed by Ashkan, confirm the Debtors' unwillingness to be honest stewards for the Estate and their inability to perform their fiduciary duties.

The Debtors cannot be allowed to continue as debtors-in-possession.

## 3.    Legal Actions

The Debtors are not and cannot be trusted to be fiduciaries of this Estate. First, while acting as TopDevz's chief executive officer, and with only a small ownership interest, Ashkan treated the company as his personal piggybank, diverting assets to other companies owned by him, and sending funds out of the country to keep them from the TopDevz and its majority shareholder—Davis. *See* Hays Decl., Ex. 3, pgs. 92-190. Indeed, Ashkan transferred over $1 million of company funds out of

MOTION TO APPOINT A TRUSTEE OR CONVERT CASE TO CHAPTER
4863-0048-2735V.1

1  the country to bank accounts controlled by him in violation of an order issued by the Arbitrator

2  within hours of Ashkan being notified of the same. *Id.*, pgs. 124-126.

3        Moreover, after Ashkan lost the Arbitration, the Debtors fraudulently transferred two

4  properties to others, allowing family members to strip the equity from those properties in the

5  process. A true and correct copy of the fraudulent transfer defaults obtained by the Judgment

6  Creditors against the Trusts and LLC are attached to the Hays Declaration as Exhibit "4." On the eve

7  of filing this case, Debtors caused title to be re-transferred to them but the equity has been stripped

8  and there is no accounting for the disposition of the funds borrowed against those properties.

9  *Compare* Hays Decl., Ex. 2, pgs. 52-87; *with* Ex. 4, pgs. 192-195. In all likelihood, Debtors caused

10  title to their home to be restored in what will be an unsuccessful attempt to claim a nearly $700,000

11  homestead.[2]

12        Finally, the Debtors omit significant assets from their Schedules, including Ashkan's

13  ownership interest in a company (Mobile Monsters, Inc.) that received the largest share of the funds

14  illegally stolen by Ashkan from TopDevz. *Id.*, Ex 3, pgs. 108-132. In a post-petition action filed by

15  Ashkan, he alleges this company to be very valuable. A true and correct copy of the post-petition

16  actions commenced by Ashkan are attached to the Hays Declaration as Exhibits "5," and "6." Other

17  false statements in the Schedules include the failure to disclose a $1 million deed of trust recorded

18  against Debtors' $8.5 million home in La Jolla in favor of Debtors' attorneys Brown Neri as well a

19  $1 million deed of trust in favor of Ashkan's father, Majid Rajaee. A true and correct copy of the

20  deeds of trust are attached to the Hays Declaration as Exhibit "8". Instead, Schedule F only reflects a

21  $20,000 unsecured claim owed to the firm. *Id.*, pgs. 63-71.

22

23

24

---

25  [2] Debtors' fraudulent transfers were the subject of a state court action to avoid them. Title to that
26  action is now vested in the estate. Debtors cannot possibly prosecute that action for the benefit of
   creditors. Specifically, judgment avoiding the transfers should be entered so that the estate can
   recover the fraudulent transfers and disallow any claimed exemption under Section 522(g). The
27  Debtor are subsequent transferees of the original fraudulent transfer who did not take in good faith,
   for value, and without knowledge of the voidability of the initial transfer. In other words, Debtors'
28  argument that restoring title results in no-harm, no-foul fails. But, they will never prosecute the
   estate's claims for the benefit of creditors. A trustee must be appointed.

4

MOTION TO APPOINT A TRUSTEE OR CONVERT CASE TO CHAPTER

4863-0048-2735V.1

1    The Debtors' repeated acts of fraud and breach of fiduciary duty and conflicts of interest

2 prevent them from being trusted to act as fiduciary for creditors in this bankruptcy. They simply

3 cannot be trusted.

4    **A.    The Arbitration**

5    In February 2021, an arbitration was commenced ("Arbitration") which lasted more than two

6 years. The parties to the Arbitration were Ashkan and Judgment Creditors. The arbitrator was

7 Rebecca Callahan ("Arbitrator"),[3] who issued a 93-page written Final Award in May 2023

8 ("Arbitration Award"). A true and correct copy of the Judgment and Arbitration Award is attached

9 as one document to the Hays Declaration as Exhibit "3." The issues addressed in the Arbitration

10 Award include (1) the respective ownership interests of Ashkan and Davis in TopDevz; (2) whether

11 grounds existed to dissolve TopDevz and, if so, who should oversee the dissolution; (3) an

12 accounting of amounts owed to or from TopDevz by Davis; (4) an accounting of amounts owed to or

13 from TopDevz by Ashkan; (5) Davis's claims against Ashkan for fraud and breach of fiduciary duty;

14 (6) Ashkan's claims against Davis for defamation, civil extortion, intentional infliction of emotional

15 distress; intentional interference with contract, intentional interference with prospective business

16 advantage, and breach of fiduciary duty. *Id.*, pgs. 99-102, 115-120, 127-135 and 153-160. In August

17 2023, the San Diego County Superior Court entered a Judgment confirming the Arbitration Award

18 ("Judgment"). A true and correct copy of the Judgment is attached to the Hays Declaration as

19 Exhibit "7." The Debtors have appealed the Judgment, and the appeal has been stayed pending the

20 conclusion of the bankruptcy.

21    The Arbitration contained three distinct parts. *Id.*, Ex. 3, pgs. 98, 103-106. The first portion

22 of the trial addressed issues relating to dissolution. *Id.*, Ex. 3, pgs. 98, 103-106. The second portion

23 of the trial addressed issues relating to the parties' contentions regarding an accounting. *Id.*, Ex. 3,

24 pgs. 98, 103-106.. The final portion of the trial addressed the parties' various tort claims. *Id.*, Ex. 3,

25 pgs. 98, 103-106.

26

27

28 [3] Ms. Callahan is a 30-year AV-rated attorney that was a highly-respected bankruptcy litigator prior to becoming a full-time neutral.

MOTION TO APPOINT A TRUSTEE OR CONVERT CASE TO CHAPTER

4863-0048-2735V.1

1    Generally, the Arbitration Award addresses the various issues in the same order they were

2    addressed at trial. *Id.*, Ex. 3, pgs. 98, 99-102, and 103-106. Nonetheless, a portion of the Arbitration

3    Award addresses specific actions taken by Ashkan to divert TopDevz's assets to accounts controlled

4    by him in another country in direct defiance of a ruling by the Arbitrator are the conclusion of the

5    portion of the trial. *Id.*, Ex. 3, pgs. 121-126. The Arbitration Award is summarized below.

### 1.    The dissolution of TopDevz

7    Davis and Ashkan decided to go into business together and in May 2017, they formed

8    TopDevz. *Id.*, Ex. 3, pgs. 115-120. In the company's operating agreement, Ashkan was designated as

9    TopDevz's managing member. *Id.*, pg. 111. Ashkan was also the company's chief executive officer.

10    The Arbitration included a determination of the member's capital contributions. Ashkan

11    misrepresented the claim that he put $750,000 into the LLC, but Ashkan first testified that he had put

12    in no capital. The Operating Agreement provides that the member's capital accounts change

13    annually, and that Rajaee put in only $37,000. The judgment therefore confirms that Ashkan's

14    ownership interest was small. Indeed, as confirmed in the Arbitration Award, Davis held more than

15    95% of the membership interest in TopDevz. *Id.*, pgs. 121 and 166.

16    As manager and CEO, however, Ashkan illegally funneled millions of dollars to companies

17    owned and controlled by him, most of which are headquartered abroad. *Id.*, pgs. 136-138. Ashkan

18    also improperly used TopDevz's money to fund his lavish lifestyle. *Id.*, pgs. 136-138. Eventually,

19    Davis grew tired of Ashkan's poor-decision making and petitioned for dissolution. *Id.*, pgs. 103-106.

20    Over Ashkan's objection, the Arbitrator agreed with Davis, determining that multiple grounds

21    existed to order the dissolution of TopDevz. *Id.*, pgs. 98, 103-106.

### 2.    Funds fraudulently transferred abroad by Ashkan in violation of an order by the Arbitrator

24    Ashkan's actions in response to the Arbitrator's ruling regarding the dissolution of TopDevz

25    proves his inability to serve as a chapter 11 fiduciary. In December 2021, the Arbitrator conducted a

26    3-day trial. *Id.* Ex. 3, pgs. 98, 103-106. On January 6, 2022, the Arbitrator issued her order directing

27    Davis to oversee the dissolution of TopDevz ("January 6 Ruling"). *Id.*, pgs. 98, 103-106. Among

28

MOTION TO APPOINT A TRUSTEE OR CONVERT CASE TO CHAPTER

4863-0048-2735V.1

other things, the January 6 Ruling designated Davis as the immediate, new managing member of TopDevz, and unequivocally provided that, "Davis and only Davis, or his designee, shall have authority to access, disburse funds from, open and close bank and other financial accounts belonging to or standing in the name of" TopDevz. *Id.*, pgs. 122. The January 6 Ruling was provided to Ashkan immediately after it was issued. *Id.*, pgs. 121-125.

At approximately 11:00 pm on January 6, 2022, hours after being provided with a copy of the January 6 Ruling, Ashkan caused $900,000 to be wired out of TopDevz's bank account and to an international account held by him. *Id.*, pgs. 121-125. The following day, Ashkan caused another $131,586.76 to be wired out of TopDevz's bank account to an international account held by Mobile Monster, a company wholly owned by Ashkan. *Id.*, pgs. 122. This theft of TopDevz's funds in contempt of the Arbitrator's order, left TopDevz with insufficient funds to make its payroll. *Id.*, pgs. 122.

Less than a week later, after an emergency hearing, the Arbitrator ordered Ashkan to return the funds that he sent abroad on January 6 and 7, 2022. *Id.*, pgs. 122. To date, Ashkan has failed and refused to comply. With Movants' $10 million judgment being the largest creditor claim in this estate, Debtor's history proves that he will continue his campaign to hinder, delay, and defraud creditors.

### 3.    Ashkan's self-dealing and the millions of dollars he pilfered.

In April 2022, the Arbitrator received 10 days of testimony from the parties regarding their various accounting claims. Hays Decl., Ex. 3, pgs. 127-153. In particular, the evidence focused on (a) the capital contributions of Davis and Rajaee to TopDevz; (b) a reconciliation of the financial affairs of the TopDevz; (c) whether there were outstanding loans owed by TopDevz to Ashkan or Davis; and (d) whether Ashkan or Davis was owed money by or owed money back to TopDevz. *Id.*, pgs. 128. An important piece of the reconciliation was substantiation of funds paid to or for the benefit of the parties or companies owned by them. *Id.*, pgs. 129.

Despite being the managing member of TopDevz, Ashkan was unable to produce documents or explain the alleged business purposes behind the millions of dollars in payments he made to

himself and his companies. For example, Ashkan was unable to adequately explain the business justification for why he caused TopDevz to lease a private jet for his use after the Arbitration commenced. *Id.*, pgs. 138, fn. 37. In fact, the LLC is still receiving bills on the private jet.

Although Ashkan tried to explain certain aspects of the funds paid, the Arbitrator concluded the explanation was fantasy:

> In [the] final analysis, [Ashkan] Rajaee's testimony . . . is not credible because it is dependent on believing [Ashkan] Rajaee's new story, which is at odds with this prior testimony and the records he has produced. **[Ashkan] Rajaee is one of the least credible witnesses the undersigned Arbitrator has ever heard testify**, not just because [Ashkan] Rajaee gave inconsistent testimony, but **because he did so without acknowledging the contradiction and his seeming indifference to the oath he took**, promising to answer truthfully all questions posed to him in the arbitration. Instead, **over the course of the December 2021 and April 2022 Hearing proceedings, [Ashkan] Rajaee testified as if the truth was something that he could change from day to day depending on his then current need, objective, whim, or state of mind**.

*Id.*, pgs. 135.

Additionally, Ashkan conceded that he had stashed money owned by TopDevz in previously undisclosed foreign bank accounts. *Id.*, pgs. 133. Ultimately, the Arbitrator determined that Ashkan embezzled $7,670,151.00 from TopDevz by causing unsubstantiated payments to be made to himself and companies that he owned or controlled. *Id.*, pgs. 139-142.

### 4.    Ashkan's breaches of fiduciary duty and fraud

As the CEO of TopDevz, Ashkan owed fiduciary duties to the company. *Id.*, pgs. 154-155. As the managing member of TopDevz, Ashkan owed fiduciary duties to the other members. *Id.*, pgs. 154-155. Nonetheless, as described above, Ashkan did not act as a fiduciary. *Id.*, pgs. 154-155. Instead, Ashkan placed his interests ahead of all others, thereby breaching the fiduciary duties. Consequently, the Arbitrator awarded damages to TopDevz in the amount of $7,670,151.00 and to Davis in the amount of $1,704,415.64. *Id.*, pgs. 92-94; pgs. 154-155.

Further, the Arbitrator concluded that Ashkan's fraud was endemic to the relationship between him and Davis. *Id.*, pgs. 154-155. Indeed, Ashkan concealed funds by, among other things, maintaining undisclosed, offshore accounts in the name of TopDevz. *Id.*, pgs. 154-155. All of these

1  actions prove that Ashkan is untrustworthy and unable to adequately serve as a fiduciary of the

2  Estate.

3     **B.   The Debtors' Fraudulent Transfers**

4        Using funds pilfered from TopDevz, the Debtors acquired at least two parcels of real

5  property in La Jolla, California. First, in July 2020, the Debtors purchased real property commonly

6  described as 1020 Genter Street, Unit 102, La Jolla, CA 92037 ("Genter Street Property"). Second,

7  in November 2021, Ashkan purchased 6625 Muirlands Drive, La Jolla, CA 92037 ("Muirlands Drive

8  Property").

9        After the Arbitrator ordered the dissolution of TopDevz and Ashkan to return more than $1

10  million wrongfully taken from TopDevz's account in violation of the January 6 Ruling, in March

11  2022, the Debtors fraudulently transferred the Genter Street Property to an entity owned or

12  controlled by the Debtors for no value and in an effort to hinder, delay, and defraud TopDevz. *See*

13  Hays Decl. Ex. 2, pgs. 52 and 84.

14        Similarly, in March 2022, the Debtors fraudulently transferred their ownership of the

15  Muirlands Drive Property for no consideration to two trusts created they created. *Id.*, Ex. 2, pgs. 52-

16  87. Then, in April 2022, multiple deeds of trust were recorded against the Muirlands Drive Property

17  by the Debtors' relatives in favor of Debtors' attorneys Brown Neri and Ashkan's father Majid

18  Rajaee, siphoning off much of the equity that existed at the time. See, Hays Decl., Exhibit 8.

19  Moreover, during their initial meeting of creditors pursuant to 11 U.S.C. § 341(a), Debtors claimed

20  not to know the beneficiaries of the trusts and whether they were beneficiaries. See, Hays Decl. ¶18.

21  When asked to produce copies of the trusts, Debtors would not commit to doing so and instead said

22  he wanted to discuss with his counsel. *Id.*

23        Although these fraudulent transfers of ownership were undone days before the Petition Date

24  by title being transferred back to Debtors, such actions evidence the Debtors' lack of trustworthiness

25  and inability to act in a fiduciary role.[4] But, the equity has been substantially stripped out of the

26

27  _____

28  [4] Notably, the debt added to the Muirlands Drive Property in April 2022 remains. *Id.*, Ex. 2, pgs. 60-62. According to the Schedules, the Debtors do not intend to challenge it. *Id.*

9

properties to the detriment of creditors. As long as Debtors remain in possession as the representatives of this bankruptcy estate, no neutral trustee will scrutinize the transactions which put a $1 million deed of trust in favor of one of Debtors' attorneys Brown Neri and another $1 million deed of trust in favor of Ashkan's father, Majid. Moreover, only one of these $1 million deeds of trust is disclosed in Debtors' Schedule D. *Id.*, Ex. 2, pgs. 60-62.

Debtors apparently re-transferred title to their $8.5 million home back to themselves in order to claim an almost $700,000 homestead exemption in the property. *Id.*, Ex. 2, pgs. 52-59. But, the original fraudulent transfer when they transferred title out of their names is the subject of an action that remained pending on the petition date. The fraudulent transfer action has been stayed. Upon the filing of the bankruptcy, the estate became the only party with standing to continue prosecuting that action for the benefit of the estate. But, the Debtors will never do so as long as they remain the estate's representative. This conflict screams for the appointment of a Trustee to resolve that action for the benefit of creditors. For example, if the Debtors' fraudulent transfer is avoided and recovered, Section 522(g) would disallow Debtors' efforts to obtain a $700,000 homestead exemption.

## C.    Ashkan's Collateral Attacks on the Arbitration Award

During and after the Arbitration, Ashkan's actions confirm that he will go to any length to circumvent an adverse judicial ruling. All such actions confirm that Ashkan is not fit to serve as a fiduciary for the Estate.

### 1.    Efforts to stay the Arbitration

After obtaining the January 6 Ruling, Ashkan undertook efforts to derail the Arbitration. First, on January 18, 2022, through yet another attorney, Connor Lynch, Ashkan filed an action in the San Diego Superior Court against Davis, seeking among other things to enjoin the Arbitration. The case was assigned number 37-2022-00001968-CU-PA-CTL. A true and correct copy of the San Diego Superior Court Docket for Case No. 37-2022-00001968-CU-PA-CTL is attached to the Hays Declaration as Exhibit "9." After Ashkan's motions for a temporary restraining order and preliminary injunction were denied, the case was dismissed. *Id.*, pgs. 258-260.

Then, on March 8, 2022, Ashkan filed another action seeking to stay the Arbitration, this time seeking relief in the Sacramento Superior Court. The case was assigned number 34-2022-00316510-CU-MC-GDS. A true and correct copy of the Sacramento Superior Court Docket for Case No. 34-2022-00316510-CU-MC-GDS is attached to the Hays Declaration as Exhibit "10."  Like its sister court in San Diego, the Sacramento Superior Court denied Ashkan's attempts to circumvent the Arbitration. *Id.*, pgs. 261-267.

### 2.    Efforts to circumvent the Judgment

Recently, Ashkan's efforts to circumvent the Arbitration Award and Judgment have intensified. On January 2, 2024, acting pro se, Ashkan filed a verified complaint for damages and declaratory relief against Davis and 45 other defendants, many of whom were involved in the Arbitration, including Davis's attorneys. The case was filed in the District Court for the Southern District of California and assigned case number 3:24-00001-RSH-KSC. A true and correct copy of the Complaint and Docket pending in the Southern District of California as Case No. 3:24-00001-RSH-KSC is attached to the Hays Declaration as Exhibit "11."  Essentially, Ashkan seeks to blame everyone else for his breaches of fiduciary duties and fraud. *Id.*, pgs. 268-375.

Then, on March 22, 2024, ***post-petition,*** and acting pro se, Ashkan filed two more actions in the District Court for the Southern District of California. In the first action, case number 24CV0549 CAB KSC, Ashkan sued Davis, TopDevz, and their attorneys for damages as a result of alleged tax fraud and access to information ("Tax Case"). A true and correct copy of the operative complaint and docket for the Tax Case is attached to the Hays Declaration as Exhibit "12."  The absurdity of the Tax Case is clear when the details are examined. *Id.*, pgs. 376-386.

In the Arbitration Award and Judgment, Ashkan was ordered to provide information, books, and records to Davis so that he could complete the dissolution of TopDevz. *Id.*, Ex. 3, pgs. 121-124. Despite repeated requests, Ashkan refused to comply and, therefore, any demand for access to information (which Ashkan holds) is absurd. Further, one of the requirements for dissolution is that all tax returns must be filed and accurate. Through the Arbitration, it became clear that millions of dollars funneled by Ashkan to himself and his companies had no legitimate business purpose and

MOTION TO APPOINT A TRUSTEE OR CONVERT CASE TO CHAPTER
4863-0048-2735V.1

1   could not be treated as business expenses as they were draws. Therefore, TopDevz issued a 1099

2   reflecting the Arbitrator's findings for monies taken by Ashkan.

3       In second action, case number 24CV0550 LL DEB, is equally absurd. There, Ashkan sued

4   Davis, his attorneys, and other assisting in the dissolution of TopDevz alleging misappropriation of

5   trade secret ("Trade Secret Case"). A true and correct copy of the Trade Secret Case operative

6   complaint and docket is attached to the Hays Declaration as Exhibit "13." Again, in the Arbitration

7   Award and Judgment, Ashkan was ordered to provide information, books, and records to Davis so

8   that he could complete the dissolution of TopDevz. *Id.*, Ex. 3, pgs. 121-124.

9       Despite repeated requests, Ashkan refused to comply and now claims that such information

10  constitute his "trade secrets." The defendants have attempted to obtain the required information in

11  order to comply with the Arbitration Award and Judgment and Ashkan is suing them for it. Ashkan's

12  indifference to court orders and his spiteful nature call into question his ability to serve as a fiduciary

13  and use Estate assets for his improper purposes.

14      ### D.    The Undisclosed Assets

15      The Schedules omit at least one and, potentially, many assets. Indeed, in the Trade Secret

16  Case (filed post-petition), Ashkan alleges that "Mobile Monster, Inc. . . . is a Canadian company

17  owned 100% by Plaintiff and was founded over a decade ago in 2013." Hays Decl. Ex. 13, pg. 391,

18  ¶28. Ashkan further alleges that Mobile Monster, Inc. is (and was) a very valuable company. *Id,* pgs.

19  391-392, ¶¶28-33. Nonetheless, Debtors fail to disclose their ownership of Mobile Monster, Inc. in

20  their Schedules. *Id*., Ex. 2, pgs. 52-57. Although Debtor made a vague reference to owning a

21  "Monster Mobile Database," there is zero disclosure of his ownership or value of the company.

22  *Compare* Hays Decl, Ex. 13, pgs. 391-392; *with* Ex. 2, pgs. 52-57.

23      Moreover, although the Arbitration Award confirms that Ashkan held or controlled foreign

24  bank accounts, there is only one bank account disclosed in Schedule A. *Compare* Hays Decl, Ex. 2,

25  pgs. 52-57; *with* Ex. 3, pgs. 124, fn. 22-23.

26

27

28

MOTION TO APPOINT A TRUSTEE OR CONVERT CASE TO CHAPTER
4863-0048-2735V.1

1    It is unclear whether the Debtors have fully disclosed all such accounts. During his 341(a)

2  meeting of creditors[5], Ashkan admitted that he has transferred money to Mobile Monster, Inc., and

3  that it has transferred money back to him. *See,* Hays Declaration. But, Ashkan claimed he did not

4  recall the amounts or the approximate timing. *Id*. When asked to obtain and produce his and the

5  company's bank records, he would not commit to doing so and said he wanted to speak to his

6  counsel first. *Id.* Again, these transfers likely are subject to avoidance but Debtors will never analyze

7  or prosecute fraudulent conveyance claims. A Trustee is needed.

8  **4.    Cause Exists to Appoint a Chapter 11 Trustee**

9    Based on their adjudicated fraud, breach of fiduciary duties, and history of false testimony,

10  the Debtors are not fit to serve as fiduciaries to the Estate and should be removed as debtors-in-

11  possession. An independent Chapter 11 Trustee is needed. The grounds for appointment of a trustee

12  include "fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by

13  current management, either before or after the commencement of the case, or similar cause." The

14  findings in the Arbitration Award satisfy all of these elements.

15  **A.    A Motion to Appoint a Chapter 11 Trustee is Governed by a**

16  **Preponderance of the Evidence Standard**

17    Here, the Debtors' conduct both pre- and post-petition proves that they cannot be trusted as

18  fiduciaries for the estate. Judgment Creditors need not prove by clear and convincing evidence that a

19  trustee is needed. Admittedly, based on *In re Sharon Steel Corp.*, 871 F.2d 1217 (3d. Cir. 1989) and

20  its progeny, some courts have adopted that view. In doing so, they ignore the Supreme Court's

21  teachings in *Grogan v. Garner*, 498 U.S. 279 (1991), which was decided after *Sharon Steel Corp.*,

22  that held that the preponderance of the evidence standard generally applies in bankruptcy cases.

23    The modern and better-reasoned approach follows *Grogan* and requires a party to establish

24  cause under §1104(a) by a preponderance of the evidence. *In re Keeley & Grabanski Land P'ship*,

25  455 B.R. 153 (8th Cir. BAP 2011). In explaining the impact of *Grogan*, these courts state:

26    [W]hile a Chapter 11 debtor's desire to remain in possession of the

27  ───────────────

28  [5] A transcript of the 341(a) has been ordered. As soon as available it will be filed with the Court.

MOTION TO APPOINT A TRUSTEE OR CONVERT CASE TO CHAPTER
4863-0048-2735V.1

property of the bankruptcy estate and in control of its reorganization is certainly an important interest, that interest cannot reasonably be said to be any more important than a Chapter 7 debtor's interest in receiving a discharge of his debts. We agree: If a preponderance of the evidence standard is a sufficient standard for the denial of discharge based on a debtor's fraud, it should likewise be sufficient for the appointment of a trustee based on allegations of the debtor's fraud or misconduct. **Consequently, we conclude that the proper standard for a party seeking the appointment of a Chapter 11 trustee is preponderance of the evidence**.

*Keeley & Grabanski Land P'ship*, 455 B.R. at 163 (footnote omitted and emphasis added).

Judgment Creditors certainly have established by a preponderance of the evidence that a trustee is needed.[6] Exhibits referenced throughout this Motion overwhelmingly prove Ashkan to be self-dealing (ignoring CEO-level fiduciary duties owed to LLC in favor of Ashkan himself), willing and ready to engage in fraudulent transactions (strategically transferring his properties so as to strip them of equity and be difficult to trace), willing to conceal evidence and assets (not disclosing ownership and full value of Mobile Monster) and unable to abide by a judgment rendered against him (completely ignoring the Arbitration Award). It is unlikely that this pattern of behavior will reverse if Debtors are allowed to administer their estate to their own liking. If anything, lack of oversight in this situation is likely to grossly exacerbate the problem to irreparable degree of harm to creditors.

## B.   Cause Exists to Appoint a Chapter 11 Trustee

There is cause to appoint a chapter 11 Trustee in this case pursuant to 11 U.S.C. § 1104. Section 1104(a)(1) of the Bankruptcy Code provides that:

(a) At any time after the commencement of the case but before confirmation of a plan, on request of a party in interest or the United States Trustee, and after notice and a hearing, the court <u>shall</u> order the appointment of a trustee –
(1) for cause, including **fraud**, **dishonesty**, incompetence, or **gross mismanagement** of the affairs of the debtor by current management, **either before or after the commencement of the case**, or similar cause, but not including the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor;

---

[6] Even if a clear and convincing standard is adopted (and it should not be), Judgment Creditors have established cause for the appointment of a trustee.

1    11 U.S.C. § 1104(a)(1) (emphasis added).

2         The four bases upon which "cause" may be found under § 1104(a)(1) are not exclusive. A

3    finding of "cause" may be based on other factors as well. *In re Marvel Entertainment Group, Inc.*,

4    140 F.3d 463, 472 (3d Cir. 1998) (section 1104(a)(1) does not define the term "cause" but merely

5    notes that "cause" includes "fraud, dishonesty, incompetence, or gross mismanagement of the affairs

6    of the debtor by current management."). "Once the Court has found that 'cause' exists under § 1104,

7    it has no discretion but must appoint a trustee." *In re Oklahoma Refining Co.*, 838 F.2d 1133, 1136

8    (10th Cir. 1988); *accord In re Savino Oil & Heating Co., Inc.*, 99 B.R. 518, 525 (Bankr. E.D.N.Y.

9    1989).

10        As stated by one court:

11            Section 1104(a) represents a potentially important protection that
              courts should not lightly disregard or encumber with over protective
12            attitudes towards debtors-in-possession. Under § 1104(a)(1), the words
              "including" and "or similar cause" before and after the enumerated
13            examples of cause . . . indicate that the grounds for appointing a
              reorganizing trustee are not even limited to the derelictions specifically
14            enumerated. The sole question presented in section 1104(a)(1) motion
              is whether the acts or omissions of current management, whether
15            committed before or after filing the Chapter 11 petition, supply the
              "cause", as defined, to trigger the appointment of a trustee.

16

17    *See Savino*, 99 B.R. at 525-26.

18        "Even if cause is not established within the meaning of § 1104(a)(1), the Court may order the

19    appointment of a trustee under § 1104(a)(2) if the interests of creditors and other interests of the

20    estate would be served thereby." *In re Cardinal Industries, Inc.*, 109 B.R. 755, 766 (Bankr. S.D.

21    Ohio 1990). "The court is vested with even broader discretionary powers under § 1104(a)(2) and

22    may consider equitable factors to determine whether a trustee is in the interests of the estate and its

23    creditors." *In re Celeritas Technologies, LLC,* 446 B.R. 514, 518 (Bankr. D.Kans. 2011). "As with

24    the analysis of cause under § 1104(a)(1), the debtor's ability to fulfill its duty of care to protect

25    assets, its duty of loyalty, and its duty of impartiality is at the base." *Id.* at 520. "Perceived

26    dishonesty or the withholding of information supports the appointment of a trustee." *Id.*

27

28

MOTION TO APPOINT A TRUSTEE OR CONVERT CASE TO CHAPTER
4863-0048-2735V.1

1    Here, there are numerous bases for a finding of cause to appoint a trustee under § 1104(a)(1)

2    based on Debtors' acts both pre- and post-petition. For years, while acting as TopDevz's CEO,

3    Ashkan repeatedly and continuously breached the fiduciary duties that he owed to the company as

4    well as Davis. Hays Decl., Ex. 3, pgs. 153-155. Indeed, Ashkan improperly funneled millions of

5    dollars to himself and his companies. *Id*, pgs. 153-155. Notably, Ashkan used foreign banks and

6    foreign bank accounts in an attempt to hide the money from TopDevz and Davis. *Id*, pgs. 153-155.

7    After the hidden foreign accounts came to light, Ashkan refused to provide complete information

8    with respect to them. *Id*, pgs. 124-127 and 153-155. And, of course, Ashkan refuses to return the

9    money.

10    Further, Ashkan has a long history of ignoring and attempting to circumvent court orders. For

11    example, hours after receiving the January 6 Ruling, and in direct violation of the same, Ashkan

12    transferred over $1 million from TopDevz's account to foreign accounts held by himself and one of

13    his companies. *Id*, pgs. 124-127. Despite being repeatedly ordered to return the funds, Ashkan has

14    failed and refused to do so. *Id*, pgs. 124-127 And after the January 6 Ruling was rendered, Ashkan

15    filed multiple lawsuits in state court attempting to derail the Arbitration because he received an

16    adverse ruling. *Id*, Ex. 9, pgs. 258-260; Ex. 10, pgs. 261-267; Ex. 11, pgs. 268-375; Ex. 12, pgs. 376-

17    386; Ex. 13, pgs. 387-419.

18    Additionally, despite being repeatedly ordered to do so, Ashkan has yet to turn over the

19    information needed by Davis to effectuate the dissolution of TopDevz. Troublingly, Ashkan filed a

20    post-petition lawsuit (using Estate funds to pay the filing fee and serve multiple defendants) in order

21    to prevent Davis, and those working with him, from obtaining the needed information to complete

22    the dissolution that was ordered more than two years ago. *Id.*, Ex. 12, pgs. 376-386; Ex. 10, pgs.

23    261-267. Ashkan also filed a post-petition lawsuit (again using Estate funds to pay the filing fee) to

24    obtain access to information that he has (because it was not turned over the Davis as ordered by the

25    Arbitrator) and to challenge a 1099 statement sent to him based on the millions of dollars that he

26    siphoned out of TopDevz. *Id.*, Ex. 12, pgs. 376-386; Ex. 10, pgs. 261-267. Debtor is a vexatious

27

28

MOTION TO APPOINT A TRUSTEE OR CONVERT CASE TO CHAPTER

4863-0048-2735V.1

1  litigant that will not use estate resources prudently. Instead, he intends to prosecute his meritless

2  claims himself and retain counsel at the expense of the estate. Such funds should be paid to creditors.

3       Moreover, the Debtors fraudulently transferred the Genter Street Property and Muirlands

4  Drive Property to entities owned or controlled by them. See, Hays Decl., Ex. 14. Thereafter, they

5  allowed family members and their attorneys to record deeds of trust against the Muirlands Drive

6  Property siphoning off at least $2 million of equity. *Id*.

7       Finally, the Arbitrator had serious concerns about Ashkan's veracity. *Id*, Ex. 3, pg. 135.

8  Indeed, the Arbitrator stated that he was one of the least credible witnesses that Arbitrator had ever

9  observed testify, changing his version of the "truth" based on the needs of the moment. *Id*, Ex. 3, pg.

10  135. There is no room for such dishonesty in a Chapter 11 case, where the process is predicated on a

11  debtor-in-possession acting transparently, honestly, and in the best interests of the Estate. There is no

12  basis for creditors to expect anything more than dishonest conduct from Ashkan.

13       Regardless of the label used, the evidence is clear. The Debtors are not trustworthy

14  fiduciaries. Ashkan's years of funneling TopDevz's funds to himself and his companies evidences

15  his dishonesty and constitutes gross mismanagement (and fraud). Ashkan's history of ignoring court

16  orders and seeking to circumvent prior rulings also demonstrates his dishonesty and constitutes gross

17  mismanagement. The fraudulent transfers by Ashkan Rajaee and his co-debtor wife Nassim evidence

18  incompetence or fraud. And the vindictive lawsuits that the Ashkan filed post-petition demonstrate

19  his incompetence and dishonesty. The Debtors cannot be allowed to continue as debtors-in-

20  possession.

21       Because cause exists for the appointment of a trustee, such appointment is mandatory under

22  11 U.S.C. § 1104(a)(1). A trustee must be appointed.[7]

23  ## 5.   Alternatively, Cause Exists to Convert the Case to Chapter 7

24       The procedure for dismissal or conversion of a Chapter 11 bankruptcy case is set forth in

25  11 U.S.C. § 1112(b). The movant must establish "cause" for dismissal under Section 1112(b). If a

26

27  _____

28  [7] It is also evident that the interests of creditors would be best served by the appointment of an independent fiduciary and, therefore, a trustee could also be appointed pursuant to § 1104(a)(2).

1   movant establishes "cause," after notice and a hearing, the Court shall dismiss or convert a case from

2   Chapter 11 to Chapter 7 depending on what is in the best interests of creditors. 11 U.S.C.

3   § 1112(b)(2).

4        Section 1112(b)(4) provides sixteen (16) illustrative examples of what constitutes "cause" to

5   convert or dismiss a case, includes:

6          (B)    gross mismanagement of the estate; [and]

7        . . . .

8          (E)    failure to comply with an order of the court;

9   11 U.S.C. §1112(b)(4)(B) & (E).

10        Any one of the 16 grounds may be sufficient to justify the conversion or dismissal of a case.

11   *See*, 11 U.S.C. § 1112(b)(4); *In re SGL Carbon Corp*., 200 F.3d 154 (3d Cir. 1999); *In re Koerner*,

12   800 F.2d 1358 (5th Cir. 1986).

13        Notably, the list in §1112(b)(4) is not exhaustive, and courts have broad discretion in

14   determining what constitutes "cause" under the statute. *In re Sullivan*, 522 B.R. 604, 614 (9th Cir.

15   BAP 2014). Indeed, courts often consider factors that are not included in the statute when

16   considering whether a case should remain in chapter 11. The movant bears the initial burden of

17   establishing that cause exists. *In re Syndor*, 431 B.R. 584, 2010 WL 2428655, *5 (Bankr. D. Md.

18   2010). Once a *prima facie* case establishing cause is made, the burden then shifts to the objecting

19   party to either: (a) demonstrate that unusual circumstances exist that would that make dismissal or

20   conversion unfavorable to the creditors or estate; or (b) establish that a plan will be confirmed and

21   that the act or omission that forms the basis for the aforementioned cause to dismiss or convert will

22   be cured within a reasonable period of time. 7 *Collier on Bankruptcy* ¶ 1112.01 (16th ed. 2024).

23        11 U.S.C. 1112(b) authorizes the court to convert a Chapter 11 case to a Chapter 7 case "for

24   cause" and enumerates 16 factors to consider in a finding of "cause." Although the 16 enumerated

25   factors list post-petition acts for courts to consider in determining if "cause" exists, the list is non-

26   exclusive. Bankruptcy courts are given broad discretion to convert a case for "cause." *Pioneer*

27   *Liquidating Corp. v. United States Trustee (In re Consol. Pioneer Mortgage Entities)*, 248 B.R. 368,

28

MOTION TO APPOINT A TRUSTEE OR CONVERT CASE TO CHAPTER

4863-0048-2735V.1

375 (B.A.P. 9th Cir. 2000). For instance, a finding that the debtor filed for Chapter 11 in bad faith may alone constitute cause to support conversion. *Chu v. Syntron Bioresearch, Inc. (In re Chu)*, 253 B.R. 92, citing *Marsch v. Marsch (In re Marsch)*, 36 F.3d 825, 828 (9th Cir. 1994) (per curiam); *Farley v. Coffee Cupboard, Inc. (In re Coffee Cupboard, Inc.)*, 119 B.R. 14, 17-18 (E.D.N.Y. 1990).

In deciding whether a debtor filed a Chapter 11 case in bad faith (and thus triggers a finding of "cause" to convert), courts routinely consider prepetition conduct. The Chu court lists factors that signal a bad faith bankruptcy filing across the circuits. They include (1) the debtor has one asset; (2) the debtor engaged in improper pre-petition conduct; (3) the debtor can identify only a few unsecured creditors; (4) the debtor's property has been posted for foreclosure, and the debtor has been unsuccessful in defending against the foreclosure in state court; (5) the debtor and a single creditor proceeded to a standstill in state court litigation, and the debtor has lost or has been required to post a bond which it cannot afford; (6) the filing of the petition effectively allows the debtor to evade court orders; (7) the debtor has no ongoing business or employees; and (8) the lack of possibility of reorganization. *See, e.g., Laguna Assocs. Ltd. Partnership v. Aetna Casualty & Sur. Co. (In re Laguna Assocs. Ltd. Partnership)*, 30 F.3d 734, 738 (6th Cir. 1994) ("Laguna"); *Udall v. FDIC (In re Nursery Land Dev., Inc.)*, 91 F.3d 1414, 1416 (10th Cir. 1995) (articulating similar factors); *Phoenix Piccadilly, Ltd. v. Life Ins. Co. (In re Phoenix Piccadilly Ltd.)*, 849 F.2d 1393, 1394-95 (11th Cir. 1988) (same); *Little Creek Dev. Co. v. Commonwealth Mortgage Corp. (In re Little Creek Dev. Co.)*, 779 F.2d 1068, 1072-73 (5th Cir. 1986) [**8] (same). "There is no bright line, talismanic number of factors which must exist to find bad faith; the weight of any given factor depends on the facts and circumstances of the case." *Laguna*, 30 F.3d at 738. *Chu*, 253 B.R. at 95.

## A.    The Debtors have a history of gross mismanagement

The definition and ambit of "gross mismanagement" is well within the Court's discretion to determine: "Bankruptcy courts have found gross mismanagement in cases where debtors have not maintained an effective corporate management team, failed to follow through on their fiduciary duties under chapter 11, including obtaining credit or financing outside the ordinary course of the debtor's business, filed monthly reports without closely monitoring, or where the business lacks

effective management." *Kingsway Capital Partners, LLC v. Sosa*, 549 B.R. 897, 904 (N.D. Cal. 2016) (internal citations omitted) (*quoted with approval by Margitan v. Hanna (In re McWilliams-Hanna)*, 2018 Bankr. LEXIS 3608 at *22 (B.A.P. 9th Cir. 2018)).

Admittedly, as used in §1112(b)(4)(B), the phrase "gross mismanagement" relates to the management of the Estate, and therefore, appears to be a post-petition measure of the Debtors' actions. Nonetheless, the Debtors' prior conduct is illustrative of what creditors can reasonably expect the Debtors to do and can be considered. *See, e.g.*, *Sullivan*, 522 B.R. at 614 (courts have broad discretion in determining what constitutes "cause").

The Debtors have a long history of gross mismanagement. Indeed, as explained in the Arbitration Award and Section 4.B., above, Ashkan habitually diverts funds to foreign accounts or foreign entities that he owns. Hays Decl., Ex. 3, pgs. 124-127. He also routinely seeks to circumvent lawful, appropriate court orders, including orders requiring him to return assets to the United States. *Id*, Ex. 3, pgs. 124-127. In fact, Ashkan entered the US under false pretenses claiming he made a capital contribution to support and L-1 visa when in fact he did not. Ashkan remains here illegally to this day. Unless we have a decision from INS about this, probably should not include the previous statement, but Ed should decide. Further, the Debtors have a history of trying to hide assets from creditors, including through the use of fraudulent transfers. *Id*, Ex. 3, pgs. 124-127. Lastly, in this case, Debtors are using $12,000 per month in estate assets (while generating no income) to continue to fund their lavish lifestyle which includes living in an $8.5 million home in La Jolla and renting two BMW X series vehicles at a cost of approximately $3,300 per month. *Id*, Ex. 2, pgs. 52-78.

There is no reason to believe that the Debtors will alter their historic and ongoing behavior of not preserving assets.

### B.     The Debtors have a history of not complying with court orders

Under §1112(b)(4)(E), "cause" exists if the debtors fail to comply with an order of the court. As draft, the section refers to orders of this Court, and therefore, appears to be a post-petition measure of the Debtors' actions. Again, the Debtors' prior conduct is illustrative of what creditors can reasonably expect the Debtors to do and can be considered. *See, e.g.*, *Sullivan*, 522 B.R. at 614

MOTION TO APPOINT A TRUSTEE OR CONVERT CASE TO CHAPTER
4863-0048-2735V.1

1    (courts have broad discretion in determining what constitutes "cause").

2        A partial history of Ashkan's attempts to circumvent lawful court orders is detailed in the

3    Arbitration Award and Section 4.B, above. There is no reason for creditors to believe that he will

4    behave differently now. Indeed, Ashkan's history begs the question of how long will it take for him

5    to disobey an order of this Court?

6    **C.    Cause exists to convert the case to Chapter 7 due to Debtor's lack of**

7    **good faith.**

8        Debtors' bankruptcy case was filed in bad faith and solely as a litigation tactic including

9    obtaining a stay of the Judgment without having to post a bond. A lack of good faith in filing a

10   Chapter 11 case is sufficient to establish cause to dismiss or convert the case to Chapter 7. *Green v.*

11   *Howard Family Trust* (*In re Green*), 2016 Bankr. LEXIS 3963, at *23 (9th Cir. BAP 2016) (citing

12   *Marshall v. Marshall* (*In re Marshall*), 721 F.3d 1032, 1047 (9th Cir. 2013); *Marsch v. Marsch* (*In*

13   *re Marsch*), 36 F.3d 825, 828 (9th Cir. 1994); *Sullivan v. Harnisch* (*In re Sullivan*), 522 B.R. 604,

14   614 (9th Cir. BAP 2014)). The good faith inquiry does not focus on the debtor's subjective intent. *Id*

15   at *24 (citing *In re Marsch*, 36 F.3d at 828). Courts should instead consider "the manifest purpose of

16   the filing and whether the debtor is seeking to achieve thereby 'objectives outside the legitimate

17   scope of the bankruptcy laws.'" *Id* (citing *In re Marsch*, 36 F.3d at 828; *In re Sullivan*, 522 B.R. at

18   614). "Simply put, in determining whether the Chapter 11 petition was filed in good faith, the

19   bankruptcy court must ascertain 'whether [the] debtor is attempting to unreasonably deter and harass

20   creditors or attempting to effect a speedy, efficient reorganization on a feasible basis.'" *Id*. (citing *In*

21   *re Marsch*, 36 F.3d at 828; *Idaho Dep't of Lands v. Arnold* (*In re Arnold*), 806 F.2d 937, 939 (9th

22   Cir. 1986)); *Grego v. U.S. Tr.* (*In re Grego*), 2015 Bankr. LEXIS 1792, at *5 (9th Cir. BAP 2015)).

23       Similarly, other courts in the Ninth Circuit have found bad faith in cases that were

24   filed as a litigation tactic after losses in state court. *See In re Leavitt*, 209 B.R. at 940 ("[B]ad

25   faith exists where the debtor filed a petition only with the intention to defeat state court

26   litigation.") (citing *In re Chinichian*, 784 F.2d 1440, 1445-46 (9th Cir. 1986)); *St. Paul Self*

27   *Storage Ltd. Partnership v. Port Auth.* (*In re St. Paul Self Storage Ltd. Partnership*), 185

28

B.R. 580, 583 (9th Cir. B.A.P. 1995) ("The timing of the petition and the unsuccessful

progress of the [state court] litigation strongly suggests Debtor's intent to use the bankruptcy

code as a means to escape to a forum which it perceived to be more friendly."); *In re Walter*,

108 B.R. 244, 250 (Bankr. C.D. Cal. 1989) ("Debtors' filing of their bankruptcy petition in

the instant case is at bottom forum shopping, carried on after Debtors sought but failed to

obtain relief against their creditor from state court.").

In determining whether a bankruptcy petition was filed in bad faith, courts in the

Ninth Circuit have adopted the test set forth by the Fifth Circuit in the case of *Matter of Little*

*Creek Dev. Co., supra*. According to *Little Creek*, a bankruptcy court should consider

whether the following factors are present:

> '(1) The debtor has one asset, such as a tract of undeveloped or
> developed real property. (2) The secured creditors' liens encumber this
> tract. (3) There are generally no employees except for the principals,
> (4) little or no cash flow, and no available sources of income to sustain
> a plan of reorganization or to make adequate protection payments
> pursuant to 11 U.S.C. sections 361, 362(d)(1), 363(e), or 364(d)(1).
> (5) Typically, there are only a few, if any, unsecured creditors whose
> claims are relatively small. (6) The property has usually been posted
> for foreclosure because of arrearages on the debt and the debtor has
> been unsuccessful in defending actions against foreclosure in state
> court. (7) Alternatively, the debtor and one creditor may have
> proceeded to a standstill in state court litigation, and the debtor has lost
> or has been required to post a bond which it cannot afford.
> (8) Bankruptcy offers the only possibility of forestalling loss of the
> property. (9) There are sometimes allegations of wrongdoing by the
> debtor or its principals. (10) The 'new debtor syndrome' in which a
> one-asset entity is created or revitalized on the eve of foreclosure to
> isolate the insolvent property and its creditors, exemplifies, although it
> does not uniquely categorize, bad faith cases.'

*In re Can-Alta Properties, Ltd.*, 87 B.R. at 91 (quoting *Matter of Little Creek Development Co.*, 779

F.2d at 1073) (footnote omitted) (numbers added)). A court need not find all of the factors present to

conclude that a case was filed in bad faith. *See, In re Can-Alta Properties, Ltd.*, 87 B.R. at 91; *In re*

*Walter*, 108 B.R. at 247-248; *In Re Southern California SoundSystems, Inc.*, 69 B.R. 893 (Bankr.

S.D. Cal. 1987) (finding bad faith and "cause" under section 1112(b) where only four of the Little

Creek factors were present).

Where movants establish bad faith as grounds for conversion under § 1112(b), "debtor bears

MOTION TO APPOINT A TRUSTEE OR CONVERT CASE TO CHAPTER

4863-0048-2735V.1

1   the burden of proving that the petition was filed in good faith." *In re Green*, 2016 Bankr. LEXIS

2   3963, at *24.

3          Debtors' case was filed in bad faith. As set forth in Section 4.B., above, Askhan has a long

4   history of bad faith litigation tactics, including sending assets to for foreign accounts to prevent

5   creditors from collecting. The filing is simply the next step in Ashkan's attempts to hinder, delay,

6   and defraud creditors.

7          There is no question that this case was filed in bad faith and the cause exists to convert this

8   case to one under Chapter 7.

9          Conversion, rather than dismissal, is in the best interests of creditors and the Estate. This case

10  was only filed by Debtors after it engaged in lengthy unsuccessful litigation prior to bankruptcy. In

11  order to protect creditors with allowed claims, the best interests of creditors and the Estate is served

12  by converting the case to Chapter 7 so that the Judgment Creditors can attempt to identify and

13  administer assets, prosecute any potential avoidance actions, pay claims, and close the case.

### D. Because Debtors are unemployed, Debtors are improperly using Chapter 11 to force creditors to continue to fund their $12,000 monthly expenses.

18         Debtors filed this bankruptcy as a cheap substitute for a bond to stay enforcement of

19  Movants' judgment while on appeal. But, their Schedule I reflects that neither of the Debtors are

20  employed. Hays Decl., Ex. 2, pgs. 74-75. In fact, SOFA question 4 discloses that their 2024 income

21  is only $16,900 and their 2023 income was only $146,400. *Id*, Ex. 2, pgs. 80-87. As such, their

22  Schedule J monthly expenses of $12,009 equates to a drain on the estate of $144,108 per year. *Id.*

23         This diminishment also does not include the cost of appellate counsel that Debtors intend to

24  retain at the estate's expense to appeal the $10 million fraud and breach of fiduciary duty arbitration

25  award and judgment. Debtors may not improperly force their creditors to pay for their continued

26  lavish lifestyle and litigation costs. Good cause thus exists to convert the case to Chapter 7 so a

28

MOTION TO APPOINT A TRUSTEE OR CONVERT CASE TO CHAPTER

4863-0048-2735V.1

trustee can liquidate assets for the benefit of creditors, including Debtors' $8.5 million La Jolla home. Debtors have no valid reorganization prospects – instead, this is a liquidation case that should be administered by a neutral trustee who will discharge his or her fiduciary duties to creditors.

## 6.   Conclusion

For all the foregoing reasons, Judgment Creditors believe that sufficient cause exists to appoint a Chapter 11 Trustee or, in the alternative, to convert this case to Chapter 7.

Dated: April 8, 2024                                      MARSHACK HAYS WOOD LLP

By:  _/s/ D. Edward Hays_____
D. EDWARD HAYS
ALINA MAMLYUK
Attorneys for JUDGMENT CREDITORS
TOPDEVZ, LLC and TYLER DAVIS

MOTION TO APPOINT A TRUSTEE OR CONVERT CASE TO CHAPTER
4863-0048-2735V.1

# Declaration of D. Edward Hays

I, D. EDWARD HAYS, say and declare as follows:

1.      I am an individual over 18 years of age and competent to make this declaration.

2.      If called upon to do so, I could and would competently testify as to the facts set forth in this Declaration. The facts set forth below are true of my personal knowledge.

3.      I am an attorney at law duly admitted to practice before this Court and all courts of the State of California.

4.      I am a partner of the law firm of Marshack Hays Wood LLP, attorneys for Judgment Creditors, TOPDEVZ, LLC and TYLER DAVIS, and maintain offices at 870 Roosevelt, Irvine, California, 92620.

5.      Unless otherwise stated, the facts set forth in this declaration are personally known to me and if called as a witness, I could and would competently testify thereto.

6.      All terms not otherwise defined herein are used as they are defined in the Motion.

7.      I make this declaration in support of Judgment Creditors Motion to Convert Chapter 11 Case to One Under Chapter 7 Pursuant to 11 U.S.C. §1112(b), or in the alternative appoint a Chapter 11 Trustee ("Motion.")

8.      I reviewed the docket in this case prior to execution of this Declaration to refresh my memory as to the dates on which particular documents were filed.

9.      On February 26, 2024, Debtors filed a voluntary petition under Chapter 11 of the Bankruptcy Code ("Chapter 11 BK Case"), schedules of the assets and liabilities, and statement of their financial affairs (collectively, "Schedules"). A true and correct copy of this Court's webPACER Docket for Case No. 24-00617-CL11 as of April 8, 2024, is attached here as Exhibit "1." A true and correct copy of the Schedules is attached here as Exhibit "2."

10.     Although the Debtors are acting as debtors-in-possession, as described below, the Debtors' pre-petition conduct proves their inability to serve as fiduciaries to the Estate and its creditors. Further, positions taken by the Debtors in connection with the filing of the Schedules, as well as actions taken post-petition, including post-petition lawsuits filed by Ashkan, confirm the

1    Debtors' incapacity to be honest stewards for the Estate and appropriately discharge their fiduciary

2    duties.

3        11.    In February 2021, an arbitration was commenced ("Arbitration") which lasted more

4    than two years. The parties to the Arbitration were Ashkan and Judgment Creditors. The arbitrator

5    was Rebecca Callahan ("Arbitrator"),[8] who issued a 93-page written Final Award in May 2023

6    ("Arbitration Award"). A true and correct copy of the Judgment and Arbitration Award is attached

7    here as Exhibit "3."

8        12.    The issues addressed in the Arbitration Award include (1) the respective ownership

9    interests of Ashkan and Davis in TopDevz; (2) whether grounds existed to dissolve TopDevz and, if

10   so, who should oversee the dissolution; (3) an accounting of amounts owed to or from TopDevz by

11   Davis; (4) an accounting of amounts owed to or from TopDevz by Ashkan; (5) Davis's claims

12   against Ashkan for fraud and breach of fiduciary duty; (6) Ashkan's claims against Davis for

13   defamation, civil extortion, intentional infliction of emotional distress; intentional interference with

14   contract, intentional interference with prospective business advantage, and breach of fiduciary duty.

15   In August 2023, the San Diego County Superior Court entered a Judgment confirming the

16   Arbitration Award ("Judgment"). A true and correct copy of the Judgment is attached here as Exhibit

17   "7."

18       13.    A true and correct copy of the San Diego Superior Court Docket for Case No. 37-

19   2022-00001968-CU-PA-CTL is attached here as Exhibit "9."

20       14.    A true and correct copy of the Sacramento Superior Court Docket for Case No. 34-

21   2022-00316510-CU-MC-GDS is attached here as Exhibit "10."

22       15.    A true and correct copy of the Complaint and Docket pending in the Southern District

23   of California as Case No. 3:24-00001-RSH-KSC is attached here as Exhibit "11."

24       16.    A true and correct copy of the operative complaint and docket for the Tax Case is

25   attached here as Exhibit "12."

26

27
_____

28   [8] Ms. Callahan is a 30-year AV-rated attorney that was a highly-respected bankruptcy litigator prior
     to becoming a full-time neutral.

MOTION TO APPOINT A TRUSTEE OR CONVERT CASE TO CHAPTER

4863-0048-2735V.1

17.     A true and correct copy of the Trade Secret Case operative complaint and docket is attached to the Hays Declaration as Exhibit "13."

18.     Moreover, during their initial meeting of creditors pursuant to 11 U.S.C. § 341(a), Debtors claimed not to know the beneficiaries of the trusts and whether they were beneficiaries. When asked to produce copies of the trusts, Debtors would not commit to doing so and instead said he wanted to discuss with his counsel.

19.     Findings in the Arbitration Award include that the Debtors are not and cannot be trusted to be fiduciaries of this Estate. First, while acting as TopDevz's chief executive officer, and with only a small ownership interest, Ashkan treated the company as his personal piggybank, diverting assets to other companies owned by him, and sending funds out of the country to keep them from the TopDevz and its majority shareholder—Davis. Indeed, Ashkan transferred over $1 million of company funds out of the country to bank accounts controlled by him in violation of an order issued by the Arbitrator within hours of Ashkan being notified of the same.

20.     Additionally, after Ashkan lost the Arbitration, the Debtors fraudulently transferred two properties to others, allowing family members to strip the equity from those properties in the process. A true and correct copy of the fraudulent transfer defaults obtained by the Judgment Creditors against the Trusts and LLC are attached as Exhibit "4." On the eve of filing this case, title was restored to Debtors but the equity has been stripped and there is no accounting for the disposition of the funds borrowed against those properties.

21.     Finally, the Debtors omit significant assets from their Schedules, including Ashkan's ownership interest in a company (Mobile Monsters, Inc.) that received the largest share of the funds illegally stolen by Ashkan from TopDevz. In a post-petition action filed by Ashkan, he alleges this company to be very valuable. A true and correct copy of the post-petition actions commenced by Ashkan are attached as Exhibits "5" and "6."

22.     Other false statements in the Schedules include Debtors' failure to disclose a $1 million deed of trust recorded against Debtors' $8.5 million home in La Jolla in favor of Debtors' attorneys Brown Neri as well a $1million deed of trust in favor of Ashkan's father, Majid Rajaee. A

MOTION TO APPOINT A TRUSTEE OR CONVERT CASE TO CHAPTER

1  true and correct copy of the deeds of trust are attached as Exhibit "8". Instead, Schedule F only

2  reflects a $20,000 unsecured claim owed to the firm.

3       I declare that the foregoing is true and correct under the penalty of perjury. Executed April 8,

4  2024.

5

6                                      /s/ D. Edward Hays

7                                 _____

8                                      D. EDWARD HAYS

9

10

11       4869-9510-7509, v. 1

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION TO APPOINT A TRUSTEE OR CONVERT CASE TO CHAPTER

4863-0048-2735V.1

**EXHIBIT 1**

California Southern Bankruptcy Court ( LIVE )

**DebtEd, DebtEdJT, 341cntd**

# U.S. Bankruptcy Court
## Southern District of California (San Diego)
### Bankruptcy Petition #: 24-00617-CL11

| | |
|---|---|
| *Date filed:* | 02/26/2024 |
| *341 meeting:* | 05/02/2024 |
| *Deadline for filing claims:* | 05/06/2024 |
| *Deadline for filing claims (govt.):* | 08/26/2024 |

*Assigned to:* Chief Judge Christopher B. Latham
Chapter 11
Voluntary
Asset

| | |
|---|---|
| ***Debtor***<br>**Ashkan Mirfakhr Rajaee**<br>6625 Muirlands Dr<br>La Jolla, CA 92037<br>SAN DIEGO-CA<br>SSN / ITIN: xxx-xx-6511 | represented by **Leslie A. Cohen**<br>Leslie Cohen Law, PC<br>1615-A Montana Avenue<br>Santa Monica, CA 90403<br>310-394-5900<br>Email: leslie@lesliecohenlaw.com |
| ***Joint Debtor***<br>**Nassim Rajaee**<br>6625 Muirlands Dr<br>La Jolla, CA 92037<br>SAN DIEGO-CA<br>SSN / ITIN: xxx-xx-8323 | represented by **Leslie A. Cohen**<br>(See above for address) |
| ***United States Trustee***<br>**United States Trustee**<br>Office of the U.S. Trustee<br>880 Front Street<br>Suite 3230<br>San Diego, CA 92101<br>619-557-5013 | represented by **Elvina Rofael**<br>DOJ-Ust<br>880 Front Street, Third Floor<br>Ste 3230<br>San Diego, CA 92101<br>202-934-4062<br>Email: elvina.rofael@usdoj.gov |

| Filing Date | # | Docket Text |
|---|---|---|
| 02/26/2024 | 1<br>(60 pgs) | Chapter 11 Voluntary Petition for Individual, Fee Amount $ 1738.00. Declaration re: Electronic Filing due by 03/11/2024, Chapter 11 Plan due by 06/25/2024, Disclosure Statement due by 06/25/2024, Filed by Leslie A. Cohen of Leslie Cohen Law, PC on behalf of Ashkan Mirfakhr Rajaee, Nassim Rajaee. (Cohen, Leslie) (Entered: 02/26/2024) |
| 02/26/2024 | 2 | Receipt of Statement About Your Social Security Number COURT NOTE: The PDF document is a secured image. filed by Leslie A. Cohen on behalf of Ashkan Mirfakhr Rajaee, Nassim Rajaee. (related documents 1 Chapter 11 Voluntary Petition) (Cohen, Leslie) (Entered: 02/26/2024) |
| 02/26/2024 | 3<br>(1 pg) | Certificate of Credit Counseling for Debtor, Dated 12/18/2023 filed by Leslie A. Cohen on behalf of Ashkan Mirfakhr Rajaee. For Court Use Only: 180 days CC Date from case filing: 08/30/2023, (related documents 1 Chapter 11 Voluntary Petition) (Cohen, Leslie) (Entered: 02/26/2024) |

EXHIBIT 1, PAGE 29

California Southern Bankruptcy Court ( LIVE )

| 02/26/2024 | 4<br>(1 pg) | Dated 2/26/2024 Certificate of Credit Counseling for Joint Debtor Dated 12/18/2023 filed by Leslie A. Cohen on behalf of Nassim Rajaee. For Court Use Only: 180 days CC Date from case filing: 08/30/2023, (related documents 1 Chapter 11 Voluntary Petition) (Cohen, Leslie) (Entered: 02/26/2024) |
| 02/26/2024 | | Receipt of Chapter 11 Voluntary Petition( 24-00617-11) [misc,1031] (1738.00) Filing Fee. Fee Amount 1738.00 Receipt number B17979811 (re: Doc# 1); (U.S. Treasury) (Entered: 02/26/2024) |
| 02/27/2024 | 5 | *Notice of Appearance and* Request for Special Notice. United States Trustees Office, 880 Front Street, Third Floor, Suite 3230, San Diego, CA 92101 filed by Elvina Rofael on behalf of United States Trustee. (Rofael, Elvina) (Entered: 02/27/2024) |
| 02/27/2024 | 6<br>(3 pgs; 2 docs) | Notice of Chapter 11 Bankruptcy Case, and Meeting of Creditors, Meeting of Creditors Located at 880 Front St., Edward J. Schwartz Bldg, 1st Fl, Room 1234 (B), San Diego, CA 92101, **341(a) meeting to be held on 4/4/2024 at 11:00 AM To access telephonic 341 meeting, call 877-874-4964 and enter passcode 9790041# when prompted.(ust4)** Deadline for filing a complaint objecting to discharge or challenge certain debts are dischargeable due by 6/3/2024. Proof of Claims due by 5/6/2024, Governmental Proof of Claims due by 8/26/2024, (Li, J.) (Entered: 02/27/2024) |
| 02/27/2024 | 7<br>(3 pgs; 2 docs) | Notice of Missing *Declaration Re Electronic Filing of Petition Schedules and Statements*, 1 Declaration re: Electronic Filing due by 3/11/2024, (related documents 1 Chapter 11 Voluntary Petition) (Li, J.) (Entered: 02/27/2024) |
| 02/27/2024 | 10<br>(3 pgs) | BNC Court Certificate of Notice re Notice of Incomplete Schedules Due (related documents 7 Notice of Missing Schedules, Statement(s) and/or Plan) Notice Date 02/29/2024. (Admin.) (Entered: 02/29/2024) |
| 02/27/2024 | 11<br>(4 pgs) | BNC Court Certificate of Notice re Bankruptcy Case and Meeting of Creditors. (related documents 6 Notice of Chapter 11 Bankruptcy Case & Meeting of Creditors) Notice Date 02/29/2024. (Admin.) (Entered: 02/29/2024) |
| 02/28/2024 | 8<br>(4 pgs; 2 docs) | Order re: Status Conference; with BNC Service **HEARING Scheduled for 5/6/2024 at 02:30 PM at Courtroom 5, Room 318, Weinberger Courthouse** . (related documents 1 Chapter 11 Voluntary Petition) signed on 2/28/2024. (Li, J.) (Entered: 02/28/2024) |
| 02/28/2024 | 12<br>(5 pgs) | BNC Court Certificate of Notice. (related documents 8 Status Conference(hrg)(Order)) Notice Date 03/01/2024. (Admin.) (Entered: 03/01/2024) |
| 02/29/2024 | 9<br>(2 pgs; 2 docs) | Notice of Status Conference on Chapter 11 Petition **HEARING Scheduled for 5/6/2024 at 02:30 PM at Courtroom 5, Room 318, Weinberger Courthouse**. (related documents 1 Chapter 11 Voluntary Petition) (Rodriguez-Olivas, J.) (Entered: 02/29/2024) |
| 03/01/2024 | 13<br>(3 pgs) | BNC Court Certificate of Notice. (related documents 9 Notice of Status Conference on Chapter 11 Petition) Notice Date 03/03/2024. (Admin.) (Entered: 03/03/2024) |

EXHIBIT 1, PAGE 30

California Southern Bankruptcy Court ( LIVE )

| | | |
|---|---|---|
| 03/11/2024 | 14<br>(2 pgs) | Declaration Re: Electronic Filing filed by Leslie A. Cohen on behalf of Ashkan Mirfakhr Rajaee, Nassim Rajaee. (related documents 1 Chapter 11 Voluntary Petition, 7 Notice of Missing Schedules, Statement(s) and/or Plan) (Cohen, Leslie) (Entered: 03/11/2024) |
| 03/21/2024 | 15<br>(16 pgs) | Chapter 11 Monthly Operating Report for the Month Ending: 02/29/2024 filed by Leslie A. Cohen on behalf of Ashkan Mirfakhr Rajaee. (Cohen, Leslie) (Entered: 03/21/2024) |
| 03/21/2024 | 16<br>(28 pgs) | Ex Parte Application to Employ *Leslie Cohen Law PC as Bankruptcy Counsel* filed by Leslie A. Cohen on behalf of Ashkan Mirfakhr Rajaee, Nassim Rajaee (Cohen, Leslie) (Entered: 03/21/2024) |
| 04/04/2024 | 17 | Notice of Continuance of Meeting of Creditors *Debtors and Counsel Appeared* filed by Elvina Rofael on behalf of United States Trustee. **341(a) meeting to be held on 5/2/2024 at 02:30 PM To access telephonic 341 meeting, call 877-874-4964 and enter passcode 9790041# when prompted.(ust4)** (related documents 6 Notice of Chapter 11 Bankruptcy Case & Meeting of Creditors) (Rofael, Elvina) (Entered: 04/04/2024) |
| 04/04/2024 | 18<br>(15 pgs; 2 docs) | Statement of Position: The U.S. Trustee objects to the application. *United States Trustee's Objection and Reservation of Rights to the Application to Employ Leslie Cohen Law (ECF No. 16)* filed by Elvina Rofael on behalf of United States Trustee. (Attachments: # 1 West Declaration) (related documents 16 Application to Employ) (Rofael, Elvina) (Entered: 04/04/2024) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 04/08/2024 10:43:54 | | | |
| **PACER Login:** | attydeh162507 | **Client Code:** | 9999-001 |
| **Description:** | Docket Report | **Search Criteria:** | 24-00617-CL11 Fil or Ent: filed From: 1/1/1979 To: 4/8/2024 Doc From: 0 Doc To: 99999999 Headers: included Format: html Page counts for documents: included |
| **Billable Pages:** | 2 | **Cost:** | 0.20 |

EXHIBIT 1, PAGE 31

**EXHIBIT 2**

**Fill in this information to identify your case:**

United States Bankruptcy Court for the:

Southern District of California

Case number (*If known*): _____

Chapter you are filing under:
- ☐ Chapter 7
- ☑ Chapter 11
- ☐ Chapter 12
- ☐ Chapter 13

☐ Check if this is an amended filing

Official Form 101

# Voluntary Petition for Individuals Filing for Bankruptcy    12/22

The bankruptcy forms use *you* and *Debtor 1* to refer to a debtor filing alone. A married couple may file a bankruptcy case together—called a *joint case*—and in joint cases, these forms use *you* to ask for information from both debtors. For example, if a form asks, "Do you own a car," the answer would be *yes* if either debtor owns a car. When information is needed about the spouses separately, the form uses *Debtor 1* and *Debtor 2* to distinguish between them. In joint cases, one of the spouses must report information as *Debtor 1* and the other as *Debtor 2*. The same person must be *Debtor 1* in all of the forms.

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

## Part 1:  Identify Yourself

| | About Debtor 1: | About Debtor 2 (Spouse Only in a Joint Case): |
|---|---|---|
| **1. Your full name** <br><br> Write the name that is on your government-issued picture identification (for example, your driver's license or passport). <br><br> Bring your picture identification to your meeting with the trustee. | Ashkan <br> First name <br><br> _____ <br> Middle name <br><br> Mirfakhr Rajaee <br> Last name <br><br> _____ <br> Suffix (Sr., Jr., II, III) | Nassim <br> First name <br><br> _____ <br> Middle name <br><br> Rajaee <br> Last name <br><br> _____ <br> Suffix (Sr., Jr., II, III) |
| **2. All other names you have used in the last 8 years** <br><br> Include your married or maiden names and any assumed, trade names and doing business as names. <br><br> Do NOT list the name of any separate legal entity such as a corporation, partnership, or LLC that is not filing this petition. | | |
| **3. Only the last 4 digits of your Social Security number or federal Individual Taxpayer Identification number (ITIN)** | xxx – xx – 6 5 1 1 <br> OR <br> **9** xx – xx – ___ ___ ___ ___ | xxx – xx – 8 3 2 3 <br> OR <br> **9** xx – xx – ___ ___ ___ ___ |

EXHIBIT 2, PAGE 32

Debtor 1    Ashkan  Mirfakhr Rajaee & Nassim  Rajaee

First Name    Middle Name    Last Name

Case number (*if known*)_____

|  | About Debtor 1: | About Debtor 2 (Spouse Only in a Joint Case): |
|---|---|---|
| **4. Your Employer Identification Number (EIN), if any.** | EIN _____<br><br>EIN _____<br><br>EIN _____<br><br>EIN _____ | EIN _____<br><br>EIN _____<br><br>EIN _____<br><br>EIN _____ |

| | | |
|---|---|---|
| **5. Where you live** | 6625 Muirlands Dr<br>Number    Street<br><br>=<br><br>La Jolla    CA    92037<br>City    State    ZIP Code<br>San Diego County<br>County<br><br>**If your mailing address is different from the one above, fill it in here.** Note that the court will send any notices to you at this mailing address.<br><br>_____<br>Number    Street<br><br>_____<br>P.O. Box<br><br>_____<br>City    State    ZIP Code | **If Debtor 2 lives at a different address:**<br><br>_____<br>Number    Street<br><br>_____<br><br>_____<br>City    State    ZIP Code<br><br>_____<br>County<br><br>**If Debtor 2's mailing address is different from yours, fill it in here.** Note that the court will send any notices to this mailing address.<br><br>_____<br>Number    Street<br><br>_____<br>P.O. Box<br><br>_____<br>City    State    ZIP Code |

| | | |
|---|---|---|
| **6. Why you are choosing *this district* to file for bankruptcy** | *Check one:*<br><br>☑ Over the last 180 days before filing this petition, I have lived in this district longer than in any other district.<br><br>☐ I have another reason. Explain.<br>(See 28 U.S.C. § 1408.) | *Check one:*<br><br>☑ Over the last 180 days before filing this petition, I have lived in this district longer than in any other district.<br><br>☐ I have another reason. Explain.<br>(See 28 U.S.C. § 1408.) |

EXHIBIT 2, PAGE 33

Debtor 1    Ashkan  Mirfakhr Rajaee & Nassim  Rajaee

     First Name     Middle Name     Last Name

Case number *(if known)*_____

---

**Part 2:    Tell the Court About Your Bankruptcy Case**

---

**7. The chapter of the Bankruptcy Code you are choosing to file under**

*Check one.* (For a brief description of each, see *Notice Required by 11 U.S.C. § 342(b) for Individuals Filing for Bankruptcy* (Form 2010)). Also, go to the top of page 1 and check the appropriate box.

☐ Chapter 7

☑ Chapter 11

☐ Chapter 12

☐ Chapter 13

---

**8. How you will pay the fee**

☑ **I will pay the entire fee when I file my petition.** Please check with the clerk's office in your local court for more details about how you may pay. Typically, if you are paying the fee yourself, you may pay with cash, cashier's check, or money order. If your attorney is submitting your payment on your behalf, your attorney may pay with a credit card or check with a pre-printed address.

☐ **I need to pay the fee in installments.** If you choose this option, sign and attach the *Application for Individuals to Pay The Filing Fee in Installments* (Official Form 103A).

☐ **I request that my fee be waived** (You may request this option only if you are filing for Chapter 7. By law, a judge may, but is not required to, waive your fee, and may do so only if your income is less than 150% of the official poverty line that applies to your family size and you are unable to pay the fee in installments). If you choose this option, you must fill out the *Application to Have the Chapter 7 Filing Fee Waived* (Official Form 103B) and file it with your petition.

---

**9. Have you filed for bankruptcy within the last 8 years?**

☑ No

☐ Yes.    District _____    When _____    Case number _____

District _____    When _____    Case number _____

District _____    When _____    Case number _____

---

**10. Are any bankruptcy cases pending or being filed by a spouse who is not filing this case with you, or by a business partner, or by an affiliate?**

☑ No

☐ Yes.

Debtor _____    Relationship to you _____

District _____    When _____    Case number, if known_____

Debtor _____    Relationship to you _____

District _____    When _____    Case number, if known_____

---

**11. Do you rent your residence?**

☑ No.    Go to line 12.

☐ Yes.    Has your landlord obtained an eviction judgment against you?

☐ No. Go to line 12.

☐ Yes. Fill out *Initial Statement About an Eviction Judgment Against You* (Form 101A) and file it with this bankruptcy petition.

---

Official Form 101          Voluntary Petition for Individuals Filing for Bankruptcy          page 3

**EXHIBIT 2, PAGE 34**

Debtor 1    Ashkan  Mirfakhr Rajaee & Nassim  Rajaee
        First Name     Middle Name     Last Name

Case number *(if known)*_____

---

**Part 3:**    **Report About Any Businesses You Own as a Sole Proprietor**

**12. Are you a sole proprietor of any full- or part-time business?**

☑ No. Go to Part 4.

☐ Yes. Name and location of business

A sole proprietorship is a business you operate as an individual, and is not a separate legal entity such as a corporation, partnership, or LLC.

Name of business, if any
_____

If you have more than one sole proprietorship, use a separate sheet and attach it to this petition.

Number     Street
_____

_____

City                    State     ZIP Code

*Check the appropriate box to describe your business:*

☐ Health Care Business (as defined in 11 U.S.C. § 101(27A))

☐ Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))

☐ Stockbroker (as defined in 11 U.S.C. § 101(53A))

☐ Commodity Broker (as defined in 11 U.S.C. § 101(6))

☐ None of the above

---

**13. Are you filing under Chapter 11 of the Bankruptcy Code and are you a *small business debtor* or a debtor as defined by 11 U. S. C. § 1182(1)?**

For a definition of *small business debtor,* see 11 U.S.C. § 101(51D).

*If you are filing under Chapter 11, the court must know whether you are a small business debtor or a debtor choosing to proceed under Subchapter V so that it can set appropriate deadlines. If you indicate that you are a small business debtor or you are choosing to proceed under Subchapter V, you must attach your most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if any of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).*

☐ No. I am not filing under Chapter 11.

☑ No. I am filing under Chapter 11, but I am NOT a small business debtor according to the definition in the Bankruptcy Code.

☐ Yes. I am filing under Chapter 11 and I am a small business debtor according to the definition in the Bankruptcy Code, and I do not choose to proceed under Subchapter V of Chapter 11.

☐ Yes. I am filing under Chapter 11, I am a debtor according to the definition in § 1182(1) of the Bankrutpcy Code, and I choose to proceed under Subchatper V of Chapter 11.

---

**Part 4:**    **Report if You Own or Have Any Hazardous Property or Any Property That Needs Immediate Attention**

**14. Do you own or have any property that poses or is alleged to pose a threat of imminent and identifiable hazard to public health or safety? Or do you own any property that needs immediate attention?**

*For example, do you own perishable goods, or livestock that must be fed, or a building that needs urgent repairs?*

☑ No

☐ Yes.  What is the hazard?

If immediate attention is needed, why is it needed?

Where is the property?

---

Official Form 101           **Voluntary Petition for Individuals Filing for Bankruptcy**          page 4

EXHIBIT 2, PAGE 35

| Debtor 1 | Ashkan | Mirfakhr Rajaee & Nassim | Rajaee | Case number (if known) _____ |
|---|---|---|---|---|
| | First Name | Middle Name | Last Name | |

---

**Part 5:　Explain Your Efforts to Receive a Briefing About Credit Counseling**

**15. Tell the court whether you have received a briefing about credit counseling.**

The law requires that you receive a briefing about credit counseling before you file for bankruptcy. You must truthfully check one of the following choices. If you cannot do so, you are not eligible to file.

If you file anyway, the court can dismiss your case, you will lose whatever filing fee you paid, and your creditors can begin collection activities again.

**About Debtor 1:**

*You must check one:*

☑ **I received a briefing from an approved credit counseling agency within the 180 days before I filed this bankruptcy petition, and I received a certificate of completion.**
Attach a copy of the certificate and the payment plan, if any, that you developed with the agency.

☐ **I received a briefing from an approved credit counseling agency within the 180 days before I filed this bankruptcy petition, but I do not have a certificate of completion.**
Within 14 days after you file this bankruptcy petition, you MUST file a copy of the certificate and payment plan, if any.

☐ **I certify that I asked for credit counseling services from an approved agency, but was unable to obtain those services during the 7 days after I made my request, and exigent circumstances merit a 30-day temporary waiver of the requirement.**

To ask for a 30-day temporary waiver of the requirement, attach a separate sheet explaining what efforts you made to obtain the briefing, why you were unable to obtain it before you filed for bankruptcy, and what exigent circumstances required you to file this case.

Your case may be dismissed if the court is dissatisfied with your reasons for not receiving a briefing before you filed for bankruptcy.

If the court is satisfied with your reasons, you must still receive a briefing within 30 days after you file. You must file a certificate from the approved agency, along with a copy of the payment plan you developed, if any. If you do not do so, your case may be dismissed.

Any extension of the 30-day deadline is granted only for cause and is limited to a maximum of 15 days.

☐ **I am not required to receive a briefing about credit counseling because of:**

☐ **Incapacity.** I have a mental illness or a mental deficiency that makes me incapable of realizing or making rational decisions about finances.

☐ **Disability.** My physical disability causes me to be unable to participate in a briefing in person, by phone, or through the internet, even after I reasonably tried to do so.

☐ **Active duty.** I am currently on active military duty in a military combat zone.

If you believe you are not required to receive a briefing about credit counseling, you must file a motion for waiver of credit counseling with the court.

**About Debtor 2 (Spouse Only in a Joint Case):**

*You must check one:*

☑ **I received a briefing from an approved credit counseling agency within the 180 days before I filed this bankruptcy petition, and I received a certificate of completion.**
Attach a copy of the certificate and the payment plan, if any, that you developed with the agency.

☐ **I received a briefing from an approved credit counseling agency within the 180 days before I filed this bankruptcy petition, but I do not have a certificate of completion.**
Within 14 days after you file this bankruptcy petition, you MUST file a copy of the certificate and payment plan, if any.

☐ **I certify that I asked for credit counseling services from an approved agency, but was unable to obtain those services during the 7 days after I made my request, and exigent circumstances merit a 30-day temporary waiver of the requirement.**

To ask for a 30-day temporary waiver of the requirement, attach a separate sheet explaining what efforts you made to obtain the briefing, why you were unable to obtain it before you filed for bankruptcy, and what exigent circumstances required you to file this case.

Your case may be dismissed if the court is dissatisfied with your reasons for not receiving a briefing before you filed for bankruptcy.

If the court is satisfied with your reasons, you must still receive a briefing within 30 days after you file. You must file a certificate from the approved agency, along with a copy of the payment plan you developed, if any. If you do not do so, your case may be dismissed.

Any extension of the 30-day deadline is granted only for cause and is limited to a maximum of 15 days.

☐ **I am not required to receive a briefing about credit counseling because of:**

☐ **Incapacity.** I have a mental illness or a mental deficiency that makes me incapable of realizing or making rational decisions about finances.

☐ **Disability.** My physical disability causes me to be unable to participate in a briefing in person, by phone, or through the internet, even after I reasonably tried to do so.

☐ **Active duty.** I am currently on active military duty in a military combat zone.

If you believe you are not required to receive a briefing about credit counseling, you must file a motion for waiver of credit counseling with the court.

---

EXHIBIT 2, PAGE 36

Debtor 1   Ashkan  Mirfakhr Rajaee & Nassim  Rajaee                    Case number (if known)_____
           First Name    Middle Name    Last Name

---

**Part 6:    Answer These Questions for Reporting Purposes**

**16. What kind of debts do you have?**

**16a. Are your debts primarily consumer debts?** *Consumer debts* are defined in 11 U.S.C. § 101(8) as "incurred by an individual primarily for a personal, family, or household purpose."

☑ No. Go to line 16b.
☐ Yes. Go to line 17.

**16b. Are your debts primarily business debts?** *Business debts* are debts that you incurred to obtain money for a business or investment or through the operation of the business or investment.

☐ No. Go to line 16c.
☑ Yes. Go to line 17.

16c. State the type of debts you owe that are not consumer debts or business debts.

_____

**17. Are you filing under Chapter 7?**

☑ No.  I am not filing under Chapter 7. Go to line 18.

**Do you estimate that after any exempt property is excluded and administrative expenses are paid that funds will be available for distribution to unsecured creditors?**

☐ Yes. I am filing under Chapter 7. Do you estimate that after any exempt property is excluded and administrative expenses are paid that funds will be available to distribute to unsecured creditors?

☐ No
☐ Yes

**18. How many creditors do you estimate that you owe?**

☑ 1-49
☐ 50-99
☐ 100-199
☐ 200-999
☐ 1,000-5,000
☐ 5,001-10,000
☐ 10,001-25,000
☐ 25,001-50,000
☐ 50,001-100,000
☐ More than 100,000

**19. How much do you estimate your assets to be worth?**

☐ $0-$50,000
☐ $50,001-$100,000
☐ $100,001-$500,000
☐ $500,001-$1 million
☐ $1,000,001-$10 million
☐ $10,000,001-$50 million
☑ $50,000,001-$100 million
☐ $100,000,001-$500 million
☐ $500,000,001-$1 billion
☐ $1,000,000,001-$10 billion
☐ $10,000,000,001-$50 billion
☐ More than $50 billion

**20. How much do you estimate your liabilities to be?**

☐ $0-$50,000
☐ $50,001-$100,000
☐ $100,001-$500,000
☐ $500,001-$1 million
☐ $1,000,001-$10 million
☑ $10,000,001-$50 million
☐ $50,000,001-$100 million
☐ $100,000,001-$500 million
☐ $500,000,001-$1 billion
☐ $1,000,000,001-$10 billion
☐ $10,000,000,001-$50 billion
☐ More than $50 billion

**Part 7:    Sign Below**

**For you**

I have examined this petition, and I declare under penalty of perjury that the information provided is true and correct.

If I have chosen to file under Chapter 7, I am aware that I may proceed, if eligible, under Chapter 7, 11,12, or 13 of title 11, United States Code. I understand the relief available under each chapter, and I choose to proceed under Chapter 7.

If no attorney represents me and I did not pay or agree to pay someone who is not an attorney to help me fill out this document, I have obtained and read the notice required by 11 U.S.C. § 342(b).

I request relief in accordance with the chapter of title 11, United States Code, specified in this petition.

I understand making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $250,000, or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

✗ _____         ✗ _____
Signature of Debtor 1              Signature of Debtor 2

Executed on  02/26/2024            Executed on  02/26/2024
             MM / DD / YYYY                     MM / DD / YYYY

---

EXHIBIT 2, PAGE 37

Debtor 1    Ashkan  Mirfakhr Rajaee & Nassim  Rajaee
        First Name     Middle Name     Last Name

Case number _(if known)_____

---

**For your attorney, if you are represented by one**

**If you are not represented by an attorney, you do not need to file this page.**

I, the attorney for the debtor(s) named in this petition, declare that I have informed the debtor(s) about eligibility to proceed under Chapter 7, 11, 12, or 13 of title 11, United States Code, and have explained the relief available under each chapter for which the person is eligible.  I also certify that I have delivered to the debtor(s) the notice required by 11 U.S.C. § 342(b) and, in a case in which § 707(b)(4)(D) applies, certify that I have no knowledge after an inquiry that the information in the schedules filed with the petition is incorrect.

✖  /s/ Leslie Cohen

Signature of Attorney for Debtor

Date    02/26/2024
    MM  /  DD  / YYYY

Leslie Cohen

Printed name

Leslie Cohen Law PC

Firm name

1615-A Montana Avenue

Number    Street

Santa Monica    CA    90403

City    State    ZIP Code

Contact phone  3103945900    Email address    leslie@lesliecohenlaw.com

93698    CA

Bar number    State

---

EXHIBIT 2, PAGE 38

**Fill in this information to identify your case:**

| | | | |
|---|---|---|---|
| Debtor 1 | Ashkan  Mirfakhr Rajaee | | |
| | First Name | Middle Name | Last Name |
| Debtor 2 | Nassim  Rajaee | | |
| (Spouse, if filing) | First Name | Middle Name | Last Name |

United States Bankruptcy Court for the:  Southern District of California

Case number
(If known)  _____

☐ Check if this is an
    amended filing

Official Form 104

# For Individual Chapter 11 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims Against You and Are Not Insiders        12/15

If you are an individual filing for bankruptcy under Chapter 11, you must fill out this form. If you are filing under Chapter 7, Chapter 12, or Chapter 13, do not fill out this form. Do not include claims by anyone who is an *insider*. Insiders include your relatives; any general partners; relatives of any general partners; partnerships of which you are a general partner; corporations of which you are an officer, director, person in control, or owner of 20 percent or more of their voting securities; and any managing agent, including one for a business you operate as a sole proprietor.  11 U.S.C. § 101.  Also, do not include claims by secured creditors unless the unsecured claim resulting from inadequate collateral value places the creditor among the holders of the 20 largest unsecured claims.

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information.

**Part 1:**    List the 20 Unsecured Claims in Order from Largest to Smallest. Do Not Include Claims by Insiders.

|  |  | Unsecured claim |
|---|---|---|

**1**

TopDevz, LLC and Tyler Davis
Creditor's Name
c/o Kenneth R. Reynolds, Esq.
Number          Street
2020 Hurley Way, Suite 210

Sacramento              CA    95825
City                            State    ZIP Code
Kenneth Reynolds
Contact
(916) 925-3169
Contact phone

What is the nature of the claim? Judgment

As of the date you file, the claim is: Check all that apply.
☑ Contingent
☐ Unliquidated
☑ Disputed
☐ None of the above apply

Does the creditor have a lien on your property?
☑ No
☐ Yes. Total claim (secured and unsecured):    $ _____
            Value of security:          –  $ _____
            Unsecured claim              $ _____

$ 10,000,000.00

**2**

Astute Legal Solicitors & Advocates
Creditor's Name
36-37 Albert Embankment
Number          Street

London,€SE1 7TL Ur
City                            State    ZIP Code
Orville Thomas
Contact
020 3633 0138
Contact phone

What is the nature of the claim? Legal services

As of the date you file, the claim is: Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed
☑ None of the above apply

Does the creditor have a lien on your property?
☑ No
☐ Yes. Total claim (secured and unsecured):    $ _____
            Value of security:          –  $ _____
            Unsecured claim              $ _____

$ 1,945,000.00

EXHIBIT 2, PAGE 39

Debtor 1    Ashkan  Mirfakhr Rajaee
　　　　　　First Name    Middle Name    Last Name

Case number (if known)_____

| | **Unsecured claim** |
|---|---|

**3** Fox Rothchild
Creditor's Name

Attn: Glenda Martinez
Number　　　Street

10250 Constellation Blvd. Ste 900

Seattle　　　　　　　WA　　9067
City　　　　　　　　State　　ZIP Code

Glenda Martinez
Contact

(424) 285-7043
Contact phone

What is the nature of the claim? Legal services

As of the date you file, the claim is: Check all that apply.
☐ Contingent
☐ Unliquidated
☑ Disputed
☐ None of the above apply

Does the creditor have a lien on your property?
☑ No
☐ Yes. Total claim (secured and unsecured):　$_____
　　　　Value of security:　－　$_____
　　　　Unsecured claim　　　$_____

$273,705.57

---

**4** American Express
Creditor's Name

P.O. Box 981535
Number　　　Street

El Paso　　　　　　TX　　79998
City　　　　　　　State　　ZIP Code

Aaron Baldaro
Contact

212-640-2000
Contact phone

What is the nature of the claim? Credit Card Debt

As of the date you file, the claim is: Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed
☑ None of the above apply

Does the creditor have a lien on your property?
☑ No
☐ Yes. Total claim (secured and unsecured):　$_____
　　　　Value of security:　－　$_____
　　　　Unsecured claim　　　$_____

$236,000.00

---

**5** Midway Rent a Car, Inc.
Creditor's Name

c/o Richard Scott The Molino Firm
Number　　　Street

4751 Wilshire Blvd. Ste. 207

Los Angeles　　　　CA　　90010
City　　　　　　　State　　ZIP Code

Richard Scott
Contact

323-692-4015
Contact phone

What is the nature of the claim? Lawsuit

As of the date you file, the claim is: Check all that apply.
☐ Contingent
☐ Unliquidated
☑ Disputed
☐ None of the above apply

Does the creditor have a lien on your property?
☑ No
☐ Yes. Total claim (secured and unsecured):　$_____
　　　　Value of security:　－　$_____
　　　　Unsecured claim　　　$_____

$69,000.00

---

**6** Miller Thomson LLP
Creditor's Name

Attn: Millter Thomson
Number　　　Street

Scotia Plaza 40 King Street West, Suite 5

P.O. Box 1011　　　　Toronto, N M
City　　　　　　　State　　ZIP Code

Millter Thomson
Contact

416-595-8500
Contact phone

What is the nature of the claim? Legal services

As of the date you file, the claim is: Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed
☐ None of the above apply

Does the creditor have a lien on your property?
☑ No
☐ Yes. Total claim (secured and unsecured):　$_____
　　　　Value of security:　－　$_____
　　　　Unsecured claim　　　$_____

$38,000.00

---

**7** BMO Canada
Creditor's Name

P.O. Box 11064
Number　　　Street

Station Centre-Ville

Montreal QC H3C 5A2
City　　　　　　　State　　ZIP Code

Contact

800-263-2263
Contact phone

What is the nature of the claim? Credit Card Debt

As of the date you file, the claim is: Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed
☑ None of the above apply

Does the creditor have a lien on your property?
☑ No
☐ Yes. Total claim (secured and unsecured):　$_____
　　　　Value of security:　－　$_____
　　　　Unsecured claim　　　$_____

$38,000.00

---

EXHIBIT 2, PAGE 40

Debtor 1    Ashkan  Mirfakhr Rajaee
First Name    Middle Name    Last Name

Case number (if known) _____

| | | Unsecured claim |
|---|---|---|

**8** | Wells Fargo
Creditor's Name

150 E. 42nd Street
Number    Street

New York        NY    10017
City        State    ZIP Code

Contact

1 (800) 869-3557
Contact phone

What is the nature of the claim? Credit Card Debt

**As of the date you file, the claim is:** Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed
☑ None of the above apply

**Does the creditor have a lien on your property?**
☑ No
☐ Yes. Total claim (secured and unsecured): $_____
Value of security: – $_____
Unsecured claim $_____

$ 31,862.00

---

**9** | Kopple Klinger & Elbaz LLP
Creditor's Name

Attn: Leslie Klinger
Number    Street

10866 Wilshire Blvd Suite 1500

Los Angeles        CA    90024
City        State    ZIP Code

Leslie Klinger
Contact

310-475-1444
Contact phone

What is the nature of the claim? Legal services

**As of the date you file, the claim is:** Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed
☑ None of the above apply

**Does the creditor have a lien on your property?**
☑ No
☐ Yes. Total claim (secured and unsecured): $_____
Value of security: – $_____
Unsecured claim $_____

$ 20,000.00

---

**10** | B Riley
Creditor's Name

Attn: Emily Hayes
Number    Street

299 Park Avenue, 21st Fl

New York        NY    10171
City        State    ZIP Code

Emily Hayes
Contact

(646) 885-4515
Contact phone

What is the nature of the claim? Suppliers and Vendors

**As of the date you file, the claim is:** Check all that apply.
☐ Contingent
☐ Unliquidated
☑ Disputed
☐ None of the above apply

**Does the creditor have a lien on your property?**
☑ No
☐ Yes. Total claim (secured and unsecured): $_____
Value of security: – $_____
Unsecured claim $_____

$ 18,500.00

---

**11** | Capital One Financial Corp
Creditor's Name

1680 Capital One Drive
Number    Street

McLean        VA    22102-3491
City        State    ZIP Code

Contact

800-227-4825
Contact phone

What is the nature of the claim? Credit Card Debt

**As of the date you file, the claim is:** Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed
☑ None of the above apply

**Does the creditor have a lien on your property?**
☑ No
☐ Yes. Total claim (secured and unsecured): $_____
Value of security: – $_____
Unsecured claim $_____

$ 17,500.00

---

**12** | Lone Mountain Aircraft
Creditor's Name

c/o Jonathan Ewing, Aero Law Center
Number    Street

1100 Lee Wagener Blvd., Ste 211

Fort Lauderdale        FL    33315
City        State    ZIP Code

Jonathan Ewing
Contact

954.400.4643
Contact phone

What is the nature of the claim? _____

**As of the date you file, the claim is:** Check all that apply.
☑ Contingent
☑ Unliquidated
☑ Disputed
☐ None of the above apply

**Does the creditor have a lien on your property?**
☑ No
☐ Yes. Total claim (secured and unsecured): $_____
Value of security: – $_____
Unsecured claim $_____

$ 16,675.00

---

EXHIBIT 2, PAGE 41

| Debtor 1 | Ashkan  Mirfakhr Rajaee | | Case number (if known) _____ |
|---|---|---|---|
| | First Name    Middle Name    Last Name | | |

| | | | **Unsecured claim** |
|---|---|---|---|

**13**

San Diego City Administration
Creditor's Name

202 C St.
Number          Street

San Diego                CA    92101
City                          State    ZIP Code

Contact

619-236-5555
Contact phone

What is the nature of the claim? Utility Services

As of the date you file, the claim is: Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed
☑ None of the above apply

Does the creditor have a lien on your property?
☑ No
☐ Yes. Total claim (secured and unsecured):    $_____
          Value of security:    − $_____
          Unsecured claim         $_____

$16,000.00

**14**

Wells Fargo
Creditor's Name

150 E. 42nd Street
Number          Street

New York                NY    10017
City                          State    ZIP Code

Contact

1 (800) 869-3557
Contact phone

What is the nature of the claim? Credit Card Debt

As of the date you file, the claim is: Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed
☑ None of the above apply

Does the creditor have a lien on your property?
☑ No
☐ Yes. Total claim (secured and unsecured):    $_____
          Value of security:    − $_____
          Unsecured claim         $_____

$10,045.00

**15**

Capital One
Creditor's Name

P.O. Box 500, Stn. D
Number          Street

Scarborough,

Ontario CANADA            M1R 0C2
City                          State    ZIP Code

Contact

Contact phone

What is the nature of the claim? Credit Card Debt

As of the date you file, the claim is: Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed
☑ None of the above apply

Does the creditor have a lien on your property?
☑ No
☐ Yes. Total claim (secured and unsecured):    $_____
          Value of security:    − $_____
          Unsecured claim         $_____

$5,900.00

**16**

Creditor's Name

Number          Street

City                          State    ZIP Code

Contact

Contact phone

What is the nature of the claim? _____

As of the date you file, the claim is: Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed
☐ None of the above apply

Does the creditor have a lien on your property?
☐ No
☐ Yes. Total claim (secured and unsecured):    $_____
          Value of security:    − $_____
          Unsecured claim         $_____

$_____

**17**

Creditor's Name

Number          Street

City                          State    ZIP Code

Contact

Contact phone

What is the nature of the claim? _____

As of the date you file, the claim is: Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed
☐ None of the above apply

Does the creditor have a lien on your property?
☐ No
☐ Yes. Total claim (secured and unsecured):    $_____
          Value of security:    − $_____
          Unsecured claim         $_____

$_____

EXHIBIT 2, PAGE 42

Debtor 1  Ashkan  Mirfakhr Rajaee
_____
First Name    Middle Name    Last Name

Case number (*if known*)_____

| | Unsecured claim |
|---|---|

**18**

Creditor's Name
_____

Number        Street
_____

_____

City          State      ZIP Code

Contact
_____

Contact phone
_____

What is the nature of the claim? _____   $_____

As of the date you file, the claim is: Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed
☐ None of the above apply

Does the creditor have a lien on your property?
☐ No
☐ Yes. Total claim (secured and unsecured):   $_____
        Value of security:   –   $_____
        Unsecured claim        $_____

**19**

Creditor's Name
_____

Number        Street
_____

_____

City          State      ZIP Code

Contact
_____

Contact phone
_____

What is the nature of the claim? _____   $_____

As of the date you file, the claim is: Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed
☐ None of the above apply

Does the creditor have a lien on your property?
☐ No
☐ Yes. Total claim (secured and unsecured):   $_____
        Value of security:   –   $_____
        Unsecured claim        $_____

**20**

Creditor's Name
_____

Number        Street
_____

_____

City          State      ZIP Code

Contact
_____

Contact phone
_____

What is the nature of the claim? _____   $_____

As of the date you file, the claim is: Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed
☐ None of the above apply

Does the creditor have a lien on your property?
☐ No
☐ Yes. Total claim (secured and unsecured):   $_____
        Value of security:   –   $_____
        Unsecured claim        $_____

EXHIBIT 2, PAGE 43

Debtor 1    Ashkan  Mirfakhr Rajaee
            First Name    Middle Name        Last Name

Case number (if known) _____

## Part 2:   Sign Below

Under penalty of perjury, I declare that the information provided in this form is true and correct.

✗ _____    ✗ _____
Signature of Debtor 1                    Signature of Debtor 2

Date 02/26/2024                          Date 02/26/2024
     MM / DD / YYYY                           MM / DD / YYYY

EXHIBIT 2, PAGE 44

United States Bankruptcy Court

Southern District of California

In re:  Ashkan  Mirfakhr Rajaee & Nassim  Rajaee                    Case No.

                                                                    Chapter    11

                            Debtor(s)

### Verification of Creditor Matrix

The above-named Debtor(s) hereby verify that the attached list of creditors is true and correct to the best of their knowledge.

Date:  _____02/26/2024_____                    _____

                                                    Signature of Debtor

                                                    _____

                                                    Signature of Joint Debtor

American Express
P.O. Box 981535
El Paso, TX 79998


American Express Legal
Attn: Aaron Baldaro
199 S Los Robles Avenue No. 540
Pasadena, CA 91101


Astute Legal Solicitors & Advocates
36-37 Albert Embankment
London, SE1 7TL United Kingdo,


B Riley
Attn: Emily Hayes
299 Park Avenue, 21st Fl
New York, NY 10171


BMO Canada
P.O. Box 11064
Station Centre-Ville
Montreal QC H3C 5A2,


BNSK Attn: Ethan Brown
c/o Brown, Neri, Smith & Khan LLP
11601 Wilshire Blvd suite 300
Los Angeles, CA 90025


Canada Revenue Agency
1 Front St W
Toronto, ON CANADA,  M5J 2X6


Capital One
P.O. Box 500, Stn. D
Scarborough,
Ontario CANADA,  M1R 0C2

Capital One Financial Corp
1680 Capital One Drive
McLean, VA 22102-3491


Citibank N.A.
c/o Quality Loan Service Corp
2763 Camino Del Rio S
San Diego, CA 92108


Fox Rothchild
Attn: Glenda Martinez
10250 Constellation Blvd. Ste 900
Seattle, WA 9067


Franchise Tax Board
Bankruptcy Section, MS: A-340
P. O. Box 2952
Sacramento, CA 95812-2952


Hub Suite, Inc.
c/o Sergio Antonucci
9159 w. Flamingo Rd, #105
Las Vegas, NV 89147


Internal Revenue Service
P.O. Box 7346
Philadelphia, PA 19101-7346


J. Andrew Wright/ Steven J Pearse
Chapman Glucksman
11900 W. Olympic Blvd. Ste. 800
Los Angeles, CA 90064


Kopple Klinger & Elbaz LLP
Attn: Leslie Klinger
10866 Wilshire Blvd Suite 1500
Los Angeles, CA 90024

Lone Mountain Aircraft
c/o Jonathan Ewing, Aero Law Center
1100 Lee Wagener Blvd., Ste 211
Fort Lauderdale, FL 33315


Lone Mountain Aircraft
1251 W Blee Rd, Hangar 1
Springfield, OH 45502


Lone Mountain Aircraft Management LLC
Attn: Mark Rogers
2460 Greentree Rd HNGR 12
Lebanon, OH 45036


Majid Rajaee
54 Loggers Trail
Stouffville, Ontario Canada


Media Magnet, LLC
1401 21st St., Ste R
Sacramento, CA 95811


Midway Rent a Car, Inc.
c/o Richard Scott The Molino Firm
4751 Wilshire Blvd. Ste. 207
Los Angeles, CA 90010


Miller Thomson LLP Attn: Millter Thomson
Scotia Plaza 40 King Street West
Suite 5800
P.O. Box 1011
Toronto, N M5H 3S1 Canada


San Diego City Administration
202 C St.
San Diego, CA 92101

San Diego County Treasurer Tax Collector
1600 8. Pacific Hwy
Room 162
San Diego, CA 92101


Select Portfolio Servicing, Inc.
c/o National Default Servicing Corp
7720 N. 16th St, Ste. 300
Phoenix, AZ 85020


TopDevs, LLC
Attn: Tyler Davis
149 Parkshore Drive
Folsom, CA 95630


TopDevz, LLC
Attn: Tyler Davis
149 Parkshore Drive
Folsom, CA 95630


TopDevz, LLC and Tyler Davis
c/o Kenneth R. Reynolds, Esq.
2020 Hurley Way, Suite 210
Sacramento, CA 95825


Wells Fargo
150 E. 42nd Street
New York, NY 10017

**Fill in this information to identify your case:**

| | |
|---|---|
| Debtor 1 | Ashkan  Mirfakhr Rajaee |
| | First Name          Middle Name          Last Name |
| Debtor 2 | Nassim  Rajaee |
| (Spouse, if filing) | First Name          Middle Name          Last Name |

United States Bankruptcy Court for the: Southern District of California

Case number _____
(If known)

☐ Check if this is an amended filing

Official Form 106Sum

## Summary of Your Assets and Liabilities and Certain Statistical Information    12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. Fill out all of your schedules first; then complete the information on this form. If you are filing amended schedules after you file your original forms, you must fill out a new *Summary* and check the box at the top of this page.

### Part 1:  Summarize Your Assets

**Your assets**
Value of what you own

1.  *Schedule A/B: Property* (Official Form 106A/B)
1a. Copy line 55, Total real estate, from *Schedule A/B* ........................................................... $ 11,300,000.00

1b. Copy line 62, Total personal property, from *Schedule A/B* ............................................... $ 79,369,363.00

1c. Copy line 63, Total of all property on *Schedule A/B* .......................................................... $ 90,669,363.00

### Part 2:  Summarize Your Liabilities

**Your liabilities**
Amount you owe

2.  *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 106D)
2a. Copy the total you listed in Column A, *Amount of claim,* at the bottom of the last page of Part 1 of *Schedule D* ........... $ 7,407,834.40

3.  *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 106E/F)
3a. Copy the total claims from Part 1 (priority unsecured claims) from line 6e of *Schedule E/F* ....................... $ 0.00

3b. Copy the total claims from Part 2 (nonpriority unsecured claims) from line 6j of *Schedule E/F* ..................... + $ 12,736,187.57

**Your total liabilities**  $ 20,144,021.97

### Part 3:  Summarize Your Income and Expenses

4.  *Schedule I: Your Income* (Official Form 106I)
Copy your combined monthly income from line 12 of *Schedule I* ............................................. $ 11,950.00

5.  *Schedule J: Your Expenses* (Official Form 106J)
Copy your monthly expenses from line 22c of *Schedule J* ...................................................... $ 12,009.00

EXHIBIT 2, PAGE 50

Ashkan Mirfakhr Rajaee & Nassim Rajaee

Debtor 1 _____

First Name        Middle Name        Last Name

Case number (*if known*)_____

| **Part 4:** | **Answer These Questions for Administrative and Statistical Records** |
|---|---|

6. **Are you filing for bankruptcy under Chapters 7, 11, or 13?**

   ☐ No. You have nothing to report on this part of the form. Check this box and submit this form to the court with your other schedules.

   ☑ Yes

7. **What kind of debt do you have?**

   ☐ **Your debts are primarily consumer debts.** *Consumer debts* are those "incurred by an individual primarily for a personal, family, or household purpose." 11 U.S.C. § 101(8). Fill out lines 8-9 for statistical purposes. 28 U.S.C. § 159.

   ☑ **Your debts are not primarily consumer debts.** You have nothing to report on this part of the form. Check this box and submit this form to the court with your other schedules.

8. From the *Statement of Your Current Monthly Income*: Copy your total current monthly income from Official Form 122A-1 Line 11; **OR**, Form 122B Line 11; **OR**, Form 122C-1 Line 14.

   $ _____

9. Copy the following special categories of claims from Part 4, line 6 of *Schedule E/F*:

|  | Total claim |
|---|---|
| From Part 4 on *Schedule E/F*, copy the following: |  |
| 9a. Domestic support obligations (Copy line 6a.) | $_____ |
| 9b. Taxes and certain other debts you owe the government. (Copy line 6b.) | $_____ |
| 9c. Claims for death or personal injury while you were intoxicated. (Copy line 6c.) | $_____ |
| 9d. Student loans. (Copy line 6f.) | $_____ |
| 9e. Obligations arising out of a separation agreement or divorce that you did not report as priority claims. (Copy line 6g.) | $_____ |
| 9f. Debts to pension or profit-sharing plans, and other similar debts. (Copy line 6h.) | + $_____ |
| 9g. **Total.** Add lines 9a through 9f. | $_____ |

EXHIBIT 2, PAGE 51

**Fill in this information to identify your case and this filing:**

Debtor 1    Ashkan Mirfakhr Rajaee
     First Name      Middle Name      Last Name

Debtor 2    Nassim Rajaee
(Spouse, if filing)   First Name      Middle Name      Last Name

United States Bankruptcy Court for the: Southern District of California

Case number
(if know)

☐ Check if this is an amended filing

Official Form 106A/B
# Schedule A/B: Property
12/15

In each category, separately list and describe items. List an asset only once. If an asset fits in more than one category, list the asset in the category where you think it fits best. Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

**Part 1:**   **Describe Each Residence, Building, Land, or Other Real Estate You Own or Have an Interest In**

1. **Do you own or have any legal or equitable interest in any residence, building, land, or similar property?**
☐ No. Go to Part 2
☑ Yes. Where is the property?

| | | |
|---|---|---|
| 1.1 | 6625 Muirlands Dr<br>Street address, if available, or other description<br><br>La Jolla CA    92037<br>City    State    ZIP Code<br><br>San Diego County<br>County | **What is the property?** Check all that apply<br>☑ Single-family home<br>☐ Duplex or multi-unit building<br>☐ Condominium or cooperative<br>☐ Manufactured or mobile home<br>☐ Land<br>☐ Investment property<br>☐ Timeshare<br>☐ Other_____<br><br>**Who has an interest in the property?** Check one<br>☐ Debtor 1 only<br>☐ Debtor 2 only<br>☐ Debtor 1 and Debtor 2 only<br>☐ At least one of the debtors and another<br><br>Other information you wish to add about this item, such as local property identification number: | Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property:*<br><br>**Current value of the entire property?**  **Current value of the portion you own?**<br>$ 8,500,000.00    $ 8,500,000.00<br><br>**Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.**<br><br>Fee simple<br><br>☑ **Check if this is community property** |
| 1.2 | 1020 Genter Street<br>Street address, if available, or other description<br>Apt. No. 102<br><br>La Jolla CA    92037<br>City    State    ZIP Code<br><br>San Diego County<br>County | **What is the property?** Check all that apply<br>☐ Single-family home<br>☐ Duplex or multi-unit building<br>☑ Condominium or cooperative<br>☐ Manufactured or mobile home<br>☐ Land<br>☐ Investment property<br>☐ Timeshare<br>☐ Other_____<br><br>**Who has an interest in the property?** Check one<br>☐ Debtor 1 only<br>☐ Debtor 2 only<br>☐ Debtor 1 and Debtor 2 only<br>☐ At least one of the debtors and another<br><br>Other information you wish to add about this item, such as local property identification number: | Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property:*<br><br>**Current value of the entire property?**  **Current value of the portion you own?**<br>$ 2,800,000.00    $ 2,800,000.00<br><br>**Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.**<br><br>☑ **Check if this is community property** |

EXHIBIT 2, PAGE 52

Debtor 1    Ashkan Mirfakhr Rajaee & Nassim Rajaee    Case number *(if known)* _____
     First Name    Middle Name    Last Name

2. Add the dollar value of the portion you own for all of your entries from Part 1, including any entries for pages you have attached for Part 1. Write that number here....................................................................➤ | $11,300,000.00 |

## Part 2: Describe Your Vehicles

**Do you own, lease, or have legal or equitable interest in any vehicles, whether they are registered or not?** Include any vehicles you own that someone else drives. If you lease a vehicle, also report it on *Schedule G: Executory Contracts and Unexpired Leases.*

3. **Cars, vans, trucks, tractors, sport utility vehicles, motorcycles**
   - ☑ No
   - ☐ Yes

4. **Watercraft, aircraft, motor homes, ATVs and other recreational vehicles, other vehicles, and accessories**
   *Examples:* Boats, trailers, motors, personal watercraft, fishing vessels, snowmobiles, motorcycle accessories
   - ☑ No
   - ☐ Yes

5. Add the dollar value of the portion you own for all of your entries from Part 2, including any entries for pages you have attached for Part 2. Write that number here....................................................................➤ | $0.00 |

## Part 3: Describe Your Personal and Household Items

| Do you own or have any legal or equitable interest in any of the following? | Current value of the portion you own? |
|---|---|
| | Do not deduct secured claims or exemptions. |

6. **Household goods and furnishings**

   *Examples:* Major appliances, furniture, linens, china, kitchenware
   - ☐ No
   - ☑ Yes. Describe...

   | Misc furniture, appliances and household goods | $ 20,000.00 |

7. **Electronics**

   *Examples:* Televisions and radios; audio, video, stereo, and digital equipment; computers, printers, scanners; music collections; electronic devices including cell phones, cameras, media players, games
   - ☐ No
   - ☑ Yes. Describe...

   | Misc personal electronics (phones, tvs, ipads, laptop, computer, printer, etc.) | $ 5,000.00 |

8. **Collectibles of value**

   *Examples:* Antiques and figurines; paintings, prints, or other artwork; books, pictures, or other art objects; stamp, coin, or baseball card collections; other collections, memorabilia, collectibles
   - ☑ No
   - ☐ Yes. Describe...

9. **Equipment for sports and hobbies**

   *Examples:* Sports, photographic, exercise, and other hobby equipment; bicycles, pool tables, golf clubs, skis; canoes and kayaks; carpentry tools; musical instruments
   - ☐ No
   - ☑ Yes. Describe...

   | Exercise equipment | $ 500.00 |

10. **Firearms**

    *Examples:* Pistols, rifles, shotguns, ammunition, and related equipment
    - ☑ No
    - ☐ Yes. Describe...

11. **Clothes**

    *Examples:* Everyday clothes, furs, leather coats, designer wear, shoes, accessories
    - ☐ No
    - ☑ Yes. Describe...

    | Misc. apparel | $ 2,500.00 |

EXHIBIT 2, PAGE 53

Debtor 1    Ashkan Mirfakhr Rajaee & Nassim Rajaee                    Case number *(if known)* _____
            First Name    Middle Name    Last Name

12. **Jewelry**

*Examples:* Everyday jewelry, costume jewelry, engagement rings, wedding rings, heirloom jewelry, watches, gems
gold, silver

☐ No
☑ Yes. Describe...

Wedding ring                                                                $ 3,000.00

13. **Non-farm animals**

*Examples:* Dogs, cats, birds, horses

☐ No
☑ Yes. Describe...

small dog                                                                   $ Unknown

14. **Any other personal and household items you did not already list, including any health aids you did not list**

☑ No
☐ Yes. Give specific information...

15. Add the dollar value of the portion you own for all of your entries from Part 3, including any entries for pages
you have attached for Part 3. Write that number here................................................................➤        $31,000.00

---

**Part 4:**    **Describe Your Financial Assets**

Do you own or have any legal or equitable interest in any of the following?    **Current value of the portion you own?**
Do not deduct secured claims or exemptions.

16. **Cash**

*Examples:* Money you have in your wallet, in your home, in a safe deposit box, and on hand when you file your petition

☐ No
☑ Yes.........................................................................................    Cash ...........................    $ 1,800.00

17. **Deposits of money**

*Examples:* Checking, savings, or other financial accounts; certificates of deposit; shares in credit unions, brokerage houses
and other similar institutions. If you have multiple accounts with the same institution, list each.

☐ No
☑ Yes.................
17.1. Checking account:        Institution name:
                               Bank Of Montreal                                $ 0.00

18. **Bonds, mutual funds, or publicly traded stocks**

*Examples:* Bond funds, investment accounts with brokerage firms, money market accounts

☑ No
☐ Yes.................

19. **Non-publicly traded stock and interests in incorporated and unincorporated businesses, including an interest in an LLC, partnership, and joint venture**

☐ No
☑ Yes. Give specific information about them...........

| Name of entity: | % of ownership: | |
|---|---|---|
| OmniGenie, Inc. | 100 % | $ Unknown |
| Media Magnet LLC | 100 % | $ 0.00 |
| Hub Suite, Inc. | 24.375 % | $ 3,936,563.00 |
| RemotePrenerurs LLC | 100 % | $ 0.00 |
| TopDevz HYBRID LLC | 34 % | $ 0.00 |
| 2. Double-A Unicorns Enterprises, LLC (owned by revocable family trust) | 100 % | $ 0.00 |

20. **Government and corporate bonds and other negotiable and non-negotiable instruments**

Negotiable instruments include personal checks, cashiers' checks, promissory notes, and money orders.
Non-negotiable instruments are those you cannot transfer to someone by signing or delivering them.

☑ No
☐ Yes. Give specific information about them..........

EXHIBIT 2, PAGE 54

Debtor 1    _Ashkan Mirfakhr Rajaee & Nassim Rajaee_    Case number *(if known)* _____
     First Name    Middle Name    Last Name

---

21. **Retirement or pension accounts**

    *Examples:* Interests in IRA, ERISA, Keogh, 401(k), 403(b), thrift savings accounts, or other pension or profit-sharing plans

    ☑ No
    ☐ Yes. List each account separately

22. **Security deposits and prepayments**
    Your share of all unused deposits you have made so that you may continue service or use from a company

    *Examples:* Agreements with landlords, prepaid rent, public utilities (electric, gas, water), telecommunications companies, or others

    ☑ No
    ☐ Yes.....................

23. **Annuities** (A contract for a periodic payment of money to you, either for life or for a number of years)

    ☑ No
    ☐ Yes.....................

24. **Interests in an education IRA, in an account in a qualified ABLE program, or under a qualified state tuition program.**
    26 U.S.C. §§ 530(b)(1), 529A(b), and 529(b)(1).

    ☑ No
    ☐ Yes.....................

25. **Trusts, equitable or future interests in property (other than anything listed in line 1), and rights or powers exercisable for your benefit**

    ☐ No
    ☑ Yes. Give specific information about them...

    | Rajaee Family Trust (revocable), 6625 Muirlands Drive Qualified Personal Residential Trust #1, 6625 Muirlands Drive Qualified Personal Residential Trust #2, Saving Grace Foundation |

    $ 0.00

26. **Patents, copyrights, trademarks, trade secrets, and other intellectual property**

    *Examples:* Internet domain names, websites, proceeds from royalties and licensing agreements

    ☑ No
    ☐ Yes. Give specific information about them...

27. **Licenses, franchises, and other general intangibles**

    *Examples:* Building permits, exclusive licenses, cooperative association holdings, liquor licenses, professional licenses

    ☑ No
    ☐ Yes. Give specific information about them...

---

| **Money or property owed to you?** | **Current value of the portion you own?** Do not deduct secured claims or exemptions. |

28. **Tax refunds owed to you**

    ☑ No
    ☐ Yes. Give specific information about them, including whether you already filed the returns and the tax years...

    | | Federal:  $ 0.00 |
    | | State:    $ 0.00 |
    | | Local:    $ 0.00 |

29. **Family support**

    *Examples:* Past due or lump sum alimony, spousal support, child support, maintenance, divorce settlement, property settlement

    ☑ No
    ☐ Yes. Give specific information....

30. **Other amounts someone owes you**

    *Examples:* Unpaid wages, disability insurance payments, disability benefits, sick pay, vacation pay, workers' compensation, Social Security benefits; unpaid loans you made to someone else

    ☑ No
    ☐ Yes. Give specific information....

31. **Interests in insurance policies**

    ☑ No
    ☐ Yes. Name the insurance company of each policy and list its value....

---

EXHIBIT 2, PAGE 55

Debtor 1    Ashkan Mirfakhr Rajaee & Nassim Rajaee                             Case number *(if known)* _____

First Name     Middle Name     Last Name

---

**32.** **Any interest in property that is due from someone who has died**

- ☑ No
- ☐ Yes. Give specific information....

**33.** **Claims against third parties, whether or not you have filed a lawsuit or made a demand for payment**

- ☐ No
- ☑ Yes. Give specific information....

| |
|---|
| RICO claims against Anil Khera, Anita Khera, Jason DeGuzman, Tom Poulton, John Karavas, Karavas Kiely Schloss & Witman LLP, anjali Guptara Khera, Pending lawsuit against Tyler Davis et al 3:24-cv-00001-RSH-KSC, Pending lawsuit against SeaNet Company, Inc. 30-2022-01290103-CU-SL-CJC, Pending lawsuit again Kresses & Piasecki Legal 22CV895-W-MDD, Pending lawsuit against Weinberg Gonser Frost et al 23SMCV00121, Pending lawsuit against Lavine Lofgren Morris & Engelberg 37-2023-00011085-CU-PN-CTL, RICO claims against Tyler Brandon Davis, Scott Carpenter, J. Douglas Kirk, Joseph W. Scalia, Kerrj A. Williams-Horn, Joshua Paul Lintz Amanda Frye Micah Bailey, an Jonathan Gerber, Bryn Guadagnin Kenneth R. Reynolds, Scott SandHills Global, Inc., Express Tech-Financing, LLC, 402 Ventures, LLC, Blockchain Game Partners, Inc. Dba Gala Games, Drivetime Car Sales Comp Any, LLC Mode Transportation, LLC, Medical Staffing Solutions, Inc., Intellicheck, Inc.,, Pending lawsuit against Joshua Lintz et al 37-2022-00012247-CU-BT-CTL |

$ 75,000,000.00

**34.** **Other contingent and unliquidated claims of every nature, including counterclaims of the debtor and rights to set off claims**

- ☑ No
- ☐ Yes. Give specific information....

**35.** **Any financial assets you did not already list**

- ☑ No
- ☐ Yes. Give specific information....

**36.** Add the dollar value of the portion you own for all of your entries from Part 4, including any entries for pages you have attached for Part 4. Write that number here.......................................................................➤    $ 78,938,363.00

---

| **Part 5:** | **Describe Any Business-Related Property You Own or Have an Interest In. List any real estate in Part 1.** |
|---|---|

**37.** **Do you own or have any legal or equitable interest in any business-related property?**

- ☑ No. Go to Part 6.
- ☐ Yes. Go to line 38.

---

| **Part 6:** | **Describe Any Farm- and Commercial Fishing-Related Property You Own or Have an Interest In.** |
|---|---|
| | If you own or have an interest in farmland, list it in Part 1. |

**46.** **Do you own or have any legal or equitable interest in any farm- or commercial fishing-related property?**

- ☑ No. Go to Part 7.
- ☐ Yes. Go to line 47.

---

| **Part 7:** | **Describe All Property You Own or Have an Interest in That You Did Not List Above** |
|---|---|

**53.** **Do you have other property of any kind you did not already list?**

*Examples:* Season tickets, country club membership

- ☐ No
- ☑ Yes. Give specific information...

| |
|---|
| Mobile Monster Database |

**54.** Add the dollar value of all of your entries from Part 7. Write that number here   ................................➤    $ 400,000.00

EXHIBIT 2, PAGE 56

Debtor 1    Ashkan Mirfakhr Rajaee & Nassim Rajaee               Case number *(if known)* _____
         First Name    Middle Name    Last Name

**Part 8:**    **List the Totals of Each Part of this Form**

| | | | |
|---|---|---|---|
| 55. **Part 1: Total real estate, line 2**.................................................................................➤ | | | $11,300,000.00 |
| 56. **Part 2: Total vehicles, line 5** | $ 0.00 | | |
| 57. **Part 3: Total personal and household items, line 15** | $ 31,000.00 | | |
| 58. **Part 4: Total financial assets, line 36** | $ 78,938,363.00 | | |
| 59. **Part 5: Total business-related property, line 45** | $ 0.00 | | |
| 60. **Part 6: Total farm- and fishing-related property, line 52** | $ 0.00 | | |
| 61. **Part 7: Total other property not listed, line 54** | + $ 400,000.00 | | |
| 62. **Total personal property. Add lines 56 through 61** ................... | $ 79,369,363.00 | Copy personal property total ➤ | + $ 79,369,363.00 |
| 63. **Total of all property on Schedule A/B. Add line 55 + line 62** | | | $ 90,669,363.00 |

EXHIBIT 2, PAGE 57

**Fill in this information to identify your case:**

| | | | |
|---|---|---|---|
| Debtor 1 | Ashkan | Mirfakhr | Rajaee |
| | First Name | Middle Name | Last Name |
| Debtor 2 | Nassim | | Rajaee |
| (Spouse, if filing) | First Name | Middle Name | Last Name |

United States Bankruptcy Court for the: Southern District of California

Case number (If known) _____

☐ Check if this is an amended filing

Official Form 106C

# Schedule C: The Property You Claim as Exempt

4/22

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. Using the property you listed on *Schedule A/B: Property* (Official Form 106A/B) as your source, list the property that you claim as exempt. If more space is needed, fill out and attach to this page as many copies of *Part 2: Additional Page* as necessary. On the top of any additional pages, write your name and case number (if known).

**For each item of property you claim as exempt, you must specify the amount of the exemption you claim. One way of doing so is to state a specific dollar amount as exempt. Alternatively, you may claim the full fair market value of the property being exempted up to the amount of any applicable statutory limit. Some exemptions—such as those for health aids, rights to receive certain benefits, and tax-exempt retirement funds—may be unlimited in dollar amount. However, if you claim an exemption of 100% of fair market value under a law that limits the exemption to a particular dollar amount and the value of the property is determined to exceed that amount, your exemption would be limited to the applicable statutory amount.**

| Part 1: | Identify the Property You Claim as Exempt |
|---|---|

1. **Which set of exemptions are you claiming?** *Check one only, even if your spouse is filing with you.*

   ☑ You are claiming state and federal nonbankruptcy exemptions. 11 U.S.C. § 522(b)(3)
   ☐ You are claiming federal exemptions. 11 U.S.C. § 522(b)(2)

2. **For any property you list on *Schedule A/B* that you claim as exempt, fill in the information below.**

| Brief description of the property and line on *Schedule A/B* that lists this property | Current value of the portion you own<br>Copy the value from *Schedule A/B* | Amount of the exemption you claim<br>Check only one box for each exemption | Specific laws that allow exemption |
|---|---|---|---|
| Brief description: 6625 Muirlands Dr<br><br>Line from *Schedule A/B*: 1.1 | $ 8,500,000.00 | ☑ $ 699,420.00<br>☐ 100% of fair market value, up to any applicable statutory limit | Cal. Civ. Proc. Code § 704.730 (a)(2) |
| Brief description: Household Goods - Misc furniture, appliances and household goods<br><br>Line from *Schedule A/B*: 6 | $ 20,000.00 | ☑ $ 20,000.00<br>☐ 100% of fair market value, up to any applicable statutory limit | Cal. Civ. Proc. Code § 704.020 |
| Brief description: Electronics - Misc personal electronics (phones, tvs, ipads, laptop, computer, printer, etc.)<br><br>Line from *Schedule A/B*: 7 | $ 5,000.00 | ☑ $ 5,000.00<br>☐ 100% of fair market value, up to any applicable statutory limit | Cal. Civ. Proc. Code § 704.020 |

3. **Are you claiming a homestead exemption of more than $189,050?**
   (Subject to adjustment on 4/01/25 and every 3 years after that for cases filed on or after the date of adjustment.)

   ☐ No
   ☑ Yes. Did you acquire the property covered by the exemption within 1,215 days before you filed this case?
       ☑ No
       ☐ Yes

EXHIBIT 2, PAGE 58

Debtor    Ashkan  Mirfakhr Rajaee & Nassim  Rajaee          Case number *(if known)* _____
          First Name    Middle Name    Last Name

| **Part 2:** | **Additional Page** | | | |
|---|---|---|---|---|
| **Brief description of the property and line on *Schedule A/B* that lists this property** | | **Current value of the portion you own** Copy the value from Schedule A/B | **Amount of the exemption you claim** Check only one box for each exemption | **Specific laws that allow exemption** |
| Brief description: | Sports & Hobby Equipment - Exercise equipment | $500.00 | ☑ $ 500.00<br>☐ 100% of fair market value, up to any applicable statutory limit | Cal. Civ. Proc. Code § 704.020 |
| Line from *Schedule A/B:* | 9 | | | |
| Brief description: | Clothing - Misc. apparel | $2,500.00 | ☑ $ 2,500.00<br>☐ 100% of fair market value, up to any applicable statutory limit | Cal. Civ. Proc. Code § 704.020 |
| Line from *Schedule A/B:* | 11 | | | |
| Brief description: | Jewelry - Wedding ring | $3,000.00 | ☑ $ 3,000.00<br>☐ 100% of fair market value, up to any applicable statutory limit | Cal. Civ. Proc. Code § 704.040 |
| Line from *Schedule A/B:* | 12 | | | |
| Brief description: | | $_____ | ☐ $ _____<br>☐ 100% of fair market value, up to any applicable statutory limit | |
| Line from *Schedule A/B:* | | | | |
| Brief description: | | $_____ | ☐ $ _____<br>☐ 100% of fair market value, up to any applicable statutory limit | |
| Line from *Schedule A/B:* | | | | |
| Brief description: | | $_____ | ☐ $ _____<br>☐ 100% of fair market value, up to any applicable statutory limit | |
| Line from *Schedule A/B:* | | | | |
| Brief description: | | $_____ | ☐ $ _____<br>☐ 100% of fair market value, up to any applicable statutory limit | |
| Line from *Schedule A/B:* | | | | |
| Brief description: | | $_____ | ☐ $ _____<br>☐ 100% of fair market value, up to any applicable statutory limit | |
| Line from *Schedule A/B:* | | | | |
| Brief description: | | $_____ | ☐ $ _____<br>☐ 100% of fair market value, up to any applicable statutory limit | |
| Line from *Schedule A/B:* | | | | |
| Brief description: | | $_____ | ☐ $ _____<br>☐ 100% of fair market value, up to any applicable statutory limit | |
| Line from *Schedule A/B:* | | | | |
| Brief description: | | $_____ | ☐ $ _____<br>☐ 100% of fair market value, up to any applicable statutory limit | |
| Line from *Schedule A/B:* | | | | |
| Brief description: | | $_____ | ☐ $ _____<br>☐ 100% of fair market value, up to any applicable statutory limit | |
| Line from *Schedule A/B:* | | | | |

EXHIBIT 2, PAGE 59

**Fill in this information to identify your case:**

Debtor 1    Ashkan Mirfakhr Rajaee
___First Name_____Middle Name_____Last Name___

Debtor 2    Nassim Rajaee
(Spouse, if filing)  First Name____Middle Name_____Last Name___

United States Bankruptcy Court for the:  Southern District of California

Case number
(if know)    _____

☐ Check if this is
an amended
filing

Official Form 106D

# Schedule D: Creditors Who Have Claims Secured by Property

**12/15**

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, copy the Additional Page, fill it out, number the entries, and attach it to this form. On the top of any additional pages, write your name and case number (if known).

1. **Do any creditors have claims secured by your property?**
   ☐ No. Check this box and submit this form to the court with your other schedules. You have nothing else to report on this form.
   ☑ Yes. Fill in all of the information below.

**Part 1:    List All Secured Claims**

2. **List all secured claims.** If a creditor has more than one secured claim, list the creditor separately for each claim. If more than one creditor has a particular claim, list the other creditors in Part 2. As much as possible, list the claims in alphabetical order according to the creditor's name.

| | Column A<br>**Amount of claim** Do not deduct the value of collateral. | Column B<br>**Value of collateral that supports this claim** | Column C<br>**Unsecured portion** If any |
|---|---|---|---|

**2.1**

Describe the property that secures the claim: $ 650,000.00 | $ 8,500,000.00 | $ 0.00

BNSK Attn: Ethan Brown
Creditor's Name

c/o Brown, Neri, Smith & Khan LLP
Creditor's Name

11601 Wilshire Blvd suite 300
Number        Street

Los Angeles CA        90025
City        State    ZIP Code

6625 Muirlands Dr, La Jolla, CA 92037 - $8,500,000.00

**As of the date you file, the claim is:** Check all that apply.
☐ Contingent
☐ Unliquidated
☑ Disputed

**Who owes the debt?** Check one.
☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ **Check if this claim relates to a community debt**

Date debt was incurred _____

**Nature of lien.** Check all that apply.
☑ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☐ Other (including a right to offset) _____

Last 4 digits of account number _____

EXHIBIT 2, PAGE 60

Debtor _____    Case number (if known)_____
          First Name    Middle Name    Last Name

| 2.2 | | Describe the property that secures the claim: | $ 1,489,013.29 | $ 2,800,000.00 | $ 0.00 |

Citibank N.A.
Creditor's Name
c/o Quality Loan Service Corp
Number          Street
2763 Camino Del Rio S

San Diego CA        92108
City        State    ZIP Code

**Who owes the debt?** Check one.
☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☑ **Check if this claim relates to a community debt**

Date debt was incurred _____

Describe the property that secures the claim:
1020 Genter Street Apt. No. 102, La Jolla, CA 92037 - $2,800,000.00

**As of the date you file, the claim is:** Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Nature of lien.** Check all that apply.
☑ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☐ Other (including a right to offset) _____

Last 4 digits of account number

---

| 2.3 | | Describe the property that secures the claim: | $ 333,899.00 | $ 3,936,563.00 | $ 0.00 |

Hub Suite, Inc.
Creditor's Name
c/o Sergio Antonucci
Number          Street
9159 w. Flamingo Rd, #105

Las Vegas NV        89147
City        State    ZIP Code

**Who owes the debt?** Check one.
☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☑ **Check if this claim relates to a community debt**

Date debt was incurred _____

Describe the property that secures the claim:
Hub Suite, Inc. - $3,936,563.00

**As of the date you file, the claim is:** Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Nature of lien.** Check all that apply.
☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☐ Other (including a right to offset) _____

Last 4 digits of account number

---

| 2.4 | | Describe the property that secures the claim: | $ 120,000.00 | $ 8,500,000.00 | $ 0.00 |

Majid Rajaee
Creditor's Name
54 Loggers Trail
Number          Street
Stouffville, Ontario Canada

City        State

ZIP Code

**Who owes the debt?** Check one.
☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ **Check if this claim relates to a community debt**

Date debt was incurred _____

Describe the property that secures the claim:
6625 Muirlands Dr, La Jolla, CA 92037 - $8,500,000.00

**As of the date you file, the claim is:** Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Nature of lien.** Check all that apply.
☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☐ Other (including a right to offset) _____

Last 4 digits of account number

---

EXHIBIT 2, PAGE 61

Debtor _____ Case number *(if known)* _____
          First Name          Middle Name          Last Name

| 2.5 | | Describe the property that secures the claim: | $ 28,000.00 | $ 2,800,000.00 | $ 0.00 |

San Diego County Treasurer Tax
Creditor's Name

Collector

1020 Genter Street Apt. No. 102, La Jolla, CA 92037 - $2,800,000.00

1600 8. Pacific Hwy
Number          Street
Room 162

San Diego CA          92101
City          State     ZIP Code

**Who owes the debt?** Check one.
☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☑ **Check if this claim relates to a community debt**

Date debt was incurred _____

**As of the date you file, the claim is:** Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Nature of lien.** Check all that apply.
☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☐ Other (including a right to offset) _____

Last 4 digits of account number ____

| 2.6 | | Describe the property that secures the claim: | $ 4,786,922.11 | $ 8,500,000.00 | $ 0.00 |

Select Portfolio Servicing, Inc.
Creditor's Name

c/o National Default Servicing Corp
Number          Street
7720 N. 16th St, Ste. 300

Phoenix AZ          85020
City          State     ZIP Code

**Who owes the debt?** Check one.
☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☑ **Check if this claim relates to a community debt**

Date debt was incurred _____

6625 Muirlands Dr, La Jolla, CA 92037 - $8,500,000.00

**As of the date you file, the claim is:** Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Nature of lien.** Check all that apply.
☑ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☐ Other (including a right to offset) _____

Last 4 digits of account number ____

| Add the dollar value of your entries in Column A on this page. Write that number here: | $ 7,407,834.40 |

| Part 2: | List Others to Be Notified for a Debt That You Already Listed |

Use this page only if you have others to be notified about your bankruptcy for a debt that you already listed in Part 1. For example, if a collection agency is trying to collect from you for a debt you owe to someone else, list the creditor in Part 1, and then list the collection agency here. Similarly, if you have more than one creditor for any of the debts that you listed in Part 1, list the additional creditors here. If you do not have additional persons to be notified for any debts in Part 1, do not fill out or submit this page.

**Fill in this information to identify your case:**

Debtor 1 ___Ashkan Mirfakhr Rajaee___
First Name    Middle Name    Last Name

Debtor 2 ___Nassim Rajaee___
(Spouse, if filing)  First Name    Middle Name    Last Name

United States Bankruptcy Court for the:  Southern District of California

Case number _____
(if know)

☐ Check if this is an amended filing

Official Form 106E/F

# Schedule E/F: Creditors Who Have Unsecured Claims          12/15

**Be as complete and accurate as possible. Use Part 1 for creditors with PRIORITY claims and Part 2 for creditors with NONPRIORITY claims. List the other party to any executory contracts or unexpired leases that could result in a claim. Also list executory contracts on *Schedule A/B: Property* (Official Form 106A/B) and on Schedule G: Executory Contracts and Unexpired Leases (Official Form 106G). Do not include any creditors with partially secured claims that are listed in Schedule D: Creditors Who Have Claims Secured by Property. If more space is needed, copy the Part you need, fill it out, number the entries in the boxes on the left. Attach the Continuation Page to this page. On the top of any additional pages, write your name and case number (if known).**

**Part 1:**   **List All of Your PRIORITY Unsecured Claims**

1. **Do any creditors have priority unsecured claims against you?**
   ☐ No. Go to Part 2.
   ☑ Yes.

2. **List all of your priority unsecured claims.** If a creditor has more than one priority unsecured claim, list the creditor separately for each claim. For each claim listed, identify what type of claim it is. If a claim has both priority and nonpriority amounts, list that claim here and show both priority and nonpriority amounts. As much as possible, list the claims in alphabetical order according to the creditor's name. If you have more than two priority unsecured claims, fill out the Continuation Page of Part 1. If more than one creditor holds a particular claim, list the other creditors in Part 3. (For an explanation of each type of claim, see the instructions for this form in the instruction booklet.)

|  |  | Total claim | Priority amount | Nonpriority amount |
|---|---|---|---|---|
| **2.1** Canada Revenue Agency<br>Priority Creditor's Name<br><br>1 Front St W<br>Number          Street<br>Toronto, ON CANADA      M5J 2X6<br>City          State   ZIP Code | Last 4 digits of account number _____<br>When was the debt incurred? _____<br><br>**As of the date you file, the claim is:** Check all that apply.<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | $ Unknown | $ Unknown | $ Unknown |
| **Who owes the debt?** Check one.<br>☐ Debtor 1 only<br>☐ Debtor 2 only<br>☐ Debtor 1 and Debtor 2 only<br>☐ At least one of the debtors and another<br>☑ Check if this claim relates to a community debt<br><br>**Is the claim subject to offset?**<br>☑ No<br>☐ Yes | **Type of PRIORITY unsecured claim:**<br>☐ Domestic support obligations<br>☑ Taxes and certain other debts you owe the government<br>☐ Claims for death or personal injury while you were intoxicated<br>☐ Other. Specify |  |  |  |

EXHIBIT 2, PAGE 63

Debtor _____   Case number *(if known)* _____
            First Name      Middle Name      Last Name

| 2.2 | |
|---|---|

Franchise Tax Board
_____
Priority Creditor's Name

Bankruptcy Section, MS: A-340
_____
Number          Street
P. O. Box 2952
_____

Sacramento CA      95812-2952
_____
City          State     ZIP Code

**Who owes the debt?** Check one.

☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☑ **Check if this claim relates to a community debt**

**Is the claim subject to offset?**

☑ No
☐ Yes

**Last 4 digits of account number** _____

**When was the debt incurred?** _____

**As of the date you file, the claim is:** Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of PRIORITY unsecured claim:**

☐ Domestic support obligations
☑ Taxes and certain other debts you owe the government
☐ Claims for death or personal injury while you were intoxicated
☐ Other. Specify

$ Unknown       $ Unknown       $ Unknown

EXHIBIT 2, PAGE 64

Debtor _____   Case number _(if known)_ _____
     First Name   Middle Name   Last Name

| Part 1: | Your PRIORITY Unsecured Claims — Continuation Page |
|---|---|

| | | Total claim | Priority amount | Nonpriority amount |
|---|---|---|---|---|
| After listing any entries on this page, number them beginning with 2.3, followed by 2.4, and so forth. | | | | |

**2.3**

Internal Revenue Service
Priority Creditor's Name

P.O. Box 7346
Number          Street

Philadelphia PA    19101-7346
City        State    ZIP Code

**Who owes the debt?** Check one.
- [ ] Debtor 1 only
- [ ] Debtor 2 only
- [ ] Debtor 1 and Debtor 2 only
- [ ] At least one of the debtors and another
- [x] Check if this claim relates to a community debt

**Is the claim subject to offset?**
- [x] No
- [ ] Yes

Last 4 digits of account number _____
**When was the debt incurred?** _____

**As of the date you file, the claim is:** Check all that apply.
- [ ] Contingent
- [ ] Unliquidated
- [ ] Disputed

**Type of PRIORITY unsecured claim:**
- [ ] Domestic support obligations
- [x] Taxes and certain other debts you owe the government
- [ ] Claims for death or personal injury while you were intoxicated
- [ ] Other. Specify

$ Unknown   $ Unknown   $ Unknown

| Part 2: | List All of Your NONPRIORITY Unsecured Claims |
|---|---|

**3. Do any creditors have nonpriority unsecured claims against you?**
- [ ] No. You have nothing else to report in this part. Submit to the court with your other schedules.
- [x] Yes. Fill in all of the information below.

**4. List all of your nonpriority unsecured claims in the alphabetical order of the creditor who holds each claim.** If a creditor has more than one nonpriority unsecured claim, list the creditor separately for each claim. For each claim listed, identify what type of claim it is. Do not list claims already included in Part 1. If more than one creditor holds a particular claim, list the other creditors in Part 3.If you have more than three nonpriority unsecured claims fill out the Continuation Page of Part 2.

| | Total claim |
|---|---|

**4.1**

American Express
Nonpriority Creditor's Name

P.O. Box 981535
Number          Street

El Paso TX    79998
City        State    ZIP Code

**Who owes the debt?** Check one.
- [ ] Debtor 1 only
- [ ] Debtor 2 only
- [ ] Debtor 1 and Debtor 2 only
- [ ] At least one of the debtors and another
- [x] Check if this claim relates to a community debt

**Is the claim subject to offset?**
- [x] No
- [ ] Yes

Last 4 digits of account number _____
**When was the debt incurred?** _____

**As of the date you file, the claim is:** Check all that apply.
- [ ] Contingent
- [ ] Unliquidated
- [ ] Disputed

**Type of NONPRIORITY unsecured claim:**
- [ ] Student loans
- [ ] Obligations arising out of a separation agreement or divorce that you did not report as priority claims
- [ ] Debts to pension or profit-sharing plans, and other similar debts
- [x] Other. Specify  Credit Card Debt

$ 236,000.00

EXHIBIT 2, PAGE 65

Debtor _____   Case number *(if known)* _____

| | |
|---|---|
| First Name   Middle Name   Last Name | |

**4.2** | Astute Legal Solicitors & Advocates

Nonpriority Creditor's Name

36-37 Albert Embankment

Number          Street

London, SE1 7TL United Kingdom

City                                State

ZIP Code

**Who owes the debt?** Check one.
- ☑ Debtor 1 only
- ☐ Debtor 2 only
- ☐ Debtor 1 and Debtor 2 only
- ☐ At least one of the debtors and another
- ☐ **Check if this claim relates to a community debt**

**Is the claim subject to offset?**
- ☑ No
- ☐ Yes

**Last 4 digits of account number** _____

**When was the debt incurred?** _____

**As of the date you file, the claim is:** Check all that apply.
- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

**Type of NONPRIORITY unsecured claim:**
- ☐ Student loans
- ☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
- ☐ Debts to pension or profit-sharing plans, and other similar debts
- ☑ Other. Specify   Legal services

$ 1,945,000.00

---

**4.3** | BMO Canada

Nonpriority Creditor's Name

P.O. Box 11064

Number          Street

Station Centre-Ville

Montreal QC H3C 5A2

City                State    ZIP Code

**Who owes the debt?** Check one.
- ☐ Debtor 1 only
- ☐ Debtor 2 only
- ☐ Debtor 1 and Debtor 2 only
- ☐ At least one of the debtors and another
- ☑ **Check if this claim relates to a community debt**

**Is the claim subject to offset?**
- ☑ No
- ☐ Yes

**Last 4 digits of account number** _____

**When was the debt incurred?** _____

**As of the date you file, the claim is:** Check all that apply.
- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

**Type of NONPRIORITY unsecured claim:**
- ☐ Student loans
- ☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
- ☐ Debts to pension or profit-sharing plans, and other similar debts
- ☑ Other. Specify   Credit Card Debt

$ 38,000.00

---

**4.4** | B Riley

Nonpriority Creditor's Name

Attn: Emily Hayes

Number          Street

299 Park Avenue, 21st Fl

New York NY        10171

City         State    ZIP Code

**Who owes the debt?** Check one.
- ☐ Debtor 1 only
- ☐ Debtor 2 only
- ☐ Debtor 1 and Debtor 2 only
- ☐ At least one of the debtors and another
- ☑ **Check if this claim relates to a community debt**

**Is the claim subject to offset?**
- ☑ No
- ☐ Yes

**Last 4 digits of account number** _____

**When was the debt incurred?** _____

**As of the date you file, the claim is:** Check all that apply.
- ☐ Contingent
- ☐ Unliquidated
- ☑ Disputed

**Type of NONPRIORITY unsecured claim:**
- ☐ Student loans
- ☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
- ☐ Debts to pension or profit-sharing plans, and other similar debts
- ☑ Other. Specify   Suppliers and Vendors

$ 18,500.00

EXHIBIT 2, PAGE 66

Debtor _____   Case number (if known) _____
       First Name   Middle Name   Last Name

| 4.5 | Capital One | Last 4 digits of account number ___ ___ ___ ___ | $ 5,900.00 |

Nonpriority Creditor's Name

P.O. Box 500, Stn. D

Number          Street

Scarborough,

Ontario CANADA          M1R 0C2

City          State     ZIP Code

**Who owes the debt? Check one.**
- [ ] Debtor 1 only
- [ ] Debtor 2 only
- [ ] Debtor 1 and Debtor 2 only
- [ ] At least one of the debtors and another
- [x] **Check if this claim relates to a community debt**

**Is the claim subject to offset?**
- [x] No
- [ ] Yes

**When was the debt incurred?** _____

**As of the date you file, the claim is:** Check all that apply.
- [ ] Contingent
- [ ] Unliquidated
- [ ] Disputed

**Type of NONPRIORITY unsecured claim:**
- [ ] Student loans
- [ ] Obligations arising out of a separation agreement or divorce that you did not report as priority claims
- [ ] Debts to pension or profit-sharing plans, and other similar debts
- [x] Other. Specify  Credit Card Debt

---

| 4.6 | Capital One Financial Corp | Last 4 digits of account number ___ ___ ___ ___ | $ 17,500.00 |

Nonpriority Creditor's Name

1680 Capital One Drive

Number          Street

McLean VA     22102-3491

City     State     ZIP Code

**Who owes the debt? Check one.**
- [ ] Debtor 1 only
- [ ] Debtor 2 only
- [ ] Debtor 1 and Debtor 2 only
- [ ] At least one of the debtors and another
- [x] **Check if this claim relates to a community debt**

**Is the claim subject to offset?**
- [x] No
- [ ] Yes

**When was the debt incurred?** _____

**As of the date you file, the claim is:** Check all that apply.
- [ ] Contingent
- [ ] Unliquidated
- [ ] Disputed

**Type of NONPRIORITY unsecured claim:**
- [ ] Student loans
- [ ] Obligations arising out of a separation agreement or divorce that you did not report as priority claims
- [ ] Debts to pension or profit-sharing plans, and other similar debts
- [x] Other. Specify  Credit Card Debt

---

| 4.7 | Fox Rothchild | Last 4 digits of account number ___ ___ ___ ___ | $ 273,705.57 |

Nonpriority Creditor's Name

Attn: Glenda Martinez

Number          Street

10250 Constellation Blvd. Ste 900

Seattle WA     9067

City     State     ZIP Code

**Who owes the debt? Check one.**
- [x] Debtor 1 only
- [ ] Debtor 2 only
- [ ] Debtor 1 and Debtor 2 only
- [ ] At least one of the debtors and another
- [ ] **Check if this claim relates to a community debt**

**Is the claim subject to offset?**
- [x] No
- [ ] Yes

**When was the debt incurred?** _____

**As of the date you file, the claim is:** Check all that apply.
- [ ] Contingent
- [ ] Unliquidated
- [x] Disputed

**Type of NONPRIORITY unsecured claim:**
- [ ] Student loans
- [ ] Obligations arising out of a separation agreement or divorce that you did not report as priority claims
- [ ] Debts to pension or profit-sharing plans, and other similar debts
- [x] Other. Specify  Legal services

---

EXHIBIT 2, PAGE 67

Debtor _____ Case number (if known) _____
First Name    Middle Name    Last Name

| 4.8 | Kopple Klinger & Elbaz LLP | Last 4 digits of account number ___ ___ ___ ___ | $ 20,000.00 |

Nonpriority Creditor's Name

Attn: Leslie Klinger
Number        Street
10866 Wilshire Blvd Suite 1500

Los Angeles CA      90024
City        State    ZIP Code

**Who owes the debt?** Check one.
☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☑ **Check if this claim relates to a community debt**

**Is the claim subject to offset?**
☑ No
☐ Yes

**When was the debt incurred?** _____

**As of the date you file, the claim is:** Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**
☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
☑ Other. Specify  Legal services

---

| 4.9 | Lone Mountain Aircraft | Last 4 digits of account number ___ ___ ___ ___ | $ 16,675.00 |

Nonpriority Creditor's Name

c/o Jonathan Ewing, Aero Law Center
Number        Street
1100 Lee Wagener Blvd., Ste 211

Fort Lauderdale FL      33315
City        State    ZIP Code

**Who owes the debt?** Check one.
☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☑ At least one of the debtors and another
☐ **Check if this claim relates to a community debt**

**Is the claim subject to offset?**
☑ No
☐ Yes

**When was the debt incurred?** _____

**As of the date you file, the claim is:** Check all that apply.
☑ Contingent
☑ Unliquidated
☑ Disputed

**Type of NONPRIORITY unsecured claim:**
☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
☑ Other. Specify

---

| 4.10 | Midway Rent a Car, Inc. | Last 4 digits of account number ___ ___ ___ ___ | $ 69,000.00 |

Nonpriority Creditor's Name

c/o Richard Scott The Molino Firm
Number        Street
4751 Wilshire Blvd. Ste. 207

Los Angeles CA      90010
City        State    ZIP Code

**Who owes the debt?** Check one.
☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ **Check if this claim relates to a community debt**

**Is the claim subject to offset?**
☑ No
☐ Yes

**When was the debt incurred?** _____

**As of the date you file, the claim is:** Check all that apply.
☐ Contingent
☐ Unliquidated
☑ Disputed

**Type of NONPRIORITY unsecured claim:**
☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
☑ Other. Specify  Lawsuit

EXHIBIT 2, PAGE 68

Debtor _____   Case number _(if known)_ _____
         First Name    Middle Name    Last Name

| 4.11 | Miller Thomson LLP | | Last 4 digits of account number _____ | $ 38,000.00 |

Miller Thomson LLP
Nonpriority Creditor's Name

Attn: Millter Thomson
Number          Street
Scotia Plaza 40 King Street West, Suite 5800

P.O. Box 1011

City          State
Toronto, N M5H 3S1 Canada

ZIP Code

**Who owes the debt?** Check one.
☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☑ **Check if this claim relates to a community debt**

**Is the claim subject to offset?**
☑ No
☐ Yes

**Last 4 digits of account number** _____
**When was the debt incurred?** _____

**As of the date you file, the claim is:** Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**
☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
☑ Other. Specify  Legal services

$ 38,000.00

---

| 4.12 | San Diego City Administration |

San Diego City Administration
Nonpriority Creditor's Name

202 C St.
Number          Street
San Diego CA      92101
City      State   ZIP Code

**Who owes the debt?** Check one.
☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☑ **Check if this claim relates to a community debt**

**Is the claim subject to offset?**
☑ No
☐ Yes

**Last 4 digits of account number** _____
**When was the debt incurred?** _____

**As of the date you file, the claim is:** Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**
☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
☑ Other. Specify  Utility Services

$ 16,000.00

---

| 4.13 | TopDevz, LLC and Tyler Davis |

TopDevz, LLC and Tyler Davis
Nonpriority Creditor's Name

c/o Kenneth R. Reynolds, Esq.
Number          Street
2020 Hurley Way, Suite 210

Sacramento CA      95825
City      State   ZIP Code

**Who owes the debt?** Check one.
☑ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ **Check if this claim relates to a community debt**

**Is the claim subject to offset?**
☑ No
☐ Yes

**Last 4 digits of account number** _____
**When was the debt incurred?** _____

**As of the date you file, the claim is:** Check all that apply.
☑ Contingent
☐ Unliquidated
☑ Disputed

**Type of NONPRIORITY unsecured claim:**
☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
☑ Other. Specify  Judgment

$ 10,000,000.00

EXHIBIT 2, PAGE 69

Debtor _____    Case number (if known) _____
First Name    Middle Name    Last Name

| 4.14 | Wells Fargo | | Last 4 digits of account number ____ | $ 31,862.00 |

**4.14**
Wells Fargo
Nonpriority Creditor's Name
150 E. 42nd Street
Number    Street
New York NY    10017
City    State    ZIP Code

**Who owes the debt? Check one.**
- [ ] Debtor 1 only
- [ ] Debtor 2 only
- [ ] Debtor 1 and Debtor 2 only
- [ ] At least one of the debtors and another
- [x] Check if this claim relates to a community debt

**Is the claim subject to offset?**
- [x] No
- [ ] Yes

Last 4 digits of account number ____
**When was the debt incurred?** _____

As of the date you file, the claim is: Check all that apply.
- [ ] Contingent
- [ ] Unliquidated
- [ ] Disputed

**Type of NONPRIORITY unsecured claim:**
- [ ] Student loans
- [ ] Obligations arising out of a separation agreement or divorce that you did not report as priority claims
- [ ] Debts to pension or profit-sharing plans, and other similar debts
- [x] Other. Specify  Credit Card Debt

$ 31,862.00

**4.15**
Wells Fargo
Nonpriority Creditor's Name
150 E. 42nd Street
Number    Street
New York NY    10017
City    State    ZIP Code

**Who owes the debt? Check one.**
- [ ] Debtor 1 only
- [ ] Debtor 2 only
- [ ] Debtor 1 and Debtor 2 only
- [x] At least one of the debtors and another
- [ ] Check if this claim relates to a community debt

**Is the claim subject to offset?**
- [x] No
- [ ] Yes

Last 4 digits of account number ____
**When was the debt incurred?** _____

As of the date you file, the claim is: Check all that apply.
- [ ] Contingent
- [ ] Unliquidated
- [ ] Disputed

**Type of NONPRIORITY unsecured claim:**
- [ ] Student loans
- [ ] Obligations arising out of a separation agreement or divorce that you did not report as priority claims
- [ ] Debts to pension or profit-sharing plans, and other similar debts
- [x] Other. Specify  Credit Card Debt

$ 10,045.00

---

**Part 3:    List Others to Be Notified About a Debt That You Already Listed**

5. Use this page only if you have others to be notified about your bankruptcy, for a debt that you already listed in Parts 1 or 2. For example, if a collection agency is trying to collect from you for a debt you owe to someone else, list the original creditor in Parts 1 or 2, then list the collection agency here. Similarly, if you have more than one creditor for any of the debts that you listed in Parts 1 or 2, list the additional creditors here. If you do not have additional persons to be notified for any debts in Parts 1 or 2, do not fill out or submit this page.

American Express Legal
Creditor's Name
Attn: Aaron Baldaro
Number    Street
199 S Los Robles Avenue No. 540
Pasadena CA    91101
City    State    ZIP Code

**On which entry in Part 1 or Part 2 did you list the original creditor?**
Line  4.1  of (Check one):
- [ ] Part 1: Creditors with Priority Unsecured Claims
- [x] Part 2: Creditors with Nonpriority Unsecured

**Last 4 digits of account number ____**

Lone Mountain Aircraft
Creditor's Name
1251 W Blee Rd, Hangar 1
Number    Street
Springfield OH    45502
City    State    ZIP Code

**On which entry in Part 1 or Part 2 did you list the original creditor?**
Line  4.9  of (Check one):
- [ ] Part 1: Creditors with Priority Unsecured Claims
- [x] Part 2: Creditors with Nonpriority Unsecured
Claims

**Last 4 digits of account number ____**

Lone Mountain Aircraft Management LLC
Creditor's Name
Attn: Mark Rogers
Number    Street
2460 Greentree Rd HNGR 12
Lebanon OH    45036
City    State    ZIP Code

**On which entry in Part 1 or Part 2 did you list the original creditor?**
Line  4.9  of (Check one):
- [ ] Part 1: Creditors with Priority Unsecured Claims
- [x] Part 2: Creditors with Nonpriority Unsecured
Claims

**Last 4 digits of account number ____**

EXHIBIT 2, PAGE 70

Debtor _____    Case number _(if known)_ _____

| | |
|---|---|
| TopDevz, LLC | **On which entry in Part 1 or Part 2 did you list the original creditor?** |
| Creditor's Name | Line 4.13 of (Check one): |
| Attn: Tyler Davis | ☐ Part 1: Creditors with Priority Unsecured Claims |
| Number          Street | ☑ Part 2: Creditors with Nonpriority Unsecured |
| 149 Parkshore Drive | Claims |
| | **Last 4 digits of account number** ____ |
| Folsom CA    95630 | |
| City    State    ZIP Code | |

| Part 4: | Add the Amounts for Each Type of Unsecured Claim |
|---|---|

6. **Total the amounts of certain types of unsecured claims. This information is for statistical reporting purposes only. 28 U.S.C. § 159.**
   **Add the amounts for each type of unsecured claim.**

| | | | Total claim |
|---|---|---|---|
| **Total claims from Part 1** | 6a. **Domestic support obligations** | 6a. | $ 0.00 |
| | 6b. **Taxes and certain other debts you owe the government** | 6b. | $ 0.00 |
| | 6c. **Claims for death or personal injury while you were intoxicated** | 6c. | $ 0.00 |
| | 6d. **Other.** Add all other priority unsecured claims. Write that amount here. | 6d. | $ 0.00 |
| | 6e. **Total.** Add lines 6a through 6d. | 6e. | $ 0.00 |

| | | | Total claim |
|---|---|---|---|
| **Total claims from Part 2** | 6f. **Student loans** | 6f. | $ 0.00 |
| | 6g. **Obligations arising out of a separation agreement or divorce that you did not report as priority claims** | 6g. | $ 0.00 |
| | 6h. **Debts to pension or profit-sharing plans, and other similar debts** | 6h. | $ 0.00 |
| | 6i. **Other.** Add all other nonpriority unsecured claims. Write that amount here. | 6i. | $ 12,736,187.57 |
| | 6j. **Total.** Add lines 6f through 6i. | 6j. | $ 12,736,187.57 |

EXHIBIT 2, PAGE 71

**Fill in this information to identify your case:**

Debtor 1    Ashkan Mirfakhr Rajaee
            First Name        Middle Name        Last Name

Debtor 2    Nassim Rajaee
(Spouse, if filing)    First Name        Middle Name        Last Name

United States Bankruptcy Court for the:  Southern District of California

Case number
(if know)

☐ Check if this is
  an amended
  filing

Official Form 106G

# Schedule G: Executory Contracts and Unexpired Leases    12/15

**Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, copy the additional page, fill it out, number the entries, and attach it to this page. On the top of any additional pages, write your name and case number (if known).**

1. **Do you have any executory contracts or unexpired leases?**

   ☑ No. Check this box and file this form with the court with your other schedules. You have nothing else to report on this form.

   ☐ Yes. Fill in all of the information below even if the contracts or leases are listed on Schedule A/B: Property (Official Form 106A/B).

2. **List separately each person or company with whom you have the contract or lease. Then state what each contract or lease is for (for example, rent, vehicle lease, cell phone).**  See the instructions for this form in the instruction booklet for more examples of executory contracts and unexpired leases.

   **Person or company with whom you have the contract or lease  State what the contract or lease is for**

EXHIBIT 2, PAGE 72

**Fill in this information to identify your case:**

| | |
|---|---|
| Debtor 1 | Ashkan Mirfakhr Rajaee |
| | First Name   Middle Name   Last Name |
| Debtor 2 | Nassim Rajaee |
| (Spouse, if filing) | First Name   Middle Name   Last Name |

United States Bankruptcy Court for the:  Southern District of California

Case number
(if know)

☐ Check if this is
an amended
filing

Official Form 106H

# Schedule H: Your Codebtors

**12/15**

Codebtors are people or entities who are also liable for any debts you may have. Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, copy the Additional Page, fill it out, and number the entries in the boxes on the left. Attach the Additional Page to this page. On the top of any Additional Pages, write your name and case number (if known). Answer every question.

1. **Do you have any codebtors?**  (If you are filing a joint case, do not list either spouse as a codebtor.)
   ☐ No
   ☑ Yes

2. **Within the last 8 years, have you lived in a community property state or territory?**  (*Community property states and territories* include Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Puerto Rico, Texas, Washington, and Wisconsin.)
   ☐ No. Go to line 3.
   ☑ Yes. Did your spouse, former spouse, or legal equivalent live with you at the time?
       ☐ No
       ☑ Yes. In which community state or territory did you live?  CA   .  Fill in the name and current address of that person.

   Nassim Rajaee
   Name of your spouse, former spouse, or legal equivalent

   Number   Street

   City                                          State    ZIP Code

3. **In Column 1, list all of your codebtors. Do not include your spouse as a codebtor if your spouse is filing with you. List the person shown in line 2 again as a codebtor only if that person is a guarantor or cosigner. Make sure you have listed the creditor on Schedule D (Official Form 106D), Schedule E/F (Official Form 106E/F), or Schedule G (Official Form 106G). Use Schedule D, Schedule E/F, or Schedule G to fill out Column 2.**

| Column 1:  **Your codebtor** | Column 2:  **The creditor to whom you owe the debt**<br>Check all schedules that apply: |
|---|---|
| **3.1** TopDevs, LLC<br>Name<br>Attn: Tyler Davis 149 Parkshore Drive<br>Street<br>Folsom                     CA      95630<br>City                         State    ZIP Code | ☐ Schedule D, line ____<br>☑ Schedule E/F, line 4.9<br>☐ Schedule G, line ____ |
| **3.2** Media Magnet, LLC<br>Name<br>1401 21st St., Ste R<br>Street<br>Sacramento              CA      95811<br>City                         State    ZIP Code | ☐ Schedule D, line ____<br>☑ Schedule E/F, line 4.15<br>☐ Schedule G, line ____ |

EXHIBIT 2, PAGE 73

**Fill in this information to identify your case:**

| | |
|---|---|
| Debtor 1 | Ashkan  Mirfakhr Rajaee |
| | First Name  Middle Name  Last Name |
| Debtor 2 | Nassim  Rajaee |
| (Spouse, if filing) | First Name  Middle Name  Last Name |
| United States Bankruptcy Court for the: | Southern District of California |
| Case number (If known) | |

Check if this is:

☐ An amended filing

☐ A supplement showing postpetition chapter 13 income as of the following date:

_____
MM / DD / YYYY

Official Form 106I

# Schedule I: Your Income

12/15

Be as complete and accurate as possible. If two married people are filing together (Debtor 1 and Debtor 2), both are equally responsible for supplying correct information. If you are married and not filing jointly, and your spouse is living with you, include information about your spouse. If you are separated and your spouse is not filing with you, do not include information about your spouse. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

## Part 1:  Describe Employment

**1. Fill in your employment information.**

If you have more than one job, attach a separate page with information about additional employers.

Include part-time, seasonal, or self-employed work.

Occupation may include student or homemaker, if it applies.

| | | Debtor 1 | Debtor 2 or non-filing spouse |
|---|---|---|---|
| Employment status | | ☐ Employed<br>☑ Not employed | ☐ Employed<br>☑ Not employed |
| Occupation | | _____ | _____ |
| Employer's name | | _____ | _____ |
| Employer's address | | _____<br>Number  Street | _____<br>Number  Street |
| | | _____ | _____ |
| | | _____<br>City  State  ZIP Code | _____<br>City  State  ZIP Code |
| How long employed there? | | _____ | _____ |

## Part 2:  Give Details About Monthly Income

**Estimate monthly income as of the date you file this form.** If you have nothing to report for any line, write $0 in the space. Include your non-filing spouse unless you are separated.

If you or your non-filing spouse have more than one employer, combine the information for all employers for that person on the lines below. If you need more space, attach a separate sheet to this form.

| | | For Debtor 1 | For Debtor 2 or non-filing spouse |
|---|---|---|---|
| 2. **List monthly gross wages, salary, and commissions** (before all payroll deductions). If not paid monthly, calculate what the monthly wage would be. | 2. | $ 0.00 | $ 0.00 |
| 3. **Estimate and list monthly overtime pay.** | 3. | + $ 0.00 | + $ 0.00 |
| 4. **Calculate gross income.** Add line 2 + line 3. | 4. | $ 0.00 | $ 0.00 |

Official Form 106I                    Schedule I: Your Income                    page 1

EXHIBIT 2, PAGE 74

Debtor 1    Ashkan  Mirfakhr Rajaee & Nassim  Rajaee    Case number *(if known)* _____
     First Name    Middle Name    Last Name

|  |  | For Debtor 1 | For Debtor 2 or non-filing spouse |
|---|---|---|---|
| Copy line 4 here ....................................................➔ | 4. | $ 0.00 | $ 0.00 |

5. **List all payroll deductions:**

| | | For Debtor 1 | For Debtor 2 or non-filing spouse |
|---|---|---|---|
| 5a. **Tax, Medicare, and Social Security deductions** | 5a. | $ 0.00 | $ 0.00 |
| 5b. **Mandatory contributions for retirement plans** | 5b. | $ 0.00 | $ 0.00 |
| 5c. **Voluntary contributions for retirement plans** | 5c. | $ 0.00 | $ 0.00 |
| 5d. **Required repayments of retirement fund loans** | 5d. | $ 0.00 | $ 0.00 |
| 5e. **Insurance** | 5e. | $ 0.00 | $ 0.00 |
| 5f. **Domestic support obligations** | 5f. | $ 0.00 | $ 0.00 |
| 5g. **Union dues** | 5g. | $ 0.00 | $ 0.00 |
| 5h. **Other deductions.** Specify: _____ | 5h. | + $ 0.00 | + $ 0.00 |
| _____ | | $ | $ |
| _____ | | $ | $ |
| _____ | | $ | $ |
| 6. **Add the payroll deductions.** Add lines 5a + 5b + 5c + 5d + 5e +5f + 5g + 5h. | 6. | $ 0.00 | $ 0.00 |
| 7. **Calculate total monthly take-home pay.** Subtract line 6 from line 4. | 7. | $ 0.00 | $ 0.00 |

8. **List all other income regularly received:**

| | | For Debtor 1 | For Debtor 2 or non-filing spouse |
|---|---|---|---|
| 8a. **Net income from rental property and from operating a business, profession, or farm** | | | |
| Attach a statement for each property and business showing gross receipts, ordinary and necessary business expenses, and the total monthly net income. | 8a. | $ 8,450.00 | $ 0.00 |
| 8b. **Interest and dividends** | 8b. | $ 0.00 | $ 0.00 |
| 8c. **Family support payments that you, a non-filing spouse, or a dependent regularly receive** | | | |
| Include alimony, spousal support, child support, maintenance, divorce settlement, and property settlement. | 8c. | $ 0.00 | $ 0.00 |
| 8d. **Unemployment compensation** | 8d. | $ 0.00 | $ 0.00 |
| 8e. **Social Security** | 8e. | $ 0.00 | $ 0.00 |
| 8f. **Other government assistance that you regularly receive** | | | |
| Include cash assistance and the value (if known) of any non-cash assistance that you receive, such as food stamps (benefits under the Supplemental Nutrition Assistance Program) or housing subsidies. Specify: _____ | 8f. | $ 0.00 | $ 0.00 |
| 8g. **Pension or retirement income** | 8g. | $ 0.00 | $ 0.00 |
| 8h. **Other monthly income.** Specify: _____ | 8h. | + $ 0.00 | + $ 0.00 |
| 9. **Add all other income.** Add lines 8a + 8b + 8c + 8d + 8e + 8f +8g + 8h. | 9. | $ 8,450.00 | $ 0.00 |

10. **Calculate monthly income.** Add line 7 + line 9.
Add the entries in line 10 for Debtor 1 and Debtor 2 or non-filing spouse.

| 10. | $ 8,450.00 | + | $ 0.00 | = | $ 8,450.00 |
|---|---|---|---|---|---|

11. **State all other regular contributions to the expenses that you list in** *Schedule J.*

Include contributions from an unmarried partner, members of your household, your dependents, your roommates, and other friends or relatives.

Do not include any amounts already included in lines 2-10 or amounts that are not available to pay expenses listed in *Schedule J.*

Specify: Financial assistance from friends and family _____   11. + $ 3,500.00

12. **Add the amount in the last column of line 10 to the amount in line 11.** The result is the combined monthly income.
Write that amount on the *Summary of Your Assets and Liabilities and Certain Statistical Information*, if it applies   12. $ 11,950.00
             **Combined monthly income**

13. **Do you expect an increase or decrease within the year after you file this form?**
☑ No.
☐ Yes. Explain:

EXHIBIT 2, PAGE 75

**Fill in this information to identify your case:**

Debtor 1    Ashkan  Mirfakhr Rajaee
_____
First Name        Middle Name        Last Name

Debtor 2    Nassim  Rajaee
(Spouse, if filing) First Name    Middle Name    Last Name

United States Bankruptcy Court for the:    Southern District of California
_____    (State)

Case number
(if known)    _____

Check if this is:

☐ An amended filing

☐ A supplement showing postpetition chapter 13
expenses as of the following date:
_____
MM / DD / YYYY

Official Form 106J

# Schedule J: Your Expenses

12/15

**Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach another sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.**

| Part 1: | Describe Your Household |

1. **Is this a joint case?**

☐ No.  Go to line 2.

☑ Yes.  Does Debtor 2 live in a separate household?

   ☑ No

   ☐ Yes. Debtor 2 must file Official Form 106J-2, *Expenses for Separate Household of Debtor 2.*

2. **Do you have dependents?**

Do not list Debtor 1 and Debtor 2.

Do not state the dependents' names.

☐ No

☑ Yes. Fill out this information for each dependent..........................

| Dependent's relationship to Debtor 1 or Debtor 2 | Dependent's age | Does dependent live with you? |
|---|---|---|
| Son | 6 | ☐ No  ☑ Yes |
| Daughter | 4 | ☐ No  ☑ Yes |
| _____ | ___ | ☐ No  ☐ Yes |
| _____ | ___ | ☐ No  ☐ Yes |
| _____ | ___ | ☐ No  ☐ Yes |

3. **Do your expenses include expenses of people other than yourself and your dependents?**

☑ No

☐ Yes

| Part 2: | Estimate Your Ongoing Monthly Expenses |

**Estimate your expenses as of your bankruptcy filing date unless you are using this form as a supplement in a Chapter 13 case to report expenses as of a date after the bankruptcy is filed. If this is a supplemental** *Schedule J*, **check the box at the top of the form and fill in the applicable date.**

**Include expenses paid for with non-cash government assistance if you know the value of such assistance and have included it on** *Schedule I: Your Income* **(Official Form 106I.)**

|  | Your expenses |
|---|---|

4. **The rental or home ownership expenses for your residence.** Include first mortgage payments and any rent for the ground or lot.    4.    $ _____ 0.00

**If not included in line 4:**

4a.    Real estate taxes    4a.    $ _____ 0.00

4b.    Property, homeowner's, or renter's insurance    4b.    $ _____ 568.00

4c.    Home maintenance, repair, and upkeep expenses    4c.    $ _____ 700.00

4d.    Homeowner's association or condominium dues    4d.    $ _____ 0.00

EXHIBIT 2, PAGE 76

Debtor 1    Ashkan  Mirfakhr Rajaee & Nassim  Rajaee

First Name        Middle Name        Last Name

Case number (if known)_____

|  |  | Your expenses |
|---|---|---|
| 5. | **Additional mortgage payments for your residence**, such as home equity loans | 5. $ _____ 0.00 |
| 6. | **Utilities:** |  |
| 6a. | Electricity, heat, natural gas | 6a. $ _____ 1,250.00 |
| 6b. | Water, sewer, garbage collection | 6b. $ _____ 0.00 |
| 6c. | Telephone, cell phone, Internet, satellite, and cable services | 6c. $ _____ 400.00 |
| 6d. | Other. Specify: _____ | 6d. $ _____ 0.00 |
| 7. | **Food and housekeeping supplies** | 7. $ _____ 2,100.00 |
| 8. | **Childcare and children's education costs** | 8. $ _____ 2,000.00 |
| 9. | **Clothing, laundry, and dry cleaning** | 9. $ _____ 250.00 |
| 10. | **Personal care products and services** | 10. $ _____ 500.00 |
| 11. | **Medical and dental expenses** | 11. $ _____ 1,050.00 |
| 12. | **Transportation.** Include gas, maintenance, bus or train fare. Do not include car payments. | 12. $ _____ 3,191.00 |
| 13. | **Entertainment, clubs, recreation, newspapers, magazines, and books** | 13. $ _____ 0.00 |
| 14. | **Charitable contributions and religious donations** | 14. $ _____ 0.00 |
| 15. | **Insurance.** Do not include insurance deducted from your pay or included in lines 4 or 20. |  |
| 15a. | Life insurance | 15a. $ _____ 0.00 |
| 15b. | Health insurance | 15b. $ _____ 0.00 |
| 15c. | Vehicle insurance | 15c. $ _____ 0.00 |
| 15d. | Other insurance. Specify:_____ | 15d. $ _____ 0.00 |
| 16. | **Taxes.** Do not include taxes deducted from your pay or included in lines 4 or 20. Specify: _____ | 16. $ _____ 0.00 |
| 17. | **Installment or lease payments:** |  |
| 17a. | Car payments for Vehicle 1 | 17a. $ _____ 0.00 |
| 17b. | Car payments for Vehicle 2 | 17b. $ _____ 0.00 |
| 17c. | Other. Specify:_____ | 17c. $ _____ 0.00 |
| 17d. | Other. Specify:_____ | 17d. $ _____ 0.00 |
| 18. | **Your payments of alimony, maintenance, and support that you did not report as deducted from your pay on line 5, *Schedule I, Your Income* (Official Form 106I).** | 18. $ _____ 0.00 |
| 19. | **Other payments you make to support others who do not live with you.** Specify:_____ | 19. $ _____ 0.00 |
| 20. | **Other real property expenses not included in lines 4 or 5 of this form or on *Schedule I: Your Income.*** |  |
| 20a. | Mortgages on other property | 20a. $ _____ 0.00 |
| 20b. | Real estate taxes | 20b. $ _____ 0.00 |
| 20c. | Property, homeowner's, or renter's insurance | 20c. $ _____ 0.00 |
| 20d. | Maintenance, repair, and upkeep expenses | 20d. $ _____ 0.00 |
| 20e. | Homeowner's association or condominium dues | 20e. $ _____ 0.00 |

EXHIBIT 2, PAGE 77

Debtor 1     Ashkan  Mirfakhr Rajaee

First Name        Middle Name        Last Name

Case number *(if known)*_____

---

21.  **Other**. Specify:_____     21.  +$_____0.00

_____     +$_____

_____     +$_____

22.     **Calculate your monthly expenses.**

22a. Add lines 4 through 21.     22a.  $_____12,009.00

22b. Copy line 22 (monthly expenses for Debtor 2), if any, from Official Form 106J-2 22c. Add line 22a     22b.  $_____

and 22b. The result is your monthly expenses.     22c.  $_____12,009.00

23.  **Calculate your monthly net income.**

23a.  Copy line 12 (*your combined monthly income*) from *Schedule I*.     23a.  $_____11,950.00

23b.  Copy your monthly expenses from line 22c above.     23b.  −$_____12,009.00

23c.  Subtract your monthly expenses from your monthly income.     23c.  $_____−59.00
The result is your *monthly net income*.

24.  **Do you expect an increase or decrease in your expenses within the year after you file this form?**

For example, do you expect to finish paying for your car loan within the year or do you expect your
mortgage payment to increase or decrease because of a modification to the terms of your mortgage?

☑ No.

☐ Yes.     Explain here:

---

EXHIBIT 2, PAGE 78

| Fill in this information to identify your case: |
|---|

| Debtor 1 | Ashkan  Mirfakhr Rajaee | | |
| | First Name | Middle Name | Last Name |
| Debtor 2 | Nassim  Rajaee | | |
| (Spouse, if filing) | First Name | Middle Name | Last Name |

United States Bankruptcy Court for the Southern District of California

Case number
(If known) _____

☐ Check if this is an
amended filing

Official Form 106Dec

# Declaration About an Individual Debtor's Schedules    12/15

If two married people are filing together, both are equally responsible for supplying correct information.

You must file this form whenever you file bankruptcy schedules or amended schedules. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $250,000, or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

## Sign Below

Did you pay or agree to pay someone who is NOT an attorney to help you fill out bankruptcy forms?

☑ No

☐ Yes. Name of person_____. Attach *Bankruptcy Petition Preparer's Notice, Declaration, and Signature* (Official Form 119).

Under penalty of perjury, I declare that I have read the summary and schedules filed with this declaration and that they are true and correct.

✗ _____    ✗ _____
Signature of Debtor 1              Signature of Debtor 2

Date 02/26/2024                  Date 02/26/2024
    MM / DD / YYYY                     MM / DD / YYYY

EXHIBIT 2, PAGE 79

**Fill in this information to identify your case:**

Debtor 1    Ashkan Mirfakhr Rajaee
  First Name    Middle Name    Last Name

Debtor 2    Nassim Rajaee
(Spouse, if filing)    First Name    Middle Name    Last Name

United States Bankruptcy Court for the:  Southern District of California

Case number
(if know)

☐ Check if this is
  an amended
  filing

Official Form 107

# Statement of Financial Affairs for Individuals Filing for Bankruptcy    4/22

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

## Part 1:    Give Details About Your Marital Status and Where You Lived Before

**1. What is your current marital status?**

☑ Married
☐ Not married

**2. During the last 3 years, have you lived anywhere other than where you live now?**

☐ No
☑ Yes. List all of the places you lived in the last 3 years. Do not include where you live now.

| Debtor 1: | Dates Debtor 1 lived there | Debtor 2: | Dates Debtor 2 lived there |
|---|---|---|---|
| | | ☑ Same as Debtor 1 | ☑ Same as Debtor 1 |
| 1020 Genter Street<br>Number    Street<br>Apt 102 | From  07/2020<br>To  11/2021 | _____<br>Number    Street | From _____<br>To _____ |
| La Jolla CA    92037<br>City    State    ZIP Code | | _____<br>City    State    ZIP Code | |

**3. Within the last 8 years, did you ever live with a spouse or legal equivalent in a community property state or territory?** (*Community property states and territories* include Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Puerto Rico, Texas, Washington, and Wisconsin.)

☐ No
☑ Yes. Make sure you fill out *Schedule H: Your Codebtors* (Official Form 106H)

## Part 2:    Explain the Sources of Your Income

**4. Did you have any income from employment or from operating a business during this year or the two previous calendar years?**
Fill in the total amount of income you received from all jobs and all businesses, including part-time activities.
If you are filing a joint case and you have income that you receive together, list it only once under Debtor 1.

☐ No
☑ Yes. Fill in the details.

| | Debtor 1 | | Debtor 2 | |
|---|---|---|---|---|
| | Sources of income<br>Check all that apply | Gross income<br>(before deductions and exclusions) | Sources of income<br>Check all that apply | Gross income<br>(before deductions and exclusions) |
| **From January 1 of current year until the date you filed for bankruptcy:** | ☐ Wages, commissions, bonuses, tips | $ 16,900.00 | ☐ Wages, commissions, bonuses, tips | $ _____ |
| | ☑ Operating a business | | ☐ Operating a business | |

EXHIBIT 2, PAGE 80

Debtor _____Ashkan Mirfakhr Rajaee & Nassim Rajaee_____    Case number*(if known)* _____
       First Name    Middle Name    Last Name

| | | | |
|---|---|---|---|
| **For last calendar year:** | ☐ Wages, commissions, bonuses, tips | $ _146,400.00_ | ☐ Wages, commissions, bonuses, tips $ ____ |
| (January 1 to December 31, _2023_ ) | ☑ Operating a business | | ☐ Operating a business |
| **For the calendar year before that:** | ☐ Wages, commissions, bonuses, tips | $ _1,100,000.00_ | ☐ Wages, commissions, bonuses, tips $ ____ |
| (January 1 to December 31, _2022_ ) | ☑ Operating a business | | ☐ Operating a business |

**5. Did you receive any other income during this year or the two previous calendar years?**

Include income regardless of whether that income is taxable. Examples of *other income* are alimony; child support; Social Security, unemployment, and other public benefit payments; pensions; rental income; interest; dividends; money collected from lawsuits; royalties; and gambling and lottery winnings. If you are filing a joint case and you have income that you received together, list it only once under Debtor 1.

List each source and the gross income from each source separately. Do not include income that you listed in line 4.

☑ No
☐ Yes. Fill in the details.

| **Part 3:** | **List Certain Payments You Made Before You Filed for Bankruptcy** |
|---|---|

**6. Are either Debtor 1's or Debtor 2's debts primarily consumer debts?**

☑ No.  **Neither Debtor 1 nor Debtor 2 has primarily consumer debts.** *Consumer debts* are defined in 11 U.S.C. § 101(8) as "incurred by an individual primarily for a personal, family, or household purpose."

During the 90 days before you filed for bankruptcy, did you pay any creditor a total of $7,575* or more?

☑ No. Go to line 7.

☐ Yes. List below each creditor to whom you paid a total of $7,575* or more in one or more payments and the total amount you paid that creditor. Do not include payments for domestic support obligations, such as child support and alimony. Also, do not include payments to an attorney for this bankruptcy case.

* Subject to adjustment on 4/01/25 and every 3 years after that for cases filed on or after the date of adjustment.

☐ Yes.  **Debtor 1 or Debtor 2 or both have primarily consumer debts.**
During the 90 days before you filed for bankruptcy, did you pay any creditor a total of $600 or more?

☐ No. Go to line 7.

☐ Yes. List below each creditor to whom you paid a total of $600 or more and the total amount you paid that creditor. Do not include payments for domestic support obligations, such as child support and alimony. Also, do not include payments to an attorney for this bankruptcy case.

**7. Within 1 year before you filed for bankruptcy, did you make a payment on a debt you owed anyone who was an insider?** *Insiders* include your relatives; any general partners; relatives of any general partners; partnerships of which you are a general partner; corporations of which you are an officer, director, person in control, or owner of 20% or more of their voting securities; and any managing agent, including one for a business you operate as a sole proprietor. 11 U.S.C. § 101. Include payments for domestic support obligations, such as child support and alimony.

☑ No.
☐ Yes. List all payments to an insider.

**8. Within 1 year before you filed for bankruptcy, did you make any payments or transfer any property on account of a debt that benefited an insider?**
Include payments on debts guaranteed or cosigned by an insider.

☑ No.
☐ Yes. List all payments that benefited an insider.

| **Part 4:** | **Identify Legal Actions, Repossessions, and Foreclosures** |
|---|---|

**9. Within 1 year before you filed for bankruptcy, were you a party in any lawsuit, court action, or administrative proceeding?**
List all such matters, including personal injury cases, small claims actions, divorces, collection suits, paternity actions, support or custody modifications, and contract disputes.

☐ No
☑ Yes. Fill in the details.

EXHIBIT 2, PAGE 81

Debtor    Ashkan Mirfakhr Rajaee & Nassim Rajaee                                    Case number *(if known)* _____
          First Name    Middle Name    Last Name

| | Nature of the case | Court or agency | Status of the case |
|---|---|---|---|
| Case title: Rajaee v. Seanet Company, Inc. <br> Case number: 30-2022-01290103-CU-SL-CJC | Civil; Date filed: 11/01/2022 | Orange County Superior Court <br> Court Name <br> Number ___ Street <br> City  State  ZIP Code | ☑ Pending <br> ☐ On appeal <br> ☐ Concluded |
| Case title: RAJAEE v. LAVINE LOFGREN MORRIS AND ENGELBERG LLP et al <br> Case number: 37-2023-00011085-CU-PNCTL | Civil; Date filed: 03/16/2023 | San Diego Superior Court <br> Court Name <br> Number ___ Street <br> City  State  ZIP Code | ☑ Pending <br> ☐ On appeal <br> ☐ Concluded |
| Case title: ASHKAN RAJAEE VS WEINBERG GONSER FROST LLP, ET AL. <br> Case number: 23SMCV00121 | Civil; Date filed: 01/10/2023 | LA Superior Court <br> Court Name <br> Beverly Hills Courthouse <br> Number ___ Street <br> City  State  ZIP Code | ☑ Pending <br> ☐ On appeal <br> ☐ Concluded |
| Case title: Rajaee v. Lintz <br> Case number: 37-2022-00012247 | Civil; Date filed: 04/01/2022 | San Diego Superior Court <br> Court Name <br> Number ___ Street <br> City  State  ZIP Code | ☑ Pending <br> ☐ On appeal <br> ☐ Concluded |
| Case title: Rajaee v. Kresses and Piasecki Legal, PC et al <br> Case number: 3:22-cv-00895-WQH-MMP | Civil; Date filed: 06/20/2022 | United States District Court <br> Court Name <br> Southern District of California <br> Number ___ Street <br> City  State  ZIP Code | ☑ Pending <br> ☐ On appeal <br> ☐ Concluded |
| Case title: Midway Rent a Car Inc. v. Rajaee <br> Case number: 23STCV25513 | | Stanley Mosk Courthouse <br> Court Name <br> 111 North Hill Street <br> Number ___ Street <br> Los Angeles CA     90012 <br> City  State  ZIP Code | ☑ Pending <br> ☐ On appeal <br> ☐ Concluded |
| Case title: Rajaee v. Davis et al <br> Case number: 3:24-cv-00001-RSH-KSC | civil; Date filed: 01/02/2024 | United States District Court <br> Court Name <br> Southern District of California <br> Number ___ Street <br> City  State  ZIP Code | ☑ Pending <br> ☐ On appeal <br> ☐ Concluded |

**10.** **Within 1 year before you filed for bankruptcy, was any of your property repossessed, foreclosed, garnished, attached, seized, or levied?**
Check all that apply and fill in the details below.

☐ No. Go to line 11.
☑ Yes. Fill in the information below.

EXHIBIT 2, PAGE 82

Debtor    Ashkan Mirfakhr Rajaee & Nassim Rajaee
           First Name    Middle Name    Last Name                              Case number *(if known)* _____

| | Describe the property | Date | Value of the property |
|---|---|---|---|
| Midway Rent a Car, Inc. | 2019 Rolls Royce Cullinan | 05/2023 | $ 275,000.00 |
| Creditor's Name | | | |
| c/o Richard Scott The Molino Firm | **Explain what happened** | | |
| Number    Street | ☑ Property was repossessed. | | |
| 4751 Wilshire Blvd. Ste. 207 | ☐ Property was foreclosed. | | |
| | ☐ Property was garnished. | | |
| Los Angeles CA    90010 | ☐ Property was attached, seized, or levied. | | |
| City    State    ZIP Code | | | |

11. **Within 90 days before you filed for bankruptcy, did any creditor, including a bank or financial institution, set off any amounts from your accounts or refuse to make a payment because you owed a debt?**

☑ No
☐ Yes. Fill in the details

12. **Within 1 year before you filed for bankruptcy, was any of your property in the possession of an assignee for the benefit of creditors, a court-appointed receiver, a custodian, or another official?**

☑ No
☐ Yes

| Part 5: | List Certain Gifts and Contributions |
|---|---|

13. **Within 2 years before you filed for bankruptcy, did you give any gifts with a total value of more than $600 per person?**

☑ No
☐ Yes. Fill in the details for each gift.

14. **Within 2 years before you filed for bankruptcy, did you give any gifts or contributions with a total value of more than $600 to any charity?**

☑ No
☐ Yes. Fill in the details for each gift or contribution.

| Part 6: | List Certain Losses |
|---|---|

15. **Within 1 year before you filed for bankruptcy or since you filed for bankruptcy, did you lose anything because of theft, fire, other disaster, or gambling?**

☑ No
☐ Yes. Fill in the details.

| Part 7: | List Certain Payments or Transfers |
|---|---|

16. **Within 1 year before you filed for bankruptcy, did you or anyone else acting on your behalf pay or transfer any property to anyone you consulted about seeking bankruptcy or preparing a bankruptcy petition?**
Include any attorneys, bankruptcy petition preparers, or credit counseling agencies for services required in your bankruptcy.

☐ No
☑ Yes. Fill in the details.

| | Description and value of any property transferred | Date payment or transfer was made | Amount of payment |
|---|---|---|---|
| Leslie Cohen Law PC | | 02/2024 | $ 58,200.00 |
| Person Who Was Paid | | 10/25/2023 | $ _____ |
| 1615-A Montana Avenue | | | |
| Number    Street | | | |
| Santa Monica CA    90403 | | | |
| City    State    ZIP Code | | | |
| www.lesliecohenlaw.com | | | |
| Email or website address | | | |
| Debtor; Foundation International | | | |
| Person Who Made the Payment, if Not You | | | |

EXHIBIT 2, PAGE 83

Debtor    Ashkan Mirfakhr Rajaee & Nassim Rajaee                              Case number *(if known)* _____
                 First Name    Middle Name    Last Name

**17. Within 1 year before you filed for bankruptcy, did you or anyone else acting on your behalf pay or transfer any property to anyone who promised to help you deal with your creditors or to make payments to your creditors?**
Do not include any payment or transfer that you listed on line 16.

☑ No
☐ Yes. Fill in the details.

**18. Within 2 years before you filed for bankruptcy, did you sell, trade, or otherwise transfer any property to anyone, other than property transferred in the ordinary course of your business or financial affairs?**
Include both outright transfers and transfers made as security (such as the granting of a security interest or mortgage on your property). Do not include gifts and transfers that you have already listed on this statement.

☐ No
☑ Yes. Fill in the details.

| | Description and value of property transferred | Describe any property or payments received or debts paid in exchange | Date transfer was made |
|---|---|---|---|
| United Unicorn Enterprises, LLC<br>_Person Who Received Transfer_<br><br>_____<br>Number    Street<br><br>_____<br>City    State    ZIP Code<br>Person's relationship to you<br>Entity owned by Double-A Unicorns Enterprises, LLC, which is owned by Rajaee Family Trust | 1020 Genter St. Unit 102, La Jolla, CA | Property transferred back to Debtor on 2/15/2024 | 03/10/2022 |

**19. Within 10 years before you filed for bankruptcy, did you transfer any property to a self-settled trust or similar device of which you are a beneficiary?** (These are often called asset-protection devices.)

☐ No
☑ Yes. Fill in the details.

| | Describe any property or payments received or debts paid in exchange | Date transfer was made |
|---|---|---|
| Name of trust  6625 Muirlands Drive Qualified Personal Residence Trust #1 | 50% interest in 6625 Muirlands Drive, La Jolla (Property transferred back to Debtors 2/16/24), Unknown | 03/10/2022 |
| Name of trust  6625 Muirlands Drive Qualified Personal Residence Trust #2 | 50% interest in 6625 Muirlands Drive, La Jolla (Property transferred back to Debtors 2/16/24), Unknown | 03/10/2022 |

| **Part 8:** | **List Certain Financial Accounts, Instruments, Safe Deposit Boxes, and Storage Units** |
|---|---|

**20. Within 1 year before you filed for bankruptcy, were any financial accounts or instruments held in your name, or for your benefit, closed, sold, moved, or transferred?**
Include checking, savings, money market, or other financial accounts; certificates of deposit; shares in banks, credit unions, brokerage houses, pension funds, cooperatives, associations, and other financial institutions.

☐ No
☑ Yes. Fill in the details.

| | Last 4 digits of account number | Type of account or instrument | Date account was closed, sold, moved, or transferred | Last balance before closing or transfer |
|---|---|---|---|---|
| Citibank<br>_Name of Financial Institution_<br>PO box 6201<br>Number    Street<br>Sioux Falls SD    57117-6201<br>City    State    ZIP Code | XXXX– _3_ _4_ _9_ _6_ | ☑ Checking<br>☐ Savings<br>☐ Money market<br>☐ Brokerage<br>☐ Other _____ | 01/01/2024 | $ 0.00 |

EXHIBIT 2, PAGE 84

Debtor    Ashkan Mirfakhr Rajaee & Nassim Rajaee                                    Case number *(if known)* _____
       First Name    Middle Name    Last Name

| | | |
|---|---|---|
| Wells Fargo | XXXX– 4  7  9  1 | ☑ Checking |
| Name of Financial Institution | | ☐ Savings |
| PO Box 6995 | | ☐ Money market |
| Number     Street | | ☐ Brokerage |
| Portland OR   97228-6995 | 05/01/2023    $ 0.00 | ☐ Other _____ |
| City   State   ZIP Code | | |

**21.Do you now have, or did you have within 1 year before you filed for bankruptcy, any safe deposit box or other depository for securities, cash, or other valuables?**

☑ No

☐ Yes. Fill in the details.

**22.Have you stored property in a storage unit or place other than your home within 1 year before you filed for bankruptcy**

☑ No

☐ Yes. Fill in the details.

---

**Part 9:**   **Identify Property You Hold or Control for Someone Else**

**23.Do you hold or control any property that someone else owns? Include any property you borrowed from, are storing for, or hold in trust for someone.**

☑ No

☐ Yes. Fill in the details.

---

**Part 10:**   **Give Details About Environmental Information**

For the purpose of Part 10, the following definitions apply:

- *Environmental law* means any federal, state, or local statute or regulation concerning pollution, contamination, releases of hazardous or toxic substances, wastes, or material into the air, land, soil, surface water, groundwater, or other medium, including statutes or regulations controlling the cleanup of these substances, wastes, or material.

- *Site* means any location, facility, or property as defined under any environmental law, whether you now own, operate, or utilize it or used to own, operate, or utilize it, including disposal sites.

- *Hazardous material* means anything an environmental law defines as a hazardous waste, hazardous substance, toxic substance, hazardous material, pollutant, contaminant, or similar term.

Report all notices, releases, and proceedings that you know about, regardless of when they occurred.

**24.Has any governmental unit notified you that you may be liable or potentially liable under or in violation of an environmental law?**

☑ No

☐ Yes. Fill in the details.

**25.Have you notified any governmental unit of any release of hazardous material?**

☑ No

☐ Yes. Fill in the details.

**26.Have you been a party in any judicial or administrative proceeding under any environmental law? Include settlements and orders.**

☑ No

☐ Yes. Fill in the details.

---

**Part 11:**   **Give Details About Your Business or Connections to Any Business**

**27.Within 4 years before you filed for bankruptcy, did you own a business or have any of the following connections to any business?**

    ☐ A sole proprietor or self-employed in a trade, profession, or other activity, either full-time or part-time

    ☐ A member of a limited liability company (LLC) or limited liability partnership (LLP)

    ☐ A partner in a partnership

    ☐ An officer, director, or managing executive of a corporation

    ☑ An owner of at least 5% of the voting or equity securities of a corporation

☐ No. None of the above applies. Go to Part 12.

☑ Yes. Check all that apply above and fill in the details below for each business.

---

EXHIBIT 2, PAGE 85

Debtor    Ashkan Mirfakhr Rajaee & Nassim Rajaee
_____
First Name     Middle Name     Last Name           Case number *(if known)* _____

| | | |
|---|---|---|
| **Hub Suite, Inc.**<br>Business Name<br>**1 Market Street, Ste 3600**<br>Number    Street<br>**San Francisco CA    94105**<br>City    State    ZIP Code | **Describe the nature of the business**<br>Fintech<br><br>**Name of accountant or bookkeeper** | **Employer Identification number**<br>Do not include Social Security number or ITIN.<br><br>EIN: 8 3 – 4 4 9 5 9 4 7<br>**Dates business existed**<br>From 04/15/2019 To Current |
| **TopDevz HYBRID LLC**<br>Business Name<br>**1400 S ST**<br>Number    Street<br>**Sacramento CA    95811**<br>City    State    ZIP Code | **Describe the nature of the business**<br>offshore software development resources<br><br>**Name of accountant or bookkeeper** | **Employer Identification number**<br>Do not include Social Security number or ITIN.<br><br>EIN: 8 4 – 2 8 6 1 7 7 8<br>**Dates business existed**<br>From 08/26/2019 To 01/07/2022 |
| **Double A Unicorns Enterprises, LLC**<br>Business Name<br>**7660 Fay Ave H181**<br>Number    Street<br>**La Jolla CA    92037**<br>City    State    ZIP Code | **Describe the nature of the business**<br>Owned by revocable family trust<br><br>**Name of accountant or bookkeeper** | **Employer Identification number**<br>Do not include Social Security number or ITIN.<br><br>EIN: 3 8 – 4 2 4 3 9 4 0<br>**Dates business existed**<br>From 03/23/2022 To Current |
| **Media Magnet LLC**<br>Business Name<br>**c/o Registered Agents Inc**<br>Number    Street<br>**1401 21st St., Ste R**<br><br>**Sacramento CA    95811**<br>City    State    ZIP Code | **Describe the nature of the business**<br>media marketing<br><br>**Name of accountant or bookkeeper** | **Employer Identification number**<br>Do not include Social Security number or ITIN.<br><br>EIN: 3 8 – 4 1 9 0 4 1 2<br>**Dates business existed**<br>From 07/13/2021 To 01/07/2022 |
| **OmniGenie, Inc.**<br>Business Name<br>**Miller Thomson, LLP**<br>Number    Street<br>**40 King Street West, Suite 5800**<br><br>**Toronto, ON Canada    M5H 3S1**<br>City    State    ZIP Code | **Describe the nature of the business**<br>holding company<br><br>**Name of accountant or bookkeeper** | **Employer Identification number**<br>Do not include Social Security number or ITIN.<br><br>EIN: __ __ – __ __ __ __ __ __ __<br>**Dates business existed**<br>From 01/31/2014 To Current |
| **RemotePreneurs LLC**<br>Business Name<br>**2191 E. 32nd St.**<br>Number    Street<br>**Yuma AZ    85365**<br>City    State    ZIP Code | **Describe the nature of the business**<br>holding company<br><br>**Name of accountant or bookkeeper** | **Employer Identification number**<br>Do not include Social Security number or ITIN.<br><br>EIN: __ __ – __ __ __ __ __ __ __<br>**Dates business existed**<br>From 06/14/2021 To Current |

**28. Within 2 years before you filed for bankruptcy, did you give a financial statement to anyone about your business? Include all financial institutions, creditors, or other parties.**

☐ No. None of the above applies. Go to Part 12.

☑ Yes. Check all that apply above and fill in the details below for each business.

| | **Date issued** |
|---|---|
| **Tyler Davis**<br>Name<br>**1400 S St**<br>Number    Street<br>**Sacramento CA    95811**<br>City    State    ZIP Code | **03/15/2022**<br>MM / DD / YYYY |

Debtor    Ashkan Mirfakhr Rajaee & Nassim Rajaee                     Case number *(if known)* _____
        First Name    Middle Name    Last Name

| Part 12: | Sign Below |
|---|---|

**I have read the answers on this** *Statement of Financial Affairs* **and any attachments, and I declare under penalty of perjury that the answers are true and correct. I understand that making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $250,000, or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.**

✖ _____          ✖ _____
Signature of Debtor 1                                          Signature of Debtor 2

Date 02/26/2024                                                    Date 02/26/2024

**Did you pay or agree to pay someone who is not an attorney to help you fill out bankruptcy forms?**

☑ No

☐ Yes. Name of person _____    Attach the Bankruptcy Petition Preparer's Notice, Declaration, and Signature (Official Form 119).

**Fill in this information to identify your case:**

Debtor 1    Ashkan  Mirfakhr Rajaee
          First Name       Middle Name       Last Name

Debtor 2    Nassim  Rajaee
(Spouse, if filing)  First Name       Middle Name       Last Name

United States Bankruptcy Court for the:  Southern District of California

Case number
(If known)

☐ Check if this is an amended filing

## Official Form 122B

# Chapter 11 Statement of Your Current Monthly Income          12/21

**You must file this form if you are an individual and are filing for bankruptcy under Chapter 11 (other than Subchapter V). If more space is needed, attach a separate sheet to this form. Include the line number to which the additional information applies. On the top of any additional pages, write your name and case number (if known).**

| Part 1: | Calculate Your Current Monthly Income |
| --- | --- |

1. **What is your marital and filing status?** Check one only.

   ☐ **Not married.** Fill out Column A, lines 2-11.

   ☑ **Married and your spouse is filing with you.** Fill out both Columns A and B, lines 2-11.

   ☐ **Married and your spouse is NOT filing with you.** Fill out Column A, lines 2-11.

   Fill in the average monthly income that you received from all sources, derived during the 6 full months before you file this bankruptcy case. 11 U.S.C. § 101(10A). For example, if you are filing on September 15, the 6-month period would be March 1 through August 31. If the amount of your monthly income varied during the 6 months, add the income for all 6 months and divide the total by 6. Fill in the result. Do not include any income amount more than once. For example, if both spouses own the same rental property, put the income from that property in one column only. If you have nothing to report for any line, write $0 in the space.

| | | Column A<br>Debtor 1 | Column B<br>Debtor 2 |
| --- | --- | --- | --- |
| 2. | **Your gross wages, salary, tips, bonuses, overtime, and commissions** (before all payroll deductions). | $ 0.00 | $ 0.00 |
| 3. | **Alimony and maintenance payments.** Do not include payments from a spouse if Column B is filled in. | $ 0.00 | $ 0.00 |
| 4. | **All amounts from any source which are regularly paid for household expenses of you or your dependents, including child support.** Include regular contributions from an unmarried partner, members of your household, your dependents, parents, and roommates. Include regular contributions from a spouse only if Column B is not filled in. Do not include payments you listed on line 3. | $ 0.00 | $ 0.00 |

5. **Net income from operating a business, profession, or farm**

| | Debtor 1 | Debtor 2 | | | |
| --- | --- | --- | --- | --- | --- |
| Gross receipts (before all deductions) | $ 0.00 | $ 0.00 | | | |
| Ordinary and necessary operating expenses | − $ 0.00 | − $ 0.00 | | | |
| Net monthly income from a business, profession, or farm | $ 0.00 | $ 0.00 | Copy here➔ | $ 0.00 | $ 0.00 |

6. **Net income from rental and other real property**

| | Debtor 1 | Debtor 2 | | | |
| --- | --- | --- | --- | --- | --- |
| Gross receipts (before all deductions) | $ 8,450.00 | $ 0.00 | | | |
| Ordinary and necessary operating expenses | − $ 0.00 | − $ 0.00 | | | |
| Net monthly income from rental or other real property | $ 8,450.00 | $ 0.00 | Copy here➔ | $ 8,450.00 | $ 0.00 |

EXHIBIT 2, PAGE 88

Debtor 1    Ashkan  Mirfakhr Rajaee

First Name    Middle Name    Last Name

Case number (if known) _____

|  | Column A Debtor 1 | Column B Debtor 2 |
|---|---|---|

**7. Interest, dividends, and royalties**

$ 0.00    $ 0.00

**8. Unemployment compensation**

Do not enter the amount if you contend that the amount received was a benefit under the Social Security Act. Instead, list it here: ..................↓

$ 0.00    $ 0.00

For you ....................................................................... $ _____

For your spouse ......................................................... $ _____

**9.** Pension or retirement income. Do not include any amount received that was a benefit under the Social Security Act. Also, except as stated in the next sentence, do not include any compensation, pension, pay, annuity, or allowance paid by the United States Government in connection with a disability, combat-related injury or disability, or death of a member of the uniformed services. If you received any retired pay paid under chapter 61 of title 10, then include that pay only to the extent that it does not exceed the amount of retired pay to which you would otherwise be entitled if retired under any provision of title 10 other than chapter 61 of that title.

$ 0.00    $ 0.00

**10. Income from all other sources not listed above.** Specify the source and amount. Do not include any benefits received under the Social Security Act; payments made under the Federal law relating to the national emergency declared by the President under the National Emergencies Act (50 U.S.C. 1601 et seq.) with respect to the coronavirus disease 2019 (COVID-19); payments received as a victim of a war crime, a crime against humanity, or international or domestic terrorism; or compensation, pension, pay, annuity, or allowance paid by the United States Government in connection with a disability, combat-related injury or disability, or death of a member of the uniformed services. If necessary, list other sources on a separate page and put the total below.

$ 0.00    $ 0.00

$ 0.00    $ 0.00

+ $ 0.00    + $ 0.00

Total amounts from separate pages, if any.

| 8,450.00 | + | 0.00 | = | 8,450.00 |
|---|---|---|---|---|

Total current monthly income

**11. Calculate your total current monthly income.**
Add lines 2 through 10 for each column.
Then add the total for Column A to the total for Column B.

| Part 2: | Sign Below |
|---|---|

By signing here, under penalty of perjury I declare that the information on this statement and in any attachments is true and correct.

✗ _____    ✗ _____
Signature of Debtor 1    Signature of Debtor 2

Date  02/26/2024    Date  02/26/2024
MM / DD  / YYYY    MM / DD  / YYYY

Official Form 122B    Chapter 11 Statement of Your Current Monthly Income    page 2

EXHIBIT 2, PAGE 89

B2030 (Form 2030) (12/15)

# United States Bankruptcy Court

## Southern District of California

**In re**  Ashkan Mirfakhr Rajaee & Nassim Rajaee

Case No. _____

**Debtor**

Chapter 11 _____

### DISCLOSURE OF COMPENSATION OF ATTORNEY FOR DEBTOR

1.  Pursuant to 11 U .S.C. § 329(a) and Fed. Bankr. P. 2016(b), I certify that I am the attorney for the above named debtor(s) and that compensation paid to me within one year before the filing of the petition in bankruptcy, or agreed to be paid to me, for services rendered or to be rendered on behalf of the debtor(s) in contemplation of or in connection with the bankruptcy case is as follows:

   For legal services, I have agreed to accept . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $_____58,200.00

   Prior to the filing of this statement I have received . . . . . . . . . . . . . . . . . . . . . . $_____58,200.00

   Balance Due . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $_____0

2.  The source of the compensation paid to me was:

   ☑ Debtor         ☑ Other (specify)         $45,000 paid by Foundation International

3.  The source of compensation to be paid to me is:

   ☐ Debtor         ☐ Other (specify)

4.  ☑ I have not agreed to share the above-disclosed compensation with any other person unless they are members and associates of my law firm.

   ☐ I have agreed to share the above-disclosed compensation with a other person or persons who are not members or associates of my law firm. A copy of the agreement, together with a list of the names of the people sharing in the compensation, is attached.

5.  In return for the above-disclosed fee, I have agreed to render legal service for all aspects of the bankruptcy case, including:

   a.  Analysis of the debtor' s financial situation, and rendering advice to the debtor in determining whether to file a petition in bankruptcy;

   b.  Preparation and filing of any petition, schedules, statements of affairs and plan which may be required;

   c.  Representation of the debtor at the meeting of creditors and confirmation hearing, and any adjourned hearings thereof;

EXHIBIT 2, PAGE 90

B2030 (Form 2030) (12/15)

    d.   Representation of the debtor in ~~adversary proceedings and other~~ contested bankruptcy matters;

    e.   [Other provisions as needed]

6.   By agreement with the debtor(s), the above-disclosed fee does not include the following services:

   Adversary Proceedings

<table>
<tr><td>

**CERTIFICATION**

   I certify that the foregoing is a complete statement of any agreement or arrangement for payment to me for representation of the debtor(s) in this bankruptcy proceeding.

  02/26/2024          /s/ Leslie A. Cohen
*Date*                 *Signature of Attorney*

                 LESLIE COHEN LAW PC
                  *Name of law firm*

</td></tr>
</table>

EXHIBIT 2, PAGE 91

**EXHIBIT 3**



**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego

**08/15/2023** at 04:20:00 PM
Clerk of the Superior Court
By Mariejo Guyot, Deputy Clerk

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF SAN DIEGO

| | |
|---|---|
| TYLER B. DAVIS, an Individual, and TOPDEVZ, LLC, a California Limited Liability Company,<br><br>　　　　　Petitioners,<br><br>vs.<br><br>ASHKAN RAJAEE, an Individual,<br><br>　　　　　Respondents. | CASE NO.: 37-2022-00026691-CU-PA-CTL<br><br>**JUDGMENT ON CONFIRMED ARBITRATION AWARD**<br><br>**DATE: July 20, 2023**<br>**TIME: 9:00 a.m.**<br>**DEPT: C-73**<br><br>ASSIGNED FOR ALL PURPOSES TO THE HONORABLE JOEL R. WOHLFEIL, DEPARTMENT C-73<br><br>Petition Filed: July 7, 2022 |

　　**IT IS HEREBY ADJUDGED** that the Final Arbitration Award issued by Arbitrator Rebecca Callahan, Esq. of the American Arbitration Association and dated May 12, 2023, having been confirmed by order of this Court on July 21, 2023, is hereby entered in its entirety as the Judgment of this Court, including that:

　　a.　Petitioner TYLER B. DAVIS recover from Respondent ASHKAN RAJAEE the sum of One Million Seven Hundred Four Thousand Four Hundred Fifteen Dollars and

-1-

JUDGMENT ON CONFIRMED ARBITRATION AWARD

[W383]2494792.DOCX;1]

**EXHIBIT 3, PAGE 92**

1  Sixty-Four Cents (US $1,704,415.64), together with prejudgment interest thereon at

2  the rate of 10% (percent) per year from May 12, 2023, through the date of entry of the

3  judgment.

4     b.  Petitioner TOPDEVZ, LLC, recover from Respondent ASHKAN RAJAEE the sum

5  of Seven Million Six Hundred Seventy Thousand One Hundred Fifty-One Dollars (US

6  $7,670,151.00), together with prejudgment interest thereon at the rate of 10%

   (percent) per year from May 12, 2023, through the date of entry of the judgment.

7     c.  Respondent ASHKAN RAJAEE'S claims against Petitioners TYLER B. DAVIS and

8  TOPDEVZ, LLC are hereby denied in their entirety.

9     d.  Petitioner TYLER B. DAVIS is the prevailing party in this proceeding and shall

10  recover from Respondent ASHKAN RAJAEE attorneys' fees in this proceeding to be

11  fixed by post-judgment attorneys' fees motion.

12     e.  Petitioner TYLER B. DAVIS shall recover from Respondent ASHKAN RAJAEE

13  costs in this proceeding to be determined by post-judgment cost bill.

14     A true and accurate copy of the confirmed Award is attached in its entirety hereto as

15  Exhibit 1.

   **IT IS SO ORDERED.**

16

17  Dated:  **08/15/2023**

18

19

20  JOEL R. WOHLFEIL
   JUDGE OF THE SUPERIOR COURT

21

22

23

24

25

26

27

28

-2-

JUDGMENT ON CONFIRMED ARBITRATION AWARD

[W383]2494792.DOCX;1]

**EXHIBIT 3, PAGE 93**

**PROOF OF SERVICE**
**(Declaration)**
**(C.C.P. §§1013(a) and 2015.5)**

STATE OF CALIFORNIA       )
                        )    ss.
COUNTY OF ORANGE       )

I, the undersigned, declare:

I am employed in the County of Orange, State of California. I am over the age of 18 and not a party to the within action. My business address is 2424 S.E. Bristol Street, Suite 300, Newport Beach, CA 92660-0764.

On August 1, 2023, I served the following document(s): **[proposed] JUDGMENT** on the interested parties in this action by placing a true and correct copy of each document thereof, enclosed in a sealed envelope, addressed as follows:

***SEE ATTACHED SERVICE LIST***

☐   **By Mail:** I am readily familiar with Cummins & White, LLP's business practice for collection and processing of correspondence for mailing with the United States Postal Service. I know that the correspondence is deposited with the United States Postal Service on the same day this declaration was executed in the ordinary course of business. I know that the envelope was sealed and, with postage thereon fully prepaid, placed for collection and mailing on this date, following ordinary business practices, in the United States mail at Newport Beach, California

☑   **By E-Mail:** I caused the above-referenced document(s) to be served via e-mail to the attached-named person(s) at his/her/their e-mail address(es) of record. The transmission was reported as complete and without error. Attached to this declaration is an "E-Mail Confirmation Report" confirming the date, time and status of transmission.

☐   **By Personal Service:** I caused the above document(s) to be hand delivered to the attached address(es).

☐   **By Overnight Courier:** I caused the above-referenced document(s) to be delivered to an overnight courier service ([Name of Courier] ) for delivery to the above address(es).

Executed on August 1, 2023, at Newport Beach, California.

☑   **(State)** I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Jessica Berson

-1-
PROOF OF SERVICE

|W383|2494792.DOCX;1|

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**SERVICE LIST**

Emil Petrossian, Esq.
Marc L. Benezra, Esq.
Glaser, Weil, Fink, Howard, Avchen &
Shapiro
501 West Broadway, 8th Floor
San Diego, CA 92101
Telephone  (619) 765-4380
Facsimile:  (619) 483.0646
epetrossian@glaserweil.com
mbenezra@glaserweil.com
agipson@glaserweil.com
ssegura@glaserweil.com
sriley@glaserweil.com
*Attorneys for Respondent Ashkan Rajaee*

J. Douglas Kirk, Esq.
Kirk & Toberty, Attorneys at Law
2201 Dupont Drive, Suite 820
Irvine, CA 92612
Telephone:  (949) 416-2215
Facsimile:   (949) 851-1250
jdkirk@kirkandtoberty.com
rflynn@kirkandtoberty.com
*Attorneys for Petitioner/Cross-Respondent*
*TopDevz, LLC*

Joseph W. Scalia, Esq.
Law Offices of Joseph W. Scalia, APC
3017 Douglas Boulevard, Suite 300
PMB 30095
Roseville, CA 95661
joe@scalialawoffices.net
*Attorneys for Petitioner/Cross-Respondent*
*Tyler B. Davis*

-2-

PROOF OF SERVICE

|W383|2494792.DOCX;1|

EXHIBIT 3, PAGE 95

# EXHIBIT 1

## INTERNATIONAL CENTRE FOR DISPUTE RESOLUTION
### International Arbitral Tribunal

In the Matter of the Arbitration Between:

Ashkan Rajaee and TopDevz, LLC, a California Limited Liability Company,

Claimants and Counter-Respondents,

- vs -

Tyler B. Davis,

Respondent and Counter-Claimant

ICDR Case No. 01-21-0001-9983

### FINAL AWARD

1

**Counsel for Claimant and Counter-Respondent Ashkan Rajaee**
Jordan Matthews, Esq.
Weinberg Gonser LLP
10866 Wilshire Boulevard, Suite 1650
Los Angeles, CA  90024
*[February 2021 to Early January 2022]*

Connor Lynch, Esq.
4470 W. Sunset Boulevard, Box No. 90096
Los Angeles, CA  90027
*[January 2022]*

Ethan J. Brown, Esq.
Geoffrey Neri, Esq.
Tim G. Lamoureux, Esq.
Kete Barnes, Esq.
Brown Neri Smith & Khan LLP
11601 Wilshire Boulevard, Suite 2080
Los Angeles, CA  90025
*[January 2022 to September 2022]*

Ashkan Rajaee, self-represented
*[September 2022 Forward]*

**Counsel for Respondent and Counter-Claimant Tyler Davis**
Scott R. Carpenter, Esq.
Cummins & White LLP
2424 S.E. Bristol Street, Suite 300
Newport Beach, CA  92660
*[Entire Case]*

**Counsel for Claimant and Counter-Respondent TopDevz LLC**
Same as Ashkan Rajaee
*[August 2021 to September 2022]*

J. Douglas Kirk, Esq.
Kirk & Toberty
2201 Dupont Drive, Suite 820
Irvine, CA  92612
*[September 2022 Forward]*

**Dates of Arbitration Hearings:**

| Session One | Session Two | Session Three |
|---|---|---|
| December 1, 2021 | April 4, 2022 | March 20, 2023 |
| December 2, 2021 | April 5, 2022 | |
| December 13, 2021 | April 6, 2022 | |
| | April 7, 2022 | |
| | April 11, 2022 | |
| | April 12, 2022 | |
| | April 13, 2022 | |
| | April 14, 2022 | |
| | April 21, 2022 | |
| | April 22, 2022 | |

**Arbitrator:**
Rebecca Callahan
Callahan Dispute Resolution
5120 Campus Drive
Newport Beach, CA  92660

EXHIBIT 3, PAGE 98

## TABLE OF CONTENTS

|   |   | Page |
|---|---|---|
| 1. | Introductory Statement | 1 |
| 2. | Arbitral Jurisdiction | 4 |
| 3. | Background Facts Pertinent to the Award | 6 |
| 4. | Proceedings and Decision on the Petition for Dissolution [Evidentiary Hearing Proceedings Conducted December 1, 2 and 13, 2021, and Emergency Hearing Conducted January 13, 2022 – Order Nos. 4, 5 and 6 Incorporated Herein] | 12 |
|   | A. Introductory Statement | 12 |
|   | B. Ruling on the Petition and Factual Determinations Made With Respect to the Petition | 13 |
|   | (1) Davis has the right to dissolve the LLC because he holds a majority of the Percentage Interests in the LLC. | 13 |
|   | (2) Even if Davis is not the Majority Member, protective dissolution would be in order because management of the LLC is deadlocked and subject to internal dissension | 18 |
|   | (3) Order No. 4 | 19 |
|   | (4) Post-Script to Order No. 4 – Order No. 5 and Factual Determinations Made With Respect Thereto | 22 |
|   | (5) Post-Script to Order No. 4 – Order No. 6 | 24 |
| 5. | Proceedings and Decision on the Final Accounting for the LLC [Evidentiary Hearing Proceedings Conducted April 4 through 7, 2022, April 11 through 14, 2022, ad April 21 and 22, 2022 – Order No. 16 and Partial Final Award] | 25 |

| | Page |
|---|---|
| A. Introductory Statement | 25 |
| B. Burden of Proof | 28 |
| C. Ruling on the Final Accounting for the LLC and Factual Determinations Made With Respect to the Final Accounting | 30 |
| (1) Rajaee's Failed Accounting | 30 |
| (2) Rajaee Failed to Substantiate that the Millions of Dollars Paid to Himself and His Companies Were for Legitimate Business Expenses of the LLC | 34 |
| (a) Introductory Statement | 34 |
| (b) The Evidence Showed that the Amount Rajaee Needed to Substantiate was $7,670,151 | 37 |
| (c) Rajaee Failed to Provide Sufficient Evidence that the Millions of Dollars Paid to or for the Benefit of Himself and His Companies Were for Legitimate Business Expenses of the LLC | 40 |
| (d) Rajaee Failed to Establish any Loan Indebtedness Owed to Him by the LLC | 46 |
| (3) Davis' Contributions, Distributions and Advances Were Not Disputed | 46 |
| (4) Davis' Final Accounting and Partial Final Award in Favor of the LLC Against Rajaee | 47 |

ii

EXHIBIT 3, PAGE 100

|  |  | Page |
|---|---|---|
| 6. | Davis is Entitled to an Award of Compensatory Damages on His Breach of Fiduciary Duty and Fraud Counterclaims Against Rajaee | 51 |
|  | A. Introductory Statement | 51 |
|  | B. Breach of Fiduciary Duty Counterclaim (Second Claim for Relief) | 52 |
|  | C. Misrepresentation and Fraud Counterclaim (Third Claim for Relief) | 53 |
| 7. | Rajaee's Claims Against Davis Are Denied Because Rajaee Failed to Carry His Burden of Proof on Any of His Asserted Claims | 54 |
|  | A. Introductory Statement | 54 |
|  | B. Rajaee's Claim Against Davis for Defamation Per Se | 55 |
|  | C. Rajaee's Claim Against Davis for Civil Extortion | 56 |
|  | D. Rajaee's Claim Against Davis for Intentional Infliction of Emotional Distress | 56 |
|  | E. Rajaee's Claim Against Davis for Intentional Interference with Contract | 57 |
|  | F. Rajaee's Claim Against Davis for Intentional Interference with Prospective Business Advantage | 57 |
|  | G. Rajaee's Claim Against Davis for Breach of Fiduciary Duty | 58 |
|  | H. The LLC's Claim Against Davis for Breach of Fiduciary Duty | 58 |
| 8. | Davis is Entitled to an Award of His Attorney's Fees and Cost as the Prevailing Party in this Arbitration | 59 |
|  | A. Introductory Statement | 59 |

iii

EXHIBIT 3, PAGE 101

|  | Page |
|---|---|
| B. Davis is the Prevailing Party in this Arbitration and is Entitled to Reimbursement of His Attorney's Fees and Costs | 60 |
| C. Davis is Entitled to an Award of $717,498.64 as Reasonable Attorney's Fees and Costs in this Arbitration | 61 |
| 9. Final Award | 64 |
| A. Dissolution of the LLC | 60 |
| B. Compensatory Award in Favor of the LLC for Rajaee's Violation of Order Nos. 4 and 5 | 65 |
| C. Final Accounting and Surcharge Liability Assessed Against Rajaee in Favor of the LLC | 65 |
| D. Compensatory Damages Award in Favor of Davis on Davis's Tort Counterclaims | 67 |
| E. Denial of Rajaee's Claims in Their Entirety for Lack of Evidence | 67 |
| F. Award of Attorney's Fees and Costs to Davis as the Prevailing Party in this Arbitration | 67 |
| G. Miscellaneous | 67 |

iv

EXHIBIT 3, PAGE 102

The undersigned Arbitrator (the *"Arbitrator"*), having been designated in accordance with the Operating Agreement for TopDevz LLC, dated May 9, 2017, (*"Agreement"*),[1] having been duly sworn, and having examined and considered the submissions, proofs, allegations, evidence, and arguments of the parties, and having issued a Partial Final Award dated June 21, 2022, hereby finds, concludes and issues this Final Award (*"Award"*) as follows:

1.    **Introductory Statement**

The Arbitrator conducted fourteen (14) days of evidentiary hearing proceedings (the *"Hearing"*), as described in Order Nos. 4, 16 and 21. The Hearing was conducted via video conference using the Zoom.us platform. The first set of evidentiary hearing proceedings occurred in December 2021 with respect to the petition for dissolution (*"Petition"*) filed by respondent Tyler Davis (*"Davis"*) with respect to his first counterclaim for relief in this matter. The second set evidentiary hearing proceedings occurred in April 2022 with respect to the final accounting aspects of the Petition and Davis' first counterclaim for relief. The third set of evidentiary hearing proceedings occurred in March 2023 with respect to the parties' tort claims and counterclaims and their respective claims for compensatory damages.[2]

When this matter was originally scheduled for evidentiary hearing, Davis' counterclaim for accounting was to be heard and decided in conjunction with the parties' respective tort claims and counterclaims for alleged breach of fiduciary duty, slander, extortion, etc. At that time, the agreed-upon hearing time estimate for all claims and counterclaims was eight (8) days, and was scheduled, by agreement of the parties, through their respective counsel, for April 4 to 7, 2022 and April 11 to 14, 2022. See *Order No. 2*.

---

[1]  *Davis Exhibit 2.*

[2]  When originally scheduled, the evidentiary hearing proceedings with respect to the Bifurcated Issues was reserved for four days – March 20 and 21, 2023, and March 27 and 28, 2023 - with the caveat that the evidence admitted during the prior proceedings conducted in December 2021 and April 2022, as well as the factual findings set forth in the Partial Final Award issued on June 21, 2023, was part of the evidentiary record.

I

Claimant Ashkan Rajaee (**"Rajaee"**) changed counsel in January 2022, and his new counsel requested a continuance in order to be able to prepare to present Rajaee's case in chief on his tort claims against Davis. Given the exigencies associated with (a) having ordered the dissolution of TopDevz LLC (**"the LLC"**) pursuant to Order No. 4, and (b) having been faced with Rajaee's violation of the dissolution order, his refusal to provide Davis with a final accounting for the LLC during his tenure as Managing Member, and his defalcation of approximately $1.1 million in LLC funds (as discussed in Order No. 5), the continuance request was granted with respect to the hearing on the parties' respective tort claims and counterclaims – to be scheduled for a later time. However, the evidentiary hearing with regard to the narrow financial issues raised with respect to the final accounting for the LLC (**"the Bifurcated Issues"**) remained in place. By agreement of the parties, through their respective counsel, the hearing time for the Bifurcated Issues was shortened to five (5) days (April 4 to 7, 2022 and April 11, 2022). *See Order No. 6.* Ultimately, due largely to Rajaee's late production of voluminous exhibits during the course of the Hearing and Rajaee's insistence on presenting evidence on a myriad of matters concerning (a) the transactions and events leading Rajaee and Davis to enter into a business relationship through the formation of the LLC, (b) Rajaee's operation of the LLC, (c) the transactions and events leading to the demise of the parties' relationship in February 2001, and (d) Rajaee's operation of the LLC after problems arose in his relationship with Davis, an additional five (5) days of hearing time was necessary to complete the parties' respective presentations of their evidence.[3] See *Order No. 16.*

During the Hearing, testimony was presented by multiple witnesses, thousands of pages of documentary evidence were introduced and admitted into evidence, and oral arguments by counsel were offered and received at the start and end of each set of hearing proceedings. Appearing at the Hearing for claimant and counter-respondent Rajaee were Jordan Matthews, of Weinberg Gonser LLP (December 1, 2 and 13, 2021), and Ethan J. Brown, Geoffrey Neri, Tim G. Lamoureux and Kete Barnes, of Brown Neri Smith & Khan LLP (April 4 to 7, April 11 to 14, and April 21 to 22, 2022), and Rajaee *in propria persona* (March 20, 2023).[4] Appearing at the Hearing for respondent and counter-claimant Davis was Scott R. Carpenter, of Cummins & White LLP. The LCC was

---

[3] In other words, the Hearing with regard to the final accounting of the LLC morphed into evidence taking that was relevant and material to that parties' various tort claims and counterclaims.

[4] Mr. Matthews withdrew from the case in early January 2022, and was replaced by Connor Lynch. Brown Neri Smith & Kahn LLP substituted in for Mr. Lynch on or about January 25, 2022.

2

represented by the same counsel as Rajaee up until September 2022, at which time, J. Douglas Kirk, of Kirk & Toberty, appeared as counsel for the LLC.

All witnesses were duly sworn, and oral testimony and documentary evidence was presented, as described in Order No. 16 – Hearing Report and Order (**"Order No. 16"**) and Order No. 21 – Hearing Report and Order (**"Order No. 21"**).[5] The exhibits offered and admitted into evidence as of the conclusion of the Hearing are as set forth in Order Nos. 16 and 21.

At the conclusion of the evidentiary hearing proceedings described above, the parties and counsel represented to the Arbitrator that they had no further evidence to offer pertinent to the dissolution and final accounting of the LLC or the parties' respective tort claims and counterclaims.[6]

In addition to the evidence and argument presented at the Hearing, the parties submitted opening and closing briefs, which have been reviewed and considered by the Arbitrator.[7] The parties also submitted opening and closing oral arguments.[8] Having

---

[5]    In view of Rajaee's circumstance of being self-represented in the evidentiary hearing proceedings conducted with respect to the parties' respective tort claims and counterclaims, Rajaee was given the oath and then allowed to make statements during the course of the proceedings. As reflected in Order No. 21, Rajaee was allowed the opportunity to cross-examine Davis and his damages expert (Michael S. Hawes), and Davis's counsel opted to not cross-examine Rajaee concerning his statements. *See Order No. 21.*

[6]    On or about December 15, 2022, counsel for the LLC submitted and served a notice of dismissal with prejudice of the derivative claim for breach of fiduciary duty against Davis (Eighth Claim for Relief), which the LLC's counsel confirmed during the March 20, 2023, hearing proceedings. Additionally, on or about February 21, 2023, Davis submitted and served a withdrawal of his Fourth Claim for Relief seeking constructive trust and injunctive relief against Rajaee, as well as his request for punitive damages, which Davis's counsel confirmed during the March 20, 2023, hearing.

[7]    Rajaee did not submit an opening or closing brief in connection with the Hearing on the parties' respective tort claims and counterclaims conducted on March 10, 2023. However, Rajaee's prior counsel did submit extensive briefing on Rajaee's behalf in connection with the earlier evidentiary hearing proceedings.

[8]    In addition to submitting closing briefs with respect to the evidentiary hearing proceedings conducted regarding the Bifurcated Issues, the parties' counsel requested an opportunity to make oral closing arguments. That request was accommodated, and closing oral argument was conducted via video conference on Monday, May 9, 2022, at 2:30 p.m. Pacific Time. Ethan J. Brown, of Brown Neri Smith & Khan LLP, appeared on behalf of Rajaee and the LLC. Scott R. Carpenter, of Cummins & White LLP, appeared on behalf of Davis.

3

reviewed and analyzed the submitted evidence, applicable law, the arguments of the parties' counsel, and the arguments of Rajaee (appearing *in propria persona*) at the March 20, 2023 hearing, it is the Arbitrator's determination that the submitted claims, counterclaims and issues are ready for final determination.

This Award is based upon those facts found by the Arbitrator to be true and necessary to the determination of the claims, counterclaims, affirmative defenses and issues submitted in this matter, as well as the inferences drawn from the evidence presented by the parties. To the extent that this Award may differ from any party's argument or position, that is the result of determinations made by the Arbitrator with respect to witness credibility, burden of proof considerations, the weight given to the evidence, and the inferences drawn from the evidence. This Award refers to certain exhibits, testimony and argument, but does not and could not make reference to every item of evidence, every cited authority, or every argument advanced. Failure to mention other testimony, exhibits or arguments is not intended and should not be construed as a lack of consideration by the Arbitrator of such matters.

This Award represents the culmination of the Arbitrator's determinations on all claims, counterclaims, affirmative defenses and issues submitted in this matter after hearing all evidence that the parties had to offer, and after reviewing and considering the parties' evidence and arguments. This Award concludes the arbitration of the parties' respective claims, counterclaims and affirmative defenses as submitted for determination in this matter.

2.    **Arbitral Jurisdiction**

On May 9, 2017, Rajaee and Davis entered into the Agreement. It is undisputed that the Agreement governs the relationship between Rajaee and Davis as members of the LLC. The validity and enforceability of the Agreement were not disputed in this matter. To the contrary, both parties have relied on various provisions of the Agreement in support of their respective claims, counterclaims and arguments in this arbitration.

Included in the Agreement is a section providing for binding arbitration of disputes that might thereafter arise between the parties. Paragraph 11.2 of the Agreement provides as follows:

> Any action to enforce or interpret this Agreement, or to resolve disputes with respect to this Agreement between the Company and a Member, or between or among the Members, will be settled by arbitration in accordance with the rules of the American Arbitration Association.

4

Arbitration will be the exclusive dispute resolution process in the state of California, but arbitration will be a nonexclusive process elsewhere. Any party may commence arbitration by sending a written demand for arbitration to the other parties. The demand will set forth the nature of the matter to be resolved by arbitration. The Manager will select the place of arbitration. The substantive law of the state of California will be applied by the arbitrator to the resolution of the dispute. The parties will share equally all initial costs of arbitration. The prevailing party will be entitled to reimbursement of attorney fees, costs, and expenses incurred in connection with the arbitration. All decisions of the arbitrator will be final, binding, and conclusive on all parties. Judgment may be entered on any such decision in accordance with applicable law in any court having jurisdiction of it. The arbitrator (if permitted under applicable law) or the court may issue a writ of execution to enforce the arbitrator's decision.

*Davis Exhibit 2, ¶ 11.2.*

This matter concerned disputes between Rajaee and Davis regarding their respective rights and obligations under the Agreement and as members of the LLC. This matter also concerned a dispute between Rajaee and Davis concerning the dissolution and wind-up of the LLC, as well as the LLC's breach of fiduciary duty claim against Davis.

Rajaee voluntarily submitted his claims and disputes with Davis to arbitration by filing a demand for arbitration with the American Arbitration Association (*"the AAA"*) on or about February 23, 2021. Thereafter, Davis voluntarily appeared in the arbitration without objection, and filed an answering statement, with affirmative defenses, and a counterclaim, which included the first counterclaim for dissolution and final accounting of the LLC. The LLC voluntarily appeared in this arbitration, initially represented by the same counsel as Rajaee and later represented by independent counsel. Rajaee filed an answer to the counterclaim with denials and affirmative defenses, and did not contest the jurisdiction of this tribunal over any of the submitted disputes.

Under California law, arbitrators have authority to make orders which provide for equitable relief. *Mercuro v. Superior Court*, 96 Cal. App. 4th 167, 177-178 (2002). California case law has recognized that limited liability company dissolution disputes may be arbitrated. *See Malek Media Group LLC v. AXQG Corp.*, 58 Cal. App. 5th 817 (2020) (case involving irreconcilable differences between members and various breaches of the parties' operating agreement).

5

EXHIBIT 3, PAGE 107

Based upon the foregoing, as well as the appearances and submissions made by Rajaee, Davis and the LLC parties during the course of the Hearing proceedings, and the matters submitted to the Arbitrator during the course of this arbitration, all without objection to the Arbitrator's jurisdiction until *after* she ruled on the Petition through Order No. 4, it is the Arbitrator's determination that the parties' respective claims, counterclaims, affirmative defenses and requests for relief, are subject to and were submitted voluntarily to binding arbitration before the undersigned Arbitrator.[9]

### 3.    Background Facts Pertinent to this Final Award

The background facts pertinent to this Final Award are as follows:

1.    When Rajaee and Davis decided to go into business together, they had limited experience working together through their respective relationships with a company called Surge. Rajaee provided services and consulting to Surge through Mobile Monster. Davis was an investor in Surge. They met through a Surge management meeting in 2016. Their common thread was that they both parted ways with Surge, and ended up suing Surge for different reasons, and being represented by the same attorney in those litigation matters. *2021 RT 410-420 and 423-424.*[10]

2.    When Rajaee and Davis decided to go into business together, they engaged an attorney to formalize their business relationship. *RT 428.* That relationship took the form of a limited liability company (the LLC) as the vehicle through which they would engage in a software development and consulting business, with a governing operating agreement that they both signed as co-members (the Agreement). *Davis Exhibit 2.*

---

[9]    In his opposition to the Petition, Rajaee did not object to the jurisdiction of this tribunal to decide the matter. To the contrary, Rajaee totally engaged on all issues and submitted both evidence, briefing and argument. Even after lodging his objection to the Arbitrator's jurisdiction – *post-issuance* of Order No. 4 – Rajaee participated full heartedly in the evidentiary proceedings on the Bifurcated Issues by (a) consuming more than half of the hearing time, (b) engaging an expert to offer her financial analysis and opinion regarding the even-up accounting between Rajaee and the LLC, and (c) offering dozens of exhibits into evidence. *See Order No. 16.*

[10]    There are two sets of reporter transcripts in this matter, both of which start with page 1. The reporter transcripts for the December 2021 hearing proceedings on the Petition will be referred to as "2021 RT." The reporter transcripts for the April 2022 hearing proceedings on the accounting will be referred to "2022 RT."

3.      The Agreement is an integrated agreement and expressly provides that its terms can only be modified or amended "by a written instrument executed by all of the parties." *Davis Exhibit 2, ¶¶ 13.1 and 13.11.* Both Rajaee and Davis testified that no such written instrument exists. *2021 RT 199-200 and 239.*

4.      With respect to Rajaee's and Davis's initial capital contributions and ownership interests in the LLC, the Agreement states that their respective capital contributions are "TBD", and Exhibit B to the Agreement was left blank. *Davis Exhibit 2.* However, absent an agreement to the contrary – which was not shown to exist in this case – the terms of the Agreement provide for voting rights and the allocation of profit and losses to follow the capital contributions of the LLC's members. *Davis Exhibit 2, ¶¶ 4.1, 5.2, 5.3, 5.4 and 7.1.*

5.      Rajaee testified that it was his requirement that Davis be responsible for capitalizing the LLC venture because he wanted to "de-risk" himself – i.e., he did not want to be at risk in the new venture. *2021 RT 421.* Rajaee and Davis agreed that the capital investment in the LLC would be $750,000. *Id.* Davis invested the initial $750,000 to start the LLC. *2021 RT 233-234.* That capital investment is recognized in the LLC's tax returns. *Davis Exhibits 8, 9, 10 and 11.* This was consistent with Rajaee's testimony that he expected Davis to contribute all of the capital because he did not want to be at risk in the new LLC venture. Additionally, Rajaee testified that he perceived himself as "bringing all the value to the company" through his knowledge about how to generate leads and close deals. *2021 RT 421-422.* Rajaee acknowledged that he was not going to be contributing uncompensated sweat equity to the LLC; that it was agreed at the outset that he would be paid a guaranteed salary of $200,000.00 per year. *2021 RT 422.* The LLC has paid Rajaee for his services, as reflected on the LLC's profit and loss statements, tax returns and bank statements. *Davis Exhibits 3, 4, 5, 6, 7, 8, 9, 10, 11 and 21.*

6.      A "capital call" for $76,000 was made by Rajaee in November 2020, and Rajaee and Davis contributed approximately $38,760 and $37,240, respectively, to the LLC. *Rajaee Exhibit 65, Davis Exhibits 11 and 21.* While these contributions were recognized on the LLC's 2020 tax return as capital contributions, there was no change to the capital structure of the LLC in terms of the K-1s for Davis and Rajaee. *Davis Exhibit 11.* Davis was still reported as having a 100% capital interest in the LLC, and Rajaee was still reported as having a 0% capital interest in the LLC. *Id.*

7

7.    For tax years 2017, 2018, 2019 and 2020, the LLC's tax returns, as filed with the IRS, have reported that Davis owns 100% of the capital in the LLC. *Davis Exhibits 8, 9 10 and 11.* Those returns were prepared by an accounting firm selected by Rajaee, and were prepared under his direction as the "tax matters partner."

8.    Rajaee testified that he never paid "attention to all of the details" in the tax returns; that he just looked at the line items for "how much revenue we did, how much expenses we had, how much taxes we have to pay," and that "[e]verything else is handled by [the accountant] in consulting with them." *2021 RT 93.* As pertains to how profits and losses were allocated between Rajaee and Davis, Rajaee testified that he has no understanding of why his profit share allocation went from 0% to 6.5% in 2017 and from 6.5% to 51% in 2018; that he does not recall having any discussions with the accountant or Davis about that; that he "put full trust in [the accountant] to account for everything," and simply "followed [the accountant's] advice on where the numbers landed." *2021 RT 81-90.* Davis testified that other than the email exchange in February 2020, discussed in Section 4(A), below, he never discussed the capital structure of the LLC with Rajaee or the LLC's accountant. *2021 RT 236-237.* No one from the LLC's accounting firm – Lavine, Lofgren, Morris & Engelberg LLP (*"the CPA Firm"*) – was called to testify in the proceedings on the Petition.

9.    Rajaee testified that he covered a number of the LLC's operating expenses through charges put on his personal American Express card and through monies paid to or for the benefit of the LLC. To the extent that such expenditures or contributions were in fact made and were not reimbursed, they were not treated as capital contributions according to the LLC's tax returns. *Davis Exhibits 8, 9, 10 and 11.* In this regard, the profit and loss statements and LLC bank statements show that large sums of money have routinely been transferred out of the LLC to Rajaee or Mobile Monster. *Davis Exhibits 3, 4, 5, 6, 7 and 21.* Rajaee contends that he has "loaned" money to the LLC for which he has not been repaid. Rajaee's testimony about the amount of the LLC's alleged loan indebtedness varied between $700,000 and $1,700,000. *RT 111-116.* Whether such loan indebtedness in fact exists is a matter to be decided at another time – the accounting. The only relevance here is that it shows that, consistent with Rajaee's stated initial position that he did not want to be at risk in the LLC venture, he has viewed any infusions of cash to help fund the LLC's operations as loans – not capital – and maintained that position in the proceedings on the Petition.

10.    The Agreement specifically recognizes Rajaee and Davis as the "Initial Members" of the LLC. *Davis Exhibit 2, ¶ 1.24.*

8

11.     The Agreement defines a "Membership Interest" as "a Member's entire interest and rights in the Company, collectively, including the Member's Economic Interest, any right to Vote or participate in management, and any right to information concerning the business and affairs of the Company." *Davis Exhibit 2, ¶ 1.34.*

12.     Under the terms of the Agreement, Rajaee was designated as the LLC's Manager. *Davis Exhibit 2. ¶ 2.9.* Rajaee has acted in the capacity of Manager and "tax matters partner" of the LLC since its inception, and is currently acting in those capacities with regard to the transactions he has entered into and decisions he has made for the LLC since the parties' disputes arose in February 2021.[11]

13.     The Agreement requires the Manager to maintain accurate books and records for the LLC. *Davis Exhibit 2, ¶ 6.3.*

14.     Rajaee testified that there have been lapses in the LLC's accounting as relates to the way expenses charged on Rajaee's personal American Express card or advanced by Mobile Monster have been booked in the LLC's records such that the LLC's accountants have told him that it is not possible to tell, by looking at the LLC's books and records, what the particular expenses of the LLC are; that the transactions are "all overlapping;" and that it is not possible to produce an accurate balance sheet based upon the data maintained in the LLC's accounting records. *2021 RT 121.* Moreover, a cursory review of the profit and loss statements in comparison to the LLC's bank statements suggests that the two do not tic-and-tie. For example, the "guaranteed" payments to Rajaee through October 2021 total approximately $671,000 according to the profit and loss statements, but the debits for withdrawals and transfers made to Rajaee, according to the LLC's bank statements, total approximately $2,800,000. *Davis Exhibits 3, 4, 5, 6, 7 and 21.* For another example, the LLC's bank statements for February 2021 shows a $447,723.80 transfer to Rajaee coded as "Loan Payoff Balance to AR," but Rajaee testified that he is unable to produce a balance sheet for the LLC; that

---

[11]    *E.g.,* having the LLC lease a jet purchased by Rajaee through his wholly-owned company (RemotePreneurs); having the LLC enter into a charge or debit card relationship with a company in which Rajaee has a 95% interest (SpendHub); and giving himself a $175,000 raise in guaranteed salary *after* Davis filed a lawsuit seeking to dissolve the LLC. *2021 RT 156, 160-164, and 170-171.* Whether such transactions and decision making constitute "self-dealing" and/or "mismanagement" of the LLC are matters to be decided at another time - the evidentiary hearing on the merits of the parties' respective damages claims and counterclaims. The only relevance here is that it explains the reason for the deep divide and discord that exists between Rajaee and Davis. Davis believes that the transactions were improper because they were done without his advance approval. Rajaee believes that the challenged actions / decisions qualify as "ordinary course" transactions. *2021 RT 191.*

9

he is only just now working with the LLC's accountants to try to create an accounting with regard to what monies he advanced to the LLC that have not been reimbursed; and that he believes he is still owed over $1,000,000. *2021 RT 115-121.*

15.    The Agreement requires that the books of the LLC "be closed and examined" at the end of each fiscal year, and that the LLC's certified public accountant issue an annual statement "reflecting the financial condition of the Company and its Profits or Losses." Such annual reports are to "be given to all Members," and are to include "[a] balance sheet and income statement, and a statement of changes in the financial position of the Company" and "[a] statement showing the Capital Account of each Member as of the close of the fiscal year and the distributions, if any, made to each Member during the fiscal year." *Davis Exhibit 2, ¶ 6.4.*

16.    While the LLC has engaged an outside accounting firm since its inception, the LLC does not maintain a balance sheet and no annual reports have ever been prepared or issued to the LLC's members. *2021 RT 117-118 and 191-192.*

17.    Article V of the Agreement sets forth the terms related to management of the LLC, and provides for the business to be managed by Rajaee as its designated / named Manager. *Davis Exhibit 2, ¶¶ 5.1 and 5.4.*

18.    Notwithstanding the Manager's broad authority to run the day-to-day affairs of the LLC, the Agreement prohibits the Manager from taking certain actions without the consent of a "Majority of Members." *Davis Exhibit 2, ¶ 5.4.* "Majority of Members" is defined as "a Member or Members whose Percentage Interests represent more than 50 percent of the Percentage Interests of all Members." *Davis Exhibit 2, ¶ 1.28.* "Percentage Interest" is defined as "a fraction, expressed as a percentage, the numerator of which is the total of a Member's Capital Account and denominator of which is the total of all Capital Accounts of all Members." *Davis Exhibit 2, ¶ 1.39.*

19.    The LLC is a staffing services business that generates revenue by providing software developers to work on software development projects for LLC clients. According to Rajaee, the main way in which the LLC finds its clients is through leads generated by Mobile Monster, Inc., a Canadian company owned 100% by Rajaee (**"Mobile Monster"**). *2021 RT 111, 134.* Mobile Monster also employs staff and several groups of contractors that work to service the LLC's customers. "All of that payroll, all of those contractor payments, all of the travel expenses, all of the client visits that we do or marketing gets captured inside of Mobile Monster, and then Mobile Monster gets reimbursed from [the LLC] for the expenses it is incurring." *Id.*

10

20.     Up until February 2021 – when the disputes arose between Rajaee and Davis – Rajaee generally consulted with Davis on all matters and the LLC operated on a consensus basis between the two members. *2021 RT 187-189*.

21.     After the "blow up" telephone conversation between Davis and Rajaee on February 8 or 9, 2021, Rajaee had Davis removed from the LLC's bank account and has not communicated with Davis, except through counsel. *2021 RT 208; Davis Exhibit 19*. In this regard, Rajaee testified that "any questions that I need to answer that relate to my communications with [Davis] I find kind of a waste of time, because I don't talk to him. I've only talked to him, if I had to, through counsel." *2021 RT 165*. Rajaee testified that he has not spoken to Davis since February 2021. *2021 RT 72*.

22.     Outside of this arbitration, at the time of the hearing on the Petition, there were four separate court proceedings pending that relate to the disputes in this arbitration: one initiated by Davis against Rajaee,[12] one initiated by Mobile Monster against Davis,[13] one initiated by Rajaee against a former employee of the LLC (Siarra Wood),[14] and one initiated by two former employees of the LLC against Rajaee.[15] *Order No. 2, ¶ 2.4; Davis Request for Judicial Notice*.

23.     After Order No. 4 was issued, several more lawsuits were threatened or initiated by Rajaee. For example, Jennifer Glaser testified that Rajaee has threatened to sue her and the CPA Firm. *2022 RT 660*. For another example, during the course of the proceedings in this arbitration, the Arbitrator has been made aware of (a) an action filed on behalf of Rajaee in the San Diego Superior Court, which is commonly referred to as *Rajaee v. Davis*, Case No. 37-2022-00001968, in which Rajaee has petitioned the court for an order vacating Order No. 4, and (b) a cross-action filed in the Sacramento Action, in which Rajaee has petitioned the court for an order enjoining this arbitration. For a final set of examples, Rajaee testified that he hired a law firm (Fox Rothschild) to send

---

[12] *Tyler Davis v. Ashkan Mirfakhr-Rajaee, et al.*, Superior Court of the State of California, County of Sacramento, Case No. 34-2021-00301817 (**"the Sacramento Action"**).

[13] *Mobile Monster v. Tyler Davis*, Superior Court of the State of California, County of Sacramento, Case No. 34-2021-00301817.

[14] *Ashkan Rajaee v. Siarra Wood*, Superior Court of the State of California, County of San Diego, Case No. 37-2021-00008947.

[15] *Sarah Blanchette and Siarra Wood v. Ashkan Rajaee*, Superior Court of Justice, Ontario (CANADA), Case No. CV-21-00086316-000.

11

letters to the LLC employees working with Davis on the windup of the LLC, *2022 RT 535-536*, and Davis testified that Joshua Lintz, the former CEO of the LLC who agreed to stay on and help with the windup, quit "after being threatened by [Rajaee] and his legal counsel." *2022 RT 55.*

    **4.**    **Proceedings and Decision on the Petition for Dissolution [Evidentiary Hearing Proceedings Conducted December 1, 2 and 13, 2021, and Emergency Hearing Conducted January 13, 2022 – Order Nos. 4 and 5 Incorporated Herein]**

    **A.**    **Introductory Statement**

Pursuant to the applicable Commercial Arbitration Rules of the AAA, amended and effective October 1, 2013, and by request and submission of the parties,[16] a hearing was held on December 1, 2 and 13, 2021 for the purpose of hearing and deciding a threshold issue: namely, whether grounds or cause existed for ordering dissolution of the LLC, as requested by Davis in his Petition. Appearing at the hearing on the Petition were Scott R. Carpenter, of Cummins & White LLP, appearing on behalf of Davis, and Jordan Mathews, of Weinberg Gonser LLP, appearing on behalf of Rajaee. Also present during the course of the hearing were Davis and Rajaee. The hearing proceedings were recorded and transcribed by a certified court reporter. By agreement of the parties, through their respective counsel, the transcript of the aforementioned proceedings is part of the record in this arbitration.

The parties agreed, through their respective counsel, to an evidentiary hearing where Davis and Rajaee would be allowed to testify in favor and against dissolution, respectively, and be subjected to cross-examination by the other side.

In advance of the Hearing, both Davis and Rajaee provided briefs on the issues to be addressed at the Hearing. Additionally, the parties submitted declarations with exhibits. At the Hearing, the parties submitted hearing exhibits in the form of documentary and electronic (video) evidence. The parties also submitted testimonial evidence from Rajaee, Davis and Michael S. Hawes (*"Hawes"*), a certified public accountant who provided opinion testimony on behalf of Davis. The parties' counsel made opening statements and closing arguments at the Hearing and then concluded the matter with closing briefs. The record of the proceedings concerning Davis's Petition was concluded on January 4, 2022, with the submission of the reporter's transcript for the third day of hearing (December 13, 2022).

---

[16]  See *Order No. 2, § I, ¶ 5.*

12

The issues raised by the Petition were essentially two-fold: 1. Does Davis have the right to dissolve the LLC without Rajaee's consent? 2. If not, do grounds exist to order an involuntary dissolution over Rajaee's objection? While the parties' respective underlying claims and counterclaims contain numerous recriminations, it was not necessary to reach the merits of those claims in order to decide the narrow issues raised by the Petition. Ultimately, on the underlying damages claims and counterclaims, one party will be declared "right" and the other declared "wrong," but in the meantime and thereafter must Rajaee and Davis continue to do business together in the LLC? For the reasons discussed below, the answer to that question is "no."

B. **Ruling on the Petition and Factual Determinations Made With Respect to the Petition**

(1) **Davis has the right to dissolve the LLC because he holds a majority of the Percentage Interests in the LLC.**

The operating agreement of a limited liability company governs, among other things, (a) "[r]elations among the members as members and between the members and the limited liability company"; and (b) "[t]he rights and duties under [the Act] of a person in the capacity as manager." Cal. Corp. Code § 17701.10(a)(1), (a)(2). Dissolution is a remedy that is authorized by Corporations Code section 17707.01.

Under paragraph 9.1 of the Agreement, the LLC will be dissolved on "[t]he written agreement of a Majority of Members to dissolve the Company." Davis claims to have made the election / decision to dissolve the LLC through his filing of a complaint for dissolution in the Sacramento Superior Court ("the State Court Action") and through his counterclaim for dissolution in this arbitration, as well as his filing of the Petition. The question is whether or not Davis holds more than 50% of the Percentage Interests in the LLC, and has the right to dissolve the LLC without Rajaee's consent and over his objection. The evidence in this matter supports a determination of "yes." Davis has the right to dissolve the LLC without Rajaee's consent and over his objection because (a) Davis holds a majority of the Percentage Interests in the LLC, as defined by the Agreement, and (b) the Agreement provides that the LLC may be dissolved by agreement of the "Majority of Members."

While the LLC's record keeping appears to have been less than perfect, two things are clear: (1) only Davis contributed capital to the start-up of the LLC, and (2) the LLC's outside accountants have reported on capital structure of the LLC on the LLC's annual tax returns for 2017, 2018, 2019 and 2020, which returns were signed under

13

penalty of perjury by Rajaee in his capacity as the LLC's "tax matters partner." All of the returns, without exception, state that Davis has a 100% capital interest in the LLC.[17] Under the definition of "Majority of Members" as set forth in paragraph 1.28 of the Agreement, Davis alone qualifies as the majority member of the LLC, even if capital investment credit were given to Rajaee for the $38,760 he contributed to the LLC in November 2020.

With the exception of the $76,000 Rajaee and Davis put into the LLC in November 2020 pursuant to a "capital call" by Rajaee to cover the LLC's operating expenses, Rajaee has never described any of the monies he advanced or loaned to the LLC as capital investments.[18] In this regard, Rajaee testified that when the LLC was formed in 2017, it was his requirement that Davis be responsible for capitalizing the venture because he did not want to be at risk in the new venture. *2021 RT 421.* The profit and loss statements created by the LLC's outside accounting firm show that more than $5,000,000 has been paid in "Consultant Reimbursement Expenses," which supports the inference that any advances Rajaee (or Mobile Monster) may have made to or for the benefit of the LLC were intended and treated as advances to be repaid by the LLC and not as capital Rajaee invested in the LLC. Moreover, Rajaee's claim in these proceedings that he believes he advanced or loaned over $1,000,000 to the LLC that has not been repaid further confirms that Rajaee has never intended that any "contributions" he may have made to cover the LLC's operating expenses were to be treated as a capital investment.

Rajaee testified that he had an understanding with Davis from the outset that he would own 51% of the LLC and Davis would own 49% of the LLC, irrespective of their respective capital contributions, because that is what he needed to qualify for a visa to live and work in the United States. *RT 103.* Assuming for sake of argument that those discussions did in fact occur, the alleged agreement or understanding is inconsistent with the terms of the Agreement Rajaee and Davis signed to memorialize the terms of

---

[17]    Rajaee pointed to the fact that he was allocated 51% of the profits in three of the LLC's tax returns as somehow being proof of an agreement between himself and Davis to the effect that he would have an ownership interest in the LLC that did not match his capital contributions to the LLC. While such an agreement is certainly possible. There was no evidence of such an agreement being reached between Davis and Rajaee to modify Article IV of the Agreement in this regard.

[18]    Schedule M-2 of the 2020 tax return recognized the $76,000 contribution as a capital contribution, and the K-1's for Rajaee and Davis recognized their contributions of $38,760 and $37,240, respectively. However, the capital interest percentages did not change as reflected on the K-1's. *Davis Exhibit 11.*

14

their business relationship in creating the LLC, and both agree that the Agreement has never been modified by a writing signed by both of them. *2021 RT 199-200 and 239.*

Rajaee pointed to a February 24, 2020 email exchange that started with Rajaee's assistant – Vania Hernandez – writing to the LLC's accountant – Jennifer Glaser (*"Glaser"*) – stating that Rajaee was "in need of a document that states TopDevz length in business as well as his ownership percentage" and that "[t]he document needs to be in LLME letterhead with your signature on it." *Rajaee Exhibit 5.* When Glaser asked what the letter was going to be used for, Rajaee responded that he was "buying a house." Glaser wrote back and asked if there was an updated operating agreement showing him as a 51% owner because she did not have documentation to support that statement. Rajaee then looped Davis in on the email chain and asked him to confirm ownership in the LLC as 51% to him and 49% to Davis. Davis responded "This is correct." *Id.*

As between Rajaee and Davis, there was insufficient evidence from which an inference could be drawn that Davis and Rajaee intended the email to constitute a written instrument signed by both parties, modifying the Agreement so as to specify the parties' respective ownership percentages that were previously left blank on Exhibit B. This is due in part to the fact that approximately 18 months after the February 24, 2020, email exchange - on September 13, 2021 - Glaser and her firm prepared the LLC's tax return for 2020 with Rajaee signing as the "tax matters partner" for the LLC. Again, the LLC's tax return reported Davis as having a 100% of the capital interest in the LLC and Rajaee as having a 0% capital interest in the LLC. *Davis Exhibit 11.* Like all of the other tax returns for the LLC, Rajaee signed the LLC's 2020 tax return as its "tax matters partner." *Id.* The reasonable inference to be drawn from this evidence is that Davis's "confirmation" email (a) was a friendly accommodation to Rajaee made in the context of Rajaee's effort to purchase a home in the United States,[19] (b) does not rise to the level of constituting an agreement between Rajaee and Davis regarding the capital structure of the LLC, and (c) appears to have *not* been something that the LLC's accountant or Rajaee (as the LLC's tax matters partner) relied upon in reporting the LLC's capital structure to the IRS in 2021 for calendar year 2020 because the stated capital accounts of Rajaee and Davis remained the same as in prior years. *Davis Exhibit 11.* The preparation of the 2020 tax return, as well as all prior tax returns, was done under Rajaee's direction as the LLC's "tax matters partner."

---

[19] Rajaee testified that he relied on the 51/49 discussions contained in the February 2020 email exchange in entering into the LLC with Davis. That testimony was not credible because Rajaee entered into the Agreement three years before the February 2020 email exchange, and there was no evidence that Rajaee did anything to his detriment after February 2020. To the contrary, the evidence showed that since February 2020, millions of dollars have flowed *out* of the LLC to Rajaee and his companies (Mobile Monster, SpendHub and Remote Preneurs), including over $490,000 paid out to Rajaee in July 2021. *Davis Exhibit 21.*

15

Rajaee also pointed to the fact that he was allocated 51% of the profits on the LLC's tax returns as proof of his 51% ownership stake in the LLC. The problem with Rajaee's position and testimony is that the evidence concerning the allocation of profits and losses to Rajaee was inconsistent. For example:

(1)     Rajaee's share of profit and loss at the beginning of 2017 was shown as "0.0000000%," but his profit and loss allocation at the end of 2017 was shown as "6.5383824%." *Davis Exhibit 8.*

(2)     Rajaee's share of profit at the beginning of 2018 was shown as "6.5383824%," but his profit allocation at the end of 2018 was shown as "51.0000000%." Rajaee's share of loss at the beginning of 2018 was shown as "6.5383824%," but his loss allocation at the end of 2018 was shown as "0.0000000%." *Davis Exhibit 9.*

(3)     Rajaee's share of profit at the beginning and end of 2019 was shown as "51.0000000%." Rajaee's share of loss at the beginning and end of 2019 was shown as "0.0000000%." *Davis Exhibit 10.*

(4)     Rajaee's share of profit at the beginning and end of 2020 was shown as "51.0000000%." Rajaee's share of loss at the beginning of 2020 was shown as "0.0000000%," but at the end of 2020 it was shown as "51.0000000%." *Davis Exhibit 11.*

The fact that Rajaee was allocated profits and losses of the LLC does not change the fact that (a) the Agreement required profits and losses to be allocated based upon members' capital account, *Davis Exhibit 2, ¶ 4.1,* and (b) Rajaee made only a small capital contribution in 2020, as discussed above. *Davis Exhibit 11.* In both the December 2021 and April 2022 evidentiary hearing proceedings, Rajaee *argued* that he had a 51% stake in the LLC and was entitled to 51% of the LLC's ownership and profits. However, that issue was determined against him during the December 2021 proceedings, as set forth in paragraph 4 of Section 3(B), above. As was the case in December 2021, during the April 2022 proceedings, Rajaee did not produce evidence of an agreement signed off on by himself and Davis, agreeing to vary the terms of the Agreement. The fact that Rajaee and Davis may have agreed to a 51 / 49 profit split for tax reporting purposes when they were dividing losses or minimal profits ($240) is not enough evidence from which it can be inferred that Rajaee and Davis were willing to split profits on a 51 / 49 basis if there had been millions of dollars in the bank at the end of the year, especially since it was and still is the factual determination in this matter that only Davis put

16

EXHIBIT 3, PAGE 118

money into the LLC that actually stayed in the LLC, as discussed in Section 3(B), above, and Section 4(E), below.

Rajaee himself testified that he never paid "attention to all of the details" in the LLC's tax returns and did not recall having any discussions with the accountant or Davis about the 2017 or 2018 changes in Rajaee's profit share allocation from 0% to 6.5% to 51%. *RT 89-93 and 193.* The suggested inference was that Rajaee's profit and loss allocations were changed without his knowledge or input, and that these changes were made by the accountants without the approval of the LLC's "tax matters partner." The LLC's outside accountant who prepared the LLC's tax returns[20] did not testify during the December 2021 proceedings. Glaser did testify during the April 2022 proceedings, and did not corroborate Rajaee's testimony that the LLC's tax returns were prepared without his knowledge or input. To the contrary, concerning the amendment to the 2017 tax return, Glaser testified that she discussed it with Rajaee, *2022 RT 610,* and the evidence showed that Rajaee signed the e-file authorizations for the LLC's tax returns, all of which included the attestation that he had reviewed them and believed them to be accurate. *Exhibits 811, 812 and 813.*

In final analysis, the only evidence of a capital contribution by Rajaee to the LLC is the $38,760 he contributed in November 2020.[21] Under the terms of the Agreement, Rajaee's Percentage Interest in the LLC is only 4.692% ($38,760 ÷ ($750,000 + $76,000) = .04692). As such, Davis holds the majority of Percentage Interests in the LLC and controls the vote of the Majority of Members. Accordingly, it is hereby determined that Davis owns 95.308% of the capital interest in the LLC and is the Majority Member with

---

[20]   During the April 2022 proceedings, Glaser testified that she was "in close contact with [Attorney Jordan Matthews] in the latter part of 2021, and had been instructed (a) not to give information directly to Davis, and (b) to only communicate with Davis through Mr. Matthews. *2022 RT 650- 651.* Glaser also testified that in late 2021, she gave documents to Rajaee's counsel that she did not provide to Davis, and wrote a letter to Mr. Matthews on December 9, 2021, on topics he dictated concerning the LLC that was not shared with Davis until the April 2022 proceedings. *2022 RT 653-654; Exhibit 295.* It thus appears that Rajaee made a calculated decision to <u>not</u> call Glaser as a witness during the December 2021 proceedings in an effort to control the narrative concerning the LLC's financial affairs. When Glaser eventually testified during the April 2022 proceedings, she did not corroborate Rajaee's testimony that the LLC's tax returns were prepared without his knowledge or input. To the contrary, concerning the amendment to the 2017 tax return, Glaser testified that she discussed it with Rajaee, *2022 RT 610,* and the evidence showed that Rajaee signed the e-file authorizations for the LLC's tax returns, all of which included the attestation that he had reviewed them and believed them to be accurate. *Exhibits 811, 812 and 813.*

[21]   During the April 2022 proceedings, Glaser testified that she was not aware of any capital contributions to the LLC other than Davis' initial contribution of $750,000 and the small capital call in November 2020. *2022 RT 644.*

17

regard to decisions that are subject to the vote of the Members or a "Majority of Members." Accordingly, Davis thus has the right, under paragraph 9.1 of the Agreement, to dissolve the LLC without Rajaee's consent and over his objection. That was the basis for Order No. 4, as discussed in Section 4(B)(3) and as confirmed in Section 9, below. Davis also has the right to exercise all other voting rights given to the "Majority of Members," including removal of the Manager.

> **(2)    Even if Davis is not the Majority Member, protective dissolution would be in order because management of the LLC is deadlocked and subject to internal dissension.**

Deadlock and internal dissension are grounds for dissolution under Corporations Code section 17707.03(b)(4). To obtain a decree of dissolution, the alleged dissension must be sufficient to prevent the further successful operation of the company to the advantage of its members. *Fuimaono v. Samoan Congregational Christian Church of Oceanside*, 66 Cal. App. 3d 80, 84 (1977); *see also BeUo v. Panorama Optics, Inc.*, 33. Cal. App. 4th 1096, 1105 (1995) (dissension evidenced by "completely different views as to the operation of the company"); *Buss v. J.O. Martin Co.*, 241 Cal. App. 2d 123, 136 (1966) (dissension shown where parties "hold contrary and opposing views on nearly all phases of the conduct of the business").

The irreparable deterioration of the relationship of Rajaee and Davis is evidenced by, among other things, (a) the aggressive claims and counterclaims that have been asserted in this arbitration and in the various companion court proceedings described in footnotes 12, 13, 14 and 15, (b) the fact that Rajaee and Davis have not spoken to each other since February 2021, and (c) the fact that Rajaee has instructed Davis to only speak to him through his attorney.

The discord and dissension within the relationship of Rajaee and Davis as co-members of the LLC is evidenced by their completely different views as to what qualifies as an "ordinary course" business expense within Rajaee's sole decision making authority and discretion as the LLC's Manager and what types of decisions are subject to approval by Davis. See, *Footnote 11*. As evidenced by the expenditures made by Rajaee since February 2021, the delta on these differing views is several hundred thousand dollars flowing out of the LLC to companies owned by Rajaee. *Id.*

18

**(3)    Order No. 4**

Based upon the determinations made with regard to the Petition, as set forth in Sections 3 and 4(B)(1) and (2), above, the Petition was granted and Order No. 4 was issued on January 6, 2022, for good cause shown. Order No. 4 provides, in pertinent part, as follows, and is incorporated into this Final Award by this reference:

"1.    Davis owns 95.308% of the capital interest in the LLC, and Rajaee owns 4.692% of the capital interest in the LLXC. Davis thus owns the majority of the Percentage Interests in the LLC for voting purposes and has the right to elect to dissolve the LLC without the consent and over the objection of Rajaee.

2.    Protective dissolution of the LLC under Corporations Code section 17707.03(b)(4) is in order because management of the LLC is deadlocked and subject to internal dissension.

3.    Based upon Davis' request that the LLC be dissolved and the finding of deadlock and internal dissension within the management of the LLC, the LLC shall be dissolved pursuant to paragraph 9.1 of the Agreement and Corporations Code sections 17707.01(a) and 17707.03(b)(4). In accordance with paragraph 9.2 of the Agreement, the LLC will engage in no further business other than that necessary to wind up the business and affairs of the LLC. Davis, and only Davis or his designee, shall be responsible for managing, overseeing, and completing the dissolution of the LLC, and only Davis, or his designee, shall have the authority to take those actions necessary to accomplish the dissolution of the LLC.

4.    In accordance with paragraph 9.2 of the Agreement, Davis, is the Member of the LLC responsible for winding up the affairs of the LLC, and will give notice of the commencement of winding up by mail to all known creditors and claimants of the LLC. After paying or adequately providing for the payment of all known debts of the LLC (except debts owing to members), the remaining assets of the LLC will be distributed or applied in the following order:

19

(a)     To pay the expenses of liquidation;

(b)     To the establishment of reasonable reserves for contingent liabilities or obligations of the LLC. On the determination that reserves are no longer necessary, they will be distributed as provided in this order and paragraph 9.2 of the Agreement;

(c)     To repay outstanding loans to members, if any, which is among the issues to be determined in the accounting in this arbitration, in accordance with paragraph 9.2(c) of the Agreement; and

(d)     To the members with positive capital account balances, as provided in Article IV, paragraph 4.16 of the Agreement.

5.      Davis and only Davis, or his designee, shall have authority to access, disburse funds from, open and close bank and other financial accounts belonging to or standing in the name of the LLC. If any such action requires the signature of Rajaee on a consent, certificate, filing or other document, Rajaee shall provide such signature within three (3) business days of being advised by Davis, or his designee, that such signature is required.

6.      Based upon Davis' request that Rajaee be removed as Manager of the LLC, Rajaee shall be removed as Manager of the LLC, and only Davis or his designee shall replace Rajaee as Manager of the LLC. If this removal and/or replacement requires the signature of Rajaee on a consent, certificate, filing or other document, Rajaee shall provide such signature within three (3) business days of being advised by Davis, or his designee, that such signature is required.

7.      Rajaee is hereby ordered to provide a full and complete accounting of the LLC's finances from the date of its inception in 2017 through the date of this order. That accounting needs to track every dollar in and every dollar out with backup, especially as pertains to (a) monies withdrawn, transferred or otherwise paid as expenses of the LLC, and (b) monies advanced or loaned to the LLC by Rajaee.

EXHIBIT 3, PAGE 122

8.   Rajaee is ordered to turn over to Davis or his designee the original books and records of the LLC, including any electronically stored information and all and paper records such as invoices, contracts, receipts, checks, bank statements, etc.

9.   Rajaee is ordered to fully cooperate in providing access to Davis or his designee with respect to all of the books and records of the LLC maintained by or in the custody of Lavine, Lofgren, Morris & Engelberg LLP.

10.   From the date of this order forward, unless and until modified or instructed otherwise by a court of competent jurisdiction, Rajaee shall not make or cause to be made any disbursements, transfers or withdrawals from any accounts standing in the name of the LLC without the signature approval of Davis, or his designee. Specifically, Rajaee shall not incur any debt in the name of the LLC without the signature approval of Davis or his designee.

11.   From the date of this order forward, unless and until modified or instructed otherwise by a court of competent jurisdiction, Rajaee shall not make or enter into any contracts or commitments on behalf of or in the name of the LLC without the signature approval of Davis, or his designee.

12.   Rajaee is ordered to cooperate in collecting any outstanding receivables owed to the LLC, and is ordered to turnover any and all collections to Davis, or his designee, for deposit into an account maintained by and in the name of the LLC."

21

EXHIBIT 3, PAGE 123

(4)    **Post-Script to Order No. 4 – Order No. 5 and Factual Determinations Made With Respect Thereto**

On or about January 10, 2021, the Arbitrator was presented with an emergency motion to enforce Order No. 4. The impetus for the emergency motion was the fact that within hours of issuing Order No. 4, Rajaee had caused $900,000 to be wired to himself from the LLC's bank account[22] and $131,586.76 to be wired to an international account,[23] thereby leaving the LLC with insufficient funds to make payroll for its W2 and 1099 employees or to pay the expenses associated with the winding up of the LLC's business and affairs. The total amount Rajaee took from the LLC's Wells Fargo Bank Account (Account No. 1756821128) in violation of the Arbitrator's Order No. 4 was $1,031,586.76.

"Opposition" was filed with regard to the emergency motion, but those papers did not address the issue of Rajaee's direct violation of Order No. 4. Rather, the opposition talked about a demand Weinberg Gonser had received from Davis for the return of funds transferred to it by the LCC as a retainer, and about the perceived need on the part of Weinberg Gonser to cease representing Rajaee if it could no longer concurrently represent the LLC. In any event, the violation of Order No. 4 through the emptying of the LLC's bank account was not disputed.

On or about January 13, 2022, a duly noticed hearing on Davis's emergency motion was convened via video conference. Scott R. Carpenter, of Cummins & White LLP, appeared on behalf of Davis, and Jordan Matthews, of Weinberg Gonser LLP, appeared on behalf of Rajaee. The hearing proceedings were recorded and transcribed by a certified court reporter. The transcript of the proceedings on the emergency motion is part of the record in this arbitration.

As noted above, while opposition was submitted in response to the emergency motion on behalf of Rajaee, that opposition did not address the substantive issues raised by the Motion: most notably, what happened to the monies Rajaee caused to be transferred out of the LLC's bank account at Wells Fargo after Order No. 4 was issued? Significantly, Rajaee did not provide a declaration denying that he caused the

---

[22]  During the April 2022 evidentiary proceedings, Rajaee admitted that he took these funds; that he transferred the funds into an account in Canada; and that the account into which the $900,000 was deposited is _not_ one held in the name of the LLC. *2022 RT 480-481.*

[23]  During the April 2022 evidentiary proceedings, Rajaee admitted that he wired these funds to Mobile Monster. *2022 RT 482-483.*

22

EXHIBIT 3, PAGE 124

aforementioned monies to be transferred out of the LLC's bank account, and he did not appear at the Hearing to address, explain or otherwise respond to that circumstance. Additionally, according to Davis' counsel, Davis' efforts to obtain cooperation from Rajaee and the LLC's outside accounting firm with regard to turnover of the LLC's books and records and administrative access to its electronic records were frustrated at every turn by the lack of response from anyone. Neither Rajaee nor his counsel denied or disputed the offer of proof made by Davis' counsel concerning the lack of turnover of the LLC's books and records to Davis or the lack of cooperation forthcoming from Rajaee. Significantly, no challenge or argument was raised by Rajaee disputing the Arbitrator's jurisdiction over the claims and issues submitted via the Petition.

Having considered the papers the parties submitted with regard to the emergency, as well as the arguments made by the parties' respective counsel at the January 13, 2022, hearing, emergency relief was granted and Order No. 5 – Order on Emergency Motion to Enforce Order No. 4 (*"Order No. 5"*) was issued for good cause shown. Order No. 5 was marked as *Exhibit 804* in the April 2022 hearing proceedings. Order No. 5 provides, in pertinent part, as follows, and is incorporated into this Final Award by this reference:

"1.    Rajaee violated Order No. 4 when he transferred funds out of the LLC's account at Wells Fargo Bank, Account Number 1756821128, on January 6 and January 7, 2022, because Davis, and only Davis or his designee, had the authority to access, disburse funds from, open and close bank and other financial accounts belonging to or standing in the name of the LLC from approximately 2:00 p.m. on January 6, 2022, forward. Rajaee is hereby ordered to immediately return and/or replenish to the LLC, care of Davis, the $900,000.00 he transferred to himself at approximately 11:00 p.m. on January 6, 2022, as well as the $131,586.76, transferred out as an "international money transfer debit" on January 7, 2022.

2.    Rajaee's power and authority to act as the Manager and "tax matters partner" of the LLC ended as of approximately 2:00 p.m. on January 6, 2022. Only Davis or his designee has authority to act as Manager of the LLC, and may do so without Rajaee's consent and over his objection. Rajaee is hereby enjoined and restrained from accessing any LLC bank or financial accounts, transferring any funds from any LLC bank or financial accounts, or transacting business of any sort for or on behalf of the LLC without Davis's signature approval.

23

EXHIBIT 3, PAGE 125

3.    Rajaee is hereby ordered to immediately return to the LLC, care of Davis, any and all documents, data, and/or tangible property removed or taken from the LLC since January 6, 2022, by Rajaee or any persons or entities under Rajaee's control who have acted on behalf of Rajaee. Rajaee, and his agents and representatives, are enjoined and restrained from accessing and/or removing any business records of the LLC without the signature consent of Davis or his designee, including but not limited to any electronically stored information and all and paper records such as invoices, contracts, receipts, checks, bank statements, and customer lists, customer data, vendor lists, vendor data, contractor lists, contractor data, accounts receivable documents and accounts payable records.

4.    Nothing in this Order No. 5 is intended or shall be construed as superseding Order No. 4. Order No. 4 remains in full force and effect."

*See Order No. 5 [Exhibit 804].*

(5)    **Post-Script to Order No. 4 – Order No. 6**

As ordered by Order No. 4, and as duly noticed, a case management conference was convened via video conference January 21, 2022. Participating in the hearing were Connor Lynch, of Lynch LLP, appearing on behalf of Rajaee,[24] and Scott R. Carpenter, of Cummins & White LLP, appearing on behalf of Davis. At the time of the case management conference, this matter was set for a two-week evidentiary hearing on the balance of the parties' respective claims, counterclaims and affirmative defenses starting April 4, 2022. The parties' claims and counterclaims were essentially damages claims based on alleged tortious wrongdoing by the other.[25]

---

[24]  On January 14, 2022, a Notice of Substitution of Counsel was submitted advising that Connor Lynch, of Lynch LLP, was substituting in place of Jordan Matthews, of Weinberg Gonser LLP, as attorneys for Claimant in this arbitration.

[25]  In his second amended demand dated August 4, 2021, Rajaee asserted eight claims for relief seeking compensatory and punitive damages from Davis: defamation per se (First Cause of Action), civil extortion (Second Cause of Action), intentional infliction of emotional distress (Third Cause of Action), intentional interference with contract (Fourth Cause of Action), intentional interference with prospective economic advantage (Fifth Cause of Action), negligent interference with prospective economic advantage (Sixth Cause of Action), breach of fiduciary duty of care (Seventh Cause of Action), and a derivative claim for the LLC for breach of fiduciary duty (Eighth Cause of Action).

In his response to Rajaee's second amended demand, described above, Davis submitted and served a counterclaim, dated August 18, 2021, in which he asserted claims seeking compensatory and

24

When the evidentiary hearing was originally scheduled, it was assumed that, if dissolution was ordered, the accounting proceedings would be conducted in tandem with the hearing on the merits of the parties' respective tort claims and counterclaims. However, without Rajaee's cooperation and compliance with Order Nos. 4 and 5, the Arbitrator determined that that was not feasible. Accordingly, in accordance with AAA Rule R-32, the Arbitrator determined that it would expedite the resolution of the disputes in this matter if the LLC's final accounting and the even-up of accounts between Rajaee and Davis, as members of the LLC, was completed before turning to the determination of the merits of the parties' respective tort claims and counterclaims.

Pursuant to AAA Rule R-32(b), the determination of the remaining issues raised by Davis' Petition and first counterclaim was ordered bifurcated for determination "through evidentiary proceedings to be conducted on April 4 through 7, 2022 and April 11, 2022 (if needed) ("the Bifurcated Proceedings")." *See Order No. 6 [Exhibit 642].* These hearing dates were among the dates previously ordered, by agreement of the parties and their counsel, for the merits hearing in this matter. *See Order No. 2.* Order No. 6 was marked as *Exhibit 642* during the April 2022 hearing proceedings and is incorporated herein by this reference.

By agreement of the parties, through their respective counsel, an evidentiary hearing on the balance of the parties' tort claims and counterclaims was set for August 15 to 18, 2022, and August 22, 2022. *See Order No. 6 [Exhibit 642].*

5. **Proceedings and Decision on the Final Accounting for the LLC [Evidentiary Hearing Proceedings Conducted April 4 through 7, 2022, April 11 through 14, 2022, and April 21 and 22, 2022 – Partial Final Award]**

A. **Introductory Statement**

On April 4, 2022, a duly noticed hearing on the final accounting for the LLC was convened via video conference and continued thereafter on April 5 through 7, 2022, April 11 through , 2022, and April 21 and 22, 2022. Scott R. Carpenter, of Cummins & White LLP, appeared on behalf of Davis, and Ethan Brown, Geoffrey Neri, Tim Lamoreux, and Kete Barnes, of Brown Neri Smith & Khan LLP, appeared on behalf of Rajaee. The

---

punitive damages, as well as the imposition of a constructive trust, as against Rajaee, in addition to his First Cause of Action seeking dissolution and accounting of the LLC, based on allegations of breach of fiduciary duty and fraud by Rajaee.

25

hearing proceedings were recorded and transcribed by a certified court reporter. By agreement of the parties, through their respective counsel, the transcript of the proceedings on the final accounting is part of the record in this arbitration.

The issues raised for determination were quite narrow and, pursuant to Order No. 6, were specified in paragraph 1.9 as follows:

"Among the matters to be determined through the Bifurcated Proceedings are:

(a)    the reconciliation and final accounting of financial affairs of the LLC relative to the matters set forth in paragraph 4 of Order No. 4,

(b)    to determine whether there are any outstanding loans owed by the LLC to Rajaee or Davis,

(c)    to determine whether any surcharges should be assessed against Davis or Rajaee, and

(d)    to determine what, if anything, Davis or Rajaee is owed by or owes back to the LLC based upon the final reconciliation of the LLC's books and records and their respective capital accounts."

*Exhibit 642, p. 5 (emphasis added).*

In addition to the defined matters for determination, described above, paragraph 1.11 of Order No. 6 instructed the parties to "focus particular attention on substantiating [documentation showing the specific business expenses of the LLC that were paid through the transfer] the purpose of the transfers / withdrawals / payments out of the LLC as reflected in the LLC's bank statements[26] .... – and specifically including substantiation / explanation – for any transfers from the LLC to the following:

---

[26]    Paragraph 1.11 referenced Exhibit 21 – the bank statements for the LLC's operating account at Wells Fargo Bank – because that was the only bank account that had been identified as of the close of the December 2021 hearing proceedings on the Petition. Later, in connection with the April 2022 hearing proceedings, Rajaee produced documents related to two LLC bank accounts he opened in 2017 with Canadian banks. Davis testified that he was unaware of the existence of these accounts before the production of these hearing exhibits. *2022 RT 43.*

26

(a)    Tyler Davis,

(b)    Ashkan Rajaee,

(c)    Mobile Monster

(d)    SpendHub,

(e)    Remotepreneurs,

(f)    Lone Mountain Aircraft, and

(g)    Any transfer(s) to a person or entity not described above where the cumulative total is more than $50,000."

*Exhibit 642, pp. 5-6 (emphasis added).*

In advance of the start of the proceedings on the final accounting, the Arbitrator received extensive submissions from the parties, all of which she read in advance of the start of the evidentiary hearing proceedings. Those submissions included the following:

(a)    Expert report by Michael Hawes, CPA, forensic accountant designated by Davis.

(b)    Expert report by Becky O'Malley, certified fraud examiner, designated by Rajaee.

(c)    Opening brief submitted on behalf of Davis.

(d)    Opening brief submitted on behalf of Rajaee.

(e)    Pocket brief submitted on behalf of Davis with regard to legal authorities concerning the legal standard to be applied where records are unavailable or incomplete.

(f)    Pocket brief submitted on behalf of Rajaee with regard to legal authorities concerning the legal standard to be applied where records are unavailable or incomplete.

27

      (g)     Reply pocket brief submitted on behalf of Davis with regard to legal authorities concerning the legal standard to be applied where records are unavailable or incomplete.

      (h)     Reply pocket brief submitted on behalf of Rajaee with regard to legal authorities concerning the legal standard to be applied where records are unavailable or incomplete.

In advance of the proceedings on the final accounting, counsel for Rajaee also submitted declarations by Rajaee and Kete Barnes offered in support of Rajaee's opening brief. Since this was not a matter where the parties agreed to submit direct testimony via declaration, and since counsel for Davis objected, the declarations were not read or considered. Both witnesses appeared throughout the proceedings and were thus available to testify if they chose to do so. In this regard, counsel for Rajaee acknowledged that the declarations and exhibits attached to the declaration were "duplicative" of what would be covered during live testimony. *2022 RT 7.*

During the course of the proceedings on the final accounting, the parties were afforded extensive hearing time – April 4 through 7, 2022, April 11 through 14, 2022, April 21 and 22, 2022, and May 9, 2022 (for closing oral arguments) – during which they presented their respective testimonial and documentary evidence, as well as the oral opening statements and oral closing arguments of counsel. Additionally, the Arbitrator was provided with opening and closing briefs by both parties. All of the above evidence, argument, briefing and related materials were reviewed and considered by the Arbitrator.

## B.    Burden of Proof

The LLC is a member-managed limited liability company where, up until January 6, 2022, Rajaee was the Manager and Tax Matters Partner – roles / titles that were given to Rajaee under the terms of the Agreement, and ones that he accepted and performed from May 2017 through January 6, 2022.

In a member-managed limited liability company, the manager-member owes the company and the other members the duties of loyalty and care. *Cal. Corp. Code. § 17704.09(a), (b) and (c).*

28

EXHIBIT 3, PAGE 130

Rajaee's duty to account flows from the duty of loyalty. The duty of loyalty requires the manager-member to account to the limited liability company and hold as trustee for it any property, profit, or benefit derived by the manager-member in the conduct and winding up of the activities of the company or derived from use of the company property. *Cal. Corp. Code. § 17704.09(b)(1)*.

In his capacity as trustee of the limited liability company's property, the manager-member "is held to something stricter than the morals of the marketplace." *Feresi v. The Livery, LLC,* 232 Cal. App. 4th 419, 426 (2014). Like any other trustee, a manager-member is obligated to render an account of his dealings with the company's property by satisfactory evidence.[27] Any doubt arising from a trustee's failure to keep proper records to substantiate the bona fides of his self-dealing transactions must be resolved against the manager-member in his capacity as the trustee of the company's property. See, e.g., *Purdy v. Johnson,* 174 Cal. 521, 527 (1917) (Any transaction whereby the trustee receives a benefit from the trust is presumed to be improper and the burden is on the trustee to demonstrate the bona fides of the transaction.)

As set forth in Section 4(B)(3), above, Rajaee was ordered to provide an accounting of the LLC's finances through the end of his tenure as Manager of the LLC (January 6, 2022). *Order No. 4, ¶ 7* (as quoted in Section 4(B)(3), above). Rajaee's accounting obligation was twofold: 1. at a minimum, to produce a balance sheet and profit and loss statement for year-end 2021 with supporting backup and schedules, and 2. specifically, to substantiate that the millions of dollars paid out to or for the benefit of Rajaee or his companies were for legitimate business expenses of the LLC. The first point is discussed in Section 5(C), below. The second point is discussed in Section 5(D), below.

---

[27] This is at odds with Rajaee's view of his authority as the Manager of the LLC, as was made apparent during the December 2021 proceedings. As discussed in Section 4(B) and footnote 11, one of the points of departure and points of disagreement between Rajaee and Davis that led to this dispute is Rajaee's belief that if an expense can fit within the rubric of "marketing," "customer relations" or "pursuing new business," it qualifies as an ordinary business expense that is within his complete discretion regardless of amount. *2021 RT 191.*

29

C. **Ruling on the Final Accounting for the LLC and Factual Determinations Made With Respect to the Final Accounting**

(1) **Rajaee's Failed Accounting**

Rajaee did not offer any type of accounting or financial statements for the LLC. Whether his failure is the result of neglect or intent is a matter for another day when the balance of the parties' respective damages claims are heard. For now, the consequence of Rajaee's failure to account results in the inference that Rajaee cannot account because (a) he failed to keep proper records for the LLC, Mobile Monster, SpendHub or RemotePreneurs and himself, and (b) the finances of the LLC are so "overlapping" and intertwined with Rajaee's personal finances and the finances of Rajaee's companies, it is not possible to do so. Both inferences are consistent with Rajaee's prior testimony in December 2021. *2021 RT 121.*

Instead of providing an accounting for the LLC as of the end of his tenure as Manager of the LLC, Rajaee focused his attention and much of his evidence presentation time on seeking to *relitigate* the rulings and determinations made with respect to the Petition, as discussed in Section 3, above. During the December 2021 evidentiary hearing proceedings on the Petition, Rajaee testified under oath that he did not contribute anything to capitalize the LLC; that he was adverse to doing so because he was trying to "de-risk" himself; and that his deal with Davis was that Davis would capitalize the LLC with an initial cash contribution of $750,000. The evidence throughout the proceedings has been undisputed that Davis contributed $750,000 to the LLC, and did so as requested and in the manner requested by Rajaee. As noted in Section 3(B), this testimony is consistent with what Rajaee told the IRS on the tax returns he signed as the LLC's tax matters partner for 2017, 2018, 2019 and 2020. *Davis Exhibits 8, 9, 10 and 11 (2017, 2018, 2019 and 2020 LLC tax returns), and Exhibits 811, 812 and 813 (e-file signature authorizations for the LLC's 2018, 2019 and 2020 tax returns).*

During the April 2022 evidentiary hearing proceedings, Rajaee *changed his story completely,* and testified that he matched Davis' capital contributions to the LLC through alleged contributions made by Mobile Monster in October 2017. The parties' respective capital contributions were determined pursuant to Order No. 4. The undersigned Arbitrator did consider Rajaee's new evidence, but it did not ring true, especially when contrasted with Rajaee's prior testimony under oath.

30

As an *alternative* to receiving capital contribution credit, Rajaee argued that he should receive "offset credit" for Mobile Monster's alleged advances to the LLC in October 2017. As discussed hereinbelow, that argument is rejected because it is not supported by the evidence.

Rajaee's "proof" of Mobile Monster's advances to the LLC was offered primarily through O'Malley – Rajaee's forensics expert – who relied on (a) general ledger entries in the LLC's books showing receipt of three payments in October 2017 from Mobile Monster totaling $755,837, *Exhibit 201, p. 19,* and (b) a newly discovered bank statement for a bank account Rajaee opened for the LLC in Canada at BMO Harris (account ending in 8497). The statements for the 8497 account show receipt of two wire transfer payments (one in the amount of $249,985 and one in the amount of $214,985). *Exhibit 245, p. 12.*[28] Rajaee testified that the LLC had a second Canadian bank account at BMO Harris (account ending in 7970), for which he could not find or retrieve the bank statements, and that the third advance by Mobile Monster was deposited into that account. *2022 RT 1780-1781; Exhibit 666.* Rajaee also introduced into evidence the bank statements for two bank accounts Mobile Monster maintained at BMO Harris in Canada (accounts ending in 144 and 702) to show the three outgoing wire transfers from Mobile Monster's accounts in October 2017 (*Exhibits 213 and 214*[29]), as well as a wire transfer "confirmation of wires" letter, dated April 11, 2022, from BMO Wealth Management to Mobile Monster. *Exhibit 666.*

The conclusion that Mobile Monster advanced funds to the LLC for which it was not repaid can only be reached if one limits his or her review to October 2017. Such a limited review of the evidence is not in order in this case because the transactions and dealings between the LLC and Mobile Monster span a much broader time frame. A broader review of the evidence shows that while Mobile Monster may have transferred $755,837 into the LLC in October 2017, the money did not stay in the LLC. Between August 2017 and April 2019, according to Mobile Monster's bank statements (*Exhibits*

---

[28]   *Exhibit 245* is a partial set of statements starting in May 2017 and ending with March 2018. This is significant because there are numerous wire transfer transactions into Mobile Monster's BMO Harris accounts from the LLC that occurred after March 2018.

[29]   *Exhibits 213 and 214* are partial sets of statements starting in May 2017 and ending with March 2021. This is significant because there have been numerous payment transactions to Mobile Monster from the LLC's operating account at Wells Fargo since March 2021. Without the Mobile Monster bank statements for the balance of calendar year 2021, it is not possible to see if there is still another active LLC account besides the Wells Fargo account. Notably, these account statements are all in Rajaee's control.

31

*213 and 214)*, Mobile Monster received $1,173,626 in transfers <u>from</u> the LLC, meaning that whatever monies Mobile Monster may have transferred to the LLC in October 2017 were fully replenished by the incoming wire transfers from the LLC reflected in Mobile Monster's bank statements for the 144 and 702 accounts:

| Wire Transfer Date | Transfer Amount | BMO Account No. | Comment |
|---|---|---|---|
| Aug 29 2017 | 29,543.41 | 702 | No MM Invoice |
| Aug 25 2017 | 37,676.83 | 702 | MM Invoice Nos 194 ($12,734.70), 196 ($12,736.96) and 197 ($12,205.17) |
| Sep 1 2017 | 44,365.31[30] | 702 | MM Invoice No. 195 |
| Nov 7 2017 | 59,133.67 | 702 | MM Invoice Nos. 198 ($40,746.15) and 199 ($18,387.52) |
| Dec 1 2017 | 75,000.00 | 144 | MM Invoice No. 202 |
| Dec 8 2017 | 276,900.00 | 144 | MM Invoice No. 207 |
| Dec 29 2017 | 78,705.45 | 702 | No MM Invoice |
| Jan 19 2018 | 23,100 | 144 | MM Invoice No. 208 |
| Mar 26 2018 | 276,957.73[31] | 702 | MM Invoice No. 209 |
| Aug 7 2018 | 47,052.04 | 702 | MM Invoice No. 220 |
| Mar 29 2019 | 151,648.08 | 702 | MM Invoice No. 243 |
| Apr 12 2019 | 73,543.49 | 702 | MM Invoice No. 246 |
| **TOTAL** | **$1,173,626.01** | | |

*Exhibit 213, pp. 47, 49, 73, 79, 81, 85, 87 and 88, Exhibit 214, pp. 68 and 70, and Exhibit 224, Bates Number 4152, 4154, 4155, 4156, 4157, 4159, 4162, 4163, 4164, 4173, 4193 and 4196.*

---

[30]    An outgoing transfer in this amount is reflected in the LLC's BMO Account number 8497. *Exhibit 245, p. 10.*

[31]    An outgoing transfer in this amount is reflected in the LLC's BMO Account number 8497. *Exhibit 245, p. 26.* Rajaee acknowledged that this was an outgoing transfer to Mobile Monster. *2022 RT 930-931.*

32

Rajaee testified that the Mobile Monster deposits of $755,837 were "erroneously" booked as sales revenue on the LLC's books. Given the evidence and findings discussed above, this issue is a moot point, especially since Rajaee – as the LLC's Manager – was responsible for maintaining the LLC's books and records and the inferences being drawn against him in that regard. However, given that Rajaee was the only one involved in generating sales for the LLC in 2017, it begs credulity that Rajaee would not notice a $750,000 error when gross sales for the year were only about $890,000. *Davis Exhibits 3 and 8*. If the $755,837 had been backed out of the profit and loss statement and tax return for 2017, the LLC would have reported only about $140,000 in sales with over $1.3 million in expenses, and there would be unexplained issues concerning (a) the monies the flowed into the LLC's Canadian bank accounts at BMO Harris, and (b) the monies that flowed from the LLC to Mobile Monster from an account or accounts other than the Wells Fargo operating account. As the person responsible for generating the LLC's sales in 2017, it is not credible that Rajaee would not have known what the LLC's true sales figure was for 2017 and would not have noticed a high six-figure error, if indeed there was an error.

In final analysis, Rajaee's testimony about Mobile Monster putting money into the LLC as a capital contribution or as unreimbursed advances is not credible because it is dependent on believing Rajaee's new story, which is at odds with his prior testimony and the records he has produced. Rajaee is one of the least credible witnesses the undersigned Arbitrator has ever heard testify, not just because Rajaee gave inconsistent testimony, but because he did so without acknowledging the contradiction and his seeming indifference to the oath he took, promising to answer truthfully all questions posed to him in the arbitration. Instead, over the course of the December 2021 and April 2022 Hearing proceedings, Rajaee testified as if the truth was something that he could change from day to day depending on his then current need, objective, whim or state of mind.

33

EXHIBIT 3, PAGE 135

(2)     **Rajaee Failed to Substantiate that the Millions of Dollars Paid to Himself and His Companies Were for Legitimate Business Expenses of the LLC**

(a)     **Introductory Statement**

The accounting concerns the monies paid by the LLC to or for the benefit of Davis, Rajaee and their respective companies. It does not concern an accounting of what the LLC paid directly to its W-2 employees and the software developer contractors, which accounts for roughly 70% of the LLC's annual expenses, on average, as reported in the profit and loss statements prepared under Rajaee's direction and given to Davis, because those transactions were not questioned by Davis. *Davis Exhibits 3, 4, 5, 6 and 7.*

| Year | Consultant Expense | Payroll Wages & Taxes | Gross Sales | Percentage of Gross Sales |
|------|--------------------|-----------------------|-------------|---------------------------|
| 2017 | 894,374 | 129,571 | 897,253 | 114% |
| 2018 | 2,430,281 | 401,078 | 3,730,376 | 76% |
| 2019 | 5,178,822 | 339,941 | 7,880,396 | 70% |
| 2020 | 2,674,249 | 152,401 | 4,309,844 | 66% |
| 2021 | 6,311,178 | 440,380 | 9,988,447 | 68% |

*Id.*

The even-up accounting also does not concern the expenses the LLC paid directly to outside third parties for such things as business and health insurance, bank charges, accountant fees, etc., which totaled less than $1,000,000 for the 4-1/2 year period of May 2017 through December 2021, because those transactions were not questioned by Davis. *Exhibits 3, 4, 5, 6 and 7.*

The focus of the even-up accounting was on what happened to the other Ten Million in revenue. To the extent monies were paid to Davis, as discussed in Section 4(E), below, the evidence showed that those payments were modest ($250,000) and undisputed. To the extent that monies were paid to or for the benefit of Rajaee or his companies beyond the agreed upon guaranteed salary ($933,300.00)[32] and the July

---

[32]  This figure is based upon $200,000 per full calendar year in 2018, 2019, 2020 and 2021, and 6.6 months for calendar year 2017 (May to December). See *Exhibit 801.*

34

2019 distribution of $50,000, the questions to be answered were "What was the business purpose or need?" and "What records exist to substantiate the business nature and amount of each transfer out of the LLC's operating account at Wells Fargo to Rajaee or one of his companies?" Despite the blizzard of paper produced by Rajaee during the course of the April 2022 hearing proceedings, Rajaee did not produce any records that substantiated or explained:

    (a)    the approximate $2.6 million in non-itemized "expenses" billed to the LLC by Mobile Monster for "reimbursement,"[33]

    (b)    the approximate $1 million transferred to Mobile Monster that was not supported by any invoices or other documentation,[34]

---

[33] See, e.g., *Exhibit 224, pp. 004166, 004171, 004175, 004177, 004178, 004180, 004188, 004189, 004190, 004192, 004194, 004198, 004200, 004215, 004220, 004229, 004227, 004225, 004223, 004231, 004232, 004234, 004235, 004237, 004238, 004239, 004241, 004243, 004247, 004248, and 004250.* The foregoing invoices total a little over $2.6 million. The foregoing Mobile Monster invoice analysis does <u>not</u> include the Mobile Monster invoices that tie to wire transfers into Mobile Monster's accounts 702 and 144, reflected as coming from "TopDevz LLC" that are <u>not</u> reflected in the statements for the LLC's account at Wells Fargo. Those invoices total $991,833.66, and have not been included in the offset analysis or charges because the Mobile Monster invoices and bank statements only came to light during the course of the April 2022 proceedings and were not included in the forensic experts' opinions. See, e.g., *Exhibit 224, pp. 004152, 004154, 004155, 004153, 004156, 004157, 004159, 004162, 004163, 004164, 004173, and 004193,* and *Exhibits 213 and 214.*

[34] An analysis of *Exhibit 629* (the spreadsheet exhibit to the Hawes opinion report showing the transfers out of the Wells Fargo account to Davis, Rajaee or one of their companies) in comparison to *Exhibit 224* (the Mobile Monster invoices) shows that there were 13 transfers out of the LLC's account to Mobile Monster that are not supported by a Mobile Monster invoice and were not otherwise addressed or explained by Rajaee. Those transfers total almost $1.1 million and are summarized below:

| Date | Amount | Transferee |
|---|---|---|
| 7-16-2019 | $148,648.55 | The Bank of Montreal / Bnf=Mobile Monster |
| 8-15-2019 | $87,544.00 | The Bank of Montreal / Bnf=Mobile Monster |
| 9-13-2019 | $105,551.61 | The Bank of Montreal / Bnf=Mobile Monster |
| 11-21-2019 | $215,250.00 | The Bank of Montreal / Bnf=Mobile Monster |
| 1-21-2020 | $142,412.00 | The Bank of Montreal / Bnf=Mobile Monster |
| 2-25-2020 | $141,654.71 | The Bank of Montreal / Bnf=Mobile Monster |
| 2-25-2020 | $8,351.26 | The Bank of Montreal / Bnf=Mobile Monster |
| 6-9-2020 | $52,110.29 | The Bank of Montreal / Bnf=Mobile Monster |
| 7-10-2020 | $71,789.29 | The Bank of Montreal / Bnf=Mobile Monster |
| 2-9-2021 | $2,429.53 | The Bank of Montreal / Bnf=Mobile Monster |
| 3-3-2021 | $40,429.00 | The Bank of Montreal / Bnf=Mobile Monster |
| 3-15-2021 | $50,000.00 | The Bank of Montreal / Bnf=Mobile Monster |
| TOTAL: | $1,066,170.24 | |

35

EXHIBIT 3, PAGE 137

(c)    the approximate $2.9 million transferred to Rajaee beyond (a) his guaranteed salary of $933,300 for 4.6 years of work, and (b) the $50,000 distribution matching that paid to Davis,[35]

(d)    the almost $800,000 of "expenses" charged by Mobile Monster employees to the LLC's account with SpendHub, with $250,000 being charged during the five-month period of July through November 2021,[36] and

(e)    the business purpose and details for the almost $200,000 in jet travel expenses charged or passed through to the LLC by Remotepreneurs in 2021.[37]

---

[35]  As discussed in Section 5(C)(2)(b), below, Rajaee is entitled to offset credit in the amount of $983,300.00 for his guaranteed salary (footnote 39) and matching $50,000 distribution paid in July 2019 because the evidence showed that those payments were mutually agreed to by Davis and Rajaee.

[36]  O'Malley's spreadsheet analysis of the vendors to whom Mobile Monster employees were incurring charges on the LLC's SpendHub account included all sorts of food, apparel, hotel and airline charges. See, *Exhibit 201, pp. 261-275.* No receipts or expense reports were produced to substantiate the business need or purpose for charging any of these items to the LLC. The evidence showed that $250,000 was charged to the LLC's SpendHub account in five installments of $50,000 each during the last half of 2021, which is after the discord and dissension between Rajaee and Davis had escalated to the point of this arbitration and the parties speaking to each other only through attorneys. The questions for Rajaee to answer were: "Who was traveling and eating at the expense of the LLC during this five-month time period, and for what business purpose?" Neither Rajaee nor his expert (O'Malley) answered this question.

[37]  It was established during the December 2021 proceedings that, after this arbitration and the related court litigation matters were filed, Rajaee made the unilateral decision to have the LLC lease a jet for his use and passed through to the LLC the maintenance, fuel and operation expenses charged by Lone Mountain Aircraft for that aircraft. *2021 RT 156, 160-164 and 170-171.* No evidence was offered to show why a staffing company such as the LLC needed a private jet for its Manager or how such private jet travel inured to the benefit of the LLC. All that was offered in this regard was Rajaee's testimony that the expenses associated with his private jet travel tied to marketing because it promoted *him* and his "crazy" life and what he and his team did on a day-to-day basis as a way "to get content in front of an audience on LinkedIn, and the Google Ads" so that the content "would be entertaining to watch." *2022 RT 1330-1331.* According to Rajaee, the videos he produced were responsible for landing some significant accounts for the LLC "because [the customer] remembered the plane or the Bentley or the Zoom call where one of our developers was caught having sex on Zoom ... and that was all just part of the content." *2022 RT 1331.* Rajaee, however, failed to show that any account was the result of the "marketing" efforts that focused largely on Rajaee and his lifestyle. See, *Rajaee Exhibits 51A, 52A, 53A, 54A, 55A, 56A and 57A; 2021 RT 579-594.*

36

EXHIBIT 3, PAGE 138

    **(b)**    **The Evidence Showed that the Amount Rajaee Needed to Substantiate was $7,670,151**

Hawes' analysis of payments made to or for the benefit of Rajaee or his companies was based on the information reflected in the bank statements for the LLC's operating account at Wells Fargo,[38] and covered the period of November 2017 through January 2022, which included the $131,586 and $900,000 paid out to Mobile Monster and Rajaee, respectively, on January 6, 2022. *Exhibits 801 and 629.* O'Malley's analysis of payments made to Rajaee or his companies covered the period of May 2017 through December 2021, and thus did <u>not</u> capture or include the aforementioned January 6, 2022, payments. *Exhibit 201, Table 3.* O'Malley's analysis also did not identify the source of her cash disbursement numbers, *Exhibit 201, p.7, ¶ 10,* which varied from Hawes' totals. For example, Hawes showed that total payments out to Mobile Monster were $3,704,625. *Exhibit 801, p. 006.* O'Malley showed that total payments out to Mobile Monster were $4,454,018. *Exhibit 201, p. 8.* For another example, Hawes showed that total payments out to SpendHub were $830,052. *Exhibit 801, p. 006.* O'Malley showed that total payments out to SpendHub were $839,703. *Exhibit, p. 8.*

Because Hawes' opinion analysis tied to the statements for the LLC's operating account at Wells Fargo and included the January 6, 2022, transfers to Rajaee and Mobile Monster, whereas O'Malley's opinion analysis did not, Hawes' opinion testimony was given greater weight in deciding the issue with regard to the amount Rajaee needed to substantiate as business expenses of the LLC. That amount is $7,670,151, as summarized below:

---

[38]    The even-up accounting considered only the transactions reflected in the LLC's operating account at Wells Fargo because (a) the existence of the LLC's Canadian accounts at BMO Harris was not known to Davis before the April 2022 proceedings, and (b) the records for the LLC's accounts at BMO Harris were incomplete.

EXHIBIT 3, PAGE 139

(a)     $2,913,460 paid to Rajaee.[39]

(b)     $3,692,586 paid to Mobile Monster.[40]

(c)     $780,655 paid to SpendHub.[41]

(d)     $49,908 paid to Remotepreneurs in 2021 for the jet the LLC leased in July 2021. *Exhibit 801, p 6; Exhibit 629.*

(e)     $148,140 paid to Lone Mountain for expenses related to the operation and maintenance of the jet owned by Remotepreneurs and leased to the LLC. *Exhibit 801, p 6; Exhibit 629.*

(f)     $85,402 paid to Anil Khera, a Mobile Monster expense that the LLC paid. Both Hawes and O'Malley agreed that it should be charged to Rajaee. *Exhibit 801, p 6; Exhibit 629; 2022 RT 1506.*

Putting the $85,402 payment to Anil Khera aside - since the parties' respective experts agreed that it was <u>not</u> a legitimate business expense of the LLC and should thus be charged to Rajaee - the call of the question in reconciling Rajaee's account with the LLC is whether there is sufficient evidence to substantiate some or all of the above transfers as payment of legitimate business expenses of the LLC.

---

[39]  In his opinion report, Hawes showed a total of $3,915,782 going to Rajaee. *Exhibit 801.* On cross-examination, Hawes was asked to double-check the information in his backup schedule – marked as *Exhibit 629.* Hawes found a duplicate entry of $22,772, requiring a downward adjustment. Hawes also found that an entry booked at $50,000 should have been booked at $53,750, requiring an upward adjustment. *Exhibit 801, p 6; Exhibit 629; 2022 RT 792-796.* Hawes then credited Rajaee with $933,300 for the guaranteed salary of $200,000 per year, which Davis testified he approved, and the July 2019 member distribution of $50,000, which the evidence showed was mutually agreed to and received by both Davis and Rajaee.

[40]  In his report, Hawes showed a total of $3,704,625 going to Mobile Monster. *Exhibit 801.* On cross-examination, Hawes was asked to double-check the information in his backup schedule – *Exhibit 629.* Hawes found a duplicate entry of $61,436, requiring a downward adjustment. Hawes also found a transfer out to Mobile Monster that was incorrectly booked to SpendHub in the amount of $49,397, requiring an upward adjustment. *Exhibit 801, p 6; Exhibit 629; 2022 RT 792-796.*

[41]  In his report, Hawes showed a total of $830,052 going to SpendHub. *Exhibit 801.* On cross-examination, Hawes was asked to double-check the information in his backup schedule – *Exhibit 629.* Hawes found a transfer out of Mobile Monster that was incorrectly booked to SpendHub in the amount of $49,397, requiring a downward adjustment. *Exhibit 801, p 6; Exhibit 629; 2022 RT 792-796.*

EXHIBIT 3, PAGE 140

Both parties' experts agreed that they were not provided with the documents and information they needed or had requested. For example, O'Malley stated in her report that the ZoHo Books accounting system has a feature that ties to accounts payable supporting documentation such as invoices, bills, and receipts, but that supporting documentation was not always available for the transactions she was reviewing – namely, the support for the Mobile Monster "lumpsum invoices" and the transfers to Rajaee beyond his guaranteed salary. *Exhibit 201, pp. 12-13.* O'Malley further stated that during the course of her work, she "requested but did not receive certain documents and information that [were] relevant to [her] forensic analysis, to the extent that they exist," and that she was told that "these documents [were] not readily available." *Id. at p. 12.* With regard to her analysis of the transfers made to Mobile Monster pursuant to its invoices, O'Malley stated that the invoices had "lumpsum charges for lead generation, staff and consulting support, and expense reimbursements," and that she was told "that there is limited supporting documentation pertaining to how the invoice amounts were calculated." *Id. at p. 13.*

Hawes testified that he agreed with O'Malley regarding the missing documentation. *2022 RT 814-820.* Hawes testified that after spreadsheeting the monies transferred out of the LLC to or for the benefit of Davis, Rajaee or their respective companies, he then looked at all of the documents provided through the O'Malley report and the Hearing exhibits – "everything provided to me" – looking for "substantiation for the money going out." *2022 RT 97.* Beyond the instances where the evidence showed that monies were paid out by mutual agreement between Davis and Rajaee – e.g., the July 2019 member distributions and Rajaee's guaranteed salary – Hawes found that the bulk of the transfers out to or for the benefit of Rajaee or his companies were "non-substantiated payments." *Id. at pp. 103-114.*

The parties' experts took very different approaches to dealing with the missing documentation circumstance. Hawes held Rajaee to the standards imposed by the IRS for substantiating business expense deductions because the transactions concerned insider transactions where significant sums of money were flowing out to or for the benefit of Rajaee or his companies. *Id.* O'Malley relied on the information she found in the general ledger, Mobile Monster invoices and credit card statements while, at the same time, qualifying her analysis by noting that she was not provided with all of the documents or information she requested. Hawes questioned the reliability of O'Malley's forensic analysis given that she, admittedly, was provided with only part of the information she requested. *2022 RT 819.* The undersigned Arbitrator agrees with and adopts Hawes' criticism of O'Malley's analysis, and gave Hawes' analysis and opinion greater weight because it took into consideration (a) the fiduciary standards imposed on

39

managing members of a limited liability company, (b) the IRS requirements for substantiating business expenses for purposes of deduction from gross revenue to determine taxable income, and (c) the evidence in the case. Notably, concerning the evidence in the case, O'Malley's analysis ended as of December 31, 2021,[42] and thus did not include looking for substantiation for the $900,000 transferred to Rajaee or the $131,586.76 transferred to Mobile Monster on January 6, 2022, both of which were acknowledged/admitted by Rajaee in his April 2022 testimony. *2022 RT 481-483.*

> **(c)     Rajaee Failed to Provide Sufficient Evidence that the Millions of Dollars Paid to or for the Benefit of Himself and His Companies Were for Legitimate Business Expenses of the LLC**

As discussed in Section 5(B), above, Rajaee had the burden of proof to show that the millions of dollars paid to or for the benefit of himself and his companies by the LLC were for legitimate business expenses of the LLC. This should have been a simple accounting exercise, but Rajaee failed to do it. The following are merely examples and not an all-inclusive list:

- On December 19, 2017, three wire transfers were made to Rajaee in the amounts of $50,000, $50,000 and $53,750. What were these transfers for? Where is the documentation showing that these were reimbursement for an LLC expense paid by Rajaee – e.g., an invoice from the vendor and proof of payment by Rajaee? Rajaee produced nothing to establish the bona fides of these transfer transactions.[43]

---

[42] *Exhibit 201, pp. 3–6, 8, 15, 16 and 25.*

[43]     According to O'Malley's analysis, these payments were booked in ZoHo Books as reimbursement to Rajaee for the JetSmarter membership. *Exhibit 201, p. 279 (Schedule 6).* However, O'Malley's analysis shows a companion invoice transaction from Mobile Monster in the amount of $113,511 related to the JetSmarter membership. There is a Mobile Monster invoice (No. 0210), dated December 21, 2017, directed to the LLC for reimbursement of the "JetSmarter Membership." *Exhibit 224, p. 004165.* The LLC's 8497 account shows an outgoing wire transfer on December 21, 2021 (recipient unknown), in the amount of $113,511.00. *Exhibit 245, p. 18.* Nothing was produced by Rajaee to show the actual amount charged by JetSmarter for the membership, or to explain why the LLC simply did not pay for the membership directly. Nothing was produced to explain why both Mobile Monster and Rajaee were being reimbursed for the JetSmarter membership or the amounts of those "reimbursements." O'Malley's forensic analysis ignored the apparent duplicate payment, and simply assumed that the $153,000 transferred out to Rajaee was valid without requiring any backup invoices from JetSmarter and without reconciling (a) the odd entries in the LLC's general ledger showing invoicing by Mobile Monster for reimbursement of a JetSmarter expense in the amount of $113,511.00 and payment to Rajaee in the amount of $153,000.00, or (b) the fact that Mobile Monster invoiced the LLC

40

- In December 2020, Mobile Monster invoiced and was paid $126,214.60 for "expense" reimbursement and "lead generation." What "expenses" were paid by Mobile Monster on behalf of the LLC. Where is the documentation showing that the charges being reimbursed were LLC expenses paid by Mobile Monster? To the extent that the invoiced amount includes a fee for "lead generation," what was the amount of that fee and how was it computed? Again, Rajaee provided no substantiation to show the bona fides of this transfer transaction.

- On November 21, 2019, a wire transfer was made to Mobile Monster in the amount of $212,250 for which there is no corresponding invoice. What was the transfer for? If it was an expense reimbursement, where is the documentation showing that Mobile Monster incurred or paid business expenses of the LLC totaling this amount? If it was repayment of an advance by Mobile Monster, where is the documentation showing unreimbursed advances owed to Mobile Monster as of this date?[44] Again, Rajaee provided no substantiation to show the bona fides of this transfer transaction.

- On July 28, 2021, a wire transfer was made to Rajaee in the amount of $447,723.80. What was that transfer for? If for reimbursement of LLC expenses paid for by Rajaee, where is the documentation showing (a) the existence of LLC business expense obligations in this amount, and (b) Rajaee's payment of those expenses? One would expect that Rajaee would know what he got such a large amount of money for, but Rajaee again provided no explanation or substantiation for this transfer transaction.

---

and appears to have received payment from the LLC from one of its Canadian accounts at BMO Harris, as discussed above.

[44]  As discussed in Section 5(C), the evidence concerning Mobile Monster's bank accounts at BMO Harris show that between August 2017 and April 2019, Mobile Monster received wire transfers from the LLC totaling in excess of $1.1 million from an account *other than* the LLC's operating account at Wells Fargo.

EXHIBIT 3, PAGE 143

While Rajaee produced a blizzard of paper during the course of the April 2022 proceedings,[45] with the exception of the $900,000 wired to Rajaee on January 6, 2022, which Rajaee acknowledged he simply took,[46] neither Rajaee nor his forensic expert addressed, explained or in any way substantiated a single one of the other documented transfers out of the LLC's operating account at Wells Fargo to or for the benefit of Rajaee or his companies. Instead, what Rajaee did was offer the "reverse engineering" opinion testimony of O'Malley, discussed below.

O'Malley is not a certified public accountant and is not licensed to sign off on public accounting reports or to represent taxpayers before the IRS. *2022 RT 1433-1434*. O'Malley is a certified fraud examiner whose "primary forte" is looking through forensic data for the purpose of forming conclusions about where money went. *Id.* O'Malley acknowledged that she "didn't have all of the information that [she] felt [she] needed to prepare a final accounting" for the LLC, and, with regard to the opinion analysis she provided, O'Malley testified that she was "missing quite a bit of information" when she developed her opinion, and was still missing information and did not have a complete picture of the LLC's finances as of the April 2022 hearing. *2022 RT 1433-1435*. In an effort to come up with a number that would appease (or please) Rajaee, O'Malley "reverse engineered" a reconciliation that consisted of selecting certain data from ZoHo Books,[47] analyzing various bank statements and credit card statements, and

---

[45]    While not all exhibits were offered or admitted into evidence, Rajaee's counsel presented the undersigned Arbitrator with 16 4-inch binders of proposed exhibits, consisting of tens of thousands of pages of paper, six of which binders were offered midstream during the course of the April 2021 proceedings.

[46]    Rajaee testified that he wired $1,031,586 out of the LLC account on January 6, 2022, and that he deposited $900,000 of those funds into an account in Canada that he controls and that is not in the LLC's name. *2022 RT 480-481*.

[47]    O'Malley testified that the $3.4 million in payments to Mobile Monster were recorded as "consultant reimbursement expenses" in the LLC ZoHo Books accounting system. *2022 RT 1441; Exhibit 201, p. 4*. The term "consultant reimbursement expenses" is not O'Malley's term. Rather, that was the term used in the ZoHo Books accounting database. *2022 RT 1442*. O'Malley testified that she does not know what types of expenses qualified for coding in this category; that she simply accepted the term and incorporated it into her report and opinion "as it was recorded in the general ledger." *2022 RT 1444*. O'Malley also testified that she was not provided with any documents to verify that the amount was correct or that the expense being reimbursed qualified as a business expense of the LLC; that she was told that "there is limited supporting documentation pertaining to how the [Mobile Monster] invoice amounts were calculated." *Exhibit 201, p. 13*. While O'Malley accepted on faith that the information contained in the general ledger maintained in ZoHo Books was reliable, even in the absence of any supporting evidence to substantiate the amounts and business purpose for the millions of dollars paid

42

interviewing Rajaee for information to fill in the gaps. Based upon O'Malley's postulated reconstruction, O'Malley concluded that (a) the monies paid to Rajaee and his companies were for legitimate business expenses, and (b) the LLC owes money to Rajaee. *Exhibit 201, p. 9 (Table 4).*

While the undersigned Arbitrator appreciated the professionalism and candor of O'Malley, the simple fact of the matter is that O'Malley did not substantiate as an LLC business expense a single transfer out of the LLC's Wells Fargo bank account to or for the benefit of Rajaee or his companies. Rather, what O'Malley did was *postulate* and try to create a *possible* justification for all of the monies the flowed out of the LLC to Rajaee and his companies. The undersigned arbitrator was not persuaded by O'Malley's testimony because it lacked foundation in terms of any concrete evidence. O'Malley's testimony, for the most part, was conjecture based primarily on what Rajaee told her, which she acknowledged she could not corroborate because the documents she requested were not provided to her.

O'Malley reached her opinion based upon what she described as a "reverse engineering" exercise. *2022 RT 1378.* That exercise was predicated on a number of assumptions – starting with the flawed assumption that Rajaee deserved offset credit for the $755,837 transferred into the LLC's Canadian bank accounts in October 2017.[48] It was also predicated on an "analysis" of Rajaee's credit card statements, where she treated charges as LLC expenses based purely upon what Rajaee told her or based on her research into the vendors and her subjective determination that the vendors offered the type of goods and services a software development company *might* use. - *2022 RT 1378-1385.* In this regard, O'Malley testified that she thought her approach was "better" than relying on spreadsheets prepared by Siarra Wood.[49] *2022 RT 1382.*

---

out to Rajaee and his companies in five- and six-figure transactions, the undersigned Arbitrator is not willing to take the same leap of faith.

[48]   *See* discussion in Section 5(C).

[49]   O'Malley's testimony is significant because throughout the course of the Hearing proceedings, Rajaee and his counsel repeatedly referred to Siarra Wood – a former employee of Mobile Monster who lives in Canada and left the company in early February 2021 – as the only one in the world who had the documents and information needed to substantiate and explain the amounts paid out to Rajaee and his companies. On its face, this testimony was not credible that a staff level employee of Mobile Monster would have greater access to or control over the LLC's information than that of Rajaee – the managing member and tax matters partner – even 15 months after that employee terminated her employment with Mobile Monster. Moreover, a review of the Wells Fargo bank statements and the chart analysis (*Exhibit 629*), by date, of the amounts transferred to Davis, Rajaee and their respective companies, shows that almost $3 million of the transfers to Rajaee and his companies occurred after

43

With regard to the SpendHub charges, O'Malley simply *assumed* that whatever Mobile Monster's employees charged to the LLC's SpendHub account were for legitimate expenses of the LLC.[50] *2022 RT 1389-1392; Exhibit 201, pp. 260-274 (Schedules 3 and 3A).* Again, O'Malley reached this conclusion without addressing in any way the five transfers of $50,000 each from the LLC to SpendHub during the five month period of July through November 2021. O'Malley included the transfers in her spreadsheet (Schedules 3 and 3A), but did not explain how or on what basis she determined that these payments to SpendHub were for LLC expenses, what those expenses were or why they were so high for this five-month period.

Overall, in her review and analysis, O'Malley did not adhere to any standard of accounting, nor did she hold Rajaee to any degree of accountability with respect to his position as the managing member and tax matters partners of the LLC. In final analysis, O'Malley's postulated reconstruction is nothing more than a fictionalized account of the LLC's financial dealings with Rajaee and his companies, and offered nothing in the way of substantiating a single one of the numerous, high-dollar transfers out of the LLC's Wells Fargo account to Rajaee and his companies.

Hawes – Davis' expert – is a certified public accountant who has had a 45-year career handling both international and domestic tax clients. *2022 RT 92.* Hawes testified that he represents hundreds of tax clients before the IRS each year. *Id.* Hawes took a very different approach from that of O'Malley. Because Rajaee was the tax matters partner for the LLC, as well as its Manager, Hawes started from the premise that (a) Rajaee was a fiduciary of the LLC and had an obligation to maintain adequate records, (b) the bare minimum record-keeping was that which would satisfy the IRS that the expense being reimbursed to Rajaee or his companies qualified as a business expense of the LLC for deduction purposes, and (c) substantiating documentation of some sort was required because the transactions all involved five- and six-figure expenditures being made to or for the benefit of an insider (Rajaee or his companies). Hawes opined that if Rajaee could not substantiate the business expenses he or his companies purportedly paid on behalf of the LLC, or the basis for any fee charged to the LLC for services by Mobile Monster or SpendHub, then the expenditure does not qualify

---

Ms. Wood's departure from Mobile Monster. See, *Exhibit 629.* Still, Rajaee was unable or unwilling to provide any backup documentation to substantiate the business purpose of any of those transfers.

[50]    Notably, O'Malley did not flag or require substantiation for the $250,000 the LLC paid to SpendHub between July and November 2021 in five installments of $50,000 each before validating / accepting them as legitimate LLC business expenses. *See Exhibit 629 and Exhibit 201, p. 260 (Schedule 3).*

as a business expense of the LLC from an IRS tax deduction perspective and should thus be charged as a distribution to Rajaee. *2022 RT 116.*

Hawes testified that he requested from Rajaee's team the work papers, schedules and documentation to support the amounts charged by Mobile Monster on its invoices to the LLC, as well as the amounts purportedly paid on the LLC's behalf through SpendHub, and was "informed that there is minimal supporting documentation or none at all." *Exhibit 801, p. 004.* After reviewing all of the records provided to him, as well as the O'Malley report and schedules, Hawes opined that there was inadequate documentation to show that the monies paid to or for the benefit of Rajaee or his companies were legitimate business expenses of the LLC, and that Rajaee should thus be charged with having received a distribution in the amount of the transfers, less credit for his guaranteed salary ($200,000 per year) and the mutually agreed upon $50,000 distribution paid in July 2019. *2022 RT 109; Exhibit 801, pp. 06-008 and 039.*

Hawes opined that that the sum of $7,670,151.00 was paid to or for the benefit of Rajaee or one of his companies, and that this amount should be charged to Rajaee as a distribution which would give him a very significant negative capital account in that amount. *2022 RT 118.* Hawes opined that Rajaee's negative capital account – and resulting surcharge liability to the LLC – was $7.9 million when consideration was given to Rajaee's negative capital account as reported on the LLC's tax returns and after making some adjustments. *Exhibit 801, p. 008; 2022 RT 118.* While it was undisputed that the LLC reported to the IRS that Rajaee had a negative capital account at all times,[51] Hawes did not explain what the negative capital account figure was that he used to calculate the $7.9 million surcharge liability. Accordingly, the determination in this matter is that Rajaee's negative capital account and surcharge liability to the LLC is equal to the sum total of the unsubstantiated transfers to or for the benefit of Rajaee or his companies in the amount of $7,670,151.00; that Rajaee has a negative capital account in said amount.

---

[51]   *See* LLC 2017 tax return which reported Rajaee as having a negative capital account in the amount of -$27,961 (*Exhibit 8*); LLC 2018 tax return which reported Rajaee as having a negative capital account in the amount of -$27,961 (*Exhibit 9*); LLC 2019 tax return which reported Rajaee as having a negative capital account in the amount of -$83,722 (*Exhibit 10*); and LLC 2020 tax return which reported Rajaee as having a negative capital account in the amount of -$181,081 (*Exhibit 11*).

45

It was Rajaee's burden of proof to demonstrate the bona fides of each payment made to or for the benefit of Rajaee or his companies as a proper business expense of the LLC. As discussed above, Rajaee failed to carry his burden of proof. The undersigned Arbitrator notes that even if the burden of proof was on Davis to establish Rajaee's self-dealing, Davis met that burden. Through the evidence presented, Davis showed that there were $7,670,151.00 in unsubstantiated transfers to or for the benefit of Rajaee or his companies. Order No. 4 (Attachment 1 hereto) required that Rajaee turn over to Davis all of the financial books and records of the LLC. Davis and his expert – Hawes – found no substantiation for the transfers in those record, and Hawes found no substantiation in the O'Malley report or any of the Hearing exhibits. The burden thus shifted back to Rajaee the burden to establish that the payments made to or for the benefit of himself or his companies were for legitimate business expenses of the LLC. If such records were not in the LLC's records, one would expect that Rajaee, Mobile Monster, SpendHub or RemotePreneurs would have the backup documentation explaining the business purpose of the expenses purportedly being paid or reimbursed to or on their behalves.

**(d)    Rajaee Failed to Establish any Loan Indebtedness Owed to Him by the LLC**

Rajaee introduced into evidence a Loan Agreement between the LLC (as borrower) and Rajaee (as lender) with regard to an alleged loan in the amount of $586,081.21. *Exhibit 212*. Rajaee provided no evidence of transfers or advances by him to the LLC to support the making of any loans or advances by Rajaee to the LLC. Accordingly, the alleged loan indebtedness reflected in the aforementioned Loan Agreement is not an outstanding loan owed by the LLC to Rajaee.

**(3)    Davis's Contributions, Distributions and Advances and Were Not Disputed**

The parties' experts agreed that Davis contributed $750,000 to the LLC. The parties' experts also agreed that in July 2019, the LLC made a distribution to Rajaee and Davis in the amount of $50,000 each. *Exhibit 801, p. 6, Exhibit 629, Exhibit 201, p. 21.* Rajaee testified that in December 2021, a $175,000 distribution was paid to Davis and himself in 2019, but was captured on the LLC's P&L as an expense so as to not report a profit for that year.[52] Both parties' experts agreed that Davis, through his company

---

[52]    According to the Wells Fargo bank statement, Mobile Monster received a payment in the amount of $175,109, which amount ties to Mobile Monster Invoice No. 239, and Grigio (a company owned by Davis) received a payment in the amount of $175,000.

46

Grigio, received a $175,113 distribution in 2019 that was booked as an expense for "consulting services." *Exhibit 801, p. 6; Exhibit 629, Exhibit 201, p. 21.* Both parties' experts agreed that Davis, through his company Grigio, received a $25,000 distribution from the LLC in July 2020 that was booked as an expense payment for "consulting services." *Id.* Based upon the foregoing, it is hereby determined that the $250,113 Davis received in payments and distributions from the LLC, as discussed above, were authorized and thus legitimate because (a) Rajaee authorized and initiated the payments as Manager of the LLC, and (b) Davis received and accepted them. There is no surcharge liability resulting from these transfer transactions.

In connection with the winding up of the LLC's affairs after the issuance of Order No. 4, the evidence showed that Davis advanced $269,000 to cover the operating deficit caused by Rajaee's withdrawal of over $1 million from the LLC's operating account on January 6, 2022. The business need for that advance was established, and evidence was presented showing that the funds were actually deposited in the LLC's operating account at Wells Fargo and did not flow back out to Davis or his companies in any fashion. Davis is entitled to be repaid on this advanced in accordance with the provisions of paragraph 9.2(c) of the Agreement as an "outstanding loan[] to Member," and is entitled to accrue interest at the rate of 6% per annum in accordance with the terms of the promissory note signed by the LLC until the loan has been repaid in full. *Exhibits 803, 824, and 826.*

### (4)    Davis's Final Accounting and Partial Final Award in Favor of the LLC Against Rajaee

Davis testified that despite Rajaee's lack of cooperation and direct interference with the windup of the LLC's affairs, he was nevertheless able to gain control over the LLC's finances and affairs. With the help of Joshua Lintz, the former CEO of the LLC (hired by Rajaee in 2020), Davis was able to salvage relationships with the software developer staff and customers for purposes of finishing up work in progress and collecting on those accounts. *2022 RT 59-61.* With the help of Melissa Garcia, the LLC's bookkeeper who was working under Rajaee, Davis was able to migrate the LLC's financial data from ZoHo Books into QuickBooks. With the help of an outside accountant, Joshua Lance, Hawes and Melissa Garcia, Davis was able to get the LLC's books and records in order so as to be able to issue a balance sheet and profit and loss statement. *2022 RT 51-52; Exhibit 800 (March 15, 2022) and Exhibits 823 and 824 (March 31, 2022).* The LLC's accounting records, as migrated and updated through Davis' windup efforts, was reviewed by Hawes, who opined that they were "substantially" accurate and that the balance sheet provided by Davis was a "fair statement" of the LLC's assets and liabilities as of March 2022. *2022 RT 94-95.*

47

The LLC is not a brick-and-mortar business. It is a "virtual business" that largely exists and does business "in the cloud." There are no furniture, fixtures or equipment. The LLC is a specialized staffing company that connects software developers (who are independent contractors) with customers who have software development needs.[53] Its developers and employees all work remotely. The only real assets of the LLC are (a) cash in the bank, and (b) accounts receivable. Rajaee testified that the software developers are assets of the LLC and can be sold, *2022 RT 1800-1804,* but the fact of the matter is that the developers are not chattel and cannot be sold to / forced to work for another company. Rajaee also testified that the contracts with the staffing customers are assets, *2022 RT 1800-1804,* but the evidence showed that the companies who engaged staffing through the LLC did so on a <u>short-term</u> contract basis – i.e., for one or two week assignments. *2022 RT 62.*

The LLC has no hard assets to marshal or sell. It is a specialized staffing company that connects software developers (who are independent contractors) with LLC customers who have software development needs. Davis testified that creditors of the LLC were notified of the dissolution and winding up of the LLC, and that the only significant debts remaining to be paid are:

- the severance liability owed to Joshua Lintz pursuant to the employment contract he negotiated with Rajaee – approximately $1,044,523.87 as of March 31, 2022;

- the contingent liability of Siarra Wood related to her lawsuit against the LLC – approximately $82,812.50 per her last settlement demand;

- the contingent liability of Sara Blanchette related to her lawsuit against the LLC – approximately $44,687.50 per her last settlement demand;

- the legal fees associated with the defense of the lawsuits filed against the LLC by Siarra Wood and Sara Blanchette – approximately $53,117.58;

---

[53]  Rajaee apparently told the CPA Firm something different. Glaser testified that it was her understanding that the LLC was a *marketing company* and was the "U.S. arm of Mobile Monster," to whom Mobile Monster gave referrals. *2022 RT 572.*

48

- lease liability for the Mercedes Benz being driven by Rajaee, which is up in July 2022 - approximately $4,077, which Davis testified he intends to pay; and

- the ordinary course loans Davis made in January and February 2022, totaling $269,000, to cover payroll associated with the winding up of the LLC's affairs.

*Exhibit 824.*

In order to finish up the work that was in progress as of January 6, 2022, and to collect on the outstanding receivables owed by customers related to those projects, Davis contracted with TalentCrowd, a company started by Joshua Lintz after he left the LLC in early 2022.[54] For a monthly management fee of $2,500, TalentCrowd has supplied the developers to the LLC's remaining projects and has passed through the developers' fees at cost. The LLC has then invoiced the customer with a markup. Davis testified that the LLC's relationship with TalentCrowd is expected to come to an end with the last work being completed and billed by the end of May. It is estimated that the LLC will close its books with approximately $850,000.00 in receivables on its books, of which several customers have told Davis they will not pay their bills unless and until the disputes between Davis and Rajaee are resolved. *Exhibit 824; 2022 RT 1920.*

Based upon the foregoing, Davis's final accounting as set forth in Exhibits 823 and 824, and as testified to during the April 2022 Hearing proceedings, was approved, and a Partial Final Award on Davis' bifurcated First Counterclaim for dissolution and final account of the LLC was issued, which provided, in pertinent part, as follows, and is incorporated herein by this reference:

"5.2  Respondent  Tyler  B.  Davis'  final  accounting  and reconciliation of the financial affairs of TopDevz, LLC, based on the March 31, 2022, accounting – *Exhibits 823 and 824* – is hereby approved and affirmed, and TopDevz, LLC is ordered to be finally dissolved. Davis is

---

[54]  Joshua Lintz was the CEO of the LLC, hired by Rajaee pursuant to a written agreement that Rajaee negotiated and put into place. Under the terms of Mr. Lintz's contract with the LLC, he is entitled to a severance payment of equal to the sum of 12 months of his base salary, 12 months of medical benefits, past due incentive compensation and 12 months of incentive compensation, which Davis computed as an LLC liability in the amount of $1,374,523.87. *Exhibit 805, ¶ 6 and Exhibit 827.* Pursuant to the terms of Lintz's employment agreement, Lintz has no restrictions on his right to compete with or work for a competitor of the LLC should his employment be terminated. *Exhibit 805, ¶ 4.*

49

EXHIBIT 3, PAGE 151

charged with both the responsibility and authority to continue with the wind-up of the LLC's affairs, including but not limited to the collection of receivables, the settlement and payment of contingent liabilities, the collection of the surcharge amount owed by Ashkan Rajaee, and making distributions of profits, if any, to members in accordance with the terms of the Agreement.

5.3   The only outstanding member loan owed by the LLC is the $269,000 loan by Tyler B. Davis. The LLC's loan indebtedness to Davis shall accrue interest at the rate of 6% per annum until paid in full.

5.4   There is no evidence of an outstanding loan owed by TopDevz, LLC to Ashkan. The validity and enforceability of the purported loan agreement between the TopDevz, LLC and Ashkan (*Exhibit 212*) is denied.

5.5   Ashkan Rajaee is hereby surcharged in the amount of Seven Million Six Hundred Seventy Thousand One Hundred Fifty-One Dollars ($7,670,151.00) for excess distributions paid to or for the benefit of Ashkan Rajaee or his companies, which sum Ashkan Rajaee is obligated and hereby ordered to pay to the TopDevz, LLC in order to bring his negative capital account to zero.

5.6   Ashkan Rajaee is hereby ordered to return to TopDevz, LLC, care of Tyler B. Davis, the $900,000.00 he is holding in a bank account in Canada.[55] Upon return of those funds, Ashkan Rajaee's surcharge liability shall be reduced by the dollar amount Ashkan Rajaee returns to the LLC.

5.7   In winding up the affairs of TopDevz, LLC, Tyler B. Davis is instructed to follow the terms of the Agreement. Distributions of profits, if any, shall be in accordance with the members' Percentage Interests, as determined by this Award in Section 3(C)(1).

---

[55]   According to testimony Rajaee gave on April 6, 2022, he "has not spent one cent of [the $900,000]." *2022 RT 503.*

50

5.8    Whether there is a prevailing party for purposes of making an award of reasonable attorney's fees and costs is reserved until the conclusion of this arbitration, and, if such an award is in order, such matters shall be included in the determination of the remaining damages claims, counterclaims and affirmative defenses.

5.9    Whether there is a prevailing party for purposes of making an award of the administrative fees of the International Centre for Dispute Resolution (ICDR) and the compensation and expenses of the arbitrator is reserved until the conclusion of this arbitration, and, if such an award is in order, shall matters shall be included in the determination of the remaining damages claims, counterclaims, and affirmative defenses.

5.10    The issuance of this Partial Final Award concludes the proceedings and determinations related to the dissolution and accounting *of the LLC, and fully and finally determines Davis' first counterclaim for* relief. Pursuant to California Code of Civil Procedure section 1283.4, this Partial Final Award includes a determination of all questions submitted by the parties to the Arbitrator concerning Davis' first counterclaim for dissolution and final accounting of the LLC, the decision of which was necessary in order to determine said controversies.

5.11    The Arbitrator expressly reserves jurisdiction to hear and determine the parties' remaining damages claims, counterclaims and affirmative defenses, which were bifurcated for later hearing and determination pursuant to Order No. 6."

## 6.    Davis is Entitled to an Award of Compensatory Damages on His Breach of Fiduciary Duty and Fraud Counterclaims Against Rajaee

### A.    Introductory Statement

In his counterclaim, Davis asserted four claims for relief: 1. Dissolution and final accounting, 2. breach of fiduciary duty, 3. misrepresentation and fraud, and 4. constructive trust and injunction.

Davis's counter-claim for dissolution and final accounting of the LLC was resolved through the proceedings discussed in Sections 4 and 5, above.

51

On February 21, 2023, Davis served a Notice of Withdrawal in which he withdrew his claim for constructive trust and injunction, as well as his request for punitive damages.

What was left for determination in connection with the March 2023 evidentiary proceedings were Davis's counterclaims for breach of fiduciary duty and fraud.

**B.    Breach of Fiduciary Duty Counterclaim (Second Claim for Relief)**

The elements of a claim of breach of fiduciary duty are (1) the existence of a fiduciary relationship, (2) breach of a fiduciary duty, and (3) damage proximately cause by the breach. *Knox v. Dean*, 205 Cal. App. 4th 417, 432-33 (2012).

As discussed in Section 3, above, the evidence showed that under the terms of the Agreement, Rajaee was designated as the LLC's Manager. *See Section 3, ¶ 12*. The evidence also showed that Rajaee accepted the position as Manager of the LLC, and acted as the Manager and "tax matters partner" of the LLC from its inception through the date of the evidentiary hearing proceedings on Davis' Petition. *Id*.

As the manager of the LLC, Rajaee owed fiduciary duties to the LLC and to its Members. *Cal. Corp. Code § 17704.09(a), (b)*. Among those duties was (a) the duty to maintain proper books and records for the LLC, (b) the duty to refrain from using the LLC's revenues and other assets for his personal benefit to the detriment of the LLC, **(c)** the duty to substantiate the bona fides of any self-interested transactions between the LLC, on the one hand, and Rajaee or his companies, on the other, and **(d)** the duty to render a final accounting to Davis for the LLC as of year-end 2021. As discussed in Section 4, above, Rajaee breached all of these duties.

The damage to the LLC is that, due to Rajaee's mismanagement of the LLC's affairs, the LLC's finances were inextricably intertwined with the personal finances of Rajaee and the finances of Rajaee's various companies, for which Rajaee has been surcharged $7,670,151 as a liability Rajaee owes to the LLC for unsubstantiated transfers made to or for the benefit of Rajaee or his companies. The additional damage to the LLC was caused when Rajaee (a) improperly invaded the LLC's Wells Fargo account after Order No. 4 was issued, and (b) refused, and continues to refuse, to return the $900,000 Rajaee testified his simply took and has been holding in a bank account in Canada. *2022 RT 480-481*. Both elements of damages were addressed in the prior orders, which are included in Section 9 of this Final Award.

52

The damage to Davis is that, as a result of Rajaee's (a) mismanagement of the LLC's affairs and (b) defalcation of the $1,031,586.76 Rajaee caused to be wired out of the LLC's Wells Fargo Bank Account (Number 1756821128) on January 6 and 7, 2022, a chain of events was put in motion that led to the dissolution and forced closure of the LLC and resulted in Davis losing his net capital investment in the LLC ($537,127)[56] and resulted in lost opportunity damages ($329,430),[57] for a total compensatory loss of $866,557. *Hawes Testimony, March 20, 2023.*

### C. Misrepresentation and Fraud Counterclaim (Third Claim for Relief)

The gravamen of Rajaee's wrongdoing was his breach of the fiduciary duties he owed to the LLC and to Davis as the Manager and tax matters partner of the LLC. Included among those breaches were Rajaee's acts of concealment and misrepresentation concerning (a) the true state of affairs of the LLC's finances, and (b) his numerous self-dealing transactions. Those breaches have been extensively chronicled in Sections 3, 4 and 5, above. However, what bears noting in this section of the Final Award is the fact that Rajaee's fraud upon Davis was endemic to the relationship, and was put in motion from the very beginning – starting with the secret accounts Rajaee opened for the LLC in Canada and used to transfer monies between the LLC and Mobile Monster between August 2017 and April 2019, without Davis's knowledge or approval. These accounts and transfer transactions only first came to light during the course of the evidentiary hearing proceedings conducted in April 2022, and even at this late date of disclosure, Rajaee was unable or unwilling to (a) provide a complete set of bank statements, or (b) explain how these transactions – many of which were six figures - benefitted the LLC. *See Section 5(C)(1).* Davis testified that had he known of Rajaee's intentions to commingle the finances and affairs of the LLC with those of Rajaee and Mobile Monster, he never would have entered into the LLC relationship with Rajaee. Despite his many days of testimony, Rajaee had no plausible explanation for his actions or concealments.

---

[56] Davis's net capital investment in the LLC was calculated by Davis's expert – Michael S. Hawes, CPA – by adding Davis's total investments in the LLC ($787,240), minus the returns he received from the LLC in April 2019 ($175,113), July 2019 ($50,000) and July 2020 ($25,000.

[57] The lost opportunity loss was calculated by Davis's expert – Michael S. Hawes, CPA – using the Dow Jones Industrial Average to compute on a conservative basis what Davis's net capital investment in the LLC could have earned had they been invested in an investment which tracked the Dow Jones Industrial Average.

The damage to Davis is that he invested $787,240 in the LLC that he otherwise could have invested elsewhere. As a result of Rajaee's (a) mismanagement of the LLC's affairs and (b) defalcation of the $1,031,586.76 Rajaee caused to be wired out of the LLC's Wells Fargo Bank Account (Number 1756821128) on January 6 and 7, 2022, a chain of events was put in motion that led to the dissolution and forced closure of the LLC and resulted in Davis losing his net capital investment in the LLC ($537,127).[58] Davis is entitled to recover his net lost investment, plus lost opportunity damages ($329,430),[59] for a total compensatory loss of $866,557. *Hawes Testimony, March 20, 2023.*

This award is not in addition to the compensatory damages awarded on Davis's breach of fiduciary duty claim.

### 7. Rajaee's Claims Against Davis Are Denied Because Rajaee Failed to Carry His Burden of Proof on Any of His Asserted Claims

#### A. Introductory Statement

Rajaee's claims against Davis all sounded in tort and were set forth in his Amended Demand, dated August 4, 2021. The Amended Demand stated claims for defamation per se (first claim for relief), civil extortion (second claim for relief), intentional infliction of emotional distress (third claim for relief), intentional interference with contract (fourth claim for relief), intentional interference with prospective business advantage (fifth claim for relief), negligent interference with prospective business advantage (sixth claim for relief), and breach of fiduciary duty (seventh claim for relief).

Rajaee's Amended Demand also included an eighth claim for relief stated on behalf of the LLC against Davis for alleged breach of fiduciary duty. As discussed in Section 1, footnote 6, above, on or about December 15, 2022, counsel for the LLC submitted and served a notice of dismissal with prejudice of the Eighth Claim for Relief, and confirmed that dismissal during the March 20, 2023, hearing proceedings.

---

[58] Davis's net capital investment in the LLC was calculated by Davis's expert – Michael S. Hawes, CPA – by adding Davis's total investments in the LLC ($787,240), minus the returns he received from the LLC in April 2019 ($175,113), July 2019 ($50,000) and July 2020 ($25,000.

[59] The lost opportunity loss was calculated by Davis's expert – Michael S. Hawes, CPA – using the Dow Jones Industrial Average to compute on a conservative basis what Davis's net capital investment in the LLC could have earned had they been invested in an investment which tracked the Dow Jones Industrial Average.

54

This section of the Final Award addresses Rajaee's claims against Davis, all of which fail for lack of evidence. As discussed in Section 1, above, the evidentiary hearing proceedings conducted in April 2022 with respect to the final accounting on Davis' Petition for dissolution and final accounting, were significantly expanded, at Rajaee's request, to allow Rajaee to present evidence on a broad array of subjects, including (a) the transactions and events leading Rajaee and Davis to enter into a business relationship through the formation of the LLC, (b) Rajaee's operation of the LLC, (c) the transactions and events leading to the demise of the parties' relationship in February 2001, and (d) Rajaee's operation of the LLC after problems arose in his relationship with Davis. Despite the breadth of that evidence-taking and the opportunity to present additional evidence at the March 2023 evidentiary hearing proceedings, Rajaee failed to present any evidence supporting his tort claims against Davis. Rather, Rajaee's offerings were singularly focused on voicing his objections to the proceedings conducted in this arbitration.

### B.   Rajaee's Claim Against Davis for Defamation Per Se

Defamation per se occurs when a false statement is made to someone other than the plaintiff that is so inherently damaging to one's reputation, that the plaintiff need not prove that he or she suffered actual damages as a result of the statement. Statements that "tend to expose the plaintiff to public hatred, contempt, ridicule, aversion, or disgrace, and to induce an evil opinion of him in the minds of right-thinking persons and deprive him of their friendly intercourse or society" are the type of statement needed to establish a claim for defamation per se. *Jimeno v. Commonwealth Home Builders*, 47 Cal. App. 660 (1920); Cal. Civ. Code § 45; CACI No. 1702.

No where in his evidence did Rajaee identify any false statements purportedly made by Davis, nor did Rajaee identify any person(s) to whom Davis purportedly made false statements about Rajaee. The only evidence Rajaee offered about statements Davis made to others concerned Davis's efforts to marshal and administer the affairs of the LLC after dissolution was ordered pursuant to Order No. 4, and Davis's sharing of findings made in Order Nos. 4 and 5. Those statements were privileged under California Civil Code section 47. To the extent Davis may have repeated the contents of Order Nos. 4 and/or 5 to customers, vendors and/or employees of the LLC, those acts were likewise privileged. They were also necessary to countermand the actions taken by Rajaee to resist and frustrate Davis's implementation of the dissolution order, as discussed in Sections 4 and 5, above.

Rajaee's defamation claim is denied for lack of evidence.

55

### C.     Rajaee's Claim Against Davis for Civil Extortion

The lynch pin of a civil extortion claim is fear induced by the use of force or threat that results in the plaintiff giving up property to the defendant that he or she otherwise would not have parted with. *Flatley v. Mauro*, 39 Cal. App. 4th 299, 305 (2006); *Stenehjem v. Sareen*, 226 Cal. App. 4th 1404, 1414-1415 (2014); Cal. Pen. Code §§ 518-519.

During the course of the evidentiary proceedings conducted in this arbitration, there was no evidence that Davis used force or threats to obtain anything from Rajaee. To the contrary, the evidence showed that once Davis and Rajaee found themselves in disagreement about the management and affairs of the LLC in or about February 2001, Rajaee's response was to (a) lock Davis out of the LLC, (b) refuse to have any contact or communication with Davis except through attorneys, and (c) continue to use LLC monies to fund his lifestyle, including having the LLC rent a jet that was purchased by Rajaee through his wholly-owned company (RemotePreneurs) and giving himself a $175,000 raise in guaranteed salary after Davis filed the Sacramento Action seeking to dissolve the LLC.

The facts and circumstances concerning the relationship between Davis and Rajaee, as established by the evidence discussed in Sections 3, 4 and 5, above, simply do not support Rajaee's claim of extortion. Accordingly, Rajaee's extortion claim is denied for lack of evidence.

### D.     Rajaee's Claim Against Davis for Intentional Infliction of Emotional Distress

To establish a claim for intentional infliction of emotional distress, the complaining party must prove (1) extreme or outrageous conduct by the defendant, (2) intent by the defendant to cause harm by his or her extreme or outrageous conduct, (3) emotional distress suffered by the plaintiff, and (4) a causal connection between defendant's conduct and plaintiff's emotional distress. *Hughes v. Pair*, 46 Cal.4th 1035, 1050-1051 (2009); CACI No. 1600.

Rajaee failed to present evidence establishing *any* of the elements for a claim of intentional infliction of emotional distress, starting with the first required element: namely, extreme or outrageous conduct by Davis. There was no evidence of such conduct by Davis. In late 2020, early 2021, Davis and Rajaee had disagreements about how Rajaee was spending the LLC's money and managing the LLC's affairs. As discussed

56

in Section 6(C), above, once Davis and Rajaee found themselves in this disagreement, Davis told Rajaee that he wanted to part ways in or about February 2001. Rajaee's response was to (a) lock Davis out of the LLC, and (b) refuse to have any contact or communication with Davis except through attorneys. Rajaee presented no evidence of any extreme or outrageous conduct by Davis directed towards him. In fact, throughout the course of the parties' relationship through the LLC, there was very little evidence of any direct dealings between the two beyond short texts and emails, none of which contained extreme or outrageous messages.

Rajaee's emotional distress claim is denied for lack of evidence.

### E.    Rajaee's Claim Against Davis for Intentional Interference with Contract

To establish a claim for intentional infliction of emotional distress, the complaining party must prove (1) the existence of a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *Pacific Gas & Electric Co. v. Bear Stearns & Co.*, 50 Cal.3d 1118, 1126 (1990).

Rajaee failed to present evidence establishing *any* of the elements for a claim of intentional interference with contract, starting with the first required element: namely, the existence of a valid contract between Rajaee and a third party that was allegedly disrupted by Davis.

Rajaee's contract interference claim is denied for lack of evidence.

### F.    Rajaee's Claim Against Davis for Intentional Interference with Prospective Business Advantage

To establish a claim for intentional interference with prospective business advantage, the complaining party must prove (1) the existence, between the plaintiff and some third party, of an economic relationship that contains the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentionally wrongful acts designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm proximately caused by the defendant's action." *Roy Allan Slurry Seal, Inc. v. American Asphalt South, Inc.*, 2 Cal.5th 505, 512 (2017).

57

Rajaee failed to present evidence establishing *any* of the elements for a claim of intentional interference with contract, starting with the first required element: namely, the existence of an economic relationship between Rajaee and a third party that had the probability of producing future economic benefit to Rajaee.

Rajaee's interference with prospective business advantage claim is denied for lack of evidence.

### G.    Rajaee's Claim Against Davis for Breach of Fiduciary Duty

To establish a claim for breach of fiduciary duty, the complaining party must prove (1) the existence of a fiduciary relationship, (2) breach of a fiduciary duty, and (3) damage proximately caused by the breach. *Knox v. Dean,* 2 Cal. App. 4th 417, 432-433 (2012); CACI 4100; Cal. Civ. Code § 1573.

The parties do not dispute that, through their relationship as members of the LLC, they stood in a fiduciary relationship with one another. As discussed above, it was Rajaee – not Davis – who failed to fulfill his fiduciary duties. Rajaee failed to provide evidence of any sort of breach of duty by Davis.

Rajaee's breach of fiduciary duty claim is denied for lack of evidence.

### H.    The LLC's Claim Against Davis for Breach of Fiduciary Duty

As discussed above, the LLC voluntarily dismissed its claim against Davis for breach of fiduciary duty. However, during the course of the March 2023 evidentiary hearing proceedings and in its closing brief, the LLC requested that the turnover order directed to Rajaee concerning the $1,031,586 Rajaee caused to be wired out of the LLC's account at Wells Fargo Bank, Account Number 1756821128, on January 6 and January 7, 2022, into accounts maintained or controlled by Rajaee in Canada, be confirmed as an award in this Final Award. The LLC also requested that the surcharge liability assessed against Rajaee in the amount of $7,670,151.00 for excess distributions paid to or for the benefit of Rajaee or his companies be confirmed as a compensatory award against Rajaee in this Final Award.

58

**8.    Davis is Entitled to an Award of His Attorney's Fees and Costs as the Prevailing Party in this Arbitration**

**A.    Introductory Statement**

While California follows what is commonly referred to as "the American Rule," which provides that each party to a lawsuit must ordinarily pay its own attorney's fees and costs, *Trope v. Katz*, 11 Cal. 4th 274, 278 (1995), a prevailing party is entitled to recover its attorney's fees and costs when authorized by statute or contract." *Bear Creek Planning Committee v. Ferwerda*, 193 Cal. App. 4th 1178, 1185 (2011); *Cal. Civ. Code § 1717*.

Pursuant to California Code of Civil Procedure section 1021, where parties agree to the allocation of attorney's fees and/or costs, the measure and mode of such "compensation" – or cost shifting – is as provided in the parties' agreement. Case law construing section 1021 has held that parties to a contract may validly agree that the prevailing party may be awarded attorney's fees and/or costs in litigation between themselves, whether sounding in contract or tort. *Xureb v. Marcus & Millichap, Inc.*, 3 Cal. App. 4th 1338, 1342 (1992).

The Agreement governing Davis's and Rajaee's business relationship as members of the LLC contains a broadly stated arbitration clause requiring arbitration of "[a]ny action to enforce or interpret this Agreement, or to resolve disputes with respect to this Agreement between the Company and a Member, or between or among the Members." *Davis Exhibit 2, ¶ 11.2*. The Agreement goes on to provide that "[t]he parties will share equally all initial costs of arbitration, and that "[t]he prevailing party will be entitled to reimbursement of attorney fees, costs, and expenses incurred in connection with the arbitration." *Id.*

Based upon the wording of the parties' arbitration agreement, the award of attorney's fees and costs is mandatory – not discretionary – if there is a prevailing party.

An award of attorney's fees and costs to the prevailing party is also in order because, at the outset of this arbitration, the parties agreed at the scheduling conference conducted on September 8, 2023, that they both were seeking an award of their attorney's fees and costs in this matter if they were the prevailing party, even though their respective claims and counterclaims sounded primarily in tort. *See* Order No. 2, § I, ¶ 2.3.

59

EXHIBIT 3, PAGE 161

**B.    Davis is the Prevailing Party in this Arbitration and is Entitled to Reimbursement of His Attorney's Fees and Costs**

Davis is the prevailing party in this arbitration because he prevailed on all of his counterclaims and defeated all of Rajaee's claims, as discussed in Sections 3, 4, 5, and 7, above. As such, this Final Award thus represents a "simple, unqualified win" for Davis.

Davis was represented primarily by two counsel in this matter: Scott Carpenter, of Cummins & White, and Joseph W. Scalia. *See Exhibits 838 and 839.* According to his declaration (*Exhibit 838),* Mr. Carpenter was assisted by another attorney at his firm (Edward Farrell) and a paralegal (Shannon Thompson). In connection with the evidentiary hearing proceedings scheduled for March 2023, Davis included in his hearing exhibits declarations by Messrs. Carpenter and Scalia setting forth their respective firms' attorney's fees and costs as charged to Davis in this arbitration. *Exhibits 838 and 839.* Davis has thus submitted ample evidence through the declarations of Messrs. Carpenter and Scalia, and through the invoices attached thereto, to support Davis's contention that he incurred $785,845 in attorney's fees[60] and $14,440.55 in costs[61] in successfully prevailing in this arbitration. At the March 20, 2023, hearing, Davis testified that he has paid all of the law firms' invoices in full, and the invoices attached to the declarations corroborate such payments as having been made.

The only objection raised by Rajaee to the attorney's fees and costs set forth in the declarations of Messrs. Carpenter and Scalia was his concern/objection that those charges included legal services rendered in connection with proceedings in one or more of the related state court actions. In response to Mr. Rajaee's objection, the Arbitrator ordered Messrs. Carpenter and Scalia to submit and serve supplemental declarations detailing and culling out any time charges or costs related to the state court proceedings. Such declarations were submitted and served on or about March 31, 2023, and show the following:

---

[60]    This figure is the sum of the attorney's fees requested by Mr. Carpenter's firm ($501,311.50) and the attorney's fees requested by Mr. Scalia's firm ($284,533.50). *Exhibit 838 and 839.*

[61]    This figure is the sum of the costs requested by Mr. Carpenter's firm ($13,970.55) and the costs requested by Mr. Scalia's firm ($470). *Exhibit 838 and 839.*

60

EXHIBIT 3, PAGE 162

a.     Mr. Carpenter's firm's invoices attached to his original declaration included $68,548.50 in time charges and $1,849.41 in costs related to legal services rendered in connection with one or more of the related state court actions.

b.     Mr. Scalia's firm's invoices attached to his original declaration included $11,919 in time charges and $470 in costs related to legal services rendered in connection with one or more of the related state court actions.

Mr. Rajaee's objection to the inclusion of time charges and costs for legal services rendered to Davis in connection with the related state court proceedings is sustained. Accordingly, the time charges and costs discussed in the March 31, 2023, declarations of Mr. Carpenter and Mr. Scalia are not eligible for reimbursement as attorney's fees and costs incurred in connection with this arbitration.

**C.     Davis is Entitled to an Award of $717,498.64 as Reasonable Attorney's Fees and Costs in this Arbitration**

The generally accepted manner for determining what qualifies as "reasonable" attorney's fees is the "lodestar" method. *Ketchum v. Moses*, 24 Cal. 4th 1122, 1131-1132 (2001). This is a method whereby a determination is made with regard to (a) what constitutes a reasonable number of hours for those activities found to be compensable, and (b) what constitutes a reasonable hourly rate.[62] The reasonable number of hours is then multiplied by the reasonable hourly rate to yield the amount of the attorney's fees to be awarded. *Id.; Lunada Biomedical v. Nunez*, 230 Cal. App. 4th 459, 486 (2014). What constitutes a reasonable attorney's fees award in a particular case is a fact-specific inquiry. In this regard, the California Supreme Court has identified a number of factors that may be considered. *PLCM Grp. v. Drexler*, 22 Cal. 4th 1084 (2000). Those factors include:

---

[62]   According to the declarations of Messrs. Carpenter and Scalia, their hourly rates are $480 to $545, for Mr. Carpenter during the life of this matter, and $435, for Mr. Scalia. Mr. Carpenter and Mr. Scalia have over 20 years of business litigation experience. The Arbitrator is familiar with the rates being charged by experienced business litigators in Southern California. Those rates range between $400 per hour and $1,000 per hour. Accordingly, the rates charged by Messrs. Carpenter and Scalia for their services in this arbitration are within range at the low end of the rate spectrum, and thus reasonable. The same is true for the attorney (Edward Farrell, class of 2008) and the paralegal (Shannon Thompson, 20+ years of experience). Mr. Farrell billed at the rate of $495 per hour and Ms. Thompson billed at the rate of $290 per hour. Both are within range of the rate spectrum for such support services.

61

a.  the nature of the litigation

b.  the difficulty / complexity of the case

c.  the amount in controversy

d.  the skill required to handle the case

e.  the skill actually employed in the case

f.  the attention given to the case

g.  the success or failure of the attorneys' efforts

*Id.* at 1096.

All of the above factors were in play in this arbitration:

a.    The nature of the litigation was that it involved disputes between members of a limited liability company concerning financial affairs of the company where (a) one member (Davis) had no access to the LLC's books and records, and (b) one member (Rajaee) had total control over the LLC's books and records and either reported inaccurately or failed or refused to report at all concerning the company's financial affairs and dealings. As such, the nature of the dispute was that it was essentially a forensic accounting dispute between the LLC's members.

b.    The subject matter of the dispute was difficult / challenging because it required the parties' counsel (and the Arbitrator) to delve into several areas, including the customs and practices of a software development company, the relationships between the LLC and Rajaee's various companies, and the legal and tax requirements for tracking legitimate business expenses.

c.    As discussed in Sections 4 and 5, the amounts in controversy were significant and involved tracing the millions of dollars that flowed out of the LLC to Rajaee or one of his companies.

62

      d.    The skill required to handle the case (on both sides of the dispute) was high with regard to legal knowledge and trial experience.

      e.    The skill actually employed in the case was high on both sides of the dispute in terms of the legal knowledge and trial experience of the members of each side's legal team.

      f.    The attention given to the case was significant due in part to the expedited nature of the bifurcated proceedings concerning Davis's Petition and the exigencies created when Rajaee violated Order No. 4 and refused to cooperate in the final accounting.

      g.    The efforts of Davis's legal team were successful.

Based on the foregoing, Davis is entitled to recover from Rajaee his reasonable attorney's fees and costs in the amount of $717,498.64, which figure is the sum of the difference between:

      a.    the original attorney's fees requested by Mr. Carpenter of $501,311.50, less the $68,548.50 in time charges related to legal services rendered in connection with one or more of the related state court actions;

      b.    the original attorney's fees requested by Mr. Scalia of $284,533.50, less the $11,919 in time charges related to legal services rendered in connection with one or more of the related state court actions;

      c.    the original costs requested by Mr. Carpenter of $13,970.55, less the $1,849.41 in costs related to legal services rendered in connection with one or more of the related state court actions; and

      d.    the original costs requested by Mr. Scalia of $470, less the $470 in costs related to legal services rendered in connection with one or more of the related state court actions.

EXHIBIT 3, PAGE 165

9.     **Final Award**

A.     **Dissolution of the LLC**

1.     Davis owns 95.308% of the capital interest in the LLC, and Rajaee owns 4.692% of the capital interest in the LLXC. Davis thus owns the majority of the Percentage Interests in the LLC for voting purposes and has the right to elect to dissolve the LLC without the consent and over the objection of Rajaee. Through his filing of the Petition, Davis exercised his right to dissolve the LLC, and dissolution of the LLC is ordered / awarded, effective as of January 6, 2022.

2.     Alternatively, protective dissolution of the LLC under Corporations Code section 17707.03(b)(4) is appropriate because it was demonstrated that management of the LLC was deadlocked. Based upon Davis' request that the LLC be dissolved and the finding of deadlock and internal dissension within the management of the LLC, dissolution of the LLC is ordered / awarded, effective as of January 6, 2022, pursuant to paragraph 9.1 of the Agreement and Corporations Code sections 17707.01(a) and 17707.03(b)(4).

3.     In accordance with paragraph 9.2 of the Agreement, the LLC is not to engage in any further business other than that necessary to wind up the business and affairs of the LLC.

4.     Davis, and only Davis or his designee, shall be responsible for managing, overseeing, and completing the dissolution of the LLC from January 6, 2022, forward, and only Davis, or his designee, shall have the authority to take those actions necessary to accomplish the dissolution of the LLC in accordance with the provisions of Order No. 4, attached hereto as Attachment 1 and incorporated into this Final Award by this reference.

5.     Rajaee is ordered removed as Manager of the LLC, effective as of January 6, 2022, and only Davis or his designee shall replace Rajaee as Manager of the LLC.

64

**B.    Compensatory Award in Favor of the LLC for Rajaee's Violation of Order Nos. 4 and 5**

1.    Rajaee violated Order No. 4 when he wrongfully and without authority transferred the sum of $1,031,586 out of the LLC's account at Wells Fargo Bank, Account Number 1756821128, on January 6 and January 7, 2022, into accounts maintained or controlled by Rajaee in Canada. Only Davis or his designee, had the authority to access, disburse funds from, open and close bank and other financial accounts belonging to or standing in the name of the LLC from approximately 2:00 p.m. on January 6, 2022, forward.

2.    Pursuant to Order No. 5, attached hereto as <u>Attachment 2</u> and incorporated into this Final Award by this reference, Rajaee was ordered to immediately return and/or replenish to the LLC, care of Davis, the $900,000.00 he transferred to himself at approximately 11:00 p.m. on January 6, 2022, as well as the $131,586.76, transferred out as an "international money transfer debit" on January 7, 2022, which Rajaee admitted was wired to his company (Mobile Monster).

3.    Rajaee has failed and refused to return the sum of $1,031,586 to the LLC, as ordered. Accordingly, TopDevz LLC is entitled to a compensatory damages award against Ashkan Rajaee in the amount of $1,031,586.

**C.    Final Accounting and Surcharge Liability Assessed Against Rajaee in Favor of the LLC**

1.    Respondent Tyler B. Davis' final accounting and reconciliation of the financial affairs of TopDevz, LLC, based on the March 31, 2022, accounting – *Exhibits 823 and 824* – is hereby approved and affirmed, and TopDevz, LLC is ordered to be finally dissolved.

2.    Davis is charged with both the responsibility and authority to continue with the wind-up of the LLC's affairs, including but not limited to the collection of receivables, the settlement and payment of contingent liabilities, the collection of the surcharge amount owed by Ashkan Rajaee, and making distributions of profits, if any, to members in accordance with the terms of the Agreement.

65

3.    The only outstanding member loan owed by TopDevz LLC is the $269,000 loan it received from Tyler B. Davis 2022. The LLC's loan indebtedness to Davis shall accrue interest at the rate of 6% per annum until paid in full.

4.    There is no evidence of an outstanding loan owed by TopDevz, LLC to Ashkan Rajaee. The validity and enforceability of the purported loan agreement between the TopDevz, LLC and Ashkan Rajaee (*Exhibit 212*) is denied for lack of evidence of a consideration having flowed from Ashkan Rajaee to TopDevz LLC.

5.    Ashkan Rajaee is hereby surcharged in the amount of Seven Million Six Hundred Seventy Thousand One Hundred Fifty-One Dollars (US $7,670,151.00) for excess distributions paid to or for the benefit of Ashkan Rajaee or his companies, which sum Ashkan Rajaee is obligated and hereby ordered to pay to the TopDevz, LLC in order to bring his negative capital account to zero.

6.    Ashkan Rajaee is hereby ordered to return to TopDevz, LLC, care of Tyler B. Davis, the $900,000.00 he is holding in a bank account in Canada.[63] Upon return of those funds, Ashkan Rajaee's surcharge liability shall be reduced by the dollar amount Ashkan Rajaee returns to the LLC.

7.    In winding up the affairs of TopDevz, LLC, Tyler B. Davis is instructed to follow the terms of the Agreement, as well as the orders issued in this arbitration and this Final Award. Distributions of profits, if any, shall be in accordance with the members' Percentage Interests, as determined by this Final Award.

---

[63]    According to testimony Rajaee gave on April 6, 2022, he "has not spent one cent of [the $900,000]." *2022 RT 503.*

66

EXHIBIT 3, PAGE 168

**D.    Compensatory Damages Award In Favor of Davis on Davis's Tort Counterclaims**

Davis is the prevailing party on his breach of fiduciary duty and misrepresentation / fraud claims against Rajaee. As such, Davis is entitled to an award of compensatory damages in the amount of Eight Hundred Sixty-Six Thousand Five Hundred Fifty-Seven Dollars (US $866,567.00).

**E.    Denial of Rajaee's Claims in Their Entirety for Lack of Evidence**

Rajaee's counterclaims for defamation per se (first claim for relief), civil extortion (second claim for relief), intentional infliction of emotional distress (third claim for relief), intentional interference with contract (fourth claim for relief), intentional interference with prospective business advantage (fifth claim for relief), negligent interference with prospective business advantage (sixth claim for relief), and breach of fiduciary duty (seventh claim for relief) are denied in their entirety.

**F.    Award of Attorney's Fees and Costs to Davis as the Prevailing Party in this Arbitration**

1.    Davis is the prevailing party on his counterclaims against Rajaee and on Rajaee's claims against Davis. Accordingly, Davis is entitled to an award of attorney's fees and costs in the amount of Seven Hundred Seventeen Thousand Four Hundred Ninety-Eight Dollars and Sixty-Four Cents (US $717,498.64).

2.    Additionally, the administrative fees of the International Centre for Dispute Resolution totaling US $37,950.00, and the compensation of the Arbitrator totaling US $109,625.00 shall be borne by Rajaee. Therefore, Rajaee shall reimburse Davis the sum of US $119,350.00, representing that portion of said fees in excess of the apportioned cost previously incurred by Davis.

**G.    Miscellaneous**

1.    Within thirty (30) days from the date of transmittal of this Final Award to the parties, Rajaee shall pay:

a.    to the LLC, the sum of Seven Million Six Hundred Seventy Thousand One Hundred Fifty-One Dollars (US $7,670,151.00); and

67

      b.    to Davis, the sum of One Million Seven Hundred Four Thousand Four Hundred Fifteen Dollars and Sixty-Four Cents (US $1,704,415.64), which represents US $866,567.00 in compensatory damages, US $717,498.64 in attorney's fees and costs, and US $119,350.00 in arbitration administration fees and arbitration compensation.

      2.    This Final Award is in full settlement of all claims, counterclaims and requests for relief submitted in this arbitration. All claims, counterclaims and requests for relief not specifically addressed above are hereby denied in their entirety.

      3.    The issuance of this Final Award concludes the proceedings in this arbitration.

      I hereby certify that, for the purpose of Article I of the New York Convention of 1958, on the Recognition and Enforcement of Foreign Arbitral Awards, this Final Award was made in the City of San Diego, State of California, United States of America.

Dated: 12 May 2023.

Rebecca Callahan, Arbitrator

      I, the undersigned Arbitrator, do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument which is my Award.

Dated: 12 May 2023.

Rebecca Callahan, Arbitrator

68

EXHIBIT 3, PAGE 170

# ATTACHMENT 1

INTERNATIONAL CENTRE FOR DISPUTE RESOLUTION
International Arbitral Tribunal

In the Matter of the Arbitration Between:

Ashkan Rajaee and TopDevz, LLC, a California Limited Liability Company,

Claimants and Counter-Respondents,

- vs -

Tyler Davis,

Respondent and Counter-Claimant

ICDR Case No. 01-21-0001-9983

<u>ORDER NO. 4 – ORDER ON RESPONDENT'S PETITION FOR DECREE OF DISSOLUTION</u>

1.   **Introduction**

Pursuant to the Commercial Arbitration Rules of the American Arbitration Association (AAA), as amended and effective October 1, 2013 (the "Commercial Rules"), and by request and submission of the parties, a hearing was held on December 1, 2 and 13, 2021 for the purpose of hearing and deciding a threshold issue: namely, whether grounds or cause exist for ordering dissolution of the California limited liability company known as TopDevz LLC ("the LLC"), as requested by Respondent Tyler Davis ("Davis" or "Respondent") in his petition for dissolution ("the Petition"). Appearing at the hearing on the Petition were Scott R. Carpenter, of Cummins & White LLP, appearing on behalf of Respondent, and Jordan Mathews, of Weinberg Gonser LLP, appearing on behalf of Claimant Ashkan Rajaee ("Rajaee" or "Claimant"). Also present during the course of the hearing were Davis and Rajaee. The hearing proceedings were recorded and transcribed by a certified court reporter. The transcript of those proceedings is part of the record in this arbitration.

The parties agreed, through their respective counsel, to an evidentiary hearing where Messrs. Davis and Rajaee would be allowed to testify in favor and against dissolution, respectively, and be subjected to cross-examination by the other side.

In advance of the hearing, both Davis and Rajaee provided briefs on the issues to be addressed at the hearing. Additionally, the parties submitted declarations with exhibits. At the hearing, the parties submitted hearing exhibits in the form of documentary and electronic (video) evidence. The parties also submitted testimonial evidence from Rajaee, Davis and Michael S. Hawes ("Hawes"), a certified public accountant who provided opinion testimony on

EXHIBIT 3, PAGE 172

behalf of Davis. The parties' counsel made opening statements and closing arguments at the hearing and then concluded the matter with closing briefs. The record of the proceedings concerning Davis's Petition was concluded on January 4, 2022, with the submission of the reporter's transcript for the third day of hearing (December 13, 2022).

The issues raised by the Petition are essentially two-fold: 1. Does Davis have the right to dissolve the LLC without Rajaee's consent? 2. If not, do grounds exist to order an involuntary dissolution over Rajaee's objection? While the parties' respective underlying claims and counterclaims contain numerous recriminations, it is not necessary to reach the merits of those claims in order to decide the narrow issues raised by the Petition. Ultimately, on the underlying claims and counterclaims, one party will be declared "right" and the other declared "wrong," but in the meantime and thereafter must Rajaee and Davis continue to do business together in the LLC?

2.      **Arbitral Jurisdiction**

On May 9, 2017, Rajaee and Davis entered into an Operating Agreement for TopDevz, LLC ("Agreement"). It is undisputed that the Agreement governs the relationship between Rajaee and Davis as members of TopDevz, LLC ("the LLC"). The validity and enforceability of the Agreement were not disputed in this matter. To the contrary, both parties have relied on various provisions of the Agreement in support of their respective claims and counterclaims, as well as their arguments concerning the Petition.

Included in the Agreement is a section providing for binding arbitration of disputes that might thereafter arise between the parties. Paragraph 11.2 of the Agreement provides as follows:

> Any action to enforce or interpret this Agreement, or to resolve disputes with respect to this Agreement between the Company and a Member, or between or among the Members, will be settled by arbitration in accordance with the rules of the American Arbitration Association. Arbitration will be the exclusive dispute resolution process in the state of California, but arbitration will be a nonexclusive process elsewhere. Any party may commence arbitration by sending a written demand for arbitration to the other parties. The demand will set forth the nature of the matter to be resolved by arbitration. The Manager will select the place of arbitration. The substantive law of the state of California will be applied by the arbitrator to the resolution of the dispute. The parties will share equally all initial costs of arbitration. The prevailing party will be entitled to reimbursement of attorney fees, costs, and expenses incurred in connection with the arbitration. All decisions of the arbitrator will be final, binding, and conclusive on all parties. Judgment may be entered on any such decision in accordance with applicable law in any court having jurisdiction of it. The arbitrator (if permitted under applicable law) or the court may issue a writ of execution to enforce the arbitrator's decision.

2

*Davis Exhibit 2, ¶ 11.2.*

This matter concerns disputes between Rajaee and Davis regarding their respective rights and obligations under the Agreement and as members of the LLC. But for the Agreement and their relationship as co-members of the LLC, they would owe no duties to each other, and may not have otherwise had any dealings or interactions with one another after their respective litigation cases with Surge, described in Section 3(1), below.

Rajaee and the LLC voluntarily submitted their claims and disputes with Davis to arbitration by filing a demand for arbitration with the American Arbitration Association ("the AAA") on or about February 24, 2021. Thereafter, Davis voluntarily appeared in the arbitration without objection, and filed an answering statement, with affirmative defenses, and a counterclaim. Rajaee filed an answer to the counterclaim with affirmative defenses. Thereafter, Davis filed the Petition, and the hearing on the Petition was scheduled in coordination with and by agreement of the parties, through their respective counsel.

Under California law, arbitrators have authority to make orders which provide for equitable relief. *Mercuro v. Superior Court*, 96 Cal. App. 4th 167, 177-178 (2002). California case law has recognized that limited liability company dissolution disputes may be arbitrated. *See, Malek Media Group LLC v. AXQG Corp.*, 58 Cal. App. 5th 817 (2020) (case involving irreconcilable differences between members and various breaches of the parties' operating agreement).

Based upon the foregoing, as well as the appearances and submissions made by the parties during the course of the hearing on the Petition, the proceedings leading up to the hearing on the Petition, and the matters submitted to the Arbitrator during the course of this arbitration, all without objection to the Arbitrator's jurisdiction, it is the Arbitrator's determination that the parties' respective claims, defenses and requests for relief, including the relief requested by Davis in his Petition, and Rajaee's opposition thereto, are subject to and were submitted voluntarily to binding arbitration before the undersigned arbitrator.

**3.    Facts Pertinent to the Decision on the Petition**

The facts pertinent to the decision on the Petition are as follows:

1.    When Rajaee and Davis decided to go into business together, they had limited experience working together through their respective relationships with a company called Surge. Rajaee provided services and consulting to Surge through Mobile Monster. Davis was an investor in Surge. They met through a Surge management meeting in 2016. Their common thread was that they both parted ways with Surge, and ended up suing Surge for different reasons, and being represented by the same attorney in those litigation matters. *RT 410-420 and 423-424.*

3

2.    When Rajaee and Davis decided to go into business together, they engaged an attorney to formalize their business relationship. *RT 428.* That relationship took the form of a limited liability company (the LLC) as the vehicle through which they would engage in a software development and consulting business, with a governing operating agreement that they both signed as co-members (the Agreement). *Davis Exhibit 2.*

3.    The Agreement is an integrated agreement and expressly provides that its terms can only be modified or amended "by a written instrument executed by all of the parties." *Davis Exhibit 2, ¶¶ 13.1 and 13.11.* Both Rajaee and Davis testified that no such written instrument exists. *RT 199-200 and 239.*

4.    With respect to Rajaee's and Davis's initial capital contributions and ownership interests in the LLC, the Agreement states that their respective capital contributions are "TBD", and Exhibit B to the Agreement was left blank. *Davis Exhibit 2.* However, absent an agreement to the contrary — which was not shown to exist in this case — the terms of the Agreement provide for voting rights and the allocation of profit and losses to follow the capital contributions of the LLC's members. *Davis Exhibit 2, ¶¶ 4.1, 5.2, 5.3, 5.4 and 7.1.*

5.    Rajaee testified that it was his requirement that Davis be responsible for capitalizing the LLC venture because he wanted to "de-risk" himself — i.e., he did not want to be at risk in the new venture. *RT 421.* Rajaee and Davis agreed that the capital investment in the LLC would be $750,000. *Id.* Davis invested the initial $750,000 to start the LLC. *RT 233-234.* That capital investment is recognized in the LLC's tax returns. *Davis Exhibits 8, 9, 10 and 11.* This was consistent with Rajaee's testimony that he expected Davis to contribute all of the capital because he did not want to be at risk in the new LLC venture. Additionally, Rajaee testified that he perceived himself as "bringing all the value to the company" through his knowledge about how to generate leads and close deals. *RT 421-422.* Rajaee acknowledged that he was not going to be contributing uncompensated sweat equity to the LLC; that it was agreed at the outset that he would be paid a guaranteed salary of $200,000.00 per year. *RT 422.* The LLC has paid Rajaee for his services, as reflected on the LLC's profit and loss statements, tax returns and bank statements. *Davis Exhibits 3, 4, 5, 6, 7, 8, 9, 10, 11 and 21.*

6.    A "capital call" for $76,000 was made by Rajaee in November 2020, and Rajaee and Davis contributed approximately $38,760 and $37,240, respectively, to the LLC. *Rajaee Exhibit 65, Davis Exhibits 11 and 21.* While these contributions were recognized on the LLC's 2020 tax return as capital contributions, there was no change to the capital structure of the LLC in terms of the K-1s for Davis and Rajaee. *Davis Exhibit 11.* Davis was still reported as having a 100% capital interest in the LLC, and Rajaee was still reported as having a 0% capital interest in the LLC. *Id.*

7.    For tax years 2017, 2018, 2019 and 2020, the LLC's tax returns, as filed with the IRS, have reported that Davis owns 100% of the capital in the LLC. *Davis Exhibits 8, 9 10 and 11.* Those returns were prepared by an accounting firm selected by Rajaee, and were prepared under his direction as the "tax matters partner."

4

8.     Rajaee testified that he never paid "attention to all of the details" in the tax returns; that he just looked at the line items for "how much revenue we did, how much expenses we had, how much taxes we have to pay," and that "[e]verything else is handled by [the accountant] in consulting with them." *RT 93*. As pertains to how profits and losses were allocated between Rajaee and Davis, Rajaee testified that he has no understanding of why his profit share allocation went from 0% to 6.5% in 2017 and from 6.5% to 51% in 2018; that he does not recall having any discussions with the accountant or Davis about that; that he "put full trust in [the accountant] to account for everything," and simply "followed [the accountant's] advice on where the numbers landed." *RT 81-90*. Davis testified that other than the email exchange in February 2020, discussed in Section 4(A), below, he never discussed the capital structure of the LLC with Rajaee or the LLC's accountant. *RT 236-237*. No one from the LLC's accounting firm – Lavine, Lofgren, Morris & Engelberg LLP – was called to testify in the proceedings on the Petition.

8.     Rajaee testified that he covered a number of the LLC's operating expenses through charges put on his personal American Express card and through monies paid to or for the benefit of the LLC. To the extent that such expenditures or contributions were in fact made and were not reimbursed, they were not treated as capital contributions according to the LLC's tax returns. *Davis Exhibits 8, 9, 10 and 11*. In this regard, the profit and loss statements and LLC bank statements show that large sums of money have routinely been transferred out of the LLC to Rajaee or Mobile Monster. *Davis Exhibits 3, 4, 5, 6, 7 and 21*. The bona fides of these transfers and withdrawals are matters to be decided at another time – the evidentiary hearing on the merits of the parties' respective claims and counterclaims - and do not need to be decided in making a decision on the Petition.[1]

9.     The Agreement specifically recognizes Rajaee and Davis as the "Initial Members" of the LLC. *Davis Exhibit 2, ¶ 1.24*.

10.    The Agreement defines a "Membership Interest" as "a Member's entire interest and rights in the Company, collectively, including the Member's Economic Interest, any right to Vote or participate in management, and any right to information concerning the business and affairs of the Company." *Davis Exhibit 2, ¶ 1.34*.

---

[1]   Rajaee contends that he has "loaned" money to the LLC for which he has not been repaid. Rajaee's testimony about the amount of the LLC's alleged loan indebtedness varied between $700,000 and $1,700,000. *RT 111-116*. Whether such loan indebtedness in fact exists is a matter to be decided at another time - the evidentiary hearing on the merits of the parties' respective claims and counterclaims. The only relevance here is that it shows that, consistent with Rajaee's stated initial position that he did not want to be at risk in the LLC venture, he has viewed his infusions of cash to help fund the LLC's operations as loans – not capital – and has maintained that position in these proceedings on the Petition.

5

11.     Under the terms of the Agreement, Rajaee was designated as the LLC's Manager. *Davis Exhibit 2. ¶ 2.9.* Rajaee has acted in the capacity of Manager and "tax matters partner" of the LLC since its inception, and is currently acting in those capacities with regard to the transactions he has entered into and decisions he has made for the LLC since the parties' disputes arose in February 2021.[2]

12.     The Agreement requires the Manager to maintain accurate books and records for the LLC. *Davis Exhibit 2, ¶ 6.3.*

13.     Rajaee testified that there have been lapses in the LLC's accounting as relates to the way expenses charged on Rajaee's personal American Express card or advanced by Mobile Monster have been booked in the LLC's records such that the LLC's accountants have told him that it is not possible to tell, by looking at the LLC's books and records, what the particular expenses of the LLC are; that the transactions are "all overlapping;" and that it is not possible to produce an accurate balance sheet based upon the data maintained in the LLC's accounting records. *RT 121.* Moreover, a cursory review of the profit and loss statements in comparison to the LLC's bank statements suggests that the two do not tic-and-tie. For example, the "guaranteed" payments to Rajaee through October 2021 total approximately $671,000 according to the profit and loss statements, but the debits for withdrawals and transfers made to Rajaee, according to the LLC's bank statements, total approximately $2,800,000. *Davis Exhibits 3, 4, 5, 6, 7 and 21.* For another example, the LLC's bank statements for February 2021 shows a $447,723.80 transfer to Rajaee coded as "Loan Payoff Balance to AR," but Rajaee testified that he is unable to produce a balance sheet for the LLC; that he is only just now working with the LLC's accountants to try to create an accounting with regard to what monies he advanced to the LLC that have not been reimbursed; and that he believes he is still owed over $1,000,000. *RT 115-121.*

14.     The Agreement requires that the books of the LLC "be closed and examined" at the end of each fiscal year, and that the LLC's certified public accountant issue an annual statement "reflecting the financial condition of the Company and its Profits or Losses." Such annual reports are to "be given to all Members," and are to include "[a] balance sheet and income statement, and a statement of changes in the financial position of the Company" and

---

[2]   E.g., having the LLC lease a jet purchased by Rajaee through his wholly-owned company (Remote Preneurs); having the LLC enter into a charge or debit card relationship with a company in which Rajaee has a 95% interest (SpendHub); giving himself a raise in guaranteed salary; and having the LLC enter into an office lease near his home. *RT 156, 160-164, and 170-171.* Whether such transactions and decision making constitute "self-dealing" and/or "mismanagement" of the LLC are matters to be decided at another time - the evidentiary hearing on the merits of the parties' respective claims and counterclaims. The only relevance here is that it explains the reason for the deep divide and discord that exists between Rajaee and Davis. Davis believes that the transactions were improper because they were done without his advance approval. Rajaee believes that the challenged actions / decisions qualify as "ordinary course" transactions because they were part of his marketing campaign to generate leads, close deals and build relationships for the LLC. *RT 191.*

6

"[a] statement showing the Capital Account of each Member as of the close of the fiscal year and the distributions, if any, made to each Member during the fiscal year." *Davis Exhibit 2, ¶ 6.4.*

15. While the LLC has engaged an outside accounting firm since its inception, the LLC does not maintain a balance sheet and no annual reports have ever been prepared or issued to the LLC's members. *RT 117-118 and 191-192.*

16. Article V of the Agreement sets forth the terms related to management of the LLC, and provides for the business to be managed by Rajaee as its designated / named Manager. *Davis Exhibit 2, ¶¶ 5.1 and 5.4.*

17. Notwithstanding the Manager's broad authority to run the day-to-day affairs of the LLC, the Agreement prohibits the Manager from taking certain actions without the consent of a "Majority of Members." *Davis Exhibit 2, ¶ 5.4.* "Majority of Members" is defined as "a Member or Members whose Percentage Interests represent more than 50 percent of the Percentage Interests of all Members." *Davis Exhibit 2, ¶ 1.28.* "Percentage Interest" is defined as "a fraction, expressed as a percentage, the numerator of which is the total of a Member's Capital Account and denominator of which is the total of all Capital Accounts of all Members." *Davis Exhibit 2, ¶ 1.39.*

18. The LLC is a services business that generates revenue through services provided by software developer consultants hired by the LLC to work on projects for clients. The main way in which the LLC finds its clients is through leads generated by Mobile Monster, Inc., a Canadian company owned 100% by Rajaee ("Mobile Monster"). *RT 111.* Mobile Monster also employs staff and several groups of contractors that work to service the LLC's customers. "All of that payroll, all of those contractor payments, all of the travel expenses, all of the client visits that we do or marketing gets captured inside of Mobile Monster, and then Mobile Monster gets reimbursed from [the LLC] for the expenses it is incurring." *Id.*

19. Up until February 2021 – when the disputes arose between Rajaee and Davis – Rajaee generally consulted with Davis on all matters and the LLC operated on a consensus basis between the two members. *RT 187-189.*

20. After the "blow up" telephone conversation between Davis and Rajaee on February 8 or 9, 2021, Rajaee had Davis removed from the LLC's bank account and has not communicated with Davis, except through counsel. *RT 208; Davis Exhibit 19.* In this regard, Rajaee testified that "any questions that I need to answer that relate to my communications with [Davis] I find kind of a waste of time, because I don't talk to him. I've only talked to him, if I had to, through counsel." *RT 165.* Rajaee testified that he has not spoken to Davis since February 2021. *RT 72.*

7

21.    In this arbitration, Rajaee and Davis are both pursuing claims against the other based on various allegations of wrongdoing – not just breach of the Agreement. In stating their respective claims, they have used such terms as "fraud," "self-dealing," "extortion," "reckless," "criminal conduct," "embezzlement," "defamation," etc. It is not necessary to resolve or reach the merits of the parties' respective claims and counterclaims in deciding the narrow issues raised by the Petition. Those claims and issues are for determination at another time: namely, the evidentiary hearing on the merits of the parties' respective claims and counterclaims.

22.    Outside of this arbitration, there are four separate court proceedings pending that relate to the disputes in this arbitration: one initiated by Davis against Rajaee,[3] one initiated by Mobile Monster against Davis,[4] one initiated by Rajaee against a former employee of the LLC (Siarra Wood),[5] and one initiated by two former employees of the LLC against Rajaee.[6] *Order No. 2, ¶ 2.4; Davis Request for Judicial Notice.*

### 4.    Rulings on the Petition

#### A.    Davis has the right to dissolve the LLC because he holds a majority of the Percentage Interests in the LLC.

The operating agreement of a limited liability company governs, among other things, (a) "[r]elations among the members as members and between the members and the limited liability company"; and (b) "[t]he rights and duties under [the Act] of a person in the capacity as manager." Cal. Corp. Code § 17701.10(a)(1), (a)(2). Dissolution is a remedy that is authorized by Corporations Code section 17707.01.

Under paragraph 9.1 of the Agreement, the LLC will be dissolved on "[t]he written agreement of a Majority of Members to dissolve the Company." Davis claims to have made the election / decision to dissolve the LLC through his filing of a complaint for dissolution in the Sacramento Superior Court ("the State Court Action") and through his counterclaim for dissolution in this arbitration, as well as his filing of the Petition. The question is whether or not Davis holds more than 50% of the Percentage Interests in the LLC, and has the right to dissolve the LLC without Rajaee's consent and over his objection. The evidence in this matter supports a determination of "yes." Davis has the right to dissolve the LLC without Rajaee's consent and

---

[3]    *Tyler Davis v. Ashkan Mirfakhr-Rajaee, et al.*, Superior Court of the State of California, County of Sacramento, Case No. 34-2021-00301817.

[4]    *Mobile Monster v. Tyler Davis*, Superior Court of the State of California, County of Sacramento, Case No. 34-2021-00301817.

[5]    *Ashkan Rajaee v. Siarra Wood*, Superior Court of the State of California, County of San Diego, Case No. 37-2021-00008947.

[6]    *Sarah Blanchette and Siarra Wood v. Ashkan Rajaee*, Superior Court of Justice, Ontario (CANADA), Case No. CV-21-00086316-000.

8

over his objection because (a) Davis holds a majority of the Percentage Interests in the LLC, as defined by the Agreement, and (b) the Agreement provides that the LLC may be dissolved by agreement of the "Majority of Members."

While the LLC's record keeping appears to have been less than perfect, two things are clear: (1) only Davis contributed capital to the start-up of the LLC, and (2) the LLC's *outside* accountants have reported on capital structure of the LLC on the LLC's annual tax returns for 2017, 2018, 2019 and 2020, which returns were signed under penalty of perjury by Rajaee in his capacity as the LLC's "tax matters partner." All of the returns, without exception, state that Davis has a 100% capital interest in the LLC.[7] Under the definition of "Majority of Members" as set forth in paragraph 1.28 of the Agreement, Davis alone qualifies as the majority member of the LLC, even if capital investment credit were given to Rajaee for the $38,760 he contributed to the LLC in November 2020.

With the exception of the $76,000 Rajaee and Davis put into the LLC in November 2020 pursuant to a "capital call" by Rajaee to cover the LLC's operating expenses, Rajaee has never described any of the monies he advanced or loaned to the LLC as capital investments.[8] In this regard, Rajaee testified that when the LLC was formed in 2017, it was his requirement that Davis be responsible for capitalizing the venture because he did not want to be at risk in the new venture. *RT 421.* The profit and loss statements created by the LLC's outside accounting firm show that more than $5,000,000 has been paid in "Consultant Reimbursement Expenses," which supports the inference that any advances Rajaee (or Mobile Monster) may have made to or for the benefit of the LLC were intended and treated as advances to be repaid by the LLC and not as capital Rajaee invested in the LLC. Moreover, Rajaee's claim in these proceedings that he believes he advanced or loaned over $1,000,000 to the LLC that has not been repaid further confirms that Rajaee has never intended that any "contributions" he may have made to cover the LLC's operating expenses were to be treated as a capital investment.

Rajaee testified that he had an understanding with Davis from the outset that he would own 51% of the LLC and Davis would own 49% of the LLC, irrespective of their respective capital contributions, because that is what he needed to qualify for a visa to live and work in the United States. *RT 103.* Assuming for sake of argument that those discussions did in fact occur, the alleged agreement or understanding is inconsistent with the terms of the Agreement

---

[7]   Rajaee pointed to the fact that he was allocated 51% of the profits in three of the LLC's tax returns as somehow being proof of an agreement between himself and Davis to the effect that he would have an ownership interest in the LLC that did not match his capital contributions to the LLC. While such an agreement is certainly possible, there was no evidence of such an agreement being reached between Davis and Rajaee to modify Article IV of the Agreement in this regard.

[8]   Schedule M-2 of the 2020 tax return recognized the $76,000 contribution as a capital contribution, and the K-1's for Rajaee and Davis recognized their contributions of $38,760 and $37,240, respectively. However, the capital interest percentages did not change as reflected on the K-1's. *Davis Exhibit 11.*

9

Rajaee and Davis signed to memorialize the terms of their business relationship in creating the LLC, and both agree that the Agreement has never been modified by a writing signed by both of them. *RT 199-200 and 239*.

Rajaee pointed to a February 24, 2020 email exchange that started with Rajaee's assistant – Vania Hernandez – writing to the LLC's accountant – Jennifer Glaser ("Glaser") – stating that Rajaee was "in need of a document that states TopDevz length in business as well as his ownership percentage" and that "[t]he document needs to be in LLME letterhead with your signature on it." *Rajaee Exhibit 5*. When Glaser asked what the letter was going to be used for, Rajaee responded that he was "buying a house." Glaser wrote back and asked if there was an updated operating agreement showing him as a 51% owner because she did not have documentation to support that statement. Rajaee then looped Davis in on the email chain and asked him to confirm ownership in the LLC as 51% to him and 49% to Davis. Davis responded "This is correct." *Id*.

As between Rajaee and Davis, there was insufficient evidence from which an inference could be drawn that Davis and Rajaee intended the email to constitute a written instrument signed by both parties, modifying the Agreement so as to specify the parties' respective ownership percentages that were previously left blank on Exhibit B. This is due in part to the fact that approximately 18 months after the February 24, 2020 email exchange - on September 13, 2021 - Glaser and her firm prepared the LLC's tax return for 2020 with Rajaee signing as the "tax matters partner" for the LLC. Again, the LLC's tax return reported Davis as having a 100% of the capital interest in the LLC and Rajaee as having a 0% capital interest in the LLC. *Exhibit 11*. Like all of the other tax returns for the LLC, Rajaee signed the LLC's 2020 tax return as its "tax matters partner." *Id*. The reasonable inference to be drawn from this evidence is that Davis's "confirmation" email (a) was a friendly accommodation to Rajaee made in the context of Rajaee's effort to purchase a home in the United States,[9] (b) does not rise to the level of constituting an agreement between Rajaee and Davis regarding the capital structure of the LLC, and (c) appears to have *not* been something that the LLC's accountant or Rajaee (as the LLC's tax matters partner) relied upon in reporting the LLC's capital structure to the IRS in 2021 for calendar year 2020 because the stated capital accounts of Rajaee and Davis remained the same as in prior years. *Davis Exhibit 11*. The preparation of the 2020 tax return, as well as all prior tax returns, was done under Rajaee's direction as the LLC's "tax matters partner."

---

[9]   Rajaee testified that he relied on the 51/49 discussions contained in the February 2020 email exchange in entering into the LLC with Davis. That testimony was not credible because Rajaee entered into the Agreement three years before the February 2020 email exchange, and there was no evidence that Rajaee did anything to his detriment after February 2020. To the contrary, the evidence showed that since February 2020, millions of dollars have flowed out of the LLC to Rajaee and his companies (Mobile Monster, SpendHub and Remote Preneurs), including over $490,000 paid out to Rajaee in July 2021. *Exhibit 21*.

Rajaee also pointed to the fact that he was allocated 51% of the profits on the LLC's tax returns as proof of his 51% ownership stake in the LLC. The problem with Rajaee's position and testimony is that the evidence concerning the allocation of profits and losses to Rajaee was inconsistent. For example:

(1)    Rajaee's share of profit and loss at the beginning of 2017 was shown as "0.0000000%," but his profit and loss allocation at the end of 2017 was shown as "6.5383824%." *Davis Exhibit 8.*

(2)    Rajaee's share of profit at the beginning of 2018 was shown as "6.5383824%," but his profit allocation at the end of 2018 was shown as "51.0000000%." Rajaee's share of loss at the beginning of 2018 was shown as "6.5383824%," but his loss allocation at the end of 2018 was shown as "0.0000000%." *Davis Exhibit 9.*

(3)    Rajaee's share of profit at the beginning and end of 2019 was shown as "51.0000000%." Rajaee's share of loss at the beginning and end of 2019 was shown as "0.0000000%." *Davis Exhibit 10.*

(4)    Rajaee's share of profit at the beginning and end of 2020 was shown as "51.0000000%." Rajaee's share of loss at the beginning of 2020 was shown as "0.0000000%," but at the end of 2020 it was shown as "51.0000000%." *Davis Exhibit 11.*

The fact that Rajaee was allocated profits and losses of the LLC does not change the fact that (a) the Agreement required profits and losses to be allocated based upon members' capital account, *Davis Exhibit 2, ¶ 4.1,* and (b) Rajaee made only a small capital contribution in 2020, as discussed above. *Davis Exhibit 11.*

Rajaee himself testified that he never paid "attention to all of the details" in the LLC's tax returns and did not recall having any discussions with the accountant or Davis about the 2017 or 2018 changes in Rajaee's profit share allocation from 0% to 6.5% to 51%. *RT 89-93 and 193.* The suggested inference is that Rajaee's profit and loss allocations were changed without his knowledge or input, and that these changes were made by the accountants without the approval of the LLC's "tax matters partner." Without the testimony of the LLC's outside accountant who prepared the LLC's tax returns, there is insufficient evidence to support such an inference, and it has no bearing on whether Rajaee and Davis agreed to a capital structure other than as provided for in the Agreement.

In final analysis, the only evidence of a capital contribution by Rajaee to the LLC is the $38,760 he contributed in November 2020. Under the terms of the Agreement, Rajaee's Percentage Interest in the LLC is only 4.692% ($38,760 ÷ ($750,000 + $76,000) = .04692). As such, Davis holds the majority of Percentage Interests in the LLC and controls the vote of the Majority of Members. Accordingly, it is hereby determined that Davis owns 95.308% of the capital interest

11

in the LLC and is the Majority Member with regard to decisions that are subject to the vote of the Members or a "Majority of Members." Accordingly, Davis thus has the right, under paragraph 9.1 of the Agreement, to dissolve the LLC without Rajaee's consent and over his objection. That is the basis for the order set forth in Section 5. Davis also has the right to exercise all other voting rights given to the "Majority of Members," including removal of the Manager.

**B.    Even if Davis is not the Majority Member, protective dissolution would be in order because management of the LLC is deadlocked and subject to internal dissension.**

Deadlock and internal dissension are grounds for dissolution under Corporations Code section 17707.03(b)(4). To obtain a decree of dissolution, the alleged dissension must be sufficient to prevent the further successful operation of the company to the advantage of its members. *Fuimaono v. Samoan Congregational Christian Church of Oceanside*, 66 Cal. App. 3d 80, 84 (1977); *see also BeUo v. Panorama Optics, Inc.,* 33. Cal. App. 4th 1096, 1105 (1995) (dissension evidenced by "completely different views as to the operation of the company"); *Buss v. J.O. Martin Co.,* 241 Cal. App. 2d 123, 136 (1966) (dissension shown where parties "hold contrary and opposing views on nearly all phases of the conduct of the business").

The irreparable deterioration of the relationship of Rajaee and Davis is evidenced by, among other things, (a) the aggressive claims and counterclaims that have been asserted in this arbitration and in the various companion court proceedings described in footnotes 3, 4, 5 and 6, (b) the fact that Rajaee and Davis have not spoken to each other since February 2021, and (c) the fact that Rajaee has instructed Davis to only speak to him through his attorney.

The dissension within the relationship of Rajaee and Davis as co-members of the LLC is evidenced by their completely different views as to what qualifies as an "ordinary course" business expense within Rajaee's sole decision making authority and discretion as the LLC's Manager and what types of decisions are subject to approval by Davis. *See, Footnote 2.* As evidenced by the expenditures made by Rajaee since February 2021, the delta on these differing views is several hundred thousand dollars flowing out of the LLC to companies owned by Rajaee. *Id.*

**5.    Order**

Based upon the foregoing, and for good cause shown, IT IS HEREBY ORDERED AS FOLLOWS:

1.    Davis owns 95.308% of the capital interest in the LLC, and thus owns the majority of the Percentage Interests in the LLC for voting purposes and has the right to elect to dissolve the LLC without the consent and over the objection of Rajaee.

12

EXHIBIT 3, PAGE 183

2.    Protective dissolution of the LLC   under Corporations Code section 17707.03(b)(4) is in order because management of the LLC is deadlocked and subject to internal dissension.

3.    Based upon Davis' request that the LLC be dissolved and the finding of deadlock and internal dissension within the management of the LLC, the LLC shall be dissolved pursuant to paragraph 9.1 of the Agreement and Corporations Code sections 17707.01(a) and 17707.03(b)(4). In accordance with paragraph 9.2 of the Agreement, the LLC will engage in no further business other than that necessary to wind up the business and affairs of the LLC. Davis, and only Davis or his designee, shall be responsible for managing, overseeing, and completing the dissolution of the LLC, and only Davis, or his designee, shall have the authority to take those actions necessary to accomplish the dissolution of the LLC.

4.    In accordance with paragraph 9.2 of the Agreement, Davis, is the Member of the LLC responsible for winding up the affairs of the LLC, and will give notice of the commencement of winding up by mail to all known creditors and claimants of the LLC. After paying or adequately providing for the payment of all known debts of the LLC (except debts owing to members), the remaining assets of the LLC will be distributed or applied in the following order:

　　　　(a)    To pay the expenses of liquidation;

　　　　(b)    To the establishment of reasonable reserves for contingent liabilities or obligations of the LLC. On the determination that reserves are no longer necessary, they will be distributed as provided in this order and paragraph 9.2 of the Agreement;

　　　　(c)    To repay outstanding loans to members, if any, which is among the issues to be determined in the accounting in this arbitration, in accordance with paragraph 9.2(c) of the Agreement; and

　　　　(d)    To the members with positive capital account balances, as provided in Article IV, paragraph 4.16 of the Agreement.

5.    Davis and only Davis, or his designee, shall have authority to access, disburse funds from, open and close bank and other financial accounts belonging to or standing in the name of the LLC. If any such action requires the signature of Rajaee on a consent, certificate, filing or other document, Rajaee shall provide such signature within three (3) business days of being advised by Davis, or his designee, that such signature is required.

13

EXHIBIT 3, PAGE 184

6. Based upon Davis' request that Rajaee be removed as Manager of the LLC, Rajaee shall be removed as Manager of the LLC, and only Davis or his designee shall replace Rajaee as Manager of the LLC. If this removal and/or replacement requires the signature of Rajaee on a consent, certificate, filing or other document, Rajaee shall provide such signature within three (3) business days of being advised by Davis, or his designee, that such signature is required.

7. Rajaee is hereby ordered to provide a full and complete accounting of the LLC's finances from the date of its inception in 2017 through the date of this order. That accounting needs to track every dollar in and every dollar out with backup, especially as pertains to (a) monies withdrawn, transferred or otherwise paid as expenses of the LLC, and (b) monies advanced or loaned to the LLC by Rajaee.

8. Rajaee is ordered to turn over to Davis or his designee the original books and records of the LLC, including any electronically stored information and all and paper records such as invoices, contracts, receipts, checks, bank statements, etc.

9. Rajaee is ordered to fully cooperate in providing access to Davis or his designee with respect to all of the books and records of the LLC maintained by or in the custody of Lavine, Lofgren, Morris & Engelberg LLP.

10. From the date of this order forward, unless and until modified or instructed otherwise by a court of competent jurisdiction, Rajaee shall not make or cause to be made any disbursements, transfers or withdrawals from any accounts standing in the name of the LLC without the signature approval of Davis, or his designee. Specifically, Rajaee shall not incur any debt in the name of the LLC without the signature approval of Davis or his designee.

11. From the date of this order forward, unless and until modified or instructed otherwise by a court of competent jurisdiction, Rajaee shall not make or enter into any contracts or commitments on behalf of or in the name of the LLC without the signature approval of Davis, or his designee.

12. Rajaee is ordered to cooperate in collecting any outstanding receivables owed to the LLC, and is ordered to turnover any and all collections to Davis, or his designee, for deposit into an account maintained by and in the name of the LLC.

13. This order is without prejudice to the right of Rajaee to seek to exercise his buy-out rights in accordance with the procedures specified in Corporations Code section 17707.03(c).

14

14.    A case management conference will be held in this matter on **Friday – January 21, 2022, at 10:00 a.m. Pacific Time,** for the purpose of reviewing with the parties' counsel (a) the status of the implementation of this order, and (b) the parties' readiness to proceed with the evidentiary hearing proceedings scheduled to commence on April 4, 2022. In advance of the case management conference, Davis's counsel is instructed to provide the Arbitrator with a status report and to do so no later than **Thursday – January 20, 2022**. The case management conference will be held via video conference. The following is the log-in information for the conference:

https://us02web.zoom.us/j/83580491031?pwd=NERNcC9RMWVqSmRzZWJhYTlKRVEzZz09

Meeting ID: 835 8049 1031
Passcode: 545721
One tap mobile
+16699006833,,83580491031#,,,,*545721# US (San Jose)
+13462487799,,83580491031#,,,,*545721# US (Houston)

IT IS SO ORDERED.

Dated:  6 January 2022

Rebecca Callahan, Arbitrator

15

# ATTACHMENT 2

INTERNATIONAL CENTRE FOR DISPUTE RESOLUTION
International Arbitral Tribunal

In the Matter of the Arbitration Between:

Ashkan Rajaee and TopDevz, LLC, a California Limited Liability Company,

Claimants and Counter-Respondents,

- vs -

Tyler Davis,

Respondent and Counter-Claimant

ICDR Case No. 01-21-0001-9983

## ORDER NO. 5 – ORDER ON RESPONDENT'S EMERGENCY MOTION TO ENFORCE ORDER NO. 4

A duly noticed hearing ("Hearing") on Respondent's emergency motion ("Motion") was convened via video conference at approximately 10:00 a.m. Pacific Time on Thursday – January 13, 2022, before Rebecca Callahan, Arbitrator. Scott R. Carpenter, of Cummins & White LLP, appeared on behalf of Respondent Tyler Davis ("Respondent" or "Davis"), and Jordan Matthews, of Weinberg Gonser LLP, appeared on behalf of Claimant Askhan Rajaee ("Claimant" or "Rajaee"). The hearing proceedings were recorded and transcribed by a certified court reporter. The transcript of the proceedings on the Motion is part of the record in this arbitration.

In his Motion, Davis took issue with Rajaee for taking certain actions for or on behalf of TopDevz LLC ("the LLC") after Order No. 4 – Order on Respondent's Petition for Decree of Dissolution ("Order No. 4") was issued, as well as Rajaee's refusal to cooperate in providing information to Davis and access to the LLC's books and records. While opposition was submitted to the Motion on behalf of Rajaee, that opposition did not address the substantive issues raised by the Motion: most notably, what happened to the $1,052,146 Rajaee caused to be transferred out of the LLC's bank account at Wells Fargo after Order No. 4 was issued? Significantly, Rajaee did not provide a declaration denying that he caused the aforementioned monies to be transferred out of

the LLC's bank account, and he did not appear at the Hearing to address, explain or otherwise respond to that circumstance. Additionally, according to Davis' counsel, Davis's efforts to obtain cooperation from Rajaee and the LLC's outside accounting firm with regard to turnover of the LLC's books and records and administrative access to its electronic records have been frustrated at every turn by the lack of response from anyone. Neither Rajaee nor his counsel denied or disputed the offer of proof made by Davis' counsel concerning the lack of turnover of the LLC's books and records to Davis or the lack of cooperation that has been forthcoming from Rajaee.

Having considered the papers the parties submitted with regard to the Motion, as well as the arguments made by the parties' respective counsel, and good cause appearing therefore, IT IS HEREBY ORDERED:

1.    Rajaee violated Order No. 4 when he transferred funds out of the LLC's account at Wells Fargo Bank, Account Number 1756821128, on January 6 and January 7, 2022, because Davis, and only Davis or his designee, had the authority to access, disburse funds from, open and close bank and other financial accounts belonging to or standing in the name of the LLC from approximately 2:00 p.m. on January 6, 2022, forward. Rajaee is hereby ordered to immediately return and/or replenish to the LLC, care of Davis, the $900,000.00 he transferred to himself at approximately 11:00 p.m. on January 6, 2022, as well as the $131,586.76, transferred out as an "international money transfer debit" on January 7, 2022.

2.    Rajaee's power and authority to act as the Manager and "tax matters partner" of the LLC ended as of approximately 2:00 p.m. on January 6, 2022. Only Davis or his designee has authority to act as Manager of the LLC, and may do so without Rajaee's consent and over his objection. Rajaee is hereby enjoined and restrained from accessing any LLC bank or financial accounts, transferring any funds from any LLC bank or financial accounts, or transacting business of any sort for or on behalf of the LLC without Davis's signature approval.

3.    Rajaee is hereby ordered to immediately return to the LLC, care of Davis, any and all documents, data, and/or tangible property removed or taken from the LLC since January 6, 2022, by Rajaee or any persons or entities under Rajaee's control who have acted on behalf of Rajaee. Rajaee, and his agents and representatives, are enjoined and restrained from accessing and/or removing any business records of the LLC without the signature consent of Davis or his designee, including but not limited to any electronically stored information and all and paper records such as invoices, contracts, receipts, checks, bank statements, and customer lists, customer data, vendor lists,

2

EXHIBIT 3, PAGE 189

vendor data, contractor lists, contractor data, accounts receivable documents and accounts payable records.

4.     Nothing in this Order No. 5 is intended or shall be construed as superseding Order No. 4. Order No. 4 remains in full force and effect.

Dated: 13 January 2022.

Rebecca Callahan, Arbitrator

3

**EXHIBIT 4**



1  LAW OFFICES OF JOSEPH W. SCALIA, APC
   Joseph W. Scalia, Esq. (Bar No. 72526)
2  E-mail: joe@scalialawoffices.net
   Joseph W. Scalia, Esq.
3  Law Offices of Joseph W. Scalia
   1620 Lead Hill Boulevard
4  Roseville, CA 95661
   Telephone: (916) 622-6939
5  Fax: (916) 652-4027

6  CUMMINS & WHITE, LLP
   Scott R. Carpenter (Bar No. 144259)
7  E-mail: scarpenter@cwlawyers.com
   2424 S.E. Bristol Street, Suite 300
8  Newport Beach, CA 92660-0764
   Telephone: (949) 852-1800
9  Fax: (949) 852-8510
   Attorneys for Plaintiffs, TYLER DAVIS
10
   J. Douglas Kirk, Esq. SBN 125808
11 KIRK & TOBERTY
   Attorneys at Law
12 2201 Dupont Drive, Suite 820
   Irvine, California 92612
13 (949) 851-0355 • Fax (949) 851-1250
   E-Mail: jdkirk@kirkandtoberty.com
14 Attorneys for Plaintiff TOPDEVZ, LLC

ELECTRONICALLY FILED
Superior Court of California,
County of San Diego

**02/13/2024** at 08:36:00 PM

Clerk of the Superior Court
By Mariejo Guyot, Deputy Clerk

15        SUPERIOR COURT OF THE STATE OF CALIFORNIA

16        COUNTY OF SAN DIEGO – CENTRAL COURTHOUSE

17
   TYLER DAVIS, an Individual, TOPDEVZ,            )  CASE NO: 37-2022-00015126-CU-OR-CTL
18 LLC, a California Limited Liability Company,    )
                                                   )  [PROPOSED] ORDER ENTERING THE
19              Plaintiffs,                         )  DEFAULT OF DEFENDANTS NIMA
                                                   )  AKHBARI, AS TRUSTEE OF THE 6625
20        vs.                                       )  MUIRLANDS DRIVE QUALIFIED
                                                   )  PERSONAL RESIDENCE TRUST #1;
21 ASHKAN M. RAJAEE, an Individual; NIMA          )  NIMA AKHBARI, AS TRUSTEE OF THE
   AKHBARI, Individually and as Trustee of the    )  6625 MUIRLANDS DRIVE QUALIFIED
22 6625 Muirlands Drive Qualified Personal        )  PERSONAL RESIDENCE TRUST #2;
   Residence Trust #1, an entity of unknown form; )  AND UNITED UNICORNS
23 NIMA AKHBARI, Individually and as Trustee      )  ENTERPRISES, LLC
   of the 6625 Muirlands Drive Qualified Personal )
24 Residence Trust #2, an entity of unknown form; )  ASSIGNED FOR ALL PURPOSES TO THE
   NASSIM RAJAEE, an Individual; UNITED           )  HONORABLE EDDIE STURGEON,
25 UNICORNS ENTERPRISES, LLC, a                   )  DEPARTMENT C-67
   Delaware Limited Liability Company; and        )
26 DOES 1 through 50, inclusive,                   )  First Amended Complaint Filed: 1/27/2023
                                                   )  Trial Date: 3/15/2024
27              Defendants.                         )
                                                   )
28 _____ )

-1-

**[PROPOSED] ORDER ENTERING THE DEFAULT OF DEFENDANTS**

|W383.5|2569896.DOCX;1|

EXHIBIT 4, PAGE 192

1

### [~~PROPOSED~~] ORDER

2        The above-entitled matter came on for hearing on February 9, 2024, upon the court's

3    own Motion for Representation of the Defendant Trustees/Trusts and Defendant United

4    Unicorn Enterprises, LLC and Failure to Obtain Counsel. Upon hearing from the parties and

5    counsel, the court ruled as follows:

6            (1)    It is hereby ordered that said Defendant NIMA AKHBARI, as Trustee of

7                the 6625 Muirlands Drive Qualified Personal Resident Trust #1 is in

            default and that the default is hereby entered;

8            (2)    It is hereby ordered that said Defendant NIMA AKHBARI, as Trustee of

9                the 6625 Muirlands Drive Qualified Personal Resident Trust #2 is in

10                default and that the default is hereby entered; and

11            (3)    It is hereby ordered that said Defendant UNITED UNICORN

12                ENTERPRISES, LLC is in default and that the default is hereby entered.

13

14    Dated:_____**02/13/2024**_____

15                                *Eddie C. Sturgeon*

16                          _____
                      HONORABLE EDDIE C. STURGEON

17                          JUDGE OF THE SUPERIOR COURT

18

19

20

21

22

23

24

25

26

27

28

[PROPOSED] ORDER ENTERING THE DEFAULT OF DEFENDANTS

|W383.5|2569896.DOCX;1|

**EXHIBIT 4, PAGE 193**

**PROOF OF SERVICE**
**(Declaration)**
**(C.C.P. §§1013(a) and 2015.5)**

STATE OF CALIFORNIA      )
                         )    ss.
COUNTY OF ORANGE         )

I, the undersigned, declare:

I am employed in the County of Orange, State of California.  I am over the age of 18 and not a party to the within action.  My business address is 2424 S.E. Bristol Street, Suite 300, Newport Beach, CA 92660-0764.

On February 9, 2024, I served the following document(s) **[PROPOSED] ORDER ENTERING THE DEFAULT OF DEFENDANTS NIMA AKHBARI, AS TRUSTEE OF THE 6625 MUIRLANDS DRIVE QUALIFIED PERSONAL RESIDENCE TRUST #1; NIMA AKHBARI, AS TRUSTEE OF THE 6625 MUIRLANDS DRIVE QUALIFIED PERSONAL RESIDENCE TRUST #2; AND UNITED UNICORNS ENTERPRISES, LLC** and the parties on the interested parties in this action by placing a true and correct copy of each document thereof, enclosed in a sealed envelope, addressed as follows:

**SEE ATTACHED SERVICE LIST**

☑ **By Mail:** I am readily familiar with Cummins & White, LLP's business practice for collection and processing of correspondence for mailing with the United States Postal Service.  I know that the correspondence is deposited with the United States Postal Service on the same day this declaration was executed in the ordinary course of business.  I know that the envelope was sealed and, with postage thereon fully prepaid, placed for collection and mailing on this date, following ordinary business practices, in the United States mail at Newport Beach, California

☑ **By E-Mail:** I caused the above-referenced document(s) to be served via e-mail to the attached-named person(s) at his/her/their e-mail address(es) of record.  The transmission was reported as complete and without error.  Attached to this declaration is an "E-Mail Confirmation Report" confirming the date, time and status of transmission.

☐ **By Personal Service:** I caused the above document(s) to be hand delivered to the attached address(es).

☐ **By Overnight Courier:** I caused the above-referenced document(s) to be delivered to an overnight courier service (Fed Ex) for delivery to the above address(es).

Executed on **February 9, 2024**, at Newport Beach, California.

☑ **(State)** I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

_/s/ Diana L. Pimentel_
Diana L. Pimentel

-3-

**[PROPOSED] ORDER ENTERING THE DEFAULT OF DEFENDANTS**

|W383.5|2569896.DOCX;1|

EXHIBIT 4, PAGE 194

1

### SERVICE LIST

*Attorneys for Plaintiff Tyler Davis*
Joseph W. Scalia, Esq.
Law Offices of Joseph W. Scalia
1620 Lead Hill Boulevard
Roseville, California 95661
Telephone: (916) 622-6939
Fax: (916) 652-4027
joe@scalialawoffices.net
**Via Electronic Service and Via U.S. Mail**

*Attorneys for Plaintiff TopDevz, LLC*
Douglas Kirk, Esq.
Kirk & Toberty
Attorneys at Law
2201 Dupont Drive, Suite 820
Irvine, California 92612
Telephone:  (949) 851-0355
Fax:  (949) 851-1250
jdkirk@kirkandtoberty.com
rflynn@kirkandtoberty.com
**Via Electronic Service and Via U.S. Mail**

*Defendant In Pro Per Nassim Rajaee*
Nassim Rajaee
6625 Muirlands Drive
La Jolla, CA 92037
nakhbari@gmail.com
**Via Electronic Service and Via U.S. Mail**

*Defendant In Pro Per Ashkan Rajaee*
Ashkan Rajaee, In Pro Per
888 Prospect Street, Unit 200
La Jolla, CA 92037
(619) 332-6348
prayerforjustice.2022@gmail.com
**Via Electronic Service and Via U.S. Mail**

*Defendant In Pro Per Nima Akhbari,*
*Individually and as Trustee of the 6625*
*Muirlands Drive Qualified Personal*
*Residence Trust #1*
18273 Rosita Street
Tarzana, CA 91356
**Via U.S. Mail**

*Nima Akhbari, Individually and as Trustee*
*of the 6625 Muirlands Drive Qualified*
*Personal Residence Trust #2*
18273 Rosita Street
Tarzana, CA 91356
**Via U.S. Mail**

*Defendant In Pro Per United Unicorn*
*Enterprises, LLC*
United Unicorn Enterprises, LLC
7660 Fay Avenue, Suite H181
La Jolla, CA 92037
**Via U.S. Mail**

*Defendant In Pro Per United Unicorn*
*Enterprises, LLC*
Agent for Process of Service:
Leslie Klinger, Esq.
10866 Wilshire Boulevard, Suite 1500
Los Angeles, CA 90024
Telephone (310) 475-1444
Facsimile (310) 475-2459
lklinger@kandklaw.com
**Via U.S. Mail**

-4-

**[PROPOSED] ORDER ENTERING THE DEFAULT OF DEFENDANTS**

[W383.5|2569896.DOCX;1]

EXHIBIT 4, PAGE 195

**EXHIBIT 5**



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ASHKAN RAJAEE
888 Prospect St, Unit 200
La Jolla, CA 92037
Telephone: 619-332-6348
Email: prayerforjustice.2022@gmail.com

Pro Se Plaintiff

**FILED**

Mar 22 2024

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY          s/ STN          DEPUTY

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

ASHKAN RAJAEE, an Individual,

                    Plaintiff,

v.

TYLER BRANDON DAVIS, an
Individual; TOPDEVZ, LLC, a California
Limited Liability Company; SCOTT
CARPENTER, an Individual; JOSEPH
W. SCALIA, ESQ., an Individual, J.
DOUGLAS KIRK, an Individual; and
DOES 1 through 10, inclusive,

                    Defendants.

Case No. **'24 CV 0549 CAB KSC**
*Unlimited Jurisdiction*

**VERIFIED COMPLAINT FOR
DECLARATORY RELIEF AND
DAMAGES RELATED TO TAX
FRAUD**

**[DEMAND FOR JURY TRIAL]**

0

VERIFIED COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES RELATED TO TAX FRAUD

1.     Plaintiff Ashkan Rajaee ("Plaintiff" or "Rajaee") alleges as follows:

## I.     THE PARTIES

2.     Plaintiff Ashkan Rajaee is, and at all times relevant to this Complaint, a Canadian citizen, and resident of San Diego County, California.

3.     Upon Plaintiff's information and belief of the remaining parties: Defendant Tyler Brandon Davis ("Davis") is, and at all times relevant hereto, a resident of Sacramento, California, and a member of TopDevz, LLC, Porter Consulting, LLC, and Mason Building and Design, LLC.

4.     Defendant TopDevz, LLC ("Topdevz") is, and at all times relevant hereto, a limited liability company organized and existing under the laws of the State of California with a principal place of business located in Folsom, California and was incorporated on May 9, 2017.

5.     Defendant Scott Carpenter ("Carpenter"), or is, and at all times relevant hereto, a partner at Cummins & White, and has a principal place of business in Newport Beach, California.

6.     Defendant Joseph W. Scalia, Esq. ("Scalia"), is, and at all times relevant hereto, a partner at Law Offices of Joseph W. Scalia, APC, with his principal place of business in Roseville, California.

7.     Defendant J. Douglas Kirk ("Kirk"), is, and at all times relevant hereto, a partner at Kirk & Toberty and a resident of Irvine County, California. On December 22, 2022, Kirk appeared and represented Topdevz.

## II.     JURISDICTION

8.     This court has the authority to hear and decide the case pursuant to 28 U.S.C. § 1332(a)(2). The lawsuit involves a single foreign alien, the Plaintiff, who is a Canadian citizen and a resident of California and is not admitted for permanent residency in the United States. All the Defendants are United States Citizens.

1

VERIFIED COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES RELATED TO TAX FRAUD

9.    Pursuant to 28 U.S.C. § 1332(a), the dispute involves an amount over $75,000, excluding interests and costs.

10.    The Court has personal jurisdiction over Defendants because of either general jurisdiction or specific jurisdiction over each defendant.

### III.    VENUE

11.    Venue is proper in this county in accordance with 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this district.

### IV.    FACTS AND ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

12.    Plaintiff is a member and owner of TopDevz, LLC since 2017 to present.

13.    Since January 6, 2022, Defendant Tyler Davis has been acting as the putative manager of TopDevz.

14.    Defendant Tyler Davis has caused tax returns (for the fiscal year 2021 and 2022) to be filed on behalf of TopDevz, using Plaintiff's information, without providing copies of the filed returns or any financial information related to the tax filings.

15.    Plaintiff is now aware these returns, and the underlying financials, are completely fraudulent and aimed to conceal a criminal scheme.

16.    On or about February 15, 2022, to avoid $2.8 million in IRS S-Corporation income and frustrate Rajaee's tax account, Davis and non-party Joshua Lintz used Plaintiff's name, social security number and address to willfully aid in the preparation and filing of an IRS 1099 document that is materially fraudulent and false. The filing was made with the IRS and now appears on Plaintiff's tax account with the IRS.

VERIFIED COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES RELATED TO TAX FRAUD

17.    Defendant Davis' attorney, Scott Carpenter, was sent a demand letter to correct the IRS fraudulent issue and has ignored the demands.

18.    Since November 2022, Plaintiff has repeatedly demanded to inspect the financial affairs of the LLC because Plaintiff's tax account with the IRS has a multi-million-dollar discrepancy due to the fraudulent state and federal tax filings of Defendant Tyler Davis for the entity TopDevz.

19.    On November 18, 2022, Plaintiff attorney at the time, Marc Benezra, partner at Glaser Weil, made a demand for the inspection of documents,

"Rajaee hereby demands that the Company promptly deliver to him care of me, at the expense of the Company, copies of the information required to be maintained pursuant to "paragraphs (1), (2), and (4) of subdivision (d) of Section 17701.13, and any written operating agreement of the limited liability company."

Rajaee hereby further demands access to "inspect and copy during normal business hours" the books and records set forth in Paragraph 1 above. Such demands are for, among other things, purposes of (a) reviewing any and all company transactions and (b) determining Mr. Davis's actions as putative manager of the Company.

Please let us know (a) when Mr. Davis expects to deliver copies of the documents that the Company is required to deliver and (b) a convenient date and time on or before December 1, 2022 when Rajaee and/or his designated representative(s) can inspect and copy the documents which the Company is required to allow its members to inspect."

20.    On November 9, 2023, Plaintiff sent another (of many more) demand, "Carpenter, Please have you client Tyler Brandon Davis provide me a copy of the 2021 TopDevz IRS tax returns he filed using my personal identifiable information.  I have not received a copy and was never provided a K1 on the filing he made. Your urgent attention to this matter is demanded. Ashkan"

21.    On March 1, 2024, Plaintiff discovered through the IRS account escalations team that Plaintiff's personal tax account and TopDevz's EIN were escalated to deal with identity theft and COVID-19 SBA loan fraud in connection

3

VERIFIED COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES RELATED TO TAX FRAUD

1   with a series of daisy chained financial transactions made by Defendant Davis

2   using TopDevz's EIN number and Plaintiff's identity to commit tax fraud in

3   addition to the 2020 SBA loan fraud.

4       22.   On March 8, 2024, the IRS filed a $915,029 federal tax claim against

5   Plaintiff in bankruptcy court in direct relations to the tax filings of TopDevz,

6   which caused to be fraudulent by Defendant Davis. At minimum, Plaintiff is now

7   harmed nearly one million dollars in federal taxes that were explicitly caused by

8   the filings of Defendant Davis' instructions.

9       23.   Defendant Davis has severely underreported income of the LLC and

10   has shifted millions in revenue to Plaintiff's tax account without any explanation

11   whatsoever or any supporting financial documentation to justify the filings.

12       24.   Separately, Davis has been acting as the putative manager of the LLC

13   and has opened unauthorized bank accounts and conducted millions in

14   transactions without any reporting whatsoever to Plaintiff who is the member of

15   the LLC.

16       25.   Plaintiff has received no accounting since April 2022 regarding any of

17   the financial affairs of the LLC, which are directly affecting his tax account and

18   bankruptcy proceedings.

19       26.   Plaintiff believes and understands that Defendant Davis is violating

20   California Uniform Limited Liability Act section 17701.10 subsection, (g)(1)

21   Breach of the duty of loyalty. (2) A financial benefit received by the member or

22   manager to which the member or manager is not entitled. (3) A member's liability

23   for excess distributions under Section 17704.06. (4) Intentional infliction of harm

24   on the limited liability company or a member. (5) An intentional violation of

25   criminal law.

26       27.   Plaintiff needs access to inspect the documents of the LLC in order to

27   set his personal tax account straight with the IRS, be able to provide accurate

28

4

VERIFIED COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES RELATED TO TAX FRAUD

1    information to the bankruptcy court, make a final determination of damages, and

2    be permitted to exercise his rights as a member of the LLC to inspect the financial

3    actions of Davis related to TopDevz.

4        28.   Defendant attorneys, who all represent Davis or were hired by Davis,

5    have constantly aided Davis to thwart Plaintiff's attempts to receive the most basic

6    financial information related to TopDevz, its tax information, and Plaintiff's

7    personal identity used by Davis to file fraudulent tax returns.

8        29.   All the defendant in this case are also personal defendants to a related

9    district court case, involving, *inter alia*, identity theft, wire fraud, bank fraud,

10   perjury and fraud on various California courts. The case is in the district court of

11   Southern California, Case No. 24-CV-001.

12       30.   Defendant attorneys are giving substantial aid to Davis in order to

13   deprive Plaintiff of any financials, causing Plaintiff harm.

14       31.   Because of Defendants' conduct, including aid and encouragement by

15   the Defendant attorneys, Plaintiff now has suffered improper claims damages by

16   the IRS for at least $915,000 plus an additional $2.8 million pending on Plaintiff's

17   personal tax account related to TopDevz.

18       32.   If Plaintiff is deprived of his member rights, he will be irreparably

19   harmed with both the IRS and Plaintiff's bankruptcy proceedings. Significantly

20   more important, Plaintiff has been implicated in a criminal scheme which he

21   wants nothing to do with. He needs the information to set the records correct.

22                        **FIRST CAUSE OF ACTION**

23   **DECLARATORY RELIEF PURSUANT TO CALIFORNIA CIVIL CODE**
                              **§17704.10**

24

25                        **(Against Davis and TopDevz)**

26       33.   Plaintiff realleges and incorporates herein by reference each and every

27   allegation contained in paragraphs 1 through 31 to this cause of action.

28

                                    5
     VERIFIED COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES RELATED TO TAX FRAUD

1  34. Plaintiff is a member of TopDevz, LLC, and has the right, upon

2 reasonable request, for purposes reasonably related to the interest of that person as

3 a member, to inspect and copy during normal business hours any of the records

4 required to be maintained pursuant to Section 17701.13.

5  35. The request is reasonable because Plaintiff's tax account with the IRS

6 is directly compromised by the LLC's filings caused by Defendant Davis.

7  36. The request is reasonable because bank accounts were opened and

8 used without any supporting documentation in conducting millions of dollars in

9 fraudulent transactions.

10  37. The request is reasonable because Plaintiff is involved in bankruptcy

11 proceedings and the bankruptcy court and Plaintiff are now being deprived by

12 Davis and the attorneys of crucial financial information in order to efficiently

13 conduct federal proceedings.

**SECOND CAUSE OF ACTION**

**ACCOUNTING**

**(Against TopDevz)**

17  38. Plaintiff realleges and incorporates herein by reference each and every

18 allegation contained in paragraphs 1 through 37 to this cause of action.

19  39. Based on the foregoing allegations, Plaintiff is entitled to an

20 accounting by Defendant.

**THIRD CAUSE OF ACTION**

**BREACH OF FIDUCIARY DUTY**

**(Against Davis)**

24  40. Plaintiff realleges and incorporates herein by reference each and every

25 allegation contained in paragraphs 1 through 39 to this cause of action.

6

VERIFIED COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES RELATED TO TAX FRAUD

1    41.    Defendant Davis breached his fiduciary duties to Plaintiff by willfully

2    filling then concealing tax returns that involve millions of dollars of fraudulent

3    financial transactions.

4    42.    Plaintiff has been harmed by the massive IRS claims against Plaintiff

5    that are the product of Davis' breaches of fiduciary duties to Plaintiff.

6    43.    Davis' conduct is a substantial factor in causing Plaintiff's harm.

7    **FORTH CAUSE OF ACTION**

8    **AIDING AND ABETTING BREACH OF FIDUCIARY DUTY**

9    **(Against Defendant Attorneys)**

10   44.    Plaintiff realleges and incorporates herein by reference each and every

11   allegation contained in paragraphs 1 through 43 to this cause of action.

12   45.    Defendant attorneys had actual knowledge and gave substantial

13   assistance to Davis to deprive Plaintiff access to the financial records that have

14   caused millions of dollars in harm to Plaintiff's tax account and TopDevz's EIN

15   number.

16   46.    Defendant attorneys' conduct was a substantial factor in causing

17   Plaintiff's harm.

18   **PRAYER FOR RELIEF**

19   Plaintiff prays for judgment against Defendants Davis and TopDevz as

20   follows:

21   1.    An order for TopDevz to produce the required financial information

22         or permit inspection thereof by Plaintiff.

23   2.    Actual damages, attorney's fees, and costs;

24   3.    For economic damages according to proof;

25   4.    For compensatory damages according to proof at the time of trial;

26   5.    For incidental and consequential damages according to proof at the

27         time of trial;

28

7

VERIFIED COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES RELATED TO TAX FRAUD

| | | |
|---|---|---|
| 1 | 6. | For costs and attorneys' fees incurred related to this action, to the |
| 2 | | extent permitted by law; |
| 3 | 7. | For punitive damages; |
| 4 | 8. | For pre-judgment interest on all economic damages; |
| 5 | 9. | For costs of suit incurred; |
| 6 | 10. | For any such other and further relief as the Court may deem just and |
| 7 | | proper. |

Dated: March 22, 2024          Respectfully submitted,

_____

Ashkan Rajaee
Pro Se Plaintiff

VERIFIED COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES RELATED TO TAX FRAUD

EXHIBIT 5, PAGE 204

1

## **DEMAND FOR JURY TRIAL**

2      Plaintiff Ashkan Rajaee hereby demands a trial by jury on all issues and

3   causes of action that qualify for a jury trial demand.

4

5      Dated: March 22, 2024                    Respectfully submitted,

6

7

8

9   _____

10                   Ashkan Rajaee

11                   Pro Se Plaintiff

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

9

VERIFIED COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES RELATED TO TAX FRAUD

EXHIBIT 5, PAGE 205

## **VERIFICATION**

I, Ashkan Rajaee, declare:

I am a party to this action. I am also a member of TopDevz, LLC. I certify under penalty of perjury that I have read and reviewed the Verified Complaint and authorized its filing. Based upon my and my various counsel's investigations, the contents of the Verified Complaint are true to the best of my knowledge, information, and belief. I declare under the penalty of perjury under the laws of the State of California and the United States that the above is true and correct.

Executed on March 22, 2024, at La Jolla, California.

Ashkan Rajaee
Pro Se Plaintiff

**EXHIBIT 6**

ASHKAN RAJAEE
888 Prospect St, Unit 200
La Jolla, CA 92037
Telephone: 619-332-6348
Email: prayerforjustice.2022@gmail.com

Pro Se Plaintiff

**FILED**

Mar 22 2024

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY      s/STN      DEPUTY

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ASHKAN RAJAEE, an Individual,<br><br>                    Plaintiff,<br><br>v.<br><br>TYLER BRANDON DAVIS, an Individual; JOSHUA PAUL Lintz, an Individual; TALENTCROWD, LLC, a Wyoming Limited Liability Company; MELISSA GARCIA, an Individual; VINCIL BISHOP, an Individual; AMANDA FRYE, an Individual; SCOTT R. CARPENTER, an Individual; CUMMINS & WHITE, LLP, a California Limited Liability Partnership; JOSEPH W. SCALIA, an Individual; PORTER CONSULTING, LLC, a California Limited Liability Company; TOPDEVZ, LLC, a California Limited Liability Company; and DOES 1 through 15, inclusive,<br><br>                    Defendants. | Case No. **'24CV0550 LL    DEB**<br>*Unlimited Jurisdiction*<br><br><br>**VERIFIED COMPLAINT FOR MISAPPROPRIATION OF TRADE SECRET DAMAGES AND INJUNCTIVE RELIEF**<br><br><br>**[DEMAND FOR JURY TRIAL]** |

0

EXHIBIT 6, PAGE 207

1.      Plaintiff Ashkan Rajaee ("Plaintiff" or "Rajaee"), files this Complaint for Damages and Injunctive Relief against defendants Tyler Brandon Davis, Joshua Paul Lintz, Talentcrowd, LLC, Melissa Garcia, Vincil Bishop, Amanda Frye, Scott R. Carpenter, Joseph W. Scalia, Porter Consulting, LLC, TopDevz, LLC, and DOES 1 through 15, inclusive, alleging as follows:

## I.   **THE PARTIES**

2.      Plaintiff Ashkan Rajaee ("Plaintiff") is, and at all times relevant to this Complaint, a Canadian citizen, and resident of San Diego County, California.

3.      Upon Plaintiff's information and belief of the remaining parties: Defendant Tyler Brandon Davis ("Davis") is, and at all times relevant hereto, a resident of Sacramento, California, and a member of TopDevz, LLC, Porter Consulting, LLC, and Mason Building and Design, LLC.

4.      Defendant Joshua Paul Lintz ("Lintz") is, and at all times relevant hereto, a resident of San Diego, California. Lintz was hired by Plaintiff personally in September 2020 to work for TopDevz and (unlawfully) represented the LLC as its President & CEO after January 6, 2022. Lintz owns 100% of Talentcrowd, LLC.

5.      Defendant Talentcrowd, LLC ("Talentcrowd") is, and at all times relevant hereto, a limited liability company organized and existing under the laws of the State of Wyoming.

6.      Defendant Melissa Garcia ("Garcia") is, and at all times relevant hereto, a resident of Chico, California.

7.      Defendant Vincil Bishop ("Bishop") is, and at all times relevant hereto, a resident of Austin, Texas.

8.      Defendant Amanda Frye ("Frye") is, and at all times relevant hereto, a resident of Romulus, Michigan.

9.      Defendant Scott Carpenter ("Carpenter"), or referenced collectively as "Defendant Attorneys", is, and at all times relevant hereto, a partner at Cummins & White, and has a principal place of business in Newport Beach, California.

1
VERIFIED COMPLAINT FOR MISAPPROPRIATION OF TRADE SECRET DAMAGES AND INJUNCTIVE RELIEF

10.    Defendant Cummins & White, LLP ("Cummins"), or referenced collectively as "Defendant Attorneys", is, and at all times relevant hereto, a limited liability partnership organized and existing under the laws of the State of California with a principal place of business located in Newport Beach, California.

11.    Defendant Joseph W. Scalia, Esq. ("Scalia"), or referenced collectively as "Defendant Attorneys", is, and at all times relevant hereto, a partner at Law Offices of Joseph W. Scalia, APC, with his principal place of business in Roseville, California.

12.    Defendant Porter Consulting, LLC ("Porter") is, and at all times relevant hereto, a limited liability company organized and existing under the laws of the State of California with a principal place of business located in Sacramento, California.

13.    Defendant TopDevz, LLC ("Topdevz") is, and at all times relevant hereto, a limited liability company organized and existing under the laws of the State of California with a principal place of business located in Folsom, California.

## II.    JURISDICTION

14.    This court has the authority to hear and decide the case pursuant to 28 U.S.C. § 1332(a)(2). The lawsuit involves a single foreign alien, Plaintiff, who is a Canadian citizen and a resident of California and is not admitted for permanent residency in the United States. All the defendants are United States Citizens.

15.    Pursuant to 28 U.S.C. § 1332(a), the dispute involves an amount over $75,000, excluding interests and costs.

16.    Jurisdiction is proper in this Court under 28 U.S.C. § 1331, because Plaintiff's assert claims arising under law of the United States pursuant to 18 U.S.C. § 1832 *et seq.*

17.    The Court has personal jurisdiction over Defendants because of either general jurisdiction or specific jurisdiction over each defendant.

18.    Venue is proper in this Court under 28 U.S.C. § 1391 because a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

VERIFIED COMPLAINT FOR MISAPPROPRIATION OF TRADE SECRET DAMAGES AND INJUNCTIVE RELIEF

### III.    <u>Factual Allegations</u>

19.    This case is about Plaintiff's specific and independent claims concerning the unlawful acquisition by actual fraud, deception, theft and download of Plaintiff's trade secrets worth tens of millions of dollars, which were subsequently transmitted, replicated, uploaded and used without Plaintiff's permission for the sole benefit of a competitor, Talentcrowd, LLC.

20.    Under DTSA (Defend The Trade Secret Act) and CUTSA (California Uniform Trade Secrets Act) the "owner" or "any owner" or "of another," has standing to bring a claim for the misappropriation of their trade secrets.

21.    As it relates to the Defendant Attorneys, their firms have collectively received payments exceeding $1 million as part of a concerted effort to obscure the wrongdoing actions and criminal activities associated with the theft and exploitation of Plaintiff's trade secrets by Defendant Davis and/or Lintz. The attorneys' conduct was aimed at facilitating the core objective of the conspiracy to misappropriate and utilize the trade secrets in favor of a competing entity, Talentcrowd, LLC. Defendant Attorneys' conduct violates 18 U.S. Code § 1832, specifically subsection (5).

22.    Plaintiff is the sole personal owner of a massive confidential compilation of data, the product of years of effort and expense, used to grow businesses including software development companies.

23.    Defendants cannot prove by any means that Plaintiff doesn't own the trade secrets at issue in this case.

24.    The compilation of data was built over 10 years with thousands of man hours and costs incurred and includes millions of records from all over the United States and Canada.

25.    Plaintiff's trade secret data includes detailed, accurate and quality contact information of nearly 2.5-million people spanning over 40 unique attributes each, that represents over 10-million unique database entries, that was acquired from the massive collection combination of public and private data.

3

1     26.    The trade secrets misappropriated by Defendants are from the final work
2    product of a massive, compiled database that has taken years to build and millions to
3    develop. The data includes direct contact information, including cell phone numbers,
4    contacts job history, education, interests, social profiles, address, city, years of
5    communication history, financial information including contacts companies revenues,
6    costs, budgets, invoices, contracts, contact-specific pricing information, bids/estimates
7    presented to the contact, pending projects, previously negotiated discounts and
8    information regarding the contact, product technology the contact is involved in, *etc.*

9     27.    Defendants never had lawful possession, control or custody of the trade
10   secrets. Furthermore, Defendants were not the authors or contributors to the trade
11   secrets.

12     28.    Mobile Monster, Inc. ("Mobile Monster" or "MMI") is a Canadian
13   company owned 100% by Plaintiff and was founded over a decade ago in 2013. Mobile
14   Monster is a full-service consulting and software development company based in
15   Toronto, Ontario, Canada. It provides custom web, cloud, mobile, digital and desktop
16   software development and consulting services to clients in every industry from startups
17   to large corporations. It solves business and technology problems by reviewing the
18   administrative and technical requirements of its clients' operating systems. Based on its
19   findings and discussions, it designs a cost-effective comprehensive IT solution tailored
20   to the clients' needs. The services include customer software development, web
21   development, project management, UX/UI designs, mobile e-Commerce, QA testers,
22   Native iOS & Android, native Tablet and API services.

23     29.    Mobile Monster's success was empowered by its licensed use of Plaintiff's
24   trade secret databases mentioned *supra.*

25     30.    Based on MMI's success in the Ontario market, Plaintiff was looking to
26   expand its operations into the United States. Plaintiff discovered a growing need to
27   provide U.S. companies with full-service high quality onshore IT development and
28   consulting services with physical presence in the United States.

31.    By expanding and operating in the U.S., Plaintiff would be exclusively focusing on the U.S. market by providing homegrown, U.S. Delivery Teams consisting of Developers, Project Managers, Quality Assurance Testers and Designers.

32.    This technical advantage of a US-based performance workforce would ensure MMI, through its expansion company, would always be producing high-quality code for U.S. based companies, especially those in sectors that require U.S. citizens only to work on technical projects.

33.    Mobile Monster also had a massive competitive advantage, it had permission to use Plaintiff's trade secret information that would be used to launch the expansion into the United States.

34.    Defendant Tyler Davis was well aware of Plaintiff's massive competitive advantage and database. In fact, between 2014 through 2017, Davis witnessed Plaintiff's competitive advantage in a separate company Plaintiff helped grow from $6 million to approximately $60 million in just three years, a company called Surge, LLC ("Surge"), an interstate software development company. In 2017, Davis received payment for over a million dollars from the substantial value of Plaintiff's activities, knowhow and database while Plaintiff was providing consulting service through MMI to Surge, LLC.

35.    In 2017, Davis, with his knowledge of Plaintiff's value, began soliciting Plaintiff to partner with him in Plaintiff's plans to expand into the United States.

36.    A hurdle Plaintiff needed to overcome in the expansion to the United States from Canada was the need for a U.S. citizen with a valid social security number--so the expansion company would be able to obtain an EIN number through a US citizen.

37.    Other than Davis' social security number, Davis brought no value to Plaintiff's business expansion, Davis had no knowledge of how to run or grow a software development company. In fact, Davis had never run any company with more than a few million in revenue, but Davis knew Plaintiff's capabilities and possession of trade secret data.

VERIFIED COMPLAINT FOR MISAPPROPRIATION OF TRADE SECRET DAMAGES AND INJUNCTIVE RELIEF

EXHIBIT 6, PAGE 212

38.    In 2017, Davis, realizing he was bringing no value to the business expansion, Davis promised to contribute at least $750,000 towards Plaintiff's expansion efforts into the United States, and, in exchange Davis would receive a minority 49% interest in the expansion company.

39.    In 2017, Plaintiff hired immigration attorneys, who advised Plaintiff that he can expand and move to the United States under a work visa known as an L1-A that is administered through the Department of Homeland Security.

40.    The Department of Homeland security classifies the visa as, "The L-1A nonimmigrant classification enables a U.S. employer to transfer an executive or manager from one of its affiliated foreign offices to one of its offices in the United States. This classification also enables a foreign company that does not yet have an affiliated U.S. office to send an executive or manager to the United States with the purpose of establishing one."

41.    "To qualify for L-1 classification in this category, the employer must: Have a qualifying relationship with a foreign company (parent company, branch, subsidiary, or affiliate, collectively referred to as qualifying organizations); and Currently be, or will be, doing business as an employer in the United States and in at least one other country directly or through a qualifying organization for the duration of the beneficiary's stay in the United States as an L-1. While the business must be viable, there is no requirement that it be engaged in international trade."

42.    The L-1A visa is designed for foreign companies wishing to transfer select employees to a U.S. affiliate, subsidiary, or branch. The nature of this qualifying relationship can be one of three types. Plaintiff's L1-A petition was approved under the "Affiliate Relationships" standard, which requires that "Both companies are owned and controlled by the same parent or individual."

43.    Following the advice of immigration counsel, Plaintiff with Davis' participation in the process, used Davis' social security number to obtain an EIN number

EXHIBIT 6, PAGE 213

1  for the expansion company called TopDevz, LLC that was incorporated by the
2  immigration attorneys on May 9, 2017.

3      44.    The immigration attorneys also issued stock certificates presented to
4  Homeland Security signed by Plaintiff and Davis. A majority 51% stock certificate in
5  Plaintiff's personal name and 49% in the name of Tyler Davis.

6      45.    This structure satisfied the L-1A visa requirement with Plaintiff personally
7  owning 100% of MMI and 51% majority of TopDevz.

8      46.    For foreign employers seeking to send an employee to the United States as
9  an executive or manager to establish a new office, the employer must also show that: the
10  employer has secured sufficient physical premises to house the new office; the employee
11  has been employed as an executive or manager for one continuous year in the three years
12  preceding the filing of the petition; and the intended U.S. office will support an
13  executive or managerial position within one year of the approval of the petition. (8 CFR
14  214.2(l)(3)(v))

15      47.    The immigration attorneys also provided an operating agreement for
16  TopDevz, along with other documents and the petition was approved by the Department
17  of Homeland Security under the L-1A expansion criteria, "Mobile Monster's expansion
18  into the U.S. market calls for the U.S. operations to be run independently from the
19  Ontario Company initially under the executive leadership of the Managing Director, Mr.
20  Rajaee."

21      48.    On March 22, 2017, much prior to the visa approval or incorporation of the
22  expansion company TopDevz, Plaintiff personally purchased the domain,
23  "topdevz.com" and personally funded the development of the website "topdevz.com",
24  which Plaintiff would then utilize his trade secret data and know-how to build revenue
25  for the expansion company.

26      49.    This structure ensured the legal retainment of the data's ownership that
27  would only be accessed through Plaintiff's domain accounts and required usernames and
28  passwords. This structure would also be compliant with the L1-A expansion

1  requirements in managing TopDevz independent of Mobile Monster, with Plaintiff
2  owning a personal majority interest in both entities.

3      50.    TopDevz's independent expansion formation meant software development
4  projects sourced and administered by Mobile Mobster staff (using Plaintiff's database)
5  would be run through TopDevz for the performance of the contracts and the profits of
6  the projects would be split 51/49 between Davis and Plaintiff.

7      51.    However, all the data entry, leads, workforce sourcing, administration,
8  management, contracting, financing, human resources and marketing services were
9  being exclusively collected, created, compiled, packaged and generated by Mobile
10  Monster personnel using Plaintiff's trade secret data.

11      52.    The ownership structure of the data, its management and its contributions
12  thereof were also consistent with the actual course of conduct year over year since 2017,
13  including Plaintiff's funding of the trade secret development and maintenance.

14      53.    During the entirety of Plaintiff's affiliation and expansion involving
15  TopDevz, Plaintiff took steps to protect the trade secrets data's confidentiality, its
16  ownership, custody and control.

17      54.    As the personal owner of data, Plaintiff hired teams of people, contracted
18  through his Canadian Mobile Monster to begin the expansion efforts.

19      55.    MMI's personnel was responsible for the authoring and contributions to the
20  database to further enrich the data under the direct supervision of Plaintiff.

21      56.    The data was updated daily, with thousands of entries per day by Mobile
22  Monster staff that sometimes reached almost 20 full-time persons. Separately, highly
23  proprietary source code authored by Plaintiff was executed in the background to sort and
24  rank each contact record.

25      57.    The data then was further analyzed and compiled from proprietary
26  algorithms authored by Plaintiff to yield a target list of contacts who were technology
27  executives and software developers. The combination and compilation of all this
28  information has tremendous economic value for a software development company.

8

VERIFIED COMPLAINT FOR MISAPPROPRIATION OF TRADE SECRET DAMAGES AND INJUNCTIVE RELIEF

58.    Within the data structure, Plaintiff has personally authored propriety methods that generate custom subsets of distinct contacts, culled from the massive database, which are then used to market software development services to. For example, the algorithms would run to automatically exclude government entities, non-profits or universities that tend to have very long sales cycles or very low budgets for software development.

59.    The final output would drastically increase the quality and accuracy of the data yielding precise search results for contacts who would be strong targets for software development services.

60.    The information and data was immensely difficult to collect and compile in the form in which it appeared in the compilation that was exported and downloaded by Defendants with a few keystrokes from the unlawful use of their individual password-protected credentials that was entrusted to them for the purposes of servicing TopDevz contracts in the United States.

61.    The data had a unified end-process design and operation of which, in a unique combination, affords a massive competitive advantage in the software development space both in sourcing clients but also the accompanying software developers.

62.    Plaintiff has used his ownership of the data since 2014 to provide consulting services through his company Mobile Monster. The consulting services and use of the database has generated millions in income for software development companies and for Plaintiff.

63.    The source code algorithms used to compile the data is highly complex. As one example, the trade secret can essentially distinguish thousands of job titles to automatically filter out records that would be of no use for a software development companu's services. Saving tremendous amounts of manual labor and costs associated with creating such a precise and accurate contact list.

VERIFIED COMPLAINT FOR MISAPPROPRIATION OF TRADE SECRET DAMAGES AND INJUNCTIVE RELIEF

EXHIBIT 6, PAGE 216

64.     For example: a CIO, could be a "Chief Information Officer" or it could be a "Chief Investment Officer" or on the software development side, a "Plant Engineer" would be filtered out from population in the database.

65.     Previous to TopDevz, Plaintiff's database, methods, proprietary algorithms were used to grow Surge, LLC, an interstate software development company, from $6 million to $60 million in revenue a year between 2014 and 2017, generating millions in profits.

66.     In 2017, Surge LLC was acquired, and Plaintiff maintained ownership and control of his data. Nothing in the Surge, LLC, agreement required Plaintiff to assign or vest any ownership or copyright interest in his database, methods or process.

67.     From 2017 to 2021, and through COVID-19, Plaintiff again used his trade secret information, method and process to grow TopDevz, LLC, another interstate software development company, from $0 to nearly $30 million in combined revenue.

68.     Another section of the database contains detailed information of over 400,000 software developers, their life experience, and specific technical skillsets, along with their addresses throughout the United States, Canada and other countries.

69.     In a similar method and process to secure client contacts, the software developer database was used market to software developers who would then be staffed on the accounts.

70.     The proprietary method and process would complete the circle of not only landing client contacts but also enable the expansion company to quickly source qualified technical developers with the right skills and experience to service the contacts' project needs.

71.     Defendants, as TopDevz employees, were given separate individual access with a limited dissemination of the trade secrets in order to exploit the economic value of the secret in managing the software development projects run through TopDevz. For example: calling a contact to their cell phone or direct email to discuss their project or handle a complaint related to a project in flight, or to discuss a discrepancy in an invoice

10

that was authored by Mobile Monster and sent by Mobile Monster employees using Plaintiff's domain, "topdevz.com"

72.    Plaintiff's trade secret databases reside in the cloud through multiple providers. All the cloud services that house the various data are registered and owned in Plaintiff's personal name under the domains "topdevz.com" and "mobilemonster.ca" This includes:

   a. Google Enterprise Services, which includes Drive, Sheets, Docs, Slides, Gmail and others.

   b. Zoho Corporation, which is a multinational technology company that makes computer software and web-based business tools used by end-users to create, interface and update databases.

   c. Atlassian, which owns a project management software called JIRA, that allows bug tracking, issue tracking and agile project management. Jira is used by a large number of clients and users globally for project, time, requirements, task, bug, change, code, test, release, sprint management related to software projects.

73.    On the cloud stored data, Plaintiff's data resides on:

   a. Google Workspace modules (Google Drive, Gmail, Docs, Sheets and other modules within the topdevz.com or mobilemonster.ca domains) with account numbers ending in 3874 and 4179.

   b. Data residing on Zoho servers using the topdevz.com or mobilemonster.ca domains ending in 4917.

   c. Data residing in JIRA servers registered with the domain "topdevz.com" has an account ending in PDCK.,

   d. The Amazon AWS Account registered under the root user staffing@topdevz.com who's owner is Plaintiff. With the account ending in ending in 6860.

---

11

VERIFIED COMPLAINT FOR MISAPPROPRIATION OF TRADE SECRET DAMAGES AND INJUNCTIVE RELIEF

1    74.    Plaintiff also stored trade secret information on physical servers at his office

2  in San Diego. The physical servers held the secret keys and algorithms used in the

3  databases and accounts. This included:

4           a. Physical Servers bought on Amazon:

5               i.   2 of: HP 8300 Elite Small Form Factor Desktop Computer, Intel

6                    Core i5-3470 3.2GHz Quad-Core, 8GB RAM, 500GB SATA,

7                    Windows 10 Pro 64-Bit, USB 3.0, Display Port (Order 111-

8                    9537648-7805869),

9              ii.   2 of: HP 8200 Elite, Intel Quad Core i5 3.10 GHz, 16GB DDR3,

10                   1TB HDD, Windows 10 Pro 64-Bit, (Order 113-9091924-

11                   8354606),

12            iii.   2 of: Dell Optiplex 790 SFF Computer, Intel Core i5 3.1 GHz, 16

13                   GB RAM, 1 TB HDD, DVD-RW, Windows 10 Pro (Order 111-

14                   2770703-1406640),

15            iv.    1 of: Dell Optiplex 790 SFF Computer, Intel Core i5 3.1 GHz, 16

16                   GB RAM, 1 TB HDD, DVD-RW, Windows 10 Pro (Order 111-

17                   0764111-5179425).

18          b. Apple iMac Enterprise Edition Serial No.: H4TGF14PPN7C

19          c. Apple Enterprise Server Model Year 2013, Serial No: F5KXW024J3RY

20          d. Physical Mass Storage Devices: Purchased: G-Technology 10-Terabyte

21              G-DRIVE with Thunderbolt 3 and USB-C Desktop External Hard Drive,

22              Silver - 0G05378-1 – Serial Number: 114-0012471-8625049. This

23              massive backup hard drive stored a complete backup of every aspect of

24              Plaintiff's trade secret.

25    75.    Defendant Garcia downloaded Plaintiff's data from her IP address

26  73.2.43.170, a Comcast Cable Communications LLC in Chico, CA, onto a laptop that

27  was purchased from Costco in the amount of $1,838.96, with Defendants Lintz, less than

28  two weeks prior to the theft, on December 15, 2021.

12

76.     In 2018, Plaintiff was approved for the renewal of his L-1A visa based on the near exact same petition in 2017, detailing the continued expansion efforts by Plaintiff.

77.     On or about February 9, 2021, Defendant Tyler Davis, who was going through divorce proceedings, that as of this filing, are still pending, attempted to extort Plaintiff for $750,000 and threated Plaintiff that if he did not comply, Davis would use his friend at the District Attorney's office to remove him and his entire family from the United States for criminal conduct. Plaintiff immediately initiated legal proceedings, which have since led to a series of legal disputes that would evolve into extensive (fraudulent and criminal) litigation arising from the expansion affiliate company TopDevz.

78.     Defendant Attorneys Scalia and Carpenter both started their representation of Davis around February of 2021.

79.     On March 10, 2021, Defendant Lintz signed a written letter addressed to the department of Homeland Security in support of renewing Plaintiff's L-1A that was up for renewal again.

80.     In the letter Lintz states,

"Mobile Monster was incorporated in the Province of Ontario on October 30, 2013. Mr. Rajaee owns 100% of issued shares... and currently has 14 employees/contractors... Mobile Monster hires additional contract workers as needed depending on the size of the project... Successful U.S. Expansion... U.S. Operations, TopDevz, LLC... Mr. Rajaee has 51 percent ownership interest and is the sole managing member. Mr. Tyler Davis, a U.S. citizen, owns the remaining 49 percent and is a member... During the economic downturn of the Covid19 pandemic, Mobile Monster was successful in generating new sales leads that TopDevz monetized...Mobile Monster's sophisticated method of sourcing, sorting, contacting and validating decision makers in the USA remotely has proven extremely valuable to TopDevz... Some notable contracts generated by Mobile Monster for TopDevz include Becton, Dickinson and Company, Drive Time Automotive Group Inc. and Procore Technologies, Inc. [All these companies are multi-billion dollar corporations] Mr. Joshua Lintz has been hired as Head of Delivery in March 2020 with an annual salary of $200,000

13

VERIFIED COMPLAINT FOR MISAPPROPRIATION OF TRADE SECRET DAMAGES AND INJUNCTIVE RELIEF

plus bonuses. In this position he is responsible for the day-to-day operations. He reports directly to Mr. Rajaee…Within the next 3 years, TopDevz will be hiring in-house a COO, CFO and marketing team to generate US leads by marketing activities such as Google AdWords campaigns, outbound email marketing campaigns, email list purchasing and attending Chief Information Officer (CIO) conferences… It is critical that Mr. Rajaee continue in his capacity as Managing Director in order to ensure that the U.S. operations continues to expand."

81.    In 2021, TopDevz earned a net-profit of $1,400,000.

82.    On January 6, 2022, an interim arbitration order (wrongfully) found that Tyler Davis owned 96% of the entity TopDevz.

83.    On or about January 7, 2022, Defendant Carpenter immediately began threatening Plaintiff with "immigration & criminal" consequences.

84.    Since TopDevz was only an expansion entity for Plaintiff, the LLC did not own, possess or control any of the trade secret data. Davis was aware of this since the inception of TopDevz and so was Defendant Lintz, who wrote to attorney Carpenter admitting his knowledge thereof regarding the importance of Mobile Monster:

"Hello, I'm writing to seek guidance on some issues at TopDevz. I am not sure if I am supposed to talk only to you or Tyler…I just found out this morning around 10:30 am that we just lost our entire recruiting/marketing team. Without this team we lose all of the labor used to build and manage the candidate pipelines. We also lose the outbound messaging, which is a similar capacity or expected work product for both marketing and recruiting…We're trying to do our jobs and keep the ship moving forward despite whatever is going on with Ashkan and Tyler or TopDevz ownership. I need to make some important business decisions here in the best interest of TopDevz."

85.    Lintz has also made numerous on-camera public statements about his detailed knowledge of Plaintiff's company Mobile Monster, its contractors, employees, and Plaintiff's personal trade secrets.

86.    Lintz's statements are available on Plaintiff's YouTube channel, available publicly at "https://www.youtube.com/@RemotePreneurs", Season 1, Episode Number 3 Part 2, publicly available at https://www.youtube.com/watch?v=lC_a0zkoupQ.

VERIFIED COMPLAINT FOR MISAPPROPRIATION OF TRADE SECRET DAMAGES AND INJUNCTIVE RELIEF

87.     Lintz, on camera at 0 min 51 sec, says "It's so similar to what we're doing at Surge." "there is a lot of differences that are incredibly compelling."

88.     At 1 min 07 sec, Lintz states,

"The big driver, of wanting to make this change and join your team, is because of the investment in the technology layer. I mean the things you have built with PULSE [compiled developer database], the way you have automated the CRM [compiled contact database mentioned *supra*]. I mean that, to me, is incredibly scalable."

89.     Lintz, Davis and attorney Carpenter and Scalia knew if they could steal the trade secrets, Plaintiff's expansion and visa status would be directly destroyed, and Plaintiff would be forced to leave the United States and would lose all his income and ownership value in TopDevz.

90.     On January 10, 2022, Carpenter and Scalia filled frivolous legal documents attempting to obtain an injunction against Plaintiff's trade secrets, fraudulently accusing Plaintiff that he was misappropriating TopDevz's intellectual property.

91.     On January 10, 2022, Davis submitted a judicial declaration falsely asserting that neither Plaintiff nor Mobile Monster owned the intellectual property. In his judicial declaration, in trying to obtain a restraining order, Davis fraudulently represented,

"Ashkan Rajaee, and all persons or entities cooperating with him (including without limitation Mobile Monster, Inc.), are hereby enjoined and restrained from removing any data, documents, intellectual property, records, customer lists, customer data, vendor lists, vendor data, contractor lists, contractor data, accounts receivable documents, or other business records of TopDevz, LLC."

Davis and Carpenter knew the representations they were making were fraudulent because TopDevz did not own the legal rights to the database that contained the trade secrets of Plaintiff, and they further knew that the entire basis for Mobile Monster's expansion and the formation of TopDevz was exclusive of any legal ownership rights of Plaintiff's trade secrets. This was reflected in the entire course of dealings and consistent

15

EXHIBIT 6, PAGE 222

with Plaintiff's immigration petition to the Department of Homeland Security, year after year.

92.    On the day of the hearing related to the January 10, 2022, filing, Carpenter, on record, fraudulently represented to the arbitrator on his *ex parte* hearing motion that Plaintiff, "trying to divert both of the intellectual property.. any value in this company is being threatened…as well as the intellectual property involved"

93.    After the interim order was issued on January 6, 2022, Davis immediately began to contact former Mobile Monster employees in Canada, without Plaintiff's knowledge, in order to obtain help in trying to steal and download the trade secrets of Plaintiff.

94.    Specifically, Davis contacted Siarra Wood, who was a full time Mobile Monster employee and Plaintiff's assistant for numerous years, and since has become averse to Plaintiff.

95.    Since Wood's credentials were revoked, Davis gave his own read-only confidential credentials with the username "tyler@topdevz.com" to Siarra in an attempt to have her figure out a way to export all the trade secret data, because she would know where to look for what was valuable and she had the know-how of how take it. The access IP used was 142.113.169.143, which is located in Scarborough, Ontario, Canada, where Siarra Wood was living at the time.

96.    Wood's attorney admitted to the unauthorized access in a written letter,

"…my client was asked by Mr. Davis to help him locate TopDevz accounting information in the Zoho Books system. This request came to my client on January 7, 2022"

97.    When the Canadian employee could not achieve the objective, on or about January 9, 2022 at 5:44 PM, someone, Plaintiff believes Davis or Siarra Wood, reached out to GoDaddy, who is the company responsible for registering domain ownership. This person attempted to impersonate Plaintiff in order to gain access to the "topdevz.com"

VERIFIED COMPLAINT FOR MISAPPROPRIATION OF TRADE SECRET DAMAGES AND INJUNCTIVE RELIEF

1    domain and transfer it out of Plaintiff's personal name. Plaintiff became aware because
2    GoDaddy sent a security warning email to Plaintiff's personal email address.
3        98.    On January 9, 2022, a competitor "ProDev.io", whose CEO is James Hyde,
4    without authorization accessed Plaintiff's systems using tyler@topdevz.com confidential
5    credentials from IP address 74.201.177.179 located in Salt Lake City, where James Hyde
6    lives. James accessed the system multiple times without Plaintiff's knowledge at the
7    time.
8        99.    When neither Defendant Davis nor Lintz nor Siarra could steal the
9    ownership of the accounts housing Plaintiff's trade secrets, they hatched a plan to
10   collectively steal it by accessing, exporting and downloading all the information through
11   TopDevz W2 employees, Defendants Garcia and Frye, who were each granted higher
12   access levels.
13      100.   Both Garcia and Frye have signed confidentiality and non-disclosure
14   agreements.
15      101.   After the data was taken, Lintz incorporated Talentcrowd, and everyone,
16   except Wood, was hired full-time by Talentcrowd.
17      102.   Heavy forensic data has been collected and compiled from private
18   investigations using the Google Vault forensic digital e-discovery tool. Also, audit
19   access logs built into the various hosting providers of the trade secret data, including
20   Google Vault and Zoho audit logs, evidence the access, export, download, transmission,
21   transfer and upload to Talentcrowd.
22      103.   Davis has admitted to solicitating the theft of trade secrets belonging to
23   Plaintiff,

> "I [Tyler Davis] instructed her [Melissa Garcia] to download as much
> information as humanly possible at that time."

> "I [DAVIS] basically asked her to start downloading as much information
> as she possibly could."

VERIFIED COMPLAINT FOR MISAPPROPRIATION OF TRADE SECRET DAMAGES AND INJUNCTIVE RELIEF

1     104.   On January 12, 2022, Defendant Melissa Garcia, a former TopDevz

2  employee who became the Chief Administrative Officer at Talentcrowd, unlawfully

3  downloaded thousands of files and electronic documents from the topdevz.com Google

4  Drive owned by Plaintiff. These documents were created and maintained by personnel

5  from Mobile Monster only.

6     105.   On January 13, 2022, Defendant Garcia downloaded a five-year span of

7  data hosted on Plaintiff's domain that was authored and maintained by Mobile Monster

8  personnel. This included invoices, bills, receipts, and personally identifiable information

9  that were sourced from Plaintiff's master database, all of which were authored and

10  managed by Mobile Monster staff.

11     106.   On January 14, 2022, Defendant Frye used her credentials,

12  afrye@topdevz.com, and forwarded massive amounts of information to her personal

13  email address, afrye262632@gmail.com, all of which flowed or was a product from

14  Plaintiff's database.

15     107.   On January 14, 2022, Defendant Frye downloaded the entire trade secret

16  database and the personally identifiable information of thousands of software developers

17  within Plaintiff's domain.

18     108.   On or about January 14, 2022, Defendant Frye exfiltrated an entire backup

19  of Plaintiff's Project Management database called "JIRA", which included contact lists,

20  project data, financial information, and detailed project data. Lintz in a judicial

21  declaration admitted to his knowledge of this and further admitted that the data was then

22  misappropriated by Talentcrowd and fraudulently represents that somehow Davis was

23  the legal owner of the data,

> "...Davis, at Davis' request, took a backup of the existing Jira instance
> used by TopDevz ... ...Talentcrowd received permission from Davis to
> extract the history and project data for the then-current customers... In
> April 2022, Talentcrowd took over the decommissioned Jira account..."

27     109.   On January 14, 2022, Defendant Frye orchestrated the execution of the how

28  the downloaded information would be monetized by Talentcrowd. The scheme would

18

VERIFIED COMPLAINT FOR MISAPPROPRIATION OF TRADE SECRET DAMAGES AND INJUNCTIVE RELIEF

1   involve a national wire fraud campaign that would use the downloaded data to make

2   contact to people's personal accounts. The email was composed with the subject "Next

3   Steps", the email reads,

4       "Hi Guys! Here is the list of what we need to do and what I have so far:"

5   The scheme included the setting up of a look-alike domain that would be uploaded with

6   the trade secret data and used to email people with misrepresentations of, *inter alia*, that

7   TopDevz is "rebranding."

8       110.   Frye's email further reads,

9       "New Google Email Addresses…Invite users to their personal email
        addresses…-- List:…List of existing Slack [instant messaging service]
10      Users:"

11

12      111.   On January 15, 2022, the "topdevz.io" domain, (also belonging to Plaintiff

13  personally), was hacked by Defendant Vincil Bishop (Bishop and Lintz are also partners

14  in a separate company called SKAN Technologies) and transferred to Tyler Davis at his

15  email "tyler.davis@porterllc.com", which is the domain of Porter Consulting, LLC, a

16  construction management company Davis owns and is the CEO of.

17      112.   On or about January 16, 2022, Ms. Frye started stealing thousands of

18  documents from the topdevz.com-hosted applications, including "Hourly Breakdown" of

19  contractors, "Intellectual Property, Non-Competition, Non-Solicitation Agreements" all

20  authored by Mobile Monster personnel and hosted on Plaintiff's personal domain.

21      113.   The download theft was intertwined with various other torts that are the

22  subject of other lawsuits. However, for this case, Defendants then uploaded the

23  exfiltrated trade secret information into the "topdevz.io" domain.

24      114.   After all the information was uploaded to the new domain they also stole,

25  Defendants sent fraudulent communications to the highest value contacts, who were

26  told, *inter alia*, there is a new "rebrand" and to "pay a different bank account".

27

28

VERIFIED COMPLAINT FOR MISAPPROPRIATION OF TRADE SECRET DAMAGES AND INJUNCTIVE RELIEF

115.    On or about January 20, 2022, the wire fraud campaign commenced with the utilization of the uploaded data to the "topdevz.io" domain. Defendant Davis was the author of the publication, with carbon copies to Defendant Lintz, Frye and Garcia.

116.    The contacts were told that:

    a.  That there was new TopDevz ownership, "I'm happy to officially announce a major change to TopDevz's ownership."

    b.  A sham rebrand, "We're also announcing a few other changes, which includes a rebrand from to TopDevz.com to TopDevz.io,"

    c.  New emails "topdevz.io", "we're moving over to new emails (immediately)"

    d.  A new bank account that requested the reader to pay into ending in 0516 at JPMorgan CHASE, "In addition, we changed our corporate address and ACH information – attached is information for your files and AP team."

117.    Once the data was used to divert all the highest value contacts, Defendants had, essentially overnight, replicated tens of millions in annual revenue that was only made possible from the theft of the database information.

118.    Separate from the download theft, a physical attack on the computer servers housing highly proprietary information was executed simultaneously.

119.    One of the addresses Plaintiff used to work from was 7460 Girard St, La Jolla, California, Units 7 & 8. One of the units was Plaintiff's personal executive office.

120.    In the Girard office, Plaintiff stored numerous physical computer servers that contained the highly sensitive source code and algorithm information used in the database schemas. (The servers and equipment mentioned *supra* with serial numbers)

121.    Defendant Davis and Lintz had the locks changed overnight and locked out Plaintiff and other TopDevz employees. Then, shortly thereafter, used their exclusive access to physically steal all the servers located this address.

---

20

VERIFIED COMPLAINT FOR MISAPPROPRIATION OF TRADE SECRET DAMAGES AND INJUNCTIVE RELIEF

122.    Defendant Lintz has judicially admitted that on January 15, 2022, he was present, when the offices, including Plaintiff's personal office that was burglarized,

> "While I [Lintz] was present on January 15, 2022 at the office and stood outside, I did not have any personal involvement in seizing and/or confiscating the computers and/or hard drives nor did I even touch them." … "The computer servers and other assets and property that Rajaee is referring to belong to TopDevz, not Rajaee, and were seized by Davis".

TopDevz however, cannot prove ownership because all the servers were purchased by Plaintiff personally as part of investing in the trade secret infrastructure.

123.    On or about January 19, 2022, Defendant Frye committed numerous additional overt acts, using the trade secret information downloaded to target as many people as she could to switch to Defendant controlled servers.

124.    As an example, on or about January 19, 2022, Frye stated,

> "No .com is going away, so download anything you need."

and

> "Hey! Can you please check your personal email for a new TopDevz email and password? I need everyone over to the new domain as soon as possible."

125.    On January 19, 2022, Defendant Frye again used her credentials to access personnel through applications hosted on Plaintiff's domain and instructed them to move to the new Slack instant messaging system registered by Defendants on the topdevz.io domain,

> "Good Morning! Please discontinue using this Slack [instant messaging service] channel. Join us in the new instance. Check your TopDevz.io email address for credentials to the new time tracking system. All the details are in the new slack."

126.    On January 19, 2022, David Ward, a programmer, wrote on Slack instant messaging account on Plaintiff's domain,

> "I spoke with Amanda - they are going to be shutting down the TopDevz Jira before too long and switching how they track time to a new app. The new emails are a go they need us all to switch all are stuff over to them (but

21

they aren't turning them off until we have stuff switched over) …They are just retooling with the branding change, all is well there, it's just they are rebranding and switching around software."

127.   On January 20, 2022, Defendant Frye sent 1-to-1 messages to establish contact with targeted people and instructed them to check their personal email (stolen earlier from the exfiltration of Plaintiff's databases),

"Hey! Check your personal email, and join us in the new TopDevz.io domain today please! Call or text me with any issues! 734-341-3773."

128.   Frye also target and solicited contacts on the topdevz.com instant messaging tool called "Slack", and ordered the contacts under fraudulent pretenses to switch communication accounts,

"we [TopDevz] are going through a branding…we are transitioning to new emails. We will send those to you, and we will be sending you an invite for our new instance of slack. Be on the lookout!"

129.   On January 31, 2022, Lintz executed a contract with a company called Origin 63 in San Diego, whose contact information was downloaded as part of the scheme.

130.   Origin 63 is a company that helps businesses migrate, import and implement large volumes of data into "Hubspot" the technical equivalent of "Zoho" used by Plaintiff.

131.   Under the Origin 63 scope of work contract, there are specific scopes of work involving,

"Import of previously existing properties in database…Support of contact database import…such as logged emails, meetings and calls…" the scope of work contract also included, "ENTERPRISE: Import existing sales deals into HubSpot CRM database…ENTERPRISE: Migration of deal pipeline to new system… Migration of activity data (phone calls, emails, meetings, to-dos) from existing CRM"

132.   In March 2022, numerous Talentcrowd issued invoices evidence that the exact same contact records that were downloaded from Plaintiff's database.

VERIFIED COMPLAINT FOR MISAPPROPRIATION OF TRADE SECRET DAMAGES AND INJUNCTIVE RELIEF

133.   Thousands of work log entries under the "topdevz.io" and "talentcrowd.com" domains were discovered by Plaintiff for the exact same contacts downloaded, representing tens of millions of dollars in economic value.

134.   Since Defendants had downloaded and now possessed all the confidential information, along with personal contact data, the trade secret data was then converted to Talentcrowd domains, and the Defendant Talentcrowd workers would simply solicit the contacts to sign new contracts with Talentcrowd under a fraudulent guise that TopDevz has been judicially dissolved–this independent fraud and wrongdoing regarding majority ownership of TopDevz and the tortious conduct relating to the decimation of TopDevz is filed in this district, Case no. 24-CV-001.

135.   On May 26, 2022, in an attempt to hide the digital trail, Defendant Joshua Lintz and Talentcrowd purged all the metadata from their operational databases. However, because Plaintiff was the owner of the records, the Talentcrowd servers sent notifications to the owner of the record that critical data was being trashed by a user. This in itself proves the data Talentcrowd has been using and continues to use, has originated from "topdevz.com" domain user accounts, owned by Plaintiff.

136.   On March 1, 2023, Defendant Frye, now Talentcrowd's Chief Operating Officer, publicly announced on Facebook the company's "unbelievable" explosive growth, specifically, how Talentcrowd, within its first year of operation, has invoiced almost 90,000 in billable hours, representing over $12 million in revenue.

137.   The only way in which Defendants were able to achieve instant success at Talentcrowd is through the theft of trade secret information belonging to Plaintiff.

138.   Defendants, with aid from their attorneys, entered into contracts with each other in an attempt to legitimize and obfuscate the true ownership of the data. However, none of them have ever legally owned the trade secret data, its custody or its control.

139.   TopDevz employees did not create, contribute or manage the trade secrets.

140.   TopDevz employees never owned or managed any marketing or recruiting databases and TopDevz never hired any employees to perform those tasks either.

VERIFIED COMPLAINT FOR MISAPPROPRIATION OF TRADE SECRET DAMAGES AND INJUNCTIVE RELIEF

141.    TopDevz employees never conducted this work, because TopDevz was an expansion company that relied 100% on Plaintiff's trade secrets and services by MMI.

142.    Under California law Davis or the LLC members could only access information relating to the internal affairs of the LLC under California Corporations Code, § 17704.13 subsection (d)(1-7). Documents Related to the Internal Operation of the LLC.

    a.  A copy of the minutes, if any, of each meeting of members and of any written consents obtained from members; (17701.13 (d) (7) "The books and records of the limited liability company as they relate to the internal affairs of the limited liability company for at least the current and past four fiscal years.")

    b.  Any document which discusses the amount of capital contributions of each member in terms of cash or agreed value of other property or services contributed; (17701.13 (d) (7))

    c.  Any document which discusses the details of events, times, or other agreements made for further contributions to be made from members, if any; (17701.13 (d) (7))

    d.  Any document which discusses the share of profits and losses due each member;

    e.  Any document which discusses any right of a member to receive distributions of funds;

    f.  Any document which discusses any right of a manager to make distributions of funds to a member;

    g.  Any document which discusses each member's respective voting rights;

    h.  Any document which discusses the details of events that would cause the LLC to be dissolved and its affairs wound up, if any.

143.    Despite a judgment being separately entered in August 2023 against Plaintiff relating to TopDevz, Plaintiff later uncovered that he had been a victim within a

24

VERIFIED COMPLAINT FOR MISAPPROPRIATION OF TRADE SECRET DAMAGES AND INJUNCTIVE RELIEF

EXHIBIT 6, PAGE 231

criminal operation and wrongdoings in relation to TopDevz itself–conduct involving, identity theft, wire fraud, tax fraud, bank fraud, perjury, extrinsic fraud practiced against Plaintiff and the judicial machinery itself, by several of the same Defendants in this case. Subsequently, Plaintiff filed a federal lawsuit in this district, under case number 24-CV-001, and is now working with the Attorney General's office, the IRS investigative unit and the FBI, related to the criminal conduct, while Plaintiff pursues the civil torts that now, in a broader picture, are starting to appear more and more, warrant a RICO action.

**FIRST CLAIM FOR RELIEF (Against All Defendants)**
**Violation of Defend Trade Secrets Act 18 U.S. Code § 1832 et seq.**

144.    Plaintiff realleges and incorporates by reference the foregoing paragraphs of the Complaint as though fully set forth herein.

145.    The information that Defendants misappropriated constitutes trade secrets protected by the Economic Espionage Act, as Amended by Defend Trade Secrets Act, 18 U.S.C. § 1831 et seq.

146.    Defendants unlawfully accessed and obtained the trade secret information by using their access credentials to download then misappropriate Plaintiff's' trade secrets related to products and services used, and intended for use, in interstate commerce.

147.    The trade secret was related to a service that involves interstate and foreign commerce.

148.    Plaintiff took reasonable efforts to maintain the secrecy of the data's information, including, limiting access to each individual that was only possible from the secure use of a username and password.

149.    The data unlawfully obtained contained information that is not generally known to the public or to competitors of Plaintiff's, who can obtain economic value from its disclosure and use it to their own advantage.

150.    The data was compiled by Plaintiff's experience over many years, sourcing and structuring. The data included direct contact information, including cell phone

VERIFIED COMPLAINT FOR MISAPPROPRIATION OF TRADE SECRET DAMAGES AND INJUNCTIVE RELIEF

1    numbers, contacts job history, current employer, education, interests, social profiles,

2    address, city, years of communication history, financial information including contacts

3    companies revenues, costs, budgets, invoices, contracts, contact-specific pricing

4    information, bids/estimates presented to the contact, pending projects, previously

5    negotiated discounts and information regarding the contact, and product technology the

6    contact is involved in, which gives a massive competitive advantage over competing

7    software development firms.

8        151.   Defendants intended to, and did, convert the trade secret to economic

9    benefit for someone other than the owner.

10       152.   Talentcrowd received, possessed, used and benefitted from the information,

11   knowing it was obtained without authorization.

12       153.   Defendants' misappropriation of Plaintiff's' trade secrets was willful and

13   malicious. Plaintiff is entitled to exemplary damages in an amount up to twice actual

14   damages awarded.

15       154.   As a direct consequence of Defendants' misappropriation, Plaintiff has

16   suffered damages for actual loss in an amount to be proven at trial, including attorneys'

17   fees and costs.

18       155.   As a direct consequence of Defendants' misappropriation, Defendants have

19   been unjustly enriched, and Plaintiff is entitled to damages for such enrichment, in an

20   amount to be proven at trial.

21       156.   As a direct consequence of Defendants' misappropriation, Plaintiff is

22   entitled to seizure of the misappropriated information by the U.S. Marshals.

23       157.   The defendants obtained and used the information without permission from

24   the rightful owner. The defendants knew this information was proprietary.

25       158.   The information was in fact a trade secret.

26       159.   Defendants knew or intended that the owner of the trade secret would be

27   injured.

28

---

26

VERIFIED COMPLAINT FOR MISAPPROPRIATION OF TRADE SECRET DAMAGES AND INJUNCTIVE RELIEF

**SECOND CLAIM FOR RELIEF**
**(Trade Secret Misappropriation Under California Uniform Trade Secrets Act –**
**California Civil Code §§ 3426 et seq.) (Against All Defendants)**

160.   Plaintiff realleges and incorporates by reference the foregoing paragraphs of the Complaint as though fully set forth herein.

161.   As alleged above and herein, accessed, exported and downloaded from Plaintiff owned servers information and compilation of data that constitute trade secrets under the California Uniform Trade Secrets Act (California Civil Code section 3426 *et seq.*).

162.   Defendants unlawfully accessed and obtained the trade secret information by using their access credentials to download then misappropriate Plaintiff's' trade secrets related to products and services used, and intended for use, in interstate commerce.

163.   The trade secret was related to a service that involves interstate and foreign commerce.

164.   Plaintiff took reasonable efforts to maintain the secrecy of the data's information, including, limiting access to each individual that was only possible from the secure use of a username and password.

165.   The data unlawfully obtained contained information that is not generally known to the public or to competitors of Plaintiff's, who can obtain economic value from its disclosure and use it to their own advantage.

166.   The data was compiled by Plaintiff's experience over many years, sourcing and structuring. The data included direct contact information, including cell phone numbers, contacts job history, current employer, education, interests, social profiles, address, city, years of communication history, financial information including contacts companies revenues, costs, budgets, invoices, contracts, contact-specific pricing information, bids/estimates presented to the contact, pending projects, previously negotiated discounts and information regarding the contact, and product technology the

VERIFIED COMPLAINT FOR MISAPPROPRIATION OF TRADE SECRET DAMAGES AND INJUNCTIVE RELIEF

EXHIBIT 6, PAGE 234

1    contact is involved in, which gives a massive competitive advantage over competing
2    software development firms.
3        167.    Defendants intended to, and did, convert the trade secret to economic
4    benefit for someone other than the owner.
5        168.    Talentcrowd received, possessed, used and benefitted from the information,
6    knowing it was obtained without authorization.
7        169.    Defendants' misappropriation of Plaintiff's' trade secrets was willful and
8    malicious. Plaintiff is entitled to exemplary damages in an amount up to twice actual
9    damages awarded.
10       170.    As a direct consequence of Defendants' misappropriation, Plaintiff has
11   suffered damages for actual loss in an amount to be proven at trial, including attorneys'
12   fees and costs.
13       171.    As a direct consequence of Defendants' misappropriation, Defendants have
14   been unjustly enriched, and Plaintiff is entitled to damages for such enrichment, in an
15   amount to be proven at trial.
16       172.    The defendants obtained and used the information without permission from
17   the rightful owner. The defendants knew this information was proprietary.
18       173.    The information was in fact a trade secret.
19       174.    Defendants knew or intended that the owner of the trade secret would be
20   injured.

21                          **THIRD CLAIM FOR RELIEF**
22                    **Accounting (Against All Defendants)**
23       175.    Plaintiff realleges and incorporates by reference the foregoing paragraphs of
24   the Complaint as though fully set forth herein.
25       176.    Based on the foregoing allegations, Plaintiff is entitled to an accounting by
26   Defendants to determine the economic value unjustly obtained by the Defendants from
27   the misappropriation of the trade secrets.
28

VERIFIED COMPLAINT FOR MISAPPROPRIATION OF TRADE SECRET DAMAGES AND INJUNCTIVE RELIEF

EXHIBIT 6, PAGE 235

## PRAYER FOR RELIEF

Having alleged this Complaint against Defendants, Plaintiff's pray that the Court award the following relief:

1. Temporary and permanent orders requiring Defendants to return to Plaintiff's all downloaded data of Plaintiff's, including the storage drives, laptops and physical computer servers stolen in January of 2022, including all cloud-based storage accounts, to confirm the return and deletion of all of Plaintiff's' trade secrets and confidential information;

2. Temporary and permanent orders restraining and enjoining Defendants from soliciting any contact record downloaded from Plaintiff's data to the extent that such solicitation is enabled by or based on misappropriation of Plaintiff's' trade secrets and other confidential information;

3. Temporary and permanent orders restraining and enjoining Defendants from otherwise possessing, using or disclosing Plaintiff's' trade secrets and other confidential information misappropriated by Defendants;

4. Temporary and permanent orders restraining and enjoining Defendants from working for or with Talentcrowd;

5. An accounting from Defendants;

6. Judgment against Defendants for damages in an amount to be proven at trial;

7. Judgment against Defendants in the amount of their unjust enrichment as a result of their misappropriation, and use of Plaintiff's' trade secrets and other proprietary information;

8. Judgment against Defendants for double damages for their willful and malicious misappropriation of Plaintiff's' trade secrets pursuant to 18 U.S.C. § 1836 and CUTSA;

9. Judgment against Defendants in the amount of Plaintiff's' reasonable attorney's fees and costs as authorized by 18 U.S.C. § 1836 and CUTSA;

VERIFIED COMPLAINT FOR MISAPPROPRIATION OF TRADE SECRET DAMAGES AND INJUNCTIVE RELIEF

EXHIBIT 6, PAGE 236

1       10.For prejudgment and post-judgment interest; and

2       11.Such other and further relief as this Court deems just and equitable.

3

4 DATED this 22nd day of March 2024      Respectfully submitted,

5

6

7                    Ashkan Rajaee

8                    Pro Se Plaintiff

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

VERIFIED COMPLAINT FOR MISAPPROPRIATION OF TRADE SECRET DAMAGES AND INJUNCTIVE RELIEF

EXHIBIT 6, PAGE 237

1

## **DEMAND FOR JURY TRIAL**

2      Plaintiff Ashkan Rajaee hereby demands a trial by jury on all issues and causes of

3   action that qualify for a jury trial demand.

4

5      Dated: March 22, 2024                    Respectfully submitted,

6

7

8      _____

9                                                 Ashkan Rajaee

10                                                Pro Se Plaintiff

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

31

VERIFIED COMPLAINT FOR MISAPPROPRIATION OF TRADE SECRET DAMAGES AND INJUNCTIVE RELIEF

EXHIBIT 6, PAGE 238

## **VERIFICATION**

I, Ashkan Rajaee, declare:

I am a party to this action. I am also a member of TopDevz, LLC and Mobile Monster Inc. during the relevant time period. I certify under penalty of perjury that I have read and reviewed the Verified Complaint and authorized its filing. Based upon my and my various counsel's investigations, the contents of the Verified Complaint are true to the best of my knowledge, information, and belief.

I declare under the penalty of perjury under the laws of the State of California and the United States that the above is true and correct.

Executed on March 22, 2024, at La Jolla, California.

Ashkan Rajaee

*Pro Se Plaintiff*

VERIFIED COMPLAINT FOR MISAPPROPRIATION OF TRADE SECRET DAMAGES AND INJUNCTIVE RELIEF

EXHIBIT 6, PAGE 239

**EXHIBIT 7**

**SUPERIOR COURT OF CALIFORNIA**
## County of SAN DIEGO

**Register of Actions Notice**

| | | | |
|---|---|---|---|
| Case Number: | 37-2022-00026691-CU-PA-CTL | Filing Date: | 07/07/2022 |
| Case Title: | Davis vs Rajaee [IMAGED] | Case Age: | 411 days |
| Case Status: | Post Judgment | Location: | Central |
| Case Category: | Civil - Unlimited | Judicial Officer: | Joel R. Wohlfeil |
| Case Type: | Petition re: Arbitration Award | Department: | C-73 |

### Future Events

| Date | Time | Department | Event |
|---|---|---|---|
| No future events | | | |

### Participants

| Name | Role | Representation |
|---|---|---|
| Davis, Tyler B | Petitioner, Respondent on Appeal | CARPENTER, SCOTT R; Kirk, J. Douglas; REYNOLDS, KENNETH R |
| Rajaee, Ashkan | Respondent, Petitioner, Appellant | Benezra, Marc Lawrence |
| TOPDEVZ LLC | Respondent, Respondent on Appeal | Kirk, J. Douglas; REYNOLDS, KENNETH R |

### Representation

| Name | Address | Phone Number |
|---|---|---|
| BENEZRA, MARC  L | GLASER WEIL FINK HOWARD AVCHEN &SHAPIRO 10250 Constellation Boulevard 19th Fl Los Angeles CA 90067 | (310) 556-7895, (310) 553-3000 |
| CARPENTER, SCOTT  R | CUMMINS & WHITE LLP 2424 SE Bristol Street 300 Newport Beach CA 92660 | (949) 852-1800 |
| KIRK, J. DOUGLAS | KIRK & TOBERTY 2201 Dupont Drive 820 Irvine CA 92612 | (949) 851-0355 |
| REYNOLDS, KENNETH  R | 2020 HURLEY WAY SUITE 210 SACRAMENTO CA 95825 | (916) 925-3169, (916) 441-2526 |

| ROA# | Entry Date | Short/Long Entry | Filed By |
|---|---|---|---|
| 1 | 07/07/2022 | Petition to Confirm, Correct, or Vacate Contractual Arbitration Award (Alternative Dispute Resolution) filed by Davis, Tyler B. <br> Refers to: TOPDEVZ LLC; Rajaee, Ashkan | Davis, Tyler B (Petitioner) |
| 2 | 07/07/2022 | Civil Case Cover Sheet filed by Davis, Tyler B. <br> Refers to: TOPDEVZ LLC; Rajaee, Ashkan | Davis, Tyler B (Petitioner) |
| 3 | 07/07/2022 | Notice of Related Case filed by Davis, Tyler B. <br> Refers to: TOPDEVZ LLC; Rajaee, Ashkan | Davis, Tyler B (Petitioner) |
| 4 | 07/07/2022 | Declaration - Other filed by Davis, Tyler B. <br> Refers to: TOPDEVZ LLC; Rajaee, Ashkan | Davis, Tyler B (Petitioner) |
| 5 | 07/07/2022 | Case assigned to Judicial Officer Pollack, Gregory. | |
| 6 | 07/08/2022 | Case initiation form printed. | |
| 7 | 07/29/2022 | Original Summons filed by Davis, Tyler B. <br> Refers to: TOPDEVZ LLC; Rajaee, Ashkan | Davis, Tyler B (Petitioner) |
| 8 | 08/01/2022 | Summons issued. | |
| 9 | 07/29/2022 | Notice of Hearing filed by Davis, Tyler B. | Davis, Tyler B (Petitioner) |
| 10 | 08/05/2022 | Hearing on Petition scheduled for 12/23/2022 at 09:30:00 AM at Central in C-71 Gregory W Pollack. | |
| 11 | 08/05/2022 | Notice - Other (Amended Notice of Hearing on Joint Petition to Confirm Contractual Arbitration Award) filed by Davis, Tyler B. | Davis, Tyler B (Petitioner) |

EXHIBIT 7, PAGE 240

San Diego Superior Court    Case: 37-2022-00026691-CU-PA-CTL    Title: Davis vs Rajaee [IMAGED]

| | | | |
|---|---|---|---|
| 12 | 09/19/2022 | Ex Parte scheduled for 09/21/2022 at 08:30:00 AM at Central in C-71 Gregory W Pollack. | |
| 13 | 09/20/2022 | Ex Parte Application - Other and Supporting Documents filed by Rajaee, Ashkan. | Rajaee, Ashkan (Respondent) |
| 14 | 09/20/2022 | Declaration - Other (OF ASHKAN RAJAEE) filed by Rajaee, Ashkan. | Rajaee, Ashkan (Respondent) |
| 15 | 09/20/2022 | Declaration - Other (OF TIMOTHY LAMOUREUX) filed by Rajaee, Ashkan. | Rajaee, Ashkan (Respondent) |
| 16 | 09/20/2022 | Proposed Order submitted by Rajaee, Ashkan received but not filed on 09/20/2022. | Rajaee, Ashkan (Respondent) |
| 17 | 09/20/2022 | Proof of Service filed by Rajaee, Ashkan. | Rajaee, Ashkan (Respondent) |
| 18 | 09/20/2022 | Opposition - Other filed by Davis, Tyler B. | Davis, Tyler B (Petitioner) |
| 19 | 09/20/2022 | Notice of Remote Appearance filed by Davis, Tyler B. | Davis, Tyler B (Petitioner) |
| 20 | 09/21/2022 | Minutes finalized for Ex Parte heard 09/21/2022 08:30:00 AM. | |
| 21 | 09/21/2022 | Hearing on Petition reassigned to Joel R. Wohlfeil for 11/18/2022 at 09:00:00 AM in C-73 at Central. | |
| 22 | 09/21/2022 | Hearing on Petition scheduled for 11/18/2022 at 09:00:00 AM at Central in C-73 Joel R. Wohlfeil. | |
| 23 | 09/21/2022 | Motion Hearing (Civil) scheduled for 11/18/2022 at 09:00:00 AM at Central in C-71 Gregory W Pollack. | |
| 24 | 09/21/2022 | Motion Hearing (Civil) reassigned to Joel R. Wohlfeil for 11/18/2022 at 09:00:00 AM in C-73 at Central. | |
| 25 | 09/21/2022 | Motion Hearing (Civil) scheduled for 11/18/2022 at 09:00:00 AM at Central in C-73 Joel R. Wohlfeil. | |
| 26 | 09/21/2022 | Motion Hearing (Civil) scheduled for 11/18/2022 at 09:00:00 AM at Central in C-73 Joel R. Wohlfeil. | |
| 27 | 09/21/2022 | Miscellaneous Minute Order Finalized. | |
| 28 | 09/21/2022 | Case reassigned from Judge Pollack, Gregory W to Joel Wohlfeil effective 09/21/2022 | |
| 29 | 09/20/2022 | Notice of Remote Appearance filed by Rajaee, Ashkan. | Rajaee, Ashkan (Respondent) |
| 30 | 09/20/2022 | Notice of Remote Appearance filed by TOPDEVZ LLC. | TOPDEVZ LLC (Respondent) |
| 31 | 09/22/2022 | Notice of Hearing (AMENDED NOTICE OF HEARING ON JOINT PETITION TO CONFIRM CONTRACTUAL ARBITRATION AWARI)) filed by Davis, Tyler B. | Davis, Tyler B (Petitioner) |
| 32 | 09/22/2022 | Notice - Other (Notice of Case Reassignment) filed by Davis, Tyler B. | Davis, Tyler B (Petitioner) |
| 33 | 09/29/2022 | Declaration - Other filed by Rajaee, Ashkan. | Rajaee, Ashkan (Respondent) |
| 34 | 09/29/2022 | Declaration - Other filed by Rajaee, Ashkan. | Rajaee, Ashkan (Respondent) |
| 35 | 09/29/2022 | Declaration - Other filed by Rajaee, Ashkan. | Rajaee, Ashkan (Respondent) |
| 36 | 09/29/2022 | Declaration - Other filed by Rajaee, Ashkan. | Rajaee, Ashkan (Respondent) |
| 37 | 09/29/2022 | Opposition - Other (Petition to Vacate) filed by Rajaee, Ashkan. | Rajaee, Ashkan (Respondent) |
| 38 | 09/29/2022 | Memorandum of Points and Authorities filed by Rajaee, Ashkan. | Rajaee, Ashkan (Respondent) |
| 39 | 09/29/2022 | Declaration - Other (Jordan Matthews) filed by Rajaee, Ashkan. | Rajaee, Ashkan (Respondent) |
| 40 | 09/29/2022 | Declaration - Other (Connor Lynch) filed by Rajaee, Ashkan. | Rajaee, Ashkan (Respondent) |
| 41 | 09/29/2022 | Declaration - Other (Ashkan Raiaee) filed by Rajaee, Ashkan. | Rajaee, Ashkan (Respondent) |
| 42 | 09/29/2022 | Proof of Service filed by Rajaee, Ashkan. | Rajaee, Ashkan (Respondent) |
| 43 | 09/20/2022 | Notice of Remote Appearance filed by Rajaee, Ashkan. | Rajaee, Ashkan (Respondent) |
| 44 | 10/04/2022 | Notice - Other (of Ruling on Ex Parte for Longer Memorandum in Opposition to Petition to Confirm Arbitration Award) filed by Rajaee, Ashkan. | Rajaee, Ashkan (Respondent) |

EXHIBIT 7, PAGE 241

San Diego Superior Court    Case: 37-2022-00026691-CU-PA-CTL    Title: Davis vs Rajaee [IMAGED]

| 45 | 10/04/2022 | Notice - Other (Amended Notice of Ruling on Ex Parte Application for Longer Memorandum in Opposition to Petition to Confirm Arbitration Award) filed by Rajaee, Ashkan. | Rajaee, Ashkan (Respondent) |
|---|---|---|---|
| 46 | 10/04/2022 | Substitution of Attorney filed by Rajaee, Ashkan. | Rajaee, Ashkan (Respondent) |
| 47 | 10/06/2022 | Substitution of Attorney filed by TOPDEVZ LLC. | TOPDEVZ LLC (Respondent) |
| 48 | 10/14/2022 | Response filed by Rajaee, Ashkan. | Rajaee, Ashkan (Respondent) |
| 49 | 10/17/2022 | [Another document for ROA# 49] | |
| 49 | 10/17/2022 | E-filing transaction partially accepted. | |
| 50 | 10/18/2022 | Amended Petition (Amended Cross-Petition to Vacate Contractual Arbitration Award) filed by Rajaee, Ashkan. Refers to: Davis, Tyler; TOPDEVZ LLC | Rajaee, Ashkan (Petitioner) |
| 51 | 10/18/2022 | Amended Petition (Amended Cross Petition to Vacate) filed by Rajaee, Ashkan. Refers to: Davis, Tyler; TOPDEVZ LLC | Rajaee, Ashkan (Petitioner) |
| 52 | 11/02/2022 | Declaration - Other (SCOTT R CARPENTER) filed by TOPDEVZ LLC. | TOPDEVZ LLC (Respondent) |
| 53 | 11/02/2022 | Declaration - Other (TYLER B DAVIS) filed by TOPDEVZ LLC. | TOPDEVZ LLC (Respondent) |
| 54 | 11/02/2022 | Memorandum of Points and Authorities filed by TOPDEVZ LLC. | TOPDEVZ LLC (Respondent) |
| 55 | 11/10/2022 | Reply filed by Rajaee, Ashkan. | Rajaee, Ashkan (Respondent) |
| 56 | 11/10/2022 | Declaration - Other filed by Rajaee, Ashkan. | Rajaee, Ashkan (Respondent) |
| 57 | 11/16/2022 | Tentative Ruling for Hearing on Petition published. | |
| 58 | 11/18/2022 | Minutes finalized for Multiple Events heard 11/18/2022 09:00:00 AM. | |
| 59 | 11/22/2022 | Motion Hearing (Civil) scheduled for 01/13/2023 at 09:00:00 AM at Central in C-73 Joel R. Wohlfeil. | |
| 60 | 11/28/2022 | Notice of Ruling (RE Petition to Confirm Arbitration Award) filed by Davis, Tyler B. | Davis, Tyler B (Petitioner) |
| 61 | 12/20/2022 | Substitution of Attorney filed by Rajaee, Ashkan. | Rajaee, Ashkan (Respondent) |
| 62 | 12/20/2022 | Motion - Other filed by Rajaee, Ashkan. | Rajaee, Ashkan (Petitioner) |
| 63 | 12/20/2022 | Declaration - Other (OF MARL L. BENEZRA) filed by Rajaee, Ashkan. | Rajaee, Ashkan (Petitioner) |
| 64 | 12/20/2022 | Proposed Order submitted by Rajaee, Ashkan received but not filed on 12/20/2022. | Rajaee, Ashkan (Petitioner) |
| 65 | 12/29/2022 | Memorandum of Points and Authorities filed by Davis, Tyler B. | Davis, Tyler B (Petitioner) |
| 66 | 12/29/2022 | Declaration - Other (OF SCOTT R CARPENTER) filed by Davis, Tyler B. | Davis, Tyler B (Petitioner) |
| 67 | 12/29/2022 | Declaration - Other (TYLER B DAVIS) filed by Davis, Tyler B. | Davis, Tyler B (Petitioner) |
| 68 | 12/29/2022 | Exhibit List filed by Davis, Tyler B. | Davis, Tyler B (Petitioner) |
| 69 | 12/29/2022 | Exhibit List filed by Davis, Tyler B. | Davis, Tyler B (Petitioner) |
| 70 | 12/29/2022 | Exhibit List filed by Davis, Tyler B. | Davis, Tyler B (Petitioner) |
| 71 | 12/29/2022 | Exhibit List filed by Davis, Tyler B. | Davis, Tyler B (Petitioner) |
| 72 | 01/06/2023 | Reply filed by Rajaee, Ashkan. | Rajaee, Ashkan (Petitioner) |
| 73 | 01/06/2023 | Declaration - Other (MARC L BENEZRA) filed by Rajaee, Ashkan. | Rajaee, Ashkan (Petitioner) |
| 74 | 01/06/2023 | Notice - Other (OF ADDITION OF COUNSEL FOR RESPONDENT AND CROSS PETITIONER ASHKAN RAJAEE) filed by Rajaee, Ashkan. | Rajaee, Ashkan (Petitioner) |
| 75 | 01/10/2023 | Tentative Ruling for Motion Hearing (Civil) published. | |
| 76 | 01/13/2023 | Minutes finalized for Motion Hearing (Civil) heard 01/13/2023 09:00:00 AM. | |

EXHIBIT 7, PAGE 242

San Diego Superior Court    Case: 37-2022-00026691-CU-PA-CTL    Title: Davis vs Rajaee [IMAGED]

| 77 | 05/26/2023 | Hearing on Petition scheduled for 07/14/2023 at 09:00:00 AM at Central in C-73 Joel R. Wohlfeil. | |
| 78 | 06/07/2023 | Ex Parte scheduled for 06/13/2023 at 08:30:00 AM at Central in C-73 Joel R. Wohlfeil. | |
| 79 | 06/12/2023 | Ex Parte Application - Other and Supporting Documents filed by Rajaee, Ashkan. | Rajaee, Ashkan (Respondent) |
| 80 | 06/06/2023 | Petition - Subsequent Other filed by Davis, Tyler B. | Davis, Tyler B (Petitioner) |
| 81 | 06/06/2023 | Declaration - Other filed by Davis, Tyler B. | Davis, Tyler B (Petitioner) |
| 82 | 06/06/2023 | Notice of Hearing filed by Davis, Tyler B. | Davis, Tyler B (Petitioner) |
| 83 | 06/13/2023 | Minutes finalized for Ex Parte heard 06/13/2023 08:30:00 AM. | |
| 84 | 06/12/2023 | Opposition - Other (TO RESPONDENT ASHKAN RAJEES EX PARTE APPLICATION) filed by Davis, Tyler B; TOPDEVZ LLC. | Davis, Tyler B (Respondent); TOPDEVZ LLC (Respondent) |
| 85 | 06/12/2023 | Notice of Remote Appearance filed by Davis, Tyler B. | Davis, Tyler B (Petitioner) |
| 86 | 06/16/2023 | Petition - Subsequent Other filed by Rajaee, Ashkan. | Rajaee, Ashkan (Respondent) |
| 87 | 06/16/2023 | Declaration - Other (OF MARC L. BENEZRA) filed by Rajaee, Ashkan. | Rajaee, Ashkan (Respondent) |
| 88 | 06/16/2023 | Notice of Lodging Deposition Transcripts filed by Rajaee, Ashkan. | Rajaee, Ashkan (Respondent) |
| 89 | 06/16/2023 | Response filed by Rajaee, Ashkan. | Rajaee, Ashkan (Respondent) |
| 90 | 06/16/2023 | Request for Judicial Notice filed by Rajaee, Ashkan. | Rajaee, Ashkan (Respondent) |
| 91 | 06/16/2023 | Proof of Service filed by Rajaee, Ashkan. | Rajaee, Ashkan (Respondent) |
| 92 | 06/26/2023 | Response (JOINT RESPONSE TO VACATE ARBITRATION AWARD) filed by Davis, Tyler B; TOPDEVZ LLC. | Davis, Tyler B (Respondent); TOPDEVZ LLC (Respondent) |
| 93 | 06/26/2023 | Declaration - Other (OF PETITION TYLER B DAVIS RE PETITION TO CONFIRM ARBITRATION AWARD) filed by Davis, Tyler B; TOPDEVZ LLC. | Davis, Tyler B (Respondent); TOPDEVZ LLC (Respondent) |
| 94 | 06/26/2023 | Memorandum of Points and Authorities filed by Davis, Tyler B; TOPDEVZ LLC. | Davis, Tyler B (Respondent); TOPDEVZ LLC (Respondent) |
| 95 | 07/06/2023 | Notice of Remote Appearance filed by TOPDEVZ LLC. | TOPDEVZ LLC (Petitioner) |
| 96 | 06/27/2023 | Motion to Confirm Arbitration Award filed by Davis, Tyler B. | Davis, Tyler B (Petitioner) |
| 97 | 06/27/2023 | Request for Judicial Notice filed by Davis, Tyler B. | Davis, Tyler B (Petitioner) |
| 98 | 06/27/2023 | Compendium of Exhibits and/or Attachments in Support of a Filing (PETITIONERS/CROSS-RESPONDENTS TYLER B. DAVIS AND TOPDEVZ LLCS EXHIBITS 1 THROUGH 5) filed by Davis, Tyler B. | Davis, Tyler B (Petitioner) |
| 99 | 06/27/2023 | Compendium of Exhibits and/or Attachments in Support of a Filing (PETITIONERS/CROSS-RESPONDENTS TYLER B. DAVIS AND TOPDEVZ LLCS EXHIBITS 6 THROUGH 14) filed by Davis, Tyler B. | Davis, Tyler B (Petitioner) |
| 100 | 06/27/2023 | Compendium of Exhibits and/or Attachments in Support of a Filing (PETITIONERS/CROSS-RESPONDENTS TYLER B. DAVIS AND TOPDEVZ LLCS EXHIBITS 15 THROUGH 29) filed by Davis, Tyler B. | Davis, Tyler B (Petitioner) |
| 101 | 06/27/2023 | Compendium of Exhibits and/or Attachments in Support of a Filing (PETITIONERS/CROSS-RESPONDENTS TYLER B. DAVIS AND TOPDEVZ LLCS EXHIBITS 30 THROUGH 37) filed by Davis, Tyler B. | Davis, Tyler B (Petitioner) |
| 102 | 06/27/2023 | Compendium of Exhibits and/or Attachments in Support of a Filing (PETITIONERS/CROSS-RESPONDENTS TYLER B. DAVIS AND TOPDEVZ LLCS EXHIBITS 38 THROUGH 48) filed by Davis, Tyler B. | Davis, Tyler B (Petitioner) |
| 103 | 06/27/2023 | Compendium of Exhibits and/or Attachments in Support of a Filing (PETITIONERS/CROSS-RESPONDENTS TYLER B. DAVIS AND TOPDEVZ, LLCS EXHIBITS 49 THROUGH 56) filed by Davis, Tyler B. | Davis, Tyler B (Petitioner) |
| 104 | 07/07/2023 | Reply filed by Rajaee, Ashkan. | Rajaee, Ashkan (Respondent) |

EXHIBIT 7, PAGE 243

San Diego Superior Court    Case: 37-2022-00026691-CU-PA-CTL    Title: Davis vs Rajaee [IMAGED]

| 105 | 07/10/2023 | Notice of Errata filed by Rajaee, Ashkan. | Rajaee, Ashkan (Respondent) |
| 106 | 07/11/2023 | Reply filed by Davis, Tyler B. | Davis, Tyler B (Petitioner) |
| 107 | 07/13/2023 | Tentative Ruling for Hearing on Petition published. | |
| 110 | 07/14/2023 | Hearing on Petition continued pursuant to Court's motion to 07/20/2023 at 02:30PM before Judge Joel R. Wohlfeil. | |
| 111 | 07/14/2023 | Minutes finalized for Hearing on Petition heard 07/14/2023 09:00:00 AM. | |
| 112 | 07/18/2023 | Tentative Ruling for Hearing on Petition published. | |
| 113 | 07/14/2023 | Motion to Strike (PETITIONERS SURREPLY) filed by Rajaee, Ashkan. | Rajaee, Ashkan (Respondent) |
| 114 | 07/20/2023 | Matter taken under submission. | |
| 115 | 07/20/2023 | Minutes finalized for Hearing on Petition heard 07/20/2023 02:30:00 PM. | |
| 116 | 07/20/2023 | Appointment of Official Reporter Pro Tempore (Darla Kmety CSR 12956) filed by The Superior Court of San Diego. | |
| 117 | 07/21/2023 | Matter decided. | |
| 118 | 07/21/2023 | Miscellaneous Minute Order Finalized. | |
| 119 | 07/21/2023 | Clerk's Certificate of Service By Mail (Minutes Only) SD generated. | |
| 120 | 08/11/2023 | Clerk's Certificate of Service By Mail SD generated. | |
| 121 | 08/15/2023 | Order - Other (Granting Petition to Confirm Arbitration Award) filed by Davis, Tyler B. | Davis, Tyler B (Petitioner) |
| 122 | 08/15/2023 | Judgment (on Confirmed Arbitration Award) filed by Davis, Tyler B. Refers to: Rajaee, Ashkan | Davis, Tyler B (Petitioner) |
| 123 | 08/24/2023 | Notice of Entry of Judgment filed by Davis, Tyler B. | Davis, Tyler B (Petitioner) |
| 124 | 08/24/2023 | Notice of Entry of Order filed by Davis, Tyler B. | Davis, Tyler B (Petitioner) |
| 125 | 09/08/2023 | Notice of Entry of Judgment filed by Davis, Tyler B. | Davis, Tyler B (Petitioner) |
| 126 | 09/08/2023 | Notice of Entry of Judgment submitted by Davis, Tyler B rejected on 09/08/2023. | Davis, Tyler B (Petitioner) |
| 127 | 09/08/2023 | Memorandum of Costs (Summary) filed by Davis, Tyler B. | Davis, Tyler B (Petitioner) |
| 128 | 09/13/2023 | Memorandum of Costs (Summary) filed by Davis, Tyler B. | Davis, Tyler B (Petitioner) |
| 129 | 10/06/2023 | [Another document for ROA# 129] | |
| 129 | 10/06/2023 | Notice of Appeal filed by Rajaee, Ashkan. Refers to: Davis, Tyler; TOPDEVZ LLC | Rajaee, Ashkan (Appellant) |
| 130 | 10/16/2023 | Appellant's Notice Designating Record on Appeal filed by Rajaee, Ashkan. | Rajaee, Ashkan (Appellant) |
| 131 | 10/17/2023 | Notice of Default (Appellant RT fees) filed by The Superior Court of San Diego. | |
| 132 | 10/23/2023 | Respondent's Notice Designating Record on Appeal filed by Davis, Tyler B. | Davis, Tyler B (Respondent On Appeal) |
| 133 | 10/26/2023 | Proof of Service by Mail filed by Davis, Tyler B. | Davis, Tyler B (Petitioner) |
| 134 | 10/26/2023 | Proof of Service filed by Davis, Tyler B. | Davis, Tyler B (Petitioner) |
| 135 | 10/27/2023 | Returned Mail (D082966 - respondent) filed by The Superior Court of San Diego. | |
| 136 | 10/26/2023 | Association of Attorney filed by Davis, Tyler B. | Davis, Tyler B (Petitioner) |
| 137 | 10/26/2023 | Proof of Service by Mail filed by Davis, Tyler B. | Davis, Tyler B (Petitioner) |
| 138 | 10/26/2023 | Proof of Service filed by Davis, Tyler B. | Davis, Tyler B (Petitioner) |
| 139 | 10/31/2023 | Association of Attorney (Amended) filed by Davis, Tyler B. | Davis, Tyler B (Petitioner) |
| 140 | 10/31/2023 | Proof of Service by Mail (Amended Association of Counsel) filed by Davis, Tyler B. | Davis, Tyler B (Petitioner) |
| 141 | 11/15/2023 | Receipt of Reporter's Transcript (D082966 - Darla Kmety) filed by The Superior Court of San Diego. | |
| 142 | 11/20/2023 | Notice of Completion of the Record on Appeal SD generated. | |

EXHIBIT 7, PAGE 244

| 143 | 11/20/2023 | Receipt for Record on Appeal (D082966 - file copy) filed by The Superior Court of San Diego. | |
| 144 | 11/20/2023 | Disbursement of Clerk's Trust Fund (D082966) filed by The Superior Court of San Diego. | |
| 145 | 11/22/2023 | Receipt for Record on Appeal (D082966 - Court of Appeal) filed by The Superior Court of San Diego. | |
| 146 | 12/04/2023 | Notice of Change of Address / Telephone Number filed by Rajaee, Ashkan. | Rajaee, Ashkan (Petitioner) |
| 147 | 02/02/2024 | Abstract of Judgment submitted by Davis, Tyler B received but not filed on 02/02/2024. | Davis, Tyler B (Petitioner) |

EXHIBIT 7, PAGE 245

**EXHIBIT 8**

Recording requested by:
Brown, Neri, Smith & Khan, LLP

And when recorded, mail to:
Brown, Neri, Smith & Khan, LLP
11601 Wilshire Boulevard, Suite 2080
Los Angeles, California 90025

**DOC# 2022-0165698**

Apr 15, 2022  08:49 AM
OFFICIAL RECORDS
Ernest J. Dronenburg, Jr.,
SAN DIEGO COUNTY RECORDER
FEES: $193.00   (SB2 Atkins: $150.00)
PCOR: N/A
PAGES: 5

# DEED OF TRUST AND ASSIGNMENT OF RENTS SECURING A PROMISSORY NOTE

**Declaration of Exemption From Gov't Code § 27388.1 Fee**

☐ Transfer is exempt from fee per GC § 27388.1(a)(2):
  ☐ recorded concurrently "in connection with" transfer subject to DTT
  ☐ recorded concurrently "in connection with" a transfer of residential dwelling to an owner-occupier
☐ Transfer is exempt from fee per GC 27388.1(a)(1):
  ☐ Fee cap of $225.00 reached   ☐ Not related to real property

This Deed of Trust, made April _12_, 2022, between Nima Ahkbari, whose address is 18273 Rosita Street, Tarzana, CA 91356, as the Trustee of the 6625 Muirlands Drive Qualified Personal Residence Trust #1 ("Muirlands QPRT #1") and the 6625 Muirlands Drive Qualified Personal Residence Trust #2 ("Muirlands QPRT #2") (collectively, the "Trustors"), WELLS FARGO BANK, N.A. ("Trustee"), and Brown, Neri, Smith & Khan, LLP, whose address is 11601 Wilshire Boulevard, Suite 2080, Los Angeles, California 90025 as the "Beneficiary".

1. Trustors hereby **IRREVOCABLY GRANT TO TRUSTEE IN TRUST, WITH POWER OF SALE,**
   1.1 the real property in the City of La Jolla, County of San Diego, California, referred to as:

   6625 Muirlands Drive, La Jolla, California 90237
   APN: 3523520800   See Exhibit 'A' attached hereto and made a part hereof.

   1.2 TOGETHER WITH the rents, issues and profits of the real property, subject to the provisions of §3.4, herein to collect and apply the rents, issues and profits,
   1.3 **For the purpose of securing payment of:**
   a) the Guarantee given by the Trustors with respect to certain indebtedness evidenced by a promissory note of the same date executed by Ashkan Rajaee in favor of Beneficiary, for legal fees, costs, and services up to the amount of $1,000,000 (the "Guarantee");
   b) The Beneficiary's charge for a statement regarding the secured obligations requested by or for Trustors; and
   c) The performance of each agreement contained in this Deed of Trust.
2. **To protect the security of this Deed of Trust, Trustee agrees:**
   **2.1 CONDITION OF PROPERTY** – To keep the property in good condition and repair; not to remove or demolish any building; to complete and restore any building which may be constructed, damaged or destroyed; to comply with all laws affecting the property or requiring any alterations or improvements to be made; not to commit or permit waste; to cultivate, irrigate, fertilize, fumigate, prune and do all other acts which from the character or use of the property may be reasonably necessary.

EXHIBIT 8, PAGE 246

**2.2 HAZARD INSURANCE** – Trustee will continuously maintain hazard insurance against loss by fire, hazards included within the term "extended coverage," and any other hazards for which Beneficiary requires insurance. The insurance will be maintained in the amounts and for the periods Beneficiary requires. The insurance carrier providing the insurance will be chosen by Trustors, subject to Beneficiary's approval, which will not be unreasonably withheld. All insurance policies will be acceptable to Beneficiary, and contain loss payable clauses acceptable to Beneficiary. Beneficiary will have the right to hold policies and renewals.

In the event of loss, Trustee will give prompt notice to the insurance carrier and Beneficiary. Beneficiary may make proof of loss if not made promptly by Trustee. Beneficiary may place the proceeds in a non-interest bearing account to be used for the cost of reconstruction of the damaged improvements. If Trustee fails to reconstruct, Beneficiary may receive and apply the loan proceeds to the principal debt hereby secured, without a showing of impairment.

**2.3 ATTORNEY FEES** – To appear in and defend any action or proceeding purporting to affect the security, or the rights and powers of Beneficiary or Trustee; and to pay all costs and expenses, including cost of evidencing title and attorney fees in a reasonable sum, in any such action or proceeding in which Beneficiary or Trustee may appear.

**2.4 TAXES AND SENIOR ENCUMBERANCES** – To pay at least 10 days before delinquency: all taxes and assessments affecting the property, including water stock assessments when due, all encumbrances, charges and liens, with interest, on the property which are or appear to be senior to this Deed of Trust; and all expenses of this Deed of Trust.

**2.5 ACTS AND ADVANCES TO PROTECT THE SECURITY** – If Trustee fails to make any payment or to perform any act provided for in this Deed of Trust, then Beneficiary may, without obligation to do so, and with or without notice or demand upon Trustee, and without releasing Trustee from any obligation under the Guarantee or this Deed of Trust:

    a) Make or do the same to the extent either deems necessary to protect the security, Beneficiary or Trustee being authorized to enter upon the property to do so;

    b) Appear in or commence any action or proceeding purporting to affect the security, or the rights or powers of Beneficiary or Trustee;

    c) Pay, purchase, contest or settle any encumbrance, charge or lien that appears to be senior to this Deed of Trust.

In exercising the power of this provision, Beneficiary or Trustee may incur necessary expenses, including reasonable attorney fees.

Trustee to immediately pay all sums expended by Beneficiary or Trustee provided for in this Deed of Trust, with interest from date of expenditure at the same rate as the principal debt hereby secured.

**3. It is further mutually agreed that:**

**3.1 ASSIGNMENT OF DAMAGES** –Any award of damages made in connection with:

    a) Condemnation for use of or injury to the property by the public, or conveyance in lieu of condemnation; or

    b) Injury to the property by any third party;

is assigned to Beneficiary, who may apply or release the proceeds of such an award in the same manner and with the same effect as above provided for the disposition of hazard insurance proceeds.

**3.2 WAIVER** – By accepting payment of any sum due after its due date, Beneficiary does not waive Beneficiary's right to either require prompt payment when due of all other sums or to declare a default for failure to pay. Beneficiary may waive a default of any agreement of this Deed of Trust, by consent or acquiescence, without waiving any prior or subsequent default.

**3.3 DUE-ON-SALE –** If Trustors decide to sell, transfer or convey any interest in the property, legal or equitable, either voluntarily or by operation of law, then Beneficiary may, at Beneficiary's option, declare all sums secured by this Deed of Trust immediately due and payable.

**3.4 ASSIGNMENT OF RENTS –** Trustee hereby assign and transfer to Beneficiary all right, title and interest in rents generated by the property, including rents now due, past due, or to become due under any use of the property, to be applied to the obligations secured by this Deed of Trust.

   a) Prior to a default on this Deed of Trust by Trustee, Trustee will collect and retain the rents

   b) On default by Trustee, Beneficiary will immediately be entitled to possession of all unpaid rents.

**3.5 ACCELERATION –** If payment of any indebtedness or performance of any agreement secured by this Deed of Trust is in default, Beneficiary may at Beneficiary's option, with or without notice to Trustee, declare all sums secured immediately due and payable by:

   a) Commencing suit for their recovery or for foreclosure of this Deed of Trust

   b) Delivering to Trustee a written notice declaring a default with demand for sale; a written Notice of Default and election to sell to be recorded by Trustee.

**3.6 TRUSTEE'S SALE –** On default of any obligation secured by this Deed of Trust and acceleration of all sums due, Beneficiary may instruct Trustee to proceed with a sale of the secured property under the power of sale granted herein, noticed and held in accordance with California Civil Code §2924 et seq.

**3.7 TRUSTEE's OFFSET STATEMENT -** Within 10 days of Trustee's receipt of a written request by Beneficiary, Trustee will execute a written estoppel affidavit identifying for the benefit of any assignee or successor in interest of Beneficiary: the then owner of the secured property; the terms of the secured note, including its remaining principal balance; any taxes or assessments due on the secured property; that the secured note is valid and the Trustors received full and valid consideration for it; and that Trustors understand the note and this Deed of Trust are being assigned.

**4. ADDENDA –** If any of the following addenda are executed by Trustee and recorded together with this Deed of Trust, the covenants and agreements of each will incorporate, amend and supplement the agreements of this Deed of Trust (check applicable boxes by hand): ☐ owner-occupancy rider; ☐ all-inclusive trust deed addendum; ☐ impounds for taxes and insurance addendum ☐ Private Mortgage Insurance (PMI) rider ☐ other:

**5. RECONVEYANCE –** Upon written request from Beneficiary stating that all sums secured by this Deed of Trust have been paid, surrender of this Deed of Trust and the note to Trustee for cancellation, and payment of Trustee's fees, Trustee will reconvey the property held under this Deed of Trust.

**6. SUCCESSORS, ASSIGNS AND PLEDGEES –** This Deed of Trust applies to, inures to the benefit of, and binds all parties hereto, their heirs, legatees, devisees, administrators, executors, successors and assigns. The term Beneficiary will mean the holders and owner of the secured note, or, if the note has been pledged, the pledgee.

**7. TRUSTEE'S FORECLOSURE NOTICES –** The undersigned Trustee request a copy of any Notice of Default and of any Notice of Sale hereunder be mailed to Trustors at the address herein set forth.

Date: _04 / 12 / 2022_

Trustee:

6625 Muirlands Drive Qualified Personal Residence Trust #1

By: _____

Nima Ankbari, Trustee

6625 Muirlands Drive Qualified Personal Residence Trust #2

By: _____

Nima Ankbari, Trustee

EXHIBIT 8, PAGE 248

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA            )
                               )ss.
COUNTY OF _Los Angeles_        )

On _04/12/2022_____, 20___, before me _Carol N. Martinez Quintana_____, a Notary Public, personally appeared _Nima AhKbari___, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
Signature of Notary

CAROL N. MARTINEZ QUINTANA
COMM. #2342430
Notary Public - California
Los Angeles County
My Comm. Expires Jan. 19, 2025

EXHIBIT 8, PAGE 249

## Exhibit "A"

Lot 11 in Block 19 of the Muirlands, in the City of San Diego, County of San Diego, State of California, according to Map thereof No. 2024, filed in the office of the County Recorder of said County, May 11, 1927

RECORDING REQUESTED BY

**NAME:** Kopple, Klinger & Elbaz, LLP

**WHEN RECORDED MAIL TO:**

**NAME:** Kopple, Klinger & Elbaz, LLP

**ADDRESS:** 10866 Wilshire Boulevard, Suite 1500

**CITY / STATE / ZIP:** Los Angeles, CA 90024

(DOCUMENT WILL ONLY BE RETURNED TO NAME & ADDRESS IDENTIFIED ABOVE)

DOC# 2022-0169919

Apr 19, 2022   09:36 AM
OFFICIAL RECORDS
Ernest J. Dronenburg, Jr.,
SAN DIEGO COUNTY RECORDER
FEES: $199.00   (SB2 Atkins: $150.00)
PCOR: N/A
PAGES: 7

(SPACE ABOVE FOR RECORDER'S USE)

DEED OF TRUST AND ASSIGNMENT OF RENTS SECURING A PROMISSORY NOTE

**(DOCUMENT TITLE)**

EXHIBIT 8, PAGE 251

|                          | Kopple, Klinger & Elbaz, LLP |
|--------------------------|-------------------------------|
| Recording requested by:  | 10866 Wilshire Boulevard, Suite 1500 |
|                          | Los Angeles, CA 90024 |

And when recorded, mail to: Kopple, Klinger & Elbaz, LLP
10866 Wilshire Boulevard, Suite 1500
Los Angeles, CA 90024

## DEED OF TRUST AND ASSIGNMENT OF RENTS SECURING A PROMISSORY NOTE

**Declaration of Exemption From Gov't Code § 27388.1 Fee**

Transfer is exempt from fee per GC § 27388.1(a)(2):
  recorded concurrently "in connection with" transfer subject to DTT
  recorded concurrently "in connection with" a transfer of residential dwelling to an owner-occupier
Transfer is exempt from fee per GC 27388.1(a)(1):
  Fee cap of $225.00 reached        Not related to real property

This Deed of Trust, made April _13_, 2022, between Nima Ahkbari, whose address is _18273 Rosita St, Tarzana 91356 CA_, as the Trustee of the 6625 Muirlands Drive Qualified Personal Residence Trust #1 ("Muirlands QPRT #1") and the 6625 Muirlands Drive Qualified Personal Residence Trust #2 ("Muirlands QPRT #2") (collectively, the "Trustors"), WELLS FARGO BANK, N.A. ("Trustee"), and Majid Rajaee, whose address is 54 Loggers Trail, Newmarket, ON L3Y 4W1, Canada, as the "Beneficiary".

1. Trustors hereby **IRREVOCABLY GRANT TO TRUSTEE IN TRUST, WITH POWER OF SALE,**

    1.1 the real property in the City of La Jolla, County of San Diego, California, referred to as:

    6625 Muirlands Drive, La Jolla, California 9002590237
    APN: 3523520800
        SEE LEGAL DESCRIPTION ATTACHED HERETO AND MARKED AS EXHIBIT "A"
    1.2 TOGETHER WITH the rents, issues and profits of the real property, subject to the provisions of §3.4, herein to collect and apply the rents, issues and profits,
    **1.3 For the purpose of securing payment of:**
        a)      A Guarantee of a promissory note of the same date executed by Ashkan Rajaee in favor of Beneficiary, for the amount of $1,000,000 (the "Note");
        b)      The Beneficiary's charge for a statement regarding the secured obligations requested by or for Trustors; and
        c)      The performance of each agreement contained in this Deed of Trust.

2. **To protect the security of this Deed of Trust, Trustors agree:**
    **2.1 CONDITION OF PROPERTY** – To keep the property in good condition and repair; not to remove or demolish any building; to complete and restore any building which may be constructed, damaged or destroyed; to comply with all laws affecting the property or requiring any alterations or improvements to be made; not to commit or permit waste; to cultivate, irrigate, fertilize, fumigate, prune and do all other acts which from the character or use of the property may be reasonably necessary.
    **2.2 HAZARD INSURANCE** – Trustors will continuously maintain hazard insurance against loss by fire, hazards included within the term "extended coverage," and any other hazards for which Beneficiary requires insurance. The insurance will be maintained in the amounts and for the periods Beneficiary requires. The insurance carrier providing the insurance will be chosen by Trustor, subject to Beneficiary's approval, which will not be unreasonably withheld. All insurance policies will be acceptable to Beneficiary, and

EXHIBIT 8, PAGE 252

contain loss payable clauses acceptable to Beneficiary. Beneficiary will have the right to hold policies and renewals.

In the event of loss, Trustors will give prompt notice to the insurance carrier and Beneficiary. Beneficiary may make proof of loss if not made promptly by Trustors. Beneficiary may place the proceeds in a non-interest bearing account to be used for the cost of reconstruction of the damaged improvements. If Trustors fail to reconstruct, Beneficiary may receive and apply the loan proceeds to the principal debt hereby secured, without a showing of impairment.

**2.3     ATTORNEY FEES** – To appear in and defend any action or proceeding purporting to affect the security, or the rights and powers of Beneficiary or Trustee; and to pay all costs and expenses, including cost of evidencing title and attorney fees in a reasonable sum, in any such action or proceeding in which Beneficiary or Trustee may appear.

**2.4     TAXES AND SENIOR ENCUMBERANCES** – To pay at least 10 days before delinquency: all taxes and assessments affecting the property, including water stock assessments when due, all encumbrances, charges and liens, with interest, on the property which are or appear to be senior to this Deed of Trust; and all expenses of this Deed of Trust.

**2.5     ACTS AND ADVANCES TO PROTECT THE SECURITY** – If Trustors fail to make any payment or to perform any act provided for in this Deed of Trust, then Beneficiary or Trustee may, without obligation to do so, and with or without notice or demand upon Trustors, and without releasing Trustors from any obligation under the Note or this Deed of Trust:
   a)   Make or do the same to the extent either deems necessary to protect the security, Beneficiary or Trustee being authorized to enter upon the property to do so;
   b)   Appear in or commence any action or proceeding purporting to affect the security, or the rights or powers of Beneficiary or Trustee;
   c)   Pay, purchase, contest or settle any encumbrance, charge or lien that appears to be senior to this Deed of Trust.

In exercising the power of this provision, Beneficiary or Trustee may incur necessary expenses, including reasonable attorney fees.

Trustors to immediately pay all sums expended by Beneficiary or Trustee provided for in this Deed of Trust, with interest from date of expenditure at the same rate as the principal debt hereby secured.

**3.     It is further mutually agreed that:**

**3.1     ASSIGNMENT OF DAMAGES** –Any award of damages made in connection with:
   a)   Condemnation for use of or injury to the property by the public, or conveyance in lieu of condemnation; or
   b)   Injury to the property by any third party;
is assigned to Beneficiary, who may apply or release the proceeds of such an award in the same manner and with the same effect as above provided for the disposition of hazard insurance proceeds.

**3.2     WAIVER** – By accepting payment of any sum due after its due date, Beneficiary does not waive Beneficiary's right to either require prompt payment when due of all other sums or to declare a default for failure to pay. Beneficiary may waive a default of any agreement of this Deed of Trust, by consent or acquiescence, without waiving any prior or subsequent default.

**3.3     DUE-ON-SALE –** If Trustors decide to sell, transfer or convey any interest in the property, legal or equitable, either voluntarily or by operation of law, then Beneficiary may, at Beneficiary's option, declare all sums secured by this Deed of Trust immediately due and payable.

**3.4     ASSIGNMENT OF RENTS –** Trustors hereby assign and transfer to Beneficiary all right,

title and interest in rents generated by the property, including rents now due, past due, or to become due under any use of the property, to be applied to the obligations secured by this Deed of Trust.
   a)   Prior to a default on this Deed of Trust by Trustors, Trustors will collect and retain the rents
   b)   On default by Trustors, Beneficiary will immediately be entitled to possession of all unpaid rents.

**3.5     ACCELERATION –** If payment of any indebtedness or performance of any agreement secured by this Deed of Trust is in default, Beneficiary may at Beneficiary's option, with or without notice to Trustors, declare all sums secured immediately due and payable by:
   a)   Commencing suit for their recovery or for foreclosure of this Deed of Trust
   b)   Delivering to Trustee a written notice declaring a default with demand for sale; a written Notice of Default and election to sell to be recorded by Trustee.

**3.6     TRUSTEE'S SALE –** On default of any obligation secured by this Deed of Trust and acceleration of all sums due, Beneficiary may instruct Trustee to proceed with a sale of the secured property under the power of sale granted herein, noticed and held in accordance with California Civil Code §2924 et seq.

**3.7     TRUSTORS' OFFSET STATEMENT** - Within 10 days of Trustors' receipt of a written request by Beneficiary, Trustors will execute a written estoppel affidavit identifying for the benefit of any assignee or successor in interest of Beneficiary: the then owner of the secured property; the terms of the secured note, including its remaining principal balance; any taxes or assessments due on the secured property; that the secured note is valid and the Trustors received full and valid consideration for it; and that Trustors understand the Note and this Deed of Trust are being assigned.

**4.        ADDENDA –** If any of the following addenda are executed by Trustors and recorded together with this Deed of Trust, the covenants and agreements of each will incorporate, amend and supplement the agreements of this Deed of Trust (check applicable boxes by hand): owner-occupancy rider;   all-inclusive trust deed addendum;   impounds for taxes and insurance addendum  Private Mortgage Insurance (PMI) rider   other:

**5.        RECONVEYANCE –** Upon written request from Beneficiary stating that all sums secured by this Deed of Trust have been paid, surrender of this Deed of Trust and the note to Trustee for cancellation, and payment of Trustee's fees, Trustee will reconvey the property held under this Deed of Trust.

**6.        SUCCESSORS, ASSIGNS AND PLEDGEES –** This Deed of Trust applies to, inures to the benefit of, and binds all parties hereto, their heirs, legatees, devisees, administrators, executors, successors and assigns. The term Beneficiary will mean the holders and owner of the secured note, or, if the note has been pledged, the pledgee.

**TRUSTEE'S FORECLOSURE NOTICES –** The undersigned Trustors requests a copy of any Notice of Default and of any Notice of Sale hereunder be mailed to Trustors at the address herein set forth.

Date: _____April 13, _2022_____          Trustors:

                                                             6625 Muirlands Drive Qualified Personal

Residence Trust #1

                                                             By: _____
                                   Nima Ahkbari, Trustee

                                                             6625 Muirlands Drive Qualified Personal

EXHIBIT 8, PAGE 254

Residence Trust #2

By: _____
Nima Ahkbari, Trustee

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA        )

COUNTY OF _Los Angeles_ )ss.
                       )

On _April 13_____, 20_22_, before me _Nargiza Babadjanova_, a Notary Public, personally appeared _Nima Akhbari_, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.


Signature of Notary _____

NARGIZA BABADJANOVA
COMM. # 2308649
LOS ANGELES COUNTY
NOTARY PUBLIC-CALIFORNIA
MY COMMISSION EXPIRES
OCTOBER 13, 2023

**Exhibit "A"**

Lot 11 in Block 19 of the Muirlands, in the City of San Diego, County of San Diego, State of California, according to Map thereof No. 2024, filed in the office of the County Recorder of said County, May 11, 1927

**EXHIBIT 9**

**SUPERIOR COURT OF CALIFORNIA**
## County of SAN DIEGO

**Register of Actions Notice**

| | | | |
|---|---|---|---|
| Case Number: | 37-2022-00001968-CU-PA-CTL | Filing Date: | 01/18/2022 |
| Case Title: | Petition of Rajaee [IMAGED] | Case Age: | 134 days |
| Case Status: | Dismissed | Location: | Central |
| Case Category: | Civil - Unlimited | Judicial Officer: | Joel R. Wohlfeil |
| Case Type: | Petition re: Arbitration Award | Department: | C-73 |

### Future Events

| Date | Time | Department | Event |
|---|---|---|---|
| No future events | | | |

### Participants

| Name | Role | Representation |
|---|---|---|
| Davis, Tyler | Respondent | Farrell, Edward J; Scalia, Joseph W |
| Rajaee, Ashkan | Petitioner | Lynch, Connor |

### Representation

| Name | Address | Phone Number |
|---|---|---|
| FARRELL, EDWARD J | 2424 S E Bristol Street 300 Newport Beach CA 92660 0764 | |
| LYNCH, CONNOR | 4470 W Sunset Boulevard 90096 Los Angeles CA 90027 | (949) 229-3141 |
| SCALIA, JOSEPH W | Not Available | |

| ROA# | Entry Date | Short/Long Entry | Filed By |
|---|---|---|---|
| 1 | 01/18/2022 | Petition to Vacate Arbitrator's Award filed by Rajaee, Ashkan. | |
| 2 | 01/18/2022 | Civil Case Cover Sheet filed by Rajaee, Ashkan. | |
| 3 | 01/18/2022 | Memorandum of Points and Authorities filed by Rajaee, Ashkan. | |
| 4 | 01/18/2022 | Declaration - Other filed by Rajaee, Ashkan. | |
| 5 | 01/18/2022 | Case assigned to Judicial Officer Wohlfeil, Joel. | |
| 6 | 01/19/2022 | Case initiation form printed. | |
| 7 | 01/20/2022 | Amended Petition (CORRECTED) filed by Rajaee, Ashkan. Refers to: Davis, Tyler | Rajaee, Ashkan (Petitioner) |
| 8 | 01/26/2022 | Demurrer / Motion to Strike scheduled for 03/25/2022 at 09:00:00 AM at Central in C-73 Joel R. Wohlfeil. | |
| 9 | 01/25/2022 | Notice of Hearing (on Petition to vacate or in the alternative correct arbitration award) filed by Rajaee, Ashkan. | Rajaee, Ashkan (Petitioner) |
| 10 | 01/28/2022 | Motion Hearing (Civil) scheduled for 04/01/2022 at 09:00:00 AM at Central in C-73 Joel R. Wohlfeil. | |
| 11 | 02/09/2022 | Ex Parte scheduled for 02/15/2022 at 08:30:00 AM at Central in C-73 Joel R. Wohlfeil. | |
| 12 | 02/14/2022 | Proof of Service filed by Rajaee, Ashkan. | Rajaee, Ashkan (Petitioner) |
| 13 | 02/14/2022 | Ex Parte Application - Other and Supporting Documents filed by Rajaee, Ashkan. | Rajaee, Ashkan (Petitioner) |
| 14 | 02/14/2022 | Memorandum of Points and Authorities filed by Rajaee, Ashkan. | Rajaee, Ashkan (Petitioner) |
| 15 | 02/14/2022 | Declaration - Other filed by Rajaee, Ashkan. | Rajaee, Ashkan (Petitioner) |
| 16 | 02/14/2022 | Declaration - Other filed by Rajaee, Ashkan. | Rajaee, Ashkan (Petitioner) |
| 17 | 02/14/2022 | Proposed Order submitted by Rajaee, Ashkan received but not filed on 02/14/2022. | Rajaee, Ashkan (Petitioner) |

EXHIBIT 9, PAGE 258

San Diego Superior Court     Case: 37-2022-00001968-CU-PA-CTL     Title: Petition of Rajaee [IMAGED]

| 18 | 02/14/2022 | Opposition - Other (Opposition to Petitioner's Ex Parte Application for Order to Show Cause and For Temporary Restraining Order) filed by Davis, Tyler. | Davis, Tyler (Respondent) |
|---|---|---|---|
| 19 | 02/14/2022 | Declaration - Other (Declaration of Tyler B. Davis In Opposition to Ex Parte Application to Show Cause) filed by Davis, Tyler. | Davis, Tyler (Respondent) |
| 20 | 02/14/2022 | Declaration - Other (Declaration of Edward J. Farrell in Opposition to Ex Parte Application for Order to Show Cause) filed by Davis, Tyler. | Davis, Tyler (Respondent) |
| 21 | 02/15/2022 | Minutes finalized for Ex Parte heard 02/15/2022 08:30:00 AM. | |
| 22 | 02/15/2022 | Motion Hearing (Civil) scheduled for 03/14/2022 at 01:30:00 PM at Central in C-73 Joel R. Wohlfeil. | |
| 23 | 02/14/2022 | Reply filed by Rajaee, Ashkan. | Rajaee, Ashkan (Petitioner) |
| 24 | 02/14/2022 | Declaration - Other filed by Rajaee, Ashkan. | Rajaee, Ashkan (Petitioner) |
| 25 | 02/15/2022 | Appointment of Official Reporter Pro Tempore (Suzanne Tate) filed by The Superior Court of San Diego. | |
| 26 | 02/16/2022 | Notice of Hearing filed by Rajaee, Ashkan. | Rajaee, Ashkan (Petitioner) |
| 27 | 02/23/2022 | Ex Parte scheduled for 03/02/2022 at 08:30:00 AM at Central in C-73 Joel R. Wohlfeil. | |
| 28 | 02/23/2022 | Response filed by Davis, Tyler. | Davis, Tyler (Respondent) |
| 29 | 02/23/2022 | Declaration - Other filed by Davis, Tyler. | Davis, Tyler (Respondent) |
| 30 | 03/01/2022 | Opposition - Other (to Order to Show Cause Re Preliminary Injunction) filed by Davis, Tyler. | Davis, Tyler (Respondent) |
| 31 | 03/01/2022 | Declaration - Other (of Tyler Davis) filed by Davis, Tyler. | Davis, Tyler (Respondent) |
| 32 | 03/02/2022 | Order After Hearing (Order re: Supplemental briefing) filed by Rajaee, Ashkan. | Rajaee, Ashkan (Petitioner) |
| 33 | 03/02/2022 | Minutes finalized for Ex Parte heard 03/02/2022 08:30:00 AM. | |
| 34 | 02/23/2022 | Application - Other (to Supplement Petitioner's Briefing Re Preliminary Injunction with Newly DIscovered Facts) filed by Rajaee, Ashkan. | Rajaee, Ashkan (Petitioner) |
| 35 | 02/23/2022 | Declaration - Other (of Brian Miller) filed by Rajaee, Ashkan. | Rajaee, Ashkan (Petitioner) |
| 36 | 02/23/2022 | Notice - Other (Petitioner's Supplemental Memorandum Addressing New Facts) filed by Rajaee, Ashkan. | Rajaee, Ashkan (Petitioner) |
| 37 | 02/23/2022 | Declaration - Other (Supplemental Delcaration of Ashkan Rajee) filed by Rajaee, Ashkan. | Rajaee, Ashkan (Petitioner) |
| 38 | 02/23/2022 | Declaration - Other (Notice of Declaration of Connor Lynch) filed by Rajaee, Ashkan. | Rajaee, Ashkan (Petitioner) |
| 39 | 02/23/2022 | Proof of Service filed by Rajaee, Ashkan. | Rajaee, Ashkan (Petitioner) |
| 40 | 03/07/2022 | The Motion Hearing (Civil) was rescheduled to 03/17/2022 at 03:30:00 PM in C-73 before Joel R. Wohlfeil. | |
| 41 | 03/07/2022 | Motion Hearing (Civil) scheduled for 03/17/2022 at 03:30:00 PM at Central in C-73 Joel R. Wohlfeil. | |
| 42 | 03/07/2022 | Notice - Other (OF CONTINUANCE OF OSC HEARING) filed by Rajaee, Ashkan. | Rajaee, Ashkan (Petitioner) |
| 43 | 03/07/2022 | Proof of Service filed by Rajaee, Ashkan. | Rajaee, Ashkan (Petitioner) |
| 44 | 03/09/2022 | Reply filed by Rajaee, Ashkan. | Rajaee, Ashkan (Petitioner) |
| 45 | 03/09/2022 | Objections filed by Rajaee, Ashkan. | Rajaee, Ashkan (Petitioner) |
| 46 | 03/11/2022 | Demurrer / Motion to Strike scheduled for 03/25/2022 at 09:00:00 AM at Central in C-73 Joel R. Wohlfeil was vacated. | |
| 47 | 03/14/2022 | Request for Judicial Notice filed by Davis, Tyler. | Davis, Tyler (Respondent) |
| 48 | 03/16/2022 | Tentative Ruling for Motion Hearing (Civil) published. | |
| 49 | 03/18/2022 | Notice of Ruling filed by Davis, Tyler. | Davis, Tyler (Respondent) |
| 50 | 03/17/2022 | Minutes finalized for Motion Hearing (Civil) heard 03/17/2022 03:30:00 PM. | |

San Diego Superior Court    Case: **37-2022-00001968-CU-PA-CTL**    Title: **Petition of Rajaee [IMAGED]**

| | | | |
|---|---|---|---|
| 51 | 03/22/2022 | The Motion Hearing (Civil) was rescheduled to 05/13/2022 at 09:00:00 AM in C-73 before Joel R. Wohlfeil at Central. | |
| 52 | 03/22/2022 | Motion Hearing (Civil) scheduled for 05/13/2022 at 09:00:00 AM at Central in C-73 Joel R. Wohlfeil. | |
| 53 | 03/23/2022 | Notice - Other (of Continuane of Hearing on Petition to Vacate) filed by Rajaee, Ashkan. | Rajaee, Ashkan (Petitioner) |
| 54 | 03/23/2022 | Proof of Service filed by Rajaee, Ashkan. | Rajaee, Ashkan (Petitioner) |
| 55 | 05/02/2022 | Response (AND OPPOSITION) filed by Davis, Tyler. | Davis, Tyler (Respondent) |
| 56 | 05/02/2022 | Declaration - Other (OF SCOTT R. CARPENTER) filed by Davis, Tyler. | Davis, Tyler (Respondent) |
| 57 | 05/11/2022 | Motion Hearing (Civil) scheduled for 05/13/2022 at 09:00:00 AM at Central in C-73 Joel R. Wohlfeil was vacated. | |
| 58 | 05/11/2022 | Objections (TO DISMISSAL) filed by Davis, Tyler. | Davis, Tyler (Respondent) |
| 59 | 05/11/2022 | Amended Petition dismissed  without prejudice as to Rajaee, Ashkan  . | |
| 60 | 05/11/2022 | Amended Petition dismissed  without prejudice as to Davis, Tyler  . | |
| 61 | 05/11/2022 | Request for Dismissal without Prejudice - Entire Action (Not entered) filed by Rajaee, Ashkan. | Rajaee, Ashkan (Petitioner) |
| 62 | 05/31/2022 | Amended Petition dismissed  without prejudice as to Rajaee, Ashkan  . | |
| 63 | 05/31/2022 | Amended Petition dismissed  without prejudice as to Davis, Tyler  . | |
| 64 | 05/31/2022 | Request for Dismissal without Prejudice - Entire Action filed by Rajaee, Ashkan. | Rajaee, Ashkan (Petitioner) |
| 65 | 06/02/2022 | Notice of Entry of Dismissal filed by Rajaee, Ashkan. | Rajaee, Ashkan (Petitioner) |
| 66 | 06/02/2022 | Objections (TO DISMISSAL) filed by Davis, Tyler. | Davis, Tyler (Respondent) |

**EXHIBIT 10**

# Sacramento Superior Court
**Journal Technologies**

**34-2022-00316510-CU-MC-GDS** Ashkan Rajaee vs. Tyler Davis    [Back]

**Unlimited Civil** (Other Complaint - Non-tort) Gordon D. Schaber Superior Court / DEPT 43 - HON. Thadd A. Blizzard    [Document Download]

Filed: 03/08/2022 Disposed: 06/13/2022 Consolidated (Non-lead case)

Documents | **Register of Actions**

## Register of Actions

| Date | Message | Category |
|------|---------|----------|
| 10/29/2023 | Case reassigned to Gordon D. Schaber Superior Court in Department 43 Reason: | Assignment |
| 10/10/2022 | Case reassigned to 43 effective 10/10/2022 . | Case |
| 06/13/2022 | Notice - Other submitted by Rajaee, Ashkan rejected on 06/13/2022 . | Document |
| 06/13/2022 | 34-2022-00316510-CU-MC-GDS consolidated with lead case 34-2021-00295173-CU-BT-GDS on 06/13/2022 . | Form |
| 06/13/2022 | Petition to Compel Arbitration - Civil Law and Motion scheduled for 07/06/2022 at 09:00:00 AM in Department 54 at Gordon D Schaber Courthouse was vacated . | Scheduling |
| 06/13/2022 | Motion - Other - Civil Law and Motion scheduled for 07/06/2022 at 09:00:00 AM in Department 54 at Gordon D Schaber Courthouse was vacated . | Scheduling |
| 06/13/2022 | Case Management Conference - Case Management Program scheduled for 08/26/2022 at 08:30:30 AM in Department 31 at Gordon D Schaber Courthouse was vacated . | Scheduling |

| Date | Message | Category |
|------|---------|----------|
| 05/18/2022 | Notice of Motion filed.<br>Filed By: Rajaee, Ashkan (Plaintiff) | Document |
| 05/12/2022 | Clerk's Certificate of Service By Mail (out of process) generated . | Form |
| 05/12/2022 | Case Management Conference - Case Management Program scheduled for 08/26/2022 at 08:30:00 AM in Department 31 at Gordon D Schaber Courthouse and the Notice of Case Management Conference and Order to Appear has been generated . | Scheduling |
| 05/10/2022 | Order - Other (Scheduling of Case Management Conference) filed. | Document |
| 05/06/2022 | Notice of Ruling filed.<br>Filed By: Davis, Tyler (Defendant) | Document |
| 05/05/2022 | Notice of Related Case filed.<br>Filed By: Rajaee, Ashkan (Plaintiff) | Document |
| 05/05/2022 | Motion - Other - Civil Law and Motion rescheduled to 07/06/2022 at 09:00:00 AM in Department 54 at Gordon D Schaber Courthouse . | Scheduling |
| 05/05/2022 | Motion - Other - Civil Law and Motion scheduled for 07/06/2022 at 09:00:00 AM in Department 54 at Gordon D Schaber Courthouse . | Scheduling |
| 05/05/2022 | Motion - Other - Civil Law and Motion continued to 07/06/2022 at 09:00 in this department. | Minute Order |
| 05/05/2022 | Minutes finalized for Motion - Other - Civil Law and Motion heard on 05/05/2022 09:00:00 AM . | Minute Order |
| 05/05/2022 | Petition to Compel Arbitration - Civil Law and Motion rescheduled to 07/06/2022 at 09:00:00 AM in Department 54 at Gordon D Schaber Courthouse . | Scheduling |

EXHIBIT 10, PAGE 262

| Date | Message | Category |
|---|---|---|
| 05/05/2022 | Petition to Compel Arbitration - Civil Law and Motion scheduled for 07/06/2022 at 09:00:00 AM in Department 54 at Gordon D Schaber Courthouse . | Scheduling |
| 05/05/2022 | continued to at in this department. | Minute Order |
| 05/05/2022 | Minutes finalized for Petition to Compel Arbitration - Civil Law and Motion heard on 05/05/2022 09:00:00 AM . | Minute Order |
| 04/28/2022 | Reply to Opposition (to Petition to Compel Arbitration) filed. Filed By: Davis, Tyler (Defendant) | Document |
| 04/28/2022 | Declaration - Other (Supplemental- of Scott R Carpenter ISO Petition to Compel Arbitration) filed. Filed By: Davis, Tyler (Defendant) | Document |
| 04/21/2022 | Opposition (to Petition to Compel Arbitration) filed. Filed By: Rajaee, Ashkan (Plaintiff) | Document |
| 04/21/2022 | Declaration - Other (of Michael Eidel, Esq ISO Opposition to Petition to Compel Arbitration) filed. Filed By: Rajaee, Ashkan (Plaintiff) | Document |
| 04/14/2022 | Motion - Other - Civil Law and Motion rescheduled to 05/05/2022 at 09:00:00 AM in Department 54 at Gordon D Schaber Courthouse . | Scheduling |
| 04/14/2022 | Motion - Other - Civil Law and Motion scheduled for 05/05/2022 at 09:00:00 AM in Department 54 at Gordon D Schaber Courthouse . | Scheduling |
| 04/14/2022 | continued to at in this department. | Minute Order |
| 04/14/2022 | Minutes finalized for Motion - Other - Civil Law and Motion heard on 04/14/2022 09:00:00 AM . | Minute Order |

EXHIBIT 10, PAGE 263

| Date | Message | Category |
|------|---------|----------|
| 04/13/2022 | Notice - Other (of Continuance of Hearing on Plaintiff's Motion to Stay Dissolution of Proceedings) filed. Filed By: Davis, Tyler (Defendant) | Document |
| 04/12/2022 | Proof of Service (Amended) filed. Filed By: Davis, Tyler (Defendant) | Document |
| 04/12/2022 | Carpenter, Scott R. added as a effective 03/11/2022 . | Document |
| 04/11/2022 | Reply to Opposition (to Motion to Stay Dissolution Proceedings) filed. Filed By: Rajaee, Ashkan (Plaintiff) | Document |
| 04/11/2022 | Declaration - Other (of Michael Eidel, Esq ISO Reply to Opposition to Motion to Stay Dissolution Proceedings) filed. Filed By: Rajaee, Ashkan (Plaintiff) | Document |
| 04/11/2022 | Objection (and Supplemental Opposition to New Evidence and Argument in Plaintiff's Reply Brief) filed. Filed By: Davis, Tyler (Defendant) | Document |
| 04/08/2022 | Proof of Service filed. Filed By: Rajaee, Ashkan (Plaintiff) | Document |
| 04/07/2022 | Reply to Opposition (to Motion to Stay Dissolution Proceedings) filed. Filed By: Rajaee, Ashkan (Plaintiff) | Document |
| 04/06/2022 | Proof of Service of 30-day Summons & Complaint - Substitute filed. Filed By: Rajaee, Ashkan (Plaintiff) | Document |
| 04/05/2022 | Proof of Service - MAILING filed. Filed By: Rajaee, Ashkan (Plaintiff) | Document |
| 04/04/2022 | Petition to Compel Arbitration - Civil Law and Motion scheduled for 05/05/2022 at 09:00:00 AM in Department 54 at Gordon D Schaber Courthouse . | Scheduling |

EXHIBIT 10, PAGE 264

| Date | Message | Category |
|------|---------|----------|
| 04/01/2022 | Motion to Compel - Other (Arbitration) filed.<br>Filed By: Davis, Tyler (Defendant) | Document |
| 04/01/2022 | Declaration - Other (of Scott R Carpenter ISO Petition to Compel Arbitration) filed.<br>Filed By: Davis, Tyler (Defendant) | Document |
| 04/01/2022 | Opposition (to Motion for Stay of Dissolution Proceedings) filed.<br>Filed By: Davis, Tyler (Defendant) | Document |
| 04/01/2022 | Declaration - Other (of Scott R Carpenter ISO Opposition to Motion to Stay of Dissolution Proceedings) filed.<br>Filed By: Davis, Tyler (Defendant) | Document |
| 03/28/2022 | Notice of Related Case filed.<br>Filed By: Rajaee, Ashkan (Plaintiff) | Document |
| 03/22/2022 | Motion - Other - Civil Law and Motion scheduled for 04/14/2022 at 09:00:00 AM in Department 54 at Gordon D Schaber Courthouse . | Scheduling |
| 03/21/2022 | Motion - Other (for Stay of Dissolution Proceedings) filed.<br>Filed By: Rajaee, Ashkan (Plaintiff) | Document |
| 03/21/2022 | Declaration - Other (of Michael Eidel, Esq ISO Motion for Stay of Involuntary Dissolution Proceedings) filed.<br>Filed By: Rajaee, Ashkan (Plaintiff) | Document |
| 03/21/2022 | Declaration - Other (of Ashkan Rajaee ISO Motion for Stay of Involuntary Dissolution Proceedings) filed.<br>Filed By: Rajaee, Ashkan (Plaintiff) | Document |
| 03/11/2022 | Order Determining Disposition of Ex Parte Application filed. | Document |
| 03/11/2022 | Opposition (Amended Opposition of to Ex Parte App) filed.<br>Filed By: Davis, Tyler (Defendant) | Document |

EXHIBIT 10, PAGE 265

| Date | Message | Category |
|------|---------|----------|
| 03/11/2022 | Scalia, Joseph W added as a effective 03/11/2022 . | Document |
| 03/11/2022 | Opposition (to Ex Parte App) filed.<br>Filed By: Davis, Tyler (Defendant) | Document |
| 03/11/2022 | Proof of Service (Email) filed.<br>Filed By: Rajaee, Ashkan (Plaintiff) | Document |
| 03/10/2022 | Ex Parte Application for Stay (of Dissolution Proceedings, or in the Alternative for an Order Shortening Time on a Motion to Stay Proceedings) filed.<br>Filed By: Rajaee, Ashkan (Plaintiff) | Document |
| 03/10/2022 | Declaration - Other (of Ashkan Rajee ISO Ex Parte Applicaiton for Stay of Involuntary Dissolution Proceedings) filed.<br>Filed By: Rajaee, Ashkan (Plaintiff) | Document |
| 03/10/2022 | Declaration - Other (of Michael Eidel, Esq. ISO Ex Parte Application for Stay of Dissolution Proceedings) filed.<br>Filed By: Rajaee, Ashkan (Plaintiff) | Document |
| 03/10/2022 | Summons filed.<br>Filed By: Rajaee, Ashkan (Plaintiff) | Document |
| 03/09/2022 | Summons submitted by Rajaee, Ashkan rejected on 03/09/2022 . | Document |
| 03/08/2022 | Case assigned to Department 31 . | Case |
| 03/08/2022 | Civil Case Cover Sheet filed.<br>Filed By: Rajaee, Ashkan (Plaintiff) | Document |
| 03/08/2022 | Complaint filed.<br>Filed By: Rajaee, Ashkan (Plaintiff) | Document |
| 03/08/2022 | Order - Other (Delay in Scheduling Initial Case Management Conference) filed. | Document |

Copyright © Journal Technologies, USA. All rights reserved.

**EXHIBIT 11**



1  ASHKAN RAJAEE
2  888 Prospect St, Unit 200
   La Jolla, CA 92037
3  Telephone: 619-332-6348
4  Email: prayerforjustice.2022@gmail.com

5  Pro Se Plaintiff

6

7

8           UNITED STATES DISTRICT COURT
9
10          SOUTHERN DISTRICT OF CALIFORNIA
11

12
   ASHKAN RAJAEE, an Individual,          Case No.  '24CV0001 RSH KSC
13
                                          *Unlimited Jurisdiction*
14          Plaintiff,
   v.
15

16  TYLER BRANDON DAVIS, an               **VERIFIED COMPLAINT FOR**
    Individual; SCOTT CARPENTER, an       **DAMAGES AND DECLARATORY**
17  Individual; J. DOUGLAS KIRK, an       **RELIEF: IDENTITY THEFT, SET**
18  Individual; JOSEPH W. SCALIA,         **ASIDE JUDGMENT BASED ON**
    ESQ., an Individual; KERRI A.         **EXTRINSIC FRAUD AND FRAUD**
19  WILLIAMS-HORN, an Individual;         **ON THE COURT, AND MONEY**
20  JOSHUA PAUL LINTZ, an Individual;     **DAMAGES**
    MICAH BAILEY, an Individual;
21  JONATHAN GERBER, an Individual;
22  JENIFER BRYN GUADAGNIN, an            **[DEMAND FOR JURY TRIAL]**
    Individual; KENNETH R.
23  REYNOLDS, an Individual; MICHAEL
24  HAWES, an Individual; AMANDA
    FRYE, an Individual; TOPDEVZ, LLC,
25  a California Limited Liability Company;
26  PORTER CONSULTING, LLC, a
    California Limited Liability Company;
27  MASON BUILDING AND DESIGN,
28

VERIFIED COMPLAINT FOR DECLARATORY RELIEF AND MONEY DAMAGES: IDENTITY THEFT,
SET ASIDE JUDGMENT BASED ON EXTRINSIC FRAUD AND FRAUD ON THE COURT

**FILED**

Jan 02 2024

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY        s/ GloriaVocal        **DEPUTY**

EXHIBIT 11, PAGE 268

| | |
|---|---|
| 1 | LLC, a California Limited Liability |
| | Company; TALENTCROWD, LLC, a |
| 2 | Wyoming Limited Liability Company; |
| 3 | CUMMINS & WHITE, LLP, a |
| | California Limited Liability Partnership; |
| 4 | KIRK & TOBERTY, LLP, a California |
| 5 | Limited Liability Partnership; LAW |
| | OFFICES OF JOSEPH W. SCALIA, |
| 6 | APC, a California Professional |
| 7 | Corporation; PURDY & BAILEY, LLP, |
| | a California Limited Liability |
| 8 | Partnership; MILLER MILLER |
| 9 | GERBER LLP, a California Limited |
| | Liability Partnership;  KENNETH R. |
| 10 | REYNOLDS, INC., a California |
| 11 | Professional Law Corporation; |
| | SANDHILLS GLOBAL, INC., a |
| 12 | Nebraska Corporation; EXPRESS |
| 13 | TECH-FINANCING, LLC, a Delaware |
| | Limited Liability Company; 402 |
| 14 | VENTURES, LLC, a Delaware Limited |
| 15 | Liability Company; BLOCKCHAIN |
| | GAME PARTNERS, INC. DBA GALA |
| 16 | GAMES, a Wyoming Corporation; |
| 17 | DRIVETIME CAR SALES |
| | COMPANY, LLC, an Arizona Limited |
| 18 | Liability Company; MODE |
| 19 | TRANSPORTATION, LLC, a |
| | Delaware Limited Liability Company; |
| 20 | MEDICAL STAFFING SOLUTIONS, |
| 21 | INC., a Wisconsin Corporation |
| | INTELLICHECK, INC., A Delaware |
| 22 | Corporation; SCOTT MCKINNEY, an |
| 23 | Individual; SHAWN PEED, an |
| | Individual; ADAM PRICE, an |
| 24 | Individual; AARON PRICE, an |
| 25 | Individual; AARON MCIVER, an |
| | Individual; PETER GRISOLANO, an |
| 26 | Individual; SEAN CLANCY, an |
| 27 | Individual; ANTHONY VARGAS, an |
| 28 | |

1

COMPLAINT FOR DECLARATORY RELIEF AND MONEY DAMAGES: IDENTITY THEFT, SET ASIDE
JUDGMENT BASED ON EXTRINSIC FRAUD AND FRAUD ON THE COURT



Individual; JAMES MARSH, an Individual; FRANK LUBIN, an Individual; RUSS EMBRY, an Individual; and DOES 1 through 99, inclusive,

Defendants.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

2

COMPLAINT FOR DECLARATORY RELIEF AND MONEY DAMAGES: IDENTITY THEFT, SET ASIDE JUDGMENT BASED ON EXTRINSIC FRAUD AND FRAUD ON THE COURT

1  Plaintiff Ashkan Rajaee alleges as follows:

2  **THE PARTIES**

3  1.    Plaintiff Ashkan Rajaee ("Plaintiff") is, and at all times relevant to
4  this Complaint, a Canadian citizen, and resident of San Diego County, California.

5  2.    Upon Plaintiff's information and belief of the remaining parties:
6  Defendant Tyler Brandon Davis ("DAVIS") is, and at all times relevant hereto, a
7  resident of Sacramento, California, and a member of TopDevz, LLC, Porter
8  Consulting, LLC, and Mason Building and Design, LLC.

9  3.    Defendant Kerri A. Williams-Horn ("WILLIAMS") is a Chief Fiscal
10  Officer for the City of El Dorado and is, and at all times relevant hereto, a resident
11  of Cameron Park, California.

12  4.    Defendant Joshua Paul Lintz ("LINTZ") is, and at all times relevant
13  hereto, a resident of San Diego, California. LINTZ was hired by Plaintiff
14  personally in September 2020 to work for TOPDEVZ and (unlawfully) represented
15  the LLC as its President & CEO after January 6, 2022. LINTZ owns 100% of
16  Talentcrowd, LLC.

17  5.    Defendant Amanda Frye ("FRYE") is a culpable natural person who is
18  believed to be a resident of Romulus, Michigan. FRYE was a full-time Director of
19  TOPDEVZ, hired by Plaintiff, earning a salary of $150,000 plus full family
20  healthcare as of September 8, 2021. FRYE is now the Chief Operating Officer of
21  tortious actor LINTZ's TALENTCROWD. Publicly available at
22  www.Talentcrowd.com/about (last visited 10/31/2023).

23  6.    Defendant Jenifer Bryn Guadagnin ("BRYN") formerly known as
24  Jenifer Bryn Davis is, and at all times relevant hereto, a resident of Chico,
25  California. BRYN was formerly married to DAVIS and there is an active marriage
26  dissolution case pending in Butte County (Case No. 19FL00014) for the division of
27  community property of, *inter alia,* PORTER, TOPDEVZ and MASON.

28

3

COMPLAINT FOR DECLARATORY RELIEF AND MONEY DAMAGES: IDENTITY THEFT, SET ASIDE
JUDGMENT BASED ON EXTRINSIC FRAUD AND FRAUD ON THE COURT

EXHIBIT 11, PAGE 271

7.    Defendant Michael Hawes, ("HAWES") is, and at all times relevant hereto, a resident of Roseville, California. HAWES is the President of Hawes Holliday & Associates. HAWES was the forensic accountant designated by DAVIS in AAA Case. No. 01-21-0001-9983.

8.    Defendant TopDevz, LLC ("TOPDEVZ") is, and at all times relevant hereto, a limited liability company organized and existing under the laws of the State of California with a principal place of business located in Folsom, California and was incorporated on May 9, 2017.

9.    Defendant Porter Consulting, LLC ("PORTER") is, and at all times relevant hereto, a limited liability company organized and existing under the laws of the State of California with a principal place of business located in Sacramento, California.

10.    Defendant Mason Building and Design, LLC ("MASON") is, and at all times relevant hereto, a limited liability company organized and existing under the laws of the State of California with a principal place of business located in Folsom, California.

11.    Defendant Talentcrowd, LLC ("TALENTCROWD") is, and at all times relevant hereto, a limited liability company organized and existing under the laws of the State of Wyoming with a principal place of business located in Solona Beach, California.

**Defendants' counsels, referenced collectively as "Conspiring Attorneys"**

12.    Defendant Scott Carpenter ("CARPENTER"), or referenced collectively as "Conspiring Attorneys", is, and at all times relevant hereto, a partner at Cummins & White, and has a principal place of business in Newport Beach, California. On February 16, 2022, CARPENTER represented both Tyler Davis and TopDevz, LLC. On August 27, 2021, CARPENTER appeared as lead counsel for Porter Consulting, LLC ("PORTER").

4

COMPLAINT FOR DECLARATORY RELIEF AND MONEY DAMAGES: IDENTITY THEFT, SET ASIDE
JUDGMENT BASED ON EXTRINSIC FRAUD AND FRAUD ON THE COURT

13.    Defendant Cummins & White, LLP ("CUMMINS"), or referenced collectively as "Conspiring Attorneys", is, and at all times relevant hereto, a limited liability partnership organized and existing under the laws of the State of California with a principal place of business located in Newport Beach, California.

14.    Defendant J. Douglas Kirk ("KIRK"), or referenced collectively as "Conspiring Attorneys", is, and at all times relevant hereto, a partner at Kirk & Toberty and a resident of Irvine County, California. On December 22, 2022, KIRK appeared and represented TOPDEVZ.

15.    Defendant David Toberty ("TOBERTY"), or referenced collectively as "Conspiring Attorneys", is, and at all times relevant hereto, a partner at Kirk & Toberty and a resident of Irvine County, California.

16.    Defendant Kirk & Toberty, LLP ("KIRK & TOBERTY"), or referenced collectively as "Conspiring Attorneys", is, and at all times relevant hereto, a limited liability partnership organized and existing under the laws of the State of California with a principal place of business located in Irvine, California. On December 22, 2022, KIRK & TOBERTY appeared and represented TOPDEVZ.

17.    Defendant Joseph W. Scalia, Esq. ("SCALIA"), or referenced collectively as "Conspiring Attorneys", is, and at all times relevant hereto, a partner at Law Offices Of Joseph W. Scalia, APC, with his principal place of business in Roseville, California. On March 4, 2021, SCALIA and CARPENTER appeared and represented DAVIS personally.

18.    Defendant Law Offices Of Joseph W. Scalia, APC ("LAW OFFICES OF SCALIA"), or referenced collectively as "Conspiring Attorneys", is, and at all times relevant hereto, a professional corporation organized and existing under the laws of the State of California with a principal place of business located in Roseville, California.

COMPLAINT FOR DECLARATORY RELIEF AND MONEY DAMAGES: IDENTITY THEFT, SET ASIDE
JUDGMENT BASED ON EXTRINSIC FRAUD AND FRAUD ON THE COURT

19.    Defendant Micah Bailey ("BAILEY"), or referenced collectively as "Conspiring Attorneys", is, and at all times relevant hereto, a partner at Purdy & Bailey and has a principal place of business in San Diego, California. On June 9, 2022, BAILEY represented LINTZ and TALENTCROWD.

20.    Defendant Purdy & Bailey, LLP ("PURDY & BAILEY"), or referenced collectively as "Conspiring Attorneys", is, and at all times relevant hereto, a limited liability partnership organized and existing under the laws of the State of California with a principal place of business located in San Diego, California.

21.    Defendant Jonathan L. Gerber, Esq. ("GERBER") is an attorney and a partner at Miller Miller Gerber LLP, with his principal place of business in Irvine, California. GERBER appeared and represented FRYE in San Diego Superior Court Case No. 37-2022-00012247.

22.    Defendant Miller Miller Gerber LLP ("MMG") is, and at all times relevant hereto, a limited liability partnership organized and existing under the laws of the State of California with a principal place of business located in Irvine, California.

23.    Defendant Kenneth R. Reynolds ("REYNOLDS"), or referenced collectively as "Conspiring Attorneys", is, and at all times relevant hereto, the CEO of Kenneth R. Reynolds, Inc. and has a principal place of business in Sacramento, California. On November 21, 2023, REYNOLDS represented DAVIS and TOPDEVZ.

24.    Defendant Kenneth R. Reynolds, Inc. ("REYNOLDS INC"), or referenced collectively as "Conspiring Attorneys", is, and at all times relevant hereto, a California Professional Law Corporation, organized and existing under the laws of the State of California with a principal place of business located in Sacramento, California.

6

COMPLAINT FOR DECLARATORY RELIEF AND MONEY DAMAGES: IDENTITY THEFT, SET ASIDE
JUDGMENT BASED ON EXTRINSIC FRAUD AND FRAUD ON THE COURT

EXHIBIT 11, PAGE 274

**TopDevz Client Companies, referenced collectively as "TD Clients"**

25.    Defendant Sandhills Global, Inc. ("SANDHILLS"), or referenced collectively as "TD Clients" is, and at all times relevant hereto, a corporation organized and existing under the laws of the State of Nebraska with a principal place of business located in Lincoln, Nebraska.

26.    Defendant Express Tech-Financing, LLC dba Currency ("CURRENCY"), or referenced collectively as "TD Clients", is, and at all times relevant hereto, a limited liability company organized and existing under the laws of the State of Delaware with a principal place of business located Scottsdale, Arizona.

27.    Defendant 402 Ventures, LLC ("402"), or referenced collectively as "TD Clients", is, and at all times relevant hereto, a limited liability company organized and existing under the laws of the State of Delaware with a principal place of business located in Lincoln, Nebraska.

28.    Defendant Blockchain Game Partners, Inc. DBA Gala Games ("GALA GAMES"), or referenced collectively as "TD Clients", is, and at all times relevant hereto, a corporation organized and existing under the laws of the State of Wyoming with a principal place of business located in Jackson, Wyoming.

29.    Defendant Drivetime Car Sales Company, LLC ("DRIVETIME"), or referenced collectively as "TD Clients", is, and at all times relevant hereto, a limited liability company organized and existing under the laws of the State of Arizona with a principal place of business located in Tempe, Arizona.

30.    Defendant Mode Transportation, LLC ("MODE), or referenced collectively as "TD Clients", is, and at all times relevant hereto, a limited liability company organized and existing under the laws of the State of Delaware with a principal place of business located in Dallas, Texas.

COMPLAINT FOR DECLARATORY RELIEF AND MONEY DAMAGES: IDENTITY THEFT, SET ASIDE
JUDGMENT BASED ON EXTRINSIC FRAUD AND FRAUD ON THE COURT

EXHIBIT 11, PAGE 275

31.     Defendant Medical Staffing Solutions, Inc. ("MSSI"), or referenced collectively as "TD Clients", is, and at all times relevant hereto, a corporation organized and existing under the laws of the State of Wisconsin with a principal place of business located in Rice Lake, Wisconsin.

32.     Defendant Intellicheck, Inc. ("INTELLICHECK"), or referenced collectively as "TD Clients", is, and at all times relevant hereto, a corporation organized and existing under the laws of the State of Delaware with a principal place of business located in Melville, New York.

**TopDevz Client Company Directors or Officers, referenced collectively as "Client CXO's"**

33.     Defendant Scott McKinney ("MCKINNEY"), or referenced collectively as "Client CXO's", is a culpable natural person who is believed to be a resident of Lincoln, Nebraska. MCKINNEY is the CIO of SANDHILLS, and signatory to the Master Service Agreement between SANDHILLS and TOPDEVZ.

34.     Defendant Shawn Peed ("PEED"), or referenced collectively as "Client CXO's", is a culpable natural person who is believed to be a resident of Lincoln, Nebraska. PEED is the CEO of SANDHILLS, and signatory to the Master Service Agreement between 402 and TOPDEVZ.

35.     Defendant Adam Price ("ADAM PRICE"), or referenced collectively as "Client CXO's", is a culpable natural person who is believed to be a resident of the state of Oregon. ADAM PRICE is the CTO of GALA GAMES, and signatory to the Master Consulting Agreement between GALA GAMES and TOPDEVZ.

36.     Defendant Aaron Price ("AARON PRICE"), or referenced collectively as "Client CXO's", is a culpable natural person who is believed to be a resident of Hillsboro, Oregon. AARON PRICE is the VP of Engineering and a decision-maker regarding software development consulting services at GALA GAMES.

8

COMPLAINT FOR DECLARATORY RELIEF AND MONEY DAMAGES: IDENTITY THEFT, SET ASIDE JUDGMENT BASED ON EXTRINSIC FRAUD AND FRAUD ON THE COURT

EXHIBIT 11, PAGE 276

1      37.    Defendant Aaron McIver ("MCIVER"), or referenced collectively as
2   "Client CXO's", is a culpable natural person who is believed to be a resident of
3   Phoenix, Arizona. MCIVER is the Head of Software Engineering at DRIVETIME,
4   and signatory to the Master Consulting Agreement between DRIVETIME and
5   TOPDEVZ.

6      38.    Defendant Peter Grisolano ("GRISOLANO"), or referenced
7   collectively as "Client CXO's", is a culpable natural person who is believed to be a
8   resident of Tempe, Arizona. GRISOLANO is the Associate Vice President - Head
9   of Data Engineering at DRIVETIME, and a decision-maker regarding software
10  development consulting services at DRIVETIME.

11     39.    Defendant Sean Clancy ("CLANCY"), or referenced collectively as
12  "Client CXO's", is a culpable natural person who is believed to be a resident of
13  Phoenix, Arizona. CLANCY was the CTO of MODE in 2020 and until 2023, and
14  signatory to the Master Service Agreement between MODE and TOPDEVZ.

15     40.    Defendant Anthony Vargas ("VARGAS"), or referenced collectively
16  as "Client CXO's", is a culpable natural person who is believed to be a resident of
17  Jacksonville, Florida. VARGAS was the Senior Program Manager and a decision-
18  maker regarding software development consulting services at MODE from 2018 to
19  2023.

20     41.    Defendant James Marsh ("MARSH"), or referenced collectively as
21  "Client CXO's", is a culpable natural person who is believed to be a resident of
22  Rice Lake, Wisconsin. MARSH is the President of MSSI and signatory to the
23  Master Consulting Agreement between MSSI and TOPDEVZ.

24     42.    Defendant Frank Lubin ("LUBIN"), or referenced collectively as
25  "Client CXO's", is a culpable natural person who is believed to be a resident of
26  Port St Lucie, Florida. LUBIN was the VP of Engineering at INTELLICHECK

27

28

COMPLAINT FOR DECLARATORY RELIEF AND MONEY DAMAGES: IDENTITY THEFT, SET ASIDE
JUDGMENT BASED ON EXTRINSIC FRAUD AND FRAUD ON THE COURT

1   from 2017 to 2023, and a signatory to the Master Consulting Agreement between
2   INTELLICHECK and TOPDEVZ.

3        43.    Defendant Russ Embry ("EMBRY"), or referenced collectively as
4   "Client CXO's", is a culpable natural person who is believed to be a resident of
5   Melville, New York. EMBRY was CTO of INTELLICHECK and a decision-
6   maker regarding software development consulting services at INTELLICHECK
7   from 1999 to 2023.

8        44.    The names of other defendants and their involvement in this dispute is
9   presently unknown to Plaintiff, who therefore sues such defendants in this action
10  by fictitious names. Each of the defendants designated as DOE Defendants are
11  legally responsible in some manner for the unlawful acts described below. Plaintiff
12  will seek leave of the Court to amend this complaint to reflect the true names and
13  capacities of the DOE Defendants as and when their identities become known.

14                  **NON-PARTIES RELATED TO THE CASE**

15       45.    Todd Belluomini ("BELLUOMINI"), is, and at all times relevant
16  hereto, a resident of Winters, CA. BELLUOMINI was a 20% member of PORTER
17  until September 2021, and 40% member of MASON.

18                              **JURISDICTION**

19       46.    This court has the authority to hear and decide the case pursuant to 28
20  U.S.C. § 1332(a)(2). The lawsuit involves a single foreign alien, the Plaintiff, who
21  is a Canadian citizen and a resident of California and is not admitted for permanent
22  residency in the United States. All the Defendants are United States Citizens.

23       47.    Pursuant to 28 U.S.C. § 1332(a), the dispute involves an amount over
24  $75,000, excluding interests and costs.

25       48.    The Court has personal jurisdiction over Defendants because of either
26  general jurisdiction or specific jurisdiction over each defendant.

27

28

---

10

COMPLAINT FOR DECLARATORY RELIEF AND MONEY DAMAGES: IDENTITY THEFT, SET ASIDE
JUDGMENT BASED ON EXTRINSIC FRAUD AND FRAUD ON THE COURT

49.     Pursuant to Rule 60(d)(1), this court has the power to entertain an independent action to relieve a party from a California State Court judgment obtained from extrinsic fraud.

50.     Pursuant to Rule 60(d)(3), this court has the power to set aside a judgment for fraud on the state court by a party or an officer of the court.

### VENUE

51.     Venue is proper in this county in accordance with 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this district including the San Diego State court judgment against Plaintiff. Through no fault of his own, RAJAEE had not discovered or possessed the new evidence until after the judgment was entered against RAJAEE on August 15, 2023.

52.     The complaint involves establishing that RAJAEE is a victim of identity theft pursuant to California Civil Code §1798.93(a).

53.     Over $70 million in financial transactions since 2017 related to RAJAEE's identity theft occurred with California-based bank accounts and California citizens.

54.     One hundred percent (100%) of the perjury incidents and fraud on the court occurred in California.

### FACTS AND ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

55.     On or about August 18, 2023, RAJAEE, as the injured party, discovered that he was a victim of identity theft as defined in Civ. Code, § 1798.92 pertaining to DAVIS and TOPDEVZ, who are creditors and claimants.

56.     RAJAEE denies giving DAVIS or TOPDEVZ consent to use RAJAEE's personally identifiable information for a criminal purpose.

57.     RAJAEE discovered evidence after the San Diego judgment, not previously available, which demonstrates that the entire judgment in San Diego

COMPLAINT FOR DECLARATORY RELIEF AND MONEY DAMAGES: IDENTITY THEFT, SET ASIDE
JUDGMENT BASED ON EXTRINSIC FRAUD AND FRAUD ON THE COURT

1    was procured from manifest extrinsic fraud practiced on RAJAEE by DAVIS and

2    his co-conspirators. Simultaneously, wanton fraud was practiced on the court itself,

3    with an unconscionable scheme designed to improperly influence the court in its

4    judgment decision.

5        58.    The multi scheme fraud couldn't be discovered by RAJAEE, despite

6    diligent inquiry within the two years of legal proceedings. In fact, in RAJAEE's

7    case, the fraud was discovered six years after it was perpetrated and came to light

8    serendipitously through a third party, Todd Belluomini. RAJAEE discovered that

9    the extrinsic fraud by DAVIS spans years and was rooted in the very act of

10    obtaining a fraudulent judgment against RAJAEE. Hence, there was never a real

11    contest before any court or tribunal on the subject matter of the suit.

12        59.    RAJAEE was prevented from exhibiting fully his claims and defenses

13    in the arbitration and numerous petitions to vacate, because from the outset

14    DAVIS, under a duty to disclose, concealed his conduct in the victimization of

15    RAJAEE. In addition, the fraud and crimes included a plan to corrupt the judicial

16    process itself, where DAVIS and his attorney CARPENTER would willfully and

17    systematically insert bogus tax documents into the record. The evidence will also

18    show that attorney Scott R. Carpenter and Joeseph Scalia, who represent DAVIS in

19    the state-court actions, also surreptitiously represent TOPDEVZ in other actions.

20        60.    Had RAJAEE been privy to the material facts exhibited in this multi-

21    complaint, he would have certainly behaved differently, and there would have been

22    a much different outcome to the entire case and subsequent judgment. The scheme

23    between DAVIS and attorneys CARPENTER and SCALIA involved a subversion

24    of the judicial process itself. DAVIS did not merely deceive the court in obtaining

25    the judgement; he went on to use the judgment to deceive other courts into holding

26    that DAVIS and TOPDEVZ had a superior interest in Plaintiffs other claims. The

27    scheme was designed to use the judicial machinery itself to further criminal

28

12

COMPLAINT FOR DECLARATORY RELIEF AND MONEY DAMAGES: IDENTITY THEFT, SET ASIDE
JUDGMENT BASED ON EXTRINSIC FRAUD AND FRAUD ON THE COURT

1  conduct. DAVIS' attorneys, as officers of the court, play a key role in perpetrating
2  the fraud and furthering the crimes.

3      61.    On May 1, 9, October 27, and November 13, 2023, attorneys involved
4  in this case received written correspondence and court filings pertaining to the
5  retention of their services to conceal and further criminal conduct, including
6  RAJAEE's discovery of additional evidence. The attorneys have taken no
7  corrective action.

8      62.    Thereafter, Defendant DAVIS and TOPDEVZ continued to pursue
9  claims against Plaintiff, including the filing of judgment liens in RAJAEE's
10  offensive cases. (Lien with Case No. 22-CV-00895)

11     63.    RAJAEE's injuries are not incidental to the injuries of TOPDEVZ.

12     64.    RAJAEE has been ensnared in a protracted legal battle with DAVIS
13  in relation to this case since February 2021, culminating in a judgment against him
14  in 2023 arising from an arbitration. (AAA Case No. 01-21-0001-9983, San Diego
15  Case No. 37-2022-00026691)

16     65.    This legal battle, however, pales in comparison to the discovery made
17  by RAJAEE in August 2023, which dramatically impacts all of RAJAEE's related
18  cases, including the San Diego judgment. (Case No. 37-2022-00026691)

19     66.    RAJAEE was blindsided by the grim reality of DAVIS' multi-year,
20  multi-scheme victimization of RAJAEE that involves identity theft.

21     67.    The truth was unveiled through a third party, Todd Belluomini, who
22  was a business partner of DAVIS from 2017 through 2021 in PORTER and
23  MASON.

24     68.    Todd Belluomini was able to expose the extent of RAJAEE's identity
25  theft, bringing to light the intricate machinations of the fraud perpetrated against
26  RAJAEE by DAVIS through companies DAVIS owns.

27

28

---

13

COMPLAINT FOR DECLARATORY RELIEF AND MONEY DAMAGES: IDENTITY THEFT, SET ASIDE
JUDGMENT BASED ON EXTRINSIC FRAUD AND FRAUD ON THE COURT

69.    RAJAEE's nightmare didn't stop there. The unraveling of RAJAEE's identity theft opened a Pandora's box, revealing that RAJAEE was in fact DAVIS' victim within a much wider criminal operation. An operation RAJAEE is currently investigating that involves predicate act violations that seem to squarely fall under the Racketeering Influenced and Corrupt Organizations Act. (RICO)

70.    In August 2023, RAJAEE discovered not only that he was a victim of organized crime, but also that the United States Government, including the IRS, California Franchise Board, Small Business Administration, FDIC-insured banks, and the judicial machinery itself, have fallen victim to DAVIS' criminal use of interstate companies.

71.    In August 2023, RAJAEE unearthed evidence that DAVIS was engaging attorneys to perpetrate legal system abuses, effectively shielding himself from the detection of his much larger criminal offenses that RAJAEE is currently investigating. DAVIS's larger criminal scheme, *inter alia*, involved the evasion of taxes from the unlawful use of RAJAEE's identity. RAJAEE's identity theft was used as a tool to facilitate tax fraud. In an LLC, partners typically have access to each other's personal information, such as Social Security numbers, addresses, and further identifying details, for legitimate business purposes, including tax filing. DAVIS' scheme necessitated a victim because any other business structure, like a single-member LLC, would be disregarded by the IRS, and the tax crimes would not be achievable. DAVIS unlawfully used RAJAEE's personal information without consent to fabricate and conceal financial transactions, including money laundering, embezzlement, and tax evasion of underreported business or personal income. The concealment of the fabrications occurred within the member capital accounts of TOPDEVZ, which uses RAJAEE's identity and tax information as a member. DAVIS used RAJAEE's tax account information to conceal bogus entries in the tax capital accounts within the partnership—specifically, each of the three

COMPLAINT FOR DECLARATORY RELIEF AND MONEY DAMAGES: IDENTITY THEFT, SET ASIDE
JUDGMENT BASED ON EXTRINSIC FRAUD AND FRAUD ON THE COURT

1   $250,000 and $37,240 financial transactions used to determine majority ownership

2   of TOPDEVZ. DAVIS caused the fictitious tax entities within the TOPDEVZ

3   partnership because he knew the victim, RAJAEE, would not know his identity

4   was being used in conjunction with tax crimes. If anything was to be questioned,

5   DAVIS' backup plan was to misrepresent the facts, including deeds of perjury.

6   DAVIS evaded and defeated taxes by the affirmative acts of willfully subscribing

7   to his personal tax returns, and on the related tax returns of TOPDEVZ and

8   PORTER, DAVIS fraudulently concealed the preparation of those returns. DAVIS

9   knew he was procuring materially bogus tax returns from his willful

10  misrepresentation of his income (to which he did not have) to subsidize capital

11  account credits. DAVIS claimed IRS capital account credits, which the taxpayer,

12  DAVIS, was not entitled to receive. Consequently, such willful underreporting or

13  concealment constitutes an attempt to evade or defeat tax by evading the correct

14  tax assessment. DAVIS was only able to achieve these larger crimes from his

15  victimization of RAJAEE.

16      72.    DAVIS was not alone in his pursuit of crimes; he recruited others,

17  including attorneys.

18      73.    RAJAEE now possesses DAVIS' IRS tax returns, SBA loan

19  documents, banking agreements, path of funds, copies of checks, operating

20  agreements, membership certificates, forged applications, fraudulent bank accounts

21  opened, Secretary of State filings, and forged membership certificates with

22  DAVIS' signature on them that can prove RAJAEE's identity theft and serve as a

23  foundation for the current investigations regarding the much larger racketeering

24  crimes that affected RAJAEE's personal property and business.

25      74.    Reeling from the traumatic evidence, RAJAEE took decisive action,

26  filing an identity theft report with the Federal Trade Commission and with the IRS,

27  marking the first steps in RAJAEE's quest for true justice. A true and correct copy

28

---

15

COMPLAINT FOR DECLARATORY RELIEF AND MONEY DAMAGES: IDENTITY THEFT, SET ASIDE
JUDGMENT BASED ON EXTRINSIC FRAUD AND FRAUD ON THE COURT

1  of the Identity Theft Report RAJAEE filed with the FTC on November 13, 2023, is
2  attached hereto as Exhibit "1". A true and correct copy of the email sent by
3  RAJAEE to the attorneys and partners at CUMMINS, attorney KIRK, and attorney
4  BAILEY on November 13, 2023, notifying them of the identity theft report filed
5  with the Federal Trade Commission is attached hereto as Exhibit "2".

6      75.    In August 2023, it was further discovered that DAVIS exploited
7  RAJAEE's IRS information within TOPDEVZ's partnership returns to advance his
8  own larger criminal operation that RAJAEE is still investigating.

9      76.    Within the TOPDEVZ tax returns, DAVIS used RAJAEE's tax
10  information as a method to launder funds from PORTER and a PPP-Loan in order
11  for DAVIS to illicitly generate income and avoid IRS taxation.

12     77.    DAVIS then used his unlawfully acquired income to obtain majority
13  ownership and control of TOPDEVZ from the wrongful use and abuse of legal
14  proceedings.

15  **THE FINAL RESULTS OF THE ARBITRATION AND JUDGMENT**
16  **PROCURED FROM YEARS OF CONCEALED CRIMES**

17     78.    A simple glance at the arbitration's underlying final award dated May
18  12, 2023, shows how the operating agreement, tax returns, and DAVIS' perjured
19  testimony were critical to the outcome of the judgment against RAJAEE.

20     79.    The final award references a combined 233 (two hundred and thirty-
21  three) instances in which either the "Operating" Agreement or "tax" returns are
22  mentioned in the adjudication by the arbitrator.

23     80.    The very start of the final award reads, "The undersigned Arbitrator
24  (the "Arbitrator"), having been designated in accordance with the Operating
25  Agreement for TopDevz LLC, dated May 9, 2017, ("Agreement")".

26     81.    The final award further demonstrates the significance of the falsified
27  tax returns along with DAVIS' perjured testimony to support the operating

28

---

16
COMPLAINT FOR DECLARATORY RELIEF AND MONEY DAMAGES: IDENTITY THEFT, SET ASIDE
JUDGMENT BASED ON EXTRINSIC FRAUD AND FRAUD ON THE COURT

1  agreement, "Davis invested the initial $750,000 to start the LLC. 2021 RT 233-
2  234. That capital investment is recognized in the LLC's tax returns. Davis Exhibits
3  8, 9, 10 and 11." and "A "capital call" for $76,000 was made by RAJAEE in
4  November 2020, and RAJAEE and DAVIS contributed approximately $38,760 and
5  $37,240, respectively, to the LLC."

6      82.    The final award explicitly states, "two things are clear: (1) only Davis
7  contributed capital to the start-up of the LLC, and (2) the LLC's outside
8  accountants have reported on capital structure of the LLC on the LLC's annual tax
9  returns for 2017, 2018, 2019 and 2020…".

10     **The Criminal Truth Behind DAVIS' $750,000 K1's**

11     83.    The $750,000 DAVIS claims to have "invested … to start the LLC"
12  involved three separate wire transfers, all from the same bank account belonging to
13  PORTER.

14     84.    The funds were transferred from PORTER's bank account on May 3,
15  24, and November 22, 2017.

16     85.    On May 24, 2017, date of second wire, the very same day, $200,000
17  was transferred into the PORTER account from a separate PORTER account
18  ending in ****3860. This account was a line of credit account owned by PORTER.
19  WILLIAMS is a signer on the PORTER bank accounts.

20     86.    On September 27, 2017, PORTER's California Secretary of State
21  filing made by DAVIS evidence that Todd Belluomini was a member and owner of
22  PORTER in 2017.

23     87.    PORTER's accompanying 2017 membership certificate also shows
24  Todd Belluomini as an owner of PORTER.

25     88.    On April 19, 2018, WILLIAMS provided DAVIS with, "... the Porter
26  and Grigio business reports. You should have copies of the taxes and the rest is TD

27

28

17

COMPLAINT FOR DECLARATORY RELIEF AND MONEY DAMAGES: IDENTITY THEFT, SET ASIDE
JUDGMENT BASED ON EXTRINSIC FRAUD AND FRAUD ON THE COURT

1    and TBD" in an email with the subject "Re: Wells Fargo- new account/line of
2    credit checklist".

3        89.    In May 2018, DAVIS caused the unduly manipulation of
4    TOPDEVZ's accounting ledger specifically related to a Wells Fargo Line of Credit
5    he was trying to obtain for himself. In the process of committing bank fraud,
6    DAVIS caused the entire manipulation of TOPDEVZ's accounting ledger to
7    convert PORTER transfers into his individual name to evade taxes in the future.

8        90.    On May 1, 2018, DAVIS contacted RAJAEE's assistant Siarra Wood
9    to obtain financial reports. Specifically, on May 1, 2018, Ms. Wood, in response to
10    DAVIS' request, exported and transmitted financial data to DAVIS, "Hi , Reports
11    attached. We don't have debt. :-)"

12        91.    On May 2, 2018, Ms. Wood, without RAJAEE's knowledge or
13    consent, altered vital financial records, notably the "Owners Equity" and "Owner's
14    contribution" sections of the TOPDEVZ ledger.

15        92.    Ms. Wood then forwarded updated Profit and Loss and Balance Sheet
16    reports to DAVIS, "Hey, These have been amended and are good to go. Thanks for
17    your patience :-)."

18        93.    A comparison of the before and after Balance Sheet and Profit and
19    Loss reports show the monumental changes made by WOOD at DAVIS' request
20    that fundamentally manipulated the falsification of individual capital contributions
21    towards TOPDEVZ.

22        94.    Minutes later, DAVIS used wire communications to transmit the false
23    financial statements to Wells Fargo, "Andrea, Hope you had a great vacation. I am
24    sending over the documents you requested and a few more. I will call you to
25    discuss."

26        95.    On May 15, 2018, DAVIS prepared, signed, and submitted another
27    fraudulent financial statement to Wells Fargo, misrepresenting among other things,

28

EXHIBIT 11, PAGE 286

1   that DAVIS' personal net worth was in excess of $3.5-million and that "I [DAVIS]

2   currently own 100% of Grigio Art Consulting, 49% of TopDevz, LLC 15% of

3   Kintura, LLC, Porter Consulting LLC."

4       96.    DAVIS' predicate acts in connection to the Wells Fargo line of credit

5   had three direct consequences to RAJAEE, that were unknown to him at the time:

6               a.    RAJAEE and TOPDEVZ's identities were being

7                     misappropriated by DAVIS to falsify financial documents to a

8                     Federal Bank with the intent to obtain a line of credit for

9                     DAVIS personally.

10              b.    100% of PORTER-owned funds were reclassified and renamed

11                    on the LLC's accounting ledger to "DAVIS" individually,

12                    thereby, obfuscating the source of funds to credit DAVIS

13                    individually for $750,000.

14              c.    RAJAEE's entire membership interest was eliminated to zero in

15                    the LLC's accounting records by the changes.

16      97.    In September 2018, TOPDEVZ filed its initial tax returns with the

17   IRS. When RAJAEE signed those returns, he didn't know that DAVIS had stolen

18   $750,000 from PORTER. DAVIS was using TOPDEVZ's tax returns to hide

19   PORTER's money and make it look like legal income, as part of a scheme

20   involving RAJAEE's identity theft and DAVIS' broader tax fraud plan.

21      98.    DAVIS used the TOPDEVZ partnership's tax returns, "Expanded

22   Capital Account Summary " and K1's to launder the $750,000, receiving personal

23   income derived by unlawfully using RAJAEE's tax information within DAVIS'

24   much larger tax fraud scheme.

25      99.    RAJAEE was unaware of the crimes because DAVIS had been lying

26   to everyone since 2017, akin to his repeated perjury in legal proceedings, that he

27

28

_____

19

COMPLAINT FOR DECLARATORY RELIEF AND MONEY DAMAGES: IDENTITY THEFT, SET ASIDE
JUDGMENT BASED ON EXTRINSIC FRAUD AND FRAUD ON THE COURT

1    "personally invested" the $750,000, abusing his fiduciary relationship with

2    RAJAEE.

3        100.    DAVIS and BRYN 2015 personal tax returns form 6251 shows no

4    assets or income capable of supporting a $750,000 personal investment.

5        101.    DAVIS and BRYN 2016 personal tax returns form 6251 shows no

6    assets or income capable of supporting a $750,000 personal investment.

7        102.    DAVIS and BRYN 2016 personal tax returns show a balance owing

8    to the IRS for $98,044 and $23,295 due to the California Franchise Board.

9        103.    PORTER's 2016 returns show a loss of -$58,180. DAVIS took 100%

10   of the losses on his 2016 K1. DAVIS' capital account also only shows an ending

11   balance of $100,049. BRYN (DAVIS' former wife) was also issued a fraudulent

12   K1. With BRYN's partner capital account showing zero.

13       104.    DAVIS and BRYN also falsified their marriage within the 2016 tax

14   returns answering "no" to the tax question, "AA Is any member of the LLC related

15   (as defined in IRC Section 267(c)(4)) to any other member of the LLC?"

16       105.    In 2017, DAVIS filed a falsified "Schedule C" IRS return for himself

17   and PORTER using the "cash" accounting method under section "F." The 2017 tax

18   filing lacks any distribution to DAVIS to support the $750,000 personal investment

19   credit DAVIS received on the 2017 TOPDEVZ partnership returns.

20       106.    On October 7, 2018, DAVIS requested and received from RAJAEE

21   the direct contact information for TOPDEVZ's accountant Jennifer Glaser.

22       107.    DAVIS then made material misrepresentations to Ms. Glaser to obtain

23   larger personal IRS tax credits, which DAVIS was not entitled to receive.

24       108.    DAVIS misrepresented to the accountant that there was a revised

25   partnership agreement and concealed the true source of the $750,000.

26       109.    On October 11, 2018, the accountant wrote to DAVIS, "Hi Tyler,

27   Attached is your corrected K-1. Can you just confirm via email that the following

28

20
COMPLAINT FOR DECLARATORY RELIEF AND MONEY DAMAGES: IDENTITY THEFT, SET ASIDE
JUDGMENT BASED ON EXTRINSIC FRAUD AND FRAUD ON THE COURT

is correct so we can add it to our file. Per our conversion [SIC] all losses should be allocated to you as indicated in the revised partnership agreement. Also since Ashkan has already filed his tax return for 2017 and used $27,961 of the loss reported to him on his K-1 you have agreed that we will allocate $27,961 of the 2017 loss from TOPDEVZ to him so he will not have to amend his 2017 tax return. Also can you forward me the most up-to-date version of the partnership agreement."

110.    The misrepresentation in October of 2018 by DAVIS caused TOPDEVZ's falsified returns to report a personal investment by DAVIS on his K1, Part II, Section L, "Capital contributed during the year" in the personal name of Tyler Davis for $750,000.

111.    On November 8, 2018, DAVIS produced the falsified 2017 TOPDEVZ tax returns, YTD and P&Ls for TOPDEVZ to Tri-Counties bank without RAJAEE's knowledge.

112.    Separate from DAVIS' much larger criminal operation against the United States, DAVIS' financial crimes also had devastating consequences for RAJAEE.

113.    The evisceration of RAJAEE's entire ownership stake in the LLC because RAJAEE's $915,000 were reclassified.

114.    The clandestinely reported total of $750,000 to DAVIS individually truthfully belonged to PORTER and its members.

115.    RAJAEE's identity was unlawfully used by DAVIS to falsify PORTER's $750,000 into DAVIS' individual name within the partnership return.

116.    RAJAEE's identity was unlawfully used by DAVIS to take a personal loss to which DAVIS was not entitled to in the first place. The original partnership K1 return showed DAVIS willfully procured a personal IRS tax credit of -

COMPLAINT FOR DECLARATORY RELIEF AND MONEY DAMAGES: IDENTITY THEFT, SET ASIDE JUDGMENT BASED ON EXTRINSIC FRAUD AND FRAUD ON THE COURT

EXHIBIT 11, PAGE 289

$209,546. Specifically, within the partnership's K1 allocations and capital investment accounts, Part II, Section L, "Current year increase (decrease)."

117.  RAJAEE's identity was unlawfully used again by DAVIS to take additional personal losses to which DAVIS was not entitled. DAVIS increased his personal IRS tax credit to -$399,684. Specifically, within the partnership's K1 allocations and capital investment accounts, Part II, Section L, "Current year increase (decrease)."

118.  DAVIS knew to take -$399,684 and not the full $427K LLC losses, because DAVIS obtained the tax information of RAJAEE and acquired knowledge that RAJAEE declared a loss of, -$27,961 on his K1. DAVIS then criminally used RAJAEE's social security tax account and his accompanying personally identifiable information to adjust and match DAVIS' own K1 filing within the TOPDEVZ tax returns.

119.  DAVIS continued to take personal losses in 2018 through 2020 from the predicate acts related to the partnership's 2017 returns.

120.  On November 16, 2018, WILLIAMS asked, "I'm helping Tyler with some personal items and I need a [SIC] emailed copy of the 2017 tax returns for Topdevz. Could I get that from you ASAP?"

121.  On November 16, 2020, PORTER signed an agreement with Nate Paul, a Texas real-estate investor that has been charged with eight counts of making false statements to defraud financial institutions. The government is seeking $172 million in restitution from Paul. (Publicly available: https://www.texastribune.org/2023/06/09/nate-paul-federal-charges/) RAJAEE is still developing evidence in connection with his victimization in this scheme.

122.  On January 2, 2019, DAVIS' wife of then 24 years filed for divorce in Butte County Superior Court of California, Case No. 19FL00014.

EXHIBIT 11, PAGE 290

**The Truth Behind The $37,240 On DAVIS' K1 is from a PPP-Covid 19 Loan DAVIS Used for Personal Gain**

123.   In April 2020, DAVIS received $328,300 of income derived directly from bank fraud against FDIC-insured Tri-Counties Bank and the Small Business Administration related to a COVID-19 PPP loan. (Loan # 5058697106)

124.   DAVIS committed bank fraud by concealing two other PORTER owners from the SBA and Tri-Counties Bank.

125.   DAVIS lied and said he was the sole owner of PORTER and signed the documents by himself.

126.   In 2020, PORTER's two other members were Ryan Lippmann and Todd Belluomini, who owned a combined 40% of PORTER.

127.   The SBA application mandates substantial business owners be disclosed, "List all owners of 20% or more of the equity of the Applicant."

128.   Tri-Counties Bank set up and administered the PPP loan with a dedicated account and agreement "Prepared by - Tri Counties Bank." An account 712018768 was opened in PORTER's name.

129.   On November 11, 2020, DAVIS wrote and signed a check for $37,240 towards his personal investment in TOPDEVZ.

130.   The $37,240 check was drawn from a separate company, MASON, not DAVIS.

131.   In December 2020, DAVIS transferred $37,240 by wire from the PORTER PPP loan account 712018768 to MASON's bank account to replace the November 11 cheque he wrote to TOPDEVZ.

132.   In September 2021, DAVIS unlawfully used RAJAEE's personal tax information to fraudulently receive exactly a $37,240 personal IRS capital credit derived from DAVIS' larger bank and tax fraud crimes, specifically on DAVIS' K1, Part II, Section L, "Capital contributed during the year."

EXHIBIT 11, PAGE 291

133.   In December 2021, DAVIS produced the 2017, 2018, 2019, and 2020 tax returns and used them against RAJAEE in the arbitration. The falsified returns that credited DAVIS with the $750,000 and $37,240 used in the final award, "A "capital call" for $76,000 was made by RAJAEE in November 2020, and RAJAEE and DAVIS contributed approximately $38,760 and $37,240, respectively, to the LLC...these contributions were recognized on the LLC's 2020 tax return as capital contributions..."

**HOW THE IDENTITY THEFT AND RELATED CRIMES WERE COMMITTED TO INDUCE RAJAEE INTO ARBITRATION**

**2017 Davis Wire Fraud to Obtain 49% Of TOPDEVZ, Then Used RAJAEE's Tax Account to Evade IRS Taxation**

134.   On January 10, 2017, DAVIS willfully obtained the telecommunication identifying information of RAJAEE.

135.   DAVIS knowingly devised and participated in a scheme to defraud for the purpose of obtaining a 49% personal property partnership interest in a yet-to-be-formed California company, TOPDEVZ.

136.   DAVIS' scheme involved making false and fraudulent pretenses to RAJAEE that DAVIS would personally contribute $750,000 towards the capitalization of TOPDEVZ in exchange for a 49% personal property interest in TOPDEVZ.

137.   DAVIS' personal 2016 tax returns filed on November 22, 2017, evidence he was not financially capable of a $750,000 personal investment and knew he never intended to fulfill the promise he made to RAJAEE.

138.   PORTER's 2016 and 2017 tax returns evidence PORTER was not financially capable of a $750,000 distribution to DAVIS.

139.   On April 25, 2017, RAJAEE, relying on DAVIS' promises, retained immigration counsel while in Canada and, with DAVIS' involvement, obtained an

24

EXHIBIT 11, PAGE 292

1  L1A visa and moved his family to the United States based on RAJAEE owning a

2  51% majority share of TOPDEVZ and DAVIS a 49% minority share.

3      140.  RAJAEE and DAVIS are the only two signatory members of the

4  operating agreement and owe fiduciary duties to each other.

5      141.  TOPDEVZ is taxed by the IRS as an S corporation.

6      142.  On May 1, 2017, DAVIS willfully obtained RAJAEE's name,

7  address, checking account number, routing code, and place of employment.

8      143.  RAJAEE, at the instructions of his immigration attorneys and relying

9  on his relationship of trust in believing DAVIS, was corruptly influenced to sign

10 the May 9, 2017, operating agreement for TOPDEVZ along with the membership

11 certificates provided by the immigration attorneys.

12     144.  On May 24, 2017, WILLIAMS sent wet-signed membership

13 certificates and the last page of the operating agreement.

14     145.  RAJAEE was not aware at the time that by signing the operating

15 agreement and membership certificates, DAVIS was using wire communications to

16 obtain a personal property interest of 49% in TOPDEVZ without any intention of

17 fulfilling his promise to RAJAEE to contribute $750,000 from his personal net-

18 worth.

19     146.  DAVIS lied in the arbitration about this promise, "Mr Davis invested

20 $750,000 into this new endeavor as he promised."

21     **WILLIAMS' Involvement to Help DAVIS**

22     147.  WILLIAMS was the agent of service for TOPDEVZ, MASON,

23 Consilio Medical Equipment Planning LLC, Riley's Doggie Daycare LLC and

24 GRIGIO, LLC.

25     148.  RAJAEE has discovered that WILLIAMS' role was much more

26 expansive than just acting as an agent of service for DAVIS' companies.

27 WILLIAMS has handled CFO responsibilities, was involved in, *inter alia,* bank

28

25

COMPLAINT FOR DECLARATORY RELIEF AND MONEY DAMAGES: IDENTITY THEFT, SET ASIDE
JUDGMENT BASED ON EXTRINSIC FRAUD AND FRAUD ON THE COURT

EXHIBIT 11, PAGE 293

loan applications, tax returns, preparation of financial statements, procurement of insurance, initiated millions in wire transfers etc.

**HOW RAJAEE WAS DEFRAUDED DURING ARBITRATION AND THE TRUTH BEHIND THE UNDERLYING FRAUD AND CRIMES**

    **DAVIS' Willful Failure to Enjoin Necessary Party PORTER to Defraud**

    149.   In February 2021, RAJAEE initiated arbitration because he was ignorant of DAVIS' criminal acts. Based on RAJAEE's lack of this knowledge, along with RAJAEE's inherent false beliefs, DAVIS was successful in inducing RAJAEE to arbitrate.

    150.   On March 4, 2021, CARPENTER and SCALIA appeared to represent DAVIS.

    151.   On March 23, 2021, RAJAEE filed a first amended arbitration complaint naming PORTER as a defendant. The lawsuit involving PORTER was concealed from all other PORTER members.

    152.   On April 9, 2021, before an arbitrator was appointed, DAVIS and his attorneys employed extrinsic fraud to willfully have the necessary party, PORTER, removed from the proceedings by making material misrepresentations while concealing crucial facts. DAVIS, while the CEO of PORTER, and with his attorneys' knowledge, misrepresented that PORTER was completely unrelated to TOPDEVZ and had nothing to with TOPDEVZ, "DAVIS's unrelated construction consulting firm Porter Consulting, LLC ("Porter")..." and "Porter's business had nothing whatsoever to do with the LLC".

    153.   Based on the aforementioned misrepresentations and concealments, DAVIS was successful in willfully having a necessary party, PORTER, removed before the arbitrator was selected.

    154.   On May 3, 2021, the ICDR (AAA) ruled to remove PORTER, and equally damaging to RAJAEE was that DAVIS, through his motion, was

COMPLAINT FOR DECLARATORY RELIEF AND MONEY DAMAGES: IDENTITY THEFT, SET ASIDE JUDGMENT BASED ON EXTRINSIC FRAUD AND FRAUD ON THE COURT

1  defrauding RAJAEE by enforcing an agreement to arbitrate while concealing
2  crimes against RAJAEE related to the agreement. This included DAVIS'
3  simultaneous elimination of PORTER from discovery and induced RAJAEE into
4  an unfair arbitration where RAJAEE would be deprived from fully presenting his
5  claims or defenses.

6      155.   On August 27, 2021, CARPENTER appeared as lead counsel for
7  PORTER.

8      **CARPENTER Targets Falsified Tax Returns Prior To Filing**

9      156.   On October 16, 2021, DAVIS filed his first operative complaint in the
10  arbitration. However, DAVIS and his attorneys were scheming months before
11  DAVIS filed his operative complaint to exploit the falsified partnership returns.

12     157.   On April 27, 2021, DAVIS wrote to TOPDEVZ's accountants, "Do
13  you have the 2020 taxes complete with my K1. Also, can you send me a copy of
14  the 2019 taxes. If it isn't done, could you give me a status?"

15     158.   On June 2, 2021, DAVIS sent the 2019 tax returns to his attorney
16  CARPENTER. CARPENTER replied, "Thanks. Follow up and get the 2020
17  return."

18     159.   On June 8, 2021, CARPENTER wrote to DAVIS and SCALIA
19  stating, "Tyler: Let me know if you had any success with getting the returns. I
20  could not open the 2019, so please provide both now."

21     160.   On June 28, 2021, Todd Belluomini wrote DAVIS a letter again
22  stating he had not received financial statements requested by his lawyer or K1's for
23  PORTER, "Porter Consulting LLC to provide the financial information requested
24  by my attorney Michael Garcia."

25
26
27
28

                                        27
    COMPLAINT FOR DECLARATORY RELIEF AND MONEY DAMAGES: IDENTITY THEFT, SET ASIDE
             JUDGMENT BASED ON EXTRINSIC FRAUD AND FRAUD ON THE COURT

1    **CARPENTER Aids Davis in Concealing Discovery Of Davis' Crimes At**
2    **The Deposition**

3    161.   On November 9, 2021, DAVIS through CARPENTER produced his
4    initial disclosures to RAJAEE with over 1,000 pages of documents stamped on the
5    bottom-right-hand corner from "DAV_TD000001-DAV_TD001001." None of the
6    disclosures included any information regarding the concealed facts.

7    162.   On November 18, 2021, DAVIS was deposed, and CARPENTER
8    repeatedly instructed DAVIS not to answer any questions related to PORTER,
9    MASON or the PPP-loan funds and made material misrepresentations to help his
10   client deprive RAJAEE of material facts.

11   "**MR. CARPENTER**: I'm going to object as to Questions to this agreement
12   or action. And the details of Porter Consulting are not relevant and
     confidential and private. So I'm going to instruct the witness not to answer."
13

14   "**MR. CARPENTER**: For the reasons stated, we are going to instruct the
     witness not to answer concerning Porter Consulting."
15

16   "**MR. CARPENTER**: I'm going to instruct the witness not no answer any
     details or financial information regarding Porter Consulting, which is not a
17   party to the LLC, or this action, and for which the information is
     confidential."
18

19   "**MR. CARPENTER**: You know the payments were made on behalf of
     Tyler and credited only to Tyler, and that Porter Consulting is not a party to
20   the operating agreement or the action."

21   "**MR. CARPENTER**:...So we are not going to answer questions about his
22   personal finances or Porter Consulting."

23   "**MR. CARPENTER**: And I'll instruct the witness not to answer.

24   Porter Consulting is not a party to the operating agreement or this matter.
25   Any financial information concerning Porter Consulting is confidential and
     there is no reason for it to be testified to."
26

27   "**Q** Do you recall Porter Consulting being approved for a loan, a PPP loan,
     on April 13, 2020, in the amount of $328,320?"
28

28

COMPLAINT FOR DECLARATORY RELIEF AND MONEY DAMAGES: IDENTITY THEFT, SET ASIDE
JUDGMENT BASED ON EXTRINSIC FRAUD AND FRAUD ON THE COURT

EXHIBIT 11, PAGE 296

**MR. CARPENTER**: I've instructed the witness not to answer, and if you continue to badger him to answer questions, in which he is instructed not to answer, it will be considered harassment and we'll have to terminate the deposition."

"**MR. CARPENTER**: He's not answering questions about loans for Porter Consulting that don't relate to TopDevz loans."

"**MR. CARPENTER**: I'm instructing him not to answer."

"**MR. CARPENTER**: I instruct the witness not to answer for the same reason. Mason Building has nothing to do with this case…"

**DAVIS' Repeated Perjury to Defraud in Procuring Interim Order No. 4**

163.   On November 22, 2021, just five business days before the first set of hearings, DAVIS, in a reply brief, for the first time, made new claims premised on fraud that he owns 100% of TOPDEVZ, even though, DAVIS admitted to his 49% ownership in obtaining his various bank loans spanning four years, and that, DAVIS had judicially admitted in pleadings submitted to the Arbitrator—including in the dispositive motion itself and in the sworn declaration he submitted in support of that motion—that RAJAEE was the majority 51% owner of TOPDEVZ, and DAVIS was the minority 49% owner. In fact, in his very first allegation on the very first page of his counterclaim in the arbitration, he judicially admitted that he was a 49% owner of the company.

164.   On November 22, 2021, DAVIS resorted to persistent and repeated perjury because DAVIS would benefit from his willful failure to enjoin PORTER before an arbitrator was selected. RAJAEE could not conduct discovery on PORTER, so DAVIS' perjury could not be contested or discovered in the arbitration, "... I [DAVIS] put in 100% of the capital of the company for $750,000." … "I [DAVIS] put in 100% of the capital, and I had to meet a capital call" … "I certainly know that I [DAVIS] contributed all the capital the start…".

COMPLAINT FOR DECLARATORY RELIEF AND MONEY DAMAGES: IDENTITY THEFT, SET ASIDE
JUDGMENT BASED ON EXTRINSIC FRAUD AND FRAUD ON THE COURT

165.  DAVIS judicially admitted that he was "always" aware of the LLC's capital tax account information, "I [DAVIS] received these K-1 's, which by law come with the complete tax return for the LLC, together with Rajaee's K-1 . I [DAVIS] received the tax returns after completed each year, in 2018, 2019, 2020 and 2021." ... "Each of the returns show that I [DAVIS] am the only LLC member with a positive capital account" ... "I am aware from the course of dealings that Rajaee's capital account was always negative due to the losses in the LLC."

166.  On December 1, 2021, without ever amending his operative complaint, DAVIS submitted and used as evidence against RAJAEE the four years of the partnership's returns and engaged in repeated perjury of his "personal" investment of $750,000.

**MATTHEWS Q**: "…And as far as the original capitalization of TOPDEVZ went, how much money did you put in?
**DAVIS A**: $750,000."

The aforementioned perjured testimony by DAVIS is the exact testimony line number from the transcript that the arbitrator used in issuing the Final Award in May 2023.

**MATTHEWS Q**: "Now, I believe yesterday you testified that you made an investment in TOPDEVZ in the amount of ·$750,000; correct?
**DAVIS A**: Correct."

**MATTHEWS Q**: Okay. And, again, just to be clear, you said that you made an investment of $750,000 into TOPDEVZ; correct?
**DAVIS A**: Correct."

167.  DAVIS continued to make perjured statements regarding the $37,240 of illicit income DAVIS derived from identity theft, bank and tax fraud.

**MATTHEWS Q:** "So there was a check that was issued from your company, Mason Building & Design, for your personal capital contribution to TOPDEVZ?

COMPLAINT FOR DECLARATORY RELIEF AND MONEY DAMAGES: IDENTITY THEFT, SET ASIDE
JUDGMENT BASED ON EXTRINSIC FRAUD AND FRAUD ON THE COURT

1      **DAVIS A:** Yes. The request came in, I was out of town, and so my business
2  partner at Mason Building wrote that check, deposited it into TOPDEVZ,
3  and then I wrote a check to Mason Building and Design several days after
   that.”

4      168.   In the April 2022 hearings, DAVIS revealed for the first time the
5  source of his funds were actually from a "personal line of credit" which was
6  categorically false.

7      **NERI Q**: Okay. And you're not the same thing as Porter Consulting, right?
8  You're not Porter Consulting's alter ego?
       **DAVIS A**: No, I'm not. But the money came from my personal line of
9  credit.”

10

11     169.   As an example, PORTER's 2017 bank statements evidence that on
12 May 24, 2017, two transfers for $150,000 and $50,000 were sourced from account
13 ending in ***3860 into PORTER's operating account. The same day, $250,000
14 was wired out to RAJAEE's company.

15     170.   The bank account where the money originated from was a "Porter
16 Consulting Loan" in PORTER's name, belonging to the partner members of
17 PORTER.

18     171.   On January 6, 2022, having been presented with falsified tax returns
19 and perjured testimony, the arbitrator issued Interim Order No. 4 and declared
20 DAVIS as the majority owner in TOPDEVZ and, *inter alia*, ordered DAVIS
21 control of TOPDEVZ.

22 **NEW PEOPLE JOIN TO FURTHER DAVIS' CRIMES FOR THEIR OWN**
23 **MUTUAL BENEFIT**

24     **LINTZ, FRYE, Melissa Garcia and TALENTCROWD**

25     172.   At the time Interim Order No. 4 was issued by the arbitrator,
26 TOPDEVZ had several key employees: LINTZ, its COO, FRYE, Director of
27 Accounts and Melissa Garcia, the financial administrator.

28

COMPLAINT FOR DECLARATORY RELIEF AND MONEY DAMAGES: IDENTITY THEFT, SET ASIDE
JUDGMENT BASED ON EXTRINSIC FRAUD AND FRAUD ON THE COURT

173.   All three TOPDEVZ employees, LINTZ, FRYE and Ms. Garcia joined DAVIS' scheme to harm TOPDEVZ and RAJAEE.

174.   DAVIS and LINTZ engaged in a mutually beneficial agreement. LINTZ agreed to assist DAVIS in a fraudulent dissolution of TOPDEVZ, a maneuver strategically designed to obfuscate DAVIS' much larger federal offenses and simultaneously preclude RAJAEE, the victim in this scheme, from gaining operational insight into the criminal activities.

175.   In quid pro quo, LINTZ was to assume the role of CEO at TOPDEVZ under a sham dissolution while clandestinely orchestrating the plundering of TOPDEVZ's entire economic value to his newly established entity, TALENTCROWD, incorporated on February 8, 2022, while LINTZ was acting CEO of TOPDEVZ.

176.   On January 7, 2022, CARPENTER, threatened RAJAEE, "...as well as the civil and criminal penalties that will follow if Mr. RAJAEE does not immediately return all funds to the LLC."

177.   On January 7, 2022, CARPENTER, threatened RAJAEE "Please be advised of the civil and criminal penalties which may ensue from the conduct described above."

178.   On January 7, 2022, FRYE created and shared with LINTZ a report of the "Top 5 Client Accounts by Utilization" for TOPDEVZ with personally identifiable information.

179.   On January 8, 2022, CARPENTER threatened, "Quite apart the potential criminal and immigration implications of these actions, your client should look for an opportunity to avoid this disastrous course of conduct".

180.   On January 11, 2022, DAVIS electronically submitted to the California Secretary of State that he is the Manager of TOPDEVZ.

COMPLAINT FOR DECLARATORY RELIEF AND MONEY DAMAGES: IDENTITY THEFT, SET ASIDE
JUDGMENT BASED ON EXTRINSIC FRAUD AND FRAUD ON THE COURT

1      181.  Around January 11, 2022, DAVIS seized control of the Wells Fargo

2 TOPDEVZ bank accounts by presenting interim Order No. 4 to Wells Fargo.

3      182.  On January 11, 2022, the tax addresses were changed to DAVIS'

4 personal office, 149 Parkshore Drive, Folsom, CA 95630.

5      183.  On January 12, 2022, Ms. Garcia exfiltrated thousands of files and

6 electronic documents from TOPDEVZ.com-hosted Google Drive.

7      184.  On January 13, 2022, Ms. Garcia downloaded the entire TOPDEVZ

8 accounting software module containing confidential data across a five-year span,

9 including invoices, bills, receipts, and personally identifiable information of

10 thousands of persons.

11      185.  On January 14, 2022, FRYE accessed and downloaded electronic

12 information containing personally identifiable information of people along with

13 financial, business, economic, and engineering information and sent them to her

14 personal email address.

15      186.  On January 14, 2022, FRYE downloaded trade-secret information and

16 the personally identifiable information of thousands of people from within the

17 recruiting and customer databases.

18      187.  On or about January 14, 2022, LINTZ declaration stated, "Frye, at

19 DAVIS' request, took a backup of the existing Jira instance used by TopDevz…"

20      188.  On January 14, 2022, FRYE was scheming the plan to share,

21 composing an email with the subject "Next Steps", the email reads, "Hi Guys!

22 Here is the list of what we need to do and what I have so far:" FRYE's plan

23 included the setting up of new emails and the use of the stolen personally

24 identifiable information of the TOPDEVZ workforce to invite them to switch to

25 "topdevz.io" by sending the invites to the workforces personal email addresses,

26 "New Google Email Addresses…Invite users to their personal email addresses…--

27 List:...List of existing Slack Users:"

28

COMPLAINT FOR DECLARATORY RELIEF AND MONEY DAMAGES: IDENTITY THEFT, SET ASIDE
JUDGMENT BASED ON EXTRINSIC FRAUD AND FRAUD ON THE COURT

189.   On January 15, 2022, the topdevz.io domain was stolen and transferred to PORTER's control, specifically, "tyler.davis@porterllc.com".

190.   On or about January 15, 2022, FRYE started stealing thousands of documents from the topdevz.com-hosted applications, including "Hourly Breakdown" of contractors, "Intellectual Property, Non-Competition, Non-Solicitation Agreements"

191.   On January 15, 2022, DAVIS, with LINTZ present, burglarized the offices of TOPDEVZ. "While I [LINTZ] was present on January 15, 2022 at the office and stood outside, I did not have any personal involvement in seizing and/or confiscating the computers and/or hard drives nor did I even touch them." … "The computer servers and other assets and property that RAJAEE is referring to belong to TOPDEVZ, not RAJAEE, and were seized by DAVIS".

192.   On January 16,18 and 19, 2022, DAVIS' ex-wife BRYN engaged in large monetary transactions totalling $36,000 from her personal bank account and TOPDEVZ's corporate bank account, "Transfer IN Branch/Store – From J Bryn Davis DDA xxxxxx4605". TOPDEVZ is community property in the active marriage dissolution case in Butte County.

193.   On or about August 2022, BRYN, through her attorney at the time, admitted to RAJAEE's attorney that her and DAVIS' 2017 and 2018 personal tax returns were in her possession.

194.   On December 2, 2022, after RAJAEE successfully opposed DAVIS' motion to confirm the interim award, RAJAEE's counsel asked BRYN's counsel "Does Bryn really want to bury her head to what's coming down the pike?" To which BRYN's counsel replied that he was "...not involved now".

195.   On January 17, 2022, CARPENTER directly assisted DAVIS in taking over the Wells Fargo Bank account by communicating directly with Wells

34

COMPLAINT FOR DECLARATORY RELIEF AND MONEY DAMAGES: IDENTITY THEFT, SET ASIDE
JUDGMENT BASED ON EXTRINSIC FRAUD AND FRAUD ON THE COURT

EXHIBIT 11, PAGE 302

1  Fargo's lead counsel, Graham H. Claybrook, and CARPENTER, who was not

2  authorized to represent TOPDEVZ did so anyway.

3      196.  On January 17, 2022, LINTZ lied to RAJAEE in a text message that,

4  "I'm intentionally keeping myself out of this and out of the loop because I'd rather

5  know as little as possible. We (Keri, Jules, Goose, me) are out trying to

6  decompress - too much stress.".

7      197.  On January 17, 2022, LINTZ lied to RAJAEE and tells RAJAEE,

8  "Despite what you [RAJAEE] think, l'm not moving against you, or anyone, for

9  that matter.

10      198.  On or about January 19, 2022, FRYE made numerous false

11  representations to the contractors of TopDevz, instructing them to steal electronic

12  information and to start using a new topdevz.io domain.

13        a.   "No .com is going away, so download anything you need".

14        b.   "Hey! Can you please check your personal email for a new

15      TopDevz email and password? I need everyone over to the new domain as

16      soon as possible."

17        c.   "...Ashkan has been fired, and Josh is now CEO."

18        d.   "Good Morning! Please discontinue using this Slack channel.

19      Join us in the new instance. Check your TopDevz.io email address for

20      credentials to the new time tracking system. All the details are in the new

21      slack."

22      199.  On January 19, 2022, David Ward, a TOPDEVZ contractor, wrote on

23  Slack instant messaging, "I spoke with Amanda - they are going to be shutting

24  down the TopDevz Jira before too long and switching how they track time to a new

25  app. The new emails are a go they need us all to switch all are stuff over to them

26  (but they aren't turning them off until we have stuff switched over). She said they

27  are sending Mode an email about it today. They are just retooling with the

28

COMPLAINT FOR DECLARATORY RELIEF AND MONEY DAMAGES: IDENTITY THEFT, SET ASIDE
JUDGMENT BASED ON EXTRINSIC FRAUD AND FRAUD ON THE COURT

1  branding change, all is well there, it's just they are rebranding and switching
2  around software."

3    200.  On January 20, 2022, CARPENTER, published forged TOPDEVZ
4  stock certificates using RAJAEE's personal information via wire communications,
5  transferring ownership of RAJAEE's stock to DAVIS for 95.308%.

6    201.  On or about January 20, 2022, DAVIS used RAJAEE's personally
7  identifiable information without consent to open a JPMorgan Chase bank account
8  ending in 0516.

9    202.  On or about January 20, 2022, LINTZ and DAVIS used the stolen
10  look-alike "topdevz.io" (dot io, not dot com) to defraud in a national email scheme
11  exploited to plunder all the economic value of TOPDEVZ to TALENTCROWD.

12    203.  LINTZ judicially admitted to setting up the look-alike email,
13  "Responding Party and DAVIS took action to set up an alternative means of
14  servicing the same by setting up an alternate website, TOPDEVZ.io, on an
15  emergency basis."

16    204.  On or about January 20, 2022, DAVIS, for a criminal purpose, used
17  RAJAEE's name and place of employment to convey an ownership change within
18  TOPDEVZ to hundreds of people and asked the email recipients to wire all future
19  money into a different bank account. The fraudulent "topdevz.io" domain was used
20  to send emails with the intent to obtain money for TALENTCROWD, LINTZ, and
21  Ms. Garcia by defrauding TOPDEVZ's clients and contractors.

22    205.  On or about January 20, 2022, the coordinated wire fraud crimes were
23  used to take operational control of TOPDEVZ, and obtain money and property.

24    206.  The crimes involved misrepresentations to the TOPDEVZ clients and
25  workforce that DAVIS and LINTZ were acting under judicial authority or a legal
26  transaction that changed ownership in TOPDEVZ. The misrepresentations
27  included, *inter alia*,

28

EXHIBIT 11, PAGE 304

     a.     That there was new TOPDEVZ ownership, "I'm happy to officially announce a major change to TopDevz's ownership.

     b.     That RAJAEE was removed, "Ashkan Rajaee was relieved as managing member, effective immediately…,"

     c.     A sham rebrand, "We're also announcing a few other changes, which includes a rebrand from to TopDevz.com to TopDevz.io,"

     d.     New emails, "we're moving over to new emails (immediately)"

     e.     A new bank account ending in 0516 at JPMorgan CHASE, "In addition, we changed our corporate address and ACH information – attached is information for your files and AP team."

207.    On or about February 15, 2022, DAVIS unlawfully used RAJAEE's name and place of employment to terminate subcontractor contracts so that these contractors could be plundered to TALENTCROWD and subsequently invoiced from TALENTCROWD.

208.    On February 16, 2022, CARPENTER represented both DAVIS and TOPDEVZ.

209.    RAJAEE strenuously objected to DAVIS judicially enforcing an interim order without judicial review and due process. RAJAEE also went to Superior Court to seek injunctive relief, and the court determined that an interim order was issued and the court could not intervene.

210.    On or about February 15, 2022, to avoid $2.8 million in IRS s-corporation income and frustrate RAJAEE's tax account, LINTZ and DAVIS used RAJAEE's name, social security number, and address to willfully aid in the preparation and filing of an IRS 1099 document that is materially fraudulent and false. LINTZ's personal cell phone number is listed as the point of contact for the IRS notice itself.

EXHIBIT 11, PAGE 305

1    211.   CARPENTER was sent a demand letter to correct the IRS falsified
2  issue and never responded.

3    212.   On February 17, 2022, CARPENTER knowingly filed numerous
4  objections to multiple subpoenas, stating, "DAVIS is approximately 95% owner"
5  of TOPDEVZ. Further, the PORTER persons subpoenaed were not informed that
6  they had been subpoenaed. Example: Todd Belluomini.

7    213.   On March 29, 2022, BRYN was sent a legal letter specifically
8  informing her that DAVIS, "... may have been concealing income and assets from
9  you and/or understated his income and assets in the course of your divorce
10 proceedings."

11   214.   Numerous TOPDEVZ clients terminated their relationship,
12 demonstrating their refusal to participate in DAVIS and LINTZ's scheme.
13 "Because of the statements Joshua made about Ashkan, TopDevz and the hassle of
14 working with this vendor, PriceSpider stopped using TopDevz resources." (Steve
15 Evans, from TOPDEVZ client PricSspider)

16   215.   Despite receiving multiple legal notices, Defendant TD CLIENTS
17 continued to participate in the crimes because they heavily benefited from their
18 participation to plunder TOPDEVZ assets to TALENTCROWD.

19   216.   TD Clients and Client CXO's all kept the same resource, billing rate
20 and were able to seamlessly transfer information from the resource from
21 TOPDEVZ to TALENTCROWD because it was the exact same person. The TD
22 Clients also eliminated project delivery risk and risk from attrition.

23   217.   TD Clients interfered with the TOPDEVZ operating agreement
24 between DAVIS and RAJAEE by frustrating the management performance of the
25 TOPDEVZ operating agreement, essentially rendering its performance impossible
26 by RAJAEE.

27

28

38
COMPLAINT FOR DECLARATORY RELIEF AND MONEY DAMAGES: IDENTITY THEFT, SET ASIDE
JUDGMENT BASED ON EXTRINSIC FRAUD AND FRAUD ON THE COURT

218.    TD Clients also interfered with the contracts of the TOPDEVZ workforce by facilitating a breach of their contracts, confidentiality and theft of trade secrets to TALENTCROWD.

219.    TD Clients agreed to change the original TOPDEVZ bank account to a new JPMorgan Chase account and eventually one-hundred percent to TALENTCROWD's bank accounts.

220.    TD Clients agreed to communicate on the "topdevz.io" email servers which deprived RAJAEE of operational control and management of TOPDEVZ.

221.    Defendant TD Clients knew they were engaged in the theft of property and trade-secrets from TOPDEVZ, LLC by DAVIS and LINTZ.

**DRIVETIME, MCIVER and GRISOLANO**

222.    On March 9, 2022, DRIVETIME received a legal notice.

223.    On April 10, 2022, DRIVETIME received another legal notice.

224.    DRIVETIME facilitated the culpable persons request to change bank accounts from the TOPDEVZ Wells Fargo account to the JPMorgan Chase, for mutual benefit.

225.    TALENTCROWD invoices show that the same project's resources from TOPDEVZ, namely Nick K, Elvis S, Flavio S, Subodh R, and Manoj K, providing the exact same services substituted instead through TALENTCROWD. DRIVETIME has a contract with TOPDEVZ, all of the 1099 have a contract with TOPDEVZ and all the rendered services match the same scope of work.

226.    On January 20, 2022, MCIVER, Director of Software Engineering, from DRIVETIME sent instant text messages to LINTZ, "Living the CEO life over there…" "Congrats on CEO!..." and on January 24, 2022, GRISOLANO, Vice-President of DRIVETIME wrote LINTZ, "Congrats on CEO! Sounds like some interesting changes! What a great accomplishment!"

39

COMPLAINT FOR DECLARATORY RELIEF AND MONEY DAMAGES: IDENTITY THEFT, SET ASIDE
JUDGMENT BASED ON EXTRINSIC FRAUD AND FRAUD ON THE COURT

EXHIBIT 11, PAGE 307

1    **MODE, CLANCY and VARGAS**

2      227. MODE received a legal notice on March 9, 2022.

3      228. On April 10, 2022, MODE received another legal notice.

4      229. MODE facilitated the culpable persons' request to change bank

5 accounts from the TOPDEVZ Wells Fargo account to the JPMorgan Chase, for

6 mutual benefit. MODE remitted payments for TOPDEVZ invoices (via Sunteck

7 Transportation) to the unauthorized JPMorgan Chase, without interruption, until at

8 least May 27, 2022.

9      230. TALENTCROWD invoices show that the same project's resources

10 from TOPDEVZ, namely Benoit B, Abdel S, Ernest L, Theron S, David W, and

11 Claudia V, providing the exact same services substituted instead through

12 TALENTCROWD.

13      231. MODE has a contract with TOPDEVZ, all of the 1099 have a contract

14 with TOPDEVZ and all the rendered services match the same scope of work.

15      232. Claudia V. even publicly endorsed the company, "Working with

16 Talentcrowd changed my career! The clients I get to work with are top-notch. The

17 team is supportive and professional, and the banter with my colleagues always

18 leaves me with a smile."

19    **MSSI and MARSH**

20      233. MSSI received a legal notice on March 9, 2022.

21      234. On April 10, 2022, MSSI received another legal notice.

22      235. MSSI facilitated the culpable persons' request to change bank

23 accounts from the TOPDEVZ Wells Fargo account to the JPMorgan Chase, for

24 mutual benefit. MSSI remitted payments to the unauthorized JPMorgan Chase,

25 without interruption, until at least April 14, 2022.

26      236. On or about January 13, 2022, MARSH, CEO of MSSI, after having

27 agreed to provide RAJAEE with a declaration about how he came to work with

28

COMPLAINT FOR DECLARATORY RELIEF AND MONEY DAMAGES: IDENTITY THEFT, SET ASIDE
JUDGMENT BASED ON EXTRINSIC FRAUD AND FRAUD ON THE COURT

EXHIBIT 11, PAGE 308

1    TALENTCROWD, sent a text message to RAJAEE letting him know that he had
2    "… decided to opt out of signing any affidavits or statements at this time… We
3    have no liability…"

4        237.   TALENTCROWD invoices show that the same project's resources
5    from TOPDEVZ, namely Claudia V, Dan M, Jeremy Hardin, John G, Nick L,
6    Sohail S, providing the exact same services substituted instead through
7    TALENTCROWD. MSSI has a contract with TOPDEVZ, all of the 1099 have a
8    contract with TOPDEVZ and all the rendered services match the same scope of
9    work.

10       238.   Sohail S. even publicly endorsed TALENTCROWD, "Working with
11   Talentcrowd is a dream. Exceedingly competent professionals, great clients, and,
12   of course, they pay on time. Highly Recommended."

13   **INTELLICHECK, EMBRY and LUBIN**

14       239.   INTELLICHECK received a legal notice on March 9, 2022.

15       240.   On April 10, 2022, INTELLICHECK received another legal notice.

16       241.   As of January 2021, INTELLICHECK had a contract with TOPDEVZ
17   and spent over $375,000 on their project in 2021. The exact same active project
18   was plundered to Talentcrowd, as evidenced by the numerous notifications coming
19   from INTELLICHECK controlled servers, showing the exact same resource from
20   TOPDEVZ being emailed at a TALENTCROWD address. "mvolo@topdevz.com,
21   mike.volo@talentcrowd.com" plus over 100 more similar to it.

22       242.   INTELLICHECK and its Vice-President, LUBIN made the following
23   public endorsement of TALENTCROWD, "I can't say enough about the time and
24   talent they have provided us. We could not have successfully delivered this project
25   on time and with this quality without their help. I truly appreciate them. If we ever
26   have a need for services in the future, Talentcrowd will be my first call." and

27

28

41

COMPLAINT FOR DECLARATORY RELIEF AND MONEY DAMAGES: IDENTITY THEFT, SET ASIDE
JUDGMENT BASED ON EXTRINSIC FRAUD AND FRAUD ON THE COURT

EXHIBIT 11, PAGE 309

TALENTCROWD publicly endorses the statement by saying, "Frank found talent. Be like Frank."

**GALA GAMES, ADAM PRICE and AARON PRICE**

243.    GALA GAMES received a legal notice on March 9, 2022.

244.    On April 10, 2022, GALA GAMES received another legal notice.

245.    GALA GAMES facilitated the culpable persons' request to change bank accounts from the TOPDEVZ Wells Fargo account to the JPMorgan Chase, for mutual benefit. GALA GAMES made payments to the unauthorized JPMorgan Chase account, without interruption, until March 31, 2022.

246.    Aaron P., whose full name is Aaron PRICE and is the vice-president of GALA GAMES. (https://www.linkedin.com/in/aaronwprice/, Publicly available, Last visited July 10, 2023), even publicly endorsed TALENTCROWD while continuing to engage the same resources provided by TOPDEVZ without interruption, "We're sticking with Talentcrowd." and TALENTCROWD publicly endorses the fraudulent statement by saying, "Aaron found talent. Be like Aaron."

**SANDHILLS, CURRENCY, MCKINNEY and PEED**

247.    Sandhills Publishing Company, 402 Ventures, LLC and Express Tech-Financing, LLC dba Currency (collectively SANDHILLS) received legal notices on March 9, 2022.

248.    On April 10, 2022, SANDHILLS received another legal notice.

249.    SANDHILLS or its subsidiaries or affiliates it controls facilitated the culpable persons' request to change bank accounts from the TOPDEVZ Wells Fargo account to the JPMorgan Chase, for mutual benefit.

42

COMPLAINT FOR DECLARATORY RELIEF AND MONEY DAMAGES: IDENTITY THEFT, SET ASIDE
JUDGMENT BASED ON EXTRINSIC FRAUD AND FRAUD ON THE COURT

**TORT FEASORS COORDINATED ACTS TO CONCEAL CRIMES AND FURTHER THEM UNDER THE GUISE OF A SHAM DISSOLUTION**

250.   On or about March 15, 2022, DAVIS and LINTZ had fraudulent invoices created between TALENTCROWD and TOPDEVZ to defeat IRS taxation within TOPDEVZ.

251.   Millions of dollars were received and sent from the JPMorgan Chase account set up using RAJAEE's personally identifiable information. The crimes also involved taking over $1.4 million dollars and transferring it to TALENTCROWD and LINTZ personally to infuse TALENTCROWD with large sums of stolen money for its operations and also renovate LINTZ's principal residence at 1222 Agate St., La Jolla, California.

252.   On April 5, 2022, DAVIS admitted under oath that he instructed and employee of TOPDEVZ, who had broad admin access, to exfiltrate the entire trade secrets of TOPDEVZ, "I [DAVIS] instructed her to download as much information as humanly possible at that time." … "I [DAVIS] basically asked her to start downloading as much information as she possibly could."

253.   On April 5, 2022, DAVIS admitted under oath that his entire goal is to shut the company down, "My sole goal at this point is to wind this company up, get it out of my way, and be done with it."

254.   On April 27, 2022, CARPENTER and SCALIA filed a UTVA complaint against RAJAEE and mailed service more than 90 days after filing.

255.   On April 27, 2022, CARPENTER and SCALIA filed a lis pendens against RAJAEE's properties. (San Diego, 37-2022-00015126-CU-OR-CTL, ROA 8, 9, 38 and 39)

256.   On June 9, 2022, BAILEY sent a meet and confer letter stating, "From 2017-2020, Mr. Rajaee filed tax returns on behalf of TopDevz technology that Mr. Davis owned 100% of the capital in TopDevz." In the same letter

COMPLAINT FOR DECLARATORY RELIEF AND MONEY DAMAGES: IDENTITY THEFT, SET ASIDE
JUDGMENT BASED ON EXTRINSIC FRAUD AND FRAUD ON THE COURT

BAILEY went on to admit, "Mr. Davis hired Mr. Lintz and Talentcrowd, a company solely owned and operated by Mr. Lintz, to assist in the winding up process." On June 14, 2022, BAILEY filed a judicial declaration and attached Interim Orders No. 4, 5, and 6 as exhibits and requested judicial notice for numerous cases.

257.    On July 7, 2022, CARPENTER admitted to a Sacramento Superior Court Judge that he knew TOPDEVZ was being "dissolved" (but really destroyed to conceal ongoing crimes) the day Interim Order No. 4 came out, "Mr. Carpenter: Dissolution started January 6th. We're six months down the road. The winding up is already done."

258.    On February 8, 2023, TOBERTY filed on behalf of TOPDEVZ a lis pendens on RAJAEE's properties in San Diego Case: 37-2022-00015126, ROA's 38 and 39 this is in addition to DAVIS filing lis pendens on April 27, 2022 in the same case, ROA's 8 and 9.

**CARPENTER Helps DAVIS Procure Multiple Counsels for TOPDEVZ**

259.    On September 19, 2022, John R. Lister, a former colleague of CARPENTER from Palmieri, Tyler, Wiener, Wilhelm & Waldron LLP, substituted in as TOPDEVZ counsel in the arbitration and San Diego court action.

260.    On or about September 20, 2022, RAJAEE shared some of the facts surrounding DAVIS, his conflict of interest for TOPDEVZ and at the time, actions DAVIS had taken in violation of due process.

261.    On September 23, 2022, John R. Lister and his firm withdrew from representing TOPDEVZ in both the arbitration and San Diego Court action.

262.    On September 28, 2022, KIRK of KIRK & TOBERTY substituted in as TOPDEVZ counsel under DAVIS signature in a San Diego court action and arbitration proceedings.

COMPLAINT FOR DECLARATORY RELIEF AND MONEY DAMAGES: IDENTITY THEFT, SET ASIDE JUDGMENT BASED ON EXTRINSIC FRAUD AND FRAUD ON THE COURT

263.    CARPENTER, his wife Gina and TOBERTY's wife both have relationships within the same church, Grace Fellowship Church. CARPENTER has many listings on the Grace Fellowship church <u>website</u> as a speaker. (publicly available, last visited 07/17/2023)

264.    CARPENTER's wife, Gina Carpenter not only also is listed on the Grace Fellowship Church website as a speaker but is even listed on the church's website as being employed as the Accounting Manager.

265.    TOBERTY's wife, Donna Toberty, is also listed as a speaker on the church website. The marriage of David and Donna Toberty can be verified through their Facebook account.

266.    The retention of "TOPDEVZ's counsel" by DAVIS and CARPENTER evidences their willingness to participate in aiding DAVIS. CARPENTER and TOBERTY also shared a mutual client in a separate court matter, thus further evidencing that they had a prior business relationship.

267.    KIRK litigated against RAJAEE in various cases to further the crimes in the AAA Case No: 01-21-0001-9983, and two San Diego court actions, Case No. 37-2022-00015126 and Case No. 37-2022-00026691.

268.    KIRK dismissed an entire cause of action by TOPDEVZ against DAVIS that RAJAEE originally brought against DAVIS prior to Interim Order No. 4.

269.    RAJAEE objected numerous times, "(b) any such counsel's right to act on behalf of TopDevz (including without limitation, Mr. Kirk and/or his firm Kirk & Toberty). In any event, even to the jaundiced eye, there is an inherent conflict of interest in Davis's purported actions as manager of the company and his instruction to putative company counsel to dismiss a cause of action against him."

270.    KIRK actively obstructed RAJAEE's discovery efforts in cases to which TOPDEVZ was not a party.

COMPLAINT FOR DECLARATORY RELIEF AND MONEY DAMAGES: IDENTITY THEFT, SET ASIDE JUDGMENT BASED ON EXTRINSIC FRAUD AND FRAUD ON THE COURT

271.   In 2022, CARPENTER's firm was paid $43,768, $70,000, and $83,000, respectively, from the TOPDEVZ bank account at JPMorgan Chase, set up using the personally identifiable information of RAJAEE.

272.   On February 16, 2023, CARPENTER submitted a judicial declaration that his firm had been paid at least $501,311 just in the AAA arbitration case.

273.   On February 16, 2023, SCALIA submitted a judicial declaration that he had been paid at least $284,533 just in the AAA arbitration case.

274.   In 2023, TOBERTY was paid at least $30,000 from the TOPDEVZ bank account at JPMorgan Chase set up using the personally identifiable information of RAJAEE.

**BAILEY and GERBER Condone Perjury, False Impersonation and Makes False Representations in Judicial Proceedings**

275.   On November 14, 2022, while a full-time TALENTCROWD employee, Ms. Garcia used the identity of TOPDEVZ from the ".IO" servers with the prior stolen identities to communicate to a Fortune-listed company, Becton Dickinson, who was made to believe they were communicating with TOPDEVZ, "Melissa Garcia, Administrator at TOPDEVZ".

276.   On December 21, 2022, BAILEYS' own client, LINTZ, signed a judicial verification that "I am a party to this Action. I have read the foregoing responses and know the contents thereof and I certify that the same are true of my own knowledge." LINTZ makes the following perjured statements in judicial proceedings, "DAVIS invested the initial $750,000 to start TOPDEVZ. That capital investment is recognized in the TOPDEVZ's tax returns." Then another perjured statement by LINTZ pertaining to the stolen SBA monies by DAVIS, "A "capital call" for $76,000 was made by RAJAEE in November 2020, and RAJAEE and DAVIS contributed approximately $38,760 and $37,240, respectively, to

EXHIBIT 11, PAGE 314

1 TOPDEVZ. While these contributions were recognized on TOPDEVZ's 2020 tax
2 return as capital contributions".

3     277.  On December 21, 2022, LINTZ submitted a certified response signed
4 by BAILEY, "Responding Party ultimately resigned his employment with
5 TopDevz on February 14, 2022 … organized Talentcrowd and entered into a
6 Services Agreement with TopDevz." Public records show that TALENTCROWD
7 was incorporated on February 8, 2022, while LINTZ was acting as the CEO of
8 TOPDEVZ.

9     278.  On January 19, 2023, BAILEY abused the legal process and filed for
10 a stay and protective order, intended to conceal the discovery of true facts by
11 RAJAEE. GERBER joined the replete motions against RAJAEE that were filled
12 with misrepresentations and perjury.

13     279.  On January 30, 2023, LINTZ admitted to causing the trade secrets,
14 customer lists, project data, financial information, contracts, and numerous
15 databases to be stolen to his company TALENTCROWD, "…at DAVIS' request,
16 took a backup of the existing Jira instance used by TOPDEVZ .."...
17 "...TALENTCROWD received permission from Defendant DAVIS to extract the
18 history and project data for the then-current customers… In April 2022,
19 Talentcrowd took over the decommissioned Jira account…"

20     280.  On February 2, 2023, BAILEY represented to the court that LINTZ
21 started TALENTCROWD after resigning from TOPDEVZ. "BAILEY: and he
22 resigned shortly thereafter and started a new company called Talentcrowd."
23 BAILEY clearly had knowledge that he was making a misrepresentation to the
24 court because several months prior, on June 17, 2022, LINTZ submitted a judicial
25 declaration that he resigned from TOPDEVZ on February 14, 2022, "I resigned my
26 role as an employee of TopDevz on February 14, 2022".

27

28

47

COMPLAINT FOR DECLARATORY RELIEF AND MONEY DAMAGES: IDENTITY THEFT, SET ASIDE
JUDGMENT BASED ON EXTRINSIC FRAUD AND FRAUD ON THE COURT

281.   On February 2, 2023, BAILEY represented to the court that LINTZ had no CEO title in TOPDEVZ, "So during the time that he was an employee of TopDevz his, Mr. Rajaee's, position is that he'd taken the role as CEO. I've not seen any -- call him general manager, I don't know that there's actually an official title assigned him, like packing manager at some point, something like that."

282.   BAILEY's representation to the court is completely false because in LINTZ's own discovery responses on December 21, 2022, almost two months prior to BAILEY's appearance before the court, LINTZ judicially admitted to being the CEO of TOPDEVZ. "In the final weeks of Responding Party's employment with TopDevz, Davis named Responding Party as "President and CEO""; "... after Davis announced that Lintz would be President and CEO of TopDevz,...". Most deceiving to the court is that BAILEY participated in person in an ex-parte hearing with the Hon. Judge Taylor on January 13, 2023, where the very first exhibit was a written communication to TOPDEVZ clients, announcing his client LINTZ as the CEO of TOPDEVZ with LINTZ on the email thread, "Joshua Lintz…will assume the role of CEO effective immediately…Joshua Lintz, CEO: Joshua@topdevz.io".

283.   Moreover, during the February 2, 2023, hearing, while being questioned about other Defendants added to the action, specifically Jeremy Hardin and Lawrence Allen, BAILEY first stated he didn't know who they were or what their role was and then acquiesced that they were "outside people not affiliated with TopDevz … or Talentcrowd."

> "**The Court**: Okay. All right. Larry Allen, who's he and what's his role in all of this, supposedly? …
> **The Court**: How about Jerry Harding? …
> The Court: Okay. Outside people not affiliated with Topdevz.
> **BAILEY**: Yes.
> **The Court**: or Talentcrowd.
> **BAILEY**: Yes."

48

COMPLAINT FOR DECLARATORY RELIEF AND MONEY DAMAGES: IDENTITY THEFT, SET ASIDE JUDGMENT BASED ON EXTRINSIC FRAUD AND FRAUD ON THE COURT

1  Both representations by BAILEY are intended to mislead the court. On

2  October 24, 2022, BAILEY received RAJAEE's declaration in opposition to

3  BAILEY's Anti-SLAPP motion. (ROA 37) In this declaration, RAJAEE attached

4  the TALENTCROWD invoices to TOPDEVZ, listing Jeremy Hardin on invoice

5  number 22. Mr. Hardin has been a contractor for TOPDEVZ since September

6  2021. In January 2022, Mr. Hardin was working on a TOPDEVZ project for client

7  MSSI. In March 2022, TALENTCROWD's own timesheets show that Mr. Hardin

8  was working on the same MSSI project, and TALENTCROWD started billing

9  TOPDEVZ for Mr. Hardin's work on the project. Until at least April 14, 2022,

10  client MSSI made payments to TOPDEVZ's JPMorgan Chase account, which were

11  then transferred to TALENTCROWD.

12  284. A month later, after appearing in person before the court, BAILEY

13  filed a LINTZ declaration and used the very same TALENTCROWD invoices

14  against RAJAEE that he represented he did not know about, which have Mr.

15  Hardin's name and every other former TOPDEVZ contractor's name on it. The

16  invoice with Mr. Hardin's name is invoice number 22.

17  285. BAILEY again in 2022 received discovery responses that included

18  every single TOPDEVZ contractor and all the TALENTCROWD invoices, which

19  one-by-one match 100% from a plundering of TOPDEVZ to TALENTCROWD.

20  The document produced shows the Talentcrowd invoice, the client's TOPDEVZ

21  agreement, the corresponding TOPDEVZ invoice as well as the TOPDEVZ

22  contractor invoice and contractor's agreement, a timesheet export from the JIRA

23  time-tracking software, a DeLorean topdevz.io timesheet and a DeLorean

24  TALENTCROWD timesheet for the project. For example, CTRL00001742.pdf

25  shows TALENTCROWD's invoices to TOPDEVZ for March 2022 for work

26  performed for MSSI. Contractors on the project are Claudia V., Dan M., Jeremy

27  Hardin, John G., Nick L. and Sohail S. The document includes the Master

28

COMPLAINT FOR DECLARATORY RELIEF AND MONEY DAMAGES: IDENTITY THEFT, SET ASIDE
JUDGMENT BASED ON EXTRINSIC FRAUD AND FRAUD ON THE COURT

1   Consulting Agreement between TOPDEVZ and MSSI, an invoice from TOPDEVZ
2   to MSSI dated December 31, 2022, which shows that the same contractors were
3   working on the project between December 2021 and March 2022, invoices to
4   TOPDEVZ from contractors working on the project, which show that the
5   contractors were billing for the same project and at the exact same rate, the
6   contractors' TOPDEVZ agreements, a summary of the work performed exported
7   from the JIRA tracking software, the DeLorean topdevz.io timesheets for the
8   contractors as well as the DeLorean Talentcrowd timesheets.

9       286.   On February 2, 2023, Bailey represented to the court, "So the reason
10  why topdevz io was set up is to allow the company to continue to operate."

11      "**The Court**: They couldn't do what they were supposed to do, according to
12      them, because they couldn't get into the topdevz.com domain because
        everything had been changed.
13      **BAILEY**: Correct."

14  BAILEY's representations are categorically false. All the users were solicited to
15  stop using the topdevz.com domain and move to topdevz.io. As part of moving
16  everyone over, the defendants were forced to use BOTH domains until they had
17  successfully stolen all the users over to topdevz.io. On January 14, 2022, FRYE
18  was scheming the plan to share with the tortfeasors, composing an email with the
19  subject "Next Steps" the email reads, "Hi Guys! Here is the list of what we need to
20  do and what I have so far:", which included the setting up of new emails and the
21  use of the stolen personally identifiable information of the TOPDEVZ workforce
22  to invite them to switch to "topdevz.io" from the workforces personal email
23  addresses, "New Google Email Addresses…Invite users to their personal email
24  addresses…-- List:…List of existing Slack Users:"

25      287.   On January 18, 2022, LINTZ informed contractor Benoit Borrel that
26  there was a rebranding and asked him to confirm he had received an invitation to
27  his personal email on the new topdevz.io, "we're rebranding to topdevz.io. You

28

50
COMPLAINT FOR DECLARATORY RELIEF AND MONEY DAMAGES: IDENTITY THEFT, SET ASIDE
JUDGMENT BASED ON EXTRINSIC FRAUD AND FRAUD ON THE COURT

EXHIBIT 11, PAGE 318

1    should have an invite to your personal email for this new email address. please
2    confirm."

3        288.    On January 19, 2022, FRYE used her topdevz.com credentials to
4    instruct the TOPDEVZ workforce to move to the new instant messaging system
5    SLACK, "Good Morning! Please discontinue using this Slack channel. Join us in
6    the new instance. Check your TopDevz.io email address for credentials to the new
7    time tracking system. All the details are in the new slack."

8        289.    On January 20, 2022, FRYE sent 1-to1 messages to the entire
9    TOPDEVZ workforce and instructed them to check their personal email (stolen
10   earlier from the exfiltration of TOPDEVZ databases )"Hey! Check your personal
11   email, and join us in the new TopDevz.io domain today please! Call or text me
12   with any issues! 734-341-3773".

13       290.    On January 21, 2022, "Hey! Can you please check your personal
14   email for a new TopDevz email and password? I need everyone over to the new
15   domain as soon as possible."

16       291.    In another instance, when asked by a contractor about continuing to
17   use the topdevz.COM domain, "so are we using both emails? … .com and io?",
18   FRYE instructed them to download what they needed, "No .com is going away, so
19   download anything you need".

20       292.    On January 21, 2022, Ms. Garcia responded to a contractor question
21   aimed at LINTZ and FRYE via the topdevz.IO Slack instance asking where to log
22   their hours and if they should "keep track of them to log in the new system once
23   we get it running?". Ms. Garcia explicitly instructed contractors "not [to] log your
24   time for Jan 16th on in Jira. Please just keep track of it and we will added it to the
25   new system later".

26       293.    The Google audit access logs from topdevz.com support the evidence
27   that at least 98 separate individuals successfully logged in who had supposedly

28

EXHIBIT 11, PAGE 319

been locked out of their topdevz.com account. Yet, on February 2, 2023, BAILEY was asked by the court about trade secret data being transferred from TOPDEVZ to TALENTCROWD.

> **The Court**: Okay. So then my next question is what was transferred over from your perspective, if anything, to Talentcrowd that was formerly Topdevz' data, client list, et cetera."

> "They took very, very careful action to ensure that no trade secrets were transferred from Topdevz to Talentcrowd."

> **The Court**: Why wasn't that in his declaration?

> **BAILEY**: Your honor, because at this -- I just didn't think it was part of this application. …

> I feel comfortable saying on the record that there was no transfer of any -- any trade secrets or any improper transfer of data from Topdevz to Talentcrowd, which is the only entity my client has control over at this point in time."

> "I know he[LINTZ]'s spoken to me at length about what they did when Talentcrowd was set up, a totally separate entity, to ensure that no client lists, no trade secrets, anything were transferred."

> "They took very, very careful action to ensure that no trade secrets were transferred from Topdevz to Talentcrowd."

294.    GERBER attended and participated in the hearing on February 2, 2023.

295.    BAILEY's client, Ms. Garcia, also admitted to her possession of the trade secret information in her resignation email to Plaintiff dated January 13, 2022, and indicated that she was "deleting all TopDevz information and files off my personal devices. I will be wiping the TopDevz laptop. [...] Please inform me where to send the laptop" **but Ms. Garcia never sent any proof that the trade secret information had been deleted and never returned the laptop.** Even more broadly, according to Google's audit report, on January 19, 2022, Ernest Luk, a

COMPLAINT FOR DECLARATORY RELIEF AND MONEY DAMAGES: IDENTITY THEFT, SET ASIDE JUDGMENT BASED ON EXTRINSIC FRAUD AND FRAUD ON THE COURT

EXHIBIT 11, PAGE 320

1  TOPDEVZ contractor turned TALENTCROWD, logged into his

2  eluk@topdevz.com and granted access to his personal email address

3  ernestluk@gmail.com. The next day, on January 20, 2022, Luk added more

4  permissions, granting access to his ernest.luk@topdevz.io email address and

5  subsequently to his TALENTCROWD email. On November 22, 2022, some ten

6  months later, Luk used his credentials to unlink his ernest.luk@talentcrowd.com

7  email address from the topdevz.COM domain files. Trade secret data was being

8  exfiltrated for months on end to TALENTCROWD. This is because

9  TALENTCROWD could not service any of the clients without stealing all the

10  information on each client's project within the TOPDEVZ website domains.

11      296.   On March 1, 2023, TALENTCROWD's Chief Operating Officer,

12  FRYE, publicly announced on Facebook the company's explosive growth.

13  Specifically, how TALENTCROWD within their first year of operation have

14  invoiced almost 90,000 in billable hours, almost identical to the TOPDEVZ 2021

15  financial reports ($12-million).

16      297.   On March 6, 2023, BAILEY filed an ex-parte making material

17  misrepresentations, intended to abuse the legal system to halt discovery and the

18  case against his client, with the intention to conceal the underlying crimes, "These

19  exhibits include invoices that disclose TALENTCROWD's proprietary

20  information, including crucial pricing terms, which RAJAEE intends to file

21  publicly." BAILEY was aware his client stole the trade-secrets.

22      298.   On March 20, 2023, DAVIS was cross-examined by RAJAEE under

23  oath, "Why have you denied me [RAJAEE] access to the company records from

24  April 2022 until present?" DAVIS responded with, "Because I don't like you."

25      299.   On July 18, 2023, DAVIS inadvertently copied RAJAEE on a

26  confidential communication to his co-conspirators congratulating them, "Group, In

27  case you do not know the preliminary judgment came out today…Enjoy the win

28

EXHIBIT 11, PAGE 321

1  everyone…" The communication was sent to BAILEY, GERBER, Mr. Hardin,
2  Ms. Wood, and others.

3      300.   On August 15, 2023, TALENTCROWD posted to its Glassdoor
4  public social account, publicly targeting RAJAEE's judgment, "...the individual
5  responsible for this harassment now has a $9.4 Million Judgment against him for
6  fraud and breach of fiduciary duty, among others. None of these claims against
7  Talentcrowd are true. We think Sabotage should be performed by the Beastie
8  Boys, not a cyber bullying troll."

9      301.   On October 19, 2023, LINTZ publicly admitted to his complete lack
10  of respect for laws and admitted to numerous violations on behalf of himself and
11  TALENTCROWD. LINTS also admitted TALENTCROWD has had no outside
12  funding, "We didn't go raise any money externally"

13      302.   LINTZ also made the following statements:

14          a.    "I want my team members to know that we're going to do
15                everything possible at every turn with every dollar we have to
16                buy the advancement of the organization and to buy the security
17                of our team and we're gonna push every border and every
18                envelope…"

19          b.    "this shit's working like we're, we're reaching a lot of people.
20                We're sending a lot of you know, I mean, you know, there's like
21                that, that saying, you know, no press is bad press"

22          c.    "if you're a little offended by the multiple messages, like, I
23                don't know, like, get over it"

24          d.    "...all that matters. Everything else is the, the natural result of
25                that. If we're making everybody happy, then we'll have money
26                in the bank."

27

28

                                    54
COMPLAINT FOR DECLARATORY RELIEF AND MONEY DAMAGES: IDENTITY THEFT, SET ASIDE
JUDGMENT BASED ON EXTRINSIC FRAUD AND FRAUD ON THE COURT

e.    "And at the end of the day, like even at the risk of pissing people off, like, so what honestly like and maybe that's a bad position to take here." ("Vortex of Garbage", Episode 1)

303.   On October 23, 2023, another separate law firm representing TOPDEVZ in Canada withdrew from representing TOPDEVZ.

**CARPENTER's Frivolous Filings, Motions, Misrepresentations Meant to Further Crimes**

304.   On January 27, 2023, CARPENTER, SCALIA and KIRK amended the UVTA complaint against RAJAEE.

305.   On September 4, 2023, misrepresentations were made to corruptly influence a Federal Judge in an attempt to Obstruct Justice. A judicial declaration was electronically filed in a federal case by CARPENTER for DAVIS.

306.   On September 4, 2023, DAVIS declaration made the following statements, "I entered into a separate and unrelated business partnership with Todd Belluomini which was formalized into Porter Consulting, LLC…" This statement is categorically false and meant to deceive.

307.   On October 10, 2023, CARPENTER declared in Federal Case 3:22-CV-00895, "… I cross-examined RAJAEE…regarding DAVIS's monetary contributions to TOPDEVZ, LLC…RAJAEE was privy to various exhibits including communications and financial documents reflecting a transfer of $750,000.00 (the initial capitalization) from DAVIS to TOPDEVZ, LLC." This is also categorically false. RAJAEE actually said, "…my understanding was that they were coming from Tyler…I am under the understanding that Tyler had put in the money. Later on we found out that it wasn't Tyler, it was actually Porter Consulting that was putting the money in."

308.   On October 13, 2023, CARPENTER, in a Federal proceeding, did not deny the tax crimes. Instead, CARPENTER made a mockery of the judicial system

55

COMPLAINT FOR DECLARATORY RELIEF AND MONEY DAMAGES: IDENTITY THEFT, SET ASIDE JUDGMENT BASED ON EXTRINSIC FRAUD AND FRAUD ON THE COURT

EXHIBIT 11, PAGE 323

1   in the presence of a Federal Judge that, "RAJAEE is neither the enforcement arm

2   of the Internal Revenue Service nor a prosecutor…"

3       309.   On October 15, 2023, CARPENTER filed a motion in the case Mobile

4   Monster v. Davis, Case No. 34-2021-00301817, which is a very good

5   demonstration of the level of fraud, misrepresentations, and abuse of the judicial

6   machinery that DAVIS and his attorneys are willfully practicing to victimize

7   RAJAEE. The entirety of DAVIS' and his attorneys' assertions hinge on the

8   concealment of the larger federal crimes involving interstate commerce

9   corporations.

10       310.   On November 7, 2023, the Hon. Richard K. Sueyoshi was corruptly

11   influenced by the motion; the order against RAJAEE reads, "Defendant [DAVIS]

12   now seeks leave to file a cross-complaint on behalf of himself and TopDevz, LLC,

13   for conversion, fraud, and receiving stolen property." … "Defendant [DAVIS]

14   indicates that he was not aware of the extent of the potential misconduct until bank

15   statements were produced in a related arbitration.", "Bad faith is defined as the

16   opposite of good faith, "generally implying or involving…a design to mislead or

17   deceive another." (*Id.*, at 100.) Here, Defendant [DAVIS] did not file the cross-

18   complaint at the same time as his answer because he was not aware of the extent of

19   the alleged misconduct giving rise to the claims asserted in the proposed cross-

20   complaint."

21       311.   On November 15, 2023, CARPENTER, and TOPDEVZ filed the

22   cross-complaint. On November 27, 2023, CARPENTER designated the same

23   expert witness who testified twice before as an expert witness against RAJAEE

24   and TOPDEVZ to now represent DAVIS AND TOPDEVZ.

25       312.   On November 16, 2023, CARPENTER, SCALIA & KIRK filed a

26   cross-complaint in Sacramento court that the attorneys knew were categorically

27

28

---

56

COMPLAINT FOR DECLARATORY RELIEF AND MONEY DAMAGES: IDENTITY THEFT, SET ASIDE
JUDGMENT BASED ON EXTRINSIC FRAUD AND FRAUD ON THE COURT

1   misrepresentations to the court, including, "TYLER DAVIS owned a 95.308%

2   ownership stake in TopDevz, LLC…"

3        313.   On November 21, 2023, Attorney Kenneth R. Reynolds sent a Notice

4   of accrued interest for $495, 695.41.

5        314.   On December 11, 2023, CARPENTER and KIRK filed another court

6   filing making misrepresentations to the court, which the attorneys knew were

7   premised on a pattern of criminal conduct and intended only for the wrongful use

8   of civil proceedings, abuse of process and furthering their conspiracy with DAVIS

9   to further the criminal operation.

10  **ARBITRATOR REBECCA CALLAHAN REFUSED TO HEAR EVIDENCE**

11  **OF FEDERAL CRIMES IN THE CASE SHE WAS PRESIDING OVER**

12  **AND FAILED TO DISCLOSE PRIOR RELATIONSHIP WITH**

13  **CARPENTER**

14       315.   After Arbitrator Callahan issued Order No. 4 on January 6, 2023, and

15  with discovery closed, Rebecca Callahan refused to take any evidence from

16  RAJAEE to demonstrate the predicate acts of DAVIS through PORTER, including

17  numerous years of tax crimes against the IRS, which were directly used by DAVIS

18  to take majority ownership in TOPDEVZ.

19      **ARBITRATOR**: How are the tax affairs -- personal tax affairs of Mr.
20      DAVIS or his company relevant here?

21      **ARBITRATOR**: "That is not before me. What's before me is what you
    folks did with each other and not what you have done with the IRS –"

22      **ARBITRATOR**: "Well, it has not been submitted to me, so it's not pertinent
23      to what I'm here to do, which is decide the claims and counterclaims that
    were put in motion I think in 2020, may have been 2021. But that's what is
24      before me. **You have claims and complaints that come after my decision,**
25      **other transactions and events, that's for somebody else. That's not**
    **here.**"

26

27

28

1
2
**ARBITRATOR**: "I'm going to sustain Mr. CARPENTER's objections. We're not going to get into the tax affairs of Mr. DAVIS or his companies. No, we're not going to do That."

3
4
5
6
7
8
9
**ARBITRATOR**: "Here's the problem: What's been submitted to me are your claims and counterclaims regarding transactions and events that predated the filing of the arbitration. Yes, I issued an order, and you folks have gone to court on that order, and the Court has jurisdiction over whatever problems or complaints you now have, either about the order or about each other performed or you didn't perform. **That's not before me**. So -- in addition to, we did go over a lot of this in April. But what's left for me to decide are your tort claims that relate to transactions and events between Mr. Rajaee and Mr. Davis before the arbitrator."

10
11
12
13
**CARPENTER**: "What means Mr. Rajaee may have employed to obtain Mr. Davis' personal tax returns or the private tax returns of his company, which I hope I never have to go into, that information is past dated. It would have had to have been turned over in not one but two prior proceedings, and it would certainly be irrelevant to the claims in this one, whatever the purpose is. So I don't think that --I strenuously object. How's that."

14    316.    On April 7, 2023, RAJAEE was waiting for the final hearing

15  transcripts from the court reporter, who was hospitalized and did not produce the

16  transcript within a couple weeks. The arbitrator refused to allow time for the court

17  reporter to produce the transcript despite receiving direct communication from the

18  court reporting company that she was hospitalized, "Arbitrator, As officer of the

19  court Gidgette Nieves, CSR, Principal Owner of Words Court Reporting Services

20  is stating under penalty of perjury Ashkan Rajaee on 3-20-23 before 5:00 p.m.

21  telephonically ordered the 3-20-23 Arbitration transcript, Rajaee vs Davis, Case

22  No. 01-21-0001-9983… On 4-5-23 8:01 a.m. stating she was in emergency room

23  hospital from 3-4-23 to 3-5-23, very ill. WCRS is unsure the status of the transcript

24  as of 4-7-23, therefore, believing the reporter is still ill. Respectfully request an

25  extension for the transcript…"

26    317.    After Interim Order No. 4 was issued by Ms. Callahan and with

27  discovery closed, RAJAEE discovered that CARPENTER and Ms. Callahan had a

28

COMPLAINT FOR DECLARATORY RELIEF AND MONEY DAMAGES: IDENTITY THEFT, SET ASIDE
JUDGMENT BASED ON EXTRINSIC FRAUD AND FRAUD ON THE COURT

1    previous undisclosed relationship just prior to the start of the proceedings. Glaser

2    Weil was involved in presenting those filings which are now the subject of an

3    appeal that includes, "The Arbitrator should be disqualified because she

4    wrongfully failed to disclose, then materially misrepresented disclosures, in

5    contravention of the CAA, the Ethics Standards, and AAA Rules. The Arbitrator

6    misled Rajaee about the nature of her relationship with Mr. Carpenter and his law

7    firm, C&W."

8                              **FIRST CAUSE OF ACTION**

9    **DECLARATORY RELIEF PURSUANT TO CALIFORNIA CIVIL CODE**

10                                   **§1798.93(a)**

11                          **(Against DAVIS and TOPDEVZ)**

12           318.   Plaintiff realleges and incorporates herein by reference each and every

13    allegation contained in paragraphs 1 through 317 to this cause of action.

14           319.   On or around January 2017, May 1, 2017, May 9, 2018, and

15    September 15, 2018, DAVIS willfully obtained personal identifying information

16    for RAJAEE and then used it for an unlawful purpose in violation of California PC

17    530.5, with the intent to defraud.

18           320.   The personal identifying information used for an unlawful purpose by

19    DAVIS without consent consisted of RAJAEE's name, address, social security

20    number, phone number, place of employment.

21           321.   DAVIS unlawfully used RAJAEE's personal identifying information

22    without RAJAEE's consent to cause the falsification of the IRS capital tax accounts

23    within TOPDEVZ partnership returns for the years 2017, 2018, 2019, 2020, and

24    2021.

25           322.   On or about January 6, 2022, DAVIS acted as the managing member

26    of TOPDEVZ and has used TOPDEVZ to unlawfully file false IRS documents and

27

28

59
COMPLAINT FOR DECLARATORY RELIEF AND MONEY DAMAGES: IDENTITY THEFT, SET ASIDE
JUDGMENT BASED ON EXTRINSIC FRAUD AND FRAUD ON THE COURT

EXHIBIT 11, PAGE 327

1  fraudulent court pleadings using RAJAEE's personal identifying information

2  without RAJAEE's consent.

### SECOND CAUSE OF ACTION

### PROMISSORY FRAUD

#### (Against DAVIS)

6    323.  Plaintiff realleges and incorporates herein by reference each and every

7  allegation contained in paragraphs 1 through 322 to this cause of action.

8    324.  In 2017, DAVIS fraudulently promised RAJAEE that he would

9  individually, from his personal net-worth, contribute $750,000 towards the

10  capitalization of TOPDEVZ in exchange for a 49% membership interest.

11    325.  DAVIS had no intent to perform this promise when he made it

12  because DAVIS did not possess the individual financial capability to do so.

13    326.  RAJAEE reasonably relied on DAVIS' promise.

14    327.  DAVIS did not perform the promised act and commissioned Federal

15  Crimes to conceal the false promise made to RAJAEE.

16    328.  RAJAEE was harmed.

17    329.  RAJAEE's reliance on DAVIS' promise was a substantial factor in

18  causing RAJAEE's harm.

### THIRD CAUSE OF ACTION

### CONVERSION

#### (Against DAVIS)

22    330.  Plaintiff realleges and incorporates herein by reference each and every

23  allegation contained in paragraphs 1 through 329 to this cause of action.

24    331.  Starting November 2021, DAVIS wrongfully exercised dominion and

25  control over RAJAEE's ownership interest and voting rights in TOPDEVZ.

26    332.  DAVIS took possession by creating forged stock certificates, opened

27  new bank accounts, ordered the exfiltration of data then prevented RAJAEE's

28

COMPLAINT FOR DECLARATORY RELIEF AND MONEY DAMAGES: IDENTITY THEFT, SET ASIDE
JUDGMENT BASED ON EXTRINSIC FRAUD AND FRAUD ON THE COURT

1    access by then setting up separate servers, "topdevz.io", forged agreements to

2    deprive RAJAEE of any control and subsequently destroyed the complete

3    economic value of RAJAEE's membership interest in TOPDEVZ.

4        333.   RAJAEE did not consent.

5        334.   RAJAEE was harmed.

6        335.   DAVIS' conduct was a substantial factor in causing RAJAEE's harm.

7    ### THIRD CAUSE OF ACTION

8    ### AIDING AND ABETTING CONVERSION

9    **(Against all Defendants except DAVIS)**

10       336.   Plaintiff realleges and incorporates herein by reference each and every

11   allegation contained in paragraphs 1 through 335 to this cause of action.

12       337.   DAVIS wrongfully exercised dominion and control over RAJAEE's

13   majority ownership interest and voting rights in TOPDEVZ.

14       338.   Defendants knew that DAVIS fraudulently procured a judgment

15   against RAJAEE to take majority ownership and voting rights in TOPDEVZ.

16       339.   Defendants had actual knowledge and gave substantial assistance to

17   DAVIS.

18       340.   Defendants' conduct was a substantial factor in causing RAJAEE's

19   harm.

20   ### FORTH CAUSE OF ACTION

21   ### CONSTRUCTIVE FRAUD

22   **(Against DAVIS and LINTZ)**

23       341.   Plaintiff realleges and incorporates herein by reference each and every

24   allegation contained in paragraphs 1 through 340 to this cause of action.

25       342.   DAVIS and LINTZ acted on behalf of RAJAEE for the purposes of a

26   corporate judicial dissolution.

27

28

COMPLAINT FOR DECLARATORY RELIEF AND MONEY DAMAGES: IDENTITY THEFT, SET ASIDE
JUDGMENT BASED ON EXTRINSIC FRAUD AND FRAUD ON THE COURT

EXHIBIT 11, PAGE 329

343.  DAVIS and LINTZ knew or should have known, California Code of Civil Procedure - CCP § 1287.6 does not authorize judicial enforcement to support a corporate dissolution issued under an interim order.

344.  DAVIS and LINTZ knew that DAVIS did not contribute funds himself individually to TOPDEVZ and failed to disclose this information to RAJAEE.

345.  RAJAEE was harmed.

346.  DAVIS' and LINTZ's conduct was a substantial factor in causing RAJAEE's harm.

## FIFTH CAUSE OF ACTION

## AIDING AND ABETTING CONSTRUCTIVE FRAUD

### (Against All Defendants Except Conspiring Attorneys)

347.  Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 346 to this cause of action.

348.  LINTZ and DAVIS acted on behalf of RAJAEE, the manager of TOPDEVZ, for the purposes of dissolving TOPDEVZ.

349.  Defendants knew, or should have known, that an interim arbitration order is not judicially enforceable, and that RAJAEE did not order the opening of new bank accounts, the use of new domains and systems, or the transfer of trade secrets to a third party.

350.  Defendants misled RAJAEE by failing to disclose that they transacted with new bank accounts, used the topdevz.io domain and related systems, and willfully received trade secret information, and gave substantial assistance to DAVIS and LINTZ to achieve this task.

351.  Defendants' conduct was a substantial factor in causing RAJAEE's harm.

COMPLAINT FOR DECLARATORY RELIEF AND MONEY DAMAGES: IDENTITY THEFT, SET ASIDE JUDGMENT BASED ON EXTRINSIC FRAUD AND FRAUD ON THE COURT

## SIXTH CAUSE OF ACTION

## INTENTIONAL MISREPRESENTATION

### (Against DAVIS, PORTER, MASON and LINTZ)

352.   Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 351 to this cause of action.

353.   On May 3, 2017, $250,000 was transferred to Mobile Monster Inc., from PORTER's bank account number ending in 6284. DAVIS acting in his personal capacity and as the CEO of PORTER, intentionally misrepresented to RAJAEE that this transfer of funds was actually sourced from DAVIS personally. This representation was false.

354.   On May 24, 2017, $250,000 was transferred to Mobile Monster Inc., from PORTER's bank account number ending in 6284. DAVIS acting in his personal capacity and as the CEO of PORTER, intentionally misrepresented to RAJAEE that this transfer of funds was actually sourced from DAVIS personally. This representation was false.

355.   On November 22, 2017, $250,000 was transferred to TOPDEVZ from PORTER's bank account number ending in 6284. DAVIS acting in his personal capacity and as the CEO of PORTER, intentionally misrepresented to RAJAEE that this transfer of funds was actually sourced from DAVIS personally. This representation was false. DAVIS also misrepresented to RAJAEE the methods he was employing against RAJAEE to evade his own taxation while gaining falsified IRS capital tax credits within the TOPDEVZ partnership returns.

356.   On November 11, 2020, a check for $37,240 was deposited into TOPDEVZ's bank account from MASON. DAVIS acting in his personal capacity and as the CEO of PORTER, and member of MASON intentionally misrepresented to RAJAEE that this transfer of funds was actually sourced from DAVIS personally. This representation was false. DAVIS also intentionally

63

COMPLAINT FOR DECLARATORY RELIEF AND MONEY DAMAGES: IDENTITY THEFT, SET ASIDE JUDGMENT BASED ON EXTRINSIC FRAUD AND FRAUD ON THE COURT

EXHIBIT 11, PAGE 331

misrepresented facts surrounding the 2017, 2018, 2019, 2020, TOPDEVZ tax returns he caused to be bogus, including DAVIS' corresponding K1's.

357.  On January 17, 2022, LINTZ made intentional misrepresentations to RAJAEE that he was not "moving" against him.

358.  DAVIS and LINTZ knew the representations were false and made the representations recklessly and without regard for their truth.

359.  DAVIS and LINTZ intended that RAJAEE rely on the representations.

360.  RAJAEE reasonably relied on DAVIS' and LINTZ's representations.

361.  RAJAEE was harmed.

362.  RAJAEE's reliance on DAVIS' and LINTZ's representations was a substantial factor in causing him harm.

## SIXTH CAUSE OF ACTION

## CONCEALMENT

### (Against DAVIS, PORTER, MASON, and LINTZ)

363.  Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 362 to this cause of action.

364.  On May 3, 2017, $250,000 was transferred to Mobile Monster Inc., from PORTER's bank account number ending in 6284. DAVIS acting in his personal capacity and as the CEO of PORTER, concealed from RAJAEE the true origin of the funds and its criminal underlying purpose.

365.  On May 24, 2017, $250,000 was transferred to Mobile Monster Inc., from PORTER's bank account number ending in 6284. DAVIS acting in his personal capacity and as the CEO of PORTER, concealed from RAJAEE the true origin of the funds and its criminal underlying purpose.

366.  On November 22, 2017, $250,000 was transferred to TOPDEVZ from PORTER's, bank account number ending in 6284. DAVIS acting in his personal

COMPLAINT FOR DECLARATORY RELIEF AND MONEY DAMAGES: IDENTITY THEFT, SET ASIDE
JUDGMENT BASED ON EXTRINSIC FRAUD AND FRAUD ON THE COURT

EXHIBIT 11, PAGE 332

1   capacity and as the CEO of PORTER, concealed from RAJAEE the true owner of

2   the PORTER transfers, the underlying tax fraud purpose utilizing RAJAEE and

3   TOPDEVZ's identities and the extortion of Matt Mackay in the obtainment of

4   funds from SURGE, LLC.

5       367.  On November 11, 2020, a check for $37,240 was deposited into

6   TOPDEVZ's bank account from MASON. DAVIS acting in his personal capacity

7   and as the CEO of PORTER, and member of MASON concealed from RAJAEE

8   the true owner of the $37,240, the underlying tax fraud purpose utilizing RAJAEE

9   and TOPDEVZ's identities and the federal crimes of Tyler Davis in the obtainment

10   of $37,240 he illicitly invested in TODPEVZ. DAVIS concealed the falsification

11   of the 2017, 2018, 2019, 2020, TOPDEVZ, LLC tax returns he caused to be bogus.

12   Including DAVIS' corresponding K1's.

13       368.  Since 2017, DAVIS acting in his personal capacity and as the CEO of

14   PORTER, concealed the unlawful use of RAJAEE's personal identifiable

15   information for DAVIS' personal gain. DAVIS also concealed from RAJAEE the

16   methods he was employing against RAJAEE to evade his own taxation while

17   gaining falsified IRS capital tax credits within the TOPDEVZ partnership returns.

18       369.  DAVIS concealed from RAJAEE PORTER's true involvement with

19   TOPDEVZ. In that DAVIS was, *inter alia,* using PORTER's, Mobile Monster and

20   TOPDEVZ's bank accounts to conceal financial tax crimes using RAJAEE and

21   TOPDEVZ's tax accounts.

22       370.  DAVIS concealed from RAJAEE that in May 2018 he caused the

23   accounting ledger of TOPDEVZ to be manipulated to his exclusive favor.

24       371.  LINTZ concealed from Rajaee the actions he was taking against

25   RAJAEE's economic share value in TOPDEVZ.

26       372.  DAVIS concealed that he caused his September 2018 K1 to be

27   falsified.

28

COMPLAINT FOR DECLARATORY RELIEF AND MONEY DAMAGES: IDENTITY THEFT, SET ASIDE
JUDGMENT BASED ON EXTRINSIC FRAUD AND FRAUD ON THE COURT

EXHIBIT 11, PAGE 333

373.   DAVIS concealed that he caused his October 2018 amended K1 to be falsified.

374.   DAVIS concealed his true intentions when having the 2017 TOPDEVZ tax returns amended.

375.   DAVIS concealed from RAJAEE his financial crimes in relation to the TOPDEVZ, LLC tax returns. On or after January 6, 2022, DAVIS concealed from RAJAEE the criminal acts he was commissioning against RAJAEE's personal economic interest in TOPDEVZ.

376.   LINTZ incorporated TALENTCROWD while an employee of TOPDEVZ.

377.   LINTZ concealed from RAJAEE that he was conspiring with DAVIS.

378.   DAVIS, LINTZ, PORTER and MASON intended to deceive RAJAEE by concealing the facts.

379.   Had DAVIS, LINTZ, PORTER and MASON not omitted the facts, RAJAEE reasonably would have behaved differently.

380.   RAJAEE was harmed.

381.   DAVIS', LINTZ's, PORTER's and MASON's concealment was a substantial factor in causing RAJAEE's harm.

## EIGHTH CAUSE OF ACTION

## NEGLIGENT MISREPRESENTATION

### (Against DAVIS, PORTER, MASON and LINTZ)

382.   Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 381 to this cause of action.

383.   On May 3, 2017, $250,000 was transferred to Mobile Monster Inc., from PORTER's bank account number ending in 6284. DAVIS acting in his personal capacity and as the CEO of PORTER, negligently misrepresented to RAJAEE that this transfer of funds was actually sourced from DAVIS personally

EXHIBIT 11, PAGE 334

1    and the funds were a lawful personal DAVIS investment. This representation was

2    false.

3        384.   On May 24, 2017, $250,000 was transferred to Mobile Monster Inc.,

4    from PORTER's bank account number ending in 6284. DAVIS acting in his

5    personal capacity and as the CEO of PORTER, negligently misrepresented to

6    RAJAEE that this transfer of funds was actually sourced from DAVIS personally

7    and the funds were a lawful personal DAVIS investment. This representation was

8    false.

9        385.   On November 22, 2017, $250,000 was transferred to TOPDEVZ from

10   PORTER's bank account number ending in 6284. DAVIS acting in his personal

11   capacity and as the CEO of PORTER, negligently misrepresented to RAJAEE that

12   this transfer of funds was actually sourced from DAVIS personally and the funds

13   were a lawful personal DAVIS investment. This representation was false.

14       386.   On November 11, 2020, a check for $37,240 was deposited into

15   TOPDEVZ's bank account from MASON. DAVIS acting in his personal capacity

16   and as the CEO of PORTER, and member of MASON negligently misrepresented

17   to RAJAEE that this transfer of funds was actually from DAVIS personally and the

18   funds were a lawful personal DAVIS investment. This representation was false.

19   DAVIS also negligently misrepresented the facts surrounding the 2017, 2018,

20   2019, 2020, TOPDEVZ, LLC tax returns he caused to be bogus. Including

21   DAVIS' corresponding K1's.

22       387.   On January 17, 2022, LINTZ made a negligent misrepresentation to

23   RAJAEE that he was not "moving" against him.

24       388.   DAVIS and LINTZ had no reasonable grounds for believing their

25   representations were true.

26       389.   DAVIS and LINTZ intended that RAJAEE rely on the

27   representations.

28

COMPLAINT FOR DECLARATORY RELIEF AND MONEY DAMAGES: IDENTITY THEFT, SET ASIDE
JUDGMENT BASED ON EXTRINSIC FRAUD AND FRAUD ON THE COURT

390. RAJAEE reasonably relied on DAVIS' and LINTZ's representations.

391. RAJAEE was harmed.

392. RAJAEE's reliance on DAVIS' and LINTZ's representations was a substantial factor in causing him harm.

## NINTH CAUSE OF ACTION

## BREACH OF CONFIDENTIALITY

### (Against DAVIS and LINTZ)

393. Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 392 to this cause of action.

394. DAVIS and LINTZ owed fiduciary duties to RAJAEE.

395. DAVIS and LINTZ had information relating to RAJAEE's pending arbitration case that they knew or should have known was confidential. Specifically, Interim Order No. 4 , which was issued on January 6, 2022.

396. DAVIS and LINTZ used RAJAEE's confidential information for their own benefit and communicated RAJAEE's confidential information to third parties by publishing Interim Order No. 4 before it was a matter of public knowledge.

397. RAJAEE did not give informed consent to DAVIS or LINTZ's conduct.

398. RAJAEE was harmed.

399. DAVIS' and LINTZ's conduct was a substantial factor in causing RAJAEE's harm.

## TENTH CAUSE OF ACTION

## INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS

### (Against LINTZ, FRYE, TD Clients and Client CXO's)

400. Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 399 to this cause of action.

COMPLAINT FOR DECLARATORY RELIEF AND MONEY DAMAGES: IDENTITY THEFT, SET ASIDE
JUDGMENT BASED ON EXTRINSIC FRAUD AND FRAUD ON THE COURT

EXHIBIT 11, PAGE 336

401.   LINTZ, FRYE, TD Clients and Client CXO's were aware of an existing written contract between RAJAEE and DAVIS by the nature of arbitration itself.

402.   LINTZ's, FRYE's, TD Clients' and Client CXO's conduct prevented performance of the May 9, 2017, contract between RAJAEE and DAVIS, or made performance more expensive or difficult, including:

    1.   Voluntary switching of wire payments to separate bank accounts.

    2.   Awareness an interim arbitration order is not judicially enforceable and that they were directly involved in the theft of personal property from TOPDEVZ by DAVIS despite multiple legal notices they voluntarily disregarded in March and April of 2022.

    3.   Willful communications on the "topdevz.io" domain to which they knew RAJAEE had no access.

    4.   Continued use of the same TOPDEVZ resources without interruption but payments funneled to TALENTCROWD.

    5.   Facilitated the transfer of trade-secrets from TOPDEVZ to TALENTCROWD within their internal system and tools and shared credentials for the TOPDEVZ resources with TALENTCROWD email addresses for the same individual.

403.   LINTZ, FRYE, TD Clients and Client CXO's knew that disruption of performance by RAJAEE to the contract was certain or substantially certain to occur.

404.   RAJAEE was harmed.

405.   LINTZ, FRYE, TD Clients and Client CXO's conduct was a substantial factor in causing RAJAEE's harm.

COMPLAINT FOR DECLARATORY RELIEF AND MONEY DAMAGES: IDENTITY THEFT, SET ASIDE JUDGMENT BASED ON EXTRINSIC FRAUD AND FRAUD ON THE COURT

## ELEVENTH CAUSE OF ACTION

## AIDING AND ABETTING BREACH OF FIDUCIARY DUTY

### (Against all Defendants)

406.   Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 405 to this cause of action.

407.   DAVIS, through concealment, intentional misrepresentation, negligent misrepresentation, false promise, perjury, identity theft, wire fraud, and receipt of stolen property, breached his duty of care and loyalty to RAJAEE.

408.   Defendants knew that DAVIS owed fiduciary duties to RAJAEE.

409.   Defendants knew that DAVIS was committing harm against RAJAEE.

410.   Defendants gave substantial assistance or encouragement to DAVIS.

411.   LINTZ, through concealment, intentional misrepresentation, negligent misrepresentation, and receipt of stolen property, breached his duty of care and loyalty to RAJAEE.

412.   Defendants knew that LINTZ owed fiduciary duties to RAJAEE.

413.   Defendants knew that LINTZ was committing harm against RAJAEE.

414.   Client CXO's were utilizing their authority as decision makers for their respective TD Client companies for which they worked to aid DAVIS and LINTZ.

415.   Defendant Client CXO's were acting in their individual capacities in order to benefit them personally from work load in aiding DAVIS and LINTZ.

416.   Defendants gave substantial assistance or encouragement to LINTZ and DAVIS.

417.   Defendant's conduct was a substantial factor in causing harm to RAJAEE.

COMPLAINT FOR DECLARATORY RELIEF AND MONEY DAMAGES: IDENTITY THEFT, SET ASIDE
JUDGMENT BASED ON EXTRINSIC FRAUD AND FRAUD ON THE COURT

EXHIBIT 11, PAGE 338

1

## TWELFTH CAUSE OF ACTION

2

## PROFESSIONAL NEGLIGENCE

3

### (Against All Conspiring Attorneys)

4   418.   Plaintiff realleges and incorporates herein by reference each and every

5   allegation contained in paragraphs 1 through 417 to this cause of action.

6   419.   Conspiring Attorneys were negligent in using the skill and care that a

7   reasonably careful attorney would have used in similar circumstances.

8   420.   RAJAEE was harmed by their professional negligence.

9

## THIRTEENTH CAUSE OF ACTION

10

## WRONGFUL USE OF CIVIL PROCEEDINGS

11

### (Against CARPENTER, SCALIA and KIRK)

12   421.   Plaintiff realleges and incorporates herein by reference each and every

13   allegation contained in paragraphs 1 through 419 to this cause of action.

14   422.   CARPENTER, SCALIA and KIRK made wrongful use of civil

15   proceedings because no reasonable person in Defendants' circumstances would

16   have believed that there were reasonable grounds to bring or maintain the lawsuits

17   involving RAJAEE.

18   423.   CARPENTER, SCALIA and KIRK acted primarily for the purpose of

19   helping their clients conceal their involvement within a broader criminal operation

20   instead of succeeding on the merits of claims.

21   424.   RAJAEE was harmed.

22   425.   CARPENTER's, SCALIA's and KIRK's conduct was a substantial

23   factor in causing RAJAEE's harm.

24

## FOURTEENTH CAUSE OF ACTION

25

## ABUSE OF PROCESS

26

### (Against CARPENTER, SCALIA, KIRK, BAILEY and REYNOLDS)

27

28

71

COMPLAINT FOR DECLARATORY RELIEF AND MONEY DAMAGES: IDENTITY THEFT, SET ASIDE
JUDGMENT BASED ON EXTRINSIC FRAUD AND FRAUD ON THE COURT

426.   Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 425 to this cause of action.

427.   CARPENTER, SCALIA, KIRK, BAILEY and REYNOLDS intentionally used various civil legal procedures with the intent to conceal ongoing criminal conduct against RAJAEE, the United States IRS, the California Franchise Board and FDIC-insured banks.

428.   Defendants' use of the legal procedures was for an improper purpose that the procedure was not designed to achieve.

429.   RAJAEE was harmed.

430.   CARPENTER's, SCALIA's, KIRK's, BAILEY's and REYNOLDS' conduct was a substantial factor in causing RAJAEE's harm.

## FIFTEENTH CAUSE OF ACTION

## CONSPIRACY

**(Against DAVIS, CARPENTER, SCALIA, KIRK, BAILEY, LINTZ, FRYE, WILLIAMS and BRYN)**

431.   Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 430 to this cause of action.

432.   RAJAEE has been harmed by DAVIS, CARPENTER, SCALIA, KIRK, BAILEY, LINTZ, FRYE, WILLIAMS and BRYN's willful involvement and intent for the harm caused to RAJAEE.

433.   CARPENTER, SCALIA, KIRK, BAILEY, LINTZ, FRYE, WILLIAMS and BRYN knew they were part of a conspiracy to commit and conceal the wrongful acts by DAVIS against RAJAEE and the United States.

434.   CARPENTER, SCALIA, KIRK, BAILEY, LINTZ, FRYE, WILLIAMS and BRYN's collective and individual financial interests were aligned with DAVIS' interests in performing the wrongful acts against RAJAEE and the United States.

72

COMPLAINT FOR DECLARATORY RELIEF AND MONEY DAMAGES: IDENTITY THEFT, SET ASIDE JUDGMENT BASED ON EXTRINSIC FRAUD AND FRAUD ON THE COURT

EXHIBIT 11, PAGE 340

435.   DAVIS, CARPENTER, SCALIA, KIRK, BAILEY, LINTZ, FRYE, WILLIAMS and BRYN gained personal benefit from the conspiracy.

## SIXTEENTH CAUSE OF ACTION

## CALIFORNIA CODE, PENAL CODE - PEN § 496(C) TREBLE DAMAGES

### (Against All Defendants)

436.   Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 435 to this cause of action.

437.   On January 19, 2022, DAVIS set up a new bank account at JPMorgan Chase using RAJAEE's personally identifiable information without RAJAEE's consent.

438.   DAVIS stole millions for his own personal benefit including RAJAEE's personal rights to profits, his $500,000 annual salary and 7% commissions on gross revenue, and there was no lawful reason or business reason, it was made solely for the benefit of DAVIS.

439.   Defendants withheld from its owner or aided in withholding from RAJAEE his rightful 51% personal property interest in TOPDEVZ, annual salary and 7% commissions that had been stolen by DAVIS or LINTZ and when the Defendants withheld or aided in the withholding of the property, he/she knew that the property had been stolen by DAVIS..

440.   Defendants actually knew of the presence of the property that was obtained by any type of theft, wire fraud, false pretenses, and tricks.

441.   Defendants received and benefited each individually from the stolen property.

442.   RAJAEE has been damaged in the amount of at least $20,253,987.00 and also seeks treble damages, cost of suit, and attorney fees pursuant to Penal Code § 496(C).

73

COMPLAINT FOR DECLARATORY RELIEF AND MONEY DAMAGES: IDENTITY THEFT, SET ASIDE JUDGMENT BASED ON EXTRINSIC FRAUD AND FRAUD ON THE COURT

EXHIBIT 11, PAGE 341

1    WHEREFORE, Plaintiff demands judgment against Defendants as set forth

2  below.

3                    **PRAYER FOR RELIEF**

4    Plaintiff prays for judgment against Defendant DAVIS and TOPDEVZ as

5  follows:

6    1.    A declaration that RAJAEE is not obligated to DAVIS or TOPDEVZ

7          for the judgment entered in San Diego Case No. 37-2022-00026691.

8    2.    A declaration that any security interest or other interest that DAVIS or

9          TOPDEVZ has purportedly obtained in property belonging to

10         RAJAEE in connection with DAVIS' and TOPDEVZ's claims, and

11         any addendum thereto is void and unenforceable.

12   3.    An injunction restraining DAVIS and TOPDEVZ from collecting or

13         attempting to collect from RAJAEE on DAVIS' or TOPDEVZ's

14         claims that arise from the judgment in San Diego Case No. 37-2022-

15         00026691.

16   4.    An injunction restraining DAVIS and TOPDEVZ from enforcing or

17         attempting to enforce any security interest or other interest in property

18         belonging to RAJAEE in connection with DAVIS' and TOPDEVZ's

19         judgment entered in San Diego Case No. 37-2022-00026691.

20   5.    An injunction restraining DAVIS and TOPDEVZ from enforcing or

21         executing the judgment against RAJAEE obtained in San Diego Case

22         No. 37-2022-00026691.

23   6.    Dismissal of all causes of action filed by DAVIS and TOPDEVZ

24         against RAJAEE, which arose as a result of the identity theft:

25         a.    San Diego Case No. 37-2022-00015126

26         b.    Sacramento Case No. 34-2021-00295173

27         c.    Sacramento Case No. 34-2021-00301817

28

COMPLAINT FOR DECLARATORY RELIEF AND MONEY DAMAGES: IDENTITY THEFT, SET ASIDE
JUDGMENT BASED ON EXTRINSIC FRAUD AND FRAUD ON THE COURT

EXHIBIT 11, PAGE 342

1      7.     Actual damages, attorney's fees, and costs, and any equitable relief

2            that the court deems appropriate.

3      8.     A civil penalty of thirty thousand dollars ($30,000).

4      9.     That the judgment entered in the San Diego Superior Court Case No.

5            37-2022-00026691, record of action number 122, be vacated in its

6            entirety because of extrinsic fraud practiced on RAJAEE which

7            prevented RAJAEE from presenting his claim or defenses.

8     10.     That the judgment entered in the San Diego Superior Court Case No.

9            37-2022-00026691 record of action number 122, be vacated in its

10            entirety because of fraud on the court.

11       For remaining causes of action, Plaintiff prays for judgment against

12 Defendants as follows:

13     11.     For economic damages according to proof;

14     12.     For compensatory damages according to proof at the time of trial;

15     13.     For incidental and consequential damages according to proof at the

16            time of trial;

17     14.     For costs and attorneys' fees incurred related to this action, to the

18            extent permitted by law;

19     15.     For punitive damages;

20     16.     For pre-judgment interest on all economic damages;

21     17.     For costs of suit incurred;

22     18.     For Treble damages pursuant to Penal Code § 496(C).

23     19.     For any such other and further relief as the Court may deem just and

24            proper.

25      Dated: January 2, 2024        Respectfully submitted,

26

27

28

75

EXHIBIT 11, PAGE 343

Ashkan Rajaee

*Pro Se Plaintiff*

### **DEMAND FOR JURY TRIAL**

Plaintiff Ashkan Rajaee hereby demands a trial by jury on all issues and causes of action that qualify for a jury trial demand.

Dated: January 2, 2024               Respectfully submitted,

Ashkan Rajaee

*Pro Se Plaintiff*

76

COMPLAINT FOR DECLARATORY RELIEF AND MONEY DAMAGES: IDENTITY THEFT, SET ASIDE
JUDGMENT BASED ON EXTRINSIC FRAUD AND FRAUD ON THE COURT

1

## **VERIFICATION**

2    I, Ashkan Rajaee, declare:

3    I am a party to this action. I am also a member of TopDevz, LLC and
4    Mobile Monster Inc. during the relevant time period. I certify under penalty of
5    perjury that I have read and reviewed the Verified Complaint and authorized its
6    filing. Based upon my and my various counsel's investigations, the contents of the
7    Verified Complaint are true to the best of my knowledge, information, and belief.
8    I declare under the penalty of perjury under the laws of the State of California that
9    the above is true and correct.

10    Executed on January 2, 2024, at La Jolla, California.

11

12

13

14    Ashkan Rajaee

15    *Pro Se Plaintiff*

16

17

18

19

20

21

22

23

24

25

26

27

28

77

COMPLAINT FOR DECLARATORY RELIEF AND MONEY DAMAGES: IDENTITY THEFT, SET ASIDE
JUDGMENT BASED ON EXTRINSIC FRAUD AND FRAUD ON THE COURT

EXHIBIT 11, PAGE 345

JS 44 (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

**I. (a) PLAINTIFFS**

Ashkan Rajaee

**DEFENDANTS**

See Complaint

**(b)** County of Residence of First Listed Plaintiff    San Diego
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Attorneys *(If Known)*

'24CV0001 RSH KSC

FILED

Jan 02 2024

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY    s/ GloriaVaca    DEPUTY

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

- ❏ 1    U.S. Government Plaintiff
- ❏ 2    U.S. Government Defendant
- ❏ 3    Federal Question *(U.S. Government Not a Party)*
- ☒ 4    Diversity *(Indicate Citizenship of Parties in Item III)*

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ❏ 1 | ☒ 1 | Incorporated *or* Principal Place of Business In This State | ❏ 4 | ☒ 4 |
| Citizen of Another State | ❏ 2 | ❏ 2 | Incorporated *and* Principal Place of Business In Another State | ❏ 5 | ❏ 5 |
| Citizen or Subject of a Foreign Country | ☒ 3 | ❏ 3 | Foreign Nation | ❏ 6 | ❏ 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ❏ 110 Insurance<br>❏ 120 Marine<br>❏ 130 Miller Act<br>❏ 140 Negotiable Instrument<br>❏ 150 Recovery of Overpayment & Enforcement of Judgment<br>❏ 151 Medicare Act<br>❏ 152 Recovery of Defaulted Student Loans (Excludes Veterans)<br>❏ 153 Recovery of Overpayment of Veteran's Benefits<br>❏ 160 Stockholders' Suits<br>❏ 190 Other Contract<br>❏ 195 Contract Product Liability<br>❏ 196 Franchise | **PERSONAL INJURY**<br>❏ 310 Airplane<br>❏ 315 Airplane Product Liability<br>❏ 320 Assault, Libel & Slander<br>❏ 330 Federal Employers' Liability<br>❏ 340 Marine<br>❏ 345 Marine Product Liability<br>❏ 350 Motor Vehicle<br>❏ 355 Motor Vehicle Product Liability<br>❏ 360 Other Personal Injury<br>❏ 362 Personal Injury - Medical Malpractice | **PERSONAL INJURY**<br>❏ 365 Personal Injury - Product Liability<br>❏ 367 Health Care/ Pharmaceutical Personal Injury Product Liability<br>❏ 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>☒ 370 Other Fraud<br>❏ 371 Truth in Lending<br>❏ 380 Other Personal Property Damage<br>❏ 385 Property Damage Product Liability | ❏ 625 Drug Related Seizure of Property 21 USC 881<br>❏ 690 Other | ❏ 422 Appeal 28 USC 158<br>❏ 423 Withdrawal 28 USC 157<br>**PROPERTY RIGHTS**<br>❏ 820 Copyrights<br>❏ 830 Patent<br>❏ 840 Trademark<br>**LABOR**<br>❏ 710 Fair Labor Standards Act<br>❏ 720 Labor/Management Relations<br>❏ 740 Railway Labor Act<br>❏ 751 Family and Medical Leave Act<br>❏ 790 Other Labor Litigation<br>❏ 791 Employee Retirement Income Security Act | ❏ 375 False Claims Act<br>❏ 400 State Reapportionment<br>❏ 410 Antitrust<br>❏ 430 Banks and Banking<br>❏ 450 Commerce<br>❏ 460 Deportation<br>❏ 470 Racketeer Influenced and Corrupt Organizations<br>❏ 480 Consumer Credit<br>❏ 490 Cable/Sat TV<br>❏ 850 Securities/Commodities/ Exchange<br>❏ 890 Other Statutory Actions<br>❏ 891 Agricultural Acts<br>❏ 893 Environmental Matters<br>❏ 895 Freedom of Information Act<br>❏ 896 Arbitration |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | | ❏ 899 Administrative Procedure Act/Review or Appeal of |
| ❏ 210 Land Condemnation<br>❏ 220 Foreclosure<br>❏ 230 Rent Lease & Ejectment<br>❏ 240 Torts to Land<br>❏ 245 Tort Product Liability<br>❏ 290 All Other Real Property | ❏ 440 Other Civil Rights<br>❏ 441 Voting<br>❏ 442 Employment<br>❏ 443 Housing/ Accommodations<br>❏ 445 Amer. w/Disabilities - Employment<br>❏ 446 Amer. w/Disabilities - Other<br>❏ 448 Education | **Habeas Corpus:**<br>❏ 463 Alien Detainee<br>❏ 510 Motions to Vacate Sentence<br>❏ 530 General<br>❏ 535 Death Penalty<br>**Other:**<br>❏ 540 Mandamus & Other<br>❏ 550 Civil Rights<br>❏ 555 Prison Condition<br>❏ 560 Civil Detainee - Conditions of Confinement | **FEDERAL TAX SUITS**<br>❏ 870 Taxes (U.S. Plaintiff or Defendant)<br>❏ 871 IRS—Third Party 26 USC 7609 | | Agency Decision<br>❏ 950 Constitutionality of State Statutes |
| | | | **SOCIAL SECURITY**<br>❏ 861 HIA (1395ff)<br>❏ 862 Black Lung (923)<br>❏ 863 DIWC/DIWW (405(g))<br>❏ 864 SSID Title XVI<br>❏ 865 RSI (405(g)) | | |
| | | **IMMIGRATION**<br>❏ 462 Naturalization Application<br>❏ 465 Other Immigration Actions | | | |

**V. ORIGIN** *(Place an "X" in One Box Only)*

- ☒ 1    Original Proceeding
- ❏ 2    Removed from State Court
- ❏ 3    Remanded from Appellate Court
- ❏ 4    Reinstated or Reopened
- ❏ 5    Transferred from Another District *(specify)*
- ❏ 6    Multidistrict Litigation

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
California Civil Code 1798.95(a)

Brief description of cause:
ID theft, Fraudulent Judgement, money damages

**VII. REQUESTED IN COMPLAINT:**

❏ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND** $

CHECK YES only if demanded in complaint:
**JURY DEMAND:**    ☒ Yes    ❏ No

**VIII. RELATED CASE(S) IF ANY**

*(See instructions):*
JUDGE    _____    DOCKET NUMBER _____

DATE    Jan 2/2024

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #    _____    AMOUNT _____    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____

EXHIBIT 11, PAGE 346

# Exhibit 1

EXHIBIT 11, PAGE 347

FEDERAL TRADE COMMISSION
# Identity Theft Report

**FTC Report Number:**
166273872

I am a victim of Identity theft. This is my official statement about the crime.

## Contact Information

| First Name: |
| --- |
| Ashkan |

| Last Name: |
| --- |
| Rajaee |

| Address: |
| --- |
| ▓▓▓▓▓▓▓▓ |
| ▓▓▓▓▓▓▓▓ |
| ▓▓▓ |

| Phone: |
| --- |
| ▓▓▓▓▓▓ |

| Email: |
| --- |
| ▓▓▓▓▓▓▓▓▓ |

## Personal Statement

Over $ 20 million has been taken through a complex criminal scheme involving the misuse of my identity and without my consent. My identity was used, unknown to me at the time, for a massive tax evasion scheme, money laundering, bank fraud, PPP-loan fraud, and numerous other federal crimes. My tax liability with the IRS has been severely impacted by the fraudulent use of my identity. Including numerous frivolous and fraudulent lawsuits to take away my assets arising from the identity theft. I'm currently working with the IRS in an investigation to correct the crimes against me and restore my correct tax obligations and tax account balance.

## Tax Fraud

| Date that I discovered It |
| --- |
| 8/2023 |

## Accounts Affected by the Crime

| Fraudulent Personal or Business Loan |
| --- |
| **Company or Organization:** |
| SBA Paycheck Protection Program Tri County Bank |
| **Account Number:** |
| SBA: ▓▓▓▓▓7106 |
| **Date fraud began:** |

EXHIBIT 11, PAGE 348

| Date that I discovered it: |
| --- |
| 4/2022 |
| **Total fraudulent amount:** |
| $ 328300 |

| **Fraudulent Personal or Business Loan** |
| --- |
| **Company or Organization:**<br>Tri-County Bank |
| **Account Number:**<br>▓▓▓▓1960 |

| Date that I discovered it: |
| --- |
| 4/2022 |
| **Total fraudulent amount:** |
| $ 0 |

| **Fraudulent Checking or Savings Account** |
| --- |
| **Company or Organization:**<br>JP Morgan Chase Bank |
| **Account Number:**<br>▓▓▓▓0516 |
| **Date fraud began:** |
| 1/2022 |
| **Date that I discovered it:** |
| 4/2022 |
| **Total fraudulent amount:** |
| $ 12500000 |

Suspect Information

| Name |
| --- |
| Tyler Brandon Davis |
| **Contact Information** |
| **Address:** 149 Parkshore Drive Folsom CA 95630 USA<br>**Email Address:** Tyler.Davis@porterllc.com<br>**Phone Number:** 530-354-4450 |
| **Relationship** |
| Workplace Co-worker/Employer/Employee |
| **Additional Details** |
| DAVIS obtained my information from knowing me, my assistant at the time Siarra Wood, through my IRS tax returns which we both received as personal members of TOPDEVZ LLC through our mutual accountant, Jennifer Glaser. |

EXHIBIT 11, PAGE 349

Under penalty of perjury, I declare this information is true and correct to the best of my knowledge.

I understand that knowingly making any false statements to the government may violate federal, state, or local criminal statutes, and may result in a fine, imprisonment, or both.

**Ashkan Rajaee**

Ashkan Rajaee

**11/13/2023**

Date

Use this form to prove to businesses and credit bureaus that you have submitted an FTC Identity Theft Report to law enforcement. Some businesses might request that you also file a report with your local police.

# Exhibit 2

**From:** Ashkan Rajaee rajaee.ashkan@gmail.com
**Subject:** Re: LETTER & EVIDENCE OF CRIMINAL CONDUCT
**Date:** November 13, 2023 at 16:47
**To:** hlee@cwlawyers.com, ebecker@cwlawyers.com, rlamm@cwlawyers.com, Scott R. Carpenter scarpenter@cwlawyers.com, Diana L. Pimentel dpimentel@cwlawyers.com, Joe Scalia joe@scalialawoffices.net

To whom it may concern:

In addition to the letter and evidence I sent over two weeks ago (October 27, 2023) regarding criminal conduct, please be advised that I suspect Tyler Brandon Davis, Porter Consulting, Mason Building & Design, TalentCrowd, LLC, and Joshua Paul Lintz used my personal identification information and other business information without my consent to cause me a loss of money and damage to my legal, financial, and property rights.

The following cases are also involved in the theft of my identity:

Case #

37-2022-00026691, San Diego, AAA Case Number: 01-21-0001-9983
37-2022-00015126, San Diego
37-2022-00001968, San Diego
34-2021-00301817, Sacramento
34-2021-00295173, Sacremento
(other cases may be added as needed)

Please find attached the identity theft report filed with the Federal Trade Commission.

Thank you,

Ashkan Rajaee

On Oct 27, 2023, at 10:55 AM, (PERSONAL) Ashkan Rajaee <rajaee.ashkan@gmail.com> wrote:

Counsel and Partners at Cummins & White, Please see the attached letter and supporting evidence regarding your representation of your clients. Thank you, Ashkan
<Rajaee Letter to Attorneys.pdf>

IDTheftReport_166273872.pdf 
814 KB

From: **Ashkan Rajaee** rajaee.ashkan@gmail.com 
Subject: Re: LETTER & EVIDENCE OF CRIMINAL CONDUCT
Date: November 13, 2023 at 16:47
To: Douglas Kirk jdkirk@kirkandtoberty.com, dtoberty@kirkandtoberty.com

To whom it may concern:

In addition to the letter and evidence I sent over two weeks ago (October 27, 2023) regarding criminal conduct, please be advised that I suspect Tyler Brandon Davis, Porter Consulting, Mason Building & Design, TalentCrowd, LLC, and Joshua Paul Lintz used my personal identification information and other business information without my consent to cause me a loss of money and damage to my legal, financial, and property rights.

The following cases are also involved in the theft of my identity:

Case #

37-2022-00026691, San Diego, AAA Case Number: 01-21-0001-9983
37-2022-00015126, San Diego
37-2022-00001968, San Diego
34-2021-00301817, Sacramento
34-2021-00295173, Sacremento
(other cases may be added as needed)

Please find attached the identity theft report filed with the Federal Trade Commission.

Thank you,

Ashkan Rajaee



**IDTheftReport_166273872.pdf**
914 KB 

On Oct 27, 2023, at 10:53 AM, (PERSONAL) Ashkan Rajaee <rajaee.ashkan@gmail.com> wrote:

Counsel,  Please see the attached letter and supporting evidence regarding your representation of your client TOPDEVZ. Thank you, Ashkan
<Rajaee Letter to Attorneys.pdf>

From: **Ashkan Rajaee** rajaee.ashkan@gmail.com  📎
Subject: Re: LETTER & EVIDENCE OF CRIMINAL CONDUCT
Date: November 13, 2023 at 16:47
To: Micah L. Bailey mbailey@purdybailey.com



To whom it may concern:

In addition to the letter and evidence I sent over two weeks ago (October 27, 2023) regarding criminal conduct, please be advised that I suspect Tyler Brandon Davis, Porter Consulting, Mason Building & Design, TalentCrowd, LLC, and Joshua Paul Lintz used my personal identification information and other business information without my consent to cause me a loss of money and damage to my legal, financial, and property rights.

The following cases are also involved in the theft of my identity:

Case #

37-2022-00026691, San Diego, AAA Case Number: 01-21-0001-9983
37-2022-00015126, San Diego
37-2022-00001968, San Diego
34-2021-00301817, Sacramento
34-2021-00295173, Sacremento
(other cases may be added as needed)

Please find attached the identity theft report filed with the Federal Trade Commission.

Thank you,

Ashkan Rajaee

On Oct 27, 2023, at 10:52 AM, (PERSONAL) Ashkan Rajaee <rajaee.ashkan@gmail.com> wrote:

Counsel,  Please see the attached letter and supporting evidence regarding your representation of your client. Thank you. Ashkan
‹Rajaee Letter to Attorneys.pdf›

**IDTheftReport_166273872.pdf** 
614 KB

Generated: Jan 2, 2024 9:23AM

Page 1/1

# U.S. District Court

## California Southern - San Diego

Receipt Date: Jan 2, 2024 9:23AM

Ashkan Rajaee
888 Prospect St. Unit 200
La Jolla, CA 92037

Rcpt. No: 150427 | Trans. Date: Jan 2, 2024 9:23AM | Cashier ID: #JaCl

| CD | Purpose | Case/Party/Defendant | Qty | Price | Amt |
|----|---------|----------------------|-----|-------|-----|
| 200 | Civil Filing Fee- Non-Prisoner | DCAS324CV000001 | 1 | 405.00 | 405.00 |

| CD | Tender | | | | Amt |
|----|--------|--|--|--|-----|
| CA | Cash | | | | $405.00 |

| | |
|--|--|
| Total Due Prior to Payment: | $405.00 |
| Total Tendered: | $405.00 |
| Total Cash Received: | $405.00 |
| Cash Change Amount: | $0.00 |

Only when the bank clears the check, money order, or verifies credit of funds, is the fee or debt officially paid or discharged. A $53 fee will be charged for a returned check.

EXHIBIT 11, PAGE 355

**Query    Reports    Utilities    Help    Log Out**

DEFAULT

# U.S. District Court
## Southern District of California (San Diego)
## CIVIL DOCKET FOR CASE #: 3:24-cv-00001-RSH-KSC

Rajaee v. Davis et al                                        Date Filed: 01/02/2024
Assigned to: District Judge Robert S. Huie                   Jury Demand: Defendant
Referred to: Magistrate Judge Karen S. Crawford              Nature of Suit: 370 Other Fraud
Related Case: 3:24-cv-00549-RSH-KSC                           Jurisdiction: Diversity
Cause: 28:1332fr Diversity-Fraud

**Plaintiff**

**Ashkan Rajaee**                           represented by  **Ashkan Rajaee**
*PRO SE ALLOWED TO E-FILE*                                  888 Prospect Street
                                                            Unit 200
                                                            La Jolla, CA 92037
                                                            619-332-6348
                                                            Email: rajaee.ashkan@gmail.com
                                                            PRO SE

V.

**Defendant**

**Tyler Brandon Davis**                     represented by  **Kenny C Brooks**
*an Individual*                                             Nemecek & Cole
                                                            16255 Ventura Blvd.
                                                            Ste 300
                                                            91436
                                                            Encino, CA 91436
                                                            818-788-9500
                                                            Email: kbrooks@nemecek-cole.com
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

**Defendant**

**Scott Carpenter**                         represented by  **Timothy L. Joens**
*an Individual*                                             Joens & Joens
                                                            2201 Dupont Drive
                                                            Suite 820
                                                            Irvine, CA 92612
                                                            949-851-0866
                                                            Fax: 949-851-1250
                                                            Email: tljsaj7@aol.com
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

**Defendant**

EXHIBIT 11, PAGE 356

**J. Douglas Kirk**
*an Individual*

represented by **Timothy L. Joens**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**ESQ Joseph W Scalia**
*an Individual*

**Defendant**

**Kerri A Williams-Horn**
*an Individual*

represented by **Kenneth Ross Reynolds**
Kenneth R. Reynolds, Inc.
2020 Hurley Way
Suite 210
Sacramento, CA 95825
916-925-3169
Email: krrlaw@sbcglobal.net
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kenny C Brooks**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Joshua Paul Lintz**
*an Individual*

represented by **Gina M. Austin**
Austin Legal Group, APC
3990 Old Town Avenue
Suite A-101
San Diego, CA 92110
619-924-9600
Email: gaustin@austinlegalgroup.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Micah Bailey**
*an Individual*

represented by **Micah L. Bailey**
Purdy & Bailey, LLP
12520 High Bluff Drive
Suite 220
San Diego, CA 92130
(858) 564-0136
Fax: (858) 564-0142
Email: mbailey@purdybailey.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Jonathan Gerber**
*an Individual*

represented by **Jonathan L. Gerber**
Miller Miller Gerber LLP
18301 Von Karman Avenue
Suite 950

EXHIBIT 11, PAGE 357

CM/ECF - casd

Irvine, CA 92612
714-450-3800
Email: jgerber@mmg-llp.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Jenifer Bryn Guadagnin**
*an Individual*

**Defendant**

**Kenneth R Reynolds**                    represented by    **Kenny C Brooks**
*an Individual*                                              (See above for address)
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

**Defendant**

**Michael Hawes**
*an Individual*

**Defendant**

**Amanda Frye**                           represented by    **Tamara M. Leetham**
*an Individual*                                              Austin Legal Group
                                                            3990 Old Town Avenue
                                                            Suite A-101
                                                            San Diego, CA 92110
                                                            619-550-2330
                                                            Email: tamara@austinlegalgroup.com
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

**Defendant**

**TOPDEVZ, LLC**                          represented by    **Kenny C Brooks**
*A California Limited Liability Company*                     (See above for address)
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

**Defendant**

**Porter Consulting, LLC**                represented by    **Kenny C Brooks**
*A California Limited Liability Company*                     (See above for address)
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

**Defendant**

**Mason Building and Design LLC**         represented by    **Kenny C Brooks**
*a California Limited Liability Company*                     (See above for address)
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

**Defendant**

**Talentcrowd, LLC**                      represented by    **Tamara M. Leetham**
*a Wyoming Limited Liability Company*                        (See above for address)

EXHIBIT 11, PAGE 358

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Cummins & White, LLP**                    represented by  **Timothy L. Joens**
*a California Limited Liability Partnership*                (See above for address)
                                                           *LEAD ATTORNEY*
                                                           *ATTORNEY TO BE NOTICED*

**Defendant**

**Kirk & Toberty, LLC**                     represented by  **Timothy L. Joens**
*a California Limited Liability Partnership*                (See above for address)
                                                           *LEAD ATTORNEY*
                                                           *ATTORNEY TO BE NOTICED*

**Defendant**

**Law Offices of Joseph W. Scalia APC**
*a California Professional Corporation*

**Defendant**

**Purdy & Bailey, LLP**                     represented by  **Micah L. Bailey**
*a CaliforniaLimited Liability Partnership*                 (See above for address)
                                                           *LEAD ATTORNEY*
                                                           *ATTORNEY TO BE NOTICED*

**Defendant**

**Miller Miller Gerber LLP**
*a California Limited Liability Partnership*

**Defendant**

**Kenneth R. Reynolds, INC**                represented by  **Kenny C Brooks**
*a California Professional Law Corporation*                 (See above for address)
                                                           *LEAD ATTORNEY*
                                                           *ATTORNEY TO BE NOTICED*

**Defendant**

**Sandhills Global, Inc.**                  represented by  **David A. Yudelson**
*a Nebraska Corporation*                                    Constangy, Brooks, Smith & Prophete LLP
                                                           2029 Century Park East, Suite 1100
                                                           Los Angeles, CA 90067
                                                           310-909-7775
                                                           Fax: 424-465-6630
                                                           Email: dyudelson@constangy.com
                                                           *LEAD ATTORNEY*
                                                           *ATTORNEY TO BE NOTICED*

                                                           **John V. Matson**
                                                           Koley Jessen P.C., L.L.O.
                                                           1125 South 103rd Street
                                                           Suite 800
                                                           Omaha, NE 68124
                                                           402-390-9500
                                                           Email: john.matson@koleyjessen.com

EXHIBIT 11, PAGE 359

*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Express Tech-Financing, LLC**            represented by   **David A. Yudelson**
*a Delaware Limited Liability Company*                      (See above for address)
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

                                                            **John V. Matson**
                                                            (See above for address)
                                                            *LEAD ATTORNEY*
                                                            *PRO HAC VICE*
                                                            *ATTORNEY TO BE NOTICED*

**Defendant**

**402 Ventures, LLC**                      represented by   **David A. Yudelson**
*a Delaware Limited Liability Company*                      (See above for address)
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

                                                            **John V. Matson**
                                                            (See above for address)
                                                            *LEAD ATTORNEY*
                                                            *PRO HAC VICE*
                                                            *ATTORNEY TO BE NOTICED*

**Defendant**

**Blockchain Game Partners, Inc.**         represented by   **Monica S. Call**
*a Wyoming Corporation*                                     Foley & Lardner LLP
*doing business as*                                         95 South State Street
Gala Games                                                  Suite 2500
                                                            Salt Lake City, UT 84111
                                                            801-401-8917
                                                            Email: mcall@foley.com
                                                            *LEAD ATTORNEY*
                                                            *PRO HAC VICE*
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Tony Tootell**
                                                            Foley & Lardner, LLP
                                                            555 South Flower Street
                                                            Suite 3300
                                                            Los Angeles, CA 90071
                                                            213-972-4796
                                                            Email: ttootell@foley.com
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Jessica Nicole Walker**
                                                            Foley & Lardner LLP
                                                            555 South Flower Street
                                                            Suite 3300

EXHIBIT 11, PAGE 360

CM/ECF - casd

Los Angeles, CA 90071
213-972-4500
Fax: 213-486-0065
Email: jwalker@foley.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Drivetime Car Sales Company, LLC**          represented by   **Maggie E. Schroedter**
*an Arizona Limited Liability Company*                          Robberson Schroedter LLP
                                                               501 West Broadway
                                                               Suite 1250
                                                               San Diego, CA 92101
                                                               619-353-5691
                                                               Email: maggie@thersfirm.com
                                                               *LEAD ATTORNEY*
                                                               *ATTORNEY TO BE NOTICED*

                                                               **Mary R. Robberson**
                                                               Robberson Schroedter LLP
                                                               501 West Broadway
                                                               Suite 1250
                                                               San Diego, CA 92101
                                                               619-353-5691
                                                               Email: mary@thersfirm.com
                                                               *LEAD ATTORNEY*
                                                               *ATTORNEY TO BE NOTICED*

**Defendant**

**Mode Transportation, LLC**          represented by   **John Mysliwiec**
*a Delaware Limited Liability Company*                 Sheppard, Mullin, Richter & Hampton LLP
                                                       12275 El Camino Real
                                                       Suite 100
                                                       San Diego, CA 92130-4092
                                                       858-720-8900
                                                       Fax: 858-509-3691
                                                       Email: jmysliwiec@sheppardmullin.com
                                                       *LEAD ATTORNEY*
                                                       *ATTORNEY TO BE NOTICED*

                                                       **Stephen E. Fox**
                                                       Sheppard Mullin Richter & Hampton LLP
                                                       2200 Ross Avenue
                                                       24th Floor
                                                       Dallas, TX 75201
                                                       469-391-7403
                                                       Fax: 469-391-7551
                                                       Email: sfox@sheppardmullin.com
                                                       *LEAD ATTORNEY*
                                                       *PRO HAC VICE*
                                                       *ATTORNEY TO BE NOTICED*

**Defendant**

**Medical Staffing Solutions, Inc.**

EXHIBIT 11, PAGE 361

4/8/24, 12:16 PM                 CM/ECF - casd

*a Wisconsin Corporation*

**Defendant**

**Intellicheck, Inc.**            represented by  **Philip M. Guess**
*A Delaware Corporation*                                    K&L Gates LLP
                                               925 Fourth Avenue
                                               Suite 2900
                                               Seattle, WA 98104-1158
                                                 206-623-7580
                                               Fax: 206-623-7022
                                               Email: philip.guess@klgates.com
                                               *LEAD ATTORNEY*
                                               *ATTORNEY TO BE NOTICED*

**Defendant**

**Scott McKinney**           represented by  **David A. Yudelson**
*an Individual*                                            (See above for address)
                                               *LEAD ATTORNEY*
                                               *ATTORNEY TO BE NOTICED*

                                               **John V. Matson**
                                               (See above for address)
                                               *LEAD ATTORNEY*
                                               *PRO HAC VICE*
                                               *ATTORNEY TO BE NOTICED*

**Defendant**

**Shawn Peed**             represented by  **David A. Yudelson**
*an Individual*                                            (See above for address)
                                               *LEAD ATTORNEY*
                                               *ATTORNEY TO BE NOTICED*

                                               **John V. Matson**
                                               (See above for address)
                                               *LEAD ATTORNEY*
                                               *PRO HAC VICE*
                                               *ATTORNEY TO BE NOTICED*

**Defendant**

**Adam Price**             represented by  **Monica S. Call**
*an Individual*                                            (See above for address)
                                               *LEAD ATTORNEY*
                                               *PRO HAC VICE*
                                               *ATTORNEY TO BE NOTICED*

                                               **Tony Tootell**
                                               (See above for address)
                                               *LEAD ATTORNEY*
                                               *ATTORNEY TO BE NOTICED*

                                               **Jessica Nicole Walker**
                                               (See above for address)
                                               *ATTORNEY TO BE NOTICED*

EXHIBIT 11, PAGE 362

**Defendant**

**Aaron Price**                              represented by     **Monica S. Call**
*an Individual*                                                (See above for address)
                                                              *LEAD ATTORNEY*
                                                              *PRO HAC VICE*
                                                              *ATTORNEY TO BE NOTICED*

                                                              **Tony Tootell**
                                                              (See above for address)
                                                              *LEAD ATTORNEY*
                                                              *ATTORNEY TO BE NOTICED*

                                                              **Jessica Nicole Walker**
                                                              (See above for address)
                                                              *ATTORNEY TO BE NOTICED*

**Defendant**

**Aaron Mciver**                             represented by     **Maggie E. Schroedter**
*an Individual*                                                (See above for address)
                                                              *LEAD ATTORNEY*
                                                              *ATTORNEY TO BE NOTICED*

                                                              **Mary R. Robberson**
                                                              (See above for address)
                                                              *LEAD ATTORNEY*
                                                              *ATTORNEY TO BE NOTICED*

**Defendant**

**Peter Grisolano**                          represented by     **Maggie E. Schroedter**
*an Individual*                                                (See above for address)
                                                              *LEAD ATTORNEY*
                                                              *ATTORNEY TO BE NOTICED*

                                                              **Mary R. Robberson**
                                                              (See above for address)
                                                              *LEAD ATTORNEY*
                                                              *ATTORNEY TO BE NOTICED*

**Defendant**

**Sean Clancy**
*an Individual*

**Defendant**

**Anthony Vargas**
*an Individual*

**Defendant**

**James Marsh**
*an Individual*

**Defendant**

**Frank Lubin**                              represented by     **Philip M. Guess**
*an Individual*                                                (See above for address)

EXHIBIT 11, PAGE 363

CM/ECF - casd

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Russ Embry**                              represented by    **Philip M. Guess**
*an Individual*                                              (See above for address)
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

**Defendant**

**Does 1 through 99**
*inclusive*

| Date Filed | # | Docket Text |
|---|---|---|
| 01/02/2024 | 1 | COMPLAINT with Jury Demand against 402 Ventures, LLC, Micah Bailey, Blockchain Game Partners, Inc., Scott Carpenter, Cummins & White, LLP, Tyler Brandon Davis, Drivetime Car Sales Company, LLC, Express Tech-Financing, LLC, Amanda Frye, Jonathan Gerber, Jenifer Bryn Guadagnin, Michael Hawes, Kenneth R. Reynolds, INC, J. Douglas Kirk, Kirk & Toberty, LLC, Law Offices of Joseph W. Scalia APC, Joshua Paul Lintz, Mason Building and Design LLC, Miller Miller Gerber LLP, Mode Transportation, LLC, Porter Consulting, LLC, Purdy & Bailey, LLP, Kenneth R Reynolds, Sandhills Global, Inc., Joseph W Scalia, TOPDEVZ, LLC, Talentcrowd, LLC, Kerri A Williams-Horn ( Filing fee $ 405 receipt number 150427.), filed by Ashkan Rajaee. (Attachments: # 1 Civil Cover Sheet, # 2 Exhibit 1, # 3 Exhibits 2, # 4 Receipt)<br><br>The new case number is 3:24-cv-1-RSH-KSC. Judge Robert S. Huie and Magistrate Judge Karen S. Crawford are assigned to the case.(stn) (anh). (Entered: 01/03/2024) |
| 01/02/2024 | 2 | Summons Issued.<br>**Counsel receiving this notice electronically should print this summons and serve it in accordance with Rule 4, Fed.R.Civ.P and LR 4.1. Summons has been provided to plaintiffs not receiving notice electronically.** (stn) (anh). (Entered: 01/03/2024) |
| 01/02/2024 | 3 | MOTION for Leave to Electronically File Documents by Ashkan Rajaee. (alns) (anh). (Entered: 01/04/2024) |
| 01/08/2024 | 4 | ORDER granting 3 Motion for Leave to Electronically File Documents. Signed by District Judge Robert S. Huie on 01/08/2024. (no document attached) (crm) (Entered: 01/08/2024) |
| 01/18/2024 | 5 | SUMMONS Returned Executed by Ashkan Rajaee. 402 Ventures, LLC served. (Rajaee, Ashkan ) (Entered: 01/18/2024) |
| 01/18/2024 | 6 | SUMMONS Returned Executed by Ashkan Rajaee. Cummins & White, LLP, Drivetime Car Sales Company, LLC, Russ Embry, Express Tech-Financing, LLC, Amanda Frye, Peter Grisolano, Intellicheck, Inc., Kenneth R. Reynolds, INC, Scott McKinney, Aaron Mciver, Miller Miller Gerber LLP, Mode Transportation, LLC, Shawn Peed, Aaron Price, Purdy & Bailey, LLP, Kenneth R Reynolds, Talentcrowd, LLC served. (Attachments: # 1 Proof of Service SUMMONS Returned Executed Aaron Price, # 2 Proof of Service SUMMONS Returned Executed Amanda Frye, # 3 Proof of Service SUMMONS Returned Executed Cummins and White, # 4 Proof of Service SUMMONS Returned Executed Drivetime, # 5 Proof of Service SUMMONS Returned Executed Express Tech Financing, # 6 Proof of Service SUMMONS Returned Executed Intellicheck, # 7 Proof of Service SUMMONS Returned Executed Kenneth R. Reynolds, # 8 Proof of Service |

EXHIBIT 11, PAGE 364

| | | |
|---|---|---|
| | | SUMMONS Returned Executed Kenneth R. Reynolds, Inc, # 9 Proof of Service SUMMONS Returned Executed Miller Miller Gerber, # 10 Proof of Service SUMMONS Returned Executed Mode Transportation, # 11 Proof of Service SUMMONS Returned Executed Peter Grisolano, # 12 Proof of Service SUMMONS Returned Executed Purdy and Bailey, # 13 Proof of Service SUMMONS Returned Executed Russ Embry, # 14 Proof of Service SUMMONS Returned Executed Scott McKinney, # 15 Proof of Service SUMMONS Returned Executed Shawn Peed, # 16 Proof of Service SUMMONS Returned Executed Talentcrowd)(Rajaee, Ashkan ) (Entered: 01/18/2024) |
| 01/29/2024 | 7 | MOTION to Strike 1 Complaint,,, by Jonathan Gerber. (Gerber, Jonathan)Attorney Jonathan L. Gerber added to party Jonathan Gerber(pty:dft) (alns). (Entered: 01/29/2024) |
| 01/29/2024 | 8 | MOTION to Dismiss for Failure to State a Claim , MOTION to Dismiss for Lack of Jurisdiction by Scott Carpenter, Cummins & White, LLP. (Attachments: # 1 Memo of Points and Authorities Memorandum of Points and Authorities in Support of Motion to Dismiss)(Joens, Timothy)Attorney Timothy L. Joens added to party Scott Carpenter(pty:dft), Attorney Timothy L. Joens added to party Cummins & White, LLP(pty:dft) (alns). (Entered: 01/29/2024) |
| 01/29/2024 | 9 | MOTION to Stay re 1 Complaint,,, , MOTION to Strike 1 Complaint,,, by Scott Carpenter, Cummins & White, LLP. (Attachments: # 1 Memo of Points and Authorities Memorandum of Points and Authorities in Support of Special Motion to Strike, # 2 Declaration Declaration of Scott Carpenter in Support of Special Motion to Strike, # 3 Exhibit Exhibit A in Support of Special Motion to Strike, # 4 Exhibit Exhibit B in Support of Special Motion to Strike)(Joens, Timothy) (alns). (Entered: 01/29/2024) |
| 01/30/2024 | 10 | Ex Parte MOTION for Extension of Time to File Answer re 1 Complaint,,, *Motion for Extension of Time to Respond to Plaintiff's Complaint* by Drivetime Car Sales Company, LLC, Peter Grisolano, Aaron Mciver. (Attachments: # 1 Memo of Points and Authorities, # 2 Declaration of Maggie E. Schroedter, # 3 Exhibit A to Declaration of Schroedter, # 4 Proof of Service)(Schroedter, Maggie)Attorney Maggie E. Schroedter added to party Drivetime Car Sales Company, LLC(pty:dft), Attorney Maggie E. Schroedter added to party Peter Grisolano(pty:dft), Attorney Maggie E. Schroedter added to party Aaron Mciver(pty:dft) (alns). (Entered: 01/30/2024) |
| 01/31/2024 | 11 | SUMMONS Returned Executed by Ashkan Rajaee. Scott Carpenter, Sean Clancy, Kirk & Toberty, LLC, Frank Lubin, Mason Building and Design LLC, Adam Price, Sandhills Global, Inc., Kerri A Williams-Horn served. (Attachments: # 1 Proof of Service, # 2 Proof of Service, # 3 Proof of Service, # 4 Proof of Service, # 5 Proof of Service, # 6 Proof of Service, # 7 Proof of Service)(Rajaee, Ashkan ) (Entered: 01/31/2024) |
| 01/31/2024 | 12 | SUMMONS Returned Executed by Ashkan Rajaee. Blockchain Game Partners, Inc. served. (Rajaee, Ashkan ) (Entered: 01/31/2024) |
| 01/31/2024 | 13 | ORDER: Discovery Intake Call held regarding plaintiff's request to compel defendants Scott Carpenter and Cummins & White, LLP to participate in a Fed. R. Civ. P. 26(f) conference. Plaintiff must file and serve his motion on or before February 5, 2024. Defendants Carpenter and Cummins & White, LLP must file and serve their opposition brief on or before February 9, 2024. Briefs must be properly formatted and limited to 10 pages, excluding exhibits. Signed by Magistrate Judge Karen S. Crawford on 1/31/2023. (no document attached) (kxb) (Entered: 01/31/2024) |
| 01/31/2024 | 14 | Ex Parte MOTION for Extension of Time to File Answer re 1 Complaint,,, by Mode Transportation, LLC. (Attachments: # 1 Declaration ISO Ex Parte Motion)(Mysliwiec, John)Attorney John Mysliwiec added to party Mode Transportation, LLC(pty:dft) (alns). (Entered: 01/31/2024) |

| | | |
|---|---|---|
| 01/31/2024 | 15 | ORDER Granting Motion For Extension Of Time To Respond To Plaintiffs Complaint(ECF No. 10 ). Signed by District Judge Robert S. Huie on 1/31/2024. (All non-registered users served via U.S. Mail Service)(alns) (anh). (Entered: 01/31/2024) |
| 01/31/2024 | 16 | MOTION to Dismiss by Kenneth R. Reynolds, INC, Kenneth R Reynolds. (Attachments: # 1 Memo of Points and Authorities, # 2 Proof of Service)(Brooks, Kenny)Attorney Kenny C Brooks added to party Kenneth R. Reynolds, INC(pty:dft), Attorney Kenny C Brooks added to party Kenneth R Reynolds(pty:dft) (alns). (Entered: 01/31/2024) |
| 01/31/2024 | 17 | MOTION to Strike 1 Complaint,,, *Anti-SLAPP* by Kenneth R. Reynolds, INC, Kenneth R Reynolds. (Attachments: # 1 Memo of Points and Authorities, # 2 Declaration Declaration of Kenneth Reynolds, # 3 Proof of Service)(Brooks, Kenny) (alns). (Entered: 01/31/2024) |
| 01/31/2024 | 18 | MOTION to Dismiss for Failure to State a Claim by Talentcrowd, LLC. (Attachments: # 1 Memo of Points and Authorities, # 2 Request for Judicial Notice, # 3 Exhibit 1, # 4 Exhibit 2, # 5 Exhibit 3, # 6 Exhibit 4, # 7 Exhibit 5, # 8 Exhibit 6, # 9 Exhibit 7, # 10 Exhibit 8, # 11 Exhibit 9, # 12 Exhibit 10)(Leetham, Tamara)Attorney Tamara M. Leetham added to party Talentcrowd, LLC(pty:dft) (alns). (Entered: 01/31/2024) |
| 02/01/2024 | 19 | MOTION for Entry of Default *Against Sandhills Global, Inc.* by Ashkan Rajaee. (Rajaee, Ashkan ) (Entered: 02/01/2024) |
| 02/01/2024 | 20 | NOTICE *Request for Jury Trial* by Scott Carpenter, Cummins & White, LLP re 1 Complaint,,, (Attachments: # 1 Proof of Service Proof of Service)(Joens, Timothy) (alns). (Entered: 02/01/2024) |
| 02/01/2024 | 21 | ORDER denying 19 Motion for Entry of Default. The proof of service filed by Plaintiff as to Defendant Sandhill Global Inc. does not contain sufficient detail to satisfy the Court that service has been properly effected pursuant to Cal. Civ. Proc. Code 416.10. The motion for default is denied without prejudice to refiling based on additional evidence of proper service. Signed by District Judge Robert S. Huie on 2/1/2024. (no document attached) (Huie, Robert) (Entered: 02/01/2024) |
| 02/01/2024 | 22 | NOTICE of Joinder by Jonathan Gerber re 8 MOTION to Dismiss for Failure to State a Claim MOTION to Dismiss for Lack of Jurisdiction (Gerber, Jonathan) (alns). (Entered: 02/01/2024) |
| 02/01/2024 | 23 | MOTION to Dismiss *with Prejudice* by 402 Ventures, LLC, Express Tech-Financing, LLC, Sandhills Global, Inc.. (Attachments: # 1 Memo of Points and Authorities, # 2 Proposed Order)(Yudelson, David)Attorney David A. Yudelson added to party 402 Ventures, LLC(pty:dft), Attorney David A. Yudelson added to party Express Tech-Financing, LLC(pty:dft), Attorney David A. Yudelson added to party Sandhills Global, Inc.(pty:dft) (alns). (Entered: 02/01/2024) |
| 02/01/2024 | 24 | MOTION to Dismiss by Scott McKinney, Shawn Peed. (Attachments: # 1 Memo of Points and Authorities, # 2 Dec of Shawn Peed, # 3 Dec of Scott McKinney)(Yudelson, David)Attorney David A. Yudelson added to party Scott McKinney(pty:dft), Attorney David A. Yudelson added to party Shawn Peed(pty:dft) (alns). (Entered: 02/01/2024) |
| 02/01/2024 | 25 | MOTION to Dismiss *Pursuant to FRCP 12(b) and 12(b)(6) and Joinder in Motion of Defendants Scott Carpenter, Esq., and Cummins & White, LLP, to Dismiss* by Russ Embry, Intellicheck, Inc., Frank Lubin. (Attachments: # 1 Memo of Points and Authorities)(Guess, Philip)Attorney Philip M. Guess added to party Russ Embry(pty:dft), Attorney Philip M. Guess added to party Intellicheck, Inc.(pty:dft), Attorney Philip M. Guess added to party Frank Lubin(pty:dft) (alns). (Entered: 02/01/2024) |

EXHIBIT 11, PAGE 366

| 02/05/2024 | 26 | MOTION to Compel *Setting of Rule 26 Conference* by Ashkan Rajaee. (Attachments: # 1 Declaration Declaration ISO Motion to compel)(Rajaee, Ashkan ) (Entered: 02/05/2024) |
|---|---|---|
| 02/05/2024 | 27 | MOTION to Strike 1 Complaint,,, by Micah Bailey, Purdy & Bailey, LLP. (Attachments: # 1 Memo of Points and Authorities, # 2 Declaration)(Bailey, Micah)Attorney Micah L. Bailey added to party Micah Bailey(pty:dft), Attorney Micah L. Bailey added to party Purdy & Bailey, LLP(pty:dft) (alns). (Entered: 02/05/2024) |
| 02/05/2024 | 28 | MOTION to Dismiss for Failure to State a Claim , MOTION to Dismiss for Lack of Jurisdiction by Micah Bailey, Purdy & Bailey, LLP. (Attachments: # 1 Memo of Points and Authorities, # 2 Request for Judicial Notice, # 3 Exhibit 1, # 4 Exhibit 2, # 5 Exhibit 3, # 6 Exhibit 4, # 7 Exhibit 5, # 8 Exhibit 6, # 9 Exhibit 7, # 10 Exhibit 8, # 11 Exhibit 9, # 12 Exhibit 10)(Bailey, Micah) (alns). (Entered: 02/05/2024) |
| 02/06/2024 | 29 | MOTION to Dismiss for Lack of Jurisdiction *Pursuant to FRCP 12(b)(1) & 12(b)(6)* by J. Douglas Kirk, Kirk & Toberty, LLC. (Attachments: # 1 Memo of Points and Authorities Memorandum of Points & Authorities in Support of Motion to Dismiss Pursuant to FRCP 12(b)(1) & 12(b)(6), # 2 Proof of Service Proof of Service)(Joens, Timothy)Attorney Timothy L. Joens added to party J. Douglas Kirk(pty:dft), Attorney Timothy L. Joens added to party Kirk & Toberty, LLC(pty:dft) (alns). (Entered: 02/06/2024) |
| 02/06/2024 | 30 | MOTION to Strike 1 Complaint,,, by J. Douglas Kirk, Kirk & Toberty, LLC. (Attachments: # 1 Memo of Points and Authorities Memorandum of Points & Authorities in Support of Special Motion to Strike, # 2 Declaration Declaration of J. Douglas Kirk in Support of Special Motion to Strike, # 3 Exhibit Exhibit A - Judgment #1, # 4 Exhibit Exhibit B - Judgment #2, # 5 Exhibit Exhibit C - Objections to Subpoena, # 6 Proof of Service Proof of Service)(Joens, Timothy) (alns). (Entered: 02/06/2024) |
| 02/06/2024 | 31 | DEMAND for Trial by Jury by J. Douglas Kirk, Kirk & Toberty, LLC. (Attachments: # 1 Proof of Service Proof of Service)(Joens, Timothy) (alns). (Entered: 02/06/2024) |
| 02/06/2024 | 32 | MOTION to Dismiss *Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6)* by Amanda Frye. (Attachments: # 1 Memo of Points and Authorities, # 2 Request for Judicial Notice, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit, # 7 Exhibit, # 8 Exhibit, # 9 Exhibit, # 10 Exhibit, # 11 Exhibit, # 12 Exhibit, # 13 Proof of Service)(Leetham, Tamara)Attorney Tamara M. Leetham added to party Amanda Frye(pty:dft) (alns). (Entered: 02/06/2024) |
| 02/07/2024 | 33 | MOTION to Dismiss for Lack of Jurisdiction by Blockchain Game Partners, Inc., Aaron Price, Adam Price. (Attachments: # 1 Declaration of Aaron Price in Support, # 2 Declaration of Adam Price in Support)(Walker, Jessica)Attorney Jessica Nicole Walker added to party Blockchain Game Partners, Inc.(pty:dft), Attorney Jessica Nicole Walker added to party Aaron Price(pty:dft), Attorney Jessica Nicole Walker added to party Adam Price(pty:dft) (alns). (Entered: 02/07/2024) |
| 02/08/2024 | 34 | Ex Parte MOTION for Extension of Time to File Answer re 1 Complaint,,, *of Rajaee filed 01/02/2024* by Kerri A Williams-Horn. (Attachments: # 1 Memo of Points and Authorities Extension time, # 2 Declaration K Reynolds, # 3 Proof of Service Ex parte extend time)(Reynolds, Kenneth)Attorney Kenneth Ross Reynolds added to party Kerri A Williams-Horn(pty:dft) (alns). (Entered: 02/08/2024) |
| 02/08/2024 | 35 | RESPONSE in Opposition re 26 MOTION to Compel *Setting of Rule 26 Conference* filed by Scott Carpenter, Cummins & White, LLP. (Attachments: # 1 Proof of Service)(Joens, Timothy) (alns). (Entered: 02/08/2024) |
| 02/09/2024 | 36 | ORDER Granting Motion For Extension Of Time To Respond To Plaintiffs Complaint(ECF No. 34 ). Signed by District Judge Robert S. Huie on 2/9/2024. (All non- |

EXHIBIT 11, PAGE 367

| | | registered users served via U.S. Mail Service)(alns) (anh). (Entered: 02/09/2024) |
|---|---|---|
| 02/09/2024 | 37 | Proof Of Service Of Defendant Mode Transportation, LLCs Notice Of Motion And Ex Parte Motion For Extension Of Time To Answer Or Otherwise Respond To The Verified Complaint by Mode Transportation, LLC. (Mysliwiec, John) (alns). (alns). (Entered: 02/09/2024) |
| 02/09/2024 | 38 | DEMAND for Trial by Jury by Kenneth R Reynolds. (Attachments: # 1 Proof of Service) (Brooks, Kenny) (alns). (Entered: 02/09/2024) |
| 02/09/2024 | 39 | NOTICE of Joinder by Kenneth R Reynolds re 35 Response in Opposition to Motion (Brooks, Kenny) (alns). (Entered: 02/09/2024) |
| 02/12/2024 | 40 | Request to Appear Pro Hac Vice ( Filing fee received: $ 224 receipt number ACASDC-18578023.) (Application to be reviewed by Clerk.) (Matson, John) QC mail sent - not signed (rmc). (Entered: 02/12/2024) |
| 02/12/2024 | 41 | Joint MOTION for Extension of Time to File Response/Reply *to Complaint* by Mode Transportation, LLC. (Attachments: # 1 Declaration Declaration of John Mysliwiec) (Mysliwiec, John) (alns). (Entered: 02/12/2024) |
| 02/13/2024 | 42 | Request to Appear Pro Hac Vice, No payment Submitted. (Application to be reviewed by Clerk.) (Matson, John) (jrd) (Entered: 02/13/2024) |
| 02/13/2024 | 43 | ORDER Granting Motion For Extension Of Time To Respond To Plaintiffs Complaint(ECF No. 41 ). Signed by District Judge Robert S. Huie on 2/13/2024. (All non-registered users served via U.S. Mail Service)(alns) (Entered: 02/13/2024) |
| 02/13/2024 | 44 | ORDER Approving the Pro Hac Vice Application of John V. Matson (Re: ECF No. 42 Request to Appear Pro Hac Vice). Signed by District Judge Robert S. Huie on 2/13/2024. (jrd) (Entered: 02/13/2024) |
| 02/14/2024 | 45 | MOTION to Dismiss for Lack of Jurisdiction *Defendant Drivetime Car Sales Company, LLC's Notice of Motion and Motion to Dismiss Plaintiff's Complaint Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6)* by Drivetime Car Sales Company, LLC. (Attachments: # 1 Memo of Points and Authorities)(Schroedter, Maggie) (alns). (Entered: 02/14/2024) |
| 02/14/2024 | 46 | SUMMONS Returned Executed by Ashkan Rajaee. James Marsh, Medical Staffing Solutions, Inc. served. (Attachments: # 1 Proof of Service)(Rajaee, Ashkan ) (alns). (Entered: 02/14/2024) |
| 02/14/2024 | 47 | MOTION to Dismiss for Lack of Jurisdiction *(Personal)* by Drivetime Car Sales Company, LLC. (Attachments: # 1 Memo of Points and Authorities, # 2 Declaration of Aaron McIver, # 3 Exhibit A, # 4 Exhibit B, # 5 Proof of Service)(Robberson, Mary)Attorney Mary R. Robberson added to party Drivetime Car Sales Company, LLC(pty:dft) (alns). (Entered: 02/14/2024) |
| 02/15/2024 | 48 | RESPONSE in Opposition re 9 MOTION to Stay re 1 Complaint,,, MOTION to Strike 1 Complaint,,, filed by Ashkan Rajaee. (Attachments: # 1 Declaration Plaintiff s Declaration ISO Opposition to Carpenter & Cummins and White LLP Motion to Strike, # 2 Supplement Plaintiff s Objections to Evidence file ISO Carpenter & Cummins and White LLP Motion to Strike)(Rajaee, Ashkan ) (rmc). (Entered: 02/15/2024) |
| 02/16/2024 | 49 | ORDER Denying 26 Plaintiff's Motion to Compel Setting of Rule 26(f) Conference. Signed by Magistrate Judge Karen S. Crawford on 2/16/2024. (rmc) Modified on 2/16/2024 to correct signature name (rmc). (Entered: 02/16/2024) |

EXHIBIT 11, PAGE 368

| | | |
|---|---|---|
| 02/16/2024 | 50 | RESPONSE in Opposition re 8 MOTION to Dismiss for Failure to State a Claim MOTION to Dismiss for Lack of Jurisdiction filed by Ashkan Rajaee. (Attachments: # 1 Declaration Plaintiff s Declaration ISO Opposition to Carpenter & Cummins and White Motion to Dismiss, # 2 Declaration Todd Belluomini s Declaration ISO Opposition to Carpenter & Cummins and White Motion to Dismiss)(Rajaee, Ashkan ) (alns). (Entered: 02/16/2024) |
| 02/16/2024 | 51 | RESPONSE in Opposition re 7 MOTION to Strike 1 Complaint,,, filed by Ashkan Rajaee. (Attachments: # 1 Declaration Plaintiff s Declaration ISO Opposition To Defendants Miller Miller Gerber and Gerber Motion to Strike)(Rajaee, Ashkan ) (alns). (Entered: 02/16/2024) |
| 02/16/2024 | 52 | RESPONSE re 22 Notice of Joinder *TO MOTION OF DEFENDANTS SCOTT CARPENTER, ESQ., AND CUMMINS & WHITE, LLP, TO DISMISS 8* filed by Ashkan Rajaee. (Rajaee, Ashkan ) (alns). (Entered: 02/16/2024) |
| 02/20/2024 | 53 | MOTION for Entry of Default *Against Defendants Medical Staffing Solutions, Inc and James Marsh* by Ashkan Rajaee. (Rajaee, Ashkan ) (alns). (Entered: 02/20/2024) |
| 02/21/2024 | 54 | RESPONSE in Opposition re 16 MOTION to Dismiss filed by Ashkan Rajaee. (Attachments: # 1 Declaration Plaintiff s Declaration ISO Opposition to Defendants Reynolds Motion to Dismiss)(Rajaee, Ashkan ) (alns). (Entered: 02/21/2024) |
| 02/21/2024 | 55 | RESPONSE in Opposition re 17 MOTION to Strike 1 Complaint,,, *Anti-SLAPP* filed by Ashkan Rajaee. (Rajaee, Ashkan ) (alns). (Entered: 02/21/2024) |
| 02/21/2024 | 56 | RESPONSE in Opposition re 18 MOTION to Dismiss for Failure to State a Claim filed by Ashkan Rajaee. (Attachments: # 1 Declaration Plaintiff s Declaration ISO Opposition ECF 18 Talentcrowd Motion to Dismiss)(Rajaee, Ashkan ) (alns). (Entered: 02/21/2024) |
| 02/21/2024 | 57 | MOTION to Dismiss for Lack of Jurisdiction *(Personal)* by Peter Grisolano, Aaron Mciver. (Attachments: # 1 Memo of Points and Authorities, # 2 Declaration of Peter Grisolano, # 3 Declaration of Aaron McIver, # 4 Proof of Service)(Robberson, Mary)Attorney Mary R. Robberson added to party Peter Grisolano(pty:dft), Attorney Mary R. Robberson added to party Aaron Mciver(pty:dft) (alns). (Entered: 02/21/2024) |
| 02/21/2024 | 58 | RESPONSE in Opposition re 23 MOTION to Dismiss *with Prejudice* filed by Ashkan Rajaee. (Attachments: # 1 Declaration Plaintiff s Declaration ISO Opposition ECF 23 Sandhills Motion to Dismiss)(Rajaee, Ashkan ) (alns). (Entered: 02/21/2024) |
| 02/21/2024 | 59 | NOTICE of Joinder by Peter Grisolano, Aaron Mciver re 45 MOTION to Dismiss for Lack of Jurisdiction *Defendant Drivetime Car Sales Company, LLC's Notice of Motion and Motion to Dismiss Plaintiff's Complaint Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6)* (Attachments: # 1 Memo of Points and Authorities, # 2 Proof of Service)(Schroedter, Maggie) (alns). (Entered: 02/21/2024) |
| 02/22/2024 | 60 | RESPONSE in Opposition re 24 MOTION to Dismiss filed by Ashkan Rajaee. (Attachments: # 1 Declaration 2-Plaintiff s Declaration ISO Opposition ECF 24 McKinney-Peed Motion to Dismiss)(Rajaee, Ashkan ) (alns). (Entered: 02/22/2024) |
| 02/22/2024 | 61 | RESPONSE in Opposition re 25 MOTION to Dismiss *Pursuant to FRCP 12(b) and 12(b) (6) and Joinder in Motion of Defendants Scott Carpenter, Esq., and Cummins & White, LLP, to Dismiss [Doc. No. 8]* filed by Ashkan Rajaee. (Attachments: # 1 Declaration Plaintiff s Declaration ISO Opposition ECF 25 Intellicheck Motion to Dismiss)(Rajaee, Ashkan ) (alns). (Entered: 02/22/2024) |
| 02/26/2024 | 62 | Notice: Judge Crawfords Civil Chambers Rules, General Considerations for Written Discovery, and Zoom Guidelines are updated effective February 22, 2024 and are |

| | | available on the Courts website. The parties must familiarize themselves with these publications. (All non-registered users served via U.S. Mail Service)(no document attached) (alns) (Entered: 02/26/2024) |
|---|---|---|
| 02/26/2024 | 63 | RESPONSE in Opposition re 28 MOTION to Dismiss for Failure to State a Claim MOTION to Dismiss for Lack of Jurisdiction filed by Ashkan Rajaee. (Attachments: # 1 Declaration Plaintiff s Declaration ISO Opposition to Defendants Purdy & Bailey and Micah Bailey s Motion to Dismiss ECF 28, # 2 Supplement Plaintiff s Objections to Evidence file ISO Purdy & Bailey and Micah Bailey Motion to Dismiss)(Rajaee, Ashkan ) (alns). (Entered: 02/26/2024) |
| 02/26/2024 | 64 | RESPONSE in Opposition re 27 MOTION to Strike 1 Complaint,,, filed by Ashkan Rajaee. (Attachments: # 1 Declaration Plaintiff s Declaration ISO Opposition ECF 27 Purdy & Bailey and Micah Bailey Motion to Strike)(Rajaee, Ashkan ) (alns). (Entered: 02/26/2024) |
| 02/26/2024 | 65 | Request to Appear Pro Hac Vice (Filing fee received: $224.00 receipt number ACASDC-18617686.)(Application to be reviewed by Clerk.) (Call, Monica)(jrd) (Entered: 02/26/2024) |
| 02/26/2024 | 66 | ORDER Approving the Pro Hac Vice Application of Monica S. Call (Re: ECF No. 65 Request to Appear Pro Hac Vice). Signed by District Judge Robert S. Huie on 2/26/2024. (jrd) (Entered: 02/26/2024) |
| 02/26/2024 | 67 | Clerk's ENTRY OF DEFAULT as to James Marsh, Medical Staffing Solutions, Inc. (All non-registered users served via U.S. Mail Service)(alns) (anh). (Entered: 02/26/2024) |
| 02/26/2024 | 68 | MOTION to Dismiss *(FRCP 12B)* by Kerri A Williams-Horn. (Attachments: # 1 Memo of Points and Authorities, # 2 Proof of Service)(Brooks, Kenny)Attorney Kenny C Brooks added to party Kerri A Williams-Horn(pty:dft) (alns) (Entered: 02/26/2024) |
| 02/26/2024 | 69 | MOTION to Dismiss *(FRCP 12B)* by Mason Building and Design LLC. (Attachments: # 1 Memo of Points and Authorities, # 2 Proof of Service)(Brooks, Kenny)Attorney Kenny C Brooks added to party Mason Building and Design LLC(pty:dft) M (alns). (Entered: 02/26/2024) |
| 02/26/2024 | 70 | REPLY to Response to Motion re 8 MOTION to Dismiss for Failure to State a Claim MOTION to Dismiss for Lack of Jurisdiction filed by Scott Carpenter, Cummins & White, LLP. (Attachments: # 1 Proof of Service)(Joens, Timothy) (alns). (Entered: 02/26/2024) |
| 02/26/2024 | 71 | REPLY to Response to Motion re 9 MOTION to Stay re 1 Complaint,,, MOTION to Strike 1 Complaint,,, filed by Scott Carpenter, Cummins & White, LLP. (Attachments: # 1 Notice Response to Plaintiff's Objections to Evidence, # 2 Notice Defendants' Objections to Plaintiff's Purported Evidence, # 3 Proof of Service)(Joens, Timothy) (alns). (Entered: 02/26/2024) |
| 02/27/2024 | 72 | REPLY to Response to Motion re 16 MOTION to Dismiss filed by Kenneth R. Reynolds, INC, Kenneth R Reynolds. (Attachments: # 1 Proof of Service)(Brooks, Kenny) (alns). (Entered: 02/27/2024) |
| 02/27/2024 | 73 | REPLY to Response to Motion re 17 MOTION to Strike 1 Complaint,,, *Anti-SLAPP* filed by Kenneth R. Reynolds, INC, Kenneth R Reynolds. (Attachments: # 1 Proof of Service) (Brooks, Kenny) (alns). (Entered: 02/27/2024) |
| 02/27/2024 | 74 | RESPONSE in Opposition re 29 MOTION to Dismiss for Lack of Jurisdiction *Pursuant to FRCP 12(b)(1) & 12(b)(6)* filed by Ashkan Rajaee. (Attachments: # 1 Declaration |

EXHIBIT 11, PAGE 370

| | | |
|---|---|---|
| | | Plaintiff s Declaration ISO Opposition ECF 29 Defendnats Kirk and Kirk and Toberty's Motion to Dismiss)(Rajaee, Ashkan ) (alns). (Entered: 02/27/2024) |
| 02/27/2024 | 75 | RESPONSE in Opposition re 30 MOTION to Strike 1 Complaint,,, filed by Ashkan Rajaee. (Rajaee, Ashkan )(alns). (Entered: 02/27/2024) |
| 02/27/2024 | 76 | RESPONSE in Opposition re 32 MOTION to Dismiss *Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6)* filed by Ashkan Rajaee. (Attachments: # 1 Declaration Plaintiff s Declaration ISO Opposition to ECF 32 Amanda Frye's Motion to Dismiss, # 2 Supplement Plaintiff s Objections to Evidence file ISO Amanda Frye Motion to Dismiss) (Rajaee, Ashkan ) (alns). (Entered: 02/27/2024) |
| 02/28/2024 | 77 | RESPONSE in Opposition re 33 MOTION to Dismiss for Lack of Jurisdiction filed by Ashkan Rajaee. (Attachments: # 1 Declaration Plaintiff s Declaration ISO Opposition ECF 33 Defendant Gala Games Motion to Dismiss)(Rajaee, Ashkan ) (alns). (Entered: 02/28/2024) |
| 02/28/2024 | 78 | REPLY to Response to Motion re 18 MOTION to Dismiss for Failure to State a Claim filed by Talentcrowd, LLC. (Attachments: # 1 Proof of Service)(Leetham, Tamara) (alns). (Entered: 02/28/2024) |
| 02/28/2024 | 79 | MOTION to Dismiss for Lack of Jurisdiction *Defendants Sean Clancy and Anthony Vargas Notice of Motion and Motion to Dismiss Plaintiffs Complaint for Lack of Personal Jurisdiction Pursuant to Federal Rules of Civil Procedure (12(b)(2)* by Sean Clancy, Mode Transportation, LLC, Anthony Vargas. (Attachments: # 1 Memo of Points and Authorities)(Mysliwiec, John) (alns). (Entered: 02/28/2024) |
| 02/28/2024 | 80 | DECLARATION re 79 MOTION to Dismiss for Lack of Jurisdiction *Defendants Sean Clancy and Anthony Vargas Notice of Motion and Motion to Dismiss Plaintiffs Complaint for Lack of Personal Jurisdiction Pursuant to Federal Rules of Civil Procedure (12(b)(2) Declaration of Sean Clancy* by Defendants Sean Clancy, Mode Transportation, LLC, Anthony Vargas. (Mysliwiec, John) (alns). (Entered: 02/28/2024) |
| 02/28/2024 | 81 | DECLARATION re 79 MOTION to Dismiss for Lack of Jurisdiction *Defendants Sean Clancy and Anthony Vargas Notice of Motion and Motion to Dismiss Plaintiffs Complaint for Lack of Personal Jurisdiction Pursuant to Federal Rules of Civil Procedure (12(b)(2)*, 80 Declaration, *Declaration of Anthony Vargas* by Defendants Sean Clancy, Mode Transportation, LLC, Anthony Vargas. (Mysliwiec, John) (alns). (Entered: 02/28/2024) |
| 02/28/2024 | 82 | MOTION to Dismiss *Defendants Mode Transportation, LLC, Sean Clancy and Anthony Vargas Notice of Motion and Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(B)(1) and 12(B)(6) and Notice of Joinder and Joinder to Defendants Scott Carpenter, Esq. and Cummins & White, LLP's Motion to Dismiss [Doc. No. 8]* by Sean Clancy, Mode Transportation, LLC, Anthony Vargas. (Attachments: # 1 Memo of Points and Authorities)(Mysliwiec, John) (alns). (Entered: 02/28/2024) |
| 02/29/2024 | 83 | REPLY to Response to Motion re 25 MOTION to Dismiss *Pursuant to FRCP 12(b) and 12(b)(6) and Joinder in Motion of Defendants Scott Carpenter, Esq., and Cummins & White, LLP, to Dismiss* filed by Russ Embry, Intellicheck, Inc., Frank Lubin. (Guess, Philip) (alns). (Entered: 02/29/2024) |
| 03/01/2024 | 84 | REPLY to Response to Motion re 24 MOTION to Dismiss *DEFENDANTS SHAWN PEED AND SCOTT MCKINNEYS REPLY TO PLAINTIFFS OPPOSITION TO DEFENDANTS MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION* filed by Scott McKinney, Shawn Peed. (Yudelson, David) (bdc). (Entered: 03/01/2024) |
| 03/01/2024 | 85 | REPLY to Response to Motion re 23 MOTION to Dismiss *with Prejudice DEFENDANT SANDHILLS GLOBAL, INC., EXPRESS TECH-FINANCING, LLC AND 402* |

EXHIBIT 11, PAGE 371

CM/ECF - casd

| | | |
|---|---|---|
| | | *VENTURES, LLCS REPLY TO PLAINTIFFS OPPOSITION TO THEIR MOTION TO DISMISS PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 8(a)(2), 12(b)(1), & 12(b)(6)* filed by 402 Ventures, LLC, Express Tech-Financing, LLC, Sandhills Global, Inc.. (Yudelson, David) (bdc). (Entered: 03/01/2024) |
| 03/01/2024 | [86](#) | AMENDED MOTION to Dismiss *WITH PREJUDICE ASSERTED BY DEFENDANTS SANDHILLS GLOBAL, INC., EXPRESS TECH-FINANCING, LLC, AND 402 VENTURES, LLC* by 402 Ventures, LLC, Express Tech-Financing, LLC, Sandhills Global, Inc. (Yudelson, David) QC Mailer sent re: Wrong event (bdc). (Entered: 03/01/2024) |
| 03/01/2024 | [87](#) | AMENDED MOTION to Dismiss *ASSERTED BY DEFENDANTS SCOTT MCKINNEY AND SHAWN PEED FOR LACK OF PERSONAL JURISDICTION* by Scott McKinney, Shawn Peed (Yudelson, David) QC Mailer sent re: Wrong event (bdc). (Entered: 03/01/2024) |
| 03/04/2024 | [88](#) | REPLY to Response to Motion re [28](#) MOTION to Dismiss for Failure to State a Claim MOTION to Dismiss for Lack of Jurisdiction filed by Micah Bailey, Purdy & Bailey, LLP. (Attachments: # [1](#) Request for Judicial Notice, # [2](#) Exhibit)(Bailey, Micah) (alns). (Entered: 03/04/2024) |
| 03/04/2024 | [89](#) | REPLY to Response to Motion re [27](#) MOTION to Strike [1](#) Complaint,,, filed by Micah Bailey, Purdy & Bailey, LLP. (Attachments: # [1](#) Supplement Objections to Evidence, # [2](#) Supplement Joinder in Objections to Evidence)(Bailey, Micah) (alns). (Entered: 03/04/2024) |
| 03/05/2024 | [90](#) | REPLY to Response to Motion re [29](#) MOTION to Dismiss for Lack of Jurisdiction *Pursuant to FRCP 12(b)(1) & 12(b)(6)* filed by J. Douglas Kirk, Kirk & Toberty, LLC. (Attachments: # [1](#) Proof of Service Proof of Service)(Joens, Timothy) (alns). (Entered: 03/05/2024) |
| 03/05/2024 | [91](#) | REPLY to Response to Motion re [30](#) MOTION to Strike [1](#) Complaint,,, filed by J. Douglas Kirk, Kirk & Toberty, LLC. (Attachments: # [1](#) Notice Notice of Objections re Evidence, # 2 Proof of Service Proof of Service)(Joens, Timothy) (alns). (Entered: 03/05/2024) |
| 03/05/2024 | [92](#) | REPLY to Response to Motion re [32](#) MOTION to Dismiss *Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6)* filed by Amanda Frye. (Attachments: # [1](#) Proof of Service)(Leetham, Tamara) (alns). (Entered: 03/05/2024) |
| 03/06/2024 | [93](#) | RESPONSE in Opposition re [45](#) MOTION to Dismiss for Lack of Jurisdiction *Defendant Drivetime Car Sales Company, LLC's Notice of Motion and Motion to Dismiss Plaintiff's Complaint Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6)* filed by Ashkan Rajaee. (Attachments: # [1](#) Declaration Plaintiff s Declaration ISO Opposition to ECF 45 Drivetime Motion to Dismiss)(Rajaee, Ashkan )(alns). (Entered: 03/06/2024) |
| 03/06/2024 | [94](#) | RESPONSE in Opposition re [47](#) MOTION to Dismiss for Lack of Jurisdiction *(Personal)* filed by Ashkan Rajaee. (Attachments: # [1](#) Declaration Plaintiff s Declaration ISO Opposition to ECF 47 Drivetime Motion to Dismiss)(Rajaee, Ashkan ) (alns). (Entered: 03/06/2024) |
| 03/06/2024 | [95](#) | REPLY to Response to Motion re [33](#) MOTION to Dismiss for Lack of Jurisdiction filed by Blockchain Game Partners, Inc., Aaron Price, Adam Price. (Walker, Jessica) (alns). (Entered: 03/06/2024) |
| 03/13/2024 | [96](#) | RESPONSE in Opposition re [57](#) MOTION to Dismiss for Lack of Jurisdiction *(Personal)* filed by Ashkan Rajaee. (Attachments: # [1](#) Declaration Plaintiff s Declaration ISO |

EXHIBIT 11, PAGE 372

| | | |
|---|---|---|
| | | Opposition Defendants McIver and Grisolano Motion to Dismiss)(Rajaee, Ashkan ) (Entered: 03/13/2024) |
| 03/13/2024 | 97 | REPLY to Response to Motion re 47 MOTION to Dismiss for Lack of Jurisdiction *(Personal) Jurisdiction Pursuant to Federal Rules of Civil Procedure 12(b)(2)* filed by Drivetime Car Sales Company, LLC. (Attachments: # 1 Declaration of Aaron McIver, # 2 Declaration of Mary R. Robberson, # 3 Exhibit A)(Robberson, Mary) (bdc). (Entered: 03/13/2024) |
| 03/13/2024 | 98 | REPLY to Response to Motion re 45 MOTION to Dismiss for Lack of Jurisdiction *Defendant Drivetime Car Sales Company, LLC's Notice of Motion and Motion to Dismiss Plaintiff's Complaint Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6)* filed by Drivetime Car Sales Company, LLC. (Schroedter, Maggie) (bdc). (Entered: 03/13/2024) |
| 03/14/2024 | 99 | SUMMONS Returned Executed by Ashkan Rajaee. Porter Consulting, LLC served. (Rajaee, Ashkan ) (Entered: 03/14/2024) |
| 03/14/2024 | 100 | SUMMONS Returned Executed by Ashkan Rajaee. Joshua Paul Lintz served. (Rajaee, Ashkan ) (Entered: 03/14/2024) |
| 03/18/2024 | 101 | RESPONSE in Opposition re 68 MOTION to Dismiss *(FRCP 12B)* filed by Ashkan Rajaee. (Attachments: # 1 Declaration Plaintiff s Declaration ISO Opposition to Kerri Williams-Horn Motion to Dismiss)(Rajaee, Ashkan ) (Entered: 03/18/2024) |
| 03/18/2024 | 102 | RESPONSE in Opposition re 69 MOTION to Dismiss *(FRCP 12B)* filed by Ashkan Rajaee. (Rajaee, Ashkan ) (Entered: 03/18/2024) |
| 03/20/2024 | 103 | RESPONSE in Opposition re 82 MOTION to Dismiss *Defendants Mode Transportation, LLC, Sean Clancy and Anthony Vargas Notice of Motion and Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(B)(1) and 12(B)(6) and Notice of Joinder and Joinder to Defendants Scott Ca* filed by Ashkan Rajaee. (Attachments: # 1 Declaration Plaintiff s Declaration ISO Opposition ECF 82 Mode Transportation Motion to Dismiss) (Rajaee, Ashkan ) (Entered: 03/20/2024)* |
| 03/20/2024 | 104 | RESPONSE in Opposition re 79 MOTION to Dismiss for Lack of Jurisdiction *Defendants Sean Clancy and Anthony Vargas Notice of Motion and Motion to Dismiss Plaintiffs Complaint for Lack of Personal Jurisdiction Pursuant to Federal Rules of Civil Procedure (12(b)(2)* filed by Ashkan Rajaee. (Attachments: # 1 Declaration Plaintiff s Declaration ISO Opposition ECF 79 Defendants Vargas and Clancy Motion to Dismiss) (Rajaee, Ashkan ) (Entered: 03/20/2024) |
| 03/20/2024 | 105 | REPLY to Response to Motion re 57 MOTION to Dismiss for Lack of Jurisdiction *(Personal) Pursuant to Federal Rule of Civil Procedure 12(b)(2)* filed by Peter Grisolano, Aaron Mciver. (Robberson, Mary) (alns). (Entered: 03/20/2024) |
| 03/20/2024 | 106 | REPLY to Response to Motion re 45 MOTION to Dismiss for Lack of Jurisdiction *Defendant Drivetime Car Sales Company, LLC's Notice of Motion and Motion to Dismiss Plaintiff's Complaint Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) (Joinder)* filed by Peter Grisolano, Aaron Mciver. (Robberson, Mary) (alns). (Entered: 03/20/2024) |
| 03/21/2024 | 107 | SUMMONS Returned Executed by Ashkan Rajaee. Michael Hawes served. (Attachments: # 1 Declaration Declaration of Mailing)(Rajaee, Ashkan ) (Entered: 03/21/2024) |
| 03/21/2024 | 108 | SUMMONS Returned Executed by Ashkan Rajaee. Tyler Brandon Davis served. (Attachments: # 1 Declaration Declaration of Mailing)(Rajaee, Ashkan ) (Entered: |

EXHIBIT 11, PAGE 373

CM/ECF - casd

| | | 03/21/2024) |
|---|---|---|
| 03/25/2024 | 109 | REPLY to Response to Motion re 68 MOTION to Dismiss *(FRCP 12B)* filed by Kenneth R Reynolds. (Brooks, Kenny) (alns). (Entered: 03/25/2024) |
| 03/25/2024 | 110 | REPLY to Response to Motion re 69 MOTION to Dismiss *(FRCP 12B)* filed by Kenneth R Reynolds. (Brooks, Kenny) (alns). (Entered: 03/25/2024) |
| 03/25/2024 | 111 | MOTION for Default Judgment against Medical Staffing Solution, Inc. and James Marsh by Ashkan Rajaee. (Attachments: # 1 Affidavit Plaintiff s Affidavit)(Rajaee, Ashkan ) (Entered: 03/25/2024) |
| 03/25/2024 | 112 | REPLY to Response to Motion re 68 MOTION to Dismiss *(FRCP 12B)* filed by Kerri A Williams-Horn. (Brooks, Kenny) (alns). (Entered: 03/25/2024) |
| 03/26/2024 | 113 | REPLY to Response to Motion re 68 MOTION to Dismiss *(FRCP 12B)* filed by Kerri A Williams-Horn. (Brooks, Kenny) (alns). (Entered: 03/26/2024) |
| 03/27/2024 | 114 | REPLY to Response to Motion re 79 MOTION to Dismiss for Lack of Jurisdiction *Defendants Sean Clancy and Anthony Vargas Notice of Motion and Motion to Dismiss Plaintiffs Complaint for Lack of Personal Jurisdiction Pursuant to Federal Rules of Civil Procedure (12(b)(2)* filed by Sean Clancy, Anthony Vargas. (Mysliwiec, John) (alns). (Entered: 03/27/2024) |
| 03/27/2024 | 115 | REPLY to Response to Motion re 82 MOTION to Dismiss *Defendants Mode Transportation, LLC, Sean Clancy and Anthony Vargas Notice of Motion and Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(B)(1) and 12(B)(6) and Notice of Joinder and Joinder to Defendants Scott Ca* filed by Sean Clancy, Mode Transportation, LLC, Anthony Vargas. (Mysliwiec, John) (alns). (Entered: 03/27/2024) |
| 03/27/2024 | 116 | SUMMONS Returned Executed by Ashkan Rajaee. TOPDEVZ, LLC served. (Attachments: # 1 Declaration Declaration of Mailing)(Rajaee, Ashkan ) (Entered: 03/27/2024) |
| 03/27/2024 | 117 | Ex Parte MOTION Ex parte Relief Requested to Extend Time to Serve Summons and Complaint by Ashkan Rajaee. (Attachments: # 1 Declaration Plaintiff s Declaration ISO Ex parte Motion for extension to serve)(Rajaee, Ashkan ) (Entered: 03/27/2024) |
| 03/28/2024 | 118 | SUMMONS Returned Executed by Ashkan Rajaee. Jenifer Bryn Guadagnin served. (Rajaee, Ashkan ) (Entered: 03/28/2024) |
| 03/28/2024 | 119 | MINUTE ORDER: For good cause shown, the Court GRANTS Plaintiffs motion for a 90-day extension of time for service of summons and complaint, ECF No. 117. Signed by District Judge Robert S. Huie on 03/28/2024. (no document attached) (crm) (Entered: 03/28/2024) |
| 03/29/2024 | 120 | NOTIFICATION OF BANKRUPTCY Upon the Record as to Plaintiff, Ashkan Rajaee by Scott Carpenter, Cummins & White, LLP, J. Douglas Kirk, Kirk & Toberty, LLC (Attachments: # 1 Exhibit Exhibit 1 - Bankruptcy Petition, # 2 Proof of Service Proof of Service)(Joens, Timothy) (alns). (Entered: 03/29/2024) |
| 03/29/2024 | 121 | MOTION to Dismiss *(FRCP 12B)* by Tyler Brandon Davis. (Attachments: # 1 Memo of Points and Authorities, # 2 Order)(Brooks, Kenny)Attorney Kenny C Brooks added to party Tyler Brandon Davis(pty:dft) (alns). (Entered: 03/29/2024) |
| 04/01/2024 | 122 | MOTION to Dismiss *(FRCP 12B)* by TOPDEVZ, LLC. (Attachments: # 1 Memo of Points and Authorities)(Brooks, Kenny)Attorney Kenny C Brooks added to party TOPDEVZ, LLC(pty:dft) (alns). (Entered: 04/01/2024) |

EXHIBIT 11, PAGE 374

| 04/02/2024 | 123 | Ex Parte MOTION to Strike Document 120 Notification of Bankruptcy, by Ashkan Rajaee. (Attachments: # 1 Declaration Plaintiff s Decl. ISO Ex parte Motion to Strike ECF 120)(Rajaee, Ashkan ) (Entered: 04/02/2024) |
|---|---|---|
| 04/02/2024 | 124 | MOTION to Dismiss *(FRCP 12B)* by Porter Consulting, LLC. (Attachments: # 1 Memo of Points and Authorities, # 2 Order)(Brooks, Kenny)Attorney Kenny C Brooks added to party Porter Consulting, LLC(pty:dft) (alns). (Entered: 04/02/2024) |
| 04/02/2024 | 125 | RESPONSE in Opposition re 123 Ex Parte MOTION to Strike Document 120 Notification of Bankruptcy, filed by Scott Carpenter, Cummins & White, LLP, J. Douglas Kirk, Kirk & Toberty, LLC. (Attachments: # 1 Proof of Service Proof of Service)(Joens, Timothy) (alns). (Entered: 04/02/2024) |
| 04/03/2024 | 126 | REPLY to Response to Motion re 123 Ex Parte MOTION to Strike Document 120 Notification of Bankruptcy, filed by Ashkan Rajaee. (Rajaee, Ashkan ) (Entered: 04/03/2024) |
| 04/03/2024 | 127 | NOTICE of Appearance *Gina M. Austin* by Gina M. Austin on behalf of Joshua Paul Lintz (Attachments: # 1 Proof of Service)(Austin, Gina)Attorney Gina M. Austin added to party Joshua Paul Lintz(pty:dft) (alns). (Entered: 04/03/2024) |
| 04/03/2024 | 128 | Ex Parte MOTION for Extension of Time to File Answer re 1 Complaint,,, by Joshua Paul Lintz. (Attachments: # 1 Memo of Points and Authorities, # 2 Declaration, # 3 Proof of Service)(Austin, Gina) (alns). (Entered: 04/03/2024) |
| 04/03/2024 | 129 | RESPONSE in Opposition re 128 Ex Parte MOTION for Extension of Time to File Answer re 1 Complaint,,, filed by Ashkan Rajaee. (Rajaee, Ashkan ) (Entered: 04/03/2024) |
| 04/03/2024 | 130 | ORDER Granting Motion For Extension Of Time To Respond To Plaintiffs Complaint(ECF No. 128 ). Signed by District Judge Robert S. Huie on 4/3/2024. (All non-registered users served via U.S. Mail Service)(alns) (Entered: 04/03/2024) |
| 04/08/2024 | 131 | Request to Appear Pro Hac Vice ( Filing fee received: $ 224 receipt number ACASDC-18737521.) (Application to be reviewed by Clerk.) (Attachments: # 1 Exhibit List of Courts Admitted, # 2 Exhibit Certificate of Good Standing)(Fox, Stephen) (exs). (Entered: 04/08/2024) |
| 04/08/2024 | 132 | PRO HAC APPROVED: Stephen E. Fox appearing for Defendant Mode Transportation, LLC (no document attached) (exs) (Entered: 04/08/2024) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 04/08/2024 12:16:05 | | |
| **PACER Login:** | attydeh162507 | **Client Code:** | 9999-001 |
| **Description:** | Docket Report | **Search Criteria:** | 3:24-cv-00001-RSH-KSC |
| **Billable Pages:** | 18 | **Cost:** | 1.80 |

EXHIBIT 11, PAGE 375

# EXHIBIT 12

1  ASHKAN RAJAEE
   888 Prospect St, Unit 200
2  La Jolla, CA 92037
3  Telephone: 619-332-6348
   Email: prayerforjustice.2022@gmail.com
4
5  Pro Se Plaintiff

6
                                        **FILED**

7                                       Mar 22 2024

8                                   CLERK, U.S. DISTRICT COURT
                                  SOUTHERN DISTRICT OF CALIFORNIA
                                  BY        s/ STN          DEPUTY

8              **UNITED STATES DISTRICT COURT**
9
               **SOUTHERN DISTRICT OF CALIFORNIA**
10

11 ASHKAN RAJAEE, an Individual,        Case No. **'24CV0549 CAB KSC**

12             Plaintiff,               *Unlimited Jurisdiction*

13 v.

14
   TYLER BRANDON DAVIS, an
15 Individual; TOPDEVZ, LLC, a California   **VERIFIED COMPLAINT FOR**
16 Limited Liability Company; SCOTT         **DECLARATORY RELIEF AND**
   CARPENTER, an Individual; JOSEPH        **DAMAGES RELATED TO TAX**
17 W. SCALIA, ESQ., an Individual; J.      **FRAUD**
18 DOUGLAS KIRK, an Individual; and
   DOES 1 through 10, inclusive,
19                                          **[DEMAND FOR JURY TRIAL]**

20
21             Defendants.

22
23
24
25
26
27
28
                                        0

1.    Plaintiff Ashkan Rajaee ("Plaintiff" or "Rajaee") alleges as follows:

## I.    THE PARTIES

2.    Plaintiff Ashkan Rajaee is, and at all times relevant to this Complaint, a Canadian citizen, and resident of San Diego County, California.

3.    Upon Plaintiff's information and belief of the remaining parties: Defendant Tyler Brandon Davis ("Davis") is, and at all times relevant hereto, a resident of Sacramento, California, and a member of TopDevz, LLC, Porter Consulting, LLC, and Mason Building and Design, LLC.

4.    Defendant TopDevz, LLC ("Topdevz") is, and at all times relevant hereto, a limited liability company organized and existing under the laws of the State of California with a principal place of business located in Folsom, California and was incorporated on May 9, 2017.

5.    Defendant Scott Carpenter ("Carpenter"), or is, and at all times relevant hereto, a partner at Cummins & White, and has a principal place of business in Newport Beach, California.

6.    Defendant Joseph W. Scalia, Esq. ("Scalia"), is, and at all times relevant hereto, a partner at Law Offices of Joseph W. Scalia, APC, with his principal place of business in Roseville, California.

7.    Defendant J. Douglas Kirk ("Kirk"), is, and at all times relevant hereto, a partner at Kirk & Toberty and a resident of Irvine County, California. On December 22, 2022, Kirk appeared and represented Topdevz.

## II.    JURISDICTION

8.    This court has the authority to hear and decide the case pursuant to 28 U.S.C. § 1332(a)(2). The lawsuit involves a single foreign alien, the Plaintiff, who is a Canadian citizen and a resident of California and is not admitted for permanent residency in the United States. All the Defendants are United States Citizens.

1

VERIFIED COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES RELATED TO TAX FRAUD

9.      Pursuant to 28 U.S.C. § 1332(a), the dispute involves an amount over $75,000, excluding interests and costs.

10.     The Court has personal jurisdiction over Defendants because of either general jurisdiction or specific jurisdiction over each defendant.

### III.    VENUE

11.     Venue is proper in this county in accordance with 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this district.

### IV.    FACTS AND ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

12.     Plaintiff is a member and owner of TopDevz, LLC since 2017 to present.

13.     Since January 6, 2022, Defendant Tyler Davis has been acting as the putative manager of TopDevz.

14.     Defendant Tyler Davis has caused tax returns (for the fiscal year 2021 and 2022) to be filed on behalf of TopDevz, using Plaintiff's information, without providing copies of the filed returns or any financial information related to the tax filings.

15.     Plaintiff is now aware these returns, and the underlying financials, are completely fraudulent and aimed to conceal a criminal scheme.

16.     On or about February 15, 2022, to avoid $2.8 million in IRS S-Corporation income and frustrate Rajaee's tax account, Davis and non-party Joshua Lintz used Plaintiff's name, social security number and address to willfully aid in the preparation and filing of an IRS 1099 document that is materially fraudulent and false. The filing was made with the IRS and now appears on Plaintiff's tax account with the IRS.

2
VERIFIED COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES RELATED TO TAX FRAUD

EXHIBIT 12, PAGE 378

17.   Defendant Davis' attorney, Scott Carpenter, was sent a demand letter to correct the IRS fraudulent issue and has ignored the demands.

18.   Since November 2022, Plaintiff has repeatedly demanded to inspect the financial affairs of the LLC because Plaintiff's tax account with the IRS has a multi-million-dollar discrepancy due to the fraudulent state and federal tax filings of Defendant Tyler Davis for the entity TopDevz.

19.   On November 18, 2022, Plaintiff attorney at the time, Marc Benezra, partner at Glaser Weil, made a demand for the inspection of documents,

"Rajaee hereby demands that the Company promptly deliver to him care of me, at the expense of the Company, copies of the information required to be maintained pursuant to "paragraphs (1), (2), and (4) of subdivision (d) of Section 17701.13, and any written operating agreement of the limited liability company."

Rajaee hereby further demands access to "inspect and copy during normal business hours" the books and records set forth in Paragraph 1 above. Such demands are for, among other things, purposes of (a) reviewing any and all company transactions and (b) determining Mr. Davis's actions as putative manager of the Company.

Please let us know (a) when Mr. Davis expects to deliver copies of the documents that the Company is required to deliver and (b) a convenient date and time on or before December 1, 2022 when Rajaee and/or his designated representative(s) can inspect and copy the documents which the Company is required to allow its members to inspect."

20.   On November 9, 2023, Plaintiff sent another (of many more) demand, "Carpenter, Please have you client Tyler Brandon Davis provide me a copy of the 2021 TopDevz IRS tax returns he filed using my personal identifiable information.  I have not received a copy and was never provided a K1 on the filing he made. Your urgent attention to this matter is demanded. Ashkan"

21.   On March 1, 2024, Plaintiff discovered through the IRS account escalations team that Plaintiff's personal tax account and TopDevz's EIN were escalated to deal with identity theft and COVID-19 SBA loan fraud in connection

3

VERIFIED COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES RELATED TO TAX FRAUD

with a series of daisy chained financial transactions made by Defendant Davis using TopDevz's EIN number and Plaintiff's identity to commit tax fraud in addition to the 2020 SBA loan fraud.

22.    On March 8, 2024, the IRS filed a $915,029 federal tax claim against Plaintiff in bankruptcy court in direct relations to the tax filings of TopDevz, which caused to be fraudulent by Defendant Davis. At minimum, Plaintiff is now harmed nearly one million dollars in federal taxes that were explicitly caused by the filings of Defendant Davis' instructions.

23.    Defendant Davis has severely underreported income of the LLC and has shifted millions in revenue to Plaintiff's tax account without any explanation whatsoever or any supporting financial documentation to justify the filings.

24.    Separately, Davis has been acting as the putative manager of the LLC and has opened unauthorized bank accounts and conducted millions in transactions without any reporting whatsoever to Plaintiff who is the member of the LLC.

25.    Plaintiff has received no accounting since April 2022 regarding any of the financial affairs of the LLC, which are directly affecting his tax account and bankruptcy proceedings.

26.    Plaintiff believes and understands that Defendant Davis is violating California Uniform Limited Liability Act section 17701.10 subsection, (g)(1) Breach of the duty of loyalty. (2) A financial benefit received by the member or manager to which the member or manager is not entitled. (3) A member's liability for excess distributions under Section 17704.06. (4) Intentional infliction of harm on the limited liability company or a member. (5) An intentional violation of criminal law.

27.    Plaintiff needs access to inspect the documents of the LLC in order to set his personal tax account straight with the IRS, be able to provide accurate

4

VERIFIED COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES RELATED TO TAX FRAUD

1   information to the bankruptcy court, make a final determination of damages, and

2   be permitted to exercise his rights as a member of the LLC to inspect the financial

3   actions of Davis related to TopDevz.

4         28.   Defendant attorneys, who all represent Davis or were hired by Davis,

5   have constantly aided Davis to thwart Plaintiff's attempts to receive the most basic

6   financial information related to TopDevz, its tax information, and Plaintiff's

7   personal identity used by Davis to file fraudulent tax returns.

8         29.   All the defendant in this case are also personal defendants to a related

9   district court case, involving, *inter alia*, identity theft, wire fraud, bank fraud,

10   perjury and fraud on various California courts. The case is in the district court of

11   Southern California, Case No. 24-CV-001.

12         30.   Defendant attorneys are giving substantial aid to Davis in order to

13   deprive Plaintiff of any financials, causing Plaintiff harm.

14         31.   Because of Defendants' conduct, including aid and encouragement by

15   the Defendant attorneys, Plaintiff now has suffered improper claims damages by

16   the IRS for at least $915,000 plus an additional $2.8 million pending on Plaintiff's

17   personal tax account related to TopDevz.

18         32.   If Plaintiff is deprived of his member rights, he will be irreparably

19   harmed with both the IRS and Plaintiff's bankruptcy proceedings. Significantly

20   more important, Plaintiff has been implicated in a criminal scheme which he

21   wants nothing to do with. He needs the information to set the records correct.

22                    **FIRST CAUSE OF ACTION**

23   **DECLARATORY RELIEF PURSUANT TO CALIFORNIA CIVIL CODE**

24                         **§17704.10**

25                  **(Against Davis and TopDevz)**

26         33.   Plaintiff realleges and incorporates herein by reference each and every

27   allegation contained in paragraphs 1 through 31 to this cause of action.

28

VERIFIED COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES RELATED TO TAX FRAUD

1    34.   Plaintiff is a member of TopDevz, LLC, and has the right, upon

2    reasonable request, for purposes reasonably related to the interest of that person as

3    a member, to inspect and copy during normal business hours any of the records

4    required to be maintained pursuant to Section 17701.13.

5    35.   The request is reasonable because Plaintiff's tax account with the IRS

6    is directly compromised by the LLC's filings caused by Defendant Davis.

7    36.   The request is reasonable because bank accounts were opened and

8    used without any supporting documentation in conducting millions of dollars in

9    fraudulent transactions.

10   37.   The request is reasonable because Plaintiff is involved in bankruptcy

11   proceedings and the bankruptcy court and Plaintiff are now being deprived by

12   Davis and the attorneys of crucial financial information in order to efficiently

13   conduct federal proceedings.

## SECOND CAUSE OF ACTION
## ACCOUNTING
### (Against TopDevz)

17   38.   Plaintiff realleges and incorporates herein by reference each and every

18   allegation contained in paragraphs 1 through 37 to this cause of action.

19   39.   Based on the foregoing allegations, Plaintiff is entitled to an

20   accounting by Defendant.

## THIRD CAUSE OF ACTION
## BREACH OF FIDUCIARY DUTY
### (Against Davis)

24   40.   Plaintiff realleges and incorporates herein by reference each and every

25   allegation contained in paragraphs 1 through 39 to this cause of action.

26

27

28

6

VERIFIED COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES RELATED TO TAX FRAUD

1    41.    Defendant Davis breached his fiduciary duties to Plaintiff by willfully

2    filling then concealing tax returns that involve millions of dollars of fraudulent

3    financial transactions.

4    42.    Plaintiff has been harmed by the massive IRS claims against Plaintiff

5    that are the product of Davis' breaches of fiduciary duties to Plaintiff.

6    43.    Davis' conduct is a substantial factor in causing Plaintiff's harm.

7    **FORTH CAUSE OF ACTION**

8    **AIDING AND ABETTING BREACH OF FIDUCIARY DUTY**

9    **(Against Defendant Attorneys)**

10    44.    Plaintiff realleges and incorporates herein by reference each and every

11    allegation contained in paragraphs 1 through 43 to this cause of action.

12    45.    Defendant attorneys had actual knowledge and gave substantial

13    assistance to Davis to deprive Plaintiff access to the financial records that have

14    caused millions of dollars in harm to Plaintiff's tax account and TopDevz's EIN

15    number.

16    46.    Defendant attorneys' conduct was a substantial factor in causing

17    Plaintiff's harm.

18    **PRAYER FOR RELIEF**

19    Plaintiff prays for judgment against Defendants Davis and TopDevz as

20    follows:

21    1.    An order for TopDevz to produce the required financial information

22           or permit inspection thereof by Plaintiff.

23    2.    Actual damages, attorney's fees, and costs;

24    3.    For economic damages according to proof;

25    4.    For compensatory damages according to proof at the time of trial;

26    5.    For incidental and consequential damages according to proof at the

27           time of trial;

28

7

VERIFIED COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES RELATED TO TAX FRAUD

6.   For costs and attorneys' fees incurred related to this action, to the extent permitted by law;

7.   For punitive damages;

8.   For pre-judgment interest on all economic damages;

9.   For costs of suit incurred;

10.  For any such other and further relief as the Court may deem just and proper.


Dated: March 22, 2024                          Respectfully submitted,



                                               Ashkan Rajaee
                                               Pro Se Plaintiff

8

VERIFIED COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES RELATED TO TAX FRAUD

EXHIBIT 12, PAGE 384

1

## **DEMAND FOR JURY TRIAL**

2      Plaintiff Ashkan Rajaee hereby demands a trial by jury on all issues and

3   causes of action that qualify for a jury trial demand.

4

5      Dated: March 22, 2024               Respectfully submitted,

6

7

8

9

10                                           Ashkan Rajaee

11                                           Pro Se Plaintiff

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

9

VERIFIED COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES RELATED TO TAX FRAUD

EXHIBIT 12, PAGE 385

## __VERIFICATION__

1      I, Ashkan Rajaee, declare:

2      I am a party to this action. I am also a member of TopDevz, LLC. I certify

3  under penalty of perjury that I have read and reviewed the Verified Complaint and

4  authorized its filing. Based upon my and my various counsel's investigations, the

5  contents of the Verified Complaint are true to the best of my knowledge,

6  information, and belief. I declare under the penalty of perjury under the laws of the

7  State of California and the United States that the above is true and correct.

8      Executed on March 22, 2024, at La Jolla, California.

Ashkan Rajaee
Pro Se Plaintiff

10

# EXHIBIT 13

1   ASHKAN RAJAEE
2   888 Prospect St, Unit 200
    La Jolla, CA 92037
3   Telephone: 619-332-6348
    Email: prayerforjustice.2022@gmail.com
4
5   Pro Se Plaintiff
6
7                                                   **FILED**
8                                               Mar 22 2024
9                                               CLERK, U.S. DISTRICT COURT
                                                SOUTHERN DISTRICT OF CALIFORNIA
                                                BY        s/STN        DEPUTY

           **UNITED STATES DISTRICT COURT**
10
           **SOUTHERN DISTRICT OF CALIFORNIA**
11

12  ASHKAN RAJAEE, an Individual,           Case No. **'24 CV 0550 LL    DEB**
                                            *Unlimited Jurisdiction*
13                 Plaintiff,

14  v.

15  TYLER BRANDON DAVIS, an                 **VERIFIED COMPLAINT FOR**
    Individual; JOSHUA PAUL Lintz, an       **MISAPPROPRIATION OF TRADE**
16                                          **SECRET DAMAGES AND**
    Individual; TALENTCROWD, LLC, a         **INJUNCTIVE RELIEF**
17  Wyoming Limited Liability Company;
    MELISSA GARCIA, an Individual;
18  VINCIL BISHOP, an Individual;
    AMANDA FRYE, an Individual;             **[DEMAND FOR JURY TRIAL]**
19  SCOTT R. CARPENTER, an
20  Individual; CUMMINS & WHITE,
    LLP, a California Limited Liability
21  Partnership; JOSEPH W. SCALIA, an
    Individual; PORTER CONSULTING,
22  LLC, a California Limited Liability
    Company; TOPDEVZ, LLC, a
23  California Limited Liability Company;
24  and DOES 1 through 15, inclusive,
25
26
27                 Defendants.
28

                                    0
    ─────────────────────────────────────────────────────────────────
    VERIFIED COMPLAINT FOR MISAPPROPRIATION OF TRADE SECRET DAMAGES AND INJUNCTIVE RELIEF

EXHIBIT 13, PAGE 387

1        1.     Plaintiff Ashkan Rajaee ("Plaintiff" or "Rajaee"), files this Complaint for

2    Damages and Injunctive Relief against defendants Tyler Brandon Davis, Joshua Paul

3    Lintz, Talentcrowd, LLC, Melissa Garcia, Vincil Bishop, Amanda Frye, Scott R.

4    Carpenter, Joseph W. Scalia, Porter Consulting, LLC, TopDevz, LLC, and DOES 1

5    through 15, inclusive, alleging as follows:

6                      **I.    THE PARTIES**

7        2.     Plaintiff Ashkan Rajaee ("Plaintiff") is, and at all times relevant to this

8    Complaint, a Canadian citizen, and resident of San Diego County, California.

9        3.     Upon Plaintiff's information and belief of the remaining parties: Defendant

10   Tyler Brandon Davis ("Davis") is, and at all times relevant hereto, a resident of

11   Sacramento, California, and a member of TopDevz, LLC, Porter Consulting, LLC, and

12   Mason Building and Design, LLC.

13       4.     Defendant Joshua Paul Lintz ("Lintz") is, and at all times relevant hereto, a

14   resident of San Diego, California. Lintz was hired by Plaintiff personally in September

15   2020 to work for TopDevz and (unlawfully) represented the LLC as its President & CEO

16   after January 6, 2022. Lintz owns 100% of Talentcrowd, LLC.

17       5.     Defendant Talentcrowd, LLC ("Talentcrowd") is, and at all times relevant

18   hereto, a limited liability company organized and existing under the laws of the State of

19   Wyoming.

20       6.     Defendant Melissa Garcia ("Garcia") is, and at all times relevant hereto, a

21   resident of Chico, California.

22       7.     Defendant Vincil Bishop ("Bishop") is, and at all times relevant hereto, a

23   resident of Austin, Texas.

24       8.     Defendant Amanda Frye ("Frye") is, and at all times relevant hereto, a

25   resident of Romulus, Michigan.

26       9.     Defendant Scott Carpenter ("Carpenter"), or referenced collectively as

27   "Defendant Attorneys", is, and at all times relevant hereto, a partner at Cummins &

28   White, and has a principal place of business in Newport Beach, California.

1

VERIFIED COMPLAINT FOR MISAPPROPRIATION OF TRADE SECRET DAMAGES AND INJUNCTIVE RELIEF

EXHIBIT 13, PAGE 388

1    10.    Defendant Cummins & White, LLP ("Cummins"), or referenced

2    collectively as "Defendant Attorneys", is, and at all times relevant hereto, a limited

3    liability partnership organized and existing under the laws of the State of California with

4    a principal place of business located in Newport Beach, California.

5    11.    Defendant Joseph W. Scalia, Esq. ("Scalia"), or referenced collectively as

6    "Defendant Attorneys", is, and at all times relevant hereto, a partner at Law Offices of

7    Joseph W. Scalia, APC, with his principal place of business in Roseville, California.

8    12.    Defendant Porter Consulting, LLC ("Porter") is, and at all times relevant

9    hereto, a limited liability company organized and existing under the laws of the State of

10    California with a principal place of business located in Sacramento, California.

11    13.    Defendant TopDevz, LLC ("Topdevz") is, and at all times relevant hereto, a

12    limited liability company organized and existing under the laws of the State of

13    California with a principal place of business located in Folsom, California.

14    ## II.    JURISDICTION

15    14.    This court has the authority to hear and decide the case pursuant to 28

16    U.S.C. § 1332(a)(2). The lawsuit involves a single foreign alien, Plaintiff, who is a

17    Canadian citizen and a resident of California and is not admitted for permanent

18    residency in the United States. All the defendants are United States Citizens.

19    15.    Pursuant to 28 U.S.C. § 1332(a), the dispute involves an amount over

20    $75,000, excluding interests and costs.

21    16.    Jurisdiction is proper in this Court under 28 U.S.C. § 1331, because

22    Plaintiff's assert claims arising under law of the United States pursuant to 18 U.S.C. §

23    1832 *et seq.*

24    17.    The Court has personal jurisdiction over Defendants because of either

25    general jurisdiction or specific jurisdiction over each defendant.

26    18.    Venue is proper in this Court under 28 U.S.C. § 1391 because a substantial

27    part of the events giving rise to Plaintiff's claims occurred in this District.

28

2

VERIFIED COMPLAINT FOR MISAPPROPRIATION OF TRADE SECRET DAMAGES AND INJUNCTIVE RELIEF

### III.    Factual Allegations

19.    This case is about Plaintiff's specific and independent claims concerning the unlawful acquisition by actual fraud, deception, theft and download of Plaintiff's trade secrets worth tens of millions of dollars, which were subsequently transmitted, replicated, uploaded and used without Plaintiff's permission for the sole benefit of a competitor, Talentcrowd, LLC.

20.    Under DTSA (Defend The Trade Secret Act) and CUTSA (California Uniform Trade Secrets Act) the "owner" or "any owner" or "of another," has standing to bring a claim for the misappropriation of their trade secrets.

21.    As it relates to the Defendant Attorneys, their firms have collectively received payments exceeding $1 million as part of a concerted effort to obscure the wrongdoing actions and criminal activities associated with the theft and exploitation of Plaintiff's trade secrets by Defendant Davis and/or Lintz. The attorneys' conduct was aimed at facilitating the core objective of the conspiracy to misappropriate and utilize the trade secrets in favor of a competing entity, Talentcrowd, LLC. Defendant Attorneys' conduct violates 18 U.S. Code § 1832, specifically subsection (5).

22.    Plaintiff is the sole personal owner of a massive confidential compilation of data, the product of years of effort and expense, used to grow businesses including software development companies.

23.    Defendants cannot prove by any means that Plaintiff doesn't own the trade secrets at issue in this case.

24.    The compilation of data was built over 10 years with thousands of man hours and costs incurred and includes millions of records from all over the United States and Canada.

25.    Plaintiff's trade secret data includes detailed, accurate and quality contact information of nearly 2.5-million people spanning over 40 unique attributes each, that represents over 10-million unique database entries, that was acquired from the massive collection combination of public and private data.

3

VERIFIED COMPLAINT FOR MISAPPROPRIATION OF TRADE SECRET DAMAGES AND INJUNCTIVE RELIEF

26.    The trade secrets misappropriated by Defendants are from the final work product of a massive, compiled database that has taken years to build and millions to develop. The data includes direct contact information, including cell phone numbers, contacts job history, education, interests, social profiles, address, city, years of communication history, financial information including contacts companies revenues, costs, budgets, invoices, contracts, contact-specific pricing information, bids/estimates presented to the contact, pending projects, previously negotiated discounts and information regarding the contact, product technology the contact is involved in, *etc.*

27.    Defendants never had lawful possession, control or custody of the trade secrets. Furthermore, Defendants were not the authors or contributors to the trade secrets.

28.    Mobile Monster, Inc. ("Mobile Monster" or "MMI") is a Canadian company owned 100% by Plaintiff and was founded over a decade ago in 2013. Mobile Monster is a full-service consulting and software development company based in Toronto, Ontario, Canada. It provides custom web, cloud, mobile, digital and desktop software development and consulting services to clients in every industry from startups to large corporations. It solves business and technology problems by reviewing the administrative and technical requirements of its clients' operating systems. Based on its findings and discussions, it designs a cost-effective comprehensive IT solution tailored to the clients' needs. The services include customer software development, web development, project management, UX/UI designs, mobile e-Commerce, QA testers, Native iOS & Android, native Tablet and API services.

29.    Mobile Monster's success was empowered by its licensed use of Plaintiff's trade secret databases mentioned *supra*.

30.    Based on MMI's success in the Ontario market, Plaintiff was looking to expand its operations into the United States. Plaintiff discovered a growing need to provide U.S. companies with full-service high quality onshore IT development and consulting services with physical presence in the United States.

31.    By expanding and operating in the U.S., Plaintiff would be exclusively focusing on the U.S. market by providing homegrown, U.S. Delivery Teams consisting of Developers, Project Managers, Quality Assurance Testers and Designers.

32.    This technical advantage of a US-based performance workforce would ensure MMI, through its expansion company, would always be producing high-quality code for U.S. based companies, especially those in sectors that require U.S. citizens only to work on technical projects.

33.    Mobile Monster also had a massive competitive advantage, it had permission to use Plaintiff's trade secret information that would be used to launch the expansion into the United States.

34.    Defendant Tyler Davis was well aware of Plaintiff's massive competitive advantage and database. In fact, between 2014 through 2017, Davis witnessed Plaintiff's competitive advantage in a separate company Plaintiff helped grow from $6 million to approximately $60 million in just three years, a company called Surge, LLC ("Surge"), an interstate software development company. In 2017, Davis received payment for over a million dollars from the substantial value of Plaintiff's activities, knowhow and database while Plaintiff was providing consulting service through MMI to Surge, LLC.

35.    In 2017, Davis, with his knowledge of Plaintiff's value, began soliciting Plaintiff to partner with him in Plaintiff's plans to expand into the United States.

36.    A hurdle Plaintiff needed to overcome in the expansion to the United States from Canada was the need for a U.S. citizen with a valid social security number--so the expansion company would be able to obtain an EIN number through a US citizen.

37.    Other than Davis' social security number, Davis brought no value to Plaintiff's business expansion, Davis had no knowledge of how to run or grow a software development company. In fact, Davis had never run any company with more than a few million in revenue, but Davis knew Plaintiff's capabilities and possession of trade secret data.

VERIFIED COMPLAINT FOR MISAPPROPRIATION OF TRADE SECRET DAMAGES AND INJUNCTIVE RELIEF

38.     In 2017, Davis, realizing he was bringing no value to the business expansion, Davis promised to contribute at least $750,000 towards Plaintiff's expansion efforts into the United States, and, in exchange Davis would receive a minority 49% interest in the expansion company.

39.     In 2017, Plaintiff hired immigration attorneys, who advised Plaintiff that he can expand and move to the United States under a work visa known as an L1-A that is administered through the Department of Homeland Security.

40.     The Department of Homeland security classifies the visa as, "The L-1A nonimmigrant classification enables a U.S. employer to transfer an executive or manager from one of its affiliated foreign offices to one of its offices in the United States. This classification also enables a foreign company that does not yet have an affiliated U.S. office to send an executive or manager to the United States with the purpose of establishing one."

41.     "To qualify for L-1 classification in this category, the employer must: Have a qualifying relationship with a foreign company (parent company, branch, subsidiary, or affiliate, collectively referred to as qualifying organizations); and Currently be, or will be, doing business as an employer in the United States and in at least one other country directly or through a qualifying organization for the duration of the beneficiary's stay in the United States as an L-1. While the business must be viable, there is no requirement that it be engaged in international trade."

42.     The L-1A visa is designed for foreign companies wishing to transfer select employees to a U.S. affiliate, subsidiary, or branch. The nature of this qualifying relationship can be one of three types. Plaintiff's L1-A petition was approved under the "Affiliate Relationships" standard, which requires that "Both companies are owned and controlled by the same parent or individual."

43.     Following the advice of immigration counsel, Plaintiff with Davis' participation in the process, used Davis' social security number to obtain an EIN number

1 for the expansion company called TopDevz, LLC that was incorporated by the
2 immigration attorneys on May 9, 2017.

3   44. The immigration attorneys also issued stock certificates presented to
4 Homeland Security signed by Plaintiff and Davis. A majority 51% stock certificate in
5 Plaintiff's personal name and 49% in the name of Tyler Davis.

6   45. This structure satisfied the L-1A visa requirement with Plaintiff personally
7 owning 100% of MMI and 51% majority of TopDevz.

8   46. For foreign employers seeking to send an employee to the United States as
9 an executive or manager to establish a new office, the employer must also show that: the
10 employer has secured sufficient physical premises to house the new office; the employee
11 has been employed as an executive or manager for one continuous year in the three years
12 preceding the filing of the petition; and the intended U.S. office will support an
13 executive or managerial position within one year of the approval of the petition. (8 CFR
14 214.2(l)(3)(v))

15   47. The immigration attorneys also provided an operating agreement for
16 TopDevz, along with other documents and the petition was approved by the Department
17 of Homeland Security under the L-1A expansion criteria, "Mobile Monster's expansion
18 into the U.S. market calls for the U.S. operations to be run independently from the
19 Ontario Company initially under the executive leadership of the Managing Director, Mr.
20 Rajaee."

21   48. On March 22, 2017, much prior to the visa approval or incorporation of the
22 expansion company TopDevz, Plaintiff personally purchased the domain,
23 "topdevz.com" and personally funded the development of the website "topdevz.com",
24 which Plaintiff would then utilize his trade secret data and know-how to build revenue
25 for the expansion company.

26   49. This structure ensured the legal retainment of the data's ownership that
27 would only be accessed through Plaintiff's domain accounts and required usernames and
28 passwords. This structure would also be compliant with the L1-A expansion

VERIFIED COMPLAINT FOR MISAPPROPRIATION OF TRADE SECRET DAMAGES AND INJUNCTIVE RELIEF

1  requirements in managing TopDevz independent of Mobile Monster, with Plaintiff

2  owning a personal majority interest in both entities.

3       50.    TopDevz's independent expansion formation meant software development

4  projects sourced and administered by Mobile Mobster staff (using Plaintiff's database)

5  would be run through TopDevz for the performance of the contracts and the profits of

6  the projects would be split 51/49 between Davis and Plaintiff.

7       51.    However, all the data entry, leads, workforce sourcing, administration,

8  management, contracting, financing, human resources and marketing services were

9  being exclusively collected, created, compiled, packaged and generated by Mobile

10  Monster personnel using Plaintiff's trade secret data.

11      52.    The ownership structure of the data, its management and its contributions

12  thereof were also consistent with the actual course of conduct year over year since 2017,

13  including Plaintiff's funding of the trade secret development and maintenance.

14      53.    During the entirety of Plaintiff's affiliation and expansion involving

15  TopDevz, Plaintiff took steps to protect the trade secrets data's confidentiality, its

16  ownership, custody and control.

17      54.    As the personal owner of data, Plaintiff hired teams of people, contracted

18  through his Canadian Mobile Monster to begin the expansion efforts.

19      55.    MMI's personnel was responsible for the authoring and contributions to the

20  database to further enrich the data under the direct supervision of Plaintiff.

21      56.    The data was updated daily, with thousands of entries per day by Mobile

22  Monster staff that sometimes reached almost 20 full-time persons. Separately, highly

23  proprietary source code authored by Plaintiff was executed in the background to sort and

24  rank each contact record.

25      57.    The data then was further analyzed and compiled from proprietary

26  algorithms authored by Plaintiff to yield a target list of contacts who were technology

27  executives and software developers. The combination and compilation of all this

28  information has tremendous economic value for a software development company.

---

8

VERIFIED COMPLAINT FOR MISAPPROPRIATION OF TRADE SECRET DAMAGES AND INJUNCTIVE RELIEF

58.    Within the data structure, Plaintiff has personally authored propriety methods that generate custom subsets of distinct contacts, culled from the massive database, which are then used to market software development services to. For example, the algorithms would run to automatically exclude government entities, non-profits or universities that tend to have very long sales cycles or very low budgets for software development.

59.    The final output would drastically increase the quality and accuracy of the data yielding precise search results for contacts who would be strong targets for software development services.

60.    The information and data was immensely difficult to collect and compile in the form in which it appeared in the compilation that was exported and downloaded by Defendants with a few keystrokes from the unlawful use of their individual password-protected credentials that was entrusted to them for the purposes of servicing TopDevz contracts in the United States.

61.    The data had a unified end-process design and operation of which, in a unique combination, affords a massive competitive advantage in the software development space both in sourcing clients but also the accompanying software developers.

62.    Plaintiff has used his ownership of the data since 2014 to provide consulting services through his company Mobile Monster. The consulting services and use of the database has generated millions in income for software development companies and for Plaintiff.

63.    The source code algorithms used to compile the data is highly complex. As one example, the trade secret can essentially distinguish thousands of job titles to automatically filter out records that would be of no use for a software development companu's services. Saving tremendous amounts of manual labor and costs associated with creating such a precise and accurate contact list.

VERIFIED COMPLAINT FOR MISAPPROPRIATION OF TRADE SECRET DAMAGES AND INJUNCTIVE RELIEF

64.    For example: a CIO, could be a "Chief Information Officer" or it could be a "Chief Investment Officer" or on the software development side, a "Plant Engineer" would be filtered out from population in the database.

65.    Previous to TopDevz, Plaintiff's database, methods, proprietary algorithms were used to grow Surge, LLC, an interstate software development company, from $6 million to $60 million in revenue a year between 2014 and 2017, generating millions in profits.

66.    In 2017, Surge LLC was acquired, and Plaintiff maintained ownership and control of his data. Nothing in the Surge, LLC, agreement required Plaintiff to assign or vest any ownership or copyright interest in his database, methods or process.

67.    From 2017 to 2021, and through COVID-19, Plaintiff again used his trade secret information, method and process to grow TopDevz, LLC, another interstate software development company, from $0 to nearly $30 million in combined revenue.

68.    Another section of the database contains detailed information of over 400,000 software developers, their life experience, and specific technical skillsets, along with their addresses throughout the United States, Canada and other countries.

69.    In a similar method and process to secure client contacts, the software developer database was used market to software developers who would then be staffed on the accounts.

70.    The proprietary method and process would complete the circle of not only landing client contacts but also enable the expansion company to quickly source qualified technical developers with the right skills and experience to service the contacts' project needs.

71.    Defendants, as TopDevz employees, were given separate individual access with a limited dissemination of the trade secrets in order to exploit the economic value of the secret in managing the software development projects run through TopDevz. For example: calling a contact to their cell phone or direct email to discuss their project or handle a complaint related to a project in flight, or to discuss a discrepancy in an invoice

VERIFIED COMPLAINT FOR MISAPPROPRIATION OF TRADE SECRET DAMAGES AND INJUNCTIVE RELIEF

1    that was authored by Mobile Monster and sent by Mobile Monster employees using

2    Plaintiff's domain, "topdevz.com"

3        72.    Plaintiff's trade secret databases reside in the cloud through multiple

4    providers. All the cloud services that house the various data are registered and owned in

5    Plaintiff's personal name under the domains "topdevz.com" and "mobilemonster.ca"

6    This includes:

7        a.  Google Enterprise Services, which includes Drive, Sheets, Docs, Slides,

8            Gmail and others.

9        b.  Zoho Corporation, which is a multinational technology company that makes

10           computer software and web-based business tools used by end-users to

11           create, interface and update databases.

12       c.  Atlassian, which owns a project management software called JIRA, that

13           allows bug tracking, issue tracking and agile project management. Jira is

14           used by a large number of clients and users globally for project, time,

15           requirements, task, bug, change, code, test, release, sprint management

16           related to software projects.

17       73.    On the cloud stored data, Plaintiff's data resides on:

18       a.  Google Workspace modules (Google Drive, Gmail, Docs, Sheets and

19           other modules within the topdevz.com or mobilemonster.ca domains)

20           with account numbers ending in 3874 and 4179.

21       b.  Data residing on Zoho servers using the topdevz.com or

22           mobilemonster.ca domains ending in 4917.

23       c.  Data residing in JIRA servers registered with the domain "topdevz.com"

24           has an account ending in PDCK.,

25       d.  The Amazon AWS Account registered under the root user

26           staffing@topdevz.com who's owner is Plaintiff. With the account

27           ending in ending in 6860.

28

---

11

VERIFIED COMPLAINT FOR MISAPPROPRIATION OF TRADE SECRET DAMAGES AND INJUNCTIVE RELIEF

74. Plaintiff also stored trade secret information on physical servers at his office in San Diego. The physical servers held the secret keys and algorithms used in the databases and accounts. This included:

    a. Physical Servers bought on Amazon:

        i. 2 of: HP 8300 Elite Small Form Factor Desktop Computer, Intel Core i5-3470 3.2GHz Quad-Core, 8GB RAM, 500GB SATA, Windows 10 Pro 64-Bit, USB 3.0, Display Port (Order 111-9537648-7805869),

        ii. 2 of: HP 8200 Elite, Intel Quad Core i5 3.10 GHz, 16GB DDR3, 1TB HDD, Windows 10 Pro 64-Bit, (Order 113-9091924-8354606),

        iii. 2 of: Dell Optiplex 790 SFF Computer, Intel Core i5 3.1 GHz, 16 GB RAM, 1 TB HDD, DVD-RW, Windows 10 Pro (Order 111-2770703-1406640),

        iv. 1 of: Dell Optiplex 790 SFF Computer, Intel Core i5 3.1 GHz, 16 GB RAM, 1 TB HDD, DVD-RW, Windows 10 Pro (Order 111-0764111-5179425).

    b. Apple iMac Enterprise Edition Serial No.: H4TGF14PPN7C

    c. Apple Enterprise Server Model Year 2013, Serial No: F5KXW024J3RY

    d. Physical Mass Storage Devices: Purchased: G-Technology 10-Terabyte G-DRIVE with Thunderbolt 3 and USB-C Desktop External Hard Drive, Silver - 0G05378-1 – Serial Number: 114-0012471-8625049. This massive backup hard drive stored a complete backup of every aspect of Plaintiff's trade secret.

75. Defendant Garcia downloaded Plaintiff's data from her IP address 73.2.43.170, a Comcast Cable Communications LLC in Chico, CA, onto a laptop that was purchased from Costco in the amount of $1,838.96, with Defendants Lintz, less than two weeks prior to the theft, on December 15, 2021.

76.     In 2018, Plaintiff was approved for the renewal of his L-1A visa based on the near exact same petition in 2017, detailing the continued expansion efforts by Plaintiff.

77.     On or about February 9, 2021, Defendant Tyler Davis, who was going through divorce proceedings, that as of this filing, are still pending, attempted to extort Plaintiff for $750,000 and threated Plaintiff that if he did not comply, Davis would use his friend at the District Attorney's office to remove him and his entire family from the United States for criminal conduct. Plaintiff immediately initiated legal proceedings, which have since led to a series of legal disputes that would evolve into extensive (fraudulent and criminal) litigation arising from the expansion affiliate company TopDevz.

78.     Defendant Attorneys Scalia and Carpenter both started their representation of Davis around February of 2021.

79.     On March 10, 2021, Defendant Lintz signed a written letter addressed to the department of Homeland Security in support of renewing Plaintiff's L-1A that was up for renewal again.

80.     In the letter Lintz states,

"Mobile Monster was incorporated in the Province of Ontario on October 30, 2013. Mr. Rajaee owns 100% of issued shares... and currently has 14 employees/contractors... Mobile Monster hires additional contract workers as needed depending on the size of the project... Successful U.S. Expansion... U.S. Operations, TopDevz, LLC... Mr. Rajaee has 51 percent ownership interest and is the sole managing member. Mr. Tyler Davis, a U.S. citizen, owns the remaining 49 percent and is a member... During the economic downturn of the Covid19 pandemic, Mobile Monster was successful in generating new sales leads that TopDevz monetized...Mobile Monster's sophisticated method of sourcing, sorting, contacting and validating decision makers in the USA remotely has proven extremely valuable to TopDevz... Some notable contracts generated by Mobile Monster for TopDevz include Becton, Dickinson and Company, Drive Time Automotive Group Inc. and Procore Technologies, Inc. [All these companies are multi-billion dollar corporations] Mr. Joshua Lintz has been hired as Head of Delivery in March 2020 with an annual salary of $200,000

13

VERIFIED COMPLAINT FOR MISAPPROPRIATION OF TRADE SECRET DAMAGES AND INJUNCTIVE RELIEF

plus bonuses. In this position he is responsible for the day-to-day operations. He reports directly to Mr. Rajaee…Within the next 3 years, TopDevz will be hiring in-house a COO, CFO and marketing team to generate US leads by marketing activities such as Google AdWords campaigns, outbound email marketing campaigns, email list purchasing and attending Chief Information Officer (CIO) conferences… It is critical that Mr. Rajaee continue in his capacity as Managing Director in order to ensure that the U.S. operations continues to expand."

81.    In 2021, TopDevz earned a net-profit of $1,400,000.

82.    On January 6, 2022, an interim arbitration order (wrongfully) found that Tyler Davis owned 96% of the entity TopDevz.

83.    On or about January 7, 2022, Defendant Carpenter immediately began threatening Plaintiff with "immigration & criminal" consequences.

84.    Since TopDevz was only an expansion entity for Plaintiff, the LLC did not own, possess or control any of the trade secret data. Davis was aware of this since the inception of TopDevz and so was Defendant Lintz, who wrote to attorney Carpenter admitting his knowledge thereof regarding the importance of Mobile Monster:

"Hello, I'm writing to seek guidance on some issues at TopDevz. I am not sure if I am supposed to talk only to you or Tyler…I just found out this morning around 10:30 am that we just lost our entire recruiting/marketing team. Without this team we lose all of the labor used to build and manage the candidate pipelines. We also lose the outbound messaging, which is a similar capacity or expected work product for both marketing and recruiting…We're trying to do our jobs and keep the ship moving forward despite whatever is going on with Ashkan and Tyler or TopDevz ownership. I need to make some important business decisions here in the best interest of TopDevz."

85.    Lintz has also made numerous on-camera public statements about his detailed knowledge of Plaintiff's company Mobile Monster, its contractors, employees, and Plaintiff's personal trade secrets.

86.    Lintz's statements are available on Plaintiff's YouTube channel, available publicly at "https://www.youtube.com/@RemotePreneurs", Season 1, Episode Number 3 Part 2, publicly available at https://www.youtube.com/watch?v=lC_a0zkoupQ.

14

VERIFIED COMPLAINT FOR MISAPPROPRIATION OF TRADE SECRET DAMAGES AND INJUNCTIVE RELIEF

87.    Lintz, on camera at 0 min 51 sec, says "It's so similar to what we're doing at Surge." "there is a lot of differences that are incredibly compelling."

88.    At 1 min 07 sec, Lintz states,

"The big driver, of wanting to make this change and join your team, is because of the investment in the technology layer. I mean the things you have built with PULSE [compiled developer database], the way you have automated the CRM [compiled contact database mentioned *supra*]. I mean that, to me, is incredibly scalable."

89.    Lintz, Davis and attorney Carpenter and Scalia knew if they could steal the trade secrets, Plaintiff's expansion and visa status would be directly destroyed, and Plaintiff would be forced to leave the United States and would lose all his income and ownership value in TopDevz.

90.    On January 10, 2022, Carpenter and Scalia filled frivolous legal documents attempting to obtain an injunction against Plaintiff's trade secrets, fraudulently accusing Plaintiff that he was misappropriating TopDevz's intellectual property.

91.    On January 10, 2022, Davis submitted a judicial declaration falsely asserting that neither Plaintiff nor Mobile Monster owned the intellectual property. In his judicial declaration, in trying to obtain a restraining order, Davis fraudulently represented,

"Ashkan Rajaee, and all persons or entities cooperating with him (including without limitation Mobile Monster, Inc.), are hereby enjoined and restrained from removing any data, documents, intellectual property, records, customer lists, customer data, vendor lists, vendor data, contractor lists, contractor data, accounts receivable documents, or other business records of TopDevz, LLC."

Davis and Carpenter knew the representations they were making were fraudulent because TopDevz did not own the legal rights to the database that contained the trade secrets of Plaintiff, and they further knew that the entire basis for Mobile Monster's expansion and the formation of TopDevz was exclusive of any legal ownership rights of Plaintiff's trade secrets. This was reflected in the entire course of dealings and consistent

15

VERIFIED COMPLAINT FOR MISAPPROPRIATION OF TRADE SECRET DAMAGES AND INJUNCTIVE RELIEF

1  with Plaintiff's immigration petition to the Department of Homeland Security, year after
2  year.

3      92.    On the day of the hearing related to the January 10, 2022, filing, Carpenter,
4  on record, fraudulently represented to the arbitrator on his *ex parte* hearing motion that
5  Plaintiff, "trying to divert both of the intellectual property.. any value in this company is
6  being threatened…as well as the intellectual property involved"

7      93.    After the interim order was issued on January 6, 2022, Davis immediately
8  began to contact former Mobile Monster employees in Canada, without Plaintiff's
9  knowledge, in order to obtain help in trying to steal and download the trade secrets of
10  Plaintiff.

11      94.    Specifically, Davis contacted Siarra Wood, who was a full time Mobile
12  Monster employee and Plaintiff's assistant for numerous years, and since has become
13  averse to Plaintiff.

14      95.    Since Wood's credentials were revoked, Davis gave his own read-only
15  confidential credentials with the username "tyler@topdevz.com" to Siarra in an attempt
16  to have her figure out a way to export all the trade secret data, because she would know
17  where to look for what was valuable and she had the know-how of how take it. The
18  access IP used was 142.113.169.143, which is located in Scarborough, Ontario, Canada,
19  where Siarra Wood was living at the time.

20      96.    Wood's attorney admitted to the unauthorized access in a written letter,
21          "…my client was asked by Mr. Davis to help him locate TopDevz
22          accounting information in the Zoho Books system. This request came to
            my client on January 7, 2022"
23

24      97.    When the Canadian employee could not achieve the objective, on or about
25  January 9, 2022 at 5:44 PM, someone, Plaintiff believes Davis or Siarra Wood, reached
26  out to GoDaddy, who is the company responsible for registering domain ownership. This
27  person attempted to impersonate Plaintiff in order to gain access to the "topdevz.com"
28

---

16

VERIFIED COMPLAINT FOR MISAPPROPRIATION OF TRADE SECRET DAMAGES AND INJUNCTIVE RELIEF

domain and transfer it out of Plaintiff's personal name. Plaintiff became aware because GoDaddy sent a security warning email to Plaintiff's personal email address.

98.    On January 9, 2022, a competitor "ProDev.io", whose CEO is James Hyde, without authorization accessed Plaintiff's systems using tyler@topdevz.com confidential credentials from IP address 74.201.177.179 located in Salt Lake City, where James Hyde lives. James accessed the system multiple times without Plaintiff's knowledge at the time.

99.    When neither Defendant Davis nor Lintz nor Siarra could steal the ownership of the accounts housing Plaintiff's trade secrets, they hatched a plan to collectively steal it by accessing, exporting and downloading all the information through TopDevz W2 employees, Defendants Garcia and Frye, who were each granted higher access levels.

100.    Both Garcia and Frye have signed confidentiality and non-disclosure agreements.

101.    After the data was taken, Lintz incorporated Talentcrowd, and everyone, except Wood, was hired full-time by Talentcrowd.

102.    Heavy forensic data has been collected and compiled from private investigations using the Google Vault forensic digital e-discovery tool. Also, audit access logs built into the various hosting providers of the trade secret data, including Google Vault and Zoho audit logs, evidence the access, export, download, transmission, transfer and upload to Talentcrowd.

103.    Davis has admitted to solicitating the theft of trade secrets belonging to Plaintiff,

> "I [Tyler Davis] instructed her [Melissa Garcia] to download as much information as humanly possible at that time."

> "I [DAVIS] basically asked her to start downloading as much information as she possibly could."

VERIFIED COMPLAINT FOR MISAPPROPRIATION OF TRADE SECRET DAMAGES AND INJUNCTIVE RELIEF

1    104.    On January 12, 2022, Defendant Melissa Garcia, a former TopDevz

2  employee who became the Chief Administrative Officer at Talentcrowd, unlawfully

3  downloaded thousands of files and electronic documents from the topdevz.com Google

4  Drive owned by Plaintiff. These documents were created and maintained by personnel

5  from Mobile Monster only.

6    105.    On January 13, 2022, Defendant Garcia downloaded a five-year span of

7  data hosted on Plaintiff's domain that was authored and maintained by Mobile Monster

8  personnel. This included invoices, bills, receipts, and personally identifiable information

9  that were sourced from Plaintiff's master database, all of which were authored and

10  managed by Mobile Monster staff.

11    106.    On January 14, 2022, Defendant Frye used her credentials,

12  afrye@topdevz.com, and forwarded massive amounts of information to her personal

13  email address, afrye262632@gmail.com, all of which flowed or was a product from

14  Plaintiff's database.

15    107.    On January 14, 2022, Defendant Frye downloaded the entire trade secret

16  database and the personally identifiable information of thousands of software developers

17  within Plaintiff's domain.

18    108.    On or about January 14, 2022, Defendant Frye exfiltrated an entire backup

19  of Plaintiff's Project Management database called "JIRA", which included contact lists,

20  project data, financial information, and detailed project data. Lintz in a judicial

21  declaration admitted to his knowledge of this and further admitted that the data was then

22  misappropriated by Talentcrowd and fraudulently represents that somehow Davis was

23  the legal owner of the data,

24      "...Davis, at Davis' request, took a backup of the existing Jira instance
       used by TopDevz ... ...Talentcrowd received permission from Davis to
25      extract the history and project data for the then-current customers... In
       April 2022, Talentcrowd took over the decommissioned Jira account..."
26

27    109.    On January 14, 2022, Defendant Frye orchestrated the execution of the how

28  the downloaded information would be monetized by Talentcrowd. The scheme would

18

VERIFIED COMPLAINT FOR MISAPPROPRIATION OF TRADE SECRET DAMAGES AND INJUNCTIVE RELIEF

involve a national wire fraud campaign that would use the downloaded data to make contact to people's personal accounts. The email was composed with the subject "Next Steps", the email reads,

"Hi Guys! Here is the list of what we need to do and what I have so far:"

The scheme included the setting up of a look-alike domain that would be uploaded with the trade secret data and used to email people with misrepresentations of, *inter alia*, that TopDevz is "rebranding."

110.   Frye's email further reads,

"New Google Email Addresses...Invite users to their personal email addresses...-- List:...List of existing Slack [instant messaging service] Users:"

111.   On January 15, 2022, the "topdevz.io" domain, (also belonging to Plaintiff personally), was hacked by Defendant Vincil Bishop (Bishop and Lintz are also partners in a separate company called SKAN Technologies) and transferred to Tyler Davis at his email "tyler.davis@porterllc.com", which is the domain of Porter Consulting, LLC, a construction management company Davis owns and is the CEO of.

112.   On or about January 16, 2022, Ms. Frye started stealing thousands of documents from the topdevz.com-hosted applications, including "Hourly Breakdown" of contractors, "Intellectual Property, Non-Competition, Non-Solicitation Agreements" all authored by Mobile Monster personnel and hosted on Plaintiff's personal domain.

113.   The download theft was intertwined with various other torts that are the subject of other lawsuits. However, for this case, Defendants then uploaded the exfiltrated trade secret information into the "topdevz.io" domain.

114.   After all the information was uploaded to the new domain they also stole, Defendants sent fraudulent communications to the highest value contacts, who were told, *inter alia*, there is a new "rebrand" and to "pay a different bank account".

VERIFIED COMPLAINT FOR MISAPPROPRIATION OF TRADE SECRET DAMAGES AND INJUNCTIVE RELIEF

EXHIBIT 13, PAGE 406

1    115.   On or about January 20, 2022, the wire fraud campaign commenced with

2  the utilization of the uploaded data to the "topdevz.io" domain. Defendant Davis was the

3  author of the publication, with carbon copies to Defendant Lintz, Frye and Garcia.

4    116.   The contacts were told that:

5          a.  That there was new TopDevz ownership, "I'm happy to officially

6              announce a major change to TopDevz's ownership."

7          b.  A sham rebrand, "We're also announcing a few other changes, which

8              includes a rebrand from to TopDevz.com to TopDevz.io,"

9          c.  New emails "topdevz.io", "we're moving over to new emails

10              (immediately)"

11          d.  A new bank account that requested the reader to pay into ending in 0516

12              at JPMorgan CHASE, "In addition, we changed our corporate address

13              and ACH information – attached is information for your files and AP

14              team."

15    117.   Once the data was used to divert all the highest value contacts, Defendants

16  had, essentially overnight, replicated tens of millions in annual revenue that was only

17  made possible from the theft of the database information.

18    118.   Separate from the download theft, a physical attack on the computer servers

19  housing highly proprietary information was executed simultaneously.

20    119.   One of the addresses Plaintiff used to work from was 7460 Girard St, La

21  Jolla, California, Units 7 & 8. One of the units was Plaintiff's personal executive office.

22    120.   In the Girard office, Plaintiff stored numerous physical computer servers

23  that contained the highly sensitive source code and algorithm information used in the

24  database schemas. (The servers and equipment mentioned *supra* with serial numbers)

25    121.   Defendant Davis and Lintz had the locks changed overnight and locked out

26  Plaintiff and other TopDevz employees. Then, shortly thereafter, used their exclusive

27  access to physically steal all the servers located this address.

28

VERIFIED COMPLAINT FOR MISAPPROPRIATION OF TRADE SECRET DAMAGES AND INJUNCTIVE RELIEF

1    122.   Defendant Lintz has judicially admitted that on January 15, 2022, he was

2  present, when the offices, including Plaintiff's personal office that was burglarized,

3      "While I [Lintz] was present on January 15, 2022 at the office and stood
       outside, I did not have any personal involvement in seizing and/or
4      confiscating the computers and/or hard drives nor did I even touch them."
5      ... "The computer servers and other assets and property that Rajaee is
       referring to belong to TopDevz, not Rajaee, and were seized by Davis".
6

7  TopDevz however, cannot prove ownership because all the servers were purchased by

8  Plaintiff personally as part of investing in the trade secret infrastructure.

9      123.   On or about January 19, 2022, Defendant Frye committed numerous

10  additional overt acts, using the trade secret information downloaded to target as many

11  people as she could to switch to Defendant controlled servers.

12     124.   As an example, on or about January 19, 2022, Frye stated,

13     "No .com is going away, so download anything you need."

14  and

15     "Hey! Can you please check your personal email for a new TopDevz email
       and password? I need everyone over to the new domain as soon as
16     possible."

17
       125.   On January 19, 2022, Defendant Frye again used her credentials to access
18
    personnel through applications hosted on Plaintiff's domain and instructed them to move
19
    to the new Slack instant messaging system registered by Defendants on the topdevz.io
20
    domain,
21
       "Good Morning! Please discontinue using this Slack [instant messaging
22     service] channel. Join us in the new instance. Check your TopDevz.io
       email address for credentials to the new time tracking system. All the
23     details are in the new slack."
24
       126.   On January 19, 2022, David Ward, a programmer, wrote on Slack instant
25
    messaging account on Plaintiff's domain,
26
       "I spoke with Amanda - they are going to be shutting down the TopDevz
27     Jira before too long and switching how they track time to a new app. The
       new emails are a go they need us all to switch all are stuff over to them (but
28

                                         21
────────────────────────────────────────────────────────
VERIFIED COMPLAINT FOR MISAPPROPRIATION OF TRADE SECRET DAMAGES AND INJUNCTIVE RELIEF

they aren't turning them off until we have stuff switched over) …They are just retooling with the branding change, all is well there, it's just they are rebranding and switching around software."

127.  On January 20, 2022, Defendant Frye sent 1-to-1 messages to establish contact with targeted people and instructed them to check their personal email (stolen earlier from the exfiltration of Plaintiff's databases),

"Hey! Check your personal email, and join us in the new TopDevz.io domain today please! Call or text me with any issues! 734-341-3773."

128.  Frye also target and solicited contacts on the topdevz.com instant messaging tool called "Slack", and ordered the contacts under fraudulent pretenses to switch communication accounts,

"we [TopDevz] are going through a branding…we are transitioning to new emails. We will send those to you, and we will be sending you an invite for our new instance of slack. Be on the lookout!"

129.  On January 31, 2022, Lintz executed a contract with a company called Origin 63 in San Diego, whose contact information was downloaded as part of the scheme.

130.  Origin 63 is a company that helps businesses migrate, import and implement large volumes of data into "Hubspot" the technical equivalent of "Zoho" used by Plaintiff.

131.  Under the Origin 63 scope of work contract, there are specific scopes of work involving,

"Import of previously existing properties in database…Support of contact database import…such as logged emails, meetings and calls…" the scope of work contract also included, "ENTERPRISE: Import existing sales deals into HubSpot CRM database…ENTERPRISE: Migration of deal pipeline to new system… Migration of activity data (phone calls, emails, meetings, to-dos) from existing CRM"

132.  In March 2022, numerous Talentcrowd issued invoices evidence that the exact same contact records that were downloaded from Plaintiff's database.

---

22

VERIFIED COMPLAINT FOR MISAPPROPRIATION OF TRADE SECRET DAMAGES AND INJUNCTIVE RELIEF

133.   Thousands of work log entries under the "topdevz.io" and "talentcrowd.com" domains were discovered by Plaintiff for the exact same contacts downloaded, representing tens of millions of dollars in economic value.

134.   Since Defendants had downloaded and now possessed all the confidential information, along with personal contact data, the trade secret data was then converted to Talentcrowd domains, and the Defendant Talentcrowd workers would simply solicit the contacts to sign new contracts with Talentcrowd under a fraudulent guise that TopDevz has been judicially dissolved–this independent fraud and wrongdoing regarding majority ownership of TopDevz and the tortious conduct relating to the decimation of TopDevz is filed in this district, Case no. 24-CV-001.

135.   On May 26, 2022, in an attempt to hide the digital trail, Defendant Joshua Lintz and Talentcrowd purged all the metadata from their operational databases. However, because Plaintiff was the owner of the records, the Talentcrowd servers sent notifications to the owner of the record that critical data was being trashed by a user. This in itself proves the data Talentcrowd has been using and continues to use, has originated from "topdevz.com" domain user accounts, owned by Plaintiff.

136.   On March 1, 2023, Defendant Frye, now Talentcrowd's Chief Operating Officer, publicly announced on Facebook the company's "unbelievable" explosive growth, specifically, how Talentcrowd, within its first year of operation, has invoiced almost 90,000 in billable hours, representing over $12 million in revenue.

137.   The only way in which Defendants were able to achieve instant success at Talentcrowd is through the theft of trade secret information belonging to Plaintiff.

138.   Defendants, with aid from their attorneys, entered into contracts with each other in an attempt to legitimize and obfuscate the true ownership of the data. However, none of them have ever legally owned the trade secret data, its custody or its control.

139.   TopDevz employees did not create, contribute or manage the trade secrets.

140.   TopDevz employees never owned or managed any marketing or recruiting databases and TopDevz never hired any employees to perform those tasks either.

VERIFIED COMPLAINT FOR MISAPPROPRIATION OF TRADE SECRET DAMAGES AND INJUNCTIVE RELIEF

1    141.   TopDevz employees never conducted this work, because TopDevz was an

2  expansion company that relied 100% on Plaintiff's trade secrets and services by MMI.

3    142.   Under California law Davis or the LLC members could only access

4  information relating to the internal affairs of the LLC under California Corporations

5  Code, § 17704.13 subsection (d)(1-7). Documents Related to the Internal Operation of

6  the LLC.

7       a.  A copy of the minutes, if any, of each meeting of members and of any

8           written consents obtained from members; (17701.13 (d) (7) "The books

9           and records of the limited liability company as they relate to the internal

10          affairs of the limited liability company for at least the current and past

11          four fiscal years.")

12      b.  Any document which discusses the amount of capital contributions of

13          each member in terms of cash or agreed value of other property or

14          services contributed; (17701.13 (d) (7))

15      c.  Any document which discusses the details of events, times, or other

16          agreements made for further contributions to be made from members, if

17          any; (17701.13 (d) (7))

18      d.  Any document which discusses the share of profits and losses due each

19          member;

20      e.  Any document which discusses any right of a member to receive

21          distributions of funds;

22      f.  Any document which discusses any right of a manager to make

23          distributions of funds to a member;

24      g.  Any document which discusses each member's respective voting rights;

25      h.  Any document which discusses the details of events that would cause the

26          LLC to be dissolved and its affairs wound up, if any.

27    143.   Despite a judgment being separately entered in August 2023 against

28  Plaintiff relating to TopDevz, Plaintiff later uncovered that he had been a victim within a

24

VERIFIED COMPLAINT FOR MISAPPROPRIATION OF TRADE SECRET DAMAGES AND INJUNCTIVE RELIEF

criminal operation and wrongdoings in relation to TopDevz itself–conduct involving, identity theft, wire fraud, tax fraud, bank fraud, perjury, extrinsic fraud practiced against Plaintiff and the judicial machinery itself, by several of the same Defendants in this case. Subsequently, Plaintiff filed a federal lawsuit in this district, under case number 24-CV-001, and is now working with the Attorney General's office, the IRS investigative unit and the FBI, related to the criminal conduct, while Plaintiff pursues the civil torts that now, in a broader picture, are starting to appear more and more, warrant a RICO action.

### FIRST CLAIM FOR RELIEF (Against All Defendants)
### Violation of Defend Trade Secrets Act 18 U.S. Code § 1832 et seq.

144.   Plaintiff realleges and incorporates by reference the foregoing paragraphs of the Complaint as though fully set forth herein.

145.   The information that Defendants misappropriated constitutes trade secrets protected by the Economic Espionage Act, as Amended by Defend Trade Secrets Act, 18 U.S.C. § 1831 et seq.

146.   Defendants unlawfully accessed and obtained the trade secret information by using their access credentials to download then misappropriate Plaintiff's' trade secrets related to products and services used, and intended for use, in interstate commerce.

147.   The trade secret was related to a service that involves interstate and foreign commerce.

148.   Plaintiff took reasonable efforts to maintain the secrecy of the data's information, including, limiting access to each individual that was only possible from the secure use of a username and password.

149.   The data unlawfully obtained contained information that is not generally known to the public or to competitors of Plaintiff's, who can obtain economic value from its disclosure and use it to their own advantage.

150.   The data was compiled by Plaintiff's experience over many years, sourcing and structuring. The data included direct contact information, including cell phone

25

EXHIBIT 13, PAGE 412

1    numbers, contacts job history, current employer, education, interests, social profiles,

2    address, city, years of communication history, financial information including contacts

3    companies revenues, costs, budgets, invoices, contracts, contact-specific pricing

4    information, bids/estimates presented to the contact, pending projects, previously

5    negotiated discounts and information regarding the contact, and product technology the

6    contact is involved in, which gives a massive competitive advantage over competing

7    software development firms.

8         151.   Defendants intended to, and did, convert the trade secret to economic

9    benefit for someone other than the owner.

10        152.   Talentcrowd received, possessed, used and benefitted from the information,

11   knowing it was obtained without authorization.

12        153.   Defendants' misappropriation of Plaintiff's' trade secrets was willful and

13   malicious. Plaintiff is entitled to exemplary damages in an amount up to twice actual

14   damages awarded.

15        154.   As a direct consequence of Defendants' misappropriation, Plaintiff has

16   suffered damages for actual loss in an amount to be proven at trial, including attorneys'

17   fees and costs.

18        155.   As a direct consequence of Defendants' misappropriation, Defendants have

19   been unjustly enriched, and Plaintiff is entitled to damages for such enrichment, in an

20   amount to be proven at trial.

21        156.   As a direct consequence of Defendants' misappropriation, Plaintiff is

22   entitled to seizure of the misappropriated information by the U.S. Marshals.

23        157.   The defendants obtained and used the information without permission from

24   the rightful owner. The defendants knew this information was proprietary.

25        158.   The information was in fact a trade secret.

26        159.   Defendants knew or intended that the owner of the trade secret would be

27   injured.

28

---

26

VERIFIED COMPLAINT FOR MISAPPROPRIATION OF TRADE SECRET DAMAGES AND INJUNCTIVE RELIEF

**SECOND CLAIM FOR RELIEF**
**(Trade Secret Misappropriation Under California Uniform Trade Secrets Act –**
**California Civil Code §§ 3426 et seq.) (Against All Defendants)**

160.  Plaintiff realleges and incorporates by reference the foregoing paragraphs of the Complaint as though fully set forth herein.

161.  As alleged above and herein, accessed, exported and downloaded from Plaintiff owned servers information and compilation of data that constitute trade secrets under the California Uniform Trade Secrets Act (California Civil Code section 3426 *et seq*.).

162.  Defendants unlawfully accessed and obtained the trade secret information by using their access credentials to download then misappropriate Plaintiff's' trade secrets related to products and services used, and intended for use, in interstate commerce.

163.  The trade secret was related to a service that involves interstate and foreign commerce.

164.  Plaintiff took reasonable efforts to maintain the secrecy of the data's information, including, limiting access to each individual that was only possible from the secure use of a username and password.

165.  The data unlawfully obtained contained information that is not generally known to the public or to competitors of Plaintiff's, who can obtain economic value from its disclosure and use it to their own advantage.

166.  The data was compiled by Plaintiff's experience over many years, sourcing and structuring. The data included direct contact information, including cell phone numbers, contacts job history, current employer, education, interests, social profiles, address, city, years of communication history, financial information including contacts companies revenues, costs, budgets, invoices, contracts, contact-specific pricing information, bids/estimates presented to the contact, pending projects, previously negotiated discounts and information regarding the contact, and product technology the

EXHIBIT 13, PAGE 414

1    contact is involved in, which gives a massive competitive advantage over competing

2    software development firms.

3        167.    Defendants intended to, and did, convert the trade secret to economic

4    benefit for someone other than the owner.

5        168.    Talentcrowd received, possessed, used and benefitted from the information,

6    knowing it was obtained without authorization.

7        169.    Defendants' misappropriation of Plaintiff's' trade secrets was willful and

8    malicious. Plaintiff is entitled to exemplary damages in an amount up to twice actual

9    damages awarded.

10        170.    As a direct consequence of Defendants' misappropriation, Plaintiff has

11    suffered damages for actual loss in an amount to be proven at trial, including attorneys'

12    fees and costs.

13        171.    As a direct consequence of Defendants' misappropriation, Defendants have

14    been unjustly enriched, and Plaintiff is entitled to damages for such enrichment, in an

15    amount to be proven at trial.

16        172.    The defendants obtained and used the information without permission from

17    the rightful owner. The defendants knew this information was proprietary.

18        173.    The information was in fact a trade secret.

19        174.    Defendants knew or intended that the owner of the trade secret would be

20    injured.

21                            **THIRD CLAIM FOR RELIEF**
22                     **Accounting (Against All Defendants)**

23        175.    Plaintiff realleges and incorporates by reference the foregoing paragraphs of

24    the Complaint as though fully set forth herein.

25        176.    Based on the foregoing allegations, Plaintiff is entitled to an accounting by

26    Defendants to determine the economic value unjustly obtained by the Defendants from

27    the misappropriation of the trade secrets.

28

28

VERIFIED COMPLAINT FOR MISAPPROPRIATION OF TRADE SECRET DAMAGES AND INJUNCTIVE RELIEF

## **PRAYER FOR RELIEF**

Having alleged this Complaint against Defendants, Plaintiff's pray that the Court award the following relief:

1. Temporary and permanent orders requiring Defendants to return to Plaintiff's all downloaded data of Plaintiff's, including the storage drives, laptops and physical computer servers stolen in January of 2022, including all cloud-based storage accounts, to confirm the return and deletion of all of Plaintiff's' trade secrets and confidential information;

2. Temporary and permanent orders restraining and enjoining Defendants from soliciting any contact record downloaded from Plaintiff's data to the extent that such solicitation is enabled by or based on misappropriation of Plaintiff's' trade secrets and other confidential information;

3. Temporary and permanent orders restraining and enjoining Defendants from otherwise possessing, using or disclosing Plaintiff's' trade secrets and other confidential information misappropriated by Defendants;

4. Temporary and permanent orders restraining and enjoining Defendants from working for or with Talentcrowd;

5. An accounting from Defendants;

6. Judgment against Defendants for damages in an amount to be proven at trial;

7. Judgment against Defendants in the amount of their unjust enrichment as a result of their misappropriation, and use of Plaintiff's' trade secrets and other proprietary information;

8. Judgment against Defendants for double damages for their willful and malicious misappropriation of Plaintiff's' trade secrets pursuant to 18 U.S.C. § 1836 and CUTSA;

9. Judgment against Defendants in the amount of Plaintiff's' reasonable attorney's fees and costs as authorized by 18 U.S.C. § 1836 and CUTSA;

29

VERIFIED COMPLAINT FOR MISAPPROPRIATION OF TRADE SECRET DAMAGES AND INJUNCTIVE RELIEF

10. For prejudgment and post-judgment interest; and

11. Such other and further relief as this Court deems just and equitable.

DATED this 22nd day of March 2024          Respectfully submitted,


Ashkan Rajaee

Pro Se Plaintiff

VERIFIED COMPLAINT FOR MISAPPROPRIATION OF TRADE SECRET DAMAGES AND INJUNCTIVE RELIEF

EXHIBIT 13, PAGE 417

## DEMAND FOR JURY TRIAL

Plaintiff Ashkan Rajaee hereby demands a trial by jury on all issues and causes of action that qualify for a jury trial demand.

Dated: March 22, 2024

Respectfully submitted,

_____

Ashkan Rajaee

Pro Se Plaintiff

31

VERIFIED COMPLAINT FOR MISAPPROPRIATION OF TRADE SECRET DAMAGES AND INJUNCTIVE RELIEF

EXHIBIT 13, PAGE 418

## **VERIFICATION**

I, Ashkan Rajaee, declare:

I am a party to this action. I am also a member of TopDevz, LLC and Mobile Monster Inc. during the relevant time period. I certify under penalty of perjury that I have read and reviewed the Verified Complaint and authorized its filing. Based upon my and my various counsel's investigations, the contents of the Verified Complaint are true to the best of my knowledge, information, and belief.

I declare under the penalty of perjury under the laws of the State of California and the United States that the above is true and correct.

Executed on March 22, 2024, at La Jolla, California.

Ashkan Rajaee
*Pro Se Plaintiff*

VERIFIED COMPLAINT FOR MISAPPROPRIATION OF TRADE SECRET DAMAGES AND INJUNCTIVE RELIEF

EXHIBIT 13, PAGE 419

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
870 Roosevelt, Irvine, CA 92620. I am not a party to this action.

A true and correct copy of the foregoing document entitled: **JUDGMENT CREDITORS' MOTION TO APPOINT A CHAPTER 11 TRUSTEE OR, ALTERNATIVELY, CONVERT CASE TO ONE UNDER CHAPTER 7; MEMORANDUM OF POINTS OF AUTHORITIES; DECLARATION OF D. EDWARD HAYS IN SUPPORT** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **April 8, 2024**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **ATTORNEY FOR DEBTORS: Leslie A. Cohen**    leslie@lesliecohenlaw.com, jaime@lesliecohenlaw.com;olivia@lesliecohenlaw.com
- **ATTORNEY FOR U.S. TRUSTEE: Elvina Rofael**    elvina.rofael@usdoj.gov, Tiffany.L.Carroll@usdoj.gov;USTP.Region15@usdoj.gov
- **U.S. TRUSTEE: United States Trustee**    ustp.region15@usdoj.gov

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**: On **April 8, 2024**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows.

**DEBTORS**
ASHKAN MIRFAKHR RAJAEE
NASSIM RAJAEE
6625 MUIRLANDS DR
LA JOLLA, CA 92037-6314

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL:** Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| April 8, 2024 | Layla Buchanan | /s/ Layla Buchanan |
|---|---|---|
| Date | Printed Name | Signature |

4893-0852-7029

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                                                                    **F 9013-3.1.PROOF.SERVICE**